STRUCK WIENEKE & LOVE, P.L.C.
Daniel P. Struck, AZ Bar #012377
*(admitted pro hac vice)*
Rachel Love, AZ Bar #019881
*(admitted pro hac vice)*
Nicholas D. Acedo, AZ Bar #021644
*(admitted pro hac vice)*
Ashlee B. Fletcher, AZ Bar #028874
*(admitted pro hac vice)*
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Tel.:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com

LAW OFFICE OF ETHAN H. NELSON
Ethan H. Nelson, CA Bar #262448
4 Park Plaza, Suite 1025
Irvine, California 92614
Tel.: (949) 229-0961
Fax: (949) 861-7122
ethannelsonesq@gmail.com

Attorneys for Defendant CoreCivic, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sylvester Owino and Jonathan Gomez, on behalf of themselves, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CoreCivic, Inc., a Maryland corporation,<br><br>Defendant. | NO. 3:17-cv-01112-JLS-NLS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Date: September 14, 2017<br>Time: 1:30 p.m.<br>Courtroom: 4D<br>Judge:  Honorable Janis L. Sammartino |

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND. .................................................................................... 1

    A.    Plaintiffs' Factual Allegations .................................................. 1

    B.    Plaintiffs' Claims ...................................................................... 2

II.    STANDARD OF REVIEW ................................................................. 4

III.    THE COURT SHOULD DISMISS PLAINTIFFS' FORCED LABOR CLAIMS – First and Second Causes of Action ................................ 4

    A.    Trafficking Victims Protection Act ......................................... 4

            1.    The TVPA does not extend to civil immigration detainees performing routine housekeeping tasks while in lawful custody .................................................................... 5

            2.    Plaintiffs' allegations fail to state a TVPA claim .................... 10

            3.    Plaintiffs do not have a private cause of action for conduct prior to December 23, 2008 ............................ 12

            4.    At least part of Plaintiffs' claim is time barred ......................... 12

    B.    California Trafficking Victims Protection Act ..................................... 13

IV.    THE COURT SHOULD DISMISS PLAINTIFFS' VOLUNTARY LABOR CLAIMS – Fourth through Tenth Causes of Action ...................... 14

    A.    Federal Law Preempts Plaintiffs' Voluntary Labor Claims ............... 14

            1.    Federal law occupies the entire field of regulating the detention of unlawful immigrants ............................... 15

            2.    California's minimum wage and overtime laws conflict with federal law ................................................. 16

    B.    Immigration Detainees Are Not Employees Under California's Labor Code ............................................................. 17

    C.    The Wage Orders Do Not Apply ......................................... 20

            1.    5-2001 ....................................................................... 20

            2.    15-2001 ..................................................................... 20

V.    THE COURT SHOULD DISMISS PLAINTIFFS' DERIVATIVE CLAIMS – Third, Eleventh, and Twelfth Causes Of Action ...................... 21

VI.    CONCLUSION ............................................................................ 22

# TABLE OF AUTHORITIES

**Cases** <u>Page</u>

*Addison v. California Inst. for Men*
EDCV151259JVSAJW, 2016 WL 8732476 (C.D. Cal. Nov. 1, 2016),
*report and recommendation adopted,* EDCV151259JVSAJW,
2016 WL 8738151 (C.D. Cal. Dec. 16, 2016) ....................................................... 19

*Alvarado Guevara v. I.N.S.*
902 F.2d 394 (5th Cir. 1990) ........................................................................ 16, 19

*Arizona v. United States*
567 U.S. 387 (2012) ............................................................................. 15, 16, 17

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ........................................................................................ 4, 11

*Baggett v. Hewlett-Packard Co.*
582 F. Supp. 2d 1261 (C.D. Cal. 2007) ............................................................. 21

*Bayh v. Sonnenburg*
573 N.E.2d 398 (Ind. 1991) .................................................................................. 8

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (1986) ............................................................................................... 4

*Bijeol v. Nelson*
579 F.2d 423 (7th Cir. 1978) ................................................................................. 8

*Bragdon v. Abbott*
524 U.S. 624 (1998) ............................................................................................. 10

*Brooks v. Donovan*
699 F.2d 1010 (9th Cir. 1983) ............................................................................... 7

*Burleson v. State of Cal.*
83 F.3d 311 (9th Cir. 1996) ................................................................................. 19

*Castle v. Eurofresh, Inc.*
731 F.3d 901 (9th Cir. 2013) ............................................................................... 19

*Channer v. Hall*
112 F.3d 214 (5th Cir. 1997) ............................................................................ 8, 9

*Coupar v. U.S. Dept. of Labor*
105 F.3d 1263 (9th Cir. 1997) ............................................................................. 19

*CRV Imperial-Worthington, LP v. Gemini Ins. Co.*
770 F. Supp. 2d 1074 (S.D. Cal. 2010) .............................................................. 22

*Dinosaur Dev., Inc. v. White*
216 Cal. App. 3d 1310 (Cal. App. 1989) ........................................................... 21

*Ditullio v. Boehm*
   662 F.3d 1091 (9th Cir. 2011).................................................................5

*Falk v. Gen. Motors Corp.*
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...............................................22

*Goodyear Atomic Corp. v. Miller*
   486 U.S. 174 (1988)................................................................................9

*Griffin v. Alamo*
   4:14-CV-4065, 2016 WL 7391046 (W.D. Ark. Dec. 21, 2016) ...........12

*Guevara v. I.N.S.*
   954 F.2d 733 (Fed. Cir. 1992) ..............................................................16

*Hale v. Arizona*
   993 F.2d 1387 (9th Cir. 1993)...............................................................19

*Hause v. Vaught*
   993 F.2d 1079 (4th Cir. 1993)................................................................8

*Hilber v. Int'l Lining Tech.*
   C 12-00003 LB, 2012 WL 3542421 (N.D. Cal. July 24, 2012)............18

*Hoffman Plastic Compounds, Inc. v. N.L.R.B.*
   535 U.S. 137 (2002).............................................................................15

*Hughes v. Talen Energy Mktg., LLC*
   136 S. Ct. 1288 (2016) ...................................................................14, 15

*Hutchinson v. Reese*
   5:07CV181-DCB-MTP, 2008 WL 4857449 (S.D. Miss. Nov. 7, 2008)..............10

*In re Facebook PPC Advert. Litig.*
   709 F. Supp. 2d 762 (N.D. Cal. 2010) ................................................21

*International Telephone & Telegraph Corp. v. General Telephone & Electronics Corp.*
   518 F.2d 913 (9th Cir. 1975)..................................................................7

*Jobson v. Henne*
   355 F.2d 129 (2d Cir. 1966)...................................................................8

*Lofthus v. Long Beach Veterans Hosp.*
   214 F. Supp. 3d 908 (C.D. Cal. 2016) ................................................14

*Martinez v. Turner*
   977 F.2d 421 (8th Cir. 1992)..................................................................9

*Medina v. O'Neill*
   589 F. Supp. 1028 (S.D. Tex. 1984) ...................................................15

*Mendez v. Haugen*
   CV 14-4792 ADM/BRT, 2015 WL 5718967 (D. Minn. Sept. 29, 2015),
   *aff'd* (Feb. 22, 2016)...........................................................................10

*Miles v. Apex Marine Corp.*
  498 U.S. 19 (1990) ................................................................................9

*Morgan v. MacDonald*
  41 F.3d 1291 (9th Cir. 1994).............................................................19

*Mort v. United States*
  86 F.3d 890 (9th Cir. 1996)................................................................21

*Murdock v. Washington*
  193 F.3d 510 (7th Cir. 1999)..............................................................19

*Ochoa v. McDonald's Corp.*
  133 F. Supp. 3d 1228 (N.D. Cal. 2015) .............................................17

*Owuor v. Courville*
  2:11-CV-926, 2013 WL 7877306 (W.D. La. Aug. 7, 2013), *report and recommendation adopted*, 2:11-CV-926, 2014 WL 949433 (W.D. La. Mar. 10, 2014)........................................................................................10

*Paracor Finance, Inc. v. General Elec. Capital Corp.*
  96 F.3d 1151 (9th Cir. 1996)..............................................................22

*Parrish v. NFL Players Ass'n*
  534 F. Supp. 2d 1081 (N.D. Cal. 2007) .............................................21

*Phillips v. San Luis Obispo County Dept.*
  183 Cal. App. 3d 372 (Cal. App. 1986) .............................................18

*Rhynes v. Stryker Corp.*
  10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011)................21

*Roman v. Tyco Simplex Grinnell*
  8:16-CV-3449-T-33AEP, 2017 WL 2427251 (M.D. Fla. June 5, 2017).............11

*Salas v. Toyota Motor Sales, U.S.A., Inc.*
  CV 15-8629 FMO (EX), 2016 WL 7486600 (C.D. Cal. Sept. 27, 2016)............22

*Sanders v. Hayden*
  544 F.3d 812 (7th Cir. 2008)..............................................................19

*Shaughnessey v. U.S. ex rel. Mezei*
  345 U.S. 206 (1953)............................................................................15

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001)................................................................4

*United States v. Katz*
  271 U.S. 354 (1926)..............................................................................7

*United States v. Kozminski*
  487 U.S. 931 (1988)........................................................................7, 8, 9

*Villarreal v. Woodham*
  113 F.3d 202 (11th Cir. 1997)............................................................19

*Wilson v. City of Laguna Beach*
  6 Cal. App. 4th 543 (Cal. App. 1992) ................................................................18

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 4 ..............................................................................15

U.S. Const. art. VI, cl. 2....................................................................................14

**Statutes**

8 U.S.C. § 1103..................................................................................................15

8 U.S.C. § 1226..................................................................................................15

8 U.S.C. § 1226(a)(3) ........................................................................................16

8 U.S.C. § 1231..................................................................................................15

8 U.S.C. § 1324a..........................................................................................15, 18

8 U.S.C. § 1555(d) ............................................................................................16

18 U.S.C. § 1584............................................................................................7, 9

18 U.S.C. § 1589....................................................................................5, 9, 10, 22

18 U.S.C. § 1589(a) ......................................................................................4, 11

18 U.S.C. § 1589(a)(1)-(a)(3) ...........................................................................9

18 U.S.C. § 1589(a)(4) .......................................................................................9

18 U.S.C. § 1589(c)(1) .....................................................................................12

18 U.S.C. § 1589(c)(2) .....................................................................................12

18 U.S.C. § 1593...............................................................................................22

18 U.S.C. § 1595..................................................................................5, 12, 22

18 U.S.C. § 1595(c)(1) .....................................................................................12

22 U.S.C. § 7102(9) ..........................................................................................14

Pub. L. No. 95-86, 91 Stat. 426 (1978) ...........................................................16

Pub. L. No. 106-386, § 102(a), 114 Stat. 1488 (2000).....................................5

Pub. L. No. 106-386, § 102(b), 114 Stat. 1488 (2000)..................................5, 6

Pub. L. No. 106-386, § 102(b)(13), 114 Stat. 1488 (2000).............................9

Pub. L. No. 106-386, 114 Stat. 1464 (2000) ...................................................... 12

Pub. L. No. 108-193, 117 Stat. 2875 (2003) ...................................................... 12

Pub. L. No. 110-457, 122 Stat. 5044 (2008) ...................................................... 12

Cal. Civ. Code § 52.5(a) ..................................................................................... 13

Cal. Labor Code § 200 ........................................................................................ 17

Cal. Labor Code § 201(a) .................................................................................... 17

Cal. Labor Code § 226 ........................................................................................ 17

Cal. Labor Code § 226(a) .................................................................................... 17

Cal. Labor Code § 226.7 ..................................................................................... 17

Cal. Labor Code § 226.7(b) ................................................................................ 17

Cal. Labor Code § 350 ........................................................................................ 18

Cal. Labor Code § 432.5 ................................................................................ 17, 18

Cal. Labor Code § 500 ........................................................................................ 18

Cal. Labor Code § 510 ........................................................................................ 18

Cal. Labor Code § 510(a) .................................................................................... 17

Cal. Labor Code § 512 ........................................................................................ 18

Cal. Labor Code § 512(a) .................................................................................... 17

Cal. Labor Code § 1060(c) .................................................................................. 18

Cal. Labor Code § 1071(d) .................................................................................. 18

Cal. Labor Code § 1132.4 ................................................................................... 18

Cal. Labor Code § 1194 ...................................................................................... 18

Cal. Labor Code § 1197 ...................................................................................... 17

Cal. Labor Code § 1400(h) .................................................................................. 18

Cal. Labor Code § 1501(b) .................................................................................. 18

Cal. Labor Code § 1961 ...................................................................................... 18

Cal. Labor Code § 2051(c) .................................................................................. 18

Cal. Labor Code § 3351 ...................................................................................... 18

Cal. Labor Code § 4609(d)(2) ............................................................................. 18

Cal. Labor Code § 6304.1(a)-(b) .................................................................18

Cal. Penal Code § 236.1(a) .......................................................................13

Cal. Penal Code § 2700 .............................................................................13

2005 Cal. Legis. Serv. Ch. 240 (A.B. 22) ...........................................13, 14

**Regulations**

28 C.F.R. § 545.23 ....................................................................................10

28 C.F.R. § 545.23(a)-(b) ..........................................................................10

8 C.C.R. § 11050(1) ...................................................................................20

8 C.C.R. § 11050(2)(P) ..............................................................................20

8 C.C.R. § 11050(2)(P)(1)-(7) ...................................................................20

8 C.C.R. § 11150(1) ...................................................................................20

8 C.C.R. § 11150(2)(I) ...............................................................................21

15 C.C.R. § 3040(a) ...................................................................................13

**Rules**

Rule 8(a)(2), Federal Rules of Civil Procedure ..........................................4

**Other Authorities**

Industrial Commission Wage Order 5-2001 ...............................................20

Industrial Commission Wage Order 15-2001 .............................................20

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    BACKGROUND

3

### A.    Plaintiffs' Factual Allegations

4

According to the allegations in the Complaint, Plaintiffs Sylvester Owino and

5

Jonathan Gomez are former "civil immigration detainees," who were "incarcerated"

6

at the Otay Mesa Detention Center ("OMDC") in Otay Mesa, California.  (Dkt. 1,

7

¶¶ 7-8, 10-11.)  OMDC is owned and operated by Defendant CoreCivic, Inc., and

8

detains "undocumented individuals lacking legal permission to enter or remain in

9

the United States," pursuant to a contract with the United States Department of

10

Homeland Security, Immigration and Customs Enforcement ("ICE").  (Id., ¶¶ 11,

11

23-24.)  Owino and Gomez allege that, while at OMDC, they "performed Dollar-A-

12

Day Work for $1 per day in an unsafe work environment and w[ere] forced and

13

coerced to perform Forced Labor."  (Dkt. 1, ¶¶ 27-29.)

14

Plaintiffs define **Dollar-A-Day Work** as "volunteered" work for "$1 per

15

day," including: (a) scrubbing bathrooms, showers, toilets, and windows;

16

(b) cleaning and maintaining the on-site medical facility; (c) cleaning the medical

17

facility's toilets, floors, and windows; (d) cleaning patient rooms and medical staff

18

offices; (e) sweeping, mopping, stripping, and waxing the floors of the medical

19

facility; (f) washing medical facility laundry; (g) sweeping, mopping, stripping, and

20

waxing floors throughout the facility; (h) washing detainee laundry; (i) preparing

21

and serving detainee meals; (j) assisting in preparing catered meals for law

22

enforcement events sponsored by CoreCivic; (k) performing clerical work for

23

CoreCivic; (l) preparing clothing for newly arriving detainees; (m) providing barber

24

services to detainees; (n) running and managing the law library; (o) cleaning intake

25

areas and solitary confinement unit; (p) cleaning and preparing vacant portions of

26

the facility for newly arriving detainees; (q) cleaning the facility's warehouse; and

27

(r) maintaining the exterior and landscaping of facility buildings.  (Dkt. 1, ¶¶ 14-

28

15.)  Plaintiffs are only allowed to spend their earnings at the facility store.  (Id.)

Plaintiffs define **Forced Labor** as "clean[ing], maintain[ing], scrub[bing], sweep[ing], and mop[ping] floors, bathrooms, showers, toilets and windows for no pay at all, not only in their living areas ('pods'), but also throughout the other interior and exterior areas of CoreCivic's facilities," "under threat of punishment, including lockdown and solitary confinement." (Dkt. 1, ¶¶ 13, 16.)

**B.    Plaintiffs' Claims**

Plaintiffs filed their Complaint on behalf of themselves and "all other persons similarly situated." (Dkt. 1, ¶ 1.) They define three subclasses.

### Nationwide Forced Labor Class

All civil immigration detainees who performed Forced Labor uncompensated work for CoreCivic at any Detention Facility owned or operated by it between November 2, 2004 to the applicable opt-out date, inclusive.

### California Forced Labor Class

All civil immigration detainees who performed Forced Labor uncompensated work for CoreCivic at any Detention Facility located in California owned or operated by it at time during the period from November 2, 2004 to the applicable op-out date, inclusive.

### California Labor Law Class

All civil immigration detainees who performed Dollar-A-Day Work for CoreCivic and were paid one dollar ($1) per day at any Detention Facility located in California owned or operated by it at any time between November 2, 2004 to the applicable op-out date, inclusive.

(Id., ¶¶ 30-31.)  Plaintiffs then raise twelve claims (Id., ¶¶ 40-128), under both federal and state law:

| 1 | Plaintiffs & All Classes | **Trafficking Victims Protection Act** <br> 18 U.S.C. § 1589 |
|---|---|---|
| 2 | Plaintiffs & California Forced Labor Class | **California Trafficking Victims Protection Act** <br> Cal. Civ. Code § 52.5 |

| 3 | Plaintiffs, California Forced Labor Class, & California Labor Law Class | **California Unfair Competition Law**<br><br>Cal. Bus. & Prof. Code. § 17200 |
|---|---|---|
| 4 | Plaintiffs & California Labor Law Class | **California Minimum Wage Law**<br><br>Cal. Labor Code §§ 1194, 1197, 1197.1<br>Cal. Wage Orders 5-2001, 15-2001 |
| 5 | Plaintiffs & California Labor Law Class | **California Overtime Wage Law**<br><br>Cal. Labor Code §§ 204, 510, 1194<br>Cal. Wage Orders 5-2001, 15-2001 |
| 6 | Plaintiffs & California Labor Law Class | **California Meal Periods Law**<br><br>Cal. Labor Code §§ 226.7, 512<br>Cal. Wage Orders 5-2001, 15-2001 |
| 7 | Plaintiffs & California Labor Law Class | **California Rest Periods Law**<br><br>Cal. Labor Code § 226.7<br>Cal. Wage Orders 5-2001, 15-2001 |
| 8 | Plaintiffs & California Labor Law Class | **California Wage Statements Law**<br><br>Cal. Labor Code § 226 |
| 9 | Plaintiffs & California Labor Law Class | **California Compensation Due Law**<br><br>Cal. Labor Code §§ 201-203 |
| 10 | Plaintiffs & California Labor Law Class | **California Terms & Conditions Law**<br><br>Cal. Labor Code § 432.5 |
| 11 | Plaintiffs & All Classes | **Negligence** |
| 12 | Plaintiffs & All Classes | **Unjust Enrichment** |

## II.   STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (1986)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 662.

A complaint must allege sufficient factual matter that is "plausible on its face." *Iqbal*, 556 U.S. at 678. Plausibility requires more than a "sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* Although in ruling on a Rule 12(b) motion to dismiss, the Court must accept factual allegations in the complaint as true, it is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.   THE COURT SHOULD DISMISS PLAINTIFFS' FORCED LABOR CLAIMS – First and Second Causes of Action

### A.   Trafficking Victims Protection Act

Plaintiffs' First Cause of Action alleges CoreCivic violated 18 U.S.C. § 1589(a) by "forcing and coercing Plaintiffs … to perform uncompensated Forced Labor through human trafficking." (Dkt. 1, ¶¶ 41-42.) As noted above, Plaintiffs

define Forced Labor to mean cleaning the floors, bathrooms, showers, toilets and windows in their living and community areas without pay.  (Id., ¶¶ 13, 16.)  Section 1589 makes it a crime to

> knowingly provide[] or obtain[] the labor or services of a person by any one of, or by any combination of, the following means--
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

Title 18 U.S.C. § 1595 authorizes a victim of a violation of that statute to bring a civil action against the "perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known was engaged in an act in violation of [that statute]."

## 1. The TVPA does not extend to civil immigration detainees performing routine housekeeping tasks while in lawful custody.

**a.**     Section 1589 was enacted in 2000 as part of the Trafficking Victims Protection Act ("TVPA").  *See Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011).  Congress explicitly declared that the purpose of the TVPA was "to combat *trafficking in persons*, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of *traffickers*, and to protect their victims."  Pub. L. No. 106-386, § 102(a), 114 Stat. 1488 (2000) (emphasis added).  That stated purpose was supported by twenty four (24) congressional findings, all of which focused on the evils of "[t]rafficking in persons."  Pub. L. No. 106-386, § 102(b), 114 Stat. 1488 (2000).  For example:

(b)(1)  As the 21st century begins, the degrading institution of slavery continues throughout the world. *Trafficking in persons* is a modern form of slavery, and it is the largest manifestation of slavery today. At least 700,000 persons annually, primarily women and children, are *trafficked* within or across international borders. Approximately 50,000 women and children are *trafficked* into the United States each year.

*       *       *

(b)(5) *Traffickers* often transport victims from their home communities to unfamiliar destinations, including foreign countries away from family and friends, religious institutions, and other sources of protection and support, leaving the victims defenseless and vulnerable.

*       *       *

(b)(8) *Trafficking in persons* is increasingly perpetrated by organized, sophisticated criminal enterprises. Such trafficking is the fastest growing source of profits for organized criminal enterprises worldwide. Profits from the *trafficking industry* contribute to the expansion of organized crime in the United States and worldwide.

*       *       *

(b)(12) *Trafficking in persons* substantially affects interstate and foreign commerce. *Trafficking* for such purposes as involuntary servitude, peonage, and other forms of forced labor has an impact on the nationwide employment network and labor market.

*       *       *

(b)(14) Existing legislation and law enforcement in the United States and other countries are inadequate to deter *trafficking* and bring *traffickers* to justice, failing to reflect the gravity of the offenses involved. No comprehensive law exists in the United States that penalizes the range of offenses involved in the *trafficking scheme*.

*       *       *

(b)(24)  *Trafficking in persons* is a transnational crime with national implications. To deter international *trafficking* and bring its perpetrators to justice, nations including the United States must recognize that *trafficking* is a serious offense. This is done by prescribing appropriate punishment, giving priority to the prosecution of *trafficking offenses*, and protecting rather than punishing the victims of such offenses.

1   *Id.* (emphasis added).

2        Given Congress's clear intent to target, prosecute, and deter human

3   traffickers—those who transport persons "across international borders" or take

4   them "from their home communities to unfamiliar destinations" and force them to

5   work—it could not have intended the TVPA to prohibit immigration officials or

6   their private partners from requiring immigration detainees to participate in routine

7   housekeeping tasks in and around the facilities they are lawfully detained in.

8   Neither ICE nor CoreCivic plucked Plaintiffs from their homes and brought them to

9   OMDC to work as part of a trafficking scheme or criminal enterprise.  Plaintiffs

10  admit they were in the country illegally and lawfully detained at OMDC while

11  awaiting removal proceedings.  (Dkt. 1, ¶¶ 23-25.)  ICE and CoreCivic were not

12  perpetrating a transnational crime.

13       Where the literal application of a criminal statute would lead to "extreme or

14  absurd results, and where the legislative purpose gathered from the whole act would

15  be satisfied by a more limited interpretation, the "[g]eneral terms descriptive of a

16  class of persons made subject to a criminal statute may and should be limited."

17  *United States v. Katz*, 271 U.S. 354, 362 (1926); *see also Brooks v. Donovan*, 699

18  F.2d 1010, 1011 (9th Cir. 1983) (quoting *International Telephone & Telegraph

19  Corp. v. General Telephone & Electronics Corp.*, 518 F.2d 913, 917-18 (9th Cir.

20  1975)) (a court "must look beyond the express language of a statute where a literal

21  interpretation 'would thwart the purpose of the over-all statutory scheme or lead to

22  an absurd result'").  To interpret the phrase "labor or services of a person" literally

23  to include lawfully-detained immigration detainees who are required to clean up

24  after themselves is both extreme and absurd.

25       **b.**   This literal interpretation is also inconsistent with *United States v.

26  Kozminski*, 487 U.S. 931 (1988), and its progeny.  In *Kozminski*, the Supreme Court

27  was tasked with interpreting the phrase "involuntary servitude" in 18 U.S.C.

28  § 1584.  *Id.* at 934.  Pertinent to the issue in this case, the court held that the phrase

had the same meaning as the phrase "involuntary servitude" in the Thirteenth Amendment. *Id*. at 944-45. It also held that "involuntary servitude" "does not prevent the State or Federal Governments from compelling their citizens, by threat of criminal sanction, to perform certain civic duties," for example, military, jury, or roadwork service. *Id*. at 943-44. The court ultimately held that "involuntary servitude" did not include compulsion of services by the use or threatened use of psychological coercion (only physical or legal coercion). *Id*. at 948-49.

The Fifth Circuit applied this civic-duty exception in *Channer v. Hall*, 112 F.3d 214, 215 (5th Cir. 1997), a case brought by an immigration detainee, who alleged federal officials "compel[ed] him to work in the Food Services Department while he was an INS detainee," in violation of the Thirteenth Amendment (involuntary servitude). The detainee alleged he was "intimidated and threatened with solitary confinement if he failed to work." *Id*. at 218. Applying the civic-duty exemption in *Kozminski*, the court held that the detainee was not subjected to involuntary servitude because "the federal government is entitled to require a communal contribution by an INS detainee in the form of housekeeping tasks." *Id*. at 218-19. The court relied on other cases that exempted housekeeping chores by civil detainees, such as such as "fixing meals, scrubbing dishes, doing the laundry, and cleaning the building." *Id*. at 219 (citing *Bayh v. Sonnenburg*, 573 N.E.2d 398 (Ind. 1991); *Jobson v. Henne*, 355 F.2d 129 (2d Cir. 1966)).

The Fourth, Seventh, and Eighth Circuits have similarly recognized that requiring pretrial detainees to perform "general housekeeping responsibilities" is permissible. *See Bijeol v. Nelson*, 579 F.2d 423, 424-25 (7th Cir. 1978) (denying pretrial detainee's claim that he was required to perform general housekeeping duties in his cell and community areas "without pay and, when refusing to do so, he was placed in segregation" because "general housekeeping responsibilities are not punitive in nature and for health and safety must be routinely observed in any multiple living unit"); *Hause v. Vaught*, 993 F.2d 1079, 1085 (4th Cir. 1993)

(denying pretrial detainee's involuntary servitude claim that alleged no more than "general housekeeping responsibilities" of common areas); *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) ("Requiring a pretrial detainee to perform general housekeeping chores, on the other hand, is not" punishment).

Congress enacted § 1589 after *Kozminski* and *Channer*. It did so, in part, in response to *Kozminski*'s holding that involuntary servitude under § 1584 did not include psychological coercion. *See* Pub. L. No. 106-386, § 102(b)(13), 114 Stat. 1488 (2000). The final version incorporated *Kozminski*'s physical and legal coercion components of involuntary servitude, *see* 18 U.S.C. § 1589(a)(1)-(a)(3), and added the psychological coercion component rejected by *Kozminski*, *see* 18 U.S.C. § 1589(a)(4). It left in place *Kozminski*'s (and *Channing*'s) civic-duty exception to involuntary servitude.

Courts "assume that Congress [wa]s aware of existing law when it passe[d] [the] legislation" and "intended to incorporate" it. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990); *see also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988) (holding that courts will "generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts" and, "[i]n the absence of affirmative evidence in the language or history of the statute, we are unwilling to assume that Congress was ignorant" of it). Nothing in § 1589's legislative history suggests Congress intended to eradicate the civic-duty exception. Though it effectively broadened the definition of involuntary servitude to include psychological coercion, that is all it did. It left the civic-duty exception in-tact. In other words, although it extended the ways in which one can unlawfully obtain labor or services, it did not truncate the judiciary's interpretation of what constitutes labor or services.

Since Congress enacted § 1589, courts have continued to recognize the viability of this civic-duty exception against claims brought by immigration detainees. *See*, *e.g.*, *Owuor v. Courville*, 2:11-CV-926, 2013 WL 7877306, at *4

(W.D. La. Aug. 7, 2013), *report and recommendation adopted*, 2:11-CV-926, 2014 WL 949433 (W.D. La. Mar. 10, 2014); *Hutchinson v. Reese*, 5:07CV181-DCB-MTP, 2008 WL 4857449, at *4 (S.D. Miss. Nov. 7, 2008); *see also Mendez v. Haugen*, CV 14-4792 ADM/BRT, 2015 WL 5718967, at *5 (D. Minn. Sept. 29, 2015), *aff'd* (Feb. 22, 2016) (in pretrial detainee context, recognizing involuntary servitude does not prohibit general housekeeping chores such as "fixing and distributing meals, scrubbing dishes, laundering the sheets and clothing of other inmates, cleaning communal bathrooms and shower stalls, removing trash from common areas, and sweeping, mopping, and vacuuming general-use hallways and rooms").  There is no basis to deny the exception now or under the circumstances present in this case.

   c.   Finally, when Congress enacted § 1589 in 2000, it must be presumed that it was aware of 28 C.F.R. § 545.23.  *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).  That regulation provides:

> (a) Each sentenced inmate who is physically and mentally able is to be assigned to an institutional, industrial, or commissary work program. …
>
> (b) A pretrial inmate may not be required to work in any assignment or area other than housekeeping tasks in the inmate's own cell and in the community living area, unless the pretrial inmate has signed a waiver of his or her right not to work ….

28 C.F.R. § 545.23(a)-(b).  Construing § 1589 as criminalizing routine housekeeping tasks by immigration detainees would also criminalize the same tasks by federal inmates and pretrial detainees.  There is no relevant distinction between the two.  But that interpretation of the statute would effectively abrogate the regulation.  That cannot be what Congress intended.  Nothing in the legislative history suggests it did.

## 2. Plaintiffs' allegations fail to state a TVPA claim.

   Even assuming that the TVPA extends to routine housekeeping tasks by immigration detainees, Plaintiffs do not allege plausible facts to support a claim.

Their Complaint is simply "a formulaic recitation of the elements" of the TVPA (actually block quoting the statute) supported only by "conclusory statements." (Dkt. 1, ¶¶ 40-51.)  *See Iqbal*, 556 U.S. at 662, 678.  They baldly allege CoreCivic forced or coerced them to clean their living and community areas "under threat of punishment," including threatening them "with confinement, physical restraint, substantial and sustained restriction, deprivation, and violation of their liberty, and solitary confinement."  (Dkt. 1, ¶¶ 13, 16.)  But Plaintiffs provide no details or factual predicate for that claim as it pertains to them.  (Id., ¶¶ 27, 29.)  For example, they do not identify who threatened them, how they were threatened, or when they were threatened.  Nor do they connect any purported threat to any specific demand to work.  They do not even identify what specifically they were forced to do or when they were forced to do it.  They contend only that they were required to perform forced labor throughout the duration of their detention at OMDC.  That is insufficient.  *See Roman v. Tyco Simplex Grinnell*, 8:16-CV-3449-T-33AEP, 2017 WL 2427251, at *5 (M.D. Fla. June 5, 2017) (dismissing § 1589(a) TVPA claim where plaintiff failed to allege "who threatened him, how he was threatened, and for what purpose. … Was he threatened with violence, with being fired, or with something else?").

Though Plaintiffs allege they were threatened with "confinement, physical restraint, substantial and sustained restriction, deprivation, and violation of their liberty, and solitary confinement," they do not explain what this means or how it is different from or worse than the normal conditions of their detention.  Presumably, they are attempting to shoehorn this allegation into Subsection (a)(1) ("threats of physical restraint"), but threadbare recitals of the elements of a cause of action do not suffice.  *Iqbal*, 556 U.S. at 662.  None of Plaintiffs' allegations come close to satisfying Subsections (a)(2) ("serious harm or threats of serious harm"), (a)(3)

1  (legal coercion), or (a)(4) (psychological coercion).[1]  Thus, at a minimum, their

2  TVPA claim should be dismissed to the extent it relies on these provisions.

3          **3.      Plaintiffs do not have a private cause of action for conduct**
                 **prior to December 23, 2008.**

4      Congress enacted the TVPA in 2000.  Pub. L. No. 106-386, 114 Stat. 1464

5  (2000).  Originally, it did not contain a private right of action.  *Id.*  In 2003,

6  Congress amended the TVPA and included a civil remedy for victims against "the

7  perpetrator."  Pub. L. No. 108-193, 117 Stat. 2875 (2003).  On December 23, 2008,

8  Congress amended the civil remedy provision to allow victims to recover from

9  "whoever knowingly benefits, financially or by receiving anything of value from

10  participation in a venture which that person knew or should have known has

11  engaged in an act in violation of this chapter."  Pub. L. No. 110-457, 122 Stat. 5044

12  (2008).  However, Congress did not give this amendment retroactive effect. *Griffin*

13  *v. Alamo*, 4:14-CV-4065, 2016 WL 7391046, at *3 (W.D. Ark. Dec. 21, 2016).

14  Because Plaintiffs' Complaint alleges CoreCivic is liable under the "financial

15  benefit" prong of § 1595 (Dkt. 1, ¶ 43), any liability can only attach to conduct after

16  the effective date of the 2008 Amendment.   Alleged liability based on conduct

17  before the Amendment must be dismissed.

18          **4.      At least part of Plaintiffs' claim is time barred.**

19

20      A TVPA claim is subject to a 10-year statute of limitations.  *See* 18 U.S.C.

21  § 1595(c)(1).  Plaintiffs filed their Complaint on May 31, 2017.  (Dkt. 1.)  Thus, to

22

23  [1] "Serious harm" means any harm, whether physical or nonphysical, including
psychological, financial, or reputational harm, that is sufficiently serious, under all
24  the surrounding circumstances, to compel a reasonable person of the same
background and in the same circumstances to perform or to continue performing
25  labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2).
26  Legal coercion means "the use or threatened use of a law or legal process, whether
administrative, civil or criminal, in any matter or for any purpose for which the law
27  was not designed, in order to exert pressure on another person to cause that person
28  to take some action or refrain from taking some action." 18 U.S.C. § 1589(c)(1).

1   the extent Plaintiffs' claim relies on conduct before May 31, 2007, it is time barred.

2   **B.    California Trafficking Victims Protection Act**

3       Plaintiffs' Second Cause of Action is brought pursuant to California's

4   Trafficking Victims Protection Act ("California TVPA").    Under that statute, a

5   "victim of human trafficking, as defined in Section 236.1 of the Penal Code, may

6   bring a civil action for actual damages, compensatory damages, punitive damages,

7   injunctive relief, any combination of those, or any other appropriate relief."    Cal.

8   Civ. Code § 52.5(a).    Section 236.1(a) of the Penal Code states:   "A person who

9   deprives or violates the personal liberty of another with the intent to obtain forced

10  labor or services, is guilty of human trafficking."    Subsection (g) of that statute

11  states that "the definition of human trafficking in this section is equivalent to the

12  federal definition of a severe form of trafficking found in Section 7102(9) of Title

13  22 of the United States Code."

14      Plaintiffs treat their California TVPA claim as identical to their TVPA claim.

15  (See Dkt. 1, ¶¶ 52-62.)   It fails for all the same reasons.   *See* 2005 Cal. Legis. Serv.

16  Ch. 240 (A.B. 22) (discussing legislative intent, including its intent to "establish the

17  crime of trafficking of a person for forced labor or services").    The California

18  Legislature clearly did not intend for that statute to prohibit requiring immigration

19  detainees to participate in routine housekeeping tasks in and around the facilities

20  they are lawfully detained in.   Indeed, it could not have.   As discussed below, the

21  detention of immigrants is exclusively a federal function; California has no

22  authority to govern the conditions of their detention.   Thus, California's legislature

23  could not have contemplated its application to this area.   That it did not intend for

24  the statute to apply in any detention setting is supported by its enactment of Cal.

25  Penal Code § 2700, which requires prisoners in the custody of the California

26  Department of Corrections and Rehabilitation to work. *See also* 15 C.C.R.

27  § 3040(a) ("Every able-bodied person committed to the custody of the Secretary of

28  the Department of Corrections and Rehabilitation is obligated to work as assigned

by department staff and by personnel of other agencies to whom the inmate's custody and supervision may be delegated.").

Plaintiffs' factual allegations are also deficient.  Like their TVPA allegations, they merely recite the elements of the statute and loft conclusory statements.  An additional blaring omission is their failure to allege that CoreCivic "recruit[ed], harbor[ed], transport[ed], provi[ded], or obtain[ed] [them] *for* labor or services" and "*for the purpose of* subjection to involuntary servitude, peonage, debt bondage, or slavery." 22 U.S.C. § 7102(9) (emphasis added).  To the contrary, they allege they were unlawfully in the country, detained by ICE, and held at OMDC while they awaited removal proceedings.  (Dkt. 1, ¶¶ 23-24.)  *See Lofthus v. Long Beach Veterans Hosp.*, 214 F. Supp. 3d 908, 916 (C.D. Cal. 2016) (dismissing § 52.5 claim where plaintiff failed to allege he was detained for labor services).

Finally, § 52.5 did not go into effect until January 1, 2006.  2005 Cal. Legis. Serv. Ch. 240 (A.B. 22).  Thus, at a minimum, Plaintiffs' claim must be dismissed to the extent it is based on conduct before that time.

## IV. THE COURT SHOULD DISMISS PLAINTIFFS' VOLUNTARY LABOR CLAIMS – Fourth through Tenth Causes of Action

### A. Federal Law Preempts Plaintiffs' Voluntary Labor Claims.

Plaintiffs' Fourth through Tenth Causes of Action pertain to the Dollar-A-Day Work/voluntary labor allegations and are all brought under California's Labor Code.  "The Supremacy Clause makes the laws of the United States 'the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  *Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288, 1297 (2016) (quoting U.S. Const. art. VI, cl. 2).  "Put simply, federal law preempts contrary state law." *Id*. Federal law preempts state law if: (1) "Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law"; or (2) "under the circumstances of a particular case, the challenged state law stands as an obstacle to the

1    accomplishment and execution of the full purposes and objectives of Congress."

2    *Id*. (internal citations omitted).

3            **1.    Federal law occupies the entire field of regulating the detention of unlawful immigrants.**

4         "The Government of the United States has broad, undoubted power over the

5    subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S.

6    387, 394 (2012). "This authority rests, in part, on the National Government's

7    constitutional power to 'establish an uniform Rule of Naturalization,' and its

8    inherent power as sovereign to control and conduct relations with foreign nations."

9    *Id*. at 394-95 (quoting U.S. Const. art. I, § 8, cl. 4).

10        Pursuant to that exclusive authority, Congress enacted the Immigration and

11   Nationality Act ("INA"), which vests the responsibility of detaining aliens to the

12   Attorney General. *See, e.g.*, 8 U.S.C. §§ 1103, 1226, 1231; *see also Medina v.*

13   *O'Neill*, 589 F. Supp. 1028, 1038 (S.D. Tex. 1984) (citing *Shaughnessey v. U.S. ex*

14   *rel. Mezei*, 345 U.S. 206, 210 (1953)) (the detention of aliens "is a fundamental

15   sovereign attribute exercised exclusively by the legislative and executive branches

16   of the United States Government"). Congress also enacted the Immigration Reform

17   and Control Act ("IRCA"), "a comprehensive scheme prohibiting the employment

18   of illegal aliens in the United States." *Hoffman Plastic Compounds, Inc. v.*

19   *N.L.R.B.*, 535 U.S. 137, 147 (2002) (citing 8 U.S.C. § 1324a).

20        "Field preemption reflects a congressional decision to foreclose any state

21   regulation in the area, even if it is parallel to federal standards." *Arizona*, 567 U.S.

22   at 401. Where Congress occupies an entire field "even complementary state

23   regulation is impermissible." *Id*. The INA and IRCA reflect a congressional

24   decision to regulate—entirely and exclusively—the detention of unlawful

25   immigrants, including employment and labor practices at their detention facilities.

26   Even the federal government is precluded from providing a detained alien with

27   work authorization unless they are a lawfully admitted permanent resident. *See* 8

28

U.S.C. § 1226(a)(3).  These federal comprehensive schemes preempt any state's individual labor laws insofar as they extend into this highly-regulated area.  *See Arizona*, 567 U.S. at 399 ("The intent to displace state law altogether can be inferred from a framework of regulation so pervasive that Congress left no room for the States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.") (Internal quotation marks and citations omitted).

## 2. California's minimum wage and overtime wage laws conflict with federal law.

At a minimum, Plaintiffs' minimum wage (Fourth Cause of Action) and overtime wage (Fifth Cause of Action) claims are specifically preempted.  "[S]tate laws are preempted when they conflict with federal law.  This includes cases where compliance with both federal and state regulations is a physical impossibility, and those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399 (internal quotation marks and citations omitted).

As part of the INA, Congress authorized ICE to pay "allowances (at such rate as may be specified from time to time in the appropriation Act involved) to aliens, while held in custody under the immigration laws, for work performed."  8 U.S.C. § 1555(d). Congress then set that rate: "a rate not in excess of $1 per day." Department of Justice Appropriation Act, Pub. L. No. 95-86, 91 Stat. 426 (1978) (emphasis added); *see also Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 396 (5th Cir. 1990) ("Pursuant to 8 U.S.C. § 1555(d), which provides for payment of allowances to aliens for work performed while held in custody under the immigration laws, volunteers are compensated one dollar ($1.00) per day for their participation. The amount of payment was set by congressional act."); *Guevara v. I.N.S.*, 954 F.2d 733 (Fed. Cir. 1992) (unpublished disposition) ("The appropriation acts provide for the $1 per day wage.").

During Plaintiffs' detention at OMDC, California's minimum wage ranged between $6.75 per hour and $9.00 per hour.[2]  Under Cal. Labor Code § 1197, this minimum wage "is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."  Under Cal. Labor Code § 510(a), employees are entitled to "the rate of no less than one and one-half times the regular rate of pay" for any work in excess of eight hours in one day (and any work in excess of 40 hours in any workweek).  These state statutes directly conflict with the rate fixed by Congress—no more than $1 per day.  Complying with both is impossible.  Consequently, these state laws are preempted.  *See Arizona*, 567 U.S. at 406 (holding Arizona law prohibiting employment of unauthorized aliens preempted because it "would interfere with the careful balance struck by Congress with respect to unauthorized employment of aliens").

## B.   Immigration Detainees Are Not Employees Under California's Labor Code.

Preemption aside, Plaintiffs' voluntary labor claims still fail as a matter of law.  Those claims apply only if Plaintiffs were CoreCivic employees.  *See* Cal. Labor Code § 201(a) (compensation due), § 226(a) (wage statements), § 226.7(b) (rest periods), § 432.5 (terms and conditions), § 510(a) (overtime wages), § 512(a) (meal periods), § 1197 (minimum wage); *see generally Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1232 (N.D. Cal. 2015).  They were not as a matter of law, and therefore these claims must be dismissed.

**1.**   California's Labor Code is divided into many Divisions, Parts, Chapters, and Articles.  It does not universally define "employee."  Sections 201 (compensation due), 226 (wage statements), and 226.7 (rest periods) are found in Division 2 (Employment Regulations and Supervision), Part 1 (Compensation), Chapter 1 (Payment of Wages), Article 1 (General Occupations).  Section 200 provides several definitions "[f]or purposes of this article," but it does not define

---

[2] *See* https://www.dir.ca.gov/iwc/minimumwagehistory.htm.

"employee." Section 432.5 (terms and conditions) is found in Division 2, Part 1, Chapter 3 (Privileges and Perquisites), Article 3 (Contracts and Applications for Employment). Though Article 1 (Gratuities), § 350, defines "employee," that definition only applies to Article 1 ("As used in this article …"), not Article 3. Sections 510 (overtime wages) and 512 (meal periods) are found in Division 2, Part 2 (Working Hours), Chapter 1 (General). Section 500 provides several definitions "[f]or purposes of this chapter," but it does not define "employee." Finally, § 1194 (minimum wage) is found in Division 2, Part 4 (Employees), Chapter 1 (Wages, Hours, Working Conditions), but that Chapter does not define "employee."

Thus, the Labor Code defines "employee" carefully, deliberately, and only with respect to certain Chapters, Parts, Articles, or Sections. *See* Cal. Labor Code §§ 350, 1060(c), 1071(d), 1132.4, 1400(h), 1501(b), 1961, 2051(c), 3351, 4609(d)(2), 6304.1(a)-(b). Notably, when the California Legislature wanted to include aliens in that definition, it expressly did so. *See* Cal. Labor Code §§ 350, 2051(c), 3351. When the Legislature employs a term in one part of a statute but does not include it in other parts, a court should not interpret a statute to insert an omitted phrase. *Phillips v. San Luis Obispo County Dep't*, 183 Cal. App. 3d 372, 379 (Cal. App. 1986); *see also Wilson v. City of Laguna Beach*, 6 Cal. App. 4th 543, 554, (Cal. App. 1992) ("The omission of any express reference to parking in subdivision (b), when there is such a reference in subdivision (a), is therefore dispositive."). Because it did not include a definition of employee that included immigrant detainees for the pertinent statutes, the Court should not read that definition into the term.

**2.** That employee status under these Labor Code provisions does not extend to immigrant detainees who voluntarily work in a detention center is supported by the IRCA, which "makes it unlawful to knowingly hire or continue to employ an unauthorized alien." *Hilber v. Int'l Lining Tech.*, C 12-00003 LB, 2012 WL 3542421, at *1 (N.D. Cal. July 24, 2012) (citing 8 U.S.C. § 1324a). Because it

1   is unlawful to hire an immigrant detainee (i.e., "undocumented individuals lacking

2   legal permission to enter or remain in the United States," Dkt. 1, ¶ 23), it would be

3   absurd to confer employer or employee status in these circumstances.

4       **3.**    CoreCivic has found no case that has held these Labor laws extend to

5   immigration detainees.  In a related context, however, courts have repeatedly held

6   that inmates are not employees for purposes of the Fair Labor Standards Act

7   ("FLSA"), *see Burleson v. State of Cal.*, 83 F.3d 311, 313 (9th Cir. 1996); *Morgan*

8   *v. MacDonald*, 41 F.3d 1291. 1293 (9th Cir. 1994); *Hale v. Arizona*, 993 F.2d 1387,

9   1389 (9th Cir. 1993); the Americans with Disabilities Act, *see Castle v. Eurofresh,*

10  *Inc.*, 731 F.3d 901, 906-08 (9th Cir. 2013); *Murdock v. Washington*, 193 F.3d 510,

11  512 (7th Cir. 1999); *Addison v. California Inst. for Men*, EDCV151259JVSAJW,

12  2016 WL 8732476, at *7 (C.D. Cal. Nov. 1, 2016), *report and recommendation*

13  *adopted,* EDCV151259JVSAJW, 2016 WL 8738151 (C.D. Cal. Dec. 16, 2016); or

14  the Toxic Substances Control Act or Clean Air Act, *see Coupar v. U.S. Dept. of*

15  *Labor*, 105 F.3d 1263, 1265 (9th Cir. 1997).

16      In an even more analogous context, the Fifth Circuit held that immigrant

17  detainees who performed maintenance, cooking, laundry, and other services, for $1

18  per day, at their detention center were not employees under the FLSA. *See*

19  *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 395 (5th Cir. 1990). Because

20  immigration detainees are "removed from American industry," the court held the

21  purpose of the FLSA—to protect the standard of living and general well-being of

22  the worker in American industry—was not furthered by including them in the

23  definition.  Similarly, in *Villarreal v. Woodham*, 113 F.3d 202, 207 (11th Cir.

24  1997), the court held that a pretrial detainee was not an employee for purposes of

25  the FLSA because the "economic reality of the situation" did not warrant it.  The

26  correctional facility met the detainee's needs, his standard of living was protected,

27  and there was no "indicia of traditional free-market employment." *Id*.; *see also*

28  *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008) (civilly committed detainee

was not an employee for purposes of the FLSA because "people are not imprisoned for the purpose of enabling them to earn a living.  The prison pays for their keep.  If it puts them to work, it is to offset some of the cost of keeping them, or to keep them out of mischief, or to ease their transition to the world outside, or to equip them with skills and habits that will make them less likely to return to crime outside.  None of these goals is compatible with federal regulation of their wages and hours").  Similarly, here, the economic reality is that the detainees' standard of living is protected and there is no indicia or traditional free-market employment.

### C.    The Wage Orders Do Not Apply.

In support of Plaintiffs' Fourth, Fifth, Sixth, and Seventh Causes of Action, Plaintiffs rely on Industrial Commission Wage Orders ("WO") 5-2001 and 15-2001.  Neither Order applies, and these Claims should be dismissed to the extent they rely on them.

#### 1.    5-2001

WO 5-2001 applies only to the "Public Housekeeping Industry.  *See* 8 C.C.R. § 11050(1).  It defines that industry as "any industry, business, or establishment which provides meals, housing, or maintenance services whether operated as a primary business or when incidental to other operations in an establishment not covered by an industry order of the Commission."  8 C.C.R. § 11050(2)(P).  It then provides a long list of exemplary businesses (e.g., restaurants, hotels, hospitals, schools).  8 C.C.R. § 11050(2)(P)(1)-(7).  That list does not include corrections or detention facilities.  Though the list is not exhaustive, it illustrates the type of industries that are inclusive and none of them are remotely similar to the detention of immigration detainees.  They are all consumer industries.

#### 2.    15-2001

WO 15-2001 applies only to "persons employed in household occupations." 8 C.C.R. § 11150(1).  It defines "Household Occupations" to mean "all services related to the care of persons or maintenance of a *private household or its premises*

by an employee of a private householder." 8 C.C.R. § 11150(2)(I).  OMDC is not a private household; it is a detention facility.

## V.   THE COURT SHOULD DISMISS PLAINTIFFS' DERIVATIVE CLAIMS – Third, Eleventh, and Twelfth Causes of Action

Plaintiffs' Third (California Unfair Competition claim), Eleventh (Negligence), and Twelfth (Unjust Enrichment) Causes of Action pertain to both the Forced Labor allegations and Voluntary Labor allegations and are purely derivative claims.  In other words, they rely on the viability of their claims under the TVPA, the California TVPA, and California's Labor laws.  (See Dkt. 1, ¶¶ 65, 103-108, 123-126.)  Therefore, these derivative claims should be dismissed to the extent the predicate claims are dismissed.

Plaintiffs' Unjust Enrichment claim fails for an additional reason.  "The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (Cal. App. 1989). An equitable theory of recovery is barred if an adequate remedy exists at law against the same person.  *See Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996). "[T]he remedy for unjust enrichment applies only in the absence of an adequate remedy at law."  *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 770 (N.D. Cal. 2010).

Here, Plaintiffs' unjust enrichment claim should be dismissed because they fail to even plead the absence of an adequate remedy at law. *See Parrish v. NFL Players Ass'n*, 534 F. Supp. 2d 1081, 1100 (N.D. Cal. 2007).  Nevertheless, courts typically find that unjust enrichment is an unavailable remedy under California law when the plaintiff pleads other claims seeking redress against the same defendant, finding the other claims prove that adequate remedies exist.  *See, e.g., Rhynes v. Stryker Corp.*, 10-5619 SC, 2011 WL 2149095, *4 (N.D. Cal. May 31, 2011) ("Where the claims pleaded by a plaintiff may entitle her to an adequate remedy at law, equitable relief is unavailable."); *Baggett v. Hewlett-Packard Co.*, 582 F.

Supp. 2d 1261, 1271 (C.D. Cal. 2007) (dismissing unjust enrichment claim where plaintiff also claimed fraudulent concealment, violation of California unfair business practices law; trespass to chattels, and conversion); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) (dismissing unjust enrichment claim where plaintiff also claimed violations of the California Consumers Legal Remedies Act, fraudulent concealment, and unfair practices); *accord Salas v. Toyota Motor Sales, U.S.A., Inc.*, CV 15-8629 FMO (EX), 2016 WL 7486600, at *13 (C.D. Cal. Sept. 27, 2016) (collecting cases).

Likewise here, Plaintiffs' eleven other claims show that they have adequate remedies at law that bar their claims for equitable relief. That statutory scheme provides remedies in the form of mandatory restitution to victims for violations, and a private cause of action under which Plaintiffs' § 1589 claims are brought. *See also* 18 U.S.C. §§ 1593 (mandatory restitution), and 1595 (civil remedy for violation of peonage, slavery, and human trafficking). Similarly, Plaintiffs have pled nine violations of California's human trafficking and labor laws, and one claim for negligence under state tort law—all seeking redress for the same alleged injuries. Adequate remedies undisputedly exist at law.

With respect to Plaintiffs' Voluntary Labor allegations, unjust enrichment is also an unavailable remedy because their agreement to participate in the work program are contracts that expressly define the parties' rights, which cannot be altered in equity. *See CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1074, 1078 (S.D. Cal. 2010) (holding unjust enrichment is an action in quasi-contract, "which does not lie when an enforceable, binding agreement exists defining the rights of the parties") (citing *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).

## VI.   CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

Dated:        August 11, 2017

By s/ Nicholas D. Acedo
    Daniel P. Struck
    dstruck@swlfirm.com
    Rachel Love
    rlove@swlfirm.com
    Nicholas D. Acedo
    nacedo@swlfirm.com
    Ashlee B. Fletcher
    afletcher@swlfirm.com
    STRUCK WIENEKE & LOVE, P.L.C.

    Ethan H. Nelson
    LAW OFFICE OF ETHAN H. NELSON
    ethannelsonesq@gmail.com

    Attorneys for Defendant CoreCivic, Inc.

3355351.1