**LAW OFFICE OF ROBERT L. TEEL**
ROBERT L. TEEL (SBN 127081)
*lawoffice@rlteel.com*
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
Telephone:(866) 833-5529
Facsimile: (855) 609-6911

***Attorneys for Plaintiff and the Proposed Class***

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CORECIVIC, INC., a Maryland corporation,<br><br>Defendant. | Case No.: 17-cv-1112-JLS-NLS<br><br>CLASS ACTION<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:   September 14, 2107<br>Time:  1:30 p.m.<br>Place:  Courtroom 4D<br>Judge:  Hon. Janis L. Sammartino<br><br>**Oral Argument Requested**<br><br>DEMAND FOR JURY TRIAL |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION..............................................................................................1

II.  ARGUMENT ................................................................................................2

A.  Failure to State a Claim Under 18 U.S.C. § 1589, *et seq.*............................2

1.  Facial Plausibility Exists .........................................................................2

2.  Congress Intentionally Prohibited the Alleged Forced Labor .................4

a.  *The Allegations Go Beyond Housekeeping Tasks*.................................4

b.  *§ 1589 Reaches Beyond Involuntary Servitude* ...................................6

c.  *There is No Civic Duty Exception for § 1589 Claims* ..........................7

d.  *Plaintiffs Are Not Inmates*..................................................................8

e.  *Threat of Solitary Confinement is Threat of Serious Harm*..................9

3.  Statutes of Limitation Are an Affirmative Defense to be Proven...........11

B.  The California Trafficking Victims Protection Act .....................................13

1.  Declaring Findings Is Not the Same as An Exclusive Definition...........13

2.  The Plain Meaning of Cal. Pen. Code § 236.1(a) Governs.....................14

3.  Plaintiffs Are Neither Prisoners, nor in Custody of the CDCR .............15

4.  Plaintiffs Allege Facts Showing Intent to Obtain Forced Labor ............15

5.  Defendant's Limitations Argument is An Affirmative Defense ..............16

C.  The Unfair Competition Law, Unjust Enrichment, and Negligence............17

1.  The Complaint Pleads Both Unlawful and Unfair UCL Prongs..............17

2.  Unjust Enrichment is Not Duplicative of the UCL or Other Claims.......19

3.  The Complaint Pleads Negligence, Not Just Negligence *Per Se*............20

D.  California Labor Law Claims.....................................................................21

1.  The California Labor Law Claims Do Not Affect Immigration..............21

a.  *Labor Laws Don't Intrude on or Conflict with Immigration Law* ........22

b.  *It is Possible to Comply with Federal and State Law*..........................23

2.  Plaintiffs Are Employees Under California Law.....................................25

a.  *Federal Immigration Law Doesn't Govern the Labor Laws* ...............25

b.  *Plaintiffs are Employees under California's Legal Definition* ............27

*Owino, et al v. CoreCivic, Inc.* No. 17-cv-1112
OPPOSITION TO MOTION TO DISMISS

      c.     *Plaintiffs' Labor Does Not Belong to Defendant* ..................................27

      d.     *California Wage Orders Govern Who is an Employee* .......................29

III.     CONCLUSION...............................................................................................31

*Owino, et al v. CoreCivic, Inc.* No. 17-cv-1112
OPPOSITION TO MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied Grape Growers v. Bronco Wine Co.*,
   203 Cal.App.3d 432 (1988) ...............................................................17

*Arizona v United States*,
   567 U.S. 387 (2012)...........................................................22, 26, 27

*ASARCO, LLC v. Union Pacific Railroad Company*,
   765 F.3d 999 (9th Cir. 2014) ...................................................11, 16

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ...................................................18, 19

*Ayala v. Antelope Valley Newspapers, Inc.*,
   59 Cal.4th 522 (2014) ...............................................................31

*Bay Area Roofers Health & Welfare Trust v. Sun Life Insurance Co.*
   *of Canada*,
   73 F. Supp. 3d 1154 (E.D. Cal. 2014) ...............................................26

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................2, 3, 4, 13

*Bonnette v. California Health and Welfare Agency*,
   704 F.2d 1465 (9th Cir. 1983) ...............................................28

*Brooks* v. *Florida*,
   389 U.S. 413 (1967)...........................................................10

*Bruton v. Gerber Prods. Co.*,
   No. 15-15174 (9th Cir. July 17, 2017)...............................................19

*Burleson v. State of Cal.*,
   83 F.3d 311 (9th Cir. 1996) ...............................................27

*Catlin v. Superior Court*,
   51 Cal.4th 300 (2011) ...............................................15

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (1999) ..............................................................17

*Chamber of Commerce v. Whiting*,
563 U.S. 582 (2011)..........................................................................21

*Channer v. Hall*,
112 F.3d 214 (5th Cir. 1997) .........................................................6, 7

*Conley v. Gibson*,
355 U.S. 41 (1957)..........................................................................3, 4

*Coupar v. Dep't of Labor*,
105 F.3d 1263 (9th Cir.1997) ...........................................................28

*Davis v. Ayala*,
135 S.Ct. 2187 (2015)...................................................................10, 11

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ...........................................................17

*De Canis v. Bica*,
424 U.S. 351 (1976)...........................................................................21

*DiRosa v. Showa Denko K. K.*,
44 Cal.App.4th 799 (1996) ................................................................20

*Dynamex Operations West, Inc v Superior Court of Los Angeles County*,
179 Cal.Rptr.3d 69 ............................................................................30

*E.E.O.C. v. Tortilleria La Mejor*,
758 F. Supp. 585 (E.D. Cal. 1991) ....................................................26

*F.D.I.C. v. Dintino*,
167 Cal.App.4th 333 (2008) ..............................................................19

*In re Facebook PPC Advert. Litig.*,
709 F. Supp. 2d 762 (N.D. Cal. 2010).................................................19

*Farmers Bros. Coffee v. Workers' Comp. Appeals Bd.*,
133 Cal.App.4th 533 (2005) ..............................................................26

- iv -

*First Nationwide Savings v. Perry*,
    11 Cal.App.4th 1657 (1992) ................................................................18

*Furman v. Georgia*,
    408 U.S. 238 (1972)...........................................................................10

*Ghirardo v. Antonioli*,
    14 Cal.4th 39 (1996) ....................................................................18, 19

*Goldberg v. Whitaker House Coop., Inc.*,
    366 U.S. 28 (1961).............................................................................29

*People ex rel. Harris v. Pac Anchor Transp., Inc.*,
    59 Cal.4th 772 (Cal. 2014).................................................................17

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
    61 Cal.4th 988 (2015) .......................................................................19

*Hernandez v. Lopez*,
    180 Cal.App.4th 932 (2009) .............................................................19

*Hoffman Plastic Compounds, Inc. v. N.L.R.B.*,
    535 U.S. 137 (2002).....................................................................22, 26

*Hutchinson v. Reese*,
    2008 WL 4857449 (S.D. Miss. Nov. 7, 2008)....................................7

*Incalza v. Fendi N. Am., Inc.*,
    479 F.3d 1005 (9th Cir. 2007) ..........................................................26

*Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.*,
    190 Cal.App.4th 1502 (2010) ...........................................................20

*Jones v. Brock*,
    549 U.S. 199 (2007)...........................................................................11

*L. Byron Culver & Associates v. Jaoudi Industrial & Trading Corp.*,
    1 Cal.App.4th 300 (1991) .................................................................31

*Ladd v. County of San Mateo*,
    12 Cal.4th 913 (1996) .......................................................................21

- v -

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 ............................................................................12

*People ex rel. Lockyer v. Fremont Life Ins. Co.*,
    128 Cal.Rptr.2d 463 (2002) ....................................................17

*Lofthus v. Long Beach Veterans Hosp.*,
    214 F. Supp. 3d 908 (C.D. Cal. 2016) .............................14, 15

*Lucas v. Jerusalem Cafe, LLC*,
    721 F.3d 927 (8th Cir. 2013) ............................................22, 23

*Martinez v. Combs*,
    49 Cal.4th 35 (2010) ........................................................27, 30

*Mary M. v. City of Los Angeles*,
    54 Cal.3d 202 (1991) ...............................................................31

*In re Medley*,
    134 U.S. 160 (1890).................................................................9

*Mendez v. Haugen*,
    2015 WL 5718967 (D. Minn. Sept. 29, 2015).......................7

*Menocal v. GEO Group, Inc.*,
    113 F.Supp.3d 1125 (D. Colo. 2015)..................................4, 6

*Morgan v. MacDonald*,
    41 F.3d 1291 (9th Cir.1994) ..................................................28

*Munoz v. MacMillan*,
    195 Cal.App.4th 648 (2011) ..................................................18

*N.L.R.B. v. C & C Roofing Supply, Inc.*,
    569 F.3d 1096 (9th Cir.2009) ................................................27

*N.L.R.B. v. Kolkka*,
    170 F.3d 937 (9th Cir.1999) ..................................................27

*Novak* v. *Beto*,
    453 F.2d 661 (5th Cir. 1971) .............................................9, 10

- vi -

*Owuor v. Courville*,
    WL 7877306 (W.D. La. Aug. 7, 2013)...............................................................7

*Padilla v. Kentucky*,
    559 U.S. 356 (2010)..............................................................................15, 29

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ...................................................................20

*Pastoria v. Nationwide Ins.*,
    112 Cal.App.4th 1490 (2003) ...................................................................18

*People v. King*,
    38 Cal.4th 617 (2006)...............................................................................15

*People v. Michael David Cornett*,
    53 Cal. 4th 1261 (2012) ..........................................................................14

*People v. Watson*,
    42 Cal.4th 822 (2007) .............................................................................15

*Podolsky v. First Healthcare Corp.*,
    50 Cal.App.4th 632 (1996) ......................................................................18

*Ramirez v. Yosemite Water Co.*,
    20 Cal.4th 785 (1999) .............................................................................30

*In re Reyes*,
    814 F.2d 168 (5th Cir. 1987) ...................................................................23

*Roman v. Tyco Simplex Grinnell*,
    2017 WL 2427251 (M.D. Fla. June 5, 2017) ............................................3

*Rutherford Food Corp. v. McComb*,
    331 U.S. 722 (1947).................................................................................29

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations*,
    48 Cal.3d 341 (1989) ...............................................................................31

*Salas v. Sierra Chemical Co.*,
    59 Cal.4th 407 (2014) .......................................................................25, 26

- vii -

*Sams v. Yahoo! Inc.*,
  713 F.3d 1175 (9th Cir. 2013) ...................................................................11

*Sarah Samet, et al v. Procter and Gamble Co.*,
  Case No.: 5:12-cv-01891 PSG, Dkt. 136 (N.D. Cal. Aug. 24, 2015) ...............20

*Scott v. Kuhlmann*,
  746 F.2d 1377 (9th Cir. 1984) ...................................................................11

*Singh v. Jutla & C.D. & R.'s Oil, Inc.*,
  214 F. Supp. 2d 1056 (N.D. Cal. 2002)........................................................26

*Smith v. State Farm Mutual Automobile Ins. Co.*,
  93 Cal.App.4th 700 (2001) ........................................................................18

*Nunag–Tanedo v. East Baton Rouge Parish School Bd.*,
  790 F.Supp.2d 1134 (C.D. Cal.2011) ............................................................4

*Stogner v. California*,
  539 U.S. 607 (2003)...................................................................................12

*Sure–Tan, Inc. v. N.L.R.B.*,
  467 U.S. 883 (1984)...................................................................................26

*Tony Susan Alamo Found. v. Secretary of Labor*,
  471 U.S. 290 (1985) ..................................................................................29

*Ulin v. ALAEA–72, Inc.*,
  2011 WL 723617 (N.D. Cal. Feb. 23, 2011) ..................................................27

*United States v. Brechtel*,
  997 F.2d 1108 (5th Cir. 1993) ....................................................................12

*United States v. Grimes*,
  142 F.3d 1342 (11th Cir. 1998) ..................................................................12

*United States v. Jeffries*,
  405 F.3d 682 (8th Cir. 2005) ......................................................................12

*United States v. Kaufman*,
  546 F.3d 1242 (10th Cir. 2008) ....................................................................6

- viii -

*United States v. Kozminski*,
    487 U.S. 931 (1988)..............................................................6, 7, 11

*United States v. Rosenwasser*,
    323 U.S. 360 (1945).......................................................................29

*United States v. Taliaferro*,
    979 F.2d 1399 (10th Cir. 1992) .....................................................12

*Valencia v. Volkswagen Grp. of Am. Inc*,
    2015 WL 4747533 (N.D. Cal. Aug. 11, 2015) ...............................18

*Walling v. Portland Terminal Co.*,
    330 U.S. 148 (1947)........................................................................29

*Weems v. United States*,
    217 U.S. 349 (1910).........................................................................9

*Wyandotte Transp. Co. v. United States*,
    389 U.S. 191 (1967)........................................................................22

**Statutes**

U.S. Const., Art. 1 § 7.........................................................................24

U.S. Const., Eighth Am. ......................................................................10

U.S. Const.,Thirteenth Am.  ................................................6, 7, 8, 10, 11

8 U.S.C. § 1324...................................................................................24

8 U.S.C. § 1555..............................................................................23, 24

18 U.S.C. § 1593.................................................................................11

18 U.S.C. § 1584................................................................6, 7, 8, 10, 11

18 U.S.C. § 1589...........................................................................*passim*

18 U.S.C. § 1590...................................................................................7

18 U.S.C. § 1591...................................................................................7

18 U.S.C. § 1981...................................................................................7

*Owino, et al v. CoreCivic, Inc.* No. 17-cv-1112
OPPOSITION TO MOTION TO DISMISS

18 U.S.C. § 1983 ............................................................................7

18 U.S.C. § 1984 ............................................................................7

22 U.S.C. § 7102(9) ..................................................................13, 14

28 U.S.C. § 1658 ..........................................................................12

29 U.S.C. § 218 ...........................................................................23

42 U.S.C. § 2000e .........................................................................26

Cal. Bus. & Prof. Code § 17200 .....................................................17, 18

Cal. Civ. Code § 1714 ....................................................................20

Cal. Civ. Code § 3339 ....................................................................26

Cal. Gov. Code § 7285 ...................................................................26

Cal. Evid. Code § 669 ....................................................................20

Cal. Health and Safety Code § 24000 .................................................26

Cal. Labor Code § 1171.5 ..........................................................25, 26

Cal. Labor Code § 3351 ..................................................................28

Cal. Pen. Code § 52.5 .............................................................13, 14, 15

Cal. Pen. Code § 236.1 .............................................................13, 14, 16

Cal. Pen. Code § 2700 .............................................................15, 28, 29

California Trafficking Victims Protection Act ........................................13

Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ..........................*passim*

Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* ...................21, 22, 23, 24

Immigration Reform and Control Act ...............................................*passim*

National Labor Relations Act ...........................................................26

Trafficking Victims Protection Act .......................................................1

- x -

Cal. Unfair Competition Law ................................................................17,18, 19, 21

William Wilberforce Trafficking Victims Protection Reauthorization
    Act of 2008, Pub. L. No. 110-457, § 221(2)(B), 122 Stat. 5044,
    5067 (codified at 18 U.S.C. § 1595(c)) ...............................................12

**Other Authorities**

15 C.F.R. § 3040 ...................................................................................15

28 C.F.R. § 500.1 .....................................................................................8

28 C.F.R. § 545.23(b) ..............................................................................8

5B Charles Alan Wright et al., Federal Practice and Procedure § 1357
    (3d ed. 1998) .........................................................................................11

Congressional Research Service Report Prepared for Members and
    Committees of Congress. https://fas.org/sgp/crs/misc/R42388.pdf ...................26

Fed. R. Civ. P. 8(a)..........................................................1, 2, 3, 4, 13, 19

Fed. R. Civ. P. 8(c)(1)...................................................................11, 16

Fed. R. Civ. P. 8(d)(2)..........................................................................19

Fed. R. Civ. P. 12(b) ...................................................................2, 11, 116

Fed. R. Civ. P. 15(a)(2)........................................................................31

*Josendis Amicus Letter* at
    https://www.dol.gov/sol/media/briefs/josendis(A)-8-26-2010.htm ...................22

Restatement Second of Torts, section 282............................................20

- xi -

Plaintiffs Sylvester Owino and Jonathan Gomez (individually referred to as "Plaintiff" and collectively as "Plaintiffs") hereby oppose Defendant's Motion to Dismiss Complaint (the "Motion").

## I.   INTRODUCTION

The Complaint in this case alleges that as a result of forced labor obtained through physical restraint, threats of solitary confinement, and coercion, detainees who are neither charged with, nor incarcerated for, a crime are being exploited through the contribution of their labor to Defendant's for-profit business venture. Defendant's response claims that federal immigration law conflicts with Plaintiffs' claims and preempts the field, and forced labor through coercion, including solitary confinement, is nothing more than ordinary housekeeping.  Defendant argues it may benefit from a no-cost labor pool that it would otherwise have to pay for, thus resulting in millions of dollars in unjust profits.

Defendant moves to dismiss the Complaint arguing:   (a) Plaintiffs have failed to meet the pleading standard of Fed. R. Civ. P. § 8(a); (b) Plaintiffs have a "civic duty" to provide forced labor and services for Defendant's business operations; (c) California labor laws pertaining to detainees (even those who are residents and lawfully present)[1] conflict with federal law; and (d) Plaintiffs are not employees..

Contrary to Defendant's Motion, Plaintiffs' Complaint meets and exceeds the standards governing a complaint under Rule 8(a).  The Complaint clearly alleges that Defendant's forced labor practices under 18 U.S.C.§ 1589, *et seq.* (the Trafficking Victims Protection Act herein after referred to as the "TVPA" or "§ 1589") extend well beyond compelling Plaintiffs to perform "civic dut[ies]" or "housekeeping tasks" and reach the proscribed level of worker exploitation in the operation of Defendant's for-profit business venture.

---

[1] Contrary to Defendant's Motion to Dismiss (*See* Defendant's Motion at 8:9-10), the Complaint does ***not*** admit Plaintiffs were in the country illegally.  In fact, the evidence will show Plaintiff Gomez is a lawful permanent resident holding a "green card" having been officially granted immigration benefits, including permission to reside and take employment in the United States.

- 1-

1  Not every state law concerning immigrants is preempted by federal law.  In
2  this case (which involves federal and state forced labor statues *and* California labor
3  law), a state statute is only preempted if it attempts to regulate *immigration law,* or
4  conflicts with federal law, making compliance with both *impossible*.  There is
5  nothing in the forced labor statutes or California labor laws that either regulate
6  immigration law or makes compliance with federal law impossible.  The reality and
7  circumstance of Plaintiffs' and the putative Class Members' labor and services
8  benefitting Defendant renders them in fact employees under applicable law.

9  The Court should deny the Motion.

10  **II.**   **ARGUMENT**

11  **A.**   **Failure to State a Claim Under 18 U.S.C. § 1589, *et seq*.**

12  Defendant moves to dismiss the Complaint pursuant to what appears to be an
13  unenumerated Fed. R. Civ. P. 12(b) motion, arguing it fails to contain a "short and
14  plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ.
15  P. 8(a)(2).  The rule is a plaintiff must plausibly plead more than a possibility, but
16  need not allege a probability, of unlawful conduct.

17  **1.  Facial Plausibility Exists**

18  The issue before the Court regarding plausibility is whether the Complaint
19  contains sufficient factual matter, accepted as true, to "state a claim to relief that is
20  plausible on its face." *Iqbal*, 556 U.S. 662 (2009) (citing *Bell Atlantic Corp. v.*
21  *Twombly,* 550 U.S. 544, 570 (2007) ("*Twombly*")).  The rule is that a claim has facial
22  plausibility and is sufficient to survive a motion to dismiss when the plaintiff pleads
23  factual content that allows the court, based on its experience and common sense, to
24  draw the reasonable inference that the defendant is liable for the misconduct alleged.
25  *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but
26  it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*

27  FRCP § 8(a)(2) does not require specific facts; the statement need only "'give
28  the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"

- 2 -

*Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).  In addition, when ruling on a motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.  *Id.* at 556 (citations omitted).  In other words, FRCP § 8(a)(2) does not require "detail[ed]" factual allegations; only a showing of some factual allegation entitling the plaintiff to relief.  *Id.*

In support of its argument, Defendant likens Plaintiffs' Complaint to that filed in the case of *Roman v. Tyco Simplex Grinnell*, 8:16-CV-3449-T-33AEP, 2017 WL 2427251, at *5 (M.D. Fla. June 5, 2017).  Defendant's comparison of Plaintiffs' well-pled Complaint to the insufficiently pled third Amended Complaint (Dkt. 16) in the *Roman* case invites a comparison of the two by the Court.

Contrary to Defendant's argument, such a comparison establishes that Plaintiffs have provided more than sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face by pleading, *inter alia*, the who, where, what, when, and how of the labor and services they were forced to provide:

> (a) the who (CoreCivic); (b) the where (the interior and exterior of the Otay Mesa Detention Center facility), (c) the what (providing labor and services for the operation of Defendant's facility outside of Plaintiffs' cells and living area pods under threat of lockdown or solitary confinement, including: (1) cleaning and maintaining the interior throughout Defendant's facility (*e.g.*, scrubbing bathrooms, showers, toilets, and windows, and sweeping, mopping, stripping, and waxing floors of the medical facility, library, rooms, offices, intake area, segregation unit, warehouse, and vacant areas) and exterior areas (including scrubbing windows of the buildings and landscaping the grounds); and (2) maintaining and cleaning the living pods under threat of lockdown and forced solitary confinement if any of the pod's occupants, not just Plaintiffs, refused to work; (d) the when (from November 7, 2005 through March 9, 2015, and June 14, 2012 through September 18, 2103, respectively); and (e) the how (under threat of punishment by lockdown and solitary confinement for the purpose of obtaining forced labor and services *even if* they were already cleaning and maintaining their own cells and pod).

Complaint, *inter alia*, ¶¶ 10, 11, 13, 14, 15, 16, 27, 28, and 29.

- 3 -

Defendant doesn't deny the Complaint puts it on notice of the alleged coercion of forced labor under threat of solitary confinement (Def. Mot. at 11:21) at Defendant's facility (Def.'s Mot. at 11:12-13), but instead argues the allegations do not meet the requisite pleading standards because they "provide no details." However, *Twombly* makes it clear FRCP § 8(a)(2) does not require detailed factual allegations. *Twombly, supra* at 556. Defendant cannot seriously argue it is not given fair notice by the Complaint of what Plaintiffs' claims are and the grounds upon which they rest. *Id. See also Conley v. Gibson,* 355 U.S. 41, 47 (1957).

The facts in the Complaint, taken as true, are more than sufficient to support facial plausibility and allow the Court, based on its experience and common sense, to draw the reasonable inference that Defendant has acted unlawfully and is liable for the misconduct alleged. *Iqbal, supra* citing *Twombly, supra* at 556.

### 2. Congress Intentionally Prohibited the Alleged Forced Labor

Defendant argues the TVPA does not extend to the for-profit forced labor practices set forth in the Complaint, and asserts the Complaint only alleges Defendant is merely requiring Plaintiffs to "clean up after themselves." Def. Motion at 7:22-24. However, the rule under the plain text of the TVPA, and in particular § 1589, reaches and proscribes ***any*** kind of forced labor (or other forms of worker exploitation), even though it may not rise to the level of involuntary servitude as defined prior to enactment of the TVPA, and intentionally so. *Nunag–Tanedo v. East Baton Rouge Parish School Bd.*, 790 F.Supp.2d 1134 at 1144–46 (C.D.Cal.2011), (teaching high school math and science could qualify as forced labor). *See also Menocal v. GEO Group, Inc.*, 113 F.Supp.3d 1125 (D. Colo. 2015).

### a. *The Allegations Go Beyond Housekeeping Tasks*

Defendant makes much of the notion of "housekeeping tasks", but there is quite a difference between housekeeping tasks that benefit the cells and pods where Plaintiffs live, and work that results in unjust profits flowing to Defendant as their keeper where the work Plaintiffs are required to perform has nothing to do

- 4 -

with "housekeeping".  The conflation between Defendant saying all that is going on is that Plaintiffs and the putative Class Members were being required "to clean up after themselves" (Def. Mot. 7:22-24), and what has actually been alleged, illustrates the hyperbole Defendant will go to protect its franchise and exploitative profiteering.

Plaintiffs and the putative Class Members allege they are forced to provide labor and services that go well beyond " housekeeping" tasks (Def. Motion § III.A.1) to "clean[] up after themselves."  Rather, they allege they were coerced and forced to provide, *inter alia*, labor and services cleaning and maintaining interior and exterior areas throughout Defendant's facility that extend into what is in reality the actual operation and maintenance of a for-profit venture.  Complaint ¶¶ 14 and 16.

The federal government's U.S. Immigration and Customs Enforcement ("ICE") describe the scope of " housekeeping tasks":

> "Work assignments are voluntary; however, all detainees are responsible for personal housekeeping. Detainees are required to maintain their immediate living areas in a neat and orderly manner by: 1. making their bunk beds daily; 2. stacking loose papers; 3. keeping the floor free of debris and dividers free of clutter; and 4. refraining from hanging/draping clothing, pictures, keepsakes, or other objects from beds, overhead lighting fixtures or other furniture. [2]

Defendant's forced labor practices as alleged in the Complaint far exceed personal housekeeping tasks.[2]

---

[2] *See* Section 5.8 "Voluntary Work Program", Subpart V. "Expected Practices", Section C. "Personal Housekeeping Required" at page 406 of the ICE Operations Manual ICE Performance-Based National Detention Standards ("PBNDS") (2011) available at http://www.ice.gov/detention-standards/2011 and PBNDS 2000, Section III.A "Voluntary Work Program" available at http://www.ice.gov/doclib/dro/detention-standards/pdf/work.pdf.

[2] Defendant mistakenly asserts the Complaint defines "Forced Labor" to mean cleaning the floors, bathrooms, showers, toilets and windows in detainees' living and community areas without pay. Def. Mot. 5:1-2.  The Complaint actually defines "Forced Labor" as any forced or coerced labor or services referred to in ¶¶ 1-16 of the Complaint under threat of punishment, confinement, physical restraint, and deprivation of liberty for which Detainees were paid nothing at all. Complaint ¶ 16, lines 13-15.

- 5 -

b.  *§ 1589 Reaches Beyond Involuntary Servitude*

Defendant relies on *Channer v. Hall*, 112 F.3d 214, 215 (5th Cir. 1997), *United States v. Kozminski*, 487 U.S. 931 (1988), and their progeny of cases (each of which pre-dates the enactment of the TVPA) to support its argument that the prohibition against *involuntary servitude* in 18 U.S.C. § 1584 and the Thirteenth Amendment does not prevent State or Federal Governments from compelling their citizens, by threat of criminal sanction, to perform certain civic duties and housekeeping tasks.  Def. Mot. § III.A.1.b. pgs. 7-10.

Defendant acknowledges the TVPA was enacted after *Kozminski* and *Channer*, and admits it added a psychological coercion component to the physical and legal coercion components articulated in *Kozminski*, but Defendant carefully parses Congress' stated intent when it asserts that the TVPA leaves undisturbed *Kozminski's* and *Channing's* civic duty exception to involuntary servitude.  Def. Mot. 9:11-12.  Involuntary servitude under the Thirteenth Amendment, 18 U.S.C. 1584, or otherwise is not the issue.  For-profit forced labor under § 1589 is.

Defendant's argument willfully ignores the fact that *Kozminski* and *Channer* interpret only the term "involuntary servitude" as used in 18 U.S.C. § 1584 and the Thirteenth Amendment, "'whereas § 1589 reaches 'whoever...obtains the labor or services of a person by...threats of physical restraint.' The language at issue [in the TVPA] is thus broader than the language at issue in *Kozminski* and *Channer*, and intentionally so." *Menocal, supra* at 1133.

The TVPA was enacted by Congress to intentionally broaden the narrow definition of "coercion" adopted by the Supreme Court in *Kozminski*.   *Menocal, supra* at 1132 citing *United States v. Kaufman*, 546 F.3d 1242 at 1263 (10th Cir. 2008) ("The legislative history reveals that, in enacting § 1589, Congress sought to expand *Kozminski*'s limited definition of coercion under § 1584, stating that '[s]ection 1589 will provide federal prosecutors with the tools to combat severe

- 6 -

1  forms of worker exploitation that do not rise to the level of involuntary servitude as

2  defined in *Kozminski*.' ").

3          c.  *There is No Civic Duty Exception for § 1589 Claims*

4        Although Defendant spends two pages of its Motion addressing the

5  "transnational crime" of "trafficking" (Def. Mot. 5:20-7:12), the Complaint does ***not***

6  allege claims for trafficking (a term of art) defined under 18 U.S.C. §§ 1590 and

7  1591, or involuntary servitude or slavery as defined under 18 U.S.C. §§ 1981, 1983,

8  and 1984.  It deals with "Forced labor" under 18 U.S.C. § 1589.[3]  Defendants have

9  cited no cases or other authority for reading a civic duty exception (*e.g.,* jury duty or

10  military service) into the TVPA, or for applying such an exception to a private, for-

11  profit venture.  There is no such exception.

12        Instead, Defendant cites to three cases, each of which involves a so-called

13  *Bivens* claim for violation of the Thirteenth Amendment's prohibition against

14  involuntary servitude in a federal government-run detention facility.[4]  None of these

---

[3] 18 U.S.C. §1589. Forced labor

  (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

    (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

    (2) by means of serious harm or threats of serious harm to that person or another person;

    (3) by means of the abuse or threatened abuse of law or legal process; or

    (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d).

(Added Pub. L. 106–386, div. A, §112(a)(2), Oct. 28, 2000, 114 Stat. 1486; amended Pub. L. 110–457, title II, §222(b)(3), Dec. 23, 2008, 122 Stat. 5068.)

[4] *Owuor v. Courville*, 2:11-CV-926, 2013 WL 7877306, at *4 (W.D. La. Aug. 7, 2013), *report and recommendation adopted*, 2:11-CV-926, 2014 WL 949433 (W.D. La. Mar. 10, 2014) is a *Bivens* retaliation case where the plaintiff claimed he was forced to work in order to gain access to the Federal Detention Center law library and where there is no mention of any civic-duty exception to § 1589. *Hutchinson v. Reese*, 5:07CV181-DCB-MTP, 2008 WL 4857449, at *4 (S.D. Miss. Nov. 7, 2008) is also a *Bivens* action involving a Thirteenth Amendment involuntary servitude claim against the warden of Federal Correctional Complex which likewise does not mention and civic-duty exception to § 1589. *Mendez v. Haugen*, CV 14-4792 ADM/BRT, 2015 WL 5718967, at *5

- 7 -

cases deal with § 1589 claims for forced labor used to operate and maintain a for-profit facility that go far beyond the scope of cell or pod housekeeping tasks.

### d. *Plaintiffs Are Not Inmates*

Defendant argues there is no relevant distinction between an "inmate" under 28 C.F.R. § 545.23(b) and Plaintiffs, and that construing § 1589 as criminalizing "routine housekeeping tasks" by immigration detainees would also criminalize the same tasks by federal inmates and pretrial detainees.  Def. Mot. 10:12-25.  Not true. Plaintiffs are neither "inmates" nor "pretrial detainees" because they are neither in custody of the Federal Bureau of Prisons nor a Bureau contract facility.[5]  They are living in a facility run by a for-profit venture pending a determination of their immigration status.  They are neither charged with, nor convicted of, a crime.

Defendant is, in essence, arguing that §1589 somehow sanctions exploitation through forced labor *after* immigrants are turned over to a for-profit enterprise.  It is obvious that the TVPA, and in particular the prohibition against forced labor under § 1589, is not limited only to what happens prior to detention, and somehow not to what happened after the federal government turned Plaintiffs over to Defendant.

Defendant is really saying it can exploit immigrants with impunity.  The Complaint addresses just what Congress was interested in—exploiting of this class of persons, but in this case after their detention, rather than before. The wrong is the same, and the victims are the same. And the opportunity for redress should be the same.  There is no indication that Congress gave anyone a pass for such wrongs based on a before and after dichotomy.

---

(D. Minn. Sept. 29, 2015), *aff'd* (Feb. 22, 2016) is also a Thirteenth Amendment involuntary servitude action involving a pre-trial arrestee in a Federal Medical Center Bureau of Prisons policy that was compelled to work performing housekeeping tasks in the inmate's own cell and community living area.

[5] Inmate means all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities, including persons charged with or convicted of offenses against the United States; D.C. Code felony offenders; and persons held as witnesses, detainees, or otherwise.  28 C.F.R. 500.1.

- 8 -

e. *Threat of Solitary Confinement is Threat of Serious Harm*

Defendant argues that,

"[t]hough Plaintiffs allege they were threatened with 'confinement, physical restraint, substantial and sustained restriction, deprivation, and violation of their liberty, and solitary confinement,' they do not explain what this means or how it is different from or worse than the normal conditions of their detention. . . " Def. Mot. 11:19-22, 19:25, 20:1.

Is Defendant really saying that in order to be on fair notice of the claims it needs Plaintiffs to explain how solitary confinement is "different from or worse than the normal conditions of their detention"?  Apparently solitary confinement in the for-profit world of Defendant is not "serious".

The Supreme Court, however, for over 125 years has disagreed.

"[S]olitary confinement] was considered as an additional punishment of such a severe kind that it is spoken of in the preamble as 'a further terror and peculiar mark of infamy' to be added to the punishment of death. In Great Britain, as in other countries, public sentiment revolted against this severity, and by the statute of 6 and 7 William IV. c. 30, the additional punishment of solitary confinement was repealed."

*In re Medley*, 134 U.S. 160 (1890) (finding Colorado statute specifying solitary confinement prior to execution unconstitutional under ex post facto prohibition.) ("It seems to us that the considerations which we have here suggested show that the solitary confinement to which the prisoner was subjected by the statute of Colorado of 1889, and by the judgment of the court in pursuance of that statute, was an additional punishment of the most important and painful character, and is, therefore, forbidden by this [ex post facto] provision of the Constitution of the United States.") *Id*. at 171. ("Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under the Eighth Amendment.") *Weems v. United States,* 217 U.S. 349, 365–367, 30 S.Ct. 544, 54 L.Ed. 793 (1910).   ("Judge Tuttle, indeed, made abundantly clear in *Novak* v. *Beto*, 453 F.2d 661, 673-679 (CA5) (concurring in part and dissenting in part), that solitary confinement may at times be "cruel and unusual"

- 9 -

punishment.") *Furman v. Georgia*, 408 U.S. 238 (1972) citing *Medley*, *supra* and *Brooks* v. *Florida*, 389 U.S. 413 (1967).  ("A considerable number of the prisoners fell, after even a short [solitary] confinement, into a semi-fatuous condition ... and others became violently insane; others, still, committed suicide").  *Davis v. Ayala*, 135 S.Ct. 2187, 2209 (2015) quoting *In re Medley*.  ("Indeed, the idea that certain kinds of solitary confinement constitute cruel and unusual punishment is not new. As long ago as 1890 the United States Supreme Court clearly saw and clearly articulated the vice of solitary confinement even for a relatively short period of time under conditions less onerous than those here under attach.")  *Novak v. Beto, supra*. ("One hundred and twenty-five years ago, this Court recognized that, even for prisoners sentenced to death, solitary confinement bears "a further terror and peculiar mark of infamy.")  *Davis v. Ayala*, supra citing *In re Medley, supra*.

Regardless of the circumstances, allegations of threats of solitary confinement are more than sufficient to raise an issue of fact regarding "threat of serious harm" under 18 U.S.C. § 1589(c)(2).[6]  Any argument to the contrary shows just how Defendant views their ability to proceed with impunity, and the callous manner in which they seem to consider the nature of their oversight of these victims.

Defendant's arguments ignore the plain language of § 1589 and Congress' clearly stated intent.  None of the authorities cited by Defendant in support of its argument address the well-pled facts and claims alleged in the Complaint regarding: (1) forced labor and services under § 1589 (rather than involuntary servitude under 18 U.S.C. 1584 or the Thirteenth Amendment); (2) beyond the scope of any conceivable "civic duty" exception (e.g., jury duty or military duty) or housekeeping task (cleaning up the cell or pod); (3) for the operation and maintenance of a facility; (4) run by, and for the benefit of, a for-profit venture.

---

[6] "Serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." § 1589(c)(2).

- 10 -

*Owino, et al v. CoreCivic, Inc.* No. 17-cv-1112
OPPOSITION TO MOTION TO DISMISS

1    There is nothing extreme or absurd about Congress' enactment of § 1589.  This

2  is exactly the sort of worker exploitation forbidden under § 1589 by Congress

3  through the intentional broadening of the scope of the ban on involuntary servitude

4  under 18 U.S.C. § 1584 and the Thirteenth Amendment when it overruled the

5  *Kozminski* case by name.  For purposes of defeating Defendant's Motion to Dismiss,

6  Plaintiffs' TVPA claim should be allowed to go forward.

7    ### 3.  Statutes of Limitation Are an Affirmative Defense to be Proven

8    Statutes of limitation are an affirmative defense to be pled and proven.  Fed.

9  R. Civ. Proc. 8(c)(1).  Dismissal on the basis of an affirmative defense is proper only

10  if the Defendant shows some obvious bar to securing relief on the face of the

11  Complaint.  *ASARCO, LLC v. Union Pacific Railroad Company*, 765 F.3d 999

12  (9th Cir. 2014) citing *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013)

13  ("[T]he assertion of an affirmative defense may be considered properly on a motion

14  to dismiss where the 'allegations in the complaint suffice to establish' the defense."

15  (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007))); 5B Charles Alan Wright et al.,

16  Federal Practice and Procedure § 1357 (3d ed. 1998) ("[A] dismissal under Rule

17  12(b)(6) is likely to be granted by the district court only in the relatively unusual

18  case in which the plaintiff includes allegations that show on the face of the complaint

19  that there is some insuperable bar to securing relief . . . .").  If, from the allegations

20  of the complaint as well as any judicially noticeable materials, an asserted defense

21  raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper.  *Scott v.*

22  *Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam).

23    Defendant argues that because Plaintiffs' Complaint alleges Defendant is

24  liable under the financial benefit prong of § 1595,[7] any liability can only attach to

25  conduct after the effective date of the 2008 Amendment and that alleged liability

26

27  [7] Defendant ignores the fact that the Complaint also requests Defendant make mandatory
restitution to Plaintiffs and the putative class under 18 U.S.C. 1593 which has no "financial benefit"
28  requirement. (Complaint ¶¶ 1, 12, 18, 44, 50 and subpart d of the Prayer for Relief).

- 11 -

based on conduct before the Amendment must be dismissed. The rule, however, is that the limitations period for TVPA claims that were *unexpired* at the time of the enactment of the 2008 Amendment does *not* give rise to an impermissible retroactive effect. Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *See also Stogner v. California*, 539 U.S. 607, 611, 631 (2003); *United States v. Jeffries*, 405 F.3d 682, 685 (8th Cir. 2005); *United States v. Grimes*, 142 F.3d 1342, 1351 (11th Cir. 1998) ("[A]ll of the circuits that have addressed the issue . . . have uniformly held that extending a limitations period before the [criminal] prosecution is barred does not violate the Ex Post Facto Clause."); *United States v. Brechtel*, 997 F.2d 1108, 1113 (5th Cir. 1993); *United States v. Taliaferro*, 979 F.2d 1399, 1402 (10th Cir. 1992). If Plaintiffs claims were alive under the old four-year limitations period when Congress enacted the new statute of limitations on December 23, 2008, Plaintiffs TVPA claims for conduct occurring prior to thereto will be timely under equitable tolling principles.

Prior to December 23, 2008, the TVPA was governed by a four-year statute of limitations. See Pub. L. No. 108-193, § 4(a)(4)(A), 117 Stat. 2875, 2878 (2003) (establishing a private right of action but not a statute of limitations); 28 U.S.C. § 1658(a) (2012) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues."). In 2008 Congress amended the TVPA to include a ten-year statute of limitations. William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 110-457, § 221(2)(B), 122 Stat. 5044, 5067 (codified at 18 U.S.C. § 1595(c)).

Whether Plaintiffs' TVPA claims based on conduct prior to December 23, 2008 may proceed depends on whether those claims were still alive under the old four-year limitations period when Congress enacted the new statute of limitations on December 23, 2008. It is a question of fact as to whether those TVPA claims warrant equitable tolling until at least May 31, 2003, four years before

- 12 -

1  Defendant argues Plaintiffs' claims are time barred.  At this early pleading stage,
2  Plaintiffs' pre-May 31, 2007 claims should be allowed to proceed.

3  **B.     The California Trafficking Victims Protection Act**

4  Defendant argues that Plaintiffs' claims under the California TVPA
5  (the "CTVPA") should fail for all the same reasons they argue Plaintiffs' TVPA
6  claims fail.  Def. Mot. 13:15.  Defendant also argues the CTVPA claim should be
7  dismissed because it contains a "blaring omission" (Def. Mot. 14:5) of an allegation
8  that CoreCivic "recruit[ed], harbor[ed], transport[ed], provi[ded], or obtain[ed]
9  [them] for labor or services" and "for the purpose of subjection to involuntary
10 servitude, peonage, debt bondage, or slavery" under 22 U.S.C. § 7102(9).

11 **1.  Declaring Findings Is Not the Same as An Exclusive Definition**

12 The rule as mentioned above is, "FRCP § 8(a)(2) requires only "a short and
13 plain statement of the claim showing that the pleader is entitled to relief." *Twombly*,
14 supra at 555.  Cal. Pen. Code § 52.5(a) provides a private cause of action for
15 violations of Cal. Pen. Code § 236.1.  Cal. Pen. Code § 236.1 (a) defines when a
16 person is guilty of human trafficking,

> "A person who deprives or violates the personal liberty of another with
> the intent to obtain forced labor or services, *is guilty of human
> trafficking* and shall be punished by imprisonment in the state prison
> for 5, 8, or 12 years and a fine of not more than five hundred thousand
> dollars ($500,000)." *Emphasis added*.

21 Section 236.1 goes on, and in subpart (b) to states,

> "(b) A person who deprives or violates the personal liberty of another
> with the intent to effect or maintain a violation of Section 266, 266h,
> 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518 *is
> guilty* of human trafficking and shall be punished by imprisonment in
> the state prison for 8, 14, or 20 years and a fine of not more than five
> hundred thousand dollars ($500,000)." *Emphasis added*.

27 Section 236.1(g) does not define "human trafficking, it recites a *declaration
28 of legislative finding* and states,

- 13 -

> "The Legislature finds that the definition of human trafficking in this section is equivalent to the federal definition of a severe form of trafficking found in Section 7102(9) of Title 22 of the United States Code."

Cal. Pen. Code § 52.5 does not limit the definition of human trafficking to any particular subpart of Cal. Pen. Code § 236.1.  It simply states that any person who is, " A victim of human trafficking, as defined in Section 236.1 of the Penal Code, may bring a civil action . . ." Cal. Civ. Code § 52.5(a).  The California Legislature found that the *entirety* of Cal. Penal Code § 236.1, not just subpart (g), is equivalent to the definition set forth 22 U.S.C. 7102(9) of "serious human trafficking."

Cal. Pen. Code § 236.1(g) is not contain an exclusive definition of "human trafficking."  It does not contain a limiting definition at all.  If it did, it would completely gut the crimes set forth in Cal. Pen, Code § 236.1 (a) and (b) criminalizing forced labor and prostitution, not just involuntary servitude and commercial sexual exploitation of a minor.  "Human trafficking is defined as the deprivation or violation of the personal liberty of another with the intent to obtain forced labor or services.  Cal. Penal Code § 236.1." *Lofthus v. Long Beach Veterans Hosp.*, 214 F. Supp. 3d 908, 915 (C.D. Cal. 2016).

### 2.  The Plain Meaning of Cal. Pen. Code § 236.1(a) Governs

Defendant makes much ado about how statutory construction should not lead to "extreme or absurd results."   Plaintiffs agree.  Interpreting Cal. Pen. Code § 231.6(g) as some sort of exclusive definition of "human trafficking" would do just that by rendering inapplicable the provisions of subparts (a) and (b) thereof.

Such an interpretation, where there is no ambiguity in the plain meaning of Cal. Pen. Code §§ 236.1(a) and (b), would make little sense. The Court should not consider extrinsic aid such as the *declaration of legislative finding* (a declaration of equivalency is not the same as a limiting definition, especially one that would render other parts of the statute meaningless) set forth in Cal. Pen. Code § 236.1(g).  *The People v. Michael David Cornett* (2012), 53 Cal. 4th 1261, 274 P.3d 456, 139 Cal.

- 14 -

Rptr. 3d 837.  ("We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent." citing (*People v. Watson* (2007) 42 Cal.4th 822, 828 [68 Cal.Rptr.3d 769, 171 P.3d 1101]; accord, *Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304 [120 Cal.Rptr.3d 135, 245 P.3d 860].) The plain meaning controls if there is no ambiguity in the statutory language. (*People v. King* (2006) 38 Cal.4th 617, 622 [42 Cal.Rptr.3d 743, 133 P.3d 636].)

### 3.  Plaintiffs Are Neither Prisoners, nor in Custody of the CDCR

Defendant repeatedly and misleadingly states that Plaintiffs admit they were in the country illegally, likening them to prisoners in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Def. Mot. (8:9-10, 13:14-28, and 14:8-9).  Not true.  *See* Complaint ¶ 23.   In fact, the evidence will show Plaintiff Gomez is a lawful permanent resident and Plaintiff Owino has been awaiting an asylum hearing for nine years.  Regardless, Plaintiffs do not fall within the provisions of Cal. Pen. Code § 2700 and 15 Cal. Code of Reg. § 3040(a).[8]  Def. Mot. 13:14-28.   Undocumented immigrants are not "prisoners" and are not in custody of the CDCR.  Although Defendant, like other people in this country, likes to refer to people who are in the United States without documentation as "illegal aliens", immigration laws are civil, not criminal.  People here without permission are not punished; they are deported.  Deportation is not punishment.  *Padilla v. Kentucky* 559 U.S. 356 (2010).

### 4.  Plaintiffs Allege Facts Showing Intent to Obtain Forced Labor

Defendant argues the Complaint fails to state a claim under the CTVPA, citing the case of *Lofthus, supra* at 916 dismissing a Cal. Pen. Code § 52.5 claim where plaintiff failed to allege any intent to obtain forced labor or services, defined as

---

[8] "Every able-bodied person committed to the custody of the Secretary of the Department of Corrections and Rehabilitation is obligated to work as assigned."

- 15 -

"labor or services that are performed or provided by a person and are obtained or maintained through force, fraud, duress, or coercion, or equivalent conduct that would reasonably overbear the will of the person.  Cal. Penal Code § 236.1(h)(5)."  Unlike *Lofthus*, and as set forth on pages 3 and 4 of the Complaint, Plaintiffs have clearly alleged facts sufficient to show an "intent to obtain forced labor or services as punishment of refusal to work . . ."  Complaint, *inter alia*, ¶¶ 10, 11, 13, 14, 15, 16, 27, 28, and 29."  Plaintiffs Opp. 3:15-27.

### 5.  Defendant's Limitations Argument is An Affirmative Defense

Finally, in attacking the sufficiency of the Complaint for claims under the CTVPA, Defendant argues Plaintiffs' claims must be dismissed to the extent they are based on misconduct occurring prior to its enactment on January 1, 2006.  Def. Mot. 14:13-5.  As set forth above, any statute of limitations argument is an affirmative defense to be pled and proven.  Fed. R. Civ. Proc. 8(c)(1).  The rule is that dismissal under Rule 12(b) is appropriate only in the unusual case in which the complaint includes allegations that show on its face there is a bar to the entire claim that is impossible to overcome.  *ASARCO, supra.*

At this early pleading stage Defendant is apparently seeking to have 389 days (November 7, 2015 to December 1, 2006) stricken from Plaintiff Owino's claims.  This may be appropriate when arguing damages, when certifying the class, or even in a motion *in limine*, but Defendant's argument in no way renders Plaintiffs' CTVPA claim as alleged insufficient for purposes a motion to dismiss.

The Complaint asks neither for any *ex post facto* application of the CTVPA, nor for damages for any particular time period.  It asks, not atypically, for damages "in an amount to be determined at trial."  Complaint at p. 35, Prayer For Relief, subpart (d). The issue is simply not properly before the Court, and in any event would not constitute grounds to dismiss any claims, including the CTVPA claims.

- 16 -

**C.     The Unfair Competition Law, Unjust Enrichment, and Negligence**

Defendant refers to Plaintiffs' California's Unfair Competition Law (the "UCL"), Bus. & Prof. Code § 17200, *et seq*. claim, common law negligence claim, and unjust enrichment claim as "derivative" claims.   Not so.   These three claims of Plaintiffs stand alone and do not rely on the viability of the Complaint's other claims.

**1.   The Complaint Pleads Both Unlawful and Unfair UCL Prongs**

California's UCL broadly prohibits "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  Plaintiffs' UCL claim does not just sound in in illegality, but in unfairness as well.  The Complaint alleges Defendant's business practices are both unfair and unlawful.  Complaint ¶¶ 65-68.  The gravamen of the UCL claim is that forcing civil immigration detainees to work operating Defendant's for-profit facility under threat of physical restraint and confinement constitutes an unfair (as well as unlawful) business practice that caused harm to them and the purported Class Members.

The UCL is written in the disjunctive, and it is violated if a defendant violates any of the unlawful, unfair or fraudulent prongs.   *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). The California Supreme Court has emphasized that the "UCL's 'scope is broad,' and its coverage is 'sweeping.'" *People ex rel. Harris v. Pac Anchor Transp., Inc.*, 329 P.3d 180, 188 (Cal. 2014) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 560 (Cal.1999)).

With respect to the unlawful prong of section 17200, it is clear that "[v]irtually any state, federal, or local law can serve as the predicate." *See People ex rel. Lockyer v. Fremont Life Ins. Co.*, 128 Cal. Rptr. 2d 463, 469 (Ct. App. 2002) (internal quotation marks omitted).   But in addition to unlawfulness, unfairness is independently sufficient to state a claim under the UCL.  (*Allied Grape Growers v. Bronco Wine Co.* (1988) 203 Cal.App.3d 432, 451; see *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [indicating that conduct may be "unfair" without being "unlawful"].)

- 17 -

An "unfair" practice is one that offends public policy, or that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, or that has an impact on the victim that outweighs defendant's reasons, justifications, and motives for the practice.  (*Pastoria v. Nationwide Ins.* (2003) 112 Cal.App.4th 1490, 1498; *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 718-719; *Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647.)

Here, Plaintiffs have alleged misconduct that not only violates federal and state human rights and labor laws (Complaint ¶ 65), but also "offends public policy against human trafficking and Forced Labor" (Complaint ¶ 67).  Thus, Plaintiffs' have sufficiently pled both the unlawful and unfair prongs of their UCL claim.

### 2.  Unjust Enrichment is Not Duplicative of the UCL or Other Claims

"Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another." *Valencia v. Volkswagen Grp. of Am. Inc*, No. 15-CV-00887-HSG, 2015 WL 4747533, at *8 (N.D. Cal. Aug. 11, 2015). *See also Munoz v. MacMillan*, 195 Cal. App. 4th 648, (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'").

"[A] benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss." *Ghirardo v. Antonioli*, 14 Cal.4th 39, 51 (1996).   "The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it." *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662-63 (1992).

"When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 17 2015). "Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution

- 18 -

1  when unjust enrichment has occurred "is an obligation (not a true contract [citation])

2  created by the law without regard to the intention of the parties, and is designed to

3  restore the aggrieved party to his or her former position by return of the thing or its

4  equivalent in money." *F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008).

5  The California Supreme Court and Courts of Appeal have recognized actions

6  for relief under the equitable doctrine of unjust enrichment. *See Ghirardo v.*

7  *Antonioli,* 14 Cal.4th 39, 57 Cal.Rptr.2d 687, 924 P.2d 996 (1996) (concluding that

8  failure to pay a debt may result in unjust enrichment recognizing a cause of action

9  for unjust enrichment upon a showing that the defendant received benefit through

10 another's known mistake, fraud, coercion or other tortious conduct); *see*

11 *also Hernandez v. Lopez,* 180 Cal.App.4th 932, 938, 103 Cal.Rptr.3d 376 (2009)

12 ("The doctrine applies where plaintiffs, while having no enforceable contract,

13 nonetheless have conferred a benefit on defendant which defendant has knowingly

14 accepted under circumstances that make it inequitable for the defendant to retain the

15 benefit without paying for its value.").

16 The California Supreme Court has clarified California law allowing an

17 independent claim for unjust enrichment to proceed in an insurance dispute. *Bruton*

18 *v. Gerber Prods. Co.*, No. 15-15174 (9th Cir. Jul. 17, 2017) citing *Hartford*

19 *Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015); *see also Ghirardo*

20 *v. Antonioli, supra* (recognizing independent cause of action for unjust enrichment

21 relating to real estate transaction).  Defendants attack the unjust enrichment claim

22 under the mistaken belief that it cannot proceed if other theories of recovery are also

23 pled, and may only proceed absent an adequate remedy at law.  See Def. Mot. 14

24 citing *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 770 (N.D. Cal. 2010).

25 This argument fails from the start.

26 Plaintiffs may plead alternative types of relief.  Fed. R. Civ. Pro. 8(a)(3) and

27 8(d)(2).  A claim that is duplicative in nature to a claim under the UCL is not grounds

28 for dismissal.  *Astiana v. Hain Celestial Grp., Inc., supra* at 762.  Fed. R. Civ. P.

- 19 -

8(d)(2). "[R]ecent decisions have held that a claim for unjust enrichment may be brought in addition to UCL, FAL and CLRA claims and survive a motion to dismiss . . ." *Sarah Samet, et al v. Procter and Gamble Co.*, Case No.: 5:12-cv-01891 PSG, Dkt. 136, (N.D. Cal. Aug. 24, 2015).

The case relied on by Defendant, *In re Facebook, supra,* stands for the limited proposition that unjust enrichment does not lie where there is a contract defining the parties' rights. "Because Plaintiffs have stated a claim for breach of contract as to their allegations regarding 'invalid clicks', a separate remedy for unjust enrichment is unnecessary." *Id*. at 770. Unjust enrichment is only unavailable "when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).

There is no duplicative claim for breach of contract here.  Plaintiffs have plead Defendant received the benefit Plaintiffs' forced labor and have unjustly retained it at the expense of Plaintiffs. Complaint ¶¶ 123-127. The Complaint readily states a claim for unjust enrichment and should survive a motion to dismiss at the early pleading stage.  Defendant should not be permitted to retain the ill-gotten benefit derived to Plaintiffs' detriment through its forced labor practices.

### 3.  The Complaint Pleads Negligence, Not Just Negligence *Per Se*

Defendant argues Plaintiffs' negligence claim is also a "purely derivative claim[ ]".  Def. Mot. 21:6-8.  It is true that violation of the law does raise a presumption that the violator was negligent *per se*.  Cal. Evid. Cod § 669; *Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.* (2010) 190 Cal.App.4th 1502, 1526 [119 Cal.Rptr.3d 529], internal citations omitted; *DiRosa v. Showa Denko K. K.* (1996) 44 Cal.App.4th 799, 808 [52 Cal.Rptr.2d 128].

But in addition, Cal. Civ. Code § 1714(a) provides in part:

"Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or

- 20 -

person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."

Restatement Second of Torts, section 282, defines negligence as "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." The elements of a negligence claim are well established. They are "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496].)

The Complaint not only alleges negligence *per se,* but also a breach of the duty to provide a safe working environment free from human rights abuses. Complaint, *inter alia* ¶ 103-105, 108-111. Defendant's Motion does not argue Plaintiffs' negligence claim fails to plead the essential factual elements or is in any way insufficient, and the Court should allow these claims to proceed.

Plaintiffs' UCL, Unjust Enrichment, and Negligence claims each stand on their own. The Court should deny Defendant's Motion which rests on the sole argument that such claims are "derivative" and is not backed up by any authority.

### D.   California Labor Law Claims

Defendant moves to dismiss Plaintiffs' California labor law claims, arguing they are preempted because they conflict with federal law and there is no room for state regulation of the employment of immigrants. The rule is when a defendant's compliance with both federal and state law is possible, state laws which only tangentially affect *immigration* are expressly permissible.

### 1.   The California Labor Law Claims Do Not Affect Immigration

The Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1101 *et seq.*, establishes a "comprehensive federal statutory scheme for regulation of immigration and naturalization" and sets "the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country." *Chamber of Commerce v. Whiting,* 131 S.Ct, 1968 (2011) citing *De Canas* v. *Bica,* 424 U. S.

- 21 -

351, 353, 359 (1976).  Congress also enacted the Immigration Reform and Control Act (the "IRCA") as "a comprehensive scheme prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 147 (2002) (citing 8 U.S.C. § 1324a).

But, neither the INA nor the IRCA regulate or conflict with labor laws.  *Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 938–39 (8th Cir. 2013) (*certiorari* denied.) "The employers point to the Supreme Court's decision in *Hoffman Plastic Compounds, Inc. v. NLRB,* 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002) for the proposition that the IRCA implicitly amended the FLSA to exclude unauthorized aliens. The employers misread *Hoffman,* ignore the relevant agency's reasonable interpretations of the FLSA and the IRCA, and "ascribe to Congress an intent at variance with the purpose[s] of th[e] statute [s]," *Wyandotte Transp. Co. v. United States,* 389 U.S. 191, 200, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967)."  While the IRCA prohibits *employers* from hiring undocumented aliens, it does not protect against the exploitation of immigrant workers.  That is left to the labor laws.

Defendant relies on *Arizona v United States*, 567 U.S. 387 (2012), for its argument that state labor laws are preempted by the INA and IRCA.  But, *Arizona v. United States* is a case where the state enacted a law intended to increase the powers of local law enforcement to enforce federal immigration laws.  The Supreme Court ruled that Congress left no room for the state to regulate alien registration, but left the other parts of the law intact, including a provision that allowed state law enforcement to investigate a person's immigration status.  *Id.*  California's labor laws in no way regulate or intrude on the field of alien registration in any way.

a.  *Labor Laws Don't Intrude on or Conflict with Immigration Law*

In *Lucas v. Jerusalem Cafe*, *supra*, the Eighth Circuit found that neither the INA nor the IRCA conflict with the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. (the "FLSA").  The FLSA prohibits the exploitation of an employee's

- 22 -

immigration status, or profiting from hiring "unauthorized aliens".[9]   Courts uniformly agree that undocumented workers are entitled to minimum wage and overtime protections, and case law consistently supports the applicability of the FLSA to undocumented workers.  *See, e.g., Patel,* 846 F.2d at 702-04; *In re Reyes,* 814 F.2d 168, 170 (5th Cir. 1987), *cert. denied,* 487 U.S. 1235 (1988).  Defendant does not cite any authority barring the recovery of unpaid wages for hours worked.

The FLSA, like the IRCA, contains a savings clause which permits states to set more stringent wage-and-hour laws, creating situations in which both state and federal law may apply.   The FLSA makes clear it's provisions are minimum standards (at least for wages and overtime) and that states can enact *stricter* regulations.  29 USC § 218(a).  The FLSA has been judicially determined not to be in conflict with the INA and IRCA, and neither are California's more stringent labor laws dealing with wages and overtime.

### b.   *It is Possible to Comply with Federal and State Law*

Defendant cites 8 U.S.C. § 1555(d) in support of its argument that it is impossible to comply with federal law and California labor law because Congress *authorized* ICE to pay allowances of $1 per day to aliens while held in custody under the immigration laws for work performed.  8 U.S.C. § 1555(d).  But, 8 U.S.C § 1555(d) is included in the Code as the result of an *appropriations* bill appropriating $266,450,000 for expenses of the Immigration and Naturalization Service ("INS") that are "necessary for the administration of enforcement of the laws relating to immigration, naturalization, and alien registration, including payment of allowances (at a rate not to in excess of $1 per day) to aliens, while held in custody under the immigration laws, for work performed . . ." Department of Justice Appropriation Act, Pub. L. No. 95-86, 91 Stat. 426 (1978).   8 U.S.C. § 1555 codifying the

---

[9]   The United States Department of Labor agrees.   *See Josendis Amicus Letter* at https://www.dol.gov/sol/media/briefs/josendis(A)-8-26-2010.htm.  In any event, the evidence will show Plaintiff Gomez is not an "unauthorized alien" under 8 U.S.C. § 1324(a), but rather a lawful permanent resident.

*Owino, et al v. CoreCivic, Inc.* No. 17-cv-1112
OPPOSITION TO MOTION TO DISMISS

appropriation bill makes no mention of the $1 per day rate, but refers to such rate as may be specified from time to time in the appropriate Act involved.  8 U.S.C. § 1555.

This is an *appropriations* bill placed in the U.S. Code and required under the Origination Clause (sometimes called the Revenue Clause) of the U.S. Constitution to set aside money for specific federal government departments, agencies, and programs.[10]  It is one thing for Congress to say that the INS is limited in its appropriation for worker allowances to $1 per day.  It's quite another to say that that appropriation preempts federal and state labor laws.  While the bill limits the amount of the *appropriation* to $1 per day, it does not speak at all to, or extend into, the applicability of federal or state labor laws enacted to address worker exploitation.

If the shoe were on the other foot, if Congress limited the alien allowance portion of the $266,450,000 appropriation to $500 per day, would it be a reasonable interpretation that Defendant is *required* to pay that much?  Hardly.  What it would mean is that out of the $266M appropriation, not more than $500 per day could be allocated for an alien's allowance.

This is an appropriations bill, not a wage ceiling bill.  Congress didn't say that out of funds made available by the appropriation the INS shall pay to each alien an allowance not in excess of $1 per day for work performed, it said, "appropriations [] shall be available for the payment of allowances . . ."  8 U.S.C. § 1555(d).  There is nothing in that appropriations bill that makes it impossible for Defendant to comply with California's labor laws, including the payment of the minimum wage.  What it means is Defendant has to come up with the difference between the $1 per day allocated to the INS and the minimum wage.

---

[10] "All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills."  U.S. Const, Art. 1 § 7. *See also* Tollestrup, Jessica, February 2012, "The Congressional Appropriations Process: An Introduction", Congressional Research Service Report Prepared for Members and Committees of Congress.  https://fas.org/sgp/crs/misc/R42388.pdf

- 24 -

Understandably, Defendant would prefer to operate its facility at a cost of $1 per day per employee rather than pay minimum wage like every other employer in the state. There is nothing in the INA or the IRCA that makes it impossible to pay the minimum wage. In fact, numerous cases discussed below have addressed the issue. None have found that labor laws are preempted. Rather, they focus on the meaning of "employer" and "employee" under the respective applicable law.

### 2. Plaintiffs Are Employees Under California Law

Next Defendant argues Plaintiffs are not employees under California law because the legislature did not include aliens in the definition of "employee". Def. Mot. 18:10-21. However, Defendant's argument overlooks entirely Cal. Labor Code § 1171.5 where the California legislature declares and finds,

> "(a) All protections, rights, and remedies available under state law, except any reinstatement remedy prohibited by federal law, are available to all individuals regardless of immigration status who have applied for employment, or who are or who have been employed, in this state.

> (b) For purposes of enforcing state labor and employment laws, a person's immigration status is irrelevant to the issue of liability, and in proceedings or discovery undertaken to enforce those state laws no inquiry shall be permitted into a person's immigration status except where the person seeking to make this inquiry has shown by clear and convincing evidence that the inquiry is necessary in order to comply with federal immigration law.

> (c) The provisions of this section are declaratory of existing law."

The rule in California is if you have been employed in the state, you are entitled to all protections, rights, and remedies available under state law, regardless of immigration status. Cal. Labor Code § 1171.5.

### a. *Federal Immigration Law Doesn't Govern the Labor Laws*

The California Supreme Court determined that the worker protection provisions of its employment and labor laws are available to all workers "regardless of immigration status". *Salas v. Sierra Chemical Co.*, 59 Cal.4th 407, 426, 173

- 25 -

Cal.Rptr.3d 689, 327 P.3d 797 (2014).  The Court also determined that nothing in *Arizona v. United States* requires a contrary conclusion.  *Salas*, *supra* at 421-424.

Instead, the Court held there was no preemption of Cal. Gov. Code § 7285 (which is identical to Cal. Labor Code § 1171.5, Cal. Civ. Code § 3339, and Cal. Health and Safety Code § 24000) granting undocumented workers all protections, rights, and remedies under state law, including a *private* right of action to assert state antidiscrimination laws against a private employer.  *See Salas,* supra, at 421–24 (engaging in a detailed analysis of preemption under *Arizona*, *supra*).

The Ninth Circuit has held that Cal. Civ. Code § 3339 and Cal. Gov. Code § 7285 protect undocumented workers who are denied private contractual employee benefits and rights.  *Incalza v. Fendi N. Am., Inc.,* 479 F.3d 1005 (9th Cir. 2007). ("California law provides remedies to workers who are terminated in violation of an express or implied agreement that they will not be discharged without good cause.... The California legislature has made clear that *this rule applies to illegal immigrants as well as other employees*." *Id.* at 1009 (emphasis added). The Court further determined that the California law in question was not preempted by the IRCA, and that *Hoffman*, *supra,* did not require a different result.  *Id.* at 1013.

Moreover, *Salas* and *Incalza* are not unique—they are just two of many court cases, along with a number of statutes, which guarantee that undocumented workers in California are entitled to certain rights and protections as employees.[11]

---

[11] *Bay Area Roofers Health & Welfare Trust v. Sun Life Insurance Co. of Canada,* 73 F. Supp.3d 1154 (E.D. Cal. 2014).  *See* Cal. Labor Code § 3351(a) (defining "employee" for purposes of worker's compensation law as "every person in the service of an employer ... whether lawfully or unlawfully employed, and includes (1) Aliens"); Cal. Labor Code § 1171.5(a) (extending all protections under state law to those who have "been employed" in this state, which includes "all individuals regardless of immigration status"); *Farmers Bros. Coffee v. Workers' Comp. Appeals Bd.,* 133 Cal.App.4th 533, 540, 35 Cal.Rptr.3d 23 (2005) (finding that this statute was not preempted by IRCA); Title VII, 42 U.S.C. § 2000e(f) (defining "employee" to be any "individual employed by an employer"); *E.E.O.C. v. Tortilleria La Mejor,* 758 F.Supp. 585, 590 (E.D.Cal.1991) (finding that undocumented workers are protected under Title VII); *Sure–Tan, Inc. v. N.L.R.B.,* 467 U.S. 883, 892, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984) (holding that the National Labor Relations Act applies to unfair labor practices committed against undocumented workers); *Singh v. Jutla & C.D. & R.'s Oil, Inc.,* 214 F.Supp.2d 1056, 1058 (N.D.Cal.2002) (holding that the Fair Labor Standards Act's anti-retaliation provisions apply to undocumented

- 26 -

b. *Plaintiffs are Employees under California's Legal Definition*

The California Supreme Court has rejected the application of the common-law definition of employer, as well as the federal "economic reality" test under the FLSA, and defined an employer as "one who exercises control over the wages, hours, or working conditions of the employee; or suffers or permits the employee to work; or engages the employee." *Martinez v. Combs*, 49 Cal.4th 35 (2010).  The Court concluded that "to employ" has three alternative definitions: "(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Id.* at 64. In so ruling, the Court rejected the exclusive application of the federal "economic reality" test under the FLSA and common-law definition of employer.

c. *Plaintiffs' Labor Does Not Belong to Defendant*

Defendant does not cite a single case on the question of whether a detained immigrant can be an "employee" under California labor laws, choosing instead to analogize this case to the FLSA and arguing it would be absurd to confer employer or employee status in these circumstances because it is unlawful to hire an immigrant detainee.  Def. Mot. 18:28-19:1-3.  But the Ninth Circuit disagreed when it stated,

> "While we do not believe that prisoners are categorically excluded from the FLSA, we hold that the inmates in this case, who worked for programs structured by the prison pursuant to the state's requirement that prisoners work at hard labor, are not employees of the state within the meaning of the FLSA."

*Burleson v. State of Cal.*, 83 F.3d 311, 313 (9th Cir. 1996).

---

workers); *N.L.R.B. v. C & C Roofing Supply, Inc.,* 569 F.3d 1096, 1099 (9th Cir.2009) (finding that undocumented workers can receive liquidated damages pursuant to a wrongful termination claim, and that such damages do not run afoul of IRCA); *N.L.R.B. v. Kolkka,* 170 F.3d 937(9th Cir.1999) (finding that undocumented workers have the right to vote in union elections); *Ulin v. ALAEA–72, Inc.,* 2011 WL 723617 (N.D. Cal. Feb. 23, 2011) (stating that IRCA's purpose "is not to prevent aliens from being compensated for work already performed").

- 27 -

The rule adopted by the Ninth Circuit as to whether prisoners or detainees can be "employees" under the labor laws *when they don't have to work* is determined by the "economic reality" of the labor relationship. *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983). The single determinative factor that triggers whether to evaluate the "economic reality" of the labor relationship is the legal obligation to work. That factor is indisputably absent here. If Plaintiffs have no legal obligation to work, their labor belongs to them and no one else. Not the United States, not California, and certainly not Defendant. *See Hale, supra* at 1395; *Coupar v. Dep't of Labor*, 105 F.3d 1263, 1267 (9th Cir.1997).

In cases involving *state prisoners* required to work under Cal. Pen. Code § 2700 (discussed above), the Ninth Circuit stated that, "the relationship between the worker and the entity for which the work was performed lies in the relationship between prison and prisoner. It is *penological*, not pecuniary." *Id*. at 1395 (emphasis added). The Ninth Circuit concluded that "the economic reality is that their [plaintiffs'] labor belonged to the institution," and held that "they were not 'employees' of the prison entitled to be paid a minimum wage under the FLSA." *Hale* in *Morgan v. MacDonald,* 41 F.3d 1291 (9th Cir.1994), *cert. denied.*

In the Ninth Circuit, the labor relationship is evaluated by considering the factors laid out in *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465 (9th Cir.1983). The "economic reality" factors include, "whether the alleged employer has the power to hire and fire the employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Hale*, 993 F.2d at 1394 (citing *Bonnette*, 704 F.2d at 1470).

Applying these factors to civil immigration detainees who are under no legal obligation to work (unlike state prisoners who are compelled to work under Cal. Pen. Code § 2700 and related regulations), there is no doubt that the "economic reality" of the labor relationship between Plaintiffs (and the proposed Class) and Defendant

- 28 -

is an employment relationship under the law. *Hale, supra* at 1393–94. Defendant not only has the exclusive power to "hire and fire" Plaintiffs and the proposed Class Members (permit or prevent them from working), supervise and control their work schedules and conditions, determine the rate and method of payment, and maintain records of their work, but also determines where they can spend their $1 per day, namely at Defendant's commissary (an exploitative "company-store" monopoly).

The only relevant question is who does Plaintiffs' labor belong to? Because our civil immigration system is not meant to be punitive, and detention is not punishment, there is no penological nature to Plaintiffs' detention. *Padilla, supra*. Plaintiffs are not prisoners, and their labor belongs to them, not to Defendant.

The entire line of cases cited by Defendant in support of its argument that Plaintiffs are not employees under California labor laws deal with either state *prisoners* or the FLSA. If Defendant's view is that detainee labor can never be covered by the any labor laws (including the FLSA), it is at odds with precedent both from the Ninth Circuit and the U.S. Supreme Court. *See, e.g., Tony Susan Alamo Found. v. Secretary of Labor,* 471 U.S. 290, 295-96, 105 S.Ct. 1953, 1958-59, 85 L.Ed.2d 278 (1985); *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 32, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961); *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 1476, 91 L.Ed. 1772 (1947); *Walling v. Portland Terminal Co.,* 330 U.S. 148, 150-51, 67 S.Ct. 639, 640-41, 91 L.Ed. 809 (1947); *United States v. Rosenwasser,* 323 U.S. 360, 362-63, 65 S.Ct. 295, 296-97, 89 L.Ed. 301 (1945).

### d. *California Wage Orders Govern Who is an Employee*

The implementation and enforcement of the minimum wage, overtime wage, and mandated meal and period provisions of the Cal. Labor Code is accomplished through the issuance of wage orders issued by the California Industrial Welfare Commission (the "IWC"). Specific employers and employees become subject to the labor laws under the terms of an applicable wage order, and

1  an employee who sues to recover unpaid minimum wages actually and necessarily
2  sues to enforce the wage order. *Martinez, supra* at 57.

3       Today, 18 wage orders are in effect, 16 covering specific occupations, one
4  covering all employees not covered by an occupation order, and a general
5  minimum wage order amending all others to conform to the amount of the
6  minimum wage currently set by statute. *See* IWC wage orders Nos. 1-2001 to 16-
7  2001; IWC wage order No. 17-2001, "Miscellaneous Employees", and IWC wage
8  order No. MW-2017.  Employees may rely on the IWC definition of an employee
9  for purposes of claims falling within their scope. *Dynamex Operations West, Inc*
10 *v Superior Court of Los Angeles County*, 179 Cal.Rptr.3d. 69 (Cal. Ct. App. 2014.
11 The same language defining "employee' appears in all 16 of the IWC's occupation
12 orders. Beginning with the word "employs," the definition incorporates the separate
13 definition of "employ" (*i.e.*, "to engage, suffer, or permit to work") as one alternative.
14 The remainder, "exercises control over . . . wages, hours, or working conditions",
15 has no clearly identified, precisely literal meaning. *Martinez, supra* at 59.

16      The IWC's definitions belong to a set of revisions intended to distinguish
17 state wage law from its federal analogue, the FLSA.   *Id*. at 59-60.  The IWC
18 provides employees with greater protection than federal law affords. *Id*. citing
19 *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 592; see also *Ramirez v.*
20 *Yosemite Water Co.* (1999) 20 Cal.4th 785, 795 [ 85 Cal.Rptr.2d 844, 978 P.2d
21 2]).   Since 1947 the term "hours worked" under the IWC definitions has meant
22 "the time during which an employee is *subject to the control of an employer*, . . .
23 includ[ing] all the time the employee is suffered or permitted to work, whether or
24 not required to do so." *See* IWC wage orders Nos. 1-2001 to 16-2001.

25      With respect to claims falling outside the scope of a wage order, the
26 common law definition of employee controls. *Dynamax, supra* at 72.  Under the
27 common law, the principal test is whether the person to whom service is rendered
28 has the right to control the manner and means of accomplishing the result desired.

*Owino, et al v. CoreCivic, Inc.* No. 17-cv-1112
OPPOSITION TO MOTION TO DISMISS

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 256 Cal.Rptr. 543, 769 P.2d 399.  *See also Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 173 Cal.Rptr.3d 332, 327 P.3d 165.

In order to determine which wage order applies, the IWC publishes an index of alphabetical businesses and occupations. See Index Of Business And Occupations.  The occupations described in Wage Order 5-2001 include, *inter alia*, janitorial, landscaping, catering, boarding, and cleaning of facilities, grounds, and living units as set forth in the Complaint.  Regardless of whether the Court applies the definition of "employee" in Wage Order 5-2001 or the common law definition, the existence of an employment relationship is a question of fact. *L. Byron Culver & Associates v. Jaoudi Industrial & Trading Corp.* (1991) 1 Cal.App.4th 300, 305 [1 Cal.Rptr.2d 680].  "The question of scope of employment is ordinarily one of fact for the jury to determine." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 221 [285 Cal.Rptr. 99, 814 P.2d 1341].)

Plaintiffs have alleged facts that taken as true are sufficient to establish Plaintiffs and the proposed Class Members are employees under both the applicable IWC Wage Order and California common law.  The Court should deny Defendant's Motion based on the argument that IWC Wage Orders do not apply.

## III.  **CONCLUSION**

For the foregoing reasons, Plaintiffs request the Court deny the Motion in its entirety.  In the alternative, Plaintiffs request the Court grant leave to amend. *See* Fed. R. Civ. P. 15(a)(2).

Dated:  August 31, 2017

/s/ Robert Teel
By: Robert Teel
**LAW OFFICE OF ROBERT L. TEEL**
*lawoffice@rlteel.com*
1425 Broadway, Mail Code: 20-6690
Seattle, Washington  98122
Telephone: (866) 833-5529
Facsimile:  (855) 609-6911

***Attorney for Plaintiffs and the Proposed Class***