**STRUCK LOVE BOJANOWSKI & ACEDO, PLC**
Daniel P. Struck, AZ Bar #012377
*(admitted pro hac vice)*
Rachel Love, AZ Bar #019881
*(admitted pro hac vice)*
Nicholas D. Acedo, AZ Bar #021644
*(admitted pro hac vice)*
Ashlee B. Fletcher, AZ Bar #028874
*(admitted pro hac vice)*
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Tel.: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
afletcher@strucklove.com

**LAW OFFICE OF ETHAN H. NELSON**
Ethan H. Nelson, CA Bar #262448
4 Park Plaza, Suite 1025
Irvine, California 92614
Tel.: (949) 229-0961
Fax: (949) 861-7122
ethannelsonesq@gmail.com

Attorneys for Defendant CoreCivic, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sylvester Owino and Jonathan Gomez, on behalf of themselves, and all others similarly situated,<br><br>           Plaintiffs,<br><br>v.<br><br>CoreCivic, Inc., a Maryland corporation,<br><br>           Defendant. | NO. 3:17-cv-01112-JLS-NLS<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Date: September 14, 2017<br>Time: 1:30pm<br>Courtroom: 4D<br>Judge: Honorable Janis L. Sammartino |

# TABLE OF CONTENTS

**Page**

I. TRAFFICKING VICTIMS PROTECTION ACT. ..........................................1

    A. The TVPA Does Not Extend to Immigration Detainees Performing Routine Housekeeping Tasks While in Lawful Custody ...............................................................................................1

    B. Plaintiffs' Allegations Fail to State a TVPA Claim.............................7

    C. Plaintiffs Do Not Have a Private Cause of Action for Conduct Prior to December 23, 2008 ................................................................7

    D. Plaintiffs' Claim Is Time Barred to the Extent It Is Based on Conduct Prior to May 31, 2007................................................................8

II. CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT...................8

III. CALIFORNIA LABOR CODE CLAIMS .......................................................9

    A. Federal Law Preempts Plaintiffs' Voluntary Labor Claims ..................9

    B. Immigration Detainees Are Not Employees Under California's Labor Code ........................................................................................10

    C. The Wage Orders Do Not Apply .......................................................12

IV. DERIVATIVE CLAIMS.................................................................................13

V. CONCLUSION ................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Agyeman v. Corr. Corp. of Am.*
  390 F.3d 1101 (9th Cir. 2004) ................................................................................ 5

*Alvarado Guevera v. I.N.S.*
  902 F.2d 394 (5th Cir. 1990) ................................................................................ 12

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................................... 7

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (1986) ............................................................................................... 7

*Bijeol v. Nelson*
  579 F.2d 423 (7th Cir. 1978) .................................................................................. 5

*Bonnette v. Calif. Health & Welfare Agency*
  704 F.2d 1465 (9th Cir. 1983) .............................................................................. 12

*Bragdon v. Abbott*
  524 U.S. 624 (1998) ............................................................................................... 6

*Brooks v. Donovan*
  699 F.2d 1010 (9th Cir. 1983) ................................................................................ 2

*Bruton v. Gerber Prods. Co.*
  2017 WL 3016740 (9th Cir. July 17, 2017) (unpublished) ................................... 13

*Channer v. Hall*
  112 F.3d 214 (5th Cir. 1997) ......................................................................... 3, 4, 6

*Chuwang v. Corr. Corp. of Am.*
  No. CIV.A. L-86-55, 1987 WL 13814 (S.D. Tex. May 29, 1987) ........................ 5

*Doe v. United States*
  831 F.3d 309 (5th Cir. 2016) .................................................................................. 5

*Gerard v. Mitchell Systems*
  No. CV 14-4999 DSF (SHX), 2016 WL 4479987 (C.D. Cal.
  Aug. 22, 2016) ...................................................................................................... 11

*Ghirardo v. Antonioli*
  924 P.2d 996 (Cal. 1996) ...................................................................................... 13

*Goodyear Atomic Corp. v. Miller*
  486 U.S. 174 (1988) ............................................................................................... 3

*Guzman-Martinez v. Corr. Corp. of Am.*
  CV-11-02390-PHX-NVW, 2012 WL 5907081 (D. Ariz. Nov. 26, 2012) ............. 5

*Hale v. State of Ariz.*
  993 F.2d 1387 (9th Cir. 1993)...............................................................................12

*Incalza v. Fendi N. Am., Inc.*
  479 F.3d 1005 (9th Cir. 2007)...............................................................................10

*Johnson v. Corr. Corp. of Am.*
  No. 14CV0041 LAB WVG, 2014 WL 2919300 (S.D. Cal. June 26, 2014)...........5

*Lucas v. Jerusalemen Café*, LLC
  721 F.3d 927 (8th Cir. 2013)...................................................................................9

*Malat v. Riddell*
  383 U.S. 569 (1966) ................................................................................................2

*Martinez v. Combs*
  231 P.3d 259 (Cal. 2010) ......................................................................................11

*Mendez v. Haugen*
  CV 14-4792 ADM/BRT, 2015 WL 5718967 (D. Minn. Sept. 29, 2015)...............6

*Menocal v. GEO Group, Inc.*
  113 F. Supp. 3d 1125 (D. Colo. 2015). .......................................................4, 5, 12

*Miles v. Apex Marine Corp.*
  498 U.S. 19 (1990) ..................................................................................................3

*Murray v. Corr. Corp. of Am.*
  No. CV 11-2210-PHX-RCB, 2012 WL 2798759 (D. Ariz. July 9, 2012) .............5

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*
  790 F. Supp. 2d 1134 (C.D. Cal. 2011) .............................................................2, 3

*Rhynes v. Stryker Corp.*
  10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011).................................13

*S.G. Borello & Sons, Inc. Dep't of Indus. Relations*
  769 P.2d 399 (Cal. 1989) ......................................................................................12

*Salas v. Sierra Chem. Co.*
  327 P.3d 797 (Cal. 2014) ......................................................................................10

*United States v. Grimes*
  142 F.3d 1342 (11th Cir. 1998)...............................................................................7

*United States v. Katz*
  271 U.S. 354 (1926) ................................................................................................2

*United States v. Kozminski*
  487 U.S. 931 (1988) ............................................................................................3, 4

*United States v. Thomas*
  240 F.3d 445 (5th Cir. 2001)...................................................................................5

*Vernon v. Heckler*
     811 F.2d 1274 (9th Cir. 1987)..................................................................................9

*Wilshire Westwood Associates v. Atl. Richfield Corp.*
     881 F.2d 801 (9th Cir. 1989)....................................................................................2

**Statutes**

8 U.S.C. § 1555(d)......................................................................................................10

22 U.S.C. § 7102(9).....................................................................................................9

Pub. L. No. 95-86, 91 Stat. 426 (1978) ......................................................................10

Pub. L. No. 106-386, § 102, 114 Stat. 1488 (2000) .....................................................1

Pub. L. No. 108-193, 117 Stat 2875 (2003) .................................................................8

Cal. Bus. & Prof. Code § 17200 .................................................................................13

Cal. Code Regs. tit. 15, § 3041.2 ................................................................................11

Cal. Labor Code § 1171.5...........................................................................................10

Cal. Labor Code § 1194..............................................................................................11

Cal Penal Code § 236.1(a)............................................................................................9

Cal. Penal Code § 2700 ................................................................................................8

2005 Cal. Legis. Serv. Ch. 240 (A.B. 22) ....................................................................8

**Regulations**

15 C.C.R. § 3040 ..........................................................................................................8

28 C.F.R. § 545.23........................................................................................................6

**Other Authorities**

H.R. Conf. Rep. 106-939, at 1 (2000) ..........................................................................1

The allegations in Plaintiffs' Complaint attempt to paint an ugly picture: a private, for-profit corporation forces detained immigrants to perform labor under threat of solitary confinement.  Plaintiffs' Response doubles-down on the divisive and inflammatory rhetoric.  (See Dkt. 22 at 13:11-13, 16:14-15, 16:27 [referring to Defendant's "for-profit forced labor practices" that result in "millions of dollars in unjust profits"]; at 17:4 [accusing Defendant of "protect[ing] its franchise and exploitative profiteering"].)  However, resolution of CoreCivic's Motion turns solely on legal questions, e.g.: whether the TVPA and California's Labor Code extend to immigration detainees performing routine housekeeping tasks while in lawful custody.  As discussed in the Memorandum and below, the answers to those legal questions require dismissal of Plaintiffs' Complaint.

## I.  TRAFFICKING VICTIMS PROTECTION ACT

### A.  The TVPA Does Not Extend to Immigration Detainees Performing Routine Housekeeping Tasks While in Lawful Custody.

**1.**  In its Memorandum, CoreCivic spelled out Congress's intent in enacting the TVPA—to target, prosecute, and deter human traffickers (those who transport persons "across international borders" or take them "from their home communities to unfamiliar destinations" and force them to work). (Dkt. 18-1 at 13-15.)  *See also* H.R. Conf. Rep. 106-939, at 1 (2000) (stating that the purpose of the Act is to "combat trafficking of persons, especially into the sex trade, slavery, and slavery-like conditions, in the United States and countries around the world through prevention, through prosecution and enforcement against trafficker").  That clear intent is supported by twenty four (24) congressional findings.  *See* Pub. L. No. 106-386, § 102, 114 Stat. 1488 (2000).

Plaintiffs entirely ignore the statute's purpose (and Congress's intent) and instead rely on its plain language to argue it proscribes "any kind of forced labor," regardless of the circumstances.  (Dkt. 22 at 16:18.)  But they stop there and do not address at all the fundamental canon of statutory construction that a court must look

beyond the plain language of a statute *if* a literal application would lead to "extreme or absurd results," *United States v. Katz*, 271 U.S. 354, 362 (1926); *Brooks v. Donovan*, 699 F.2d 1010, 1011 (9th Cir. 1983), or if "internal evidence of the statute" suggests a "departure from a literal reading" to "effect the legislative purpose." *Wilshire Westwood Associates v. Atl. Richfield Corp.*, 881 F.2d 801, 803-04 (9th Cir. 1989) (quoting *Malat v. Riddell,* 383 U.S. 569, 571-72 (1966)). Both conditions are satisfied here, with no rebuttal from Plaintiffs. Congress did not intend for the statute to prohibit immigration officials from requiring lawfully-detained immigration detainees to clean their personal and communal areas. Indeed, if Plaintiffs' literal interpretation was correct, the TVPA would criminalize a parent who threatens to ground their teenage son if he refuses to clean his room.

     Plaintiffs cite *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134 (C.D. Cal. 2011), without any argument or explanation. (Dkt. 22 at 16:20-23.) In *Nunag-Tanedo*, Filipino nationals were "[e]nticed by promises of lucrative and exciting employment" to come to the United States and teach in Louisiana. 790 F. Supp. 2d at 1137-39. The businesses recruiting the teachers arranged for their visas and their teaching positions for a non-refundable recruitment fee. *Id*. But after the teachers paid the fee and the recruiters secured their visas, the recruiters withheld the visas unless the teachers paid an additional, substantial fee. *Id*. Faced with the choice of either forfeiting the fees already paid and losing the opportunity to work to pay off that debt *or* paying the additional fee and working, the teachers paid the additional fee. *Id*. Once in Louisiana, the recruiters threatened to deport the teachers or allow their visas to expire if they complained about the arrangement, asked for a refund, or moved. *Id*. at 1144. The court held that the allegations of "fraud and extortion leading to forced labor" were sufficient to state a claim under the TVPA. *Id*. at 1144-45. The recruiters "intentionally manipulated the situation so that [the teachers] would feel compelled to remain and would obey all of [their] demands." *Id*. at 1146.

*Nunag-Tanedo* bears little resemblance to this case, which did not involve a detention scenario. The plaintiffs were teachers lawfully employed by Louisiana school districts to teach high school math and science. They were tricked into pursuing that employment and forced to continue it under threat of deportation. Conversely, Plaintiffs were in ICE custody, civilly detained, and required to keep their living and communal areas tidy. Plaintiffs were not duped into their detention under false pretenses, nor do they allege fraud, extortion, or manipulation. They also do not allege that CoreCivic threatened deportation.

**2.** In its Memorandum, CoreCivic argued that a literal interpretation of the statute is inconsistent with the Supreme Court's holding in *United States v. Kozminski*, 487 U.S. 931 (1988), and its progeny, including decisions by the Fourth, Fifth, Seventh, and Eight Circuit Courts of Appeals. (Dkt. 18-1 at 15-18.) Those cases stand for the proposition that requiring prisoners, pretrial detainees, and civil detainees to perform general housekeeping chores during their detention is not involuntary servitude under the Thirteenth Amendment or § 1584 of the TVPA, nor is it punishment for purposes of the Fifth Amendment. Congress enacted § 1589 after these courts recognized this "civic duty" exception, and, under another fundamental canon of statutory interpretation, courts "assume that Congress [wa]s aware of existing law when it passe[d] [the] legislation" and "intended to incorporate it." *See*, *e.g.*, *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988). Nothing in § 1589 suggests Congress intended to abrogate the "civic duty" exception first recognized in *Kozminski*.

Plaintiffs again ignore the crux of this argument. They do not rebut the statutory construction holdings in *Miles* or *Goodyear* or the chronology of enactments. Instead, they simply assert that *Kozminski*, *Channer v. Hall*, 112 F.3d 214 (5th Cir. 1997), and the other immigration-detainee cases cited in the Memorandum address only involuntary servitude under § 1584 and/or the

Thirteenth Amendment, and do not address § 1589, which "reaches beyond involuntary servitude."[1] (Dkt. 22 at 18:1-20:2.) CoreCivic does not disagree that § 1589 broadened the definition of involuntary servitude to include psychological coercion. The point of the argument, however, is that, in doing so, Congress did not abrogate the "civic duty" exception that applied to the previous definition (in § 1584); it was fully aware of the exception and incorporated it into the new definition (in § 1589). At a minimum, Congress's inaction is further evidence that it never intended § 1589 to apply to certain civic duties in the first place. Plaintiffs point out the lack of decisional caselaw that has applied the "civic duty" exception to a § 1589 claim, but that can easily be explained. Based on *Kozminski* and its progeny, litigants have been on notice that such an exception does exist and therefore any § 1589 suit would be futile.

Plaintiffs also cite *Menocal v. GEO Group, Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015). *Menocal* involved a similar § 1589 TVPA claim by immigration detainees against another private prison operator. *Id.* at 1131-32. In that case, the district court declined to extend the "civic duty" exception because

> [b]oth *Kozminski* and *Channer* interpreted the term "involuntary servitude" (in § 1584 and in the Thirteenth Amendment, respectively), whereas § 1589 reaches "whoever...obtains the labor or services of a person by...threats of physical restraint." The language at issue here is thus broader than the language at issue in *Kozminski* and *Channer*, and intentionally so. In addition, Defendants have cited no authority for reading a civic duty exception into § 1589, or for applying such an exception to a private, for-profit corporation under contract with the government.

*Id.* at 1132-33 (internal citation omitted). Plaintiffs' argument parrots this cursory ruling. And like their argument, the district court's *Kozminski*/*Channer* distinction is flawed for the same reasons (discussed above). As for the court's hesitation to

---

[1] Plaintiffs do not address the Fourth, Seventh, and Eighth Circuit Court decisions cited in the Memorandum that applied the "civic duty" exception to pretrial detainees' claims. (See Dkt. 18-1 at 16:21-17:4.)

Reply in Support of Motion to Dismiss      4      17cv01112-JLS-NLS

extend the exception to a private corporation, that reasoning ignores the fact that courts have routinely acknowledged that CoreCivic (formerly Corrections Corporation of America, Inc.) is a federal actor—i.e., acting under color of federal law—when it houses immigrants on behalf of the federal government.[2] There is also no reasoned basis to disqualify private corporations, which are not exempt from § 1589. *See Bijeol v. Nelson*, 579 F.2d 423, 424-25 (7th Cir. 1978) (noting one reason for exception is for "health and safety" of detainees living in multiple housing unit).

Nevertheless, *Menocal* addressed only whether the "civic duty" exception applied to § 1589. It did not address whether (and merely assumed that) the statute applied in this context. The Court need only confront *Menocal* and the "civic duty" exception if it concludes the statute does apply, notwithstanding its clearly-stated purpose to the contrary. It doesn't for all of the above reasons.

Finally, Plaintiffs attempt to skirt CoreCivic's statutory construction and "civic duty" exception arguments by contending that they allege more than routine housekeeping tasks. (Dkt. 22 at 16:24-17:28.) But they do not point to any allegation in the Complaint that supports anything more, nor do they describe the labor they are referring to. (Id.) Paragraph 16 of their Complaint explicitly defines the labor they allege is the basis for their Forced Labor TVPA claim:

> CoreCivic force[s] and coerce[s] Plaintiffs and members

---

[2] *See*, *e.g.*, *Doe v. United States*, 831 F.3d 309, 316 (5th Cir. 2016); *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1104 (9th Cir. 2004); *Johnson v. Corr. Corp. of Am.*, No. 14CV0041 LAB WVG, 2014 WL 2919300, at *2 (S.D. Cal. June 26, 2014); *Guzman-Martinez v. Corr. Corp. of Am.*, CV-11-02390-PHX-NVW, 2012 WL 5907081, at **9-11 (D. Ariz. Nov. 26, 2012); *Murray v. Corr. Corp. of Am.*, No. CV 11-2210-PHX-RCB, 2012 WL 2798759, at *1 (D. Ariz. July 9, 2012); *Chuwang v. Corr. Corp. of Am.*, No. CIV.A. L-86-55, 1987 WL 13814, at *1 (S.D. Tex. May 29, 1987); *see also United States v. Thomas*, 240 F.3d 445, 448 (5th Cir. 2001) (holding that guard at CCA facility, which contracted with INS to house INS detainees, was a "public official" – i.e., a "person acting for or on behalf of the United States … in any official function").

> of the putative class, to clean, maintain, scrub, sweep, and mop floors, bathrooms, showers, toilets and windows for no pay at all, not only in their living areas ('pods'), but also throughout the other interior and exterior areas of CoreCivic's facilities[.]

(Dkt. 1, ¶ 16.)[3] These are routine housekeeping chores. *See Channer*, 112 F.3d at 219; *Mendez v. Haugen*, CV 14-4792 ADM/BRT, 2015 WL 5718967, at *5 (D. Minn. Sept. 29, 2015).

Plaintiffs also cite to ICE's 2011 Performance Based National Detention Standards ("PBNDS") to suggest that ICE considers "personal housekeeping" tasks to include only making their beds, stacking loose papers, keeping the floors clean, and refraining from hanging items in their living spaces. (Dkt. 22 at 17:11-20.) But in reviewing CoreCivic's Motion, the Court is limited to the allegations in the Complaint and Plaintiffs did not allege this provision. Nor do they indicate whether this particular standard was the standard in effect at all times during their detention. Nonetheless, the PBNDS does not dictate either the statute's reach or the judicially recognized exception. Moreover, the PBNDS does not define "housekeeping tasks" to include only those chores. It specifically states that "all detainees are responsible for personal housekeeping." (Dkt. 22 at 17:13-14.) It then states that detainees are "required to maintain their immediate living areas in a neat and orderly manner by [listing chores]." (Id. at 17:14-17.)

**3.** In its Memorandum, CoreCivic argued that a literal interpretation of the statute would effectively abrogate 28 C.F.R. § 545.23, which authorizes federal prisons to require inmates to perform "housekeeping tasks in the inmate's own cell and in the community living area." Since Congress is presumed to have been aware of that regulation, *see Bragdon v. Abbott*, 524 U.S. 624, 631 (1998), it could not

---

[3] Plaintiffs direct the Court to Paragraph 14 (Dkt. 22 at 17:10), but that paragraph lists the chores serving as the basis for their Voluntary Labor claims. (See Dkt. 1, ¶¶ 14-15.) They also generically cite to Paragraphs "1-16" of their Complaint, but again nothing in those allegations concretely alleges anything beyond the chores itemized in Paragraph 16.

Reply in Support of Motion to Dismiss 6 17cv01112-JLS-NLS

have intended § 1589 to apply to those tasks, and, accordingly, could not have intended the statute to apply in the immigration detention setting. Plaintiffs' response is that they were not inmates. (Dkt. 22 at 20:3-28.) That distinction is irrelevant. The point is that Plaintiffs' literal interpretation of § 1589 would abrogate § 545.23. That cannot be what Congress intended.

### B.  Plaintiffs' Allegations Fail to State a TVPA Claim

In response to CoreCivic's argument that the allegations in the Complaint are nothing more than threadbare recitals of the elements of § 1589, Plaintiffs simply repeat those same recitals. (Dkt. 22 at 15:11-16:12, 21:1-23:6.) Merely alleging CoreCivic forced them to perform labor during their detention under threat of solitary confinement is not enough.[4] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (1986)) (a complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" or officers "a formulaic recitation of the elements of a cause of action will not do").

### C.  Plaintiffs Do Not Have a Private Cause of Action for Conduct Prior to December 23, 2008.

Plaintiffs seemingly argue that the December 2008 Amendment (creating a private cause of action against "whoever knowingly benefits" from a criminal violation) retroactively applied to claims that had not expired under the December 2003 Amendment (creating a private cause of action against "the perpetrator" of the criminal violation). (Dkt. 22 at 23:7-25:2.) The cases they cite, however, are inapposite and stand only for the proposition that "application of a statute of limitations extended before the original limitations period has expired does not violate the *Ex Post Facto* Clause." *See United States v. Grimes*, 142 F.3d 1342, 1351 (11th Cir. 1998). The December 2008 Amendment not only set the statute of limitations for a private cause of action—it *created* the private cause of action

---

[4] CoreCivic vehemently denies Plaintiffs' allegation that it is engaging in a scheme to violate human trafficking laws through forced labor.

Reply in Support of Motion to Dismiss         7              17cv01112-JLS-NLS

Plaintiffs are raising. Prior to that date, they had no private cause of action against CoreCivic, only against "the perpetrator." *See* Pub. L. No. 108-193, 117 Stat 2875 (2003). Consequently, they cannot sue CoreCivic for conduct prior to the December 2008 Amendment.

### D. Plaintiffs' Claim Is Time Barred to the Extent It Is Based on Conduct Prior to May 31, 2007.

Plaintiffs ask the Court to allow their pre-May 31, 2017 claims to proceed, stating only: "It is a question of fact as to whether those TVPA claims warrant equitable tolling until at least May 31, 2003, four years before Defendant argues Plaintiffs' claims are time barred." (Dkt. 22 at 24:27-25:1.) But they have provided no factual or legal basis for equitable tolling.

## II. CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT

Plaintiffs do not dispute that their California TVPA claim is identical to their federal TVPA claim, and, thus, if their federal TVPA claim fails their California TVPA claim fails as well. (Compare Dkt. 18-1 at 21:14-17; with Dkt. 22 at 25:3-28:7.) *See* 2005 Cal. Legis. Serv. Ch. 240 (A.B. 22). Nor do they provide any evidence that the California Legislature intended the statute to apply in an immigration detention setting. This should be the end of the matter.

They contest CoreCivic's argument that Cal. Penal Code § 2700 and 15 C.C.R. § 3040—which require prisoners in the custody of the California Department of Corrections and Rehabilitation to work—support the Legislature's intent to *not* extend the statute's application to this arena. (Dkt. 22 at 27:9-22.) But their only argument is that they are not prisoners. Again, that distinction does not matter. The point is that the California Legislature would not have criminalized conduct in one statute (the California TVPA) that it authorized in another statute (Cal. Penal Code § 2700). And if the California TVPA applies to housekeeping tasks performed by immigration detainees it must apply to the same work performed by prisoners. There is no way around it.

Plaintiffs spend most of their argument debating whether they must allege and prove that CoreCivic "recruit[ed], harbor[ed], transport[ed], provi[ded], or obtain[ed] [them] *for* labor or services" and "*for the purpose of* subjection to involuntary servitude, peonage, debt bondage, or slavery." 22 U.S.C. § 7102(9) (emphasis added). They do not dispute they have not alleged these elements, but contend it is not an element of the California TVPA. They argue that Cal. Penal Code § 236.1(g) does not define "human trafficking" (as used in Cal Penal Code § 236.1(a)), but instead is a "declaration of legislative finding" that can be ignored. (Dkt. 22 at 25:11-27:8.) Legislative finding or not, the California Legislature included it in the statute itself. And the statute says "the definition of human trafficking in this section"—i.e., in Cal Penal Code § 236.1(a)—"is equivalent to" the definition of trafficking found in 22 U.S.C. § 7102(9), which includes these elements.

Finally, Plaintiffs do not dispute the effective date of the statute or provide an explanation as to how their claim—to the extent it is based on conduct predating that effective date—is viable. (Dkt. 22 at 28:8-26.) They simply argue that the statute of limitations is an affirmative defense that is not properly before the Court at this stage. Not true. "[T]he statute-of-limitations defense may be raised in a motion to dismiss when the running of the statute is apparent from the face of the complaint." *Vernon v. Heckler*, 811 F.2d 1274, 1278 (9th Cir. 1987). Here, it is, and Plaintiffs provide the Court nothing to require deferral.

## III. CALIFORNIA LABOR CODE CLAIMS

### A. Federal Law Preempts Plaintiffs' Voluntary Labor Claims.

In response to CoreCivic's field preemption argument, Plaintiffs cite *Lucas v. Jerusalemen Café*, LLC, 721 F.3d 927 (8th Cir. 2013). But that case did not address preemption at all. It merely held that "[t]he FLSA does not allow employers to exploit any employee's immigration status or to profit from hiring unauthorized aliens in violation of federal law." *Id*. at 930. *Lucas* provides no

support at any level. CoreCivic is not arguing that the INA and IRCA preempt California's labor laws because Plaintiffs are undocumented aliens or because of their immigration status. These federal laws foreclose state regulation of immigrant *detention*. Plaintiffs also cite *Salas v. Sierra Chem. Co.*, 327 P.3d 797 (Cal. 2014), and *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005 (9th Cir. 2007). But *Incalza* involved conflict preemption (not field preemption) involving IRCA, a California law, and the termination of an unlawful immigrant. 479 F.3d at 1010. And *Salas* involved "employment laws that extend antidiscrimination protections with lost pay remedies to employees who are unauthorized aliens." 327 P.3d at 806. Neither case involved regulations pertaining to the *detention* of immigrants.

In response to CoreCivic's specific preemption argument, Plaintiffs argue that "8 U.S.C. § 1555(d) is included in the Code as the result of an appropriations bill," and that the appropriations bill is "not a wage ceiling bill." (Dkt. 22 at 35:18-19, at 36:16.) Plaintiffs have it wrong. The 1978 Department of Justice Appropriation Act (the appropriations bill) is the result of § 1555(d). And that bill did set a ceiling for the payment of allowances to immigrant detainees who perform work "while held in custody under the immigration laws": "a rate not in excess of $1 per day." Pub. L. No. 95-86, 91 Stat. 426 (1978). According to the Complaint, CoreCivic paid the maximum allowed under the law. Paying anything more than that amount would conflict with the § 1555(d) and the Act.

**B.    Immigration Detainees Are Not Employees Under California's Labor Code.**

**1.**    In its Memorandum, CoreCivic argued that the California Legislature carefully defined the term "employee" in various ways depending on the particular Labor Code provision, but *never* defined it to include immigrant detainees. Plaintiffs do not respond at all to this argument. Instead, they argue that, under Cal. Labor Code § 1171.5, all employees are protected regardless of their immigration status. But CoreCivic did not argue that the Labor Code was inapplicable because

of Plaintiffs' immigration status. It argued that the Labor Code does not apply to immigration detainees in lawful custody, i.e., because of Plaintiffs' immigration *detention* status. Furthermore, § 1171.5 presumes the individual is an employee. Here, Plaintiffs were not employees.

Plaintiffs do not dispute they were immigration detainees under the complete control and custody of the federal government. Thus, to the extent Plaintiffs performed certain housekeeping chores or participated in work programming, it was pursuant to INS regulations. It is those federal regulations—not the IWC Wage Orders—that define their status and govern their wages and labor. *See*, *e.g.*, *Gerard v. Mitchell Systems*, No. CV 14-4999 DSF (SHX)) 2016 WL 4479987, **3, 8 (C.D. Cal. Aug. 22, 2016) (holding IWC wage orders did not govern claims by cosmetology students for unpaid wages for performing tasks that included laundering towels, wiping down equipment, sweeping, cleaning, and emptying the trash because the Cosmetology Board governed the students' relationship with the defendant schools).

Plaintiffs' reliance on *Martinez v. Combs*, 231 P.3d 259 (Cal. 2010), is thus misplaced. *Martinez* holds that wage and labor claims brought under the Cal. Labor Code § 1194 are actions to enforce the IWC Wage Orders regardless of immigration status. *Id.* at 278. But it does not sweep state inmates under the California Labor Code, let alone federal immigration detainees whose labor, wages, and conditions are completely controlled by INS regulations.[5] Nor could any employment relationship have existed under the common law test, as the circumstances of their detention for purposes of deportation does not support a reasonable belief that an employer-employee relationship existed. *See Bonnette v.*

---

[5] California statutes governing inmate wages make clear that they are not covered by the ICW Wage Orders' minimum wages. *See* Cal. Code Regs. tit. 15, § 3041.2 (setting wages for a laborer at $.08 to $0.13 per hour). Although California does not have an analogous statute regulating the wages of immigration detainees, that is only because the federal government has plenary authority over their custody.

Reply in Support of Motion to Dismiss      11      17cv01112-JLS-NLS

*Calif. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983); *S.G. Borello & Sons*, *Inc. Dep't of Indus. Relations*, 769 P.2d 399, 404 (Cal. 1989).

**2.** In its Memorandum, CoreCivic noted that no case has held these Labor laws extend to immigration detainees. Plaintiffs have failed to cite a single case that has. None of the cases they cite address detainee labor. In fact, they cite a case that *has* held similar state labor laws do *not* apply to immigration detainees. In *Menocal*, the court held that the plaintiff-immigration detainees were not "employees" for purposes of Colorado's minimum wage law. 113 F. Supp. 3d at 1129. It reasoned, in part, that "immigration detainees, like prisoners, do not use their wages to provide for themselves" and therefore the purpose of the minimum wage law was not served. *Id*. Plaintiffs also do not address at all the Fifth Circuit's decision in *Alvarado Guevera v. I.N.S.*, 902 F.2d 394, 395 (5th Cir. 1990), which held that immigration detainees are not employees under the Fair Labor Standards Act. *Menocal* and *Alvarado Guevera* are enough to deny Plaintiffs' claims here.

Finally, Plaintiffs' attempt to distinguish the multitude of cases that have held that prisoners are not employees under the FLSA fails. Like mandated inmate labor, voluntary immigrant detainee labor is not "exchanged for wages in a free market." *Hale v. State of Ariz.*, 993 F.2d 1387, 1394 (9th Cir. 1993). That is why *Alvarado Guevera* relied on these prisoner cases to hold that immigrant detainees who voluntarily participate in a work program are not employees. 902 F.2d at 396.

**C.     The Wage Orders Do Not Apply.**

Plaintiffs do not respond, and thus concede, that Wage Order 15-2001 does not apply. Plaintiffs incorrectly argue that Wage Order 5-2001, Public Housekeeping Industry, applies because it covers "occupations" such as the "janitorial, landscaping, catering, boarding, and cleaning of facilities, grounds, and living units as set forth in the Complaint." (Dkt. 22 at 43:2-8.) But Plaintiffs fail to address the fact that CoreCivic was not engaged in the public housekeeping industry at all, but provided detention services to the federal government.

## IV. DERIVATIVE CLAIMS

Plaintiffs argue that their Unfair Competition Claim is not derivative because they allege both the unlawful *and* unfair prongs of that statute, and the unfair prong is satisfied based on their allegation that CoreCivic's conduct "offends public policy against human trafficking and Forced Labor." (Dkt. 22 at 29:6-30:10.) *See* Cal. Bus. & Prof. Code § 17200. But if the Court finds that neither the TVPA nor the California TVPA apply, then the allegations do not offend any public policy against human trafficking.

Plaintiffs next argue that their Negligence Claim is not derivative because they are not merely alleging negligence per se, "but also a breach of the duty to provide a safe working environment free from human rights abuses." (Dkt. 22 at 32 at 18-16.) But as their Complaint makes clear, the alleged breaches are the violations of the TVPA and the California TVPA. (Dkt. 1, ¶¶ 102-119.) Thus, if those statutes do not apply, then the standard of care has not been breached.

Finally, Plaintiffs argue that their Unjust Enrichment Claim is a stand-alone claim because they are entitled to plead alternative theories of recovery. (Dkt. 22 at 30:11-32:17.) But Plaintiffs rely on cases where courts have permitted an unjust enrichment claim to proceed as an alternative theory of recovery *on a breach of contract claim. See Ghirardo v. Antonioli*, 924 P.2d 996, 998 (Cal. 1996); *see also Bruton v. Gerber Prods. Co.*, 2017 WL 3016740, at *1 (9th Cir. July 17, 2017) (unpublished) (recognizing California allows "an independent claim for unjust enrichment to proceed in an insurance dispute"). Plaintiffs do not allege the breach of any agreement. They also do not dispute that adequate remedies exist at law. That is an additional basis to dismiss this claim. *See Rhynes v. Stryker Corp.*, 10-5619 SC, 2011 WL 2149095, *4 (N.D. Cal. May 31, 2011).

## CONCLUSION

For these reasons and those in the Memorandum, Plaintiffs' Complaint should be dismissed with prejudice.

| | | |
|---|---|---|
| 1 | Dated: September 7, 2017 | |
| 2 | | |
| 3 | | By s/ Nicholas D. Acedo |
| 4 | | Daniel P. Struck<br>dstruck@strucklove.com |
| 5 | | Rachel Love<br>rlove@strucklove.com |
| 6 | | Nicholas D. Acedo<br>nacedo@strucklove.com |
| 7 | | Ashlee B. Fletcher<br>afletcher@strucklove.com |
| 8 | | **STRUCK LOVE BOJANOWSKI & ACEDO, PLC** |
| 9 | | Ethan H. Nelson |
| 10 | | **LAW OFFICE OF ETHAN H. NELSON**<br>ethannelsonesq@gmail.com |
| 11 | | Attorneys for Defendant CoreCivic, Inc. |

3382880.1