STRUCK LOVE BOJANOWSKI & ACEDO, PLC
Daniel P. Struck, AZ Bar #012377
*(admitted pro hac vice)*
Rachel Love, AZ Bar #019881
*(admitted pro hac vice)*
Nicholas D. Acedo, AZ Bar #021644
*(admitted pro hac vice)*
Ashlee B. Hesman, AZ Bar #028874
*(admitted pro hac vice)*
Jacob B. Lee, AZ Bar #030371
*(admitted pro hac vice)*
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Tel.:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com

LAW OFFICE OF ETHAN H. NELSON
Ethan H. Nelson, CA Bar #262448
4 Park Plaza, Suite 1025
Irvine, California 92614
Tel.: (949) 229-0961
Fax: (949) 861-7122
ethannelsonesq@gmail.com

Attorneys for Defendant/Counter-Claimant
CoreCivic, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sylvester Owino and Jonathan Gomez, on behalf of themselves, and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>CoreCivic, Inc., a Maryland corporation,<br><br>                    Defendant. | NO. 3:17-cv-01112-JLS-NLS<br><br>**CORECIVIC'S FIRST AMENDED COUNTERCLAIMS** |

CoreCivic, Inc., a Maryland
corporation,

Counter-Claimant,

v.

Sylvester Owino and Jonathan Gomez,
on behalf of themselves, and all others
similarly situated,

Counter-Defendants.

Counter-Claimant CoreCivic ("CoreCivic"), through counsel, and pursuant to Fed. R. Civ. P. 15(a)(1)(B), brings the following amended counter-claims against Counter-Defendants Sylvester Owino and Jonathan Gomez (collectively, "Counter-Defendants").

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over these counter-claims pursuant to 28 U.S.C. § 1332(a)(2). CoreCivic is a Maryland corporation with its principal place of business in Tennessee. Sylvester Owino is a citizen of Kenya, who alleges he is a resident of California. Jonathan Gomez is a citizen of Mexico, who alleges he is a resident of California. The amount in controversy on the counter-claims exceeds $75,000.00.

2.      Alternatively, this Court has supplemental jurisdiction over these counter-claims pursuant to 28 U.S.C. § 1367(a), as these counter-claims form part of the same case or controversy as the claims asserted by Plaintiffs/Counter-Defendants under Article III of the United States Constitution.

3.      Venue is proper in this Court, as the events giving rise to these counter-claims occurred in this district.

## PARTIES

4.      CoreCivic is a Maryland corporation with its principal place of business in Tennessee. During part or all of the timeframes relevant to Plaintiffs/Counter-Defendants' claims, CoreCivic owned and operated the Otay

Mesa Detention Center ("OMDC"), located in San Diego, California; the San Diego Correctional Facility ("SDCF"), located in San Diego, California; and the California City Correctional Center ("CACCC"), located in California City, California.[1] CoreCivic currently houses federal immigration detainees at OMDC, and housed such detainees at SDCF and CACCC during the timeframes noted above, consistent with the terms and conditions of its detention services agreements with United States Immigration and Customs Enforcement ("ICE"), including administration of the Detainee Voluntary Work Program, as well as all applicable state and federal statutes and regulations and detention facility standards.

5.      Sylvester Owino is a citizen of Kenya, who alleges he is a resident of California. Owino was an ICE detainee at SDCF at various times from November 7, 2005 to March 9, 2015, during which time he received material benefits, including but not limited to housing, food, clothing, and recreation, at no cost to himself.

6.      Jonathan Gomez is a citizen of Mexico, who alleges he is a resident of California. Gomez was an ICE detainee at SDCF at various times from June 18, 2012 to September 18, 2013, during which time he received material benefits, including but not limited to housing, food, clothing, and recreation, at no cost to himself.

## FIRST CAUSE OF ACTION

### Unjust Enrichment

7.      CoreCivic's detention services agreements with ICE require all CoreCivic personnel to meet high standards of professionalism and integrity, and

---

[1] OMDC first opened in October 2015. Prior to that, CoreCivic housed ICE detainees at SDCF, which closed in October 2015. The contract requirements, policies, and procedures in effect at both facilities are/were essentially identical, and many staff and detainees transferred from SDCF to OMDC. Indeed, the detention services agreement between ICE and CoreCivic, first entered into in July 2005, makes repeated references to the facility as "Otay Mesa."

set specific requirements that must be met before a CoreCivic employee is permitted to enter on duty at the facility, including interviews, criminal history and other background checks, and employment eligibility verification. Pursuant to the agreements, ICE is the final approval authority for all CoreCivic personnel who work with federal detainees at CoreCivic facilities under the terms of the agreement. Proposed personnel with criminal convictions must be specifically approved by ICE; any such persons who are still under supervision or jurisdiction of any parole, probation, or correctional authority are prohibited from employment at CoreCivic facilities.

8.    CoreCivic's detention services agreements with ICE also require CoreCivic to implement and maintain a voluntary work program for detainees, and require detainees who wish to participate in the program to sign a form acknowledging that participation in the program is voluntary. The agreements specifically prohibit detainees from being used to perform the responsibilities or duties of CoreCivic's employees.

9.    CoreCivic operates, and has operated at all times relevant to these counterclaims, the Detainee Voluntary Work Program at its California facilities as required by its detention services agreements with ICE. Participation in the program is purely voluntary. Detainees are not required or forced to participate in the Detainee Voluntary Work Program in any way.

10.   Participation in the Detainee Voluntary Work Program is separate from detainees' responsibility to maintain their immediate living areas in a neat and orderly manner pursuant to ICE's Performance-Based National Detention Standards, which all detainees are required to meet.

11.   The Detainee Voluntary Work Program is critical to the safe and secure operation of the facility. The intent of the program is to reduce detainee idleness, improve morale, and reduce the number of disciplinary incidents, while at the same time promoting institutional maintenance and efficiency, just as similar

programs in ICE facilities and other correctional and detention facilities nationwide do. The Detainee Voluntary Work Program does not, and is not intended to, create an employment relationship between CoreCivic and detainees housed in CoreCivic's California facilities.

12.     As such, the Detainee Voluntary Work Program does not include the traditional characteristics of a standard employment relationship. For example, CoreCivic does not require detainees who wish to participate in the program to complete and submit job applications, submit to pre-employment interviews, prove their work eligibility under federal law, compete against non-detainee applicants, or complete any of the other pre-employment requirements CoreCivic employees at CoreCivic's California facilities must complete.

13.     Pursuant to its detention services agreements with ICE, CoreCivic provides basic necessities to all detainees housed in its California facilities, including but not limited to housing, food, clothing, and recreation. Detainees do not pay CoreCivic or ICE for these services, either in whole or in part.

14.     As part of their initial intake paperwork, Owino and Gomez each signed a "Voluntary Work Release," acknowledging that, while they "[could] not be compelled to work other than to perform housekeeping tasks in [their] own cell[s] and the community living area," they "would like to volunteer for work assignments in addition to [their] housekeeping tasks," and that "[b]y signing below [they were] volunteering to participate in work assignments."

15.     Owino and Gomez also each signed an "Acknowledgment of Inmate/Detainee Orientation" form as part of their initial intake paperwork, acknowledging that they had received, read, and understood the Inmate/Detainee Orientation Handbook, which included a description of the Detainee Work Program, including that participation in the program was voluntary.

16.     Owino and Gomez each participated in the Detainee Voluntary Work Program at various times while at SDCF.

1   17.   The putative class members, like Counter-Defendants, were detained
2   by ICE, housed in one of CoreCivic's California facilities, and participated in the
3   Detainee Voluntary Work Program at various times relevant to these counter-
4   claims.

5   18.   CoreCivic did not require or force Counter-Defendants or any other
6   putative class members to participate in the Detainee Voluntary Work Program in
7   any way.

8   19.   Neither Counter-Defendants nor any of the putative class members
9   filed formal job applications, sat for pre-employment interviews, proved their work
10  eligibility as required by federal law, competed against non-detainee applicants, or
11  completed any of the other pre-employment requirements CoreCivic employees at
12  CoreCivic's California facilities must complete.

13  20.   Neither Counter-Defendants nor any of the putative class members
14  participated in the Detainee Voluntary Work Program for more than eight hours per
15  day or 40 hours per week, and in fact often volunteered significantly fewer hours
16  depending on their work assignment, some of which involved only one to two hours
17  per day.

18  21.   The participation of Counter-Defendants and the putative class
19  members in the Detainee Voluntary Work Program was temporary and dependent
20  upon their continued detention—they could not participate in the program after
21  their detention ceased. Moreover, Counter-Defendants and the putative class
22  members were free to withdraw from the Detainee Voluntary Work Program at any
23  time.

24  22.   During their detention at CoreCivic's California facilities, Counter-
25  Defendants and the putative class members understood that they were not employed
26  by CoreCivic, and chose to participate in the Detainee Voluntary Work Program
27  with full knowledge that their participation was voluntary and that they would
28  receive $1 per day regardless of their work assignment and number of hours

volunteered per day. Neither Counter-Defendants nor the putative class members had, nor could they have had, any reasonable expectation of entitlement to the state law minimum wage in effect at the time of their detention.

23.   During their detention at CoreCivic's California facilities, Counter-Defendants and the putative class members were provided basic necessities, including but not limited to housing, food, clothing, and recreation. Neither Counter-Defendants nor any other putative class members paid CoreCivic or ICE for these services.

24.   Counter-Defendants and the putative class members would unjustly benefit from the receipt of damages under California labor laws, including but not limited to state law minimum wages, overtime wages, penalties, and other damages, at rates in excess of $1 per day for their participation in the Detainee Voluntary Work Program if they were permitted to keep the benefit of these services without offsetting such damages with the costs and expenses associated with their detention.

25.   In the event Counter-Defendants and the putative class members prevail on their theory that California labor laws, including but not limited to laws regarding minimum wage and overtime wages, apply to detention facility work programs like the Detainee Voluntary Work Program at CoreCivic's California facilities, CoreCivic is equitably entitled to recover its costs and expenses associated with detaining Counter-Defendants and the putative class members, including the administration of the Detainee Voluntary Work Program.

## SECOND CAUSE OF ACTION

### Declaratory Relief—28 U.S.C. § 2201(a)

26.   CoreCivic incorporates the allegations in Paragraphs 1-25, above, by reference as if fully stated herein.

27.   Pursuant to an express authorization from Congress that ICE may authorize allowances to immigration detainees for work performed while detained, ICE's pre-2011 Performance Based National Detention Standards ("PBNDS")

authorized an allowance of $1 per day for each participant in the Detainee Voluntary Work Program. ICE's 2011 PBNDS authorized payment of at least $1 per day, but ICE has never reimbursed CoreCivic at rates sufficient to pay detainees state law minimum wages for participation in the Detainee Voluntary Work Program, or required CoreCivic to pay detainees such wages.

28.   In fact, ICE prohibits CoreCivic from employing detainees. ICE must approve any CoreCivic staff that work with federal detainees at CoreCivic's California facilities.

29.   Counter-Defendants and the putative class members were participants in the Detainee Voluntary Work Program at CoreCivic's California facilities. They were not authorized by ICE to work for CoreCivic, and did not complete the requirements for employment specified in CoreCivic's detention services agreements with ICE.

30.   Counter-Defendants initiated this lawsuit, claiming California's labor laws apply to them and the putative class members, when they do not. CoreCivic has already incurred attorney fees and other costs defending against Counter-Defendants' claims, and will continue to do so.

31.   ICE detainees at CoreCivic's California facilities, including Counter-Defendants and the putative class members, are federal immigration detainees housed at those facilities pursuant to CoreCivic's detention services agreements with ICE. They are not employed by CoreCivic, and are not employees of CoreCivic. The work performed by these detainees is performed for reasons other than compensation, as detainees participating in the Detainee Voluntary Work Program do not participate in commerce and do not depend on the wages they earn for basic necessities such as, for example, housing, food, clothing, and recreation, while detained, as those necessities are provided to them at taxpayer expense.

32.   CoreCivic therefore seeks a declaration that: (1) no employment relationship exists between CoreCivic and detainees at CoreCivic's California

facilities who participate in the Detainee Voluntary Work Program, including but not limited to Counter-Defendants and the putative class members; (2) such detainees, including but not limited to Counter-Defendants and the putative class members, are not employees of CoreCivic, and CoreCivic is not their employer; and (3) as a result, California's labor laws do not apply to such detainees, including but not limited to Counter-Defendants and the putative class members.

WHEREFORE, CoreCivic prays for the following relief:

1.     An order enjoining Counter-Defendants and the putative class members from claiming California's labor laws apply to them;

2.     An order declaring California's labor laws do not apply to ICE detainees at CoreCivic's California facilities, including but not limited to laws requiring payment of minimum wage and overtime wages;

3.     An order declaring CoreCivic has no employment relationship with ICE detainees at its California facilities who participate in the Detainee Volunteer Work Program, namely that CoreCivic is not the employer of such detainees, and that such detainees are not employees of CoreCivic;

4.     In the event Counter-Defendants and the putative class members prevail on their theory that California labor laws, including but not limited to laws regarding minimum wage and overtime wages, apply to detention facility work programs like the Detainee Voluntary Work Program at CoreCivic's California facilities, an order awarding CoreCivic all costs and expenses incurred in providing basic necessities to Counter-Defendants and the putative class members, including but not limited to housing, food, clothing, and recreation;

5.     An award of attorney fees and costs; and

6.     Other and further relief as the Court deems just and equitable.

**CoreCivic demands a jury trial as to all triable issues raised in the First Amended Counter-Claims.**

Dated:  July 19, 2018

By s/ Daniel P. Struck
Daniel P. Struck
dstruck@strucklove.com
Rachel Love
rlove@strucklove.com
Nicholas D. Acedo
nacedo@strucklove.com
Ashlee B. Hesman
ahesman@strucklove.com
Jacob B. Lee
jlee@strucklove.com
STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Ethan H. Nelson
LAW OFFICE OF ETHAN H. NELSON
ethannelsonesq@gmail.com

Attorneys for Defendant/Counter-Claimant
CoreCivic, Inc.

3478757.1