UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER OWINO, JONATHAN GOMEZ, on behalf of themselves, and all other similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>CORECIVIC, INC.,<br><br>                                    Defendant.<br>_____<br><br>AND RELATED CROSS ACTION | Case No.:  3:17-cv-1112-JLS-NLS<br><br>**ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AS MODIFIED BY THE COURT** |

The Court having read the parties' Joint Motion for Entry of Order Regarding Discovery of Electronically Stored Information ("ESI"), finding no objection and good cause appearing, **IT IS HEREBY ORDERED** that this motion is **GRANTED.**  The following ESI Order is entered, as modified by the Court (*see* §§ I (C)(5); XIV).

## ORDER REGARDING DISCOVERY OF ESI

**I.    GENERAL**

A.    This Order will govern discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Civil Local Rules, Standing Orders, and any other applicable orders issued by this Court or rules promulgated by this Court.

///

B. The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the litigation consistent with the Court's Civil Local Rules, Standing Orders, and any other applicable orders issued or rules promulgated by the Court.

C. To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Order shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with Fed. R. Civ. P. 1 and any orders issued by the Court.

1. Except as specifically limited herein, this Order governs the production of discoverable documents by the Parties during the litigation.

2. This Order shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure and the Court's orders, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or any other action.

3. Subject to the Protective Order entered by the Court on August 13, 2018 (the "Protective Order") (Doc. 60), all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein. Nothing in this Order shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Order shall be deemed to waive or limit any Party's right to object to the production of certain ESI, or to move for an appropriate order pursuant to Fed. R. Civ. P. 26(c), on the ground that the sources are not reasonably accessible because of undue burden or cost.

4. The Parties agree to promptly alert the other Party concerning any technical problems associated with complying with this Order. To the extent compliance

3:17-cv-1112-JLS-NLS

with this Order imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

5. The Parties will attempt to resolve—in person, in writing (including e-mail), or by telephone—disputes regarding the issues set forth herein prior to seeking relief from the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek the Court's intervention in accordance with the Court's procedures and applicable rules. **Any dispute arising under this Order remains subject to the timing and briefing requirements applicable to Discovery Disputes as set forth in Judge Stormes's Civil Case Procedures.**

## II. LIAISONS

The Parties will identify liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI. Counsel for each Party may serve in the liaison role. Each e-discovery liaison will be, or will have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on liaisons, as needed, to confer about ESI and to help resolve disputes without Court intervention whenever possible.

## III. PRODUCTION FORMAT – HARDCOPY

Hardcopy documents should be scanned in PDF format or single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "ProdBegBates," "ProdEndBates," "ProdBegAttach," "ProdEndAttach," "ProdParentBeg," "ProdParentEnd," "ProdAttachBegin," "Confidential," "NativeFileLink," and "TextFileLink." The documents should be logically unitized (i.e., distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original document contains relevant information in color that is necessary to understand the meaning or content of the document, the document should be

produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. To the extent that the Producing Party OCR's the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV.   PRODUCTION FORMAT – ESI

ESI should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel and CSV files, which should be produced in native format. All ESI should be produced with a delimited database load file that contains the metadata fields listed in Appendix 1, attached hereto, to the extent captured at the time of the collection. To the extent metadata does not exist, is not reasonably accessible or available for any documents produced, or would be unduly burdensome to provide, nothing in this Order shall require any Party to extract, capture, collect, or produce such data. The Parties agree that certain documents identified and collected as part of a targeted collection that originated as ESI may be produced without metadata but compliant with Section III. An .opt image cross-reference file should also be provided for all TIFF images.

TIFF images should show any and all text and images that would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF/JPG image. Color originals may be produced in B&W TIFF format, but either Party may subsequently request, by Bates number(s), a replacement set of images in color only to the extent the Requesting Party demonstrates that the loss of the color detracts from the usability or reduces the ability to understand the information imparted in the original; however, categorical or wholesale requests are deemed invalid.

If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. If documents requested in native format require redactions, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NativeFileLink field. To the extent either Party believes native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (i.e., structured data), the parties should meet and confer in good faith.

## V. PRODUCTION – DOCUMENTS ATTACHED TO PRODUCTION-ELIGIBLE DOCUMENTS

In an effort to avoid unnecessary expense, burden, and potential disputes, the Parties agree that document families will not be broken or separated, but accorded consistent treatment. For example, if a responsive e-mail communication contains a non-responsive attachment, the attachment will still be produced. Likewise, if a privileged e-mail communication contains an attachment which may be a matter of public record, the email and attachment may be withheld as privileged.

To the extent the Producing Party believes there is good cause to deviate from this standard, they may withhold, on a case-by-case basis, non-responsive or privileged parent documents or attachments, which are otherwise production-eligible, by producing a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been withheld as non-responsive or privileged.

## VI. PRODUCTION FORMAT – STRUCTURED DATA

To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, and such data cannot easily be exported into a single table in .xls, .csv, or text-delimited format, the

5

parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

## VII.   PRODUCTION FORMAT – MEDIA

Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives, or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. The production media shall be labeled with the Volume Number, and the Bates Number range(s) of the materials should be provided in the file name of the volume, on the physical media, or in the transmittal documentation (whether by letter or e-mail) for each volume. Any document production that may contain "Confidential Information," as defined in the August 18, 2018 Protective Order (Doc. 60); "non-public personal information," as defined in the Gramm-Leach-Bliley Act; or "Confidential Health Information," as defined and protected under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule, 45 C.F.R., pts. 160 and 164, and/or any other applicable state or federal law or regulation concerning confidential health information, shall be produced in encrypted form and the production media shall be labeled "MAY CONTAIN CONFIDENTIAL INFORMATION"; "MAY CONTAIN NON-PUBLIC PERSONAL INFORMATION"; or "MAY CONTAIN CONFIDENTIAL HEALTH INFORMATION," as applicable. If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the files.

## VIII.  PROCESSING SPECIFICATIONS

A.   ESI Date and Time Processing: Each Party's ESI should be processed using a consistent Time Zone for all data. The Party shall share the Time Zone selected for processing of its data with the other Party.

B.   Global or Horizontal Deduplication: Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.

C.     Email Thread Suppression: Each Party may also deduplicate e-mails in such a way as to eliminate earlier or incomplete chains of e-mails, and produce only the most complete iteration of an e-mail chain. Any Party electing to deduplicate e-mails in this manner must reasonably ensure that all non-privileged responses, replies, forwards, and blind copies relating to any responsive e-mail have been produced.

**IX.     IDENTIFICATION AND COLLECTION OF DOCUMENTS**

A.     Except as otherwise provided in this Order, the Parties will continue to meet and confer in an effort to agree upon the search methodology to be applied, including, but not limited to, identification of document custodians (by name, job title, and/or general description of job duties), search terms, and date restrictions.

B.     Search Methodology:

1.     Email and Non-Email: the Parties agree to search for and produce unique, responsive records from sources of hardcopy and ESI to the extent a custodian reveals that such locations may contain responsive information and such data is within the possession, custody, or control of the Producing Party.

2.     The mere fact that a document is hit or captured by the application of any agreed upon search term does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness, and privilege shall be made by the Producing Party based on review of the documents hit or captured by the application of the agreed upon search terms.

**X.     PRESERVATION**

A.     The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in their possession, custody, or control.

B.     The Parties further acknowledge that as of the entry of this Order, the precise scope of discovery, including possible custodians and applicable date ranges of ESI, have

3:17-cv-1112-JLS-NLS

not been determined. The Parties will meet and confer with each other on the need to limit preservation of ESI and the scope of any such limitation.

C.     The Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of ESI that is not reasonably accessible because they anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery. Moreover, the remote possibility of additional relevant information existing in sources that are not reasonably accessible is substantially outweighed by the burden and cost of preservation, collection, review, and production of ESI from such sources. The Parties agree that the following ESI is not reasonably accessible:

1.     Data retained on back-up tapes.

2.     Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics.

3.     Random access memory (RAM), temporary files, or other ephemeral data.

4.     On-line access data such as temporary Internet files, history, cache, cookies, and the like.

5.     Data stored on photocopiers, scanners, and fax machines.

6.     Data in metadata fields that are frequently updated automatically, such as last-opened dates.

8.     Server, system, or network logs.

9.     Electronic Data stored on individual hard drives, mobile devices, or tablets (e.g., iPhone, iPad, Android, and Blackberry devices) that is neither synched to nor retrievable from another source or device (e.g., e-mail and calendar) that the Producing Party reasonably believes, after interviews, does not contain relevant or responsive information.

3:17-cv-1112-JLS-NLS

10.    During the course of the litigation, the Parties may later agree that additional categories of ESI are not reasonably accessible without requiring an amendment to this Order.

D.    Subject to the recognition that the scope of ESI has yet to be determined and may evolve as more information becomes available to the Parties, to reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties presently agree that:

1.    ESI in the possession, custody, or control of either Party existing as of the date of this Order shall be preserved.

2.    The Parties will exchange a list of the types of ESI they believe should be preserved, including the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved (e.g., "Warden," "HR Manager," "Business Manager," etc.). The Parties shall add or remove custodians as reasonably necessary, but must timely disclose the identities of any requested custodian so that proper hold procedures may be instituted.

3.    The Parties will agree on the number of custodians per Party for whom ESI will be preserved.

4.    The Parties will agree on appropriate search terms related to the ESI of the identified custodians.

## XI.    PHASING

When a response to an ESI discovery request cannot be completed within a reasonable period of time, the parties will meet and confer to discuss prioritization of the collection, processing, and review of ESI, so that the ESI that is most relevant and responsive to the subject matter, claims, issues, and defenses is produced first, in proportion to the relative technical difficulty and resource burden to conduct such collection, processing, and review. Documents so collected will be produced in phases, and the Parties will continue to meet and confer regarding the need, and if necessary, to prioritize the subsequent order of subsequent productions.

## XII.   PRIVILEGES AND PRIVILEGE LOGS

A.   The Parties need not exchange any litigation hold/retention instructions issued in this litigation.

B.   The Parties agree that the following responsive privileged communications or documents need not be included in a privilege log: (a) any internal communications within a law firm representing any Party; (b) any communications regarding litigation holds or preservation, collection, or review in this or any other litigation or arbitration; and (c) any attorney-client privileged communication or attorney work product created on or after May 31, 2017 and involving either Party's outside legal counsel in this litigation.

C.   The Parties agree that unless any Producing Party elects to use Email Thread Suppression, an entire family will be treated consistently as privileged with respect to all attachments and all portions of the e-mail thread so that the Parties may save time and proceed more expeditiously than redacting each portion of a lengthy e-mail thread, with the exception of any e-mail thread in which non-privileged communications occur subsequent to the privileged communications on the thread.  In that case, the Party must undertake all efforts, including producing a redacted copy of the e-mail, to ensure that all attachments and messages which are not privileged have been produced. Similarly, if a Party does choose to use Email Thread Suppression, the Party must undertake all efforts, including producing a redacted copy of the e-mail, to ensure that all attachments and prior messages which are not privileged have been produced.

D.   The Parties agree that, for each document withheld from production on the basis of attorney-client privilege, work product doctrine, and/or any other applicable privilege, the Producing Party will prepare a summary log containing, for each document claimed to be privileged, an export of all or a subset of the metadata fields listed above (as agreed upon by the Parties) to the extent such information exists and has not been suppressed or redacted for privilege. The export should include the following information from the top line email:

- BEGNO (if not produced) or BEGBATES (if produced)

- ENDNO (if not produced) or ENDBATES (if produced)
- BEGATTACH (if not produced) or BEGBATESATTACH (if produced)
- ENDATTACH (if not produced) or ENDBATESATTACH (if produced)
- CUSTODIAN
- FROM
- TO
- CC
- BCC
- SUBJECT
- SENTDATE
- RECEIVEDDATE
- FILENAME
- AUTHOR
- CREATEDDATE
- MD5 HASH
- PRIV_TYPE

If the Requesting Party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information. Within fifteen (15) days of such a request, the Producing Party must either provide the requested information or challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution before seeking relief from the Court.

## XIII. PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

No Waiver by Disclosure. If information subject to a claim of attorney-client privilege or work product immunity or any other privilege or immunity is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or work product immunity or any other applicable privilege or immunity for such information under the law.

Case 3:17-cv-01112-JLS-MSB   Document 63   Filed 08/22/18   PageID.629   Page 12 of 13

If a Party receives a document or information that the Party knows or has reason to believe may be subject to a claim of attorney-client privilege or work product immunity or any other applicable privilege or immunity, the Receiving Party shall (1) promptly notify the Producing Party (including non-parties responding to a subpoena duces tecum) and immediately cease reading the document; and, upon request from the Producing Party, (2) promptly and permanently delete electronic files and destroy paper copies of the documents; and (3) certify in writing to the Producing Party that the files and copies have been properly deleted and/or destroyed.

If a Party (or subpoenaed non-party) discovers that it has inadvertently produced a document or information that is subject to a claim of attorney-client privilege or work product immunity or any other applicable privilege or immunity, it shall promptly inform the Receiving Party that the document or information is privileged or otherwise protected. Upon receiving such notice, the Receiving Party shall (1) immediately cease reading the document; (2) promptly and permanently delete electronic files and destroy paper copies of the documents; and (3) certify in writing to the Producing Party that the files and copies have been properly deleted and/or destroyed.

At any time a Party is notified that a document or information that is subject to a claim of attorney-client privilege or work product immunity or any other applicable privilege or immunity was inadvertently produced, and the document or information is already part of a filing with the Court, the Filing Party shall either withdraw the document or information or the Parties shall agree to brief the issue for the Court pursuant to applicable law, including Civ. L.R. 79.2, ECF Administrative Policies and Procedures, Section II.j, and the chambers' rules, with respect to filing documents under seal.

## XIV.  THIRD PARTY DOCUMENTS

A Party that issues a subpoena duces tecum to a non-party (the "Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein. **Any subpoena shall make clear that only the parties are bound by the**

12

**ESI Order, and third parties are under no requirement to comply with its terms.** The Issuing Party shall produce any documents obtained pursuant to a non-party subpoena to the opposing Party. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

## XV.   GOOD FAITH

The Parties shall make their best efforts to comply with, and resolve any differences concerning compliance with, this Order. If a Producing Party cannot comply with any material aspect of this Order, such Party shall inform the Requesting Party as to why compliance with the Order is unreasonable or not possible within fifteen (15) days after so learning. No Party may seek relief from the Court concerning compliance with the Order unless it has first conferred in good faith with the other affected Party to the action.

## XVI.  NO EFFECT ON DISCOVERY OR ADMISSIBILITY

This Order does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Order shall be construed to affect the admissibility of any document or data produced pursuant to the Order. All objections to the admissibility of any document or data are preserved and may be asserted at any time.

## XVII. PROTECTIVE ORDER

Nothing in this Order shall be deemed to limit, modify, or override any provision of the Protective Order.

## XVIII.     MODIFICATION

This Order may be modified by a further Stipulated Order of the Parties or by the Court in the interests of justice or for public policy reasons.

**IT IS SO ORDERED.**

Dated:  August 22, 2018

Hon. Nita L. Stormes
United States Magistrate Judge

3:17-cv-1112-JLS-NLS