# Exhibit 4



**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

555 CALIFORNIA STREET
SUITE 1700
SAN FRANCISCO, CA 94104-1520
415.434.4484 TEL
415.434.4507 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
415.438.6469
erldley@foley.com EMAIL

CLIENT/MATTER NUMBER
118364-0101

Certified Article Number

9414 7266 9904 2118 3695 48

SENDER'S RECORD

June 11, 2018

**Certified Mail Return Receipt Requested**

CoreCivic, Inc.
10 Burton Hills Blvd.
Nashville, Tenn. 37215

California Labor & Workforce
Development Agency
1515 Clay Street, Suite 801
Oakland, CA 94612

Certified Article Number

9414 7266 9904 2118 3695 24

SENDER'S RECORD

Daniel Struck
Struck Love Bojanowski & Acedo, PLC
3100 West Ray Road
Suite 300
Chandler, AZ 85226

Certified Article Number

9414 7266 9904 2118 3695 31

SENDER'S RECORD

Re:     PAGA Notice under California Labor Code §§ 2699 and
2699.3 including claim in Complaint Re: *Owino, et al. v.
CoreCivic, Inc.* (U.S.D.C. Southern Dist. Of California Case
No.: 17-cv-1112 JLS (NLS))

Greetings,

This letter shall constitute written notice under Labor Code §§ 2699, 2699.3 and 2699.5 of the
claims of Sylvester Owino and Jonathan Gomez, individually, and in their representative capacity
against their former and current employer, CoreCivic, Inc. ("Defendant"). As noted,
claimants/plaintiffs are Sylvester Owino and Jonathan Gomez individually and in their
representative capacity regarding, *inter alia*, the following classes (which are comprised of more
than 100 people):

1] California Forced Labor Class: All civil immigration detainees who performed
Forced Labor uncompensated work for CoreCivic at any Detention Facility located
in California owned or operated by it at time during the period from November 2,
2004 to the applicable op-out date, inclusive; and

2] California Labor Law Class: All civil immigration detainees who performed
Dollar-A-Day Work for CoreCivic and were paid one dollar ($1) per day at any
Detention Facility located in California owned or operated by it at any time between
November 2, 2004 to the applicable op-out date, inclusive (collectively referred to
herein as "Plaintiffs").

| AUSTIN | DETROIT | MEXICO CITY | SACRAMENTO | TAMPA |
| BOSTON | HOUSTON | MIAMI | SAN DIEGO | WASHINGTON, D.C. |
| CHICAGO | JACKSONVILLE | MILWAUKEE | SAN FRANCISCO | BRUSSELS |
| DALLAS | LOS ANGELES | NEW YORK | SILICON VALLEY | TOKYO |
| DENVER | MADISON | ORLANDO | TALLAHASSEE | |

4816-4899-1591.3



**FOLEY**

FOLEY & LARDNER LLP

June 11, 2018
Page 2

  Plaintiffs are former civil immigration detainees who bring claims on behalf of all civil immigration detainees who were incarcerated and forced to work by CoreCivic, a for-profit corporation engaged in the business of owning and operating detention facilities and prisons from January 1, 2004 to the opt-out date, inclusive (the "Class Period").

  CoreCivic owns and operates detention facilities around the country, including the Otay Mesa Detention Center, a 1,492 bed detention center located in Otay Mesa, California (the "Otay Facility"). CoreCivic unlawfully forces, coerces, and uses detainees to clean, maintain, and operate their facility. In some instances CoreCivic pays detainees $1 per day, and in other instances detainees are not compensated with wages at all, for their labor and services. In 2016, CoreCivic reported $1.79 billion in total revenues.

  Plaintiffs also seek to recover, *inter alia*, on their own behalf and on behalf of all others similarly situated, the difference between the fair value of the labor or work they performed and what they were paid (*i.e.*, the $1 per day). CoreCivic violated federal law prohibiting forced labor when CoreCivic forced, coerced, and used Plaintiffs and others to work for no pay, cleaning the "pods" where they were housed, and cleaning, maintaining, and operating other areas of the CoreCivic detention facilities under threat of punishment, including lockdown and solitary confinement.

  Plaintiffs were engaged, suffered, and permitted to work by CoreCivic at, without limitation, the Otay Facility. CoreCivic controlled the wages, hours, and working conditions of Plaintiffs. In the course of their labor and employment by CoreCivic, Plaintiffs and other putative class members, without limitation:

  a. scrubbed bathrooms, showers, toilets, and windows;

  b. cleaned and maintained CoreCivic's on-site medical facility;

  c. cleaned the medical facility's toilets, floors, and windows;

  d. cleaned patient rooms and medical staff offices;

  e. swept, mopped, stripped, and waxed the floors of the medical facility;

  f. washed medical facility laundry;

  g. swept, mopped, stripped, and waxed floors throughout the facility;

  h. washed detainee laundry;

  i. prepared and served detainee meals;



**FOLEY & LARDNER LLP**

June 11, 2018
Page 3

    j.   assisted in preparing catered meals for law enforcement events sponsored by CoreCivic;

    k.   performed clerical work for CoreCivic;

    l.   prepared clothing for newly arriving detainees;

    m.   provided barber services to detainees;

    n.   ran and managed the law library;

    o.   cleaned intake areas and solitary confinement unit;

    p.   cleaned and prepared vacant portions of the facility for newly arriving detainees;

    q.   cleaned the facility's warehouse; and

    r.   maintained the exterior and landscaping of the CoreCivic buildings.

        Detainees who "volunteered" for such work were paid $1 per day.  The foregoing labor and services for which detainees were paid $1 per day are referred to herein as the "Dollar-A-Day Work."  In addition, Plaintiffs and detainees are/were only allowed to spend their $1 per day at the CoreCivic "company store" or commissary.

        In addition to the Dollar-A-Day Work, CoreCivic forced and coerced Plaintiffs and members of the putative class, to clean, maintain, scrub, sweep, and mop floors, bathrooms, showers, toilets, and windows for no pay at all, not only in their living areas ("pods"), but also throughout the other interior and exterior areas of CoreCivic's detention facilities by threatening to punish not only those who refused to work, but also other detainees in the pods with confinement, physical restraint, substantial and sustained restriction, deprivation, and violation of their liberty, and solitary confinement, all with the intent to obtain forced labor or services and as punishment for any refusal to work causing Plaintiffs severe mental pain and suffering.  The foregoing forced and coerced labor and services under threat of punishment, confinement, physical restraint, and deprivation of liberty for which Detainees were paid nothing at all are referred to herein as the "Forced Labor."

        As a result of the above, Plaintiffs brought a civil action against CoreCivic in the United States District Court for the Southern District of California entitled *Sylvester Owino, et al. v. CoreCivic, Inc.,* (Case No.: 17-cv-1112 JLS (NLS) and herein referred to as the "Action"). Defendant filed a motion to dismiss the Action on a variety of grounds.  However,  on May 14, 2018 the Court determined that Plaintiffs could proceed with the majority of their claims including claims as employees regarding violations of various sections of the California Labor Code.  True and correct copies of the Complaint and the Court's May 14, 2018 Order are attached hereto as Exhibits "A" and "B", respectively.  Pursuant to Labor Code §2699.5, and more fully described in the Action



**FOLEY & LARDNER LLP**

June 11, 2018
Page 4

(Ex. A), Plaintiffs seek recovery against CoreCivic for violation of California Labor Code §§ 201, 201.3, 201.5, 201.7, 202, 203, 203.1, 204, 226, 226.7, 432.5, 510, 512, 1194, 1197 and 1197.1.

> Plaintiffs have provided CoreCivic and its counsel with a certified copy of this letter and have provided CoreCivic with the opportunity to cure.  Plaintiffs intend to file an Amended Complaint adding its PAGA cause of action in due course (a copy of which is attached hereto as Exhibit "C").

> Please direct all communications regarding this matter to this office as Plaintiffs' counsel.  Should there be any questions, please do not hesitate to contact us.

Very truly yours,

Eileen R. Ridley

ERR:err

Enclosures:
Complaint (Ex. A)
May 14, 2018 Order (Ex. B)
Proposed Amended Complaint (Ex. C)

cc:  R. L. Teel



4815-4899-1591.3



9590 9266 9904 2118 3695 27



9590 9266 9904 2118 3695 34



9590 9266 9904 2118 3695 41

## U.S. Postal Service®
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

**USPS® ARTICLE NUMBER**
9414 7266 9904 2118 3695 48

| | |
|---|---|
| Certified Mail Fee | $ 3.45 |
| Return Receipt (Hardcopy) | $ 2.75 |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ 12.00 |
| Total Postage and Fees | $ 19.10 |

JUN 1 1 2018 Postmark Here

Sent to:
CoreCivic, Inc.
10 Burton Hills Blvd.
Nashville, TN 37215
US

**Reference Information**
118364-0101-0233-Delvalle-Wendy



PS Form 3800, Facsimile, July 2015

## U.S. Postal Service®
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

**USPS® ARTICLE NUMBER**
9414 7266 9904 2118 3695 31

| | |
|---|---|
| Certified Mail Fee | $ 3.45 |
| Return Receipt (Hardcopy) | $ 2.75 |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ 9.85 |
| Total Postage and Fees | $ 16.05 |

JUN 1 1 2018 Postmark Here

Sent to:
Daniel Strunk
Struck Love Bojanowski & Acedo, PLC
3100 W. Ray Road
Suite 300
Chandler, AZ 85226
US

**Reference Information**
118364-0101-0233-Delvalle-Wendy



PS Form 3800, Facsimile, July 2015

## U.S. Postal Service®
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

**USPS® ARTICLE NUMBER**
9414 7266 9904 2118 3695 24

| | |
|---|---|
| Certified Mail Fee | $ 3.45 |
| Return Receipt (Hardcopy) | $ 2.75 |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ 7.25 |
| Total Postage and Fees | $ 13.45 |

JUN 1 1 2018 Postmark Here

Sent to:
Attn. PAGA Administrator
CA Labor & Workforce Devel. Agency
1515 Clay Street
Suite 801
Oakland, CA 94612
US

**Reference Information**
118364-0101-0233-Delvalle-Wendy



PS Form 3800, Facsimile, July 2015

Return Receipt (Form 3811) Barcode

PM 6 L

9590 9266 9904 2118 3695 34

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____  ☐ Agent
☐ Addressee
B. Received by (Printed Name)    C. Date of Delivery
PM 10 1

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Daniel Strunk
Struck Love Bojanowski & Acedo, PLC
3100 W. Ray Road
Suite 300
Chandler, AZ 85226
US

3. Service Type:
☒ Certified Mail
☐ Certified Mail Restricted Delivery
Reference Information
116364-0101-0233-Delvalle-Wendy -

2. Certified Mail (Form 3800) Article Number

9414 7266 9904 2118 3695 31

PS Form 3811, Facsimile, July 2015                     Domestic Return Receipt

---

Return Receipt (Form 3811) Barcode

9590 9266 9904 2118 3695 27

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____  ☐ Agent
☐ Addressee
B. Received by (Printed Name)    C. Date of Delivery
ROOTS           06-19-18

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Attn: PAGA Administrator
CA Labor & Workforce Devel. Agency
1515 Clay Street
Suite 801
Oakland, CA 94612
US

3. Service Type:
☒ Certified Mail
☐ Certified Mail Restricted Delivery
Reference Information
116364-0101-0233-Delvalle-Wendy -

2. Certified Mail (Form 3800) Article Number

9414 7266 9904 2118 3695 24

PS Form 3811, Facsimile, July 2015                     Domestic Return Receipt

# EXHIBIT A

**LAW OFFICE OF ROBERT L. TEEL**
ROBERT L. TEEL (SBN 127081)
*lawoffice@rlteel.com*
207 Anthes Ave., Suite 201
Langley, Washington 98260
Telephone: (866) 833-5529
Facsimile: (855) 609-6911

*Attorney for Plaintiffs and the Proposed Class*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CoreCivic, Inc., a Maryland corporation, <br><br> Defendant. | Case No.:   **'17CV1112 JLS  NLS** <br><br> <u>CLASS ACTION</u> <br><br> **COMPLAINT FOR:** <br><br> (1) **FORCED LABOR AND VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT,** 18 U.S.C. § 1589, *et seq.*; <br> (2) **FORCED LABOR AND VIOLATION OF THE CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT, CAL. CIVIL CODE § 52.5;** <br> (3) **UNFAIR COMPETITION, CAL. BUS. & PROF. CODE §§ 17200,** *et seq.*; <br> (4) **VIOLATIONS OF THE CAL. LABOR CODE;** <br> (5) **VIOLATION OF CAL. INDUSTRIAL WELFARE COMMISSION ORDERS;** <br> (6) **NEGLIGENCE; AND** <br> (7) **UNJUST ENRICHMENT** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

## INTRODUCTION

1.        Plaintiffs Sylvester Owino ("Owino") and Jonathan Gomez ("Gomez") (individually referred to herein as a "Plaintiff" and collectively as the "Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorney(s), for their complaint against Defendant, CoreCivic, Inc. ("CoreCivic" or "Defendant") files this lawsuit to stop CoreCivic's engagement/implementation of illegal practices and to obtain damages and restitution from CoreCivic for said practices of forcing/coercing detainees to clean, maintain, and operate CoreCivic's detention facilities in violation of both federal and state human trafficking and labor laws. Plaintiffs allege the following based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters, and based upon, *inter alia*, the investigation conducted by and through their attorneys, which includes, without limitation, a review of Defendant's public documents, announcements, and wire and press releases published by and regarding CoreCivic, and information readily obtainable on the internet.

## JURISDICTION AND VENUE

2.        This Court has federal question jurisdiction because this case arises out of violations of the federal Trafficking in Victims Protection Act under 18 U.S.C. §§ 1589, *et seq.* (the "TVPA").

3.        This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because:

      a. the amount in controversy exceeds $5,000,000, exclusive of interest and costs;

      b. the proposed Class consists of more than 100 Class Members; and

      c. none of the exceptions under the subsection apply to this action.

4.        This Court has supplemental jurisdiction over the violations of the California Trafficking in Victims Protection Act, Cal. Civil Code § 52.5

- 1 -

("CTVPA"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and the California Labor Code and California Industrial Welfare Commission Wage Orders, as well as other state statutory and common law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction over pendant state law claims).

5.    This Court has personal jurisdiction over Defendant because:

    a.    CoreCivic is registered to, and in fact does, conduct business in California; and

    b.    CoreCivic has sufficient minimum contacts in California, and

    c.    CoreCivic has intentionally availed itself by participating in the markets within California through the sale and provision of its services.

6.    Venue is proper in this District under 28 U.S.C. § 1391 because:

    a.    Plaintiffs are residents of, and domiciled in, this District,

    b.    Defendant conducts substantial business in this District, and

    c.    a substantial part of the events giving rise to Plaintiffs' claims alleged herein occurred in this District.

## PARTIES

7.    Plaintiff Sylvester Owino is a resident of the County of San Diego, in the State of California.  Mr. Owino was a civil immigration detainee who worked at CoreCivic's Otay Mesa Detention Center at various times from November 7, 2005 through March 9, 2015.

8.    Plaintiff Jonathan Gomez is a resident of the County of San Diego, in the State of California.  Mr. Gomez was a civil immigration detainee who worked at CoreCivic's Otay Mesa Detention Center at various times from June 14, 2012 through September 18, 2013.

9.    Defendant CoreCivic, Inc. is a Maryland corporation with its principal place of business at 10 Burton Hills Blvd., Nashville, Tennessee 37125.

- 2 -

## SUMMARY AND COMMON FACTUAL ALLEGATIONS

10.      Plaintiffs are former civil immigration detainees who bring this proposed class action lawsuit on behalf of all civil immigration detainees who were incarcerated and forced to work by CoreCivic, a for-profit corporation engaged in the business of owning and operating detention facilities and prisons from January 1, 2004 to the opt-out date, inclusive (the "Class Period").

11.      CoreCivic owns and operates detention facilities around the country, including the Otay Mesa Detention Center, a 1,492 bed detention center located in Otay Mesa, California (the "Otay Facility"). CoreCivic unlawfully forces, coerces, and uses detainees to clean, maintain, and operate their facility. In some instances CoreCivic pays detainees $1 per day, and in other instances detainees are not compensated with wages at all, for their labor and services. In 2016, CoreCivic reported $1.79 billion in total revenues.

12.      Plaintiffs seek injunctive relief requiring CoreCivic to implement and maintain policies and practices to comply with all applicable laws and regulations designed to protect human rights, prevent and remedy these types of unlawful trafficking and forced labor practices, and protect detainees' employment rights, well-being and safety, as well as restitution, damages, statutory remedies, disgorgement, and other further relief this Court may deem proper.

13.      Plaintiffs also seek to recover, *inter alia*, on their own behalf and on behalf of all others similarly situated, the difference between the fair value of the labor or work they performed and what they were paid (*i.e.*, the $1 per day). CoreCivic violated federal law prohibiting forced labor when CoreCivic forced, coerced, and used Plaintiffs and others to work for no pay, cleaning the "pods" where they were housed, and cleaning, maintaining, and operating other areas of the CoreCivic detention facilities under threat of punishment, including lockdown and solitary confinement.

- 3 -

14.     Plaintiffs were engaged, suffered, and permitted to work by CoreCivic at, without limitation, the Otay Facility.  CoreCivic controlled the wages, hours, and working conditions of Plaintiffs.  In the course of their labor and employment by CoreCivic, Plaintiffs and other putative class members, without limitation:

    a.  scrubbed bathrooms, showers, toilets, and windows;

    b.  cleaned and maintained CoreCivic's on-site medical facility;

    c.  cleaned the medical facility's toilets, floors, and windows;

    d.  cleaned patient rooms and medical staff offices;

    e.  swept, mopped, stripped, and waxed the floors of the medical facility;

    f.  washed medical facility laundry;

    g.  swept, mopped, stripped, and waxed floors throughout the facility;

    h.  washed detainee laundry;

    i.  prepared and served detainee meals;

    j.  assisted in preparing catered meals for law enforcement events sponsored by CoreCivic;

    k.  performed clerical work for CoreCivic;

    l.  prepared clothing for newly arriving detainees;

    m.  provided barber services to detainees;

    n.  ran and managed the law library;

    o.  cleaned intake areas and solitary confinement unit;

    p.  cleaned and prepared vacant portions of the facility for newly arriving detainees;

    q.  cleaned the facility's warehouse; and

    r.  maintained the exterior and landscaping of the CoreCivic buildings.

15.     Detainees who "volunteered" for such work were paid $1 per day.  The foregoing labor and services for which detainees were paid $1 per day are referred to herein as the "Dollar-A-Day Work."  In addition, Plaintiffs and detainees are/were

- 4 -

1    only allowed to spend their $1 per day at the CoreCivic "company store" or

2    commissary.

3                    ***CoreCivic's Unlawful Labor and Human Trafficking Practices***

4        16.    In addition to the Dollar-A-Day Work, CoreCivic forced and coerced

5    Plaintiffs and members of the putative class, to clean, maintain, scrub, sweep, and

6    mop floors, bathrooms, showers, toilets, and windows for no pay at all, not only in

7    their living areas ("pods"), but also throughout the other interior and exterior areas

8    of CoreCivic's detention facilities by threatening to punish not only those who

9    refused to work, but also other detainees in the pods with confinement, physical

10   restraint, substantial and sustained restriction, deprivation, and violation of their

11   liberty, and solitary confinement, all with the intent to obtain forced labor or services

12   and as punishment for any refusal to work causing Plaintiffs severe mental pain and

13   suffering.   The foregoing forced and coerced labor and services under threat of

14   punishment, confinement, physical restraint, and deprivation of liberty for which

15   Detainees were paid nothing at all are referred to herein as the "Forced Labor."

16       17.    Defendant paid Plaintiffs and all its other civil immigration detainee-

17   employees one dollar ($1) per day for Dollar-A-Day Work and nothing at all for

18   their Forced Labor and acted with malice, oppression, fraud, and duress in

19   committing the foregoing acts.   As a result of Defendant's violations of the law,

20   CoreCivic was unjustly enriched.

21                 ***Federal and State Trafficking Victims Protection Acts***

22       18.    As a result of the foregoing, Defendant violated federal law prohibiting

23   forced labor. 18 U.S.C. § 1589.  In addition, Defendant violated California law

24   prohibit human trafficking and forced labor. Civ. Code § 52.5. Plaintiffs seek actual

25   damages, compensatory damages, punitive damages, treble damages, injunctive

26   relief, and mandatory restitution on their own behalf and on behalf of all Defendant's

27   other similarly situated detainees, as well as attorneys' fees and costs, pursuant to

28   18 U.S.C. §§ 1593 and 1595 and Cal. Civ. Code § 52.5(a).  Plaintiffs also seeks the

- 5 -

*Sylvester Owino, et al. v. CoreCivic, Inc.*
CLASS ACTION COMPLAINT

1   greater of treble damages or ten thousand ($10,000) pursuant to Cal. Civ. Code §

2   52.5(b).

3       19.     Plaintiffs and the putative class members have suffered, and are

4   continuing to suffer, real-world, actual, concrete harm by, without limitation,

5   Defendant's use of Forced Labor and human trafficking, violations of applicable

6   labor laws and orders, unfair and unlawful business practices, and negligence. The

7   putative class members are presently facing the same imminent real, actual, and

8   concrete harm and injury from CoreCivic's illegal conduct and its failure to redress

9   the harm.

10      20.     The total number of civil immigration detainees who were subjected to

11  Defendant's Forced Labor and human trafficking practices, and Defendant's illegal

12  Dollar-A-Day Work practices is currently unknown, but these illegal practices appear

13  endemic to the Core-Civic operations on a California-wide, and indeed a nationwide,

14  scale. However, Core-Civic can provide the information regarding how many civil

15  immigration detainees were subjected to these illegal practices through its solitary

16  confinement and detention logs and also through its business records.

17      21.     CoreCivic has been wrongly and unjustly enriched by its use of Forced

18  Labor and human trafficking practices, Dollar-A-Day Work practices, unlawful

19  business practices, and the retention of such revenues and profits resulting therefrom

20  is grossly unfair.  CoreCivic should not be allowed to retain the revenues, proceeds,

21  profits and other benefits conferred upon it by Plaintiffs and the putative class

22  members.

23      22.     Defendant's unlawful conduct complained of herein constitutes a

24  continuing pattern and course of conduct as opposed to unrelated discrete acts.

25  Defendant's pattern and course of conduct has continued from November 2, 2004 until

26  the present and is a continuing violation since that date.  Neither Plaintiffs nor the Class

27  Members were/are aware of or discovered their legal rights or claims, or could have

28  discovered with any amount of reasonable diligence, the true facts regarding their

- 6 -

*Sylvester Owino, et al. v. CoreCivic, Inc.*
CLASS ACTION COMPLAINT

1   claims until the present. Plaintiffs and the Class Members were/are ignorant of the true

2   facts regarding Defendant's unlawful and illegal acts, and lacked the ability to have

3   earlier discovered the true facts, until the present due to false statements made by

4   Defendant regarding the legality of their False Labor and Dollar-A-Day Work

5   practices. Discovery of the true facts did not actually occur, and could not have

6   occurred, until after any applicable statutes of limitations.

### The For-Profit Detention Industry

7

8   23.     Throughout the country, undocumented individuals lacking legal

9   permission to enter or remain in the United States are typically brought to a detention

10  facility and placed in removal proceedings in front of an immigration judge. These

11  individuals may include refugees seeking asylum. Individuals detained at the border

12  are only released on a case-by-case basis by the authority of U.S. Bureau of

13  Immigration and Customs Enforcement ("ICE") officials.

14  24.     ICE uses a combination of publicly and privately owned and operated

15  facilities to detain immigrants. Those in detention include immigrants in the country

16  illegally, asylum seekers, green card holders, and those awaiting immigration hearings

17  (referred to herein as a "detainee" or civil immigration detainee"). Nine (9) of the

18  country's ten (10) largest immigration detention facilities are operated by private

19  companies like CoreCivic, and they hold about two-thirds of the civil immigration

20  detainees in a system that currently keeps more than 31,000 people in custody on a

21  typical day.

22  25.     The for-profit civil immigration detention business is worth over $3

23  billion dollars a year. While some centers are located in border areas, others are far

24  from the border because deportation officers arrest migrants living in the interior of the

25  country as well. Although they have denied lobbying, private prison corporations

26  such as Core-Civic specifically target legislators over immigration "reform." The

27  companies' success in lobbying for immigrant detention has been so successful that

28  by 2015, CoreCivic derived 51% of its revenue from federal contracts.

- 7 -

26.   In March of 2017 it was announced that the United States' civil immigrant detention capacity would be increased by over four-hundred fifty per cent (450%). This signals the largest increase in immigrant detention since World War II and is, in essence, a "get into jail and work for free card" from which Defendant derives nearly $1 billion dollars a year in revenue.

## PLAINTIFF'S EXPERIENCE

27.   Plaintiff Sylvester Owino is a resident of the county San Diego, in the State of California.  Mr. Owino was a detainee at CoreCivic's Otay Facility from November 7, 2005 through March 9, 2015.  During the Class Period, Mr. Owino performed Dollar-A-Day Work for $1 per day in an unsafe work environment and was forced and coerced to perform Forced Labor at, without limitation, the Otay Facility.

28.   Plaintiff Owino was employed by CoreCivic to provide labor and services in an unsafe working environment cleaning and maintaining CoreCivic's on-site medical facility without personal protective equipment ("PPE").  PPE is special equipment worn to create a barrier between health care workers and germs. This barrier reduces the chance of touching, being exposed to, and spreading germs and helps protect people from infections caused by contact with blood or other bodily fluids.

29.   Plaintiff Jonathan Gomez is a resident of San Diego, California and the county of San Diego who formerly was a detainee at the Otay Facility from June 14, 2012 through September 18, 2013.  During the Class Period, Mr. Gomez performed Dollar-A-Day Work for $1 per day in an unsafe work environment and was forced and coerced to perform Forced Labor at the Otay Facility.

## CLASS ACTION ALLEGATIONS

30.   Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all members of the "Forced Labor Class," preliminarily defined as:

- 8 -

## The Nationwide Forced Labor Class

All civil immigration detainees who performed Forced Labor uncompensated work for CoreCivic at any Detention Facility owned or operated by it between November 2, 2004 to the applicable opt-out date, inclusive.

Such persons are collectively referred to herein individually as a "Nationwide Forced Labor Class Member" and collectively as the "Nationwide Forced Labor Class" or "Nationwide Forced Labor Class Members."

## The California Forced Labor Class

All civil immigration detainees who performed Forced Labor uncompensated work for CoreCivic at any Detention Facility located in California owned or operated by it at time during the period from November 2, 2004 to the applicable op-out date, inclusive.

Such persons are collectively referred to herein individually as a "California Forced Labor Class Member" and collectively as the "California Forced Labor Class" or "California Forced Labor Class Members."

## The California Labor Law Class

All civil immigration detainees who performed Dollar-A-Day Work for CoreCivic and were paid one dollar ($1) per day at any Detention Facility located in California owned or operated by it at any time between November 2, 2004 to the applicable op-out date, inclusive.

Such persons are collectively referred to herein individually as a "California Labor Law Class Member" and collectively as the "California Labor Law Class."

31.    The Classes described in this Complaint may be jointly referred to as the "Class" and proposed Members of the Classes may be jointly referred to as "Class Members."

32.    Excluded from the Class are the Defendant herein, law enforcement agencies and personnel, members of the foregoing persons' immediate families and their legal representatives, heirs, successors, or assigns, and any entity or person in

- 9 -

which Defendant has or had a controlling or supervisory interest or control over at all relevant times.

33.     Plaintiffs satisfy the numerosity, commonality, typicality, adequacy, and predominance prerequisites for suing as representative parties pursuant to Rule 23 of the Federal Rules of Civil Procedure.

34.     <u>Numerosity.</u>   The exact number of proposed Class Members is currently not known, but is believed to consist of thousands if not tens of thousands of former or current CoreCivic detainees who have been forced and/or coerced to work, whether for one dollar ($1) per day or no pay whatsoever, making joinder of each individual Class Member impracticable.

35.     <u>Commonality.</u>   Common questions of law and fact exist for the proposed Class' claims and predominate over questions affecting only individual Class Members.   Common questions include, without limitation:

    a.   whether Plaintiffs and the Class Members were entitled to the protections of the California labor laws and California Industrial Welfare Commission wage orders;

    b.   whether Plaintiffs and the Class Members performed compensable work;

    c.   whether Plaintiffs and the Class Members were paid $1 per day for their labor;

    d.   whether forcing and coercing Plaintiffs and the Class Members to perform Forced Labor constitutes a violation of each Class Member's TVPA and CTVPA, human rights, California labor law and California Industrial Welfare Commission wage orders, and other statutory and common law rights as set forth herein;

    e.   what monitoring, limiting, and supervisory procedures and practices should CoreCivic be required to implement to ensure ongoing protection of each Class Member's TVPA, CTVPA, California labor law, and other legal rights

- 10 -

1    and as part of any prohibitory and mandatory injunctive relief ordered by the

2    Court;

3    f.   whether CoreCivic acted deliberately or negligently by unlawfully, without

4         limitation:

5         i.    failing to adequately protect Class Members TVPA, CTVPA, and

6               California labor law rights

7         ii.   forcing and coercing detainees to perform Forced Labor;

8         iii.  failing to follow applicable laws; and

9         iv.   failing to maintain adequate monitoring, limiting, and supervisory

10              procedures, policies, and practices; and

11   g.   whether Plaintiffs and Class Members may obtain damages, restitution,

12        disgorgement, declaratory, and prohibitory and mandatory injunctive relief

13        against CoreCivic.

14   36.   _Typicality._  Plaintiffs' claims are typical of the claims of the proposed

15   Class because, among other things, Plaintiffs and Class Members legal claims all

16   arise from CoreCivic's unlawful practices, and Plaintiffs and Class members

17   sustained similar injuries and statutory damages as a result of CoreCivic's uniform

18   illegal conduct.

19   37.   _Adequacy._  Plaintiffs will fairly and adequately protect the interests of

20   the Class.  Their interests do not conflict with Class Members' interests and they

21   have retained counsel competent and experienced in complex and class action

22   litigation to vigorously prosecute this action on behalf of the Class.  In addition to

23   satisfying the prerequisites of FRCP 23(a), Plaintiffs satisfy the requirements for

24   maintaining a class action under FRCP 23(b)(2) and (3).

25   38.   Common questions of law and fact predominate over any questions

26   affecting only individual Class Members and a Class action is superior to individual

27   litigation because:

28

- 11 -

a. the amount of damages available to individual Plaintiffs are insufficient to make litigation addressing CoreCivic's conduct economically feasible in the absence of the Class action procedure;

b. individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system; and

c. the Class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

39.     In addition, Class certification is appropriate under FRCP Rule 23(b)(1) or (b)(2) because:

a. the prosecution of separate actions by the individual Members of the proposed Class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for CoreCivic;

b. the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c. CoreCivic has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed Class as a whole.

## <u>FIRST CAUSE OF ACTION</u>

**Violation of the Trafficking Victims Protection Act**

**18 U.S.C. §§ 1589, *et seq.***

**(On Behalf of the Plaintiffs Individually and the Class)**

40.     Plaintiffs and Class Members incorporate by reference the foregoing allegations.

- 12 -

41.     18 U.S.C. § 1589(a) of the Federal Trafficking Victims Protection Act provides that:

> "Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means — (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under [18 U.S.C. § 1589] subsection (d)."

42.     Plaintiffs and Class Members were forced, coerced, and made to perform labor and services, including Forced Labor, for CoreCivic by means of:

  a.  force, threats of force, physical restraint and threats of physical restraint;

  b.  serious harm and threats of serious harm; and

  c.  abuse and threatened abuse of law or legal process to Plaintiffs and the Class Members, and by means of a scheme, plan, pattern, and uniform policy intended to cause Plaintiffs and the Class to believe that, if they did not perform such labor or services, that they would suffer serious harm and/or physical restraint.

CoreCivic was unjustly enriched by the unlawful practice of forcing and coercing Plaintiffs and the Class Members to perform uncompensated Forced Labor through human trafficking.  By exploiting these unlawful practices CoreCivic materially and significantly reduced its labor costs and expenses, in addition to increasing its profits.

43.     Plaintiffs and the Class Members are victims of Forced Labor under 18 U.S.C. § 1589.  CoreCivic committed the illegal and unlawful offense(s) of Forced Labor against the Plaintiffs and the Class Members under 18 U.S.C. § 1589, *et seq.*  CoreCivic knowingly and financially benefitted from implementing/participating in a venture, plan, scheme, pattern of conduct, and

- 13 -

1  practice CoreCivic knew, or should have known, was unlawful and in violation of
2  Forced Labor laws under to 18 U.S.C. § 1589.  Plaintiffs and the Class Members are
3  entitled to, without limitation, the remedies set forth in 18 U.S.C. § § 1593 and
4  18 U.S.C. § 1595(a).

5      44.      18 U.S.C. § 1593 states:

6  (a) "Notwithstanding section 3663 or 3663A, and in addition to any other
7  civil or criminal penalties authorized by law, the court shall order
   restitution for any offense under this chapter."

8  (b)

9      (1)  "The order of restitution under this section shall direct the
10     defendant to pay the victim (through the appropriate court
       mechanism) the full amount of the victim's losses, as determined by
11     the court under paragraph (3) of this subsection."

12

13     (2)  "An order of restitution under this section shall be issued and
       enforced in accordance with section 3664 in the same manner as an
14     order under section 3663A."

15

16     (3)  "As used in this subsection, the term "full amount of the victim's
       losses" has the same meaning as provided in section 2259(b)(3) and
17     shall in addition include the greater of the gross income or value to
       the defendant of the victim's services or labor or the value of the
18     victim's labor as guaranteed under the minimum wage and overtime
19     guarantees of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.)."

20

21     (4)  "The forfeiture of property under this subsection shall be
       governed by the provisions of section 413 (other than subsection (d)
22     of such section) of the Controlled Substances Act (21 U.S.C. § 853)."

23

24 (c)  "As used in this section, the term "victim" means the individual
   harmed as a result of a crime under this chapter, including, in the case of
25 a victim who is under 18 years of age, incompetent, incapacitated, or
   deceased, the legal guardian of the victim or a representative of the
26 victim's estate, or another family member, or any other person appointed
27 as suitable by the court, but in no event shall the defendant be named such
   representative or guardian."

28

- 14 -

45.     18 U.S.C. § 1595(a) states:

"An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."

46.     Accordingly, Plaintiffs and the Class Members respectfully request that the Court issue declaratory relief declaring CoreCivic's practice(s) involving Forced Labor and human trafficking – forcing and coercing Plaintiffs and Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restriction, deprivation, solitary confinement - to be illegal and unlawful.

47.     Plaintiffs and Class Members request the Court to grant an injunction requiring CoreCivic to cease its unlawful practices described herein and enjoin CoreCivic from forcing and coercing Plaintiffs and the Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restriction, deprivation, and solitary confinement.

48.     Plaintiffs and the Class Members request the Court to enter an injunction in connection with the foregoing ordering that CoreCivic:

  a.  engage a third party ombudsman as well as internal compliance personnel to monitor, conduct inspection, and audit CoreCivic's safeguards and procedures on a periodic basis;

  b.  audit, test, and train its internal personnel regarding any new or modified safeguards and procedures;

  c.  conduct regular checks and tests on its safeguards and procedures;

  d.  Periodically conduct internal training and education to inform internal personnel how to identify violations when they occur and what to do in response; and

- 15 -

    e. periodically and meaningfully educate its personnel and detainees about their labor and human trafficking rights through, without limitation, educational programs and classes upon detention, as well as any steps that must be taken to safeguard such rights.

49.    Plaintiffs and the Class Members have suffered damages in an amount to be determined at trial. Plaintiffs and the Class Members request the Court enter an order pursuant to 18 U.S.C. § 1595(a) awarding Plaintiffs and the Class Members compensatory and punitive damages.

50.    Plaintiffs and the Class Members request this Court to enter an order pursuant to 18 U.S.C. § 1593 awarding Plaintiffs and the Class Members mandatory restitution in addition to the recovery of their reasonable attorneys' fees they are entitled to recover pursuant to 18 U.S.C. § 1595(a).

51.    Plaintiffs and the Class Members also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute and as they are entitled to recover pursuant to 18 U.S.C. § 1595(a).

## SECOND CAUSE OF ACTION

### Violation of the California Trafficking Victims Protection Act

### Cal. Civ. Code § 52.5

### (On Behalf of the Plaintiffs Individually and the California Forced Labor Class)

52.    Plaintiffs and California Forced Labor Class Members incorporate by reference the foregoing allegations.

53.    Cal. Civ. Code § 52.5 - The California Trafficking Victims Protection Act provides, *inter alia,* that:

(a) "A victim of human trafficking, as defined in Section 236.1 of the Penal Code, may bring a civil action for actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. A prevailing plaintiff may also be awarded attorney's fees and costs."

- 16 -

(b) "In addition to the remedies specified herein, in any action under subdivision (a), the plaintiff may be awarded up to three times his or her actual damages or ten thousand dollars ($10,000), whichever is greater. In addition, punitive damages may also be awarded upon proof of the defendant's malice, oppression, fraud, or duress in committing the act of human trafficking."

54.     Cal. Penal Code § 236.1 provides:

(a) "Any person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services, is guilty of human trafficking and shall be punished by imprisonment in the state prison for 5, 8, or 12 years and a fine of not more than five hundred thousand dollars ($500,000)."

(b) "Any person who deprives or violates the personal liberty of another with the intent to effect or maintain a violation of Section 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518 is guilty of human trafficking and shall be punished by imprisonment in the state prison for 8, 14, or 20 years and a fine of not more than five hundred thousand dollars ($500,000)."

55.     Cal. Penal Code § 236.1 also provides in relevant part,

(g) "The Legislature finds that the definition of human trafficking in this section is equivalent to the federal definition of a severe form of trafficking found in Section 7102(8) of Title 22 of the United States Code."

(h) For purposes of this chapter, the following definitions apply:

(1) "Coercion" includes any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; the abuse or threatened abuse of the legal process; debt bondage; or providing and facilitating the possession of any controlled substance to a person with the intent to impair the person's judgment."

(3) "Deprivation or violation of the personal liberty of another" includes substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person, under circumstances where the person receiving or

- 17 -

apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out."

(4) "Duress" includes a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person to acquiesce in or perform an act which he or she would otherwise not have submitted to or performed; a direct or implied threat to destroy, conceal, remove, confiscate, or possess any actual or purported passport or immigration document of the victim; or knowingly destroying, concealing, removing, confiscating, or possessing any actual or purported passport or immigration document of the victim."

(5) "Forced labor or services" means labor or services that are performed or provided by a person and are obtained or maintained through force, fraud, duress, or coercion, or equivalent conduct that would reasonably overbear the will of the person."

(6) "Great bodily injury" means a significant or substantial physical injury."

(8) "Serious harm" includes any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor, services, or commercial sexual acts in order to avoid incurring that harm."

56.     Plaintiffs and Class Members were forced, coerced, and made to perform labor and services, including Forced Labor, for CoreCivic by means of:

   a. force, threats of force, physical restraint and threats of physical restraint;

   b. serious harm and threats of serious harm; and

   c. abuse and threatened abuse of law or legal process to Plaintiffs and the Class Members; and

- 18 -

d. a scheme, plan, pattern, and uniform policy intended to cause Plaintiffs and the Class Members to believe that, if they did not perform such Forced Labor, that they would suffer serious harm and/or physical restraint.

57.    Core Civic materially and significantly reduced its labor costs and expenses, and increased its profits, by unlawfully forcing and coercing Plaintiffs and the Class Members to perform uncompensated Forced Labor and human trafficking. Plaintiffs and the Class Members are victims of Forced Labor under Cal. Civ. Code § 52.5. CoreCivic committed the illegal and unlawful offense of Forced Labor against Plaintiffs and the Class Members under Cal. Civ. Code § 52.5. CoreCivic knowingly and financially benefitted from participation in a venture, plan, scheme, pattern of conduct, and practice CoreCivic knew, or should have known, were unlawful and in violation California Forced Labor laws pursuant to Cal. Civ. Code § 52.5.

58.    Accordingly, Plaintiffs and the Class Members respectfully request that the Court issue declaratory relief declaring CoreCivic's practice(s) involving Forced Labor and human trafficking – forcing and coercing Plaintiffs and Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restriction, deprivation, solitary confinement to be illegal and unlawful.

59.    Plaintiffs and the Class Members request the Court to enter an injunction requiring CoreCivic to cease the unlawful practices described herein and enjoin CoreCivic from using Forced Labor by forcing and coercing Plaintiffs and the Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restriction, and solitary confinement.

60.    Plaintiffs and the Class Members request the Court to enter an injunction in connection with the foregoing ordering that CoreCivic:

*Sylvester Owino, et al. v. CoreCivic, Inc.*
CLASS ACTION COMPLAINT

a.  engage a third party ombudsman as well as internal compliance personnel to monitor, conduct inspection, and audit CoreCivic's safeguards and procedures on a periodic basis;

b.  audit, test, and train its internal personnel regarding any new or modified safeguards and procedures;

c.  conduct regular checks and tests on its safeguards and procedures;

d.  periodically conduct internal training and education to inform internal personnel how to identify violations when they occur and what to do in response; and

e.  periodically and meaningfully educate its personnel and detainees about their labor and human trafficking rights through, without limitation, educational programs and classes upon detention, as well as any steps that must be taken to safeguard such rights.

61.     Plaintiffs and the Class Members have suffered damages in an amount to be determined at trial.  Plaintiffs and the Class Members request the Court enter an order pursuant to Cal. Civ. Code § 52.5 awarding Plaintiffs and the Class Members compensatory and punitive damages.

62.     Plaintiffs and the Class Members request the Court enter an order pursuant to Cal. Civ. Code § 52.5 awarding Plaintiffs and the Class Members mandatory restitution.  Plaintiffs and the Class Members are entitled to recover their reasonable attorneys' fees pursuant to Cal. Civ. Code § 52.5(a).  Plaintiffs and the Class Members therefor also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute and as they are entitled to recover pursuant Cal. Civ. Code § 52.5(s).

*Sylvester Owino, et al. v. CoreCivic, Inc.*
CLASS ACTION COMPLAINT

## THIRD CAUSE OF ACTION

### Violation of California's Unfair Competition Law

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### (On Behalf of Plaintiffs Individually and the California Forced Labor Class

### and California Labor Law Class)

63.     Plaintiffs and Class Members incorporate the above allegations by reference.

64.     California's Unfair Competition Law ("UCL") prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [California's False Advertising Law]." Cal. Bus. & Prof. Code § 17200.

65.     CoreCivic willfully violated, and continues to violate, the "unlawful" prong of the UCL by violating the federal Trafficking Victims Protection Act, 18 U.S.C. § 1589, et seq., the California Trafficking Victims Protection Act, Cal. Civ. Code § 52.5, and the California labor laws and orders of the California Industrial Welfare Commission, and other applicable statutes and laws alleged herein.

66.     CoreCivic willfully violated, and continues to violate, the "unfair" prong of the UCL by gaining unjust profits from "Dollar-A-Day Work" and Forced Labor practices in violation of Plaintiffs and the Class Members' statutorily protected rights.

67.     The acts, omissions, and practices of Defendant, as described herein, further constitutes "unfair" and "unlawful" business acts and practices under the UCL in that Defendant's conduct offends public policy against human trafficking and Forced Labor, and seeks to profit and capitalize on the violations of Plaintiffs' and the Class Members' applicable federal and state human and labor law rights.

68.     As a direct and proximate result of Defendant's unlawful and unfair business practices, Plaintiffs and putative Class Members have suffered injury, including but not limited to, monetary loss in connection with their Dollar-A-Day

1   Work and Forced Labor services directly and proximately caused by CoreCivic's

2   unlawful and unfair conduct and business practices, as well as, the violation of their

3   human rights and labor law rights.

4       69.      Accordingly, Plaintiffs and the California Forced Labor Class Members

5   and California Labor Law Class members are entitled to, and hereby seek, an order

6   of this Court enjoining Defendant from continuing to conduct business through

7   unlawful, unfair, and/or fraudulent acts and practices, and to take corrective action

8   pursuant to Section 17203 of the UCL.

9       70.      Plaintiffs and Class Members are further entitled to, and hereby seek an

10  order for disgorgement and restitution of all monies acquired from the sales of the

11  CoreCivic's services which were unjustly acquired through acts of unlawful, unfair,

12  and/or fraudulent competition by CoreCivic, as well as any other further equitable

13  relief this Court may deem necessary, just, and proper under the circumstances.

14  Additionally, Plaintiffs and the Class seek pre-and-post judgment interest and

15  attorneys' fees and costs as allowed by statute. *See e.g.*, Cal. Code of Civ.

16  Proc. § 1021.5.

17              **FOURTH CAUSE OF ACTION**

18              **Failure to Pay Minimum Wage**

19              **Cal. Labor Code §§ 1194, 1197, 1197.1**

20              **& I.W.C. Wage Orders No. 5-2001, 15-20011**

21  **(On behalf of Plaintiffs Individually and the California Labor Law Class)**

22      71.      Plaintiffs and Class Members incorporate by reference the foregoing

23  allegations.

24      72.      California Labor Code §§ 1194, 1197, 1197.1 and Industrial Welfare

25  Commission Wage Orders 5-2001 and 15-2001 entitle non-exempt employees to an

26  amount equal to or greater than the minimum wage for all hours worked. All hours

27  must be paid at the statutory or agreed rate and no part of this rate may be used as a

28  credit against a minimum wage obligation.

- 22 -

73.     CoreCivic did not and does not compensate Detainees, including Plaintiffs and the California Labor Law Class at the minimum wage for all "Dollar-A-Day Work" hours performed.

74.     As a result of violations of Cal. Labor Code §§ 1194, 1197, 1197.1 and Industrial Welfare Commission Wage Orders 5-2001, 15-2001 for failure to pay minimum wage, CoreCivic is liable for civil penalties pursuant to Cal. Labor Code §§ 558, 1197.1, and 2698 *et seq.*

75.     Accordingly, Plaintiffs and Class Members are entitled to, and hereby seek, actual damages, punitive damages, reasonable attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5, pre-and post-judgment interest at the applicable legal rate, and any and all further equitable relief that this Court deems appropriate.

## FIFTH CAUSE OF ACTION

### Failure to Pay Overtime Wages

### Cal. Labor Code §§ 204, 510, 1194, and Wage Orders 5-2001, 15-2001

### (On behalf of Plaintiffs Individually and the California Labor Law Class)

76.     Plaintiffs and Class Members incorporate the above allegations by reference.

77.     California Labor Code § 510 and the "Hours & Days of Work" Section of the Wage Orders entitles non-exempt employees to one and one-half times their hourly pay for any and all hours worked in excess of eight hours in any work day, for the first eight hours worked on the seventh consecutive day of work in a work week, and for any work in excess of forty hours in any one work week. Employees are entitled to the one and one-half times their hourly pay for any and all hours worked in excess of twelve (12) hours in any work day and in excess of eight (8) hours on the seventh (7th) consecutive work day.

78.     Plaintiffs and Class Members regularly worked in excess of eight (8) hours per day and/or forty (40) hours per week without overtime compensation. By failing to pay overtime compensation to Plaintiffs and Class Members, CoreCivic

- 23 -

*Sylvester Owino, et al. v. CoreCivic, Inc.*
CLASS ACTION COMPLAINT

1    violated and continues to violate Cal. Labor Code §§ 204, 510 and 1194 and Wage
2    Orders 5-2001, 15-2001.

3        79.    As a result of CoreCivic's unlawful acts, Plaintiffs and Class Members
4    have been deprived of overtime compensation in an amount to be determined at trial,
5    and are entitled to recovery of such amounts, plus interest thereon, attorneys' fees
6    and costs, under Cal. Labor Code § 1194.

**SIXTH CAUSE OF ACTION**

**Failure to Provide Mandated Meal Periods**

**Cal. Labor Code §§ 226.7, 512, and I.W.C. Wage Orders 5-2001, 15-2001**

**(On behalf of Plaintiffs Individually and the California Labor Law Class)**

11       80.    Plaintiffs and Class Members incorporate the above allegations by
12   reference.

13       81.    CoreCivic failed to maintain a policy of providing meal breaks as
14   required by Cal. Labor Code §§ 226.7, 512 and Wage Orders 5-2001, 15-2001.

15       82.    Since at least three years prior to the filing of this action, Plaintiffs and
16   Class Members have worked in excess of five hours and at times ten hours a day
17   without being provided at least half hour meal periods in which they were relieved of
18   their duties, as required by Cal. Labor Code §§ 226.7 and 512 and Wage Orders 5-
19   2001, 15-2001. *See Brinker Restaurant Corp., et al. v. Superior Court* (2012) 53 Cal.
20   4th 1004, 1040-41 ("The employer satisfies this obligation if it relieves its employees
21   of all duty, relinquishes control over their activities and permits them a reasonable
22   opportunity to take an uninterrupted 30—minute break, and does not impede or
23   discourage them from doing so... [A] first meal period [is required] no later than the
24   end of an employee's fifth hour of work, and a second meal period [is required] no
25   later than the end of an employee's 10th hour of work.").

26       83.    Because CoreCivic failed to provide proper meal periods, it is
27   liable to all Plaintiffs and Class Members for one hour of additional pay at the
28   regular rate of compensation for each work day that the proper meal periods

- 24 -

1 were not provided, pursuant to Cal. Labor Code §§ 226.7 and 512 and Wage

2 Orders 5-2001, 12-2001, as well as interest thereon, plus reasonable attorneys'

3 fees and costs of suit pursuant to Cal. Code of Civ. Proc. Code § 1021.5.

## SEVENTH CAUSE OF ACTION

### Failure to Provide Mandated Rest Periods

### Cal. Labor Code § 226.7 and I.W.C. Wage Orders 5-2001, 15-2001

### (On behalf of Plaintiffs Individually and the California Labor Law Class)

84.     Plaintiffs and Class Members incorporate the above allegations by reference.

85.     Since at least three years prior to the commencement of this action. Plaintiffs and Class Members have regularly worked without any rest periods that are required by Wage Orders 5-2001, 15-2001. *See Brinker*, 53 Cal. 4th 1004 at 1029 ("Employees are entitled to 10 minutes rest for shifts three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours; 30 minutes for shifts of more than 10 hours up to 14 hours, and so on.").

86.     Because CoreCivic failed to provide proper rest periods, it is liable to Plaintiffs and Class Members for one (1) hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not provided, pursuant to Cal. Labor Code § 226.7 and Wage Orders 5-2001, 152001, as well as interest thereon, plus reasonable attorneys' fees and costs of suit pursuant to Cal. Code of Civ. Proc. § 1021.5.

## EIGHTH CAUSE OF ACTION

### Failure to Furnish Timely and Accurate Wage Statements

### Cal. Labor Code § 226

### (On behalf of Plaintiffs Individually and the California Labor Law Class)

87.     Plaintiffs and Class Members incorporate the above allegations by reference.

- 25 -

88.     California Labor Code § 226 requires an employer to furnish its employees with an accurate itemized statement in writing showing, among other things:

   a.  all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked by each respective individual;

   b.  total hours worked by each respective individual;

   c.  gross wages earned;

   d.  net wages earned;

   e.  all deductions;

   f.  inclusive dates of the period for which the employee is paid;

   g.  the name of the employee and an employee identification or social security number; and

   h.  the name and address of the legal entity that is the employer.

89.     As a pattern and practice, in violation of Labor Code § 226(a), CoreCivic did not provide Plaintiffs or Class Members with accurate itemized wage statements in writing showing:

   a.  all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked by each respective individual;

   b.  number of hours worked;

   c.  gross wages earned;

   d.  net wages earned;

   e.  all deductions;

   f.  inclusive dates of the period for which the employee is paid;

   g.  the employee identification or social security number; and

   h.  the address of the legal entity that is the employer.

90.     As a result of CoreCivic's failure to provide accurate itemized wages statements, Plaintiffs and Class Members suffered actual damages and harm by being unable to determine their applicable hourly rate or the amount of overtime worked for

*Sylvester Owino, et al. v. CoreCivic, Inc.*
CLASS ACTION COMPLAINT

1  each pay period, which prevented them from becoming aware of these violations and
2  asserting their statutory protections under California law.

3    91.  CoreCivic has knowingly and intentionally failed to comply with Cal.
4  Labor Code § 226(a) and failed to provide a wage statement to Plaintiffs and Class
5  Members.

6    92.  Pursuant to Cal. Labor Code § 226(e), the Plaintiffs and Class
7  Members are entitled to recover the greater of all actual damages or fifty dollars
8  ($50.00) for the initial pay period in which a violation occurs and one hundred
9  dollars ($100.00) per employee for each violation in a subsequent pay period, not
10  exceeding an aggregate penalty of four thousand dollars ($4,000.00).

11    93.  The Plaintiffs and Class Members are entitled to an award of costs and
12  reasonable attorneys' fees pursuant to Cal. Labor Code § 226(h).

13  

**NINTH CAUSE OF ACTION**
14  **Failure to Pay Compensation Upon Termination/Waiting Time Penalties**
15  **Cal. Labor Code §§ 201-2031**
16  **(On behalf of Plaintiffs Individually and the California Labor Law Class)**

17    94.  Plaintiffs and Class Members incorporate the above allegations by
18  reference.

19    95.  California Labor Code §§ 201 and 202 require CoreCivic to pay all
20  compensation due and owing to Plaintiffs and Class Members immediately upon
21  discharge or within seventy-two hours of their termination of employment. Cal.
22  Labor Code § 203 provides that if an employer willfully fails to pay compensation
23  promptly upon discharge or resignation, as required by §§ 201 and 202, then the
24  employer is liable for such "waiting time" penalties in the form of continued
25  compensation up to thirty workdays.

26    96.  CoreCivic willfully failed to pay Plaintiffs and Class Members who are
27  no longer employed by CoreCivic compensation due upon termination as required
28  by Cal. Labor Code §§ 201 and 202. As a result, CoreCivic is liable to Plaintiffs and

- 27 -

*Sylvester Owino, et al. v. CoreCivic, Inc.*
CLASS ACTION COMPLAINT

former employee Class Members waiting time penalties provided under Cal. Labor Code § 203, plus reasonable attorneys' fees and costs of suit.

## TENTH CAUSE OF ACTION

### Imposition of Unlawful Terms and Conditions of Employment

### Cal. Labor Code § 432.5

### (On behalf of Plaintiffs Individually and the California Labor Law Class)

97.    Plaintiffs and Class Members incorporate the above allegations by reference.

98.    Cal. Labor Code § 432.5 provides that no employer shall require any employee to agree, in writing, to any term or condition which is known by the employer to be prohibited by law.

99.    CoreCivic requires, as a condition of employment, that Plaintiffs and Class Members sign a written agreement which includes numerous terms that are prohibited by law, including but not limited to agreeing to work for less than minimum wage or without appropriate overtime compensation.

100.    Provisions of the employment contract, as described above, that Plaintiffs and Class Members were required to sign as a condition of employment, explicitly and unquestionably, violate several provisions of California law and public policy. Upon information and belief, CoreCivic knew that such provisions violated California law and public policy.

101.    As a result of Defendant's unlawful conduct as alleged herein, Plaintiffs and Class Members have sustained damages.

## ELEVENTH CAUSE OF ACTION

### Negligence

### (On Behalf of Plaintiffs Individually and the Class)

102.    Plaintiffs and the Class Members incorporate the above allegations by reference.

- 28 -

103.     In engaging Plaintiffs and the Class members to provide labor and services to CoreCivic, CoreCivic owed a duty to exercise reasonable and ordinary care in complying with all applicable local, state, and federal laws and to furnish a safe working place for its employees.

104.     This duty included, among other things, taking reasonable measures to implement and maintain reasonable procedures to provide a safe working environment and workplace and to protect the rights of Class Members in compliance with applicable law, including, but not limited to procedures and policies:

    a. to supervise, restrict, limit, and determine whether any Plaintiffs and the Class Members were subject to Forced Labor practices by CoreCivic or perform other labor and services under threat of punishment, confinement, physical restraint, and deprivation of liberty;

    b. to notify Plaintiffs and the Class Members of their rights under the TVPA and CTVPA; and

    c. when and how to notify Plaintiffs and the Class Members of CoreCivic's unlawful Forced Labor practices.

105.     In providing services to the Plaintiffs and the Class, CoreCivic owed them a duty to exercise reasonable care, without limitation in:

    a. adequately providing a safe working environment and workplace;

    b. adequately protecting the rights of Class Members in compliance with applicable law;

    c. prohibiting and adequately ensuring Plaintiffs and the Class Members were not subject to Forced Labor practices;

    d. adequately ensuring Plaintiffs and the Class Members had a safe work environment; and

    e. protecting the rights of Plaintiffs and the Class' under the TVPA and CTVPA from CoreCivic's Forced Labor practices.

- 29 -

106.     CoreCivic' systems, policies, and procedures for adequately ensuring the rights of Plaintiffs and the Class Members under the TVPA and CTVPA were adequately protected were intended to, and did, affect Plaintiffs and the Class Members.  CoreCivic was aware that by utilizing Plaintiffs' and the Class Members labor and services, it had a responsibility to take reasonable measures to protect their rights under applicable law.

107.     The duty CoreCivic owed to Plaintiffs and Class Members to protect their rights under applicable law is underscored by the Federal and California Trafficking Victims Protection Act, which recognizes the importance of preventing the crime of trafficking of a person for forced labor or services.

108.     Additionally, CoreCivic had a duty to timely disclose to and/or warn Plaintiffs and Class Members of their rights under the TVPA, CTVPA, California labor laws, and other applicable laws, rules, and regulations.  Timely disclosure was necessary and appropriate so that Plaintiffs and Class Members could have, among other things, timely pursued and exhausted available remedies, and undertaken appropriate measures to avoid, prevent or mitigate the violations of their rights under applicable laws.

109.     There is a very close connection between CoreCivic's failure to take reasonable measures to provide a safe and lawful work environment and timely disclosure of Plaintiffs' and the Class Members' rights and the injury to Plaintiffs and the Class.

110.     When individuals have their human and labor law rights violated they are at risk for personal, financial, physical, and emotional injury, distress, and damage and need to incur additional costs and expense to protect themselves and seek and obtain redress from such invasions of their legal rights.

111.     CoreCivic is legally responsible for such unlawful violations of Plaintiffs and the Class Members' human and labor law rights and their right to a safe working environment because it failed to take reasonable measures in

- 30 -

1    connection therewith.  If CoreCivic had taken reasonable measures in connection
2    with their employment of Plaintiffs and the Class Members, their legal rights would
3    not have been violated.

4         112.    The policy of preventing future harm weighs in favor of finding a
5    special relationship between CoreCivic and the Class. CoreCivic's civil immigration
6    detainees have no choice to but to perform the Forced Labor when and how
7    CoreCivic demands it.  If CoreCivic is not held accountable for failing to take
8    reasonable measures to protect the human rights and labor law rights of its detainees,
9    they will not take the steps that are necessary to protect against future invasions of
10   such rights.

11        113.    It was foreseeable that if CoreCivic did not take reasonable measures,
12   the human rights and labor law rights of Plaintiffs and Members of the Class would
13   be violated. CoreCivic should have known to take precautions to prevent such
14   abuses.

15        114.    CoreCivic breached its duty to exercise reasonable care in providing a
16   safe work environment for, and protecting the human rights and labor law rights of,
17   Plaintiffs and the Class Members by, without limitation:

18            a.  failing to implement and maintain adequate measures to safeguard
19                detainees' rights;

20            b.  failing to monitor its operations to identify unlawful activity;

21            c.  requiring and/or allowing Plaintiffs and the Class to work in an unsafe
22                environment; and

23            d.  failing to otherwise prevent human rights and labor law abuses.

24        115.    CoreCivic breached its duty to timely warn or notify Plaintiffs and the
25   Class about its unlawful Forced Labor and "Dollar-A-Day Work" practices and
26   programs.  CoreCivic has failed to issue any warnings to its current and former
27   detainees affected by these unlawful practices.  Additionally, CoreCivic was, or
28   should have been, aware of its unlawful practices as early as November 2, 2004.

- 31 -

116.　　But for CoreCivic's failure to implement and maintain adequate measures to provide a safe working environment for, and protect the human rights and labor law rights of, Plaintiffs and the Class Members, and its failure to monitor its operations to identify unlawful Forced Labor and Dollar-A-Day Work violations of the labor laws, Plaintiffs' and Class Members' rights would not have been violated and Class Members would not be at a heightened risk of unlawful Forced Labor and other labor law violations in the future.

117.　　CoreCivic's negligence was a substantial factor in causing harm to Plaintiffs and Class Members, and in violating their human rights and labor law rights.  As a direct and proximate cause and result of CoreCivic' failure to exercise reasonable care and use reasonable measures to provide a safe working environment and safeguard the human rights and labor law rights of Plaintiffs and the Class Members, Plaintiffs and the Class Members were subjected to Forced Labor and the labor law violations set forth herein. Class Members face a heightened risk of such unlawful practices in the future.

118.　　Neither Plaintiffs nor other Class Members contributed to the unlawful conduct set forth herein, nor did they contribute to CoreCivic's unlawful Forced Labor practices and other labor law violations, nor to the insufficient measures to provide a safe working environment and to safeguard the human rights and labor law rights of Plaintiffs and the Class Members.

119.　　Plaintiffs and the Class Members seek compensatory damages and exemplary damages with pre-and-post judgment interest, the costs of suit, attorneys' fees, and other and further relief as this Court deems just and proper.

### TWELFTH CAUSE OF ACTION

**Unjust Enrichment**

**(On Behalf of Plaintiffs Individually and the Class)**

120.　　Plaintiffs and the Class Members incorporate the above allegations by reference.

- 32 -

121.    "Under California law, the elements of unjust enrichment are: (a) receipt of a benefit; and (b) unjust retention of the benefit at the expense of another." *Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15-CV-00887-HSG, 2015 WL 4747533, at *8 (N.D. Cal. Aug. 11, 2015). *See also, Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'")

122.    "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). "Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred "is an obligation (not a true contract [citation]) created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money." *F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008).

123.    Plaintiffs and Class Members conferred non-gratuitous benefits upon CoreCivic by performing "Dollar-A-Day Work" for all hours worked for which CoreCivic would otherwise have had to pay at least the applicable minimum wage or more, thereby significantly and materially increasing CoreCivic's profit margins, and unjustly enriching CoreCivic at the expense of and to the detriment of Plaintiffs and the Class Members.

124.    CoreCivic's retention of any benefit collected directly and indirectly from Plaintiffs' and Class Members' labor and services violated principles of justice, equity, and good conscience. As a result, CoreCivic has been unjustly enriched. Plaintiffs and Class Members are entitled to recover from CoreCivic all amounts that CoreCivic has wrongfully and improperly obtained, and CoreCivic should be required to disgorge to Plaintiffs and Class Members the benefits it has unjustly obtained.

- 33 -

125.    CoreCivic accepted or retained such benefits with knowledge that Plaintiffs' and Class Members' human rights and labor law right were being violated for financial gain.  CoreCivic has been unjustly enriched in retaining the revenues and profits from Plaintiffs and Class Members' Dollar-A-Day Work, which retention under these circumstances is unjust and inequitable.

126.    As a direct and proximate result of CoreCivic's Forced Labor practices and the Dollar-A-Day Work program, Plaintiffs and Class Members have suffered concrete harm and injury, including, but not limited to, physical and emotional injury, monetary loss in connection with their labor and services provided CoreCivic purchases of services, and the unlawful violation of their human rights and labor law rights, as alleged herein.

127.    CoreCivic's retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class Members would be unjust and inequitable. Plaintiffs and Class Members are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon CoreCivic in a manner established by this Court.

128.    Plaintiffs and Class Members are further entitled to, and hereby seek, reasonable attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5, pre-and post-judgment interest at the applicable legal rate, as well as any and all further equitable relief that this Court deems appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, request the Court:

a.    certify this case as a class action on behalf of the Class Members defined above, appoint Sylvester Owino and Jonathan Gomes as Class representatives, and appoint the Law Office of Robert L. Teel as Class counsel;

b.    award declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members;

- 34 -

c.      award injunctive relief as is necessary to protect the interests of Plaintiffs and the Class Members;

d.      award restitution, damages, treble damages, and punitive damages to Plaintiffs and Class Members in an amount to be determined at trial;

e.      order disgorgement of CoreCivic's unjustly acquired revenue, profits, and other benefits resulting from their unlawful conduct for the benefit of Plaintiffs and Class Members in an equitable and efficient manner determined by the Court;

f.      order the imposition of a constructive trust upon CoreCivic such that its enrichment, benefit, and ill-gotten gains may be allocated and distributed equitably by the Court to and for the benefit of Plaintiffs and the Class Members.

g.      award Plaintiffs and Class Members their reasonable litigation expenses and attorneys' fees;

h.      award Plaintiffs and Class Members pre- and post-judgment interest to the extent allowable; and

i.      award such other and further relief as equity and justice may require.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  May 31, 2017

/s/ Robert L. Teel
By: Robert L. Teel
**LAW OFFICE OF ROBERT L. TEEL**
ROBERT L. TEEL
*lawoffice@rlteel.com*
207 Anthes Ave., Suite 201
Langley, Washington 98260
Telephone:  (866) 833-5529
Facsimile:   (855) 609-6911

*Attorney for Plaintiffs
and the Proposed Class*

*Sylvester Owino, et al. v. CoreCivic, Inc.*
CLASS ACTION COMPLAINT

JS 44 (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves, and all others similarly situated,

## DEFENDANTS

CoreCivic, Inc.

**(b)** County of Residence of First Listed Plaintiff   San Diego Co., CA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Davidson Co., TN
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Robert Teel
207 Anthes Ave., # 201, Langley, Washington 98260 - Tel. 866-833-5529

Attorneys *(If Known)*

Unknown

'17CV1112 JLS  NLS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28:1331 (mxn)                                    28 U.S.C. 1589, et seq.

Brief description of cause:
Violation of the Trafficking Victims Protection Act and pendant state law claims

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
$5,000,000 plus

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Not applicable

DOCKET NUMBER   Not applicable

DATE   May 31, 2017

SIGNATURE OF ATTORNEY OF RECORD   /s/ Robert Teel   *Robert Teel*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# EXHIBIT B

1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   SYLVESTER OWINO and JONATHAN          Case No.: 17-CV-1112 JLS (NLS)
     GOMEZ, on behalf of themselves and all
12   others similarly situated,             **ORDER GRANTING IN PART AND**
                                            **DENYING IN PART DEFENDANT'S**
13                          Plaintiffs,     **MOTION TO DISMISS**

14   v.
                                            (ECF No. 18)
15   CORECIVIC, INC., a Maryland
16   corporation,

17                          Defendant.

18

19          Presently before the Court is Defendant CoreCivic, Inc.'s Motion to Dismiss

20   Complaint, ("MTD," ECF No. 18). Also before the Court is Plaintiffs Sylvester Owino

21   and Jonathan Gomez's Response in Opposition to the Motion, ("Opp'n," ECF No. 22), and

22   Defendant's Reply in Support of, ("Reply," ECF No. 26), the Motion. The Court vacated

23   the hearing on the Motion and took it under submission pursuant to Civil Local Rule

24   7.1(d)(1). (ECF No. 25.) After the Court vacated the hearing, Plaintiffs filed two Requests

25   for Judicial Notice, ("First RJN," ECF No. 27; "Second RJN," ECF No. 32), to which

26   Defendant filed a Response, ("RJN Response," ECF No. 36). Then, the Court stayed the

27   current proceedings and deferred ruling on Defendant's Motion, (ECF No. 33), for the

28   purpose of addressing a motion to consolidate in a related case, *Gonzalez et al. v.*

*CoreCivic, Inc.*, (No. 17-CV-2573 JLS (NLS)).   The Court ruled on the related matter and now **LIFTS** the stay in these proceedings.   After considering the Parties' arguments and the law, the Court rules as follows.

## BACKGROUND

Plaintiffs are former civil immigration detainees who were incarcerated at the Otay Mesa Detention Center, which is owned and operated by Defendant.  ("Compl.," ECF No. 1, ¶¶ 10–11.)  Plaintiffs allege while at Otay Mesa, they and other detainees performed a variety of tasks for Defendant ranging from "scrubb[ing] bathrooms, showers, toilets, and windows" to "provid[ing] barber services to detainees" to "perform[ing] clerical work for CoreCivic." (*Id.* ¶ 14.)  In return for those services, detainees were paid $1.00 per day, which Plaintiffs refer to as "Dollar-A-Day Work." (*Id.* ¶ 15.)  Detainees could only spend their earnings at Defendant's "company store" or commissary. (*Id.*)

Plaintiffs also allege that Defendant forced Plaintiffs and other detainees "to clean, maintain, scrub, sweep, and mop floors, bathrooms, showers, toilets, and windows for no pay at all." (*Id.* ¶ 16.)  Defendant allegedly threatened to punish Plaintiffs and other detainees who refused to work by means of "confinement, physical restraint, substantial and sustained restriction, deprivation, and violation of their liberty, and solitary confinement." (*Id.*)

Plaintiffs seek to certify three subclasses.  Two of those subclasses would include all detainees who performed uncompensated work for Defendant, both nationally—the "Nationwide Forced Labor Class"—and in California—the "California Forced Labor Class." (*Id.* ¶ 30.)  The third subclass would include all detainees who performed work for Defendant and were paid one dollar per day—the "California Labor Law Class." (*Id.*)  Plaintiffs bring twelve claims, which can be divided as follows.  First, Plaintiffs allege violations of the federal Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589, *et seq.*, and the California Trafficking Victims Protection Act, Cal. Civ. Code § 52.5. (*See* Compl. ¶¶ 40–62.)  Next, Plaintiffs allege violations of numerous sections of the California Labor Code. (*See id.* ¶¶ 71–101.)  Finally, Plaintiffs bring a negligence claim, (*id.* ¶¶ 102–

1 | 19), a claim for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. &
2 | Prof. Code § 17200 *et seq.*, and an unjust enrichment claim, (*id.* ¶¶ 120–28).

## LEGAL STANDARD

4 | Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the
5 | defense that the complaint "fail[s] to state a claim upon which relief can be granted,"
6 | generally referred to as a motion to dismiss. The Court evaluates whether a complaint
7 | states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil
8 | Procedure 8(a), which requires a "short and plain statement of the claim showing that the
9 | pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual
10 | allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-
11 | harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*
12 | *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to
13 | provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
14 | conclusions, and a formulaic recitation of the elements of a cause of action will not do."
15 | *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A
16 | complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual
17 | enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

18 | In order to survive a motion to dismiss, "a complaint must contain sufficient factual
19 | matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting
20 | *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible
21 | when the facts pled "allow the court to draw the reasonable inference that the defendant is
22 | liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at
23 | 556). That is not to say that the claim must be probable, but there must be "more than a
24 | sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent
25 | with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting
26 | *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions"
27 | contained in the complaint. *Id.* This review requires context-specific analysis involving
28 | the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted).

3

Case 3:17-cv-01112-JLS-NLS    Document 38    Filed 05/14/18    PageID.354    Page 4 of 51

1  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

2  possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

3  pleader is entitled to relief.'" *Id.*

## ANALYSIS

5  The Court's analysis proceeds as follows. First, the Court briefly analyzes the

6  judicial notice requests. Second, the Court discusses Plaintiffs' forced labor claims arising

7  from alleged violations of the federal and California TVPA. These claims coincide with

8  Plaintiffs' putative state and nationwide forced labor classes. Third, the Court addresses

9  Plaintiffs' "Dollar-A-Day" claims arising from alleged violations of the California Labor

10  Code. These claims coincide with Plaintiffs' putative California labor law class. Fourth,

11  the Court analyzes Plaintiffs' derivative claims.

12  **I.    Request for Judicial Notice**

13  Plaintiffs request the Court judicially notice two documents. First, Plaintiffs submit

14  an opinion from *Chao Chen v. Geo Group, Inc.*, No. 17-cv-5769-RJB, 2017 WL 6034365

15  (W.D. Wash. Dec. 6, 2017). (First RJN.) Second, Plaintiffs request the Court notice the

16  Tenth Circuit's opinion in *Menocal v. GEO Group, Inc.*, 882 F.3d 905 (10th Cir. 2018).

17  (Second RJN.)

18  Defendant opposes both Plaintiffs' requests because "it is inappropriate to request

19  that the Court take judicial notice of legal authority." (RJN Response 2[1] (quoting *Stiller v.*

20  *Costco Wholesale Corp.*, No. 09-cv-2473-GPC-BGS, 2013 WL 4401371, at *1 (S.D. Cal.

21  Aug. 15, 2013)).) The Court agrees with Defendant. It is well established that that courts

22  may consider legal reasoning and conclusions of other federal courts without resort to Rule

23  201. *See, e.g.*, *Derum v. Saks & Co.*, 95 F. Supp. 3d 1221, 1224 (S.D. Cal. 2015) (citing

24  *McVey v. McVey*, 26 F. Supp. 3d 980, 984–85 (C.D. Cal. 2014)). The opinions attached to

25  Plaintiffs' requests are the legal reasoning and conclusion of other federal courts. While

26  the Court will consider relevant legal authority in arriving at its conclusion, the Court

27

28  [1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

4

1   **DENIES** Plaintiffs' Requests for Judicial Notice, (ECF Nos. 27, 32).

2   **II.    Forced Labor Claims**

3       *A. Federal TVPA (First Cause of Action)*

4       Plaintiffs allege Defendant violated the Federal Trafficking Victims Protection Act,

5   18 U.S.C. § 1589(a).[2]   (Compl. ¶ 41.)   Section 1595 creates a private cause of action for

6   victims of a violation of the TVPA. 18 U.S.C. § 1595(a). Plaintiffs allege they and putative

7   class members were forced to perform labor and services under force, threats, abuse, and

8   other means.  (Compl. ¶ 42.)

9       Defendant raises several challenges to the TVPA claim.  First, Defendant argues that

10  the TVPA does not extend to civil immigration detainees performing routine housekeeping

11  tasks in lawful detention.  (MTD 13.)  Second, Defendant contends that Plaintiffs fail to

12  plead sufficient facts to state a TVPA claim.   (*Id.* at 18.)  Third, Defendant argues that

13  Congress amended the TVPA in 2008; therefore, at least some of Plaintiffs' claims are

14  barred because the relevant portions of TVPA cannot be given retroactive effect.  (*Id.* at

15  20.)  Fourth, Defendant argues that a portion of Plaintiffs' claim are barred by the statute

16  of limitations.  (*Id.*)  The Court addresses each argument in turn.

17      *1. Whether the TVPA Extends to Civil Immigration Detainees*

18      Defendant advances two arguments why the TVPA does not apply to civil

19  immigration detainees.   First, Congress did not intend for the statute to apply to

20

21  _____

22  [2] 18 U.S.C. § 1589(a) provides:
        (a) Whoever knowingly provides or obtains the labor or services of a person
        by any one of, or by any combination of, the following means—

23      (1) by means of force, threats of force, physical restraint, or threats of
        physical restraint to that person or another person;

24      (2) by means of serious harm or threats of serious harm to that person or
        another person;

25      (3) by means of the abuse or threatened abuse of law or legal process; or

26      (4) by means of any scheme, plan, or pattern intended to cause the person
        to believe that, if that person did not perform such labor or services, that

27      person or another person would suffer serious harm or physical restraint,
        shall be punished as provided under subsection (d).

28

5

1 │ Defendant's conduct.   Second, the Thirteenth Amendment, which provides Congress's

2 │ authority to create the TVPA, has a "civic duty exception" that Defendant contends

3 │ exempts its conduct from the TVPA.

4 │          a. Statutory Interpretation of 18 U.S.C. § 1589

5 │          Defendant argues that Congress's purpose in enacting the TVPA, including section

6 │ 1589, was to "combat trafficking in persons." (*Id.* at 13 (quoting Pub. L. No. 106-386,

7 │ § 102(a), 114 Stat. 1464, 1466 (2000)).)   The congressional findings all focused on the

8 │ evils of trafficking in persons. (*Id.*)   For example, Congress found:

9  │          As the 21st century begins, the degrading institution of slavery
   │          continues throughout the world.   Trafficking in persons is a
10 │          modern form of slavery, and it is the largest manifestation of
   │          slavery today.   At least 700,000 persons annually, primarily
11 │          women and children, are trafficked within or across international
12 │          borders.   Approximately 50,000 women and children are
   │          trafficked into the United States each year.
13 │

14 │ (*Id.* at 14 (emphasis omitted) (quoting § 102(b)(1), 114 Stat. at 1466).)   Defendant goes on

15 │ to cite several similar congressional findings—all focused on "[t]rafficking in persons."

16 │ (*Id.*)   From these findings Defendant concludes that Congress's clear intent was to

17 │ prosecute human traffickers, i.e., those who transport persons "across international

18 │ borders" and force them to work. (*Id.* at 15.)   Because neither the U.S. Immigrations and

19 │ Customs Enforcement ("ICE") nor Defendant transported Plaintiffs from their homes or

20 │ across national borders, then Defendant is beyond Congress's intended purpose. (*Id.*)

21 │ Finally, Defendant cites several cases for the proposition that where literal application of a

22 │ criminal statute would lead to "extreme or absurd results" then the class of persons subject

23 │ to the criminal statute should be limited. (*Id.* (citing, e.g., *United States v. Katz*, 271 U.S.

24 │ 354, 362 (1926)).)   From that rule, Defendant contends that applying a forced labor statute

25 │ to lawfully-detained civil immigration detainees would be both extreme and absurd.

26 │          Plaintiffs respond that the plain text of the TVPA, including section 1589, proscribes

27 │ any kind of forced labor even if that labor does not rise to the level of involuntary servitude

28 │ as defined prior to enactment of the TVPA. (Opp'n 16 (citing *Nunag–Tanedo v. E. Baton*

6

1   *Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1144–46 (C.D. Cal. 2011); and *Menocal v.*

2   *GEO Grp., Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015)).) According to Plaintiffs, the plain

3   meaning of the TVPA is broad enough to encompass their claims. Plaintiffs also argue that

4   the Complaint does not allege any "trafficking" violations under the TVPA, but rather bring

5   violations of the "forced labor" provision of TVPA, § 1589. (*Id.* at 19.)

6       In reply, Defendant again reiterates its argument that a court must look beyond the

7   plain language of a statute if a literal application would lead to "extreme of absurd results,"

8   (Reply 6–7 (quoting *Katz*, 271 U.S. at 362)), or if "internal evidence of the statute" suggests

9   a "departure from a literal reading" to "effect the legislative purpose," (*id.* at 7 (quoting

10   *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 803–04 (9th Cir. 1989))).

11   Defendant also argues *Nunag-Tanedo* is factually distinguishable. (*See id.*)

12       Defendant argues its conduct does not fall under § 1589. This requires the Court to

13   undertake statutory construction. "The plain language of a statute is the starting point for

14   its interpretation." *Wilshire Westwood Assocs.*, 881 F.2d at 803 (citing *Am. Tobacco Co.*

15   *v. Patterson*, 456 U.S. 63, 68 (1982)). A court's "first step in interpreting a statute is to

16   determine whether the language at issue has a plain and unambiguous meaning with regard

17   to the particular dispute in the case. Our inquiry must cease if the statutory language is

18   unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson v. Shell Oil*

19   *Co.*, 519 U.S. 337, 340 (1997) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S.

20   235, 240 (1989)). "The plainness or ambiguity of statutory language is determined by

21   reference to the language itself, the specific context in which that language is used, and the

22   broader context of the statute as a whole." *Id.* (citing *Estate of Cowart v. Nicklos Drilling*

23   *Co.*, 505 U.S. 469, 477 (1992); and *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991)).

24       18 U.S.C. § 1589 provides:

25           (a) Whoever knowingly provides or obtains the labor or
26       services of a person by any one of, or by any combination of, the
        following means—
27           (1) by means of force, threats of force, physical restraint,
        or threats of physical restraint to that person or another person;
28

1
2
3
4
5
6
7

> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d).

8  The statute's express terms do not limit who constitutes a victim of forced labor. Section

9  1589 applies to any "person"—there is no limitation on the type or status of said person.

10 Similarly, the target of the statute is broad: section 1589 criminalizes "[w]hoever

11 knowingly provides or obtains the labor or services." Nor does the statute contain any

12 language limiting application to those who traffic in persons or transport persons across

13 national borders.

14      Had Congress intended to limit § 1589 to trafficking or transnational crime it could

15 have done so; indeed, other sections of the TVPA contain the limiting language Defendant

16 urges the Court read into § 1589. For example, section 1591 prohibits "[s]ex *trafficking* of

17 children or by force, fraud, or coercion" and has an explicit interstate or foreign commerce

18 requirement. 18 U.S.C. § 1591 (emphasis added). Section 1584 criminalizes "[w]hoever

19 knowingly and willfully holds to involuntary servitude . . . any other person for any term,

20 or *brings within the United States* any person so held." 18 U.S.C. § 1584(a) (emphasis

21 added). The lack of similar language in section 1589 reinforces the conclusion that there

22 is no limitation on who constitutes a "person" for purposes of section 1589.

23      Defendant urges the Court to read Congress's purpose, purportedly evident from

24 TVPA's congressional findings, into the statute. (*See* MTD 13–15.) Yet, courts "have

25 long held that there is a strong presumption that the plain language of [a] statute expresses

26 congressional intent, rebutted only in rare and exceptional circumstances, when a contrary

27 legislative intent is clearly expressed." *Campbell v. Allied Van Lines Inc.*, 410 F.3d 618,

28 622 (9th Cir. 2005) (alteration in original) (quoting *United States v. Tobeler*, 311 F.3d

8

1  1201, 1203 (9th Cir. 2002)). "The preeminent canon of statutory interpretation requires us

2  to 'presume that [the] legislature says in a statute what it means and means in a statute what

3  it says there.'" *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (alteration in

4  original) (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).   If the

5  statutory text is unambiguous, the inquiry ends there. *See id.*

6  Here, Defendant's arguments do not illustrate ambiguity in the language or

7  exceptional circumstances to depart from the plain language of the statute.   The Sixth

8  Circuit addressed an argument similar to Defendant's in *United States v. Callahan*, 801

9  F.3d 606 (6th Cir. 2015).  There, two defendants were convicted for violating section 1589

10  when they forced a developmentally-disabled young woman and her minor daughter "to

11  clean the apartment, do yardwork, care for [the defendants'] dogs, and run various errands

12  for [the defendants]." *Id.* at 613.  The court went on to detail more than two years of

13  inhumane conduct—none of which involved transporting people across borders or

14  trafficking in persons. *See id.* at 613–16.  The defendants were convicted at trial and

15  appealed.

16  Like Defendant here, the *Callahan* defendants argued that the TVPA's legislative

17  history was passed to combat international trafficking in human beings and Congress did

18  not intend to criminalize their conduct. *Id.* at 617.  The *Callahan* court reasoned that the

19  plain language of the statute was not limited to immigrant victims or sex workers.   The

20  court determined that reference to legislative history was unnecessary when the

21  legislature's intent was obvious from the statute's unambiguous language. *Id.* at 617–18

22  (citations omitted).  The court was also unpersuaded by an argument that § 1589 was meant

23  to target those who exploit foreign-born victims because, again, the language of the statue

24  did not include such a restriction. *Id.* at 618.  Accordingly, the court held that § 1589

25  proscribed the defendants' conduct. *Id.* at 620.

26  The Court finds the *Callahan* court's reasoning and conclusion persuasive.  There is

27  no ambiguity in section 1589 and the Court will not read congressional findings into the

28  statute.  The next issue is whether the Court should deviate from the plain meaning of the

9

1    statute when literal application of the criminal statute would lead to "extreme or absurd
2    results." *Katz*, 271 U.S. at 362. Defendant argues that interpreting the phrase "labor or
3    services of a person" to include lawfully-detained civil immigration detainees required to
4    clean up after themselves is both extreme and absurd. Defendant does not explain its
5    reasoning beyond its assertion that it would be absurd to criminalize Defendant's
6    requirement for lawfully-detained immigration detainees to clean up.[3]

7         Perhaps Defendant thinks it absurd to criminalize its alleged conduct because the
8    federal government contracts with Defendant to house civil immigration detainees, i.e.,
9    Plaintiffs and other putative class members were lawfully detained. Yet, this Court and
10   courts across this nation routinely hear cases involving violations of constitutional rights
11   of incarcerated prisoners at the state and federal level. These prisoners were lawfully
12   imprisoned. Lawful detention, by itself, is not a shield against illegal conduct against those
13   held in detention.

14        Alternatively, Defendant might argue that the "labor or services" it requires of
15   detainees is miniscule—detainees are only required to clean up their personal and
16   communal areas. Logically, this is a question of degree. If detainees are only forced to

---

[3] Defendant's concern for an "absurd and extreme" application is tempered by two considerations. First,
section 1589 only reaches labor or service achieved through force, "serious harm," abuse of legal process,
or a scheme intended to cause a person to believe that serious harm would befall that person. *See*
§ 1589(a)(1)–(4). The term "serious harm" is defined broadly. *See* § 1589(c)(2). As the Ninth Circuit
has summarized:

> [S]omeone is guilty of forced labor if he intends to cause a person in his
> employ to believe that if she does not continue to work, she will suffer the
> type of serious harm—physical or nonphysical, including psychological,
> financial, reputation harm—that would compel someone in her
> circumstances to continue working to avoid that harm.

*United States v. Dann*, 652 F.3d 1160, 1169–70 (9th Cir. 2011). Second, section 1589's scope is narrowed
further still by the requirement of scienter. *Id.* at 1170 (citing *United States v. Calimlim*, 538 F.3d 706,
712, 714 (7th Cir. 2008)). "The jury must find that the employer intended to cause the victim to believe
that she would suffer serious harm—from the vantage point of the victim—if she did not continue to
work." *Id.* These two limitations mitigate, at a high level of generality, the concern against "absurd or
extreme" application of this criminal statute.

1    make their beds then such conduct likely does not rise to criminal forced labor.  Indeed,

2    ICE has published standards requiring civil immigration detainees to make their beds,

3    amongst  other  personal  housekeeping  tasks.    *See*  U.S.  Immigration  &  Customs

4    Enforcement, Performance-Based National Detention Standards 2011, § 5.8, at 406 (2016

5    ed.),    https://www.ice.gov/doclib/detention-standards/2011/5-8.pdf    (hereinafter    "ICE

6    PBNDS").[4]  Conversely, one could imagine forced labor to such an extent and degree as to

7    go well beyond cleaning personal and communal areas.   In fact, Plaintiffs allege that

8    Defendant forced them to "clean, maintain, scrub, sweep, and mop floors, bathrooms,

9    showers, toilets, and windows for no pay at all, not only in their living areas ('pods'), but

10    also throughout the other interior and exterior areas of CoreCivic's detention facilities."

11    (Compl. ¶ 16.)  The preceding comparison illustrates that Plaintiffs' claims require a fact-

12    intensive inquiry.   The Court raises this hypothetical only to illustrate the following

13    conclusion: the Court only finds that applying § 1589 to Defendant's alleged conduct does

14    not lead to *per se* "extreme or absurd" consequences that would warrant deviation from

15    § 1589's plain meaning.

16         b.  Civic Duty Exception

17         Defendant advances a second argument why the TVPA does not apply to its conduct:

18    Defendant may avail itself of the Thirteenth Amendment's civic duty exception. (*See* MTD

19    15–18.)  Defendant begins with *United States v. Kozminski*, 487 U.S. 931 (1988), where

20    the Supreme Court examined the phrase "involuntary servitude," found in 18 U.S.C.

21    § 1584.  As Defendant explains, *Kozminski* determined that Congress intended § 1584 to

22    carry the same meaning as the Thirteenth Amendment's prohibition against "involuntary

23    servitude."  (*Id.* at 16 (citing *Kozminski*, 487 U.S. at 944–45).)  The Supreme Court also

---

[4] A court may take judicial notice of publicly available government documents, including those posted on
government web sites. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033–34 (C.D.
Cal. 2015) (citing, e.g., *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010); and *Hansen
Beverage Co. v. Innovation Ventures, LLC*, No. 08–CV–1166–IEG, 2009 WL 6597891, at *1 (S.D. Cal.
Dec. 23, 2009)).

11

1   recognized a long-standing "civic duty" exception to the Thirteenth Amendment's

2   prohibition on involuntary servitude whereby state or federal governments could compel

3   their citizens, by threat of criminal sanction, to perform certain civic duties. (*Id.* (citing

4   *Kozminski*, 487 U.S. at 943–44).)  Thus, Defendant argues that § 1589, which Congress

5   enacted after *Kozminski*, incorporates the civic duty exception and the exception is

6   available to Defendant. (*Id.* at 17 (citing *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32

7   (1990); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85 (1988)).)

8          Defendant then cites *Channer v. Hall*, 112 F.3d 214, 215 (5th Cir. 1997), where the

9   Fifth Circuit applied the civic duty exception to an immigration detainee.  There, an

10  immigration detainee was compelled to work in the Food Services Department and

11  "intimidated and threatened with solitary confinement if he failed to work." (MTD 16

12  (quoting *Channer*, 112 F.3d at 218).)  The *Channer* court held that the detainee was not

13  subjected to "involuntary servitude" because the civic duty exception applied and "the

14  federal government [was] entitled to require a communal contribution by an INS detainee

15  in the form of housekeeping tasks." (*Id.* (quoting *Channer*, 112 F.3d at 218–19).)

16  Defendant urges the Court to adopt the civic duty exception to Plaintiffs' situation, which

17  appears to be factually similar to *Channer*.

18          Congress amended the TVPA post-*Kozminski*, but Defendant argues that the

19  amendment did not alter the civic duty exception's applicability to TVPA. (*See id.* at 17.)

20  Defendant cites several decisions from after the TVPA amendment where federal courts

21  applied the civic duty exception to deny claims brought by immigration detainees. (*Id.* at

22  17–18 (citing, e.g., *Owuor v. Courville*, No. 11-CV-926, 2013 WL 7877306, at *4 (W.D.

23  La. Aug. 7, 2013)).)  Defendant would have the Court find that *Channer*'s logic controls

24  and the civic duty exception applies to Defendant's conduct.

25          Finally, Defendant cites 28 C.F.R. § 545.23, which permits the federal Bureau of

26  Prisons to require pretrial inmates to perform "housekeeping tasks in the inmate's own cell

27  and in the community living area." (*Id.* at 18.)  Defendant cites cases from the Fourth,

28  Seventh, and Eighth Circuits where courts denied claims from pretrial detainees required

Case 3:17-cv-01112-JLS-NLS   Document 38   Filed 05/14/18   PageID.363   Page 13 of 51

1    to perform "general housekeeping responsibilities" without pay.  (*Id.* at 16–17 (quoting

2    *Bijeol v. Nelson*, 579 F.2d 423, 424–25 (7th Cir. 1978) (per curiam); and citing *Hause v.*

3    *Vaught*, 993 F.2d 1079, 1085 4th Cir. 1993); and *Martinez v. Turner*, 977 F.2d 421, 423

4    (8th Cir. 1992)).)  Defendant argues that construing 18 U.S.C. § 1589 to criminalize

5    housekeeping tasks required by Defendant would also criminalize the same types of

6    housekeeping tasks required of pretrial detainees and authorized by federal regulation.

7    (*Id.*)

8         Plaintiffs respond that there is no civic duty exception for section 1589.  (Opp'n 19.)

9    Plaintiffs argue that Defendant has not cited any authority for reading a civic duty

10   exception into the TVPA or applying the exception to a private, for-profit venture.  (*Id.*)

11   Plaintiffs distinguish Defendant's cited cases as all involving *Bivens* claims for violation

12   of the Thirteenth Amendment in federal government-run detention facilities.  (*Id.*)

13        The Court begins with the basic proposition that the Thirteenth Amendment does

14   not prohibit compelled labor in all situations.  There are generally three exceptions to

15   involuntary servitude.  First, by its own terms, the Amendment excludes involuntary

16   servitude imposed as legal punishment for a crime.  *See* U.S. Const. amend. XIII.  Second,

17   the Supreme Court has recognized that the prohibition against involuntary servitude "does

18   not prevent the State or Federal Governments from compelling their citizens, by threat of

19   criminal sanction, to perform certain civic duties."  *Kozminski*, 487 U.S. at 943–44.  Third,

20   the Thirteenth Amendment does not apply to "exceptional" cases that were well-

21   established in the common law when the Amendment was passed.  *See id.* at 944 (citing

22   *Robertson v. Baldwin*, 165 U.S. 275, 282, 288 (1897)) (explaining the Amendment does

23   not reach the right of parents to custody of minor children or laws preventing sailors from

24   deserting their ships).  Defendant only raises the civic duty exception; thus, the Court's

25   first task is to determine whether the exception applies to the TVPA in its entirety or only

26   where TVPA refers to "involuntary servitude."  The issue before the *Kozminski* court was

27   the interpretation of the term "involuntary servitude," found in 18 U.S.C. § 1584, which

28   the Supreme Court determined to be co-extensive with the scope of the "involuntary

1   servitude" found in the Thirteenth Amendment. *Kozminski*, 487 U.S. at 948. Section 1589

2   does not contain the term "involuntary servitude" and it is conceivable that the civic duty

3   exception might not apply to section 1589. Indeed, Plaintiffs contend that there is no

4   authority to read a civic duty exception into the TVPA. (Opp'n 19.)

5        Congress has broad power to determine "what are the badges and the incidents of

6   slavery, and the authority to translate that determination into effective legislation." *Griffin*

7   *v. Breckenridge*, 403 U.S. 88, 105 (1971) (quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S.

8   409, 440 (1968)). Congress enacted the TVPA pursuant to its power to enforce the

9   Thirteenth Amendment. *See Kozminski*, 487 U.S. at 934. Defendant has not cited any

10  explicit authority applying the civic duty exception to 18 U.S.C. § 1589. The Sixth Circuit

11  has examined whether the "exceptional" case exception to the Thirteenth Amendment

12  applied to § 1589. *See United States v. Toviave*, 761 F.3d 623, 626 (6th Cir. 2014). There,

13  the federal government attempted to prosecute parents for child abuse under section 1589.

14  *Id.* at 623–24. The Sixth Circuit reasoned that the Thirteenth Amendment's exceptional

15  case exception applied to a parent's control over a child's work and concluded that section

16  1589 could not criminalize a parent's control over a child. *Id.* at 626 (quoting *Kozminski*,

17  487 U.S. at 944). If the *Toviave* court applied the exceptional case exception to section

18  1589 then it is logical to apply the civic duty exception to section 1589. The Court reads

19  the civic duty exception as deriving from the Thirteenth Amendment, regardless of whether

20  Congress uses the phrase "involuntary servitude." Thus, the Court accepts Defendant's

21  premise that the civic duty exception applies to section 1589.

22        Even so, Plaintiffs raise an important issue bound up in the civic duty analysis: may

23  a private entity avail itself of the civic duty exception to alleged involuntary servitude. (*See*

24  Opp'n 19.) Indeed, *Kozminski* summarized the civic duty exception as permitting "the

25  *State or Federal Governments* from compelling their citizens, by threat of criminal

26

27

28

14

Case 3:17-cv-01112-JLS-NLS   Document 38   Filed 05/14/18   PageID.365   Page 15 of 51

1    sanction, to perform certain civic duties."[5]   487 U.S. at 943–44 (emphasis added).   Here,

2    Defendant is not the government; it is a private, for-profit corporation.   In *Menocal v. GEO*

3    *Group, Inc.*, 113 F. Supp. 3d at 1128, the district court encountered a nearly identical

4    factual scenario and putative class action as the case presently before this Court.   There,

5    the plaintiffs were current and former civil immigration detainees held at a private, for-

6    profit immigration detention facility.   Like here, the plaintiffs also alleged that they were

7    forced to clean the facility's pods without compensation under the threat of solitary

8    confinement.   *Id.*   The plaintiffs brought claims under 18 U.S.C. § 1589 and, like here, the

9    defendants argued that the civic duty exception applied to bar the plaintiffs' claims.   *See*

10   *id.* at 1132.   The *Menocal* court found that "Defendants have cited no authority for reading

11   a civic duty exception into § 1589, or for applying such an exception to a private, for-profit

12   corporation under contract with the government."   *Id.* at 1133.

13          Defendant argues that the *Menocal* court's holding is flawed and urges this Court to

14   apply the civic duty exception because Defendant is a "federal actor."   (Reply 9–10.)

15   Defendant cites several cases in support of its proposition.[6]   In *Doe v. United States*, 831

16

17
     _____

     [5] Defendant's cited authority all involve incidents of purported involuntary servitude at *government*-run
18   facilities.   *See Channer*, 112 F.3d at 215 (stating that the plaintiff was incarcerated at the Federal
     Correctional Institution at Oakdale, Louisiana); *see also Mendez v. Haugen*, No. CV 14-4792 ADM/BRT,
19   2015 WL 5718967, at *1 (D. Minn. Sept. 29, 2015), *aff'd* (8th Cir. Feb. 22, 2016) (plaintiff housed in
     Federal Medical Center in Rochester, Minnesota); *Owour v. Courville*, No. 11-cv-926, 2013 WL 7877306,
20   at *1 (W.D. La. Aug. 7, 2013) (plaintiff housed at Federal Detention Center in Oakdale, Louisiana);
     *Hutchinson v. Reese*, No. 07CV181-DCB-MTP, 2008 WL 4857449, at *1 (S.D. Miss. Nov. 7, 2008)
21   (plaintiff housed in the Federal Correctional Complex in Yazoo City, Mississippi).
     [6] *Doe v. United States* is the representative of Defendant's other cited precedent.   Corrections Corporation
22   of America, which was CoreCivic's former corporate name, has routinely been deemed a "state actor" for
     purposes of civil rights complaints.   In *Johnson v. Corrections Corp. of America*, No. 14cv41 LAB
23   (WVG), 2014 WL 2919300, at *2–3 (S.D. Cal. June 26, 2014), the district court construed a *pro se*
     plaintiff's claim against CCA as a *Bivens* claim and dismissed the claim because it did not allege violations
24   by an individual.   *Guzman-Martinez v. Corrections Corp. of America*, No. CV-11-2390-PHX-NVW, 2012
     WL 5907081, at *9–11 (D. Ariz. Nov. 26, 2012), arrived at the same conclusion as *Doe*; the court
25   determined CCA to be acting under color of state law.   *Murray v. Corr. Corp. of America*, No. CV 11-
     2210-PHX-RCB, 2012 WL 2798759, at *1 (D. Ariz. July 9, 2012), likewise determined that CCA was a
26   state actor.   *See Chuwang v. Corr. Corp. of Am.*, No. CIV.A. L-86-55, 1987 WL 13814, at *1 (S.D. Tex.
     May 29, 1987) (concluding CCA was federal actor); *see also United States v. Thomas*, 240 F.3d 445, 448
27   (5th Cir. 2001) (determining guard at CCA was a "public official").

28

17-CV-1112 JLS (NLS)

1   F.3d 309, 314 (5th Cir. 2016), the Fifth Circuit was confronted with a 42 U.S.C. § 1983

2   claim against the Corrections Corporation of America ("CCA"), which was Defendant

3   CoreCivic's corporate predecessor.   Section 1983 only reaches conduct of persons

4   operating under color of law, but the court applied a "public function" test to determine

5   whether a private contractor's actions were "fairly attributable to the State." *Id.* at 314

6   (quoting *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005)).   The public

7   function test required the court to determine the "specific conduct of which the plaintiff

8   complains." *Id.* at 316 (citing *Cornish*, 402 F.3d at 550)).   The specific conduct at issue in

9   *Doe* was "detaining aliens pending a determination of their immigration status pursuant to

10  ICE specifications." *Id.*   The court held that this conduct was a federal function and that

11  CCA was exempt from § 1983 because it were performing a federal function. *Id.*

12      *Doe v. United States* is exemplary of cases determining whether private conduct is

13  deemed to be fairly attributable to the State and, thus, state action. The Supreme Court has

14  repeatedly held that private actors can be held liable for violations of individual federal

15  rights if the private actions "caus[e] the deprivation of a federal right . . . fairly attributable

16  to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982).   "As a matter of

17  substantive constitutional law the state-action requirement reflects judicial recognition of

18  the fact that 'most rights secured by the Constitution are protected only against

19  infringement by governments.'" *Id.* (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149,

20  156 (1978)).   Thus, the state action requirement, which Defendant relies on, derives from

21  the Constitution's guarantee, applied through the Fourteenth Amendment, that a person's

22  civil rights will not be impaired by the state. *See Jackson v. Metro. Edison Co.*, 419 U.S.

23  345, 349 (1974) ("In 1883, this Court in the *Civil Rights Cases*, 109 U.S. 3 (1883), affirmed

24  the essential dichotomy set forth in that Amendment between deprivation by the State,

25

26  _____

27      *Agyeman v. Corrections Corp. of America*, 390 F.3d 1101 (9th Cir. 2004), held that a plaintiff
    could not sustain a *Bivens* claim against CCA because the Supreme Court previously held that private

28  corporations were not subject to *Bivens* claims. *Id.* at 1103 (citing *Corr. Sevs. Corp. v. Malesko*, 534 U.S.
    61 (2001)).

1  subject to scrutiny under its provisions, and private conduct, 'however discriminatory or
2  wrongful,' against which the Fourteenth Amendment offers no shield." (citing *Shelley v.*
3  *Kraemer*, 335 U.S. 1 (1948))).

4      The Court distinguishes the Fourteenth Amendment's guarantee of individual civil
5  rights against state action from the federal and state governments' power to criminalize
6  conduct.  The Fourteenth and Fifth Amendments restrict government action.  *See* U.S.
7  Const. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due
8  process of law . . . .:), amend. XIV ("No state shall make or enforce any law which shall
9  abridge the privileges or immunities of citizens of the United States; nor shall any state
10  deprive any person of life, liberty, or property, without due process of law; nor deny to any
11  person within its jurisdiction the equal protection of the laws.").  Conversely, Article I,
12  section 8 of the U.S. Constitution and State constitutions give rise to affirmative powers.

13      The Constitution creates a federal government of enumerated powers.  *See* U.S.
14  Const. art. I, § 8; *United States v. Lopez*, 514 U.S. 549, 552 (1995).  The Necessary and
15  Proper Clause, U.S. Const. art. I, § 8, cl. 18, grants Congress broad power to enact federal
16  legislation, *United States v. Comstock*, 560 U.S. 126, 133 (2010) (citing *McCulloch v.*
17  *Maryland*, 4 Wheat. 316, 405 (1819)).  Thus, even though the Constitution does not
18  explicitly authorize federal crimes, the Necessary and Proper Clause allows Congress to
19  criminalize conduct in furtherance of its enumerated powers.  *See Comstock*, 560 U.S. at
20  136. Moreover, the Clause permits Congress to establish a prison system and ensure that
21  system's "safe and responsible administration."  *Id.* at 136–37.  Likewise, the state
22  governments, as part of their general police powers, routinely criminalize conduct.  *See*
23  *Torres v. Lynch*, 136 S. Ct. 1619, 1625 (2016) ("State legislatures, exercising their plenary
24  police powers, are not limited to Congress's enumerated powers; and so States have no
25  reason to tie their substantive offenses to those grants of authority." (citing *United States*
26  *v. Lopez*, 514 U.S. 549, 567 (1995))).  Thus, both state and federal governments derive
27  their power to criminalize conduct from specific grants of authority.

28

17-CV-1112 JLS (NLS)

1    The remaining question is whether the civic duty exception falls within the
2    restrictions placed on governments by the Fourteenth and Fifth Amendments or is a power
3    granted to the federal or state governments by their respective constitutions. *Kozminski*
4    characterized the civic duty exception as, "the prohibition against involuntary servitude
5    does not prevent the State or Federal from compelling their citizens, by threat of criminal
6    sanction, to perform certain civic duties." *See* 487 U.S. at 943–44. *Kozminski* cited several
7    examples where the Supreme Court recognized the government's ability to compel certain
8    labor with the threat of criminal sanction. Thus, in *Arver v. United States*, 245 U.S. 366,
9    388 (1918), the Supreme Court held a selective military draft law to be constitutional
10   pursuant to Congress's power to regulate the national militia, *see* U.S. Const. art. 1, § 8, cl.
11   15. Or, in *Butler v. Perry*, 240 U.S. 328, 332–33 (1916), the Supreme Court upheld a
12   Florida law requiring citizens to participate in the building and maintenance of public roads
13   because the states possessed the right to require citizens to participate in certain
14   construction at the time the States ratified the Thirteenth Amendment. Thus, the Thirteenth
15   Amendment's civic duty exception derives from the *government's* constitutional authority
16   to criminalize conduct, pursuant to either the federal government's enumerated powers or
17   the state government's police powers.

18   The foregoing principles distill into the following. First, the state actor inquiry is
19   necessary to determine whether a private person's conduct can be attributed to the
20   government. *See Lugar*, 457 U.S. at 936. When private conduct may be attributed to the
21   state, then that private conduct must adhere to the constitutional limitations placed on state
22   action by the Fourteenth Amendment. *See Evans v. Newton*, 382 U.S. 296, 299 (1966)
23   ("Conduct that is formally 'private' may become so entwined with governmental policies
24   or so impregnated with a governmental character as to become subject to the constitutional
25   limitations placed upon state action."). Second, the power to criminalize conduct and the
26   resulting exceptions to the Thirteenth Amendment are distinct from the limitations placed
27   on government. Instead, such power is an affirmative grant of authority from either the
28   United States or State constitutions. *See* U.S. Const. art. I, § 8, cl. 1 ("The Congress shall

1    have power . . . ."). Defendant's only argument supporting its civic duty theory is that it is

2    a "federal actor." The cases supporting Defendant's argument confirm that CoreCivic

3    (previously Corrections Corporation of America) has been delegated a public function to

4    such an extent that its conduct must adhere to constitutional limitations. It does not follow

5    that the same finding would also mean Congress or the state legislatures delegated to

6    Defendant their power to criminalize conduct. Thus, Defendant cannot lay claim to the

7    civic duty exception—Defendant is a private entity, not a government.

8        Finally, Defendant argues that it would not be logical to allow pretrial inmates to

9    perform housekeeping tasks while criminalizing Defendant's same conduct under § 1589.

10    (*See* MTD 18.) 28 C.F.R. § 545.23(b) exempts pretrial inmates committed to the Federal

11    Bureau of Prisons from forced labor "other than housekeeping tasks in the inmate's own

12    cell." The Court agrees with Defendant that criminalizing housekeeping tasks in one

13    instance (civil immigration detention) and permitting it in another (pretrial detention)

14    would not be a logical reading of § 1589. ICE's operations manual, like the Code of

15    Federal Regulations, also requires Plaintiffs to perform personal housekeeping. *See* ICE

16    PBNDS, at 406. However, Plaintiffs' Complaint contains factual allegations, which the

17    Court must accept as true, that go beyond the personal housekeeping tasks listed in the ICE

18    manual. (*See* Comp. ¶ 16 (cleaning floors, bathrooms, and windows not only in Plaintiffs'

19    living areas ("pods") but also throughout the other interior and exterior areas of

20    CoreCivic's detention facilities).)

21        In sum, the Court finds that no reason proffered by Defendant removes its alleged

22    conduct from 18 U.S.C. § 1589's plain meaning.

23      *2. Whether Plaintiffs Allege Sufficient Facts to State a Claim*

24        Defendant next argues that Plaintiffs' Complaint fails to allege sufficient facts to

25    state a claim under TVPA. Defendant contends that Plaintiffs do not provide any factual

26    details as to Defendant's purported force or coercion that compelled Plaintiffs and other

27    detainees to clean their living and community areas. (MTD 19.) Thus, Plaintiffs do not

28    identify who threatened them, how they were threatened, or when they were threatened.

1    (*Id.* (citing Compl. ¶¶ 13, 16, 27, 29).)  Nor do Plaintiffs connect any purported threat to

2    any specific demand to work or identify what they were forced to do or when they were

3    forced to do it.  (*Id.* (citing *Roman v. Tyco Simplex Grinnell*, 16-CV-3449-T-33AEP, 2017

4    WL 2427251, at *5 (M.D. Fla. June 5, 2017)).)

5          Plaintiffs argue that they allege sufficient facts to state a claim for relief by alleging

6    the who, what, when, where, and how of the labor and services the detainees were forced

7    to provide.  (Opp'n 15 (citing Compl. ¶¶ 10–11, 13–16, 27–29).)

8          The Court begins its analysis with the statute; Plaintiffs allege Defendant violated

9    18 U.S.C. § 1859(a).  The first clause of the statute applies to "[w]hoever knowingly

10   provides or obtains the labor or services of a person."  18 U.S.C. § 1589(a).  The term

11   "whoever" is broad and does not limit the potential class of persons that fall under section

12   1589.  Here, Plaintiffs allege that Defendant owns and operates the Otay Mesa Detention

13   Center.  (Compl. ¶ 11.)  The term "labor or services" is not defined by the statute and,

14   therefore, the Court uses the ordinary meaning.  *United States v. Marcus*, 628 F.3d 36, 44

15   (2d Cir. 2010) (citing *Smith v. United States*, 508 U.S. 223, 228 (1993); *Harris v. Sullivan*,

16   968 F.2d 263, 265 (2d Cir. 1992)).  "Webster's Third New International Dictionary (1993)

17   defines 'labor' as 'expenditure of physical or mental effort esp. when fatiguing, difficult,

18   or compulsory;' and 'service' is defined as 'the performance of work commanded or paid

19   for by another.'"  *Callahan*, 801 F.3d at 620.  Plaintiffs allege that they and other detainees

20   cleaned, maintained, scrubbed, swept, and mopped floors, bathrooms, showers, toilets, and

21   windows.  (Compl. ¶ 16.)  These activities are clearly within the definition of labor or

22   service.   The term "person" is not limited by the statute and applies to any persons, i.e.

23   victims of forced labor, subject to the conditions dictated by the statute. *See Callahan*, 801

24   F.3d at 617.  Here, Plaintiffs allege that they were civil detainees at the Otay Mesa Facility

25   and that they were engaged to work by Defendant.  (Compl. ¶ 14.)

26          Section 1589(a) then requires the foregoing labor or services to be obtained through

27   one of four means.  Plaintiffs allege three means used by Defendant: (a) force, threats of

28   force, physical restraint, and threats of physical restraint; (b) serious harm and threats of

1    serious harm; and (c) abuse and threatened abuse of law and legal process. (*Id.* ¶ 42.) It is

2    here that Defendant brings to bear its primary argument: Plaintiffs did not allege the means

3    with any factual particularity. Plaintiffs' Complaint alleges the following:

> 4    Defendant forced and coerced Plaintiffs . . . by threatening to
> 5    punish not only those who refused to work, but also other
>      detainees in the pods with confinement, physical restraint,
> 6    substantial and sustained restriction, deprivation, and violation
>      of their liberty, and solitary confinement, all with the intent to
> 7    obtain forced labor or services and as punishment for any refusal
> 8    to work causing Plaintiffs severe mental pain and suffering.

9    (*Id.* ¶ 16.) Taking the factual allegations as true, the Complaint reveals that Defendant had

10   a policy of forcing detainees to perform labor or services and if the detainees refused then

11   they or other detainees would be placed in solitary confinement.

12        The remaining question is whether allegations of solitary confinement within a

13   detention facility are sufficient to state a claim under TVPA. Plaintiffs argue that solitary

14   confinement has long been recognized as an additional punishment above and beyond day-

15   to-day incarceration. (Opp'n 21 (citing, e.g., *In re Medley*, 134 U.S. 160 (1890)).) The

16   Court finds this authority persuasive. It has long been recognized that "solitary

17   confinement bears 'a further terror and peculiar mark of infamy.'" *Davis v. Ayala*, 135 S.

18   Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (quoting *Medley*, 134 U.S. at 170). At the

19   very least, solitary confinement constitutes serious harm, which Congress defined to

20   include psychological harm. 18 U.S.C. § 1589(c)(2). Here, solitary confinement, or the

21   threat of solitary confinement, sufficiently alleges the means to achieve forced labor.

22        The case Defendant cites, *Roman v. Tyco Simplex Grinnell*, is distinguishable.

23   There, a pro se plaintiff alleged the following: "While working for Tyco Simplex Grinnell,

24   I was harassed, eggs, mucus, Grease or tar thrown on company van. Placed in unfair and

25   unsafe work Conditions. Causing me high blood pressure. All because an oral Contract

26   was breached. I seek 7 million dollars in compensation and punitive damages For the

27   wrong done to me." *Roman*, 2017 WL 2427251, at *1. Based on those limited factual

28   allegations, the district court dismissed a § 1859 claim, asking "The count does state

1   Roman was "harassed" and "threatened" but does not clarify who threatened him, how he

2   was threatened, and for what purpose. Was Roman threatened because he refused to work

3   or because he complained about the alleged breach of oral contract? Was he threatened

4   with violence, with being fired, or with something else?" *Id.* at *5. Here, Plaintiffs allege

5   a specific punishment (solitary confinement) carried out or threatened to be carried out as

6   a direct consequence for refusing to perform labor. The conduct occurred while Plaintiffs

7   were under the exclusive control of Defendant. Such allegations are sufficient here.

8        In sum, the Court finds that Plaintiffs have sufficiently stated a claim for a TVPA

9   violation.

10      *3. Whether the 2008 TVPA Amendments Apply Retroactively*

11       Defendant argues that Plaintiffs do not have a private cause of action prior to

12   Congress's 2008 TVPA amendments. (MTD 20.) Congress amended the TVPA to extend

13   the civil remedy provision, 18 U.S.C. § 1595, to allow victims to recover against "whoever

14   knowingly benefits, financially or by receiving anything of value from participation in a

15   venture which that person knew or should have known has engaged in an act in violation

16   of [the TVPA]." (*Id.* (quoting Pub. L. No. 110-457, § 221, 122 Stat. 5044, 5067 (2008)).)

17   Defendant contends that Congress did not give the amendment retroactive effect and,

18   therefore, any liability under the "financial benefit" prong of § 1595 can only attach to

19   conduct after December 23, 2008—the effective date of the amendment. (*Id.* (citing *Griffin*

20   *v. Alamo*, 14-CV-4065, 2016 WL 7391046, at *3 (W.D. Ark. Dec. 21, 2016)).) Defendant

21   concludes that Plaintiffs only bring a TVPA claim under the "financial benefit" prong and

22   therefore Plaintiffs claims before December 23, 2008 must fail.

23       Plaintiffs respond that at the time Congress enacted the 2008 amendments their

24   TVPA claims were unexpired under the four-year statute of limitations. (Opp'n 24.) As

25   part of the 2008 amendments, Congress replaced the four-year limitations period and

26   enacted a ten-year statute of limitations. 122 Stat. at 5067. Plaintiffs argue that the

27   applicable rule should be that unexpired claims at the time of enactment do not give rise to

28   an impermissible retroactive effect. (*Id.* (citing, e.g., *Landgaf v. USI Film Products*, 511

1  U.S. 244 (1994); *Stogner v. California*, 539 U.S. 607, 611, 631 (2003)).)  According to

2  Plaintiffs, if their claims were alive under the prior limitations period (four years) then

3  those claims would remain valid through the newly enacted ten-year statute of limitations.

4  (Opp'n 24.)  Plaintiffs also point out that they also bring a claim under 18 U.S.C. § 1593

5  for mandatory restitution, which has no "financial benefit" requirement.  (Opp'n 23 n.7

6  (citing Compl. ¶¶ 1, 12, 18, 44, 50; and subpart d of the Prayer for Relief).)

7  　　　The Fourth Circuit addressed this issue in *Cruz v. Maypa*, 773 F.3d 138 (4th Cir.

8  2014).   There, a plaintiff alleged the defendants violated sections 1589 and 1590 by

9  knowingly obtaining her labor through "means of threats," "holding her in a position of

10  involuntary servitude," and "confiscating her passport." *Id.* at 143.  At the time the alleged

11  violations took place, the TVPA had a four-year statute of limitations. *Id.* at 143–44; *see*

12  *Oluoch v. Orina*, 101 F. Supp. 3d 325, 329 (S.D.N.Y. 2015) ("When first enacted, the

13  TVPRA did not contain a statute of limitations.  Thus, claims brought under the TVPRA

14  were subject to the default four-year statute of limitations applying to civil causes of action

15  created by Congress." (citation omitted) (citing 28 U.S.C. § 1658)).   Then, Congress

16  amended the TVPA to provide a ten-year statute of limitations.  The plaintiff argued, as

17  our Plaintiffs do here, that the ten-year limitations period applied to her TVPA claims. *Id.*

18  at 144. The *Cruz* court applied the *Landgraf* framework to determine whether the amended

19  ten-year statute of limitations applied retroactively. *Landgraf* requires a three-step analysis

20  to determine retroactive application.  First, a court must determine "whether Congress has

21  expressly prescribed the statute's proper reach." *Cruz*, 773 F.3d at 144 (citing *Landgraf*,

22  511 U.S. at 280).  If Congress prescribed the reach, the inquiry ends. *Id.*  If not, a court

23  must decide whether the statute would operate retroactively, "i.e., whether it would impair

24  rights a party possessed when he acted, increase a party's liability for past conduct, or

25  impose new duties with respect to transactions already completed." *Id.* (quoting *Landgraf*,

26  511 U.S. at 280).  "Finally, if the statute does have a retroactive effect, it will not apply

27  'absent clear congressional intent favoring such a result.'" *Id.* (quoting *Landgraf*, 511 U.S.

28  at 280).

1    The *Cruz* court first determined that Congress did not expressly indicate the 2008

2   TVPA's proper temporal scope. *Id.* Then, the court reasoned that applying the new ten-

3   year statute of limitations to unexpired claims would *not* "attach[] new legal consequences

4   to events completed before its enactment." *Id.* at 145 (alteration in original) (quoting

5   *Landgraf*, 511 U.S. at 270). The court explained that, "in the criminal context, there is a

6   consensus that extending a limitations period *before* prosecution is time-barred does not

7   run afoul of the Ex Post Facto Clause of the Constitution." *Id.* (citing, e.g., *United States

8   v. Jeffries*, 405 F.3d 682, 685 (8th Cir. 2005)). Under this reasoning, the *Cruz* court held

9   that applying the ten-year limitations period to claims that were unexpired at the time of its

10   enactment did not give rise to impermissible retroactive effect under *Landgraf*. *Id.*

11    *Cruz* would appear to strongly support Plaintiffs' argument. Like *Cruz*, Plaintiffs

12   argue the statute of limitations had not run prior to the 2008 amendments; therefore, there

13   is no new legal consequence for Defendant. However, the case at bar has a critical

14   distinction. *Cruz* only considered the retroactive application of the TVPA statute of

15   limitations. Here, as Defendant points out, the 2008 amendment also created Plaintiffs'

16   cause of action against Defendant. Plaintiffs' Complaint rests on TVPA's "financial

17   benefit" cause of action to the TVPA. *See* 18 U.S.C. § 1595(a); (Compl. ¶ 43.) Congress

18   created this cause of action as part of the 2008 amendments. 122 Stat. at 5067. Thus, the

19   Court must determine whether the "financial benefit" provision applies retroactively.

20    The first *Landgraf* step is to determine whether Congress expressly mandated the

21   statute's "proper reach." 511 U.S. at 280. As the *Cruz* court recognized, Congress did not

22   identify the 2008 TVPA amendment's proper temporal scope. At the second step in the

23   analysis, our path diverges from *Cruz*. In 2008, Congress created a new cause of action—

24   the financial benefit prong of § 1595(a)—which Plaintiffs utilize. The new cause of action

25   "increase[s] a party's liability for past conduct." *Landgraf*, 511 U.S. at 280. Before the

26   2008 amendments, Defendant was not liable because the "financial benefit" element cause

27   of action did not exist. After the amendments, Defendant is potentially liable. Because

28   Defendant is liable after the amendment, but not liable before, the 2008 amendments create

1   new legal consequences.   Therefore, the 2008 amendments do not apply retroactively

2   barring Congress's clear intent to do so.  The amendments do not contain any clear intent

3   to apply retroactively. *See Cruz*, 773 F.3d at 144.

4          Accordingly, the Court finds that Plaintiffs may only bring claims under the

5   "financial benefit" prong for violations of the TVPA after the amendments' effective date.[7]

6      *4. Whether TVPA's Statute of Limitations Bar Plaintiffs' Claims*

7          Defendant argues that a ten-year statute of limitations governs TVPA claims and

8   Plaintiffs filed their Complaint May 31, 2017. (MTD 20 (citing Compl.).)  Thus, Plaintiffs

9   cannot bring any TVPA claims for conduct occurring before May 31, 2007. (*Id.* at 21.)

10  Plaintiffs respond that dismissal on the basis of statute of limitations is only proper if

11  Defendant shows some obvious bar to securing relief on the face of the Complaint. (Opp'n

12  23 (citing *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014)).)

13  Plaintiffs argue that a factual question exists whether equitable tolling would apply to their

14  claims.  Defendant rejoins that Plaintiffs have shown no factual basis for equitable tolling.

15  (Reply 13.)

16         The Court agrees with Plaintiffs.  "If, from the allegations of the complaint as well

17  as any judicially noticeable materials, an asserted defense raises disputed issues of fact,

18  dismissal under Rule 12(b)(6) is improper." *ASARCO, LLC*, 765 F.3d 999, 1004 (9th Cir.

19  2014) (quoting *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam)).

20  Defendant points out that Plaintiffs do not state a factual basis for equitable tolling.  The

21  Complaint suggests otherwise.  Plaintiffs were held in a civil immigration detention facility

22  and it is plausible that equitable tolling could apply because Plaintiffs were physically

23

24  ───────────────

25  [7] Plaintiffs also argue that they seek mandatory restitution under 18 U.S.C. § 1593, which has no "financial
    benefit" requirement and, thus, no retroactivity issue. (Opp'n 23 n.7.)  Plaintiffs' argument fails because
26  § 1593's mandatory restitution provision is a remedy that applies "*only* to cases in which a defendant has
    been convicted of an offense under the Trafficking Act." *United States v. Fu Sheng Kuo*, 620 F.3d 1158,
27  1164 (9th Cir. 2010) (citing 18 U.S.C. § 1593(a)).  Section 1593 requires a predicate "offense under this
    chapter."  Even assuming a civil remedy can supply the predicate offense, the above discussion confirms
28  that Plaintiffs' TVPA cause of action against Defendant was not available until December 23, 2008.

17-CV-1112 JLS (NLS)

1   detained at Defendant's facility.  At the very least, there is a factual dispute concerning

2   Defendant's affirmative defense. *See Scott*, 746 F.2d at 1377 (citing C. Wright & A. Miller,

3   *Federal Practice and Procedure*, § 1277, at 328–30).  Therefore, the Court declines to

4   impose a statute of limitations bar at this stage in the proceedings.

5     *5.  Conclusion*

6      In sum, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion

7   to Dismiss Plaintiffs' first cause of action.  The Court **DISMISSES WITH PREJUDICE**

8   Plaintiffs' claims to the extent those claims rely on § 1595(a)'s "financial benefit" element

9   and arose prior to December 23, 2008.

10     **B. *California TVPA (Second Cause of Action)***

11      Plaintiffs bring a cause of action under the California Trafficking Victims Protection

12   Act, Cal. Civ. Code § 52.5, which provides a state civil remedy for victims of human

13   trafficking, (Compl. ¶ 53).  Defendant argues that, like the federal TVPA, the California

14   legislature did not intend for the California human trafficking statute to prohibit Defendant

15   from requiring lawfully-held immigration detainees to perform housekeeping tasks. (MTD

16   21.)  In support of this contention, Defendant references the legislative intent as only

17   intending to reach "trafficking of a person for forced labor or services." (*Id.* (quoting 2005

18   Cal. Legis. Serv. Ch. 240 (A.B. 22)).)  Defendant also briefly mentions its preemption

19   argument, which it raises below with regard to Plaintiffs' minimum wage claims. *See infra*

20   section III.A.  Defendant argues that immigrant detention is a federal function and the

21   California law has no authority to govern the conditions of detention. (MTD 21.)  Next,

22   Defendant points out that California Penal Code § 2700 requires prisoners in the custody

23   of the California Department of Corrections and Rehabilitation to perform work.  From

24   that premise, Defendant argues the California would not have criminalized conduct in one

25   statute, the California TVPA, that it authorized in a different statute, California Penal Code

26   § 2700. (Reply 13.)  Finally, Defendant argues that Plaintiffs' Complaint fails to allege

27   sufficient facts to state a claim. (MTD 22 (citing *Loftus v. Long Beach Veterans Hosp.*,

28   214 F. Supp. 3d 908, 916 (C.D. Cal. 2016)).)

1      Plaintiffs argue that the plain meaning of California Penal Code § 236.1(a) governs

2    their claims. (Opp'n 26.) They further contend that section 236.1 does not contain any

3    limiting language that might restrict application of the statute to only those defendants who

4    traffic in persons. (*Id.*) Relevant to their argument, section 236.1(g) states that the

5    "Legislature finds that the definition of human trafficking in this section is equivalent to

6    the federal definition of a severe form of trafficking found in Section 7102(9) of Title 22

7    of the United States Code."[8] Cal. Penal Code § 236.1(g). Plaintiffs contend that this

8    definition is merely a declaration of legislative finding and does not control sections

9    236.1(a) and (b). (Opp'n 26.) Next, Plaintiffs argue that they are not prisoners nor in the

10   custody of the California Department of Corrections and Rehabilitations and therefore any

11   comparison to prisoners in state custody is misleading. (*Id.* at 27.) Finally, Plaintiffs

12   contend that they have alleged sufficient facts to state a claim. (*Id.* at 27–28 (citing Compl.

13   ¶¶ 10–11, 13–16, 27–29).)

14      California Civil Code § 52.5 states that "[a] victim of human trafficking, as defined

15   in Section 236.1 of the Penal Code, may bring a civil action." California Penal Code

16   section 236.1 provides, in relevant part, that "[a] person who deprives or violates the

17   personal liberty of another with the intent to obtain forced labor or services, is guilty of

18   human trafficking." Cal. Penal Code § 236.1(a). "As summarized in the official standard

19   jury instructions for criminal cases, the elements of this offense are (1) the defendant either

20   deprived another person of personal liberty or violated that other person's personal liberty;

21   and (2) when the defendant did so, he or she intended to obtain forced labor or services

---

[8] 22 U.S.C. § 7102(9) provides:

    The term "severe forms of trafficking in persons" means—
    (A) sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age; or
    (B) the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

1    from that person." *People v. Halim*, 14 Cal. App. 5th 632, 643 (Ct. App. 2017) (citing

2    CALCRIM No. 1243), *reh'g denied* (Sept. 12, 2017), *review denied* (Nov. 29, 2017).  The

3    statute further defines "[d]eprivation or violation of the personal liberty of another" as

> substantial and sustained restriction of another's liberty
> accomplished through force, fear, fraud, deceit, coercion,
> violence, duress, menace, or threat of unlawful injury to the
> victim or to another person, under circumstances where the
> person receiving or apprehending the threat reasonably believes
> that it is likely that the person making the threat would carry it
> out.

9    Cal. Penal Code § 236.1(h)(3).

10          As before, the Court begins with the plain meaning of the statute.  *See Mt. Hawley*

11   *Ins. Co. v. Lopez*, 215 Cal. App. 4th 1385, 1397 (2013); *see also Klein v. United States*, 50

12   Cal. 4th 68, 77 (2010) ("We look first to the words of the statute, 'because the statutory

13   language is generally the most reliable indicator of legislative intent.'" (quoting *Hassan v.*

14   *Mercy Am. River Hosp.*, 31 Cal. 4th 709, 715 (2003))).  The California TVPA differs from

15   18 U.S.C. § 1859 because the former includes an explicit reference to the federal definition

16   of human trafficking, found in 22 U.S.C. § 7102(9).  *See* Cal. Penal Code § 236.1(a), (g).

17   However, the definition of human trafficking is not an element of the substantive offense;

18   instead, it defines the result of the crime.  As *People v. Halim* and the California jury

19   instruction illustrate, the only two elements necessary to prove a § 236.1 crime are: (1) the

20   defendant either deprived another person of personal liberty or violated that other person's

21   personal liberty; and (2) when the defendant did so, he or she intended to obtain forced

22   labor or services from that person.  As in the federal TVPA, there is no language that limits

23   the "person" to someone who was trafficked, nor is trafficking an element of the offense.

24          Defendant argues that the California legislature would not criminalize conduct in

25   one statute, Cal. Penal Code § 236.1, only to explicitly authorize the same conduct in a

26   different statute, Cal. Penal Code § 2700.  (Reply 13.)  Defendant's point is well taken;

27   however, the Court distinguishes between the targets of each statute.  California Penal Code

28   § 2700 regulates the conduct of prisoners who are expressly exempt from the Thirteenth

1    Amendment's prohibition on involuntary servitude.   California Penal Code § 236.1

2    regulates conduct of private parties who are not exempt from the Thirteenth Amendment's

3    prohibition of involuntary servitude.  The Court finds that the California TVPA is available

4    to Plaintiffs.[9]

5         Moreover, the Court finds Plaintiffs state a claim under the California TVPA.

6    Plaintiffs allege that Defendant threatened to place non-compliant detainees in solitary

7    confinement if they refused to perform certain labor.  As previously discussed, solitary

8    confinement, even for those in confinement and whose liberty is already deprived,

9    constitutes deprivation of personal liberty.   Plaintiffs also allege that the solitary

10   confinement was a punishment for refusing to perform work, which demonstrates

11   Defendant's intent to obtain labor or services from Plaintiffs.  Thus, the Court finds that

12   Plaintiffs state a claim under the California TVPA.

13        Though neither party raises the issue, retroactivity is also relevant here.  California

14   Civil Code § 3 states that Civil Code provisions are not retroactive "unless expressly so

15   declared."  Both sections 52.5 and 236.1 were enacted January 1, 2006 and neither statute

16   expressly declared to have retroactive effect.  *Headley v. Church of Scientology Int'l*, No.

17   CV 09-3986 DSF (MANx), 2009 WL 10671565, at *4 (C.D. Cal. Aug. 12, 2009).

18   Therefore, Plaintiffs' claim cannot state a claim for events that occurred prior to January

19   1, 2006.

20        Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's

21   Motion as to Plaintiffs' second cause of action and **DISMISSES WITH PREJUDICE**

22   Plaintiffs' California TVPA claim to the extent that it arose prior to January 1, 2006.

23   _____

24   [9] Defendant advances a preemption argument, stating "detention of immigrants is exclusively a federal
     function; California has no authority to govern the conditions of their detention."  Defendant does not

25   elaborate on how preemption applies specifically to the California TVPA beyond that statement.
     Defendant cites two statutes—the Immigration and Nationality Act and the Immigration Reform and

26   Control Act—for its preemption argument.  (*See* MTD 22–25.)   The Court addresses Defendant's
     preemption argument in detail below, but the holding there applies equally here.  The Court finds that

27   federal law does not preempt California labor law from regulating Plaintiffs' detention conditions; thus,

28   Defendant has not demonstrated why the California TVPA may not also regulate detention conditions.

17-CV-1112 JLS (NLS)

## III.   Voluntary Labor Claims (Fourth through Tenth Causes of Action)

In these causes of action, Plaintiffs allege the following violations of the California Labor Code: failure to pay minimum wages; failure to pay overtime wages; failure to provide mandated meal periods; failure to provide mandated rest periods; failure to furnish timely and accurate wage statements; failure to pay compensation upon termination/waiting time penalties; imposition of unlawful terms and conditions of employment. (*See* Compl. ¶¶ 71–101.)  Before turning to the merits of Plaintiffs' labor claims, the Court must address a threshold issue raised by Defendant: whether federal law preempts California law to the extent the latter seeks to regulate civil immigration detainees.

### A. Preemption

Defendant raises a threshold objection to Plaintiffs' fourth through tenth causes of action: preemption.  (MTD 22.)  Article VI, clause 2 of the United States Constitution—the Supremacy Clause—commands that the laws of the United States "shall be the supreme law of the land." U.S. Const. art. VI, cl. 2.  "[T]he Supremacy Clause invalidates all state laws that conflict or interfere with an Act of Congress." *Rose v. Ark. State Police*, 479 U.S. 1, 3 (1986).  Federal law may invalidate, or preempt, state law in three ways: express, field, and conflict preemption.  *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008).  When federal laws regulate conduct in an area in which state law has historic police powers there is a strong presumption against preemption.  *Id.*  Accordingly, "courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'"  *Arizona v. United States*, 567 U.S. 387, 400 (2012) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  Conversely, the presumption against preemption does not apply "when [a] States regulates in an area where there has been a history of significant federal presence." *Silvas*, 514 F.3d at 1004 (alteration in original) (quoting *United States v. Locke*, 529 U.S. 89, 108 (2000)).  Defendant argues both field and conflict preemption bar application of California's labor laws to Plaintiffs' claims.

30

*1. Field Preemption*

Defendant argues that the federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona*, 567 U.S. at 394. Accordingly, Congress has enacted two statutes relevant here. The Immigration and Nationality Act ("INA") vests responsibility for detaining aliens with the U.S. Attorney General. (MTD 23 (citing, e.g., 8 U.S.C. §§ 1103, 1226, 1231).) The Immigration Reform and Control Act ("IRCA") lays out a "comprehensive scheme prohibiting the employment of illegal aliens in the United States." (*Id.* (quoting *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 147 (2002)).) Defendant argues that these two statutes reflect a congressional mandate to regulate the detention of unlawful immigrants—including employment and labor practices at detention facilities. (*Id.*) Thus, Defendant would have the Court find the INA and IRCA preempt California's labor laws and those state laws cannot regulate Defendant's conduct towards Plaintiffs. (*Id.* at 24.)

Plaintiffs counter that California labor laws do not intrude on INA and IRCA's regulatory field. (Opp'n 34.) Plaintiffs cite *Arizona v. United States* where the Supreme Court held that Congress regulated the field of alien registration, but the Court allowed other provisions of the Arizona law intact. (*Id.* (citing *Arizona*, 567 U.S. at 400–15).) Accordingly, Plaintiffs argue that California's labor laws do not intrude upon INA's field of alien registration. (*Id.*)

Field preemption occurs "where: (1) the 'regulatory framework is so pervasive' that there is no room for state regulation, or (2) where the 'federal interest [is] so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1103 (9th Cir. 2016) (alteration in original) (quoting *Arizona*, 567 U.S. at 399). *Arizona v. United States* is the Supreme Court's most recent pronouncement on preemption and immigration.

In *Arizona*, the Supreme Court examined four provisions of an Arizona law: (1) Section 3 created a misdemeanor for failing to comply with federal alien-registration requirements; (2) Section 5 created a misdemeanor for an unauthorized alien to seek or

1   engage in work in Arizona; (3) Section 6 authorized law enforcement officers to arrest a

2   person without a warrant if the officer had probable cause to believe the person had

3   committed a public offense to make that person removable from the United States; and (4)

4   Section 2(B) required officers who conducted a stop, detention, or arrest to verify a

5   person's immigration status.  567 U.S. at 393–94.  The Supreme Court applied the field

6   preemption doctrine to Section 3 because that section regulated conduct in the field of alien

7   registration.  The Supreme Court held that "[t]he framework enacted by Congress leads to

8   the conclusion here . . . that the Federal Government has occupied the field of alien

9   registration." *Id.* at 401 (citing, e.g., *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 419, n.11

10   (2003)).  The Court reasoned "[i]f § 3 of the Arizona statute were valid, every State could

11   give itself independent authority to prosecute federal registration violations, 'diminish[ing]

12   the [Federal Government]'s control over enforcement' and 'detract[ing] from the

13   "integrated scheme of regulation" created by Congress.'"  *Id.* at 402. (alterations in

14   original) (quoting *Wis. Dep't of Indus. v. Gould Inc.,* 475 U.S. 282, 288–89 (1986)).

15   Accordingly, the *Arizona* court struck down Section 3 of the state law.

16       Here, Defendant argues that the INA preempts any state regulation in the field of

17   immigration detention. (MTD 23 (citing *Medina v. O'Neill*, 589 F. Supp. 1028, 1038 (S.D.

18   Tex. 1984)).)  At a high level of generality, Defendant's proposition has support in both

19   the statute and case law.  For example, 8 U.S.C. §§ 1226 & 1231 authorize the U.S.

20   Attorney General to take into custody and detain an alien who is to be removed from the

21   United States.  Additionally, in *Arizona*, the Supreme Court struck down the provision

22   authorizing a state officer to arrest an alien without a warrant because the "federal statutory

23   structure instructs when it is appropriate to arrest an alien during the removal process."

24   567 U.S. at 407. The Supreme Court characterized the relevant field as "alien registration,"

25   *id.* at 403, and Arizona's statute regulated conduct precisely in the alien registration field.

26       Yet, the high court defined the relevant field narrowly.  None of the statutory

27   sections cited by Defendant discuss the detention of aliens.  The *Arizona* court was

28   concerned when a state framework of sanctions creates a conflict with the plan Congress

1    put in place. *Id.* (citing *Wis. Dep't*, 475 U.S. at 286 ("[C]onflict is imminent whenever two

2    separate remedies are brought to bear on the same activity.")).   Thus, while Congress

3    authorized the Attorney General to detain unlawful aliens there is no clear congressional

4    framework for regulating detainee conditions, once unlawful aliens are detained in the first

5    instance.  There is no clear congressional intent to occupy the field of detention conditions.

6    Without a clear congressional intent, "the historic police powers of the States" are not to

7    be superseded. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

8        Carrying Defendant's theory to its logical conclusion, if this Court were to find that

9    Congress preempted California law in the entire field of civil immigration detention then

10   California could not enforce state and local ordinances, including building codes, sanitation

11   requirements, and other licensing strictures.  In fact, ICE's operations manual[10] explicitly

12   requires contract detention facilities to follow applicable federal, state, and local law with

13   regard to safety and sanitation law, fire safety codes, garbage and hazardous waste disposal,

14   drinking and wastewater compliance, and food service. *See* ICE PBNDS, at 19–21, 228.

15   The Court finds that the INA does not regulate the entire field of detention conditions

16   within an immigration detention facility.

17       The Court next considers whether the IRCA provides the congressional intent to

18   preempt the field of employment and labor practices in immigration detention facilities.

19   Prior to IRCA's enactment, the Supreme Court noted that the "States possess[ed] broad

20   authority under their police powers to regulate the employment relationship to protect

21   workers within the State." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 588

22   (2011) (quoting *De Canas v. Bica*, 424 U.S. 351, 356 (1976), *overruled in part by* 8 U.S.C.

23   § 1324a(h)(2)).  Again prior to IRCA, the Supreme Court had reasoned that "'prohibit[ing]

24   the knowing employment . . . of persons not entitled to lawful residence in the United

25   States, let alone to work here, is certainly within the mainstream of [the State's] police

---

27   [10] The ICE PBNDS is a federal agency publication and cannot provide congressional intent, but it at least
28   provides evidence that ICE does not read Congress's intent as to control the entire field of conditions
within immigration facilities.

17-CV-1112 JLS (NLS)

1   power' and that the Federal Government had 'at best' expressed 'a peripheral concern with

2   [the] employment of illegal entrants' at that point in time." *Id.* (alterations in original)

3   (quoting *De Canas*, 424 U.S. at 356, 360). Before IRCA, the Court declined to hold that

4   federal immigration law preempted a state law assessing civil fines for the employment of

5   unauthorized aliens. *See id.* Under this reasoning, a state law regulating the employment

6   and labor of immigration detainees would most certainly withstand a preemption challenge.

7         However, in 1986 Congress enacted IRCA and made it "unlawful for a person or

8   other entity . . . to hire, or recruit or refer for a fee, for employment in the United States an

9   alien knowing the alien is an unauthorized alien."  8 U.S.C. § 1324(a)(1)(A).  As the

10  Supreme Court has stated, "IRCA 'forcefully' made combating the employment of illegal

11  aliens central to '[t]he policy of immigration law.'" *Hoffman Plastic Compounds*, 535 U.S.

12  at 147 (alteration in original) (quoting *INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502

13  U.S. 183, 194 & n.8 (1991)).  Yet, Defendant does not cite any cases for the proposition

14  that IRCA preempts the entire field of immigration employment such that a state cannot

15  applying its worker protection and employment regulations to unauthorized aliens.  *See*

16  *Salas v. Sierra Chemical Co.*, 59 Cal. 4th 407, 423 (2014) (holding that "federal regulation

17  imposed by the Immigration Reform and Control Act of 1986 is not so pervasive as to

18  leave no room for any state law on the same subject").

19        The Court finds that Congress has not preempted state law in the field of immigration

20  detainee labor and employment. *See Washington v. Geo Group, Inc.*, 283 F. Supp. 3d 967,

21  977 (W.D. Wash. 2017) (finding same).

22        *2.  Conflict Preemption*

23        Defendant also argues that Plaintiffs' minimum wage (fourth cause of action) and

24  overtime wage (fifth cause of action) are preempted because those California laws conflict

25  with federal law.  (MTD 24.)

26        Conflict preemption applies in two situations—when it is impossible to comply with

27  both state and federal law, or when the state law poses an obstacle to accomplishing and

28  executing Congress' purposes and objectives.  *Bank of Am. v. City & Cnty. of San*

1   *Francisco*, 309 F.3d 551, 558 (9th Cir. 2002) (citing *Fla. Lime & Avocado Growers, Inc.*

2   *v. Paul*, 373 U.S. 132, 142–43 (1963)), *as amended on denial of reh'g and reh'g en banc*

3   (Dec. 20, 2002); and *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Like field preemption,

4   the touchstone of the conflict preemption inquiry is congressional intent. *Puente Ariz.*, 821

5   F.3d at 1104 (citing *Wyeth*, 555 U.S. at 565).

6        Defendant states that 8 U.S.C. § 1555(d) authorizes ICE to pay "allowance (at such

7   rate as may be specified from time to time in the appropriation Act involved) to aliens,

8   while held in custody under the immigration laws, for work performed." (MTD 24

9   (quoting 8 U.S.C. § 1555(d)).) Defendant argues that Congress set the allowance rate not

10  in excess of $1 per day in the 1978 Department of Justice Appropriation Act. (*Id.* (citing

11  Pub. L. No. 95-86, 91 Stat. 419, 426 (1977); and *Alvarado Guevara v. I.N.S.*, 902 F.2d 394,

12  396 (5th Cir. 1990)).) Thus, Defendant argues that California's minimum wage and

13  overtime wages—both of which require well over $1 per day—conflict with the rate fixed

14  by Congress. (*Id.* at 25 (citing Cal. Labor Code §§ 510(a), 1197).)

15       Plaintiffs point out that the $1 per day requirement was laid out in an appropriations

16  bill. (*See* Opp'n 35–36.) Plaintiffs argue that Congress did not preempt state labor law

17  through a $1 per day appropriation. (*Id.* at 36.) Further, Plaintiffs posit that there is nothing

18  in the appropriations bill that makes it impossible for Defendant to comply with

19  California's labor laws, including payment of the minimum wage. (*Id.*) Defendant

20  responds by reiterating its position that the 1978 appropriations bill controls the wages

21  Defendant can lawfully pay Plaintiffs. (Reply 15.)

22       The conflict preemption argument depends entirely on the 1978 Department of

23  Justice appropriations bill. *See* 91 Stat. at 426 ("For expenses not otherwise provided

24  for, . . . including . . . payment of allowances (at a rate not in excess of $1 per day) to aliens,

25  while held in custody under the immigration laws, for work performed."). Plaintiffs argue

26  "[t]here is nothing in that appropriations bill that makes it impossible for Defendant to

27  comply with California's labor laws." (Opp'n 36.) This position is untenable. Plaintiffs

28  provide no authority that Defendant is able to ignore congressional mandates imposed on

1    ICE and imposed on Defendant by contracting with ICE.  It cannot be true that Defendant

2    must follow both California's minimum wage law (requiring well over $1 per day) and the

3    1978 Appropriations Act (requiring no more than $1 a day) at the same time.  The operative

4    question is whether the appropriations bill still controls to this day.

5           The limited case law on this question is clearly split.  In 1992, the Federal Circuit

6    determined the Fair Labor Standards Act ("FLSA") did not apply to INS detainees and

7    cited with approval the 1978 Department of Justice appropriations bill.  *See Guevara v.*

8    *I.N.S.*, 954 F.2d 733, 1992 WL 1029, at *2 (Fed. Cir. 1992) (per curiam) (unpublished

9    decision).  More recently, the district court for the District of Washington encountered the

10   same fact pattern presently before this Court: civil immigration detainees sued a private,

11   for-profit immigration detention corporation alleging that the defendant failed to meet the

12   Washington state minimum wage law.  *See Chao Chen v. Geo Group, Inc.*, 287 F. Supp.

13   3d 1158, 2017 WL 6034365, at *1 (W.D. Wash. Dec. 6, 2017).  The *Chao Chen* court

14   pointed out that while 8 U.S.C. § 1555(d) is still in effect, Congress has not specified any

15   rate for detainee work since fiscal year 1979, despite knowing how to set a specific rate.

16   *Id.* at *4 (citing Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, 129 Stat.

17   2242, 2497 (2015)).

18          This is a close question.  The Court begins with the general proposition, repeatedly

19   expressed by the Supreme Court, that "[i]n all pre-emption cases, and particularly in those

20   in which Congress has 'legislated . . . in a field which the States have traditionally

21   occupied,' . . . we 'start with the assumption that the historic police powers of the States

22   were not to be superseded by the Federal Act unless that was the clear and manifest purpose

23   of Congress.'"  *Wyeth*, 555 U.S. at 565 (alterations in original) (quoting *Medtronic, Inc. v.*

24   *Lohr*, 518 U.S. 470, 485 (1996)).  Regulating labor and wages is a historic police power

25   belonging to the States.  *See Salas*, 59 Cal. 4th at 422 (citing *De Canas*, 424 U.S. at 356).

26   Thus, this Court will only find conflict preemption when Congress provides a clear and

27   manifest purpose.  Congress appropriated funds for the federal fiscal year ending

28   September 30, 1978, including funds not to exceed $1 per day for aliens held in custody.

1    Congress did not include similar language in subsequent years, nor did it codify the $1 per
2    day limitation in the United States Code.  This Court does not foreclose the possibility that
3    Congress intended for the $1 per day ceiling to bind future parties, but does not find a clear
4    and manifest purpose on these facts is not warranted.  Therefore, the Court declines to
5    apply conflict preemption.[11]

6         Finally, Defendant does not raise the obstacle preemption element of conflict
7    preemption.  *See Hines*, 312 U.S. at 67.  Moreover, given the lack of clear congressional
8    intent as to the "Dollar-A-Day" program, the Court finds the obstacle analysis to be
9    coextensive with the conflict preemption analysis.

10        **B. Whether Plaintiffs Are Employees for Purposes of California Law**

11        Plaintiffs' fourth cause of action seeks to recover minimum wages; their fifth cause
12   of action is for recovery of overtime compensation.  (*See* Compl. ¶¶ 71–79.)  California
13   Labor Code § 1194 provides the civil remedy for unpaid minimum wages or overtime
14   compensation.  *See* Cal. Labor Code § 1194(a).

15        Defendant offers three reasons why Plaintiffs are not employees under California
16   law.  First, the Labor Code defines "employee" differently within the code itself, depending
17   on the chapter, part, article, or section.  (*See* MTD 26.)  In some sections the legislature
18   expressly included aliens in the definition of employee.  (*Id.* (citing Cal. Labor Code
19   §§ 350, 2501(c), 3351).)  Because the legislature did not define alien in the section relied
20   on by Plaintiffs, many of who are aliens, in their Complaint, they are not employees.  (*Id.*)
21   Second, Defendant argues that IRCA "makes it unlawful to knowingly hire or continue to
22   employ an unauthorized alien."  (*Id.* (quoting *Hilber v. Int'l Lining Tech.*, No. C 12-3 LB,
23   2012 WL 3542421, at *1 (N.D. Cal. July 24, 2012)).)  Thus, according to Defendant it
24   would be absurd to confer employee status on Plaintiffs when IRCA prevents hiring aliens.

25
26   _____

27   [11] Additionally, the ICE manual provides that "[t]he compensation is *at least* $1.00 (USD) per day."  ICE
     PBNDS, at 407 (emphasis added).  Thus, assuming ICE's manual were to preempt state law, *see Chao
28   Chen*, 2017 WL 6034365, at *5 (finding Voluntary Work Program does not preempt Washington
     minimum wage law), the ICE manual prescribes a floor, not a ceiling for daily wage.

1   Third, Defendant cites several Ninth Circuit cases where courts have found that prison

2   inmates are not employees for purposes of the FLSA. (*Id.* at 27 (citing, e.g., *Burleson v.*

3   *State of Cal.*, 83 F.3d 311, 313 (9th Cir. 1996)).) Defendant also directs the Court to

4   *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 395 (5th Cir. 1990), where the Fifth Circuit held

5   that immigration detainees, who performed various tasks for $1 a day, were not employees

6   under the FLSA. Defendant invites the Court to find the FLSA cases analogous to situation

7   at bar.

8        Before addressing Plaintiffs' rebuttal arguments, the Court addresses the threshold

9   issue of whether Plaintiffs can qualify as employees before considering the idiosyncrasies

10   of the immigration detention situation. The threshold question is not the immigration status

11   of Plaintiffs, whether IRCA prohibits Defendant from employing them, or whether

12   immigration detainees are similar to prisoners. The threshold inquiry is much simpler: are

13   Plaintiffs employees under California Labor Code § 1194. If the answer is in the

14   affirmative, only then does the Court need to consider whether Plaintiffs' status as aliens

15   or immigration detainees necessitates an exception to the definition of employee. If the

16   answer is in the negative, the inquiry ends.

17        *1. Whether Defendant Employs Plaintiffs Pursuant to* Martinez v. Combs

18        As Plaintiffs point out, the California Supreme Court addressed the definition of an

19   employee who brings an action under California Labor Code § 1194 in *Martinez v. Combs*,

20   49 Cal. 4th 35 (2010). (Opp'n 39.) The California Supreme Court noted that generally

21   "employees" may recover unpaid minimum and overtime wages under the terms of the

22   applicable wage order issued by the Industrial Welfare Commission ("IWC") and

23   California courts generally defer to the IWC's definition of employee. *See id.* at 60–61.

24   After discussing the history of the IWC's definition and the common law definition, the

25   *Martinez* court went on to hold that "[t]o employ, then under the IWC's definition, has

26   three alternative definitions. It means: (a) to exercise control over the wages, hours or

27   working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a

28   common law employment relationship. *Id.* at 64. The court then emphasized that the

38

1   IWC's definition of the term "employ" was in "no sense" based on federal law. *Id.* at 66.

2   While the IWC has expressly incorporated elements of the FLSA into select wage orders,

3   the California Supreme Court concluded that there was no reason to substitute the FLSA's

4   "economic reality" test for definitions in wage orders regularly adopted by the IWC. *Id.* at

5   67.

6         Defendant argues that Plaintiffs' reliance on *Martinez* is misplaced.  (Reply 16.)

7   Defendant reads *Martinez* as inapplicable to state prison inmates and therefore similar logic

8   should extend to federal immigration detainees whose labor, wages, and conditions are

9   completely controlled by ICE[12] regulations.  (*Id.* at 16 n.5 (citing Cal. Code Reg. tit. 15,

10   § 3041.2, which sets wages for inmate wages at $0.08 to $0.13 per hour).)

11         The Court disagrees with Defendant and applies *Martinez*.  Plaintiffs' Complaint

12   alleges that Defendant offered $1 per day to participate in a Voluntary Work Program.

13   (Compl. ¶¶ 15, 17.)  Plaintiffs list a variety of tasks actually completed by detainees

14   including, but not limited to scrubbing bathrooms, sweeping, mopping, and waxing floors,

15   and preparing and serving detainee meals. (*Id.* ¶ 16.) These allegations sufficiently support

16   a conclusion that Defendant controlled the hours, wages, and working conditions of

17   detainees in their Otay Mesa facility. ICE's 2011 PBNDS reinforces such a finding.  The

18   PBNDS states that "[d]etainees shall not be permitted to work in excess of 8 hours daily,

19   40 hours weekly." ICE, PBNDS, at 407.  It also provides that "[t]he compensation is at

20   least $1.00 (USD) per day." *Id.*  Finally, the manual requires that "[a]ll detention facilities

21   shall comply with all applicable health and safety regulations standards." *Id.* at 408.

22   Assuming Defendant adheres to ICE's policies, and there is no reason offered in the record

23

---

24   [12] Defendant refers to the regulations as "INS regulations."  (Reply 16.)  The Immigration and

25   Naturalization Service, or INS, was abolished in 2003, *see* Pub. L No. 107-296, § 471, 116 Stat. 2135, 2205 (2002), and its duties were divided into ICE, Customs and Border Patrol, and U.S. Citizenship and

26   Immigration Services.  The Court assumes that Defendant meant to refer to ICE regulations, but Defendant does not cite which specific regulations control housekeeping chores or voluntary work programs.

27   Because the 2011 ICE PBNDS discusses both housekeeping chores and the voluntary work program and

28   applies to "Contract Detention Facilities," *see* ICE PBNDS, at 405, the Court again assumes Defendant refers to that manual.

17-CV-1112 JLS (NLS)

1  to think otherwise, then the logical conclusion is that, at a minimum, Defendant controls

2  the wages, hours, and working conditions of Plaintiffs and putative class members.  As

3  such, Defendant employed Plaintiffs and putative class members for purposes of California

4  Labor Code § 1194.

5       Defendant's argument that *Martinez* does not apply to Plaintiffs is not persuasive.

6  To arrive at its conclusion, Defendant compares Plaintiffs to state prison inmates, who are

7  excluded from the IWC's scope.  (*See* Reply 16.)  Yet, the California Penal Code expressly

8  exempts inmates from the Labor Code's minimum wage requirements.  *See* Cal. Penal

9  Code § 2811.  Indeed, the Thirteenth Amendment's prohibition on involuntary servitude

10  does not apply to convicted criminals.  The only authority Defendant cites for treating civil

11  immigration detainees the same as inmates are ICE regulations.  (Reply 16.)  Yet, the ICE

12  regulations only set a floor, not a ceiling.  ICE PBNDS, at 405 ("The compensation is *at*

13  *least* 1.00 (USD) per day." (emphasis added)).  The Court finds such guidance insufficient,

14  especially compared to the clear statement in Penal Code § 2811, to exempt Plaintiffs from

15  *Martinez.*

16       *2.  Whether the Labor Code Expressly Includes Immigration Detainees*

17       The Court turns to the Defendant's arguments why the Labor Code should not apply

18  to Plaintiffs, even if Defendant employs detainees.  Defendant first argues that the Labor

19  Code defines "employee" deliberately based on the respective chapter, part, article, or

20  section.  (MTD 26.)  In some Labor Code sections the legislature expressly included aliens

21  in the definition of employee.  (*Id.* (citing Cal. Labor Code §§ 350, 2501(c), 3351).)  But,

22  the legislature did not include alien detainees in the definition of employee in the statutes

23  in Plaintiffs' Complaint and, thus, Defendant urges the Court not to read "immigrant

24  detainee" into the Labor Code.  (*Id.*)

25       Plaintiffs counter that Labor Code § 1171.5 expresses a clear intent by the California

26  Legislature to accord all individuals "regardless of immigration status" the protections,

27  rights, and remedies under state law.  Cal. Labor Code § 1171.5(a).  Plaintiffs cite *Incalza*

28  *v. Fendi North America, Inc.*, 479 F.3d 1005, 1009 (9th Cir. 2007), as recognizing that

1   illegal aliens, like other California employees, cannot be terminated in violation of an

2   express or implied agreement without good cause. (Opp'n 38.)  Plaintiffs argue *Incalza* is

3   exemplary of a multitude of decisions, both state and federal, finding that illegal aliens are

4   protected under the California Labor Code. (*Id.* at 38 & n.11 (collecting cases).)

5       Defendant responds that Plaintiffs are not employees so Labor Code § 1171.5 does

6   not apply to them.  (Reply 16.)  Defendant emphasizes that the relevant inquiry is not

7   Plaintiffs' immigration status, but rather their detention status. (*Id.* at 15–16.)

8       Plaintiffs bring causes of action under Labor Code § 1194.  *Martinez* describes the

9   applicable test to determine whether a person is engaged in employment for purposes of

10  section 1194.  The Court found that Plaintiffs meet the *Martinez* definition and are therefore

11  engaged in employment and able to bring claims under § 1194.  The Court agrees with

12  Defendant that Plaintiffs do not answer the thrust of Defendant's argument: that the Labor

13  Code does not define employee as an alien held in a detention center.  Yet, the inverse is

14  also true, Defendant has not demonstrated that the Labor Code, or any case law, specifically

15  exempts alien detainees from the Labor Code.  Defendant invites comparison to *Gerard v.*

16  *Mitchell Systems*, No. CV 14-4999 DSF (SHX), 2016 WL 4479987, at *8 (C.D. Cal. Aug.

17  22, 2016), where the district court determined that cosmetology students required to

18  perform housekeeping chores without pay did not fall under the applicable IWC wage

19  order.  Defendant argues that the federal ICE regulations are similar to the cosmetology

20  regulations that displaced the IWC wage order.  *Gerard* relied on a California Court of

21  Appeal decision that explicitly held cosmetology students did not fall under the IWC.  *See*

22  2016 WL 4479987, at *7–8 (citing *Hutchison v. Clark*, 67 Cal. App. 2d 155, 160–61 (Ct.

23  App. 1944)).  Defendant does not cite, nor can the Court find, a similar case holding that

24  alien detainees do not fall under the IWC's sweep.  Without any similar precedent, the

25  Court declines to create an exception for civil immigration detainees removing them from

26  IWC's purview.

27      3.  *Whether IRCA Prohibits Defendant from Employing Plaintiffs*

28      Defendant next argues that Plaintiffs' legal theory creates an absurdity because of

1   IRCA.  IRCA "makes it unlawful to knowingly hire or continue to employ an unauthorized

2   alien." (MTD 26 (quoting *Hilber*, 2012 WL 3542421, at *1).)  Thus, if civil immigration

3   detainees are unauthorized aliens then Defendant could not knowingly hire or continue to

4   employ those unauthorized aliens. (*See id.* at 26–27.)

5        Plaintiffs respond that the California Supreme Court has held that statutory labor

6   provisions are available to all workers "regardless of immigration status."  (Opp'n 37

7   (quoting *Salas*, 59 Cal. 4th at 426).)  According to Plaintiffs, federal law does not preempt,

8   (*id.* at 38 (citing *Salas*, 59 Cal. 4th at 421–24)), the California Legislature's clear intent to

9   provide unauthorized aliens all protections, rights, and remedies under state law, (*id.*

10  (citing, e.g., Cal. Gov. Code § 7285)).

11       The Court agrees with Defendant's general principal that IRCA prohibits employers

12  from employing unauthorized aliens and if any detainees were unauthorized aliens then

13  Defendant would be prohibited from employing unauthorized aliens.  Civil immigration

14  detention facilities house persons as their immigration status is adjudicated.  Logic would

15  suggest at least some of Plaintiffs' putative class would fall under IRCA—creating a legal

16  Gordian knot for Defendant.  Two considerations allow the Court to cut the proverbial

17  knot.  First, the Court has no information or allegation concerning Plaintiffs' immigration

18  status. (*See* Compl. ¶¶ 27–29.)  The Motion before the Court is not class certification, but

19  rather whether these particular Plaintiffs state a claim.  Thus, Defendant's argument, while

20  potentially relevant in future motions, is not dispositive here.  Second, as Plaintiffs point

21  out, California law provides a remedy for unauthorized aliens.  *See* Cal. Labor Code

22  §§ 1171.5, 1194; *Salas*, 59 Cal. 4th at 426.  The relevant inquiry is not whether Defendant

23  violated IRCA, but whether Plaintiffs can recover under California law for past wrongs.

24  Thus, the Court finds IRCA does not control the issue of whether Plaintiffs are employees

25  under California law.

26       *4.  Whether Immigration Detainees Are Analogous to Prisoners*

27       The Court turns to the subset of persons perhaps most similarly situated to

28  immigration detainees: state prison inmates.  Defendant argues that courts have repeatedly

1   held prison inmates are not employees for purposes of the FLSA, (MTD 27 (citing, e.g.,

2   *Burleson*, 83 F.3d at 313; and *Hale v. Arizona*, 993 F.2d 1387, 1389 (9th Cir.) (en banc),

3   *cert. denied*, 510 U.S. 946 (1993))), the Americans with Disabilities Act, (*id.* (citing *Castle*

4   *v. Eurofresh, Inc.*, 731 F.3d 901, 906–08 (9th Cir. 2013)), and the Toxic Substances Control

5   Act and Clean Air Act, (*id.* (citing *Coupar v. U.S. Dep't of Labor*, 105 F.3d 1263, 1265

6   (9th Cir. 1997))). Defendant also points the Court to *Alvarado Guevara v. I.N.S.*, 902 F.2d

7   at 395, where the Fifth Circuit held that immigrant detainees who performed housekeeping

8   tasks were not employees under the FLSA, (MTD 27).

9       Plaintiffs' counter that the California Supreme Court has rejected the application of

10   the common law definition of employer as well as the FLSA's "economic reality" test.

11   (Opp'n 39 (citing *Martinez*, 49 Cal. 4th at 64).) Plaintiffs also argue that even if the Court

12   applied the FLSA economic reality test then they still qualify as employees. (*See id.* 39–

13   40.) Plaintiffs point to the *Hale* court's statement, quoted with approval in *Burleson*, that

14   the Ninth Circuit does "not believe that prisoners are categorically excluded from the

15   FLSA." (*Id.* at 39 (quoting *Burleson*, 83 F.3d at 313).) Thus, Plaintiffs argue that if the

16   Court were to apply the economic reality test, articulated in *Bonnette v. California Health*

17   *and Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983), then civil immigration detainees would

18   be situated differently than state prisoners. (*See* Opp'n 40.) Plaintiffs state the single

19   determinative factor under the economic reality test is whether immigration detainees have

20   a legal obligation to work. (*Id.* (citing *Hale*, 993 F.2d at 1395).) Thus, Plaintiffs contend

21   that they, unlike prisoners, are under no obligation to work. (*See id.* at 40–41.) Applying

22   the remaining *Bonnette* factors, Plaintiffs contend that Defendant controls the hours,

23   wages, and hiring and firing of detainee workers and, therefore, Plaintiffs qualify as

24   employees under the economic reality test. (*Id.* at 41.)

25       In response, Defendant reiterates that Plaintiffs fail to address *Alvarado Guevara*

26   and *Menocal*. (Reply 17.) *Alvarado Guevara* determined that civil immigration detainees

27   were not employees for purposes of the FLSA. (*Id.* (citing *Alvarado Guevara*, 902 F.2d at

28   395).) Moreover, Defendant points to a case cited by Plaintiffs, *Menocal*, which reasoned

1    that immigration detainees were similar to prisoners and concluded that immigration

2    detainees were not employees for purposes of Colorado's minimum wage law. (*Id.* (citing

3    *Menocal*, 113 F. Supp. 3d at 1129).)

4          Defendant cites several cases where courts found prison inmates were not employees

5    for purposes of various federal statutes, like the Americans with Disabilities Act and the

6    Clean Air Act. These cases share a common precedent and common analysis framework:

7    *Hale v. Arizona*, 993 F.2d 1387. Defendant's diverse array of cases relying on *Hale* also

8    relies on FLSA's economic reality test employed in *Hale*. For example, *Castle v.*

9    *Eurofresh, Inc.*, 731 F.3d at 906–08, explicitly relied on *Hale* to hold that an inmate was

10   not an employee. *See id.* at 908 ("We are equally unpersuaded by [the plaintiff's] other

11   attempts to distinguish this case from *Hale* and *Coupar*."). Thus, Defendant's primary

12   argument boils down to the following proposition: courts regularly find that prison inmates

13   not employees under FLSA and the Court should apply this reasoning to immigration

14   detainees under California's Labor Code.

15         The defect in Defendant's argument is that California's employment definition is

16   explicitly different from FLSA's economic reality test. *See Martinez*, 49 Cal. 4th at 66–

17   67. The California Supreme Court cannot be much clearer when it said "[i]n no sense is

18   the IWC's definition of the term 'employ' based on federal law." *Id.* at 66. Moreover, the

19   *Martinez* court reiterated that it had "previously cautioned against 'confounding federal

20   and state labor law.'" *Id.* at 68 (quoting *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785,

21   798 (1999)). And, while the IWC's wage orders are at times patterned after federal

22   regulations, the wage orders sometimes provide greater protection than is provided under

23   federal law. *Ramirez*, 20 Cal. 4th at 795 (collecting cases). Defendant's analysis does not

24   bridge the gap between California's Labor Code and the FLSA. Put differently, *Martinez*

25   explicitly distinguishes the California IWC definition of "to employ" from FLSA's

26   economic reality test. Moreover, Defendant does not offer a convincing reason to apply a

27   test disavowed by the California Supreme Court.

28         Even if the Court were to apply the economic reality test it is not clear that Plaintiffs

1   do not qualify as employees.  *Hale* held that inmates were not employees of the prison

2   because they "worked for programs structured by the prison pursuant to the state's

3   requirement that prisoners work at hard labor, the economic reality is that their labor

4   belonged to the institution."  993 F.2d at 1395.  *Hale* distinguished prisoners from

5   employees in the free market because "[c]onvicted criminal do not have the right to freely

6   sell their labor and are not protected by the Thirteenth Amendment against involuntary

7   servitude."  *Id.* at 1394 (citing *Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir.), *cert. denied*,

8   375 U.S. 915 (1963)).

9         Here, California Penal Code § 2700 mandates that "every able-bodied prisoner

10  imprisoned in any state prison" are required to carry out "as many hours of faithful labor

11  in each day" as prescribed by the Director of Corrections.  Like the *Hale* court's reasoning,

12  California inmates cannot freely sell their labor and are exempted from the Thirteenth

13  Amendment's prohibition on involuntary servitude.  Defendant has not directed the Court

14  to any similar statute for civil immigration detainees—other than ICE's regulations.  (*See*

15  Reply 16.)  Yet, the ICE regulation clearly states, "Detainees shall be able to volunteer for

16  work assignments but otherwise shall not be required to work, except to do personal

17  housekeeping."  ICE PBNDS, at 405.  The ICE regulations are voluntary, not mandatory

18  (excepting certain housekeeping tasks).  Plaintiffs are not convicted criminals and are

19  accorded the protections of the Thirteenth Amendment.  *See supra* section II.A.1.b

20  (discussing Thirteenth Amendment's civic duty exception).

21        Defendant is correct that Plaintiffs do not directly address the holding in *Alvarado*

22  *Guevara*, 902 F.2d at 395, (Reply 17).  Like here, *Alvarado Guevara* involved an alien

23  detention facility that offered detainees the opportunity to participate in a voluntary work

24  program for $1 per day.  902 F.2d at 395.  The Fifth Circuit held that the detainees were

25  not employees under the FLSA.  *Id.*  In doing so, the court relied largely on one factor: that

26  the FLSA's intent was to protect the "standard of living" and "general well-being" of the

27  worker in the American industry.  *Id.* (quoting *Alexander v. Sara, Inc.*, 559 F. Supp. 42

28  (M.D. La.), *aff'd.* 721 F.2d 149 (5th Cir. 1983)).  Because detainees were removed from

1    the American economy, they were not employees under FLSA.

2          While the factual situation between this case and *Alvarado Guevara* is similar,

3    *Alvarado Guevara*'s reasoning presupposes that the immigration detention facility exerts

4    nearly the same level of control over a detainee as a prison does over a prisoner.  The

5    question of control is important.  At common law, the employment relationship between

6    an employer and independent contractor tested the amount of control the employer exerted

7    over an independent contractor.  *See Vanskike v. Peters*, 974 F.2d 806, 810 (7th Cir. 1992)

8    (citing *Bonnette*, 704 F.2d at 1470).  In the prison employment inquiry, a court approaches

9    the question of control from the other direction: is there too much control over the

10   purported employee.  *See id.* ("[T]here is obviously enough control over the prisoner; the

11   problematic point is that there is *too much* control to classify the relationship as one of

12   employment.").  Thus, when *Hale* discussed the economic reality of a prisoner's situation

13   the overriding factor was that the relationship between prison and prisoner was

14   "penological, no pecuniary." 993 F.2d at 1395.

15         Here, it is not clear that Defendant exerts the same level of control over Plaintiffs as

16   a prison does over a prisoner.  As discussed, Plaintiffs are not convicted criminals and have

17   no obligation to work (other than the basic housekeeping tasks outlined in the PBNDS

18   manual).  Consider the following hypothetical, based on the facts and allegations before

19   the Court.  If all civil immigration detainees at Defendant's Otay Mesa facility refused to

20   participate in the Voluntary Work Program then Defendant could not force detainees to

21   perform labor and services at the facility, beyond basic housekeeping tasks.  Moreover, the

22   ICE regulations require the facility administrator to "ensure that staff and detainees

23   maintain a high standard of facility sanitation and general cleanliness." ICE PBNDS, at

24   21.  If detainees are unavailable for sanitation and cleanliness it is conceivable that

25   Defendant would hire persons to perform the tasks previously performed by detainees:

26   cooking meals for detainees, cutting detainees' hair, and launder detainees' clothing.  (*See*

27   Compl. ¶ 14.)  By comparison, a prison can control their inmates and require them, under

28   the Thirteenth Amendment and California law, to perform those tasks for well under

1    minimum wage.  Such a hypothetical illustrates that the level of control over detainees does

2    not rise to the same level described in *Hale* and *Vanskike*.

3           But, the foregoing economic reality discussion is, ultimately, not the applicable test

4    to Plaintiffs' situation.[13]  Instead, the IWC wage orders, which the California Supreme

5    Court defers to, controls.  *See Martinez*, 49 Cal. 4th at 66–67.  Accordingly, the Court finds

6    Defendant's analogy to prison employment cases does not address the critical issue in this

7    case—whether Plaintiffs meet the definition of employee under *Martinez*.

8           **C. Whether IWC's Wage Orders Apply to Plaintiffs**

9           Defendant states that Plaintiffs' fourth, fifth, sixth, and seventh causes of action all

10   rely, in part, on IWC Wage Orders ("WO") 5-2001 and 15-2001.  (MTD 28.)  Defendant

11   argues reliance on both orders are misplaced.

12          *1.  Wage Order 5-2001*

13          WO 5-2001 applies to the Public Housekeeping Industry and defines the industry to

14   include "any industry, business, or establishment which provides meals, housing, or

15   maintenance services whether operated as a primary business or when incidental to other

16   operations in an establishment not covered by an industry order of the Commission."  (*Id.*

17   (quoting Cal. Code Regs. tit. 8, § 11050(2)(P) (2017)).)  The Wage Order then provides an

18   exemplary list of businesses that do not include corrections or detention facilities.  (*Id.*

19   (citing Cal. Code Regs. tit. 8, § 11050(2)(P)(1)–(7)).)  Defendant concludes that the

20   illustrative list is not remotely similar to the detention of immigration detainees and urges

21   the Court not to apply this Wage Order.  In response, Plaintiffs point out that the IWC's

22   occupations are the same as in their Complaint, e.g., janitorial services, landscaping,

---

[13] Defendant also argues that an employment relationship cannot be found under the common law test because detention for the purposes of deportation does not support a reasonable belief that an employer-employee relationship existed. (Reply 16–17 (citing *Bonnette*, 704 F.2d at 1470; and *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 769 P.2d 399, 404 (Cal. 1989)).)  The Court acknowledges but does not make a finding as to the common law employment relationship.  It does so because *Martinez* makes clear that the IWC's employment test is available for those persons, like Plaintiffs, who seek remedy under California Labor Code § 1194.

1   catering, boarding, and cleaning of facilities.  (Opp'n 43.)

2    WO 5-2001's plain language answers this issue.  Defendant operates a immigration

3   detention facility.  In that capacity, Plaintiffs allege that they perform tasks concerning

4   meals, housing, and maintenance.  (*See* Compl. ¶ 14.)  The wage order applies to any

5   industry or business which provides meals, housing, or maintenance services even when

6   the services is operated incidental to the business's other operations in an establishment

7   not covered by an industry order of the IWC.   § 11050(2)(P).   Meals, housing, or

8   maintenance clearly are not Defendant's primary business purpose, but those services are

9   provided incidental to its role in housing detainees.

10    Defendant argues that it is not "remotely similar" to the examples listed in the wage

11   order. (MTD 28.)  The Court is not convinced the examples are so far afield as Defendant

12   contends.  For example, the wage order cites "[p]rivate schools, colleges, or universities,

13   and similar establishments which provide board or lodging in addition to educational

14   facilities." § 11050(2)(P)(5).  It also offers as examples "[h]ospitals, sanitariums, rest

15   homes, child nurseries, child care institutions, homes for the aged, and similar

16   establishments offering board or lodging in addition to medical, surgical, nursing,

17   convalescent, aged, or child care." § 11050(2)(P)(4).  These two examples call to mind an

18   institution where people remain for long periods of time for a purpose (education or

19   healthcare) while receiving meals and lodging that are incidental to that purpose.  While

20   the purpose of the institution may differ—education vs. nursing home vs. detention

21   facility—each institution provides essential services for those under their charge.  Finally,

22   as Defendant admits, the wage order list is not exhaustive.

23    The Court declines to dismiss Plaintiffs' Complaint to the extent it relies on Wage

24   Order 5-2001.

25    *2. Wage Order 15-2001*

26    Defendant also argues that WO 15-2001 should not apply because the wage order

27   only covers "all persons employed in household occupations." (MTD 28 (citing Cal. Code

28   Regs. tit. 8, § 11050(1)).)  "Household Occupations" is further defined as:

> [A]ll services related to the care of persons or maintenance of a
> private household or its premises by an employee of a private
> householder. Said occupations shall include, but not be limited
> to, the following: butlers, chauffeurs, companions, cooks, day
> workers, gardeners, graduate nurses, grooms, house cleaners,
> housekeepers, maids, practical nurses, tutors, valets, and other
> similar occupations.

(*Id.* at 28–29 (citing Cal. Code Regs. tit. 8, § 11050(2)(I)).)  Defendant argues that it is not a private household, but rather a detention facility.  Plaintiffs do not address Defendant's argument.

The Court agrees with Defendant.  It is true that Plaintiffs' allegations include some of these types of occupations like housekeepers, gardeners, and cooks. (*See* Compl. ¶ 14.)  However, WO 15-2001 does not include all cooks, gardeners, and housekeepers; it only includes those services related to a "private household or its premises."  § 11050(2)(I).  Plaintiffs raise no argument why a private household includes a civil immigration detention facility.  The Court finds that Wage Order 15-2001 does not support Plaintiffs' claims.  Accordingly, the Court **GRANTS IN PART** Defendant's Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claims in the fourth through seventh causes of action to the extent they rely on Wage Order 15-2001.

## IV.    Derivative Claims (Third, Eleventh, and Twelfth Causes of Action)

Defendant argues that Plaintiffs remaining causes of action must fail to the extent Plaintiffs' substantive claims are dismissed. (MTD 29.)  In addition, Defendant argues Plaintiffs' unjust enrichment merits special attention and fails regardless of whether Plaintiffs' substantive claims succeed or fail. (*See id.*)

### A. Unjust Enrichment (Twelfth Cause of Action)

Defendant posits that Plaintiffs' unjust enrichment claim must fail because unjust enrichment is an equitable remedy and an equitable theory of recovery is barred if an adequate remedy exists at law against the same person. (MTD 29 (citing *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996)).)  Defendant explains that courts typically find unjust enrichment to be unavailable when a plaintiff's other claims prove that adequate

1   remedies exist.  (*Id.* (citing, e.g., *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-

2   8629 FMO (Ex), 2016 WL 7486600, at *13 (C.D. Cal. Sept. 27, 2016)).)  Thus, Defendant

3   argues that Plaintiffs' statutory causes of action under the TVPA and the California Labor

4   Code all seek redress for the same injuries as Plaintiffs' unjust enrichment claim.

5   Defendant urges the Court to limit Plaintiffs' unjust enrichment claim accordingly.

6        Plaintiffs counter that Federal Rules of Civil Procedure 8(a)(3) and 8(d)(2) allow

7   them to plead alternative forms of relief.  (Opp'n 31.)  Furthermore, Plaintiffs point the

8   Court to *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), where

9   the Ninth Circuit determined that a unjust enrichment claim should not be dismissed as

10  duplicative of a plaintiff's other claims according to Rule 8(d)(2).  (Opp'n 31.)

11       The issue here falls squarely under *Astiana*.  In California, there is no "standalone

12  cause of action for 'unjust enrichment.'"  *Astiana*, 783 F.3d at 762 (citing *Durell v. Sharp*

13  *Healthcare*, 183 Cal. App. 4th 1350, 1370 (Ct. App. 2010); and *Jogani v. Superior Court*,

14  165 Cal. App. 4th 901, 911 (Ct. App. 2008)).  California state courts are split on whether

15  California law recognizes a cause of action for unjust enrichment.  *See McMillan v. Lowe's*

16  *Home Ctrs., LLC*, No. 15-CV-695-KJM-SMS, 2016 WL 232319, at *6 (E.D. Cal. Jan. 20,

17  2016) (citing *Paskenta Band of Nomlaki Indians v. Crosby*, No. 15-00538, 2015 WL

18  4879650, at *6 (E.D. Cal. Aug. 14, 2015)).  However, *Astiana* interpreted California law

19  to recognize that an unjust enrichment claim may be construed as an action in quasi-

20  contract.  783 F.3d at 762.  The *Astiana* court went on to hold that where a plaintiff states

21  a claim for relief under a quasi-contract cause of action that cause should not be dismissed

22  as "duplicative or superfluous" to the plaintiff's other claims.  *Id.* (citing Fed. R. Civ. P.

23  8(d)(2)).

24       "To allege unjust enrichment as an independent cause of action, a plaintiff must

25  show that the defendant received and unjustly retained a benefit at the plaintiff's expense."

26  *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038–39 (9th Cir. 2016) (citing

27  *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (Ct. App. 2000)).  Here, Plaintiffs

28  allegations sufficiently state a claim for unjust enrichment or quasi-contract.  Defendant

1    received the value of Plaintiffs' labor and allegedly did not adequately compensate

2    Plaintiffs.  The Court **DENIES IN PART** Defendant's Motion as to Plaintiffs' twelfth

3    cause of action; however, the Court qualifies its holding as follows.  *Astiana* and Federal

4    Rule of Civil Procedure 8(d)(2) allow Plaintiffs to plead alternative causes of action, but

5    the Court understands that Plaintiffs cannot recover twice for the same injury.  *Gen. Tel.*

6    *Co. of the Nw., Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 333 (1980)

7    (citation omitted) ("It also goes without saying that the courts can and should preclude

8    double recovery by an individual.").

9         ***B. Remaining Derivative Claims (Third and Eleventh Causes of Action)***

10        Defendant argues that Plaintiffs' derivative causes of action—California Unfair

11   Competition Law and Negligence—should be dismissed as they rely entirely on violations

12   of the federal and California TVPA and California Labor Code.  (MTD 29.)  Because

13   Plaintiffs claims survive this Motion, the Court will not dismiss Plaintiffs' derivative

14   claims.  Thus, the Court **DENIES IN PART** Defendant's Motion as to Plaintiffs' third and

15   eleventh causes of action.

16                               **CONCLUSION**

17        In light of the following, the Court **GRANTS IN PART** and **DENIES IN PART**

18   Defendant's Motion to Dismiss, (ECF No. 18).  Additionally, the Court **LIFTS** the stay on

19   these proceedings.

20        **IT IS SO ORDERED.**

21   Dated: May 14, 2018

22                                    Hon. Janis L. Sammartino
23                                    United States District Judge

24

25

26

27

28

# EXHIBIT C

J. MARK WAXMAN, CA Bar No. 58579
  mwaxman@foley.com
NICHOLAS J. FOX, CA Bar No. 279577
  nfox@foley.com
**FOLEY & LARDNER LLP**
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130
T: 858.847.6700 // F:  858.792.6773

EILEEN R. RIDLEY, CA Bar No. 151735
  eridley@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET, SUITE 1700
SAN FRANCISCO, CA 94104-1520
T: 415.434.4484 // F: 415.434.4507

ROBERT L. TEEL CA Bar No. 127081
  lawoffice@rlteel.com
**LAW OFFICE OF ROBERT L. TEEL**
1425 BROADWAY, MAIL CODE: 20-6690
SEATTLE, WASHINGTON 98122
T: 866.833.5529 // F:855.609.6911

Attorneys for Plaintiffs SLYVESTER
OWINO, JONATHAN GOMEZ, and
the Proposed Class(es)

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

Case No. 17-CV-01112-JLS-NLS

4816-3458-2119.1

Formatted



1  SLYVESTER OWINO and JONATHAN
   GOMEZ, on behalf of themselves and all
2  others similarly situated,
3                              Plaintiffs,
4          vs.
5  CORECIVIC, INC.,
6                              ~~Defendant~~
                             Defendant.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. 17-CV-01112-JLS-NLS

**CLASS ACTION**

**COMPLAINT FOR:**

(1) **FORCED LABOR AND
    VIOLATION OF THE
    TRAFFICKING VICTIMS
    PROTECTION ACT,
    18 U.S.C. § 1589,** *et seq.;*
(2) **FORCED LABOR AND
    VIOLATION OF THE
    CALIFORNIA TRAFFICKING
    VICTIMS PROTECTION ACT,
    CAL. CIVIL CODE § 52.5;**
(3) **UNFAIR COMPETITION, CAL.
    BUS. & PROF. CODE §§ 17200,** *et
    seq.;*
(4) **VIOLATIONS OF THE CAL.
    LABOR CODE;**
(5) **VIOLATION OF CAL.
    INDUSTRIAL WELFARE
    COMMISSION ORDERS;**
(6) **NEGLIGENCE; AND**
(7) **UNJUST ENRICHMENT**
~~(7)~~(8)    **VIOLATION OF LABOR
    CODE §§ 2698,** *et seq.* **PRIVATE
    ATTORNEY GENERAL ACT
    ("PAGA")**

DEMAND FOR JURY TRIAL

-2-            Case No. 17-CV-01112-JLS-NLS

4816-3458-2119.1

**INTRODUCTION**

1.      Plaintiffs Sylvester Owino ("Owino") and Jonathan Gomez ("Gomez") (individually referred to herein as a "Plaintiff" and collectively as the "Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorney(s), for their complaint against Defendant, CoreCivic, Inc. ("CoreCivic" or "Defendant") files this lawsuit to stop CoreCivic's engagement/implementation of illegal practices and to obtain damages and restitution from CoreCivic for said practices of forcing/coercing detainees to clean, maintain, and operate CoreCivic's detention facilities in violation of both federal and state human trafficking and labor laws.  Plaintiffs allege the following based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters, and based upon, *inter alia*, the investigation conducted by and through their attorneys, which includes, without limitation, a review of Defendant's public documents, announcements, and wire and press releases published by and regarding CoreCivic, and information readily obtainable on the internet.

**JURISDICTION AND VENUE**

2.      This Court has federal question jurisdiction because this case arises out of violations of the federal Trafficking in Victims Protection Act under 18 U.S.C. §§ 1589, *et seq.* (the "TVPA").

3.      This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because:

      a. the amount in controversy exceeds $5,000,000, exclusive of interest and costs;

      b. the proposed Class consists of more than 100 Class Members; and

      c. none of the exceptions under the subsection apply to this action.

4.      This Court has supplemental jurisdiction over the violations of the California Trafficking in Victims Protection Act, Cal. Civil Code § 52.5 ("CTVPA"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and the California Labor Code and California Industrial Welfare Commission Wage Orders, as well as other state statutory and common law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction over pendant state law claims).

5.      This Court has personal jurisdiction over Defendant because:

-1-      Case No. 17-CV-01112-JLS-NLS

4816-3458-2119.1

a.    CoreCivic is registered to, and in fact does, conduct business in California; and

b.    CoreCivic has sufficient minimum contacts in California, and

c.    CoreCivic has intentionally availed itself by participating in the markets within California through the sale and provision of its services.

6.    Venue is proper in this District under 28 U.S.C. § 1391 because:

a.    Plaintiffs are residents of, and domiciled in, this District,

b.    Defendant conducts substantial business in this District, and

c.    a substantial part of the events giving rise to Plaintiffs' claims alleged herein occurred in this District.

**PARTIES**

7.    Plaintiff Sylvester Owino is a resident of the County of San Diego, in the State of California. Mr. Owino was a civil immigration detainee who worked at CoreCivic's Otay Mesa Detention Center at various times from November 7, 2005 through March 9, 2015.

8.    Plaintiff Jonathan Gomez is a resident of the County of San Diego, in the State of California. Mr. Gomez was a civil immigration detainee who worked at CoreCivic's Otay Mesa Detention Center at various times from June 14, 2012 through September 18, 2013.

9.    Defendant CoreCivic, Inc. is a Maryland corporation with its principal place of business at 10 Burton Hills Blvd., Nashville, Tennessee 37125.

**SUMMARY AND COMMON FACTUAL ALLEGATIONS**

10.    Plaintiffs are former civil immigration detainees who bring this proposed class action lawsuit on behalf of all civil immigration detainees who were incarcerated and forced to work by CoreCivic, a for-profit corporation engaged in the business of owning and operating detention facilities and prisons from January 1, 2004 to the opt-out date, inclusive (the "Class Period").

11.    CoreCivic owns and operates detention facilities around the country, including the Otay Mesa Detention Center, a 1,492 bed detention center located in Otay Mesa, California (the "Otay Facility"). CoreCivic unlawfully forces, coerces, and uses

Case No. 17-CV-01112-JLS-NLS

detainees to clean, maintain, and operate their facility. In some instances CoreCivic pays detainees $1 per day, and in other instances detainees are not compensated with wages at all, for their labor and services. In 2016, CoreCivic reported $1.79 billion in total revenues.

12.    Plaintiffs seek injunctive relief requiring CoreCivic to implement and maintain policies and practices to comply with all applicable laws and regulations designed to protect human rights, prevent and remedy these types of unlawful trafficking and forced labor practices, and protect detainees' employment rights, well-being and safety, as well as restitution, damages, statutory remedies, disgorgement, and other further relief this Court may deem proper.

13.    Plaintiffs also seek to recover, *inter alia*, on their own behalf and on behalf of all others similarly situated, the difference between the fair value of the labor or work they performed and what they were paid (*i.e.*, the $1 per day). CoreCivic violated federal law prohibiting forced labor when CoreCivic forced, coerced, and used Plaintiffs and others to work for no pay, cleaning the "pods" where they were housed, and cleaning, maintaining, and operating other areas of the CoreCivic detention facilities under threat of punishment, including lockdown and solitary confinement.

14.    Plaintiffs were engaged, suffered, and permitted to work by CoreCivic at, without limitation, the Otay Facility. CoreCivic controlled the wages, hours, and working conditions of Plaintiffs. In the course of their labor and employment by CoreCivic, Plaintiffs and other putative class members, without limitation:

  a.  scrubbed bathrooms, showers, toilets, and windows;

  b.  cleaned and maintained CoreCivic's on-site medical facility;

  c.  cleaned the medical facility's toilets, floors, and windows;

  d.  cleaned patient rooms and medical staff offices;

  e.  swept, mopped, stripped, and waxed the floors of the medical facility;

  f.  washed medical facility laundry;

  g.  swept, mopped, stripped, and waxed floors throughout the facility;

  h.  washed detainee laundry;

  i.  prepared and served detainee meals;

-3-        Case No. 17-CV-01112-JLS-NLS

j.  assisted in preparing catered meals for law enforcement events sponsored by CoreCivic;

k.  performed clerical work for CoreCivic;

l.  prepared clothing for newly arriving detainees;

m.  provided barber services to detainees;

n.  ran and managed the law library;

o.  cleaned intake areas and solitary confinement unit;

p.  cleaned and prepared vacant portions of the facility for newly arriving detainees;

q.  cleaned the facility's warehouse; and

r.  maintained the exterior and landscaping of the CoreCivic buildings.

15.  Detainees who "volunteered" for such work were paid $1 per day. The foregoing labor and services for which detainees were paid $1 per day are referred to herein as the "Dollar-A-Day Work." In addition, Plaintiffs and detainees are/were only allowed to spend their $1 per day at the CoreCivic "company store" or commissary.

### CoreCivic's Unlawful Labor and Human Trafficking Practices

16.  In addition to the Dollar-A-Day Work, CoreCivic forced and coerced Plaintiffs and members of the putative class, to clean, maintain, scrub, sweep, and mop floors, bathrooms, showers, toilets, and windows for no pay at all, not only in their living areas ("pods"), but also throughout the other interior and exterior areas of CoreCivic's detention facilities by threatening to punish not only those who refused to work, but also other detainees in the pods with confinement, physical restraint, substantial and sustained restriction, deprivation, and violation of their liberty, and solitary confinement, all with the intent to obtain forced labor or services and as punishment for any refusal to work causing Plaintiffs severe mental pain and suffering. The foregoing forced and coerced labor and services under threat of punishment, confinement, physical restraint, and deprivation of liberty for which Detainees were paid nothing at all are referred to herein as the "Forced Labor."

17.  Defendant paid Plaintiffs and all its other civil immigration detainee-employees one dollar ($1) per day for Dollar-A-Day Work and nothing at all for their

-4-                    Case No. 17-CV-01112-JLS-NLS

Forced Labor and acted with malice, oppression, fraud, and duress in committing the foregoing acts.  As a result of Defendant's violations of the law, CoreCivic was unjustly enriched.

### Federal and State Trafficking Victims Protection Acts

18.     As a result of the foregoing, Defendant violated federal law prohibiting forced labor. 18 U.S.C. § 1589.  In addition, Defendant violated California law prohibit human trafficking and forced labor. Civ. Code § 52.5.  Plaintiffs seek actual damages, compensatory damages, punitive damages, treble damages, injunctive relief, and mandatory restitution on their own behalf and on behalf of all Defendant's other similarly situated detainees, as well as attorneys' fees and costs, pursuant to 18 U.S.C. §§ 1593 and 1595 and Cal. Civ. Code § 52.5(a).  Plaintiffs also seeks the greater of treble damages or ten thousand ($10,000) pursuant to Cal. Civ. Code § 52.5(b).

19.     Plaintiffs and the putative class members have suffered, and are continuing to suffer, real-world, actual, concrete harm by, without limitation, Defendant's use of Forced Labor and human trafficking, violations of applicable labor laws and orders, unfair and unlawful business practices, and negligence.  The putative class members are presently facing the same imminent real, actual, and concrete harm and injury from CoreCivic's illegal conduct and its failure to redress the harm.

20.     The total number of civil immigration detainees who were subjected to Defendant's Forced Labor and human trafficking practices, and Defendant's illegal Dollar-A-Day Work practices is currently unknown, but these illegal practices appear endemic to the Core-Civic operations on a California-wide, and indeed a nationwide, scale. However, Core-Civic can provide the information regarding how many civil immigration detainees were subjected to these illegal practices through its solitary confinement and detention logs and also through its business records.

21.     CoreCivic has been wrongly and unjustly enriched by its use of Forced Labor and human trafficking practices, Dollar-A-Day Work practices, unlawful business practices, and the retention of such revenues and profits resulting therefrom is grossly unfair.  CoreCivic should not be allowed to retain the revenues, proceeds, profits and other benefits conferred upon it by Plaintiffs and the putative class members.

4816-3458-2119.1

22.     Defendant's unlawful conduct complained of herein constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts.  Defendant's pattern and course of conduct has continued from November 2, 2004 until the present and is a continuing violation since that date.  Neither Plaintiffs nor the Class Members were/are aware of or discovered their legal rights or claims, or could have discovered with any amount of reasonable diligence, the true facts regarding their claims until the present. Plaintiffs and the Class Members were/are ignorant of the true facts regarding Defendant's unlawful and illegal acts, and lacked the ability to have earlier discovered the true facts, until the present due to false statements made by Defendant regarding the legality of their False Labor and Dollar-A-Day Work practices.  Discovery of the true facts did not actually occur, and could not have occurred, until after any applicable statutes of limitations.

### The For-Profit Detention Industry

23.     Throughout the country, undocumented individuals lacking legal permission to enter or remain in the United States are typically brought to a detention facility and placed in removal proceedings in front of an immigration judge. These individuals may include refugees seeking asylum. Individuals detained at the border are only released on a case-by-case basis by the authority of U.S. Bureau of Immigration and Customs Enforcement ("ICE") officials.

24.     ICE uses a combination of publicly and privately owned and operated facilities to detain immigrants. Those in detention include immigrants in the country illegally, asylum seekers, green card holders, and those awaiting immigration hearings (referred to herein as a "detainee" or civil immigration detainee"). Nine (9) of the country's ten (10) largest immigration detention facilities are operated by private companies like CoreCivic, and they hold about two-thirds of the civil immigration detainees in a system that currently keeps more than 31,000 people in custody on a typical day.

25.     The for-profit civil immigration detention business is worth over $3 billion dollars a year.  While some centers are located in border areas, others are far from the border because deportation officers arrest migrants living in the interior of the country as well.  Although they have denied lobbying, private prison corporations such as Core-Civic specifically target legislators over immigration "reform." The companies' success in

4816-3‑‑5‑2119.1

lobbying for immigrant detention has been so successful that by 2015, CoreCivic derived 51% of its revenue from federal contracts.

26.     In March of 2017 it was announced that the United States' civil immigrant detention capacity would be increased by over four-hundred fifty per cent (450%). This signals the largest increase in immigrant detention since World War II and is, in essence, a "get into jail and work for free card" from which Defendant derives nearly $1 billion dollars a year in revenue.

### PLAINTIFF'S EXPERIENCE

27.     Plaintiff Sylvester Owino is a resident of the county San Diego, in the State of California. Mr. Owino was a detainee at CoreCivic's Otay Facility from November 7, 2005 through March 9, 2015. During the Class Period, Mr. Owino performed Dollar-A-Day Work for $1 per day in an unsafe work environment and was forced and coerced to perform Forced Labor at, without limitation, the Otay Facility.

28.     Plaintiff Owino was employed by CoreCivic to provide labor and services in an unsafe working environment cleaning and maintaining CoreCivic's on-site medical facility without personal protective equipment ("PPE").   PPE is special equipment worn to create a barrier between health care workers and germs. This barrier reduces the chance of touching, being exposed to, and spreading germs and helps protect people from infections caused by contact with blood or other bodily fluids.

29.     Plaintiff Jonathan Gomez is a resident of San Diego, California and the county of San Diego who formerly was a detainee at the Otay Facility from June 14, 2012 through September 18, 2013. During the Class Period, Mr. Gomez performed Dollar-A-Day Work for $1 per day in an unsafe work environment and was forced and coerced to perform Forced Labor at the Otay Facility.

### CLASS ACTION ALLEGATIONS

30.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all members of the "Forced Labor Class," preliminarily defined as:

///

-7-          Case No. 17-CV-01112-JLS-NLS

4816-3458-2119.1

### The Nationwide Forced Labor Class

All civil immigration detainees who performed Forced Labor uncompensated work for CoreCivic at any Detention Facility owned or operated by it between November 2, 2004 to the applicable opt-out date, inclusive.

Such persons are collectively referred to herein individually as a "Nationwide Forced Labor Class Member" and collectively as the "Nationwide Forced Labor Class" or "Nationwide Forced Labor Class Members."

### The California Forced Labor Class

All civil immigration detainees who performed Forced Labor uncompensated work for CoreCivic at any Detention Facility located in California owned or operated by it at time during the period from November 2, 2004 to the applicable op-out date, inclusive.

Such persons are collectively referred to herein individually as a "California Forced Labor Class Member" and collectively as the "California Forced Labor Class" or "California Forced Labor Class Members."

### The California Labor Law Class

All civil immigration detainees who performed Dollar-A-Day Work for CoreCivic and were paid one dollar ($1) per day at any Detention Facility located in California owned or operated by it at any time between November 2, 2004 to the applicable op-out date, inclusive.

Such persons are collectively referred to herein individually as a "California Labor Law Class Member" and collectively as the "California Labor Law Class."

31.   The Classes described in this Complaint may be jointly referred to as the "Class" and proposed Members of the Classes may be jointly referred to as "Class Members."

32.   Excluded from the Class are the Defendant herein, law enforcement agencies and personnel, members of the foregoing persons' immediate families and their legal representatives, heirs, successors, or assigns, and any entity or person in which Defendant has or had a controlling or supervisory interest or control over at all relevant times.

4816-3458-2119.1

33.     Plaintiffs satisfy the numerosity, commonality, typicality, adequacy, and predominance prerequisites for suing as representative parties pursuant to Rule 23 of the Federal Rules of Civil Procedure.

34.     <u>Numerosity.</u> The exact number of proposed Class Members is currently not known, but is believed to consist of thousands if not tens of thousands of former or current CoreCivic detainees who have been forced and/or coerced to work, whether for one dollar ($1) per day or no pay whatsoever, making joinder of each individual Class Member impracticable.

35.     <u>Commonality.</u> Common questions of law and fact exist for the proposed Class' claims and predominate over questions affecting only individual Class Members. Common questions include, without limitation:

a. whether Plaintiffs and the Class Members were entitled to the protections of the California labor laws and California Industrial Welfare Commission wage orders;

b. whether Plaintiffs and the Class Members performed compensable work;

c. whether Plaintiffs and the Class Members were paid $1 per day for their labor;

d. whether forcing and coercing Plaintiffs and the Class Members to perform Forced Labor constitutes a violation of each Class Member's TVPA and CTVPA, human rights, California labor law and California Industrial Welfare Commission wage orders, and other statutory and common law rights as set forth herein;

e. what monitoring, limiting, and supervisory procedures and practices should CoreCivic be required to implement to ensure ongoing protection of each Class Member's TVPA, CTVPA, California labor law, and other legal rights and as part of any prohibitory and mandatory injunctive relief ordered by the Court;

f. whether CoreCivic acted deliberately or negligently by unlawfully, without limitation:

i.   failing to adequately protect Class Members TVPA, CTVPA, and California labor law rights

ii.  forcing and coercing detainees to perform Forced Labor;

iii. failing to follow applicable laws; and

-9-          Case No. 17-CV-01112-JLS-NLS

iv. failing to maintain adequate monitoring, limiting, and supervisory procedures, policies, and practices; and

g. whether Plaintiffs and Class Members may obtain damages, restitution, disgorgement, declaratory, and prohibitory and mandatory injunctive relief against CoreCivic.

36.    <u>Typicality.</u>  Plaintiffs' claims are typical of the claims of the proposed Class because, among other things, Plaintiffs and Class Members legal claims all arise from CoreCivic's unlawful practices, and Plaintiffs and Class members sustained similar injuries and statutory damages as a result of CoreCivic's uniform illegal conduct.

37.    <u>Adequacy.</u>  Plaintiffs will fairly and adequately protect the interests of the Class.  Their interests do not conflict with Class Members' interests and they have retained counsel competent and experienced in complex and class action litigation to vigorously prosecute this action on behalf of the Class.  In addition to satisfying the prerequisites of FRCP 23(a), Plaintiffs satisfy the requirements for maintaining a class action under FRCP 23(b)(2) and (3).

38.    Common questions of law and fact predominate over any questions affecting only individual Class Members and a Class action is superior to individual litigation because:

a. the amount of damages available to individual Plaintiffs are insufficient to make litigation addressing CoreCivic's conduct economically feasible in the absence of the Class action procedure;

b. individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system; and

c. the Class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

39.    In addition, Class certification is appropriate under FRCP Rule 23(b)(1) or (b)(2) because:

4816-3448-2119.1

a. the prosecution of separate actions by the individual Members of the proposed Class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for CoreCivic;

b. the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c. CoreCivic has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed Class as a whole.

## FIRST CAUSE OF ACTION

### Violation of the Trafficking Victims Protection Act

### 18 U.S.C. §§ 1589, *et seq.*

### (On Behalf of the Plaintiffs Individually and the Class)

40.     Plaintiffs and Class Members incorporate by reference the foregoing allegations.

41.     18 U.S.C. § 1589(a) of the Federal Trafficking Victims Protection Act provides that:

"Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means — (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under [18 U.S.C. § 1589] subsection (d)."

42.     Plaintiffs and Class Members were forced, coerced, and made to perform labor and services, including Forced Labor, for CoreCivic by means of:

a. force, threats of force, physical restraint and threats of physical restraint;

b. serious harm and threats of serious harm; and

-11-        Case No. 17-CV-01112-JLS-NLS

c. abuse and threatened abuse of law or legal process to Plaintiffs and the Class Members, and by means of a scheme, plan, pattern, and uniform policy intended to cause Plaintiffs and the Class to believe that, if they did not perform such labor or services, that they would suffer serious harm and/or physical restraint.

CoreCivic was unjustly enriched by the unlawful practice of forcing and coercing Plaintiffs and the Class Members to perform uncompensated Forced Labor through human trafficking.  By exploiting these unlawful practices CoreCivic materially and significantly reduced its labor costs and expenses, in addition to increasing its profits.

43.      Plaintiffs and the Class Members are victims of Forced Labor under 18 U.S.C. § 1589.  CoreCivic committed the illegal and unlawful offense(s) of Forced Labor against the Plaintiffs and the Class Members under 18 U.S.C. § 1589, *et seq.* CoreCivic knowingly and financially benefitted from implementing/participating in a venture, plan, scheme, pattern of conduct, and practice CoreCivic knew, or should have known, was unlawful and in violation of Forced Labor laws under to 18 U.S.C. § 1589. Plaintiffs and the Class Members are entitled to, without limitation, the remedies set forth in 18 U.S.C. § § 1593 and 18 U.S.C. § 1595(a).

44.      18 U.S.C. § 1593 states:

(a) "Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalties authorized by law, the court shall order restitution for any offense under this chapter."

(b)

(1) "The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses, as determined by the court under paragraph (3) of this subsection."

(2) "An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A."

(3) "As used in this subsection, the term "full amount of the victim's losses" has the same meaning as provided in section 2259(b)(3) and shall in addition include the greater of the gross income or value to the

-12-                 Case No. 17-CV-01112-JLS-NLS

defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.)."

(4) "The forfeiture of property under this subsection shall be governed by the provisions of section 413 (other than subsection (d) of such section) of the Controlled Substances Act (21 U.S.C. § 853)."

(c) "As used in this section, the term "victim" means the individual harmed as a result of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or a representative of the victim's estate, or another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named such representative or guardian."

45.     18 U.S.C. § 1595(a) states:

"An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."

46.     Accordingly, Plaintiffs and the Class Members respectfully request that the Court issue declaratory relief declaring CoreCivic's practice(s) involving Forced Labor and human trafficking – forcing and coercing Plaintiffs and Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restriction, deprivation, solitary confinement - to be illegal and unlawful.

47.     Plaintiffs and Class Members request the Court to grant an injunction requiring CoreCivic to cease its unlawful practices described herein and enjoin CoreCivic from forcing and coercing Plaintiffs and the Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restriction, deprivation, and solitary confinement.

48.     Plaintiffs and the Class Members request the Court to enter an injunction in connection with the foregoing ordering that CoreCivic:

4816-3458-2119.1

a. engage a third party ombudsman as well as internal compliance personnel to monitor, conduct inspection, and audit CoreCivic's safeguards and procedures on a periodic basis;

b. audit, test, and train its internal personnel regarding any new or modified safeguards and procedures;

c. conduct regular checks and tests on its safeguards and procedures;

d. Periodically conduct internal training and education to inform internal personnel how to identify violations when they occur and what to do in response; and

e. periodically and meaningfully educate its personnel and detainees about their labor and human trafficking rights through, without limitation, educational programs and classes upon detention, as well as any steps that must be taken to safeguard such rights.

49.     Plaintiffs and the Class Members have suffered damages in an amount to be determined at trial.  Plaintiffs and the Class Members request the Court enter an order pursuant to 18 U.S.C. § 1595(a) awarding Plaintiffs and the Class Members compensatory and punitive damages.

50.     Plaintiffs and the Class Members request this Court to enter an order pursuant to 18 U.S.C. § 1593 awarding Plaintiffs and the Class Members mandatory restitution in addition to the recovery of their reasonable attorneys' fees they are entitled to recover pursuant to 18 U.S.C. § 1595(a).

51.     Plaintiffs and the Class Members also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute and as they are entitled to recover pursuant to 18 U.S.C. § 1595(a).

## SECOND CAUSE OF ACTION

### Violation of the California Trafficking Victims Protection Act

### Cal. Civ. Code § 52.5

**(On Behalf of the Plaintiffs Individually and the California Forced Labor Class)**

52.     Plaintiffs and California Forced Labor Class Members incorporate by reference the foregoing allegations.

-14-                    Case No. 17-CV-01112-JLS-NLS

53.     Cal. Civ. Code § 52.5 - The California Trafficking Victims Protection Act provides, *inter alia,* that:

(a) "A victim of human trafficking, as defined in Section 236.1 of the Penal Code, may bring a civil action for actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief.  A prevailing plaintiff may also be awarded attorney's fees and costs."

(b) "In addition to the remedies specified herein, in any action under subdivision (a), the plaintiff may be awarded up to three times his or her actual damages or ten thousand dollars ($10,000), whichever is greater.  In addition, punitive damages may also be awarded upon proof of the defendant's malice, oppression, fraud, or duress in committing the act of human trafficking."

54.     Cal. Penal Code § 236.1 provides:

(a) "Any person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services, is guilty of human trafficking and shall be punished by imprisonment in the state prison for 5, 8, or 12 years and a fine of not more than five hundred thousand dollars ($500,000)."

(b) "Any person who deprives or violates the personal liberty of another with the intent to effect or maintain a violation of Section 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518 is guilty of human trafficking and shall be punished by imprisonment in the state prison for 8, 14, or 20 years and a fine of not more than five hundred thousand dollars ($500,000)."

55.     Cal. Penal Code § 236.1 also provides in relevant part,

(g)  "The Legislature finds that the definition of human trafficking in this section is equivalent to the federal definition of a severe form of trafficking found in Section 7102(8) of Title 22 of the United States Code."

(h) For purposes of this chapter, the following definitions apply:

(1) "Coercion" includes any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; the abuse or threatened abuse of the legal process; debt bondage; or providing and facilitating the possession of any controlled substance to a person with the intent to impair the person's judgment."

4816-3458-2119.1

(3) "Deprivation or violation of the personal liberty of another" includes substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person, under circumstances where the person receiving or apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out."

(4) "Duress" includes a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person to acquiesce in or perform an act which he or she would otherwise not have submitted to or performed; a direct or implied threat to destroy, conceal, remove, confiscate, or possess any actual or purported passport or immigration document of the victim; or knowingly destroying, concealing, removing, confiscating, or possessing any actual or purported passport or immigration document of the victim."

(5) "Forced labor or services" means labor or services that are performed or provided by a person and are obtained or maintained through force, fraud, duress, or coercion, or equivalent conduct that would reasonably overbear the will of the person."

(6) "Great bodily injury" means a significant or substantial physical injury."

(8) "Serious harm" includes any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor, services, or commercial sexual acts in order to avoid incurring that harm."

56.     Plaintiffs and Class Members were forced, coerced, and made to perform labor and services, including Forced Labor, for CoreCivic by means of:

    a. force, threats of force, physical restraint and threats of physical restraint;

    b. serious harm and threats of serious harm; and

    c. abuse and threatened abuse of law or legal process to Plaintiffs and the Class Members; and

-16-                     Case No. 17-CV-01112-JLS-NLS

d. a scheme, plan, pattern, and uniform policy intended to cause Plaintiffs and the Class Members to believe that, if they did not perform such Forced Labor, that they would suffer serious harm and/or physical restraint.

57. Core Civic materially and significantly reduced its labor costs and expenses, and increased its profits, by unlawfully forcing and coercing Plaintiffs and the Class Members to perform uncompensated Forced Labor and human trafficking. Plaintiffs and the Class Members are victims of Forced Labor under Cal. Civ. Code § 52.5. CoreCivic committed the illegal and unlawful offense of Forced Labor against Plaintiffs and the Class Members under Cal. Civ. Code § 52.5. CoreCivic knowingly and financially benefitted from participation in a venture, plan, scheme, pattern of conduct, and practice CoreCivic knew, or should have known, were unlawful and in violation California Forced Labor laws pursuant to Cal. Civ. Code § 52.5.

58. Accordingly, Plaintiffs and the Class Members respectfully request that the Court issue declaratory relief declaring CoreCivic's practice(s) involving Forced Labor and human trafficking – forcing and coercing Plaintiffs and Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restriction, deprivation, solitary confinement to be illegal and unlawful.

59. Plaintiffs and the Class Members request the Court to enter an injunction requiring CoreCivic to cease the unlawful practices described herein and enjoin CoreCivic from using Forced Labor by forcing and coercing Plaintiffs and the Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restriction, and solitary confinement.

60. Plaintiffs and the Class Members request the Court to enter an injunction in connection with the foregoing ordering that CoreCivic:

a. engage a third party ombudsman as well as internal compliance personnel to monitor, conduct inspection, and audit CoreCivic's safeguards and procedures on a periodic basis;

b. audit, test, and train its internal personnel regarding any new or modified safeguards and procedures;

c. conduct regular checks and tests on its safeguards and procedures;

4816-3458-2119.1

d. periodically conduct internal training and education to inform internal personnel how to identify violations when they occur and what to do in response; and

e. periodically and meaningfully educate its personnel and detainees about their labor and human trafficking rights through, without limitation, educational programs and classes upon detention, as well as any steps that must be taken to safeguard such rights.

61.     Plaintiffs and the Class Members have suffered damages in an amount to be determined at trial.  Plaintiffs and the Class Members request the Court enter an order pursuant to Cal. Civ. Code § 52.5 awarding Plaintiffs and the Class Members compensatory and punitive damages.

62.     Plaintiffs and the Class Members request the Court enter an order pursuant to Cal. Civ. Code § 52.5 awarding Plaintiffs and the Class Members mandatory restitution.  Plaintiffs and the Class Members are entitled to recover their reasonable attorneys' fees pursuant to Cal. Civ. Code § 52.5(a).  Plaintiffs and the Class Members therefor also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute and as they are entitled to recover pursuant Cal. Civ. Code § 52.5(s).

### THIRD CAUSE OF ACTION

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

**(On Behalf of Plaintiffs Individually and the California Forced Labor Class and California Labor Law Class)**

63.     Plaintiffs and Class Members incorporate the above allegations by reference.

64.     California's Unfair Competition Law ("UCL") prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [California's False Advertising Law]." Cal. Bus. & Prof. Code § 17200.

65.     CoreCivic willfully violated, and continues to violate, the "unlawful" prong of the UCL by violating the federal Trafficking Victims Protection Act, 18 U.S.C. § 1589, et seq., the California Trafficking Victims Protection Act, Cal. Civ. Code § 52.5,

-18-          Case No. 17-CV-01112-JLS-NLS

and the California labor laws and orders of the California Industrial Welfare Commission, and other applicable statutes and laws alleged herein.

66.     CoreCivic willfully violated, and continues to violate, the "unfair" prong of the UCL by gaining unjust profits from "Dollar-A-Day Work" and Forced Labor practices in violation of Plaintiffs and the Class Members' statutorily protected rights.

67.     The acts, omissions, and practices of Defendant, as described herein, further constitutes "unfair" and "unlawful" business acts and practices under the UCL in that Defendant's conduct offends public policy against human trafficking and Forced Labor, and seeks to profit and capitalize on the violations of Plaintiffs' and the Class Members' applicable federal and state human and labor law rights.

68.     As a direct and proximate result of Defendant's unlawful and unfair business practices, Plaintiffs and putative Class Members have suffered injury, including but not limited to, monetary loss in connection with their Dollar-A-Day Work and Forced Labor services directly and proximately caused by CoreCivic's unlawful and unfair conduct and business practices, as well as, the violation of their human rights and labor law rights.

69.     Accordingly, Plaintiffs and the California Forced Labor Class Members and California Labor Law Class members are entitled to, and hereby seek, an order of this Court enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to take corrective action pursuant to Section 17203 of the UCL.

70.     Plaintiffs and Class Members are further entitled to, and hereby seek an order for disgorgement and restitution of all monies acquired from the sales of the CoreCivic's services which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition by CoreCivic, as well as any other further equitable relief this Court may deem necessary, just, and proper under the circumstances. Additionally, Plaintiffs and the Class seek pre-and-post judgment interest and attorneys' fees and costs as allowed by statute. *See e.g.*, Cal. Code of Civ. Proc. § 1021.5.

///
///

4816-3458-2119.1

## FOURTH CAUSE OF ACTION

**Failure to Pay Minimum Wage**

**Cal. Labor Code §§ 1194, 1197, 1197.1**

**& I.W.C. Wage Orders No. 5-2001, 15-20011**

**(On behalf of Plaintiffs Individually and the California Labor Law Class)**

71.     Plaintiffs and Class Members incorporate by reference the foregoing allegations.

72.     California Labor Code §§ 1194, 1197, 1197.1 and Industrial Welfare Commission Wage Orders 5-2001 and 15-2001 entitle non-exempt employees to an amount equal to or greater than the minimum wage for all hours worked. All hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation.

73.     CoreCivic did not and does not compensate Detainees, including Plaintiffs and the California Labor Law Class at the minimum wage for all "Dollar-A-Day Work" hours performed.

74.     As a result of violations of Cal. Labor Code §§ 1194, 1197, 1197.1 and Industrial Welfare Commission Wage Orders 5-2001, 15-2001 for failure to pay minimum wage, CoreCivic is liable for civil penalties pursuant to Cal. Labor Code §§ 558, 1197.1, and 2698 *et seq.*

75.     Accordingly, Plaintiffs and Class Members are entitled to, and hereby seek, actual damages, punitive damages, reasonable attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5, pre-and post-judgment interest at the applicable legal rate, and any and all further equitable relief that this Court deems appropriate.

## FIFTH CAUSE OF ACTION

**Failure to Pay Overtime Wages**

**Cal. Labor Code §§ 204, 510, 1194, and Wage Orders 5-2001, 15-2001**

**(On behalf of Plaintiffs Individually and the California Labor Law Class)**

76.     Plaintiffs and Class Members incorporate the above allegations by reference.

77.     California Labor Code § 510 and the "Hours & Days of Work" Section of the Wage Orders entitles non-exempt employees to one and one-half times their hourly

4816-3418-2119.1

pay for any and all hours worked in excess of eight hours in any work day, for the first eight hours worked on the seventh consecutive day of work in a work week, and for any work in excess of forty hours in any one work week.  Employees are entitled to the one and one-half times their hourly pay for any and all hours worked in excess of twelve (12) hours in any work day and in excess of eight (8) hours on the seventh (7th) consecutive work day.

78.     Plaintiffs and Class Members regularly worked in excess of eight (8) hours per day and/or forty (40) hours per week without overtime compensation.  By failing to pay overtime compensation to Plaintiffs and Class Members, CoreCivic violated and continues to violate Cal. Labor Code §§ 204, 510 and 1194 and Wage Orders 5-2001, 15-2001.

79.     As a result of CoreCivic's unlawful acts, Plaintiffs and Class Members have been deprived of overtime compensation in an amount to be determined at trial, and are entitled to recovery of such amounts, plus interest thereon, attorneys' fees and costs, under Cal. Labor Code § 1194.

## SIXTH CAUSE OF ACTION

### Failure to Provide Mandated Meal Periods

### Cal. Labor Code §§ 226.7, 512, and I.W.C. Wage Orders 5-2001, 15-2001

### (On behalf of Plaintiffs Individually and the California Labor Law Class)

80.     Plaintiffs and Class Members incorporate the above allegations by reference.

81.     CoreCivic failed to maintain a policy of providing meal breaks as required by Cal. Labor Code §§ 226.7, 512 and Wage Orders 5-2001, 15-2001.

82.     Since at least three years prior to the filing of this action, Plaintiffs and Class Members have worked in excess of five hours and at times ten hours a day without being provided at least half hour meal periods in which they were relieved of their duties, as required by Cal. Labor Code §§ 226.7 and 512 and Wage Orders 5-2001, 15-2001. *See Brinker Restaurant Corp., et al. v. Superior Court* (2012) 53 Cal. 4th 1004, 1040-41 ("The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted

-21-          Case No. 17-CV-01112-JLS-NLS

4816-3456-2119.1

30—minute break, and does not impede or discourage them from doing so... [A] first meal period [is required] no later than the end of an employee's fifth hour of work, and a second meal period [is required] no later than the end of an employee's 10th hour of work.").

83.     Because CoreCivic failed to provide proper meal periods, it is liable to all Plaintiffs and Class Members for one hour of additional pay at the regular rate of compensation for each work day that the proper meal periods were not provided, pursuant to Cal. Labor Code §§ 226.7 and 512 and Wage Orders 5-2001, 12-2001, as well as interest thereon, plus reasonable attorneys' fees and costs of suit pursuant to Cal. Code of Civ. Proc. Code § 1021.5.

**SEVENTH CAUSE OF ACTION**

**Failure to Provide Mandated Rest Periods**

**Cal. Labor Code § 226.7 and I.W.C. Wage Orders 5-2001, 15-2001**

**(On behalf of Plaintiffs Individually and the California Labor Law Class)**

84.     Plaintiffs and Class Members incorporate the above allegations by reference.

85.     Since at least three years prior to the commencement of this action. Plaintiffs and Class Members have regularly worked without any rest periods that are required by Wage Orders 5-2001, 15-2001. *See Brinker,* 53 Cal. 4th 1004 at 1029 ("Employees are entitled to 10 minutes rest for shifts three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours; 30 minutes for shifts of more than 10 hours up to 14 hours, and so on.").

86.     Because CoreCivic failed to provide proper rest periods, it is liable to Plaintiffs and Class Members for one (1) hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not provided, pursuant to Cal. Labor Code § 226.7 and Wage Orders 5-2001, 152001, as well as interest thereon, plus reasonable attorneys' fees and costs of suit pursuant to Cal. Code of Civ. Proc. § 1021.5.

///
///

## EIGHTH CAUSE OF ACTION

**Failure to Furnish Timely and Accurate Wage Statements**

**Cal. Labor Code § 226**

**(On behalf of Plaintiffs Individually and the California Labor Law Class)**

87.   Plaintiffs and Class Members incorporate the above allegations by reference.

88.   California Labor Code § 226 requires an employer to furnish its employees with an accurate itemized statement in writing showing, among other things:

 a. all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked by each respective individual;

 b. total hours worked by each respective individual;

 c. gross wages earned;

 d. net wages earned;

 e. all deductions;

 f. inclusive dates of the period for which the employee is paid;

 g. the name of the employee and an employee identification or social security number; and

 h. the name and address of the legal entity that is the employer.

89.   As a pattern and practice, in violation of Labor Code § 226(a), CoreCivic did not provide Plaintiffs or Class Members with accurate itemized wage statements in writing showing:

 a. all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked by each respective individual;

 b. number of hours worked;

 c. gross wages earned;

 d. net wages earned;

 e. all deductions;

 f. inclusive dates of the period for which the employee is paid;

 g. the employee identification or social security number; and

 h. the address of the legal entity that is the employer.

-23-    Case No. 17-CV-01112-JLS-NLS

90.     As a result of CoreCivic's failure to provide accurate itemized wages statements, Plaintiffs and Class Members suffered actual damages and harm by being unable to determine their applicable hourly rate or the amount of overtime worked for each pay period, which prevented them from becoming aware of these violations and asserting their statutory protections under California law.

91.     CoreCivic has knowingly and intentionally failed to comply with Cal. Labor Code § 226(a) and failed to provide a wage statement to Plaintiffs and Class Members.

92.     Pursuant to Cal. Labor Code § 226(e), the Plaintiffs and Class Members are entitled to recover the greater of all actual damages or fifty dollars ($50.00) for the initial pay period in which a violation occurs and one hundred dollars ($100.00) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000.00).

93.     The Plaintiffs and Class Members are entitled to an award of costs and reasonable attorneys' fees pursuant to Cal. Labor Code § 226(h).

## NINTH CAUSE OF ACTION

**Failure to Pay Compensation Upon Termination/Waiting Time Penalties**

**Cal. Labor Code §§ 201-2031**

**(On behalf of Plaintiffs Individually and the California Labor Law Class)**

94.     Plaintiffs and Class Members incorporate the above allegations by reference.

95.     California Labor Code §§ 201 and 202 require CoreCivic to pay all compensation due and owing to Plaintiffs and Class Members immediately upon discharge or within seventy-two hours of their termination of employment. Cal. Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required by §§ 201 and 202, then the employer is liable for such "waiting time" penalties in the form of continued compensation up to thirty workdays.

96.     CoreCivic willfully failed to pay Plaintiffs and Class Members who are no longer employed by CoreCivic compensation due upon termination as required by Cal. Labor Code §§ 201 and 202. As a result, CoreCivic is liable to Plaintiffs and former

4816-3456-2119.1

employee Class Members waiting time penalties provided under Cal. Labor Code § 203, plus reasonable attorneys' fees and costs of suit.

## TENTH CAUSE OF ACTION

### Imposition of Unlawful Terms and Conditions of Employment

### Cal. Labor Code § 432.5

### (On behalf of Plaintiffs Individually and the California Labor Law Class)

97.     Plaintiffs and Class Members incorporate the above allegations by reference.

98.     Cal. Labor Code § 432.5 provides that no employer shall require any employee to agree, in writing, to any term or condition which is known by the employer to be prohibited by law.

99.     CoreCivic requires, as a condition of employment, that Plaintiffs and Class Members sign a written agreement which includes numerous terms that are prohibited by law, including but not limited to agreeing to work for less than minimum wage or without appropriate overtime compensation.

100.    Provisions of the employment contract, as described above, that Plaintiffs and Class Members were required to sign as a condition of employment, explicitly and unquestionably, violate several provisions of California law and public policy. Upon information and belief, CoreCivic knew that such provisions violated California law and public policy.

101.    As a result of Defendant's unlawful conduct as alleged herein, Plaintiffs and Class Members have sustained damages.

## ELEVENTH CAUSE OF ACTION

### Negligence

### (On Behalf of Plaintiffs Individually and the Class)

102.    Plaintiffs and the Class Members incorporate the above allegations by reference.

103.    In engaging Plaintiffs and the Class members to provide labor and services to CoreCivic, CoreCivic owed a duty to exercise reasonable and ordinary care in

Case No. 17-CV-01112-JLS-NLS

4816-3418-2119.1

complying with all applicable local, state, and federal laws and to furnish a safe working place for its employees.

104.     This duty included, among other things, taking reasonable measures to implement and maintain reasonable procedures to provide a safe working environment and workplace and to protect the rights of Class Members in compliance with applicable law, including, but not limited to procedures and policies:

    a. to supervise, restrict, limit, and determine whether any Plaintiffs and the Class Members were subject to Forced Labor practices by CoreCivic or perform other labor and services under threat of punishment, confinement, physical restraint, and deprivation of liberty;

    b. to notify Plaintiffs and the Class Members of their rights under the TVPA and CTVPA; and

    c. when and how to notify Plaintiffs and the Class Members of CoreCivic's unlawful Forced Labor practices.

105.     In providing services to the Plaintiffs and the Class, CoreCivic owed them a duty to exercise reasonable care, without limitation in:

    a. adequately providing a safe working environment and workplace;

    b. adequately protecting the rights of Class Members in compliance with applicable law;

    c. prohibiting and adequately ensuring Plaintiffs and the Class Members were not subject to Forced Labor practices;

    d. adequately ensuring Plaintiffs and the Class Members had a safe work environment; and

    e. protecting the rights of Plaintiffs and the Class' under the TVPA and CTVPA from CoreCivic's Forced Labor practices.

106.     CoreCivic' systems, policies, and procedures for adequately ensuring the rights of Plaintiffs and the Class Members under the TVPA and CTVPA were adequately protected were intended to, and did, affect Plaintiffs and the Class Members. CoreCivic was aware that by utilizing Plaintiffs' and the Class Members labor and services, it had a responsibility to take reasonable measures to protect their rights under applicable law.

4816-3458-2119.1

107.     The duty CoreCivic owed to Plaintiffs and Class Members to protect their rights under applicable law is underscored by the Federal and California Trafficking Victims Protection Act, which recognizes the importance of preventing the crime of trafficking of a person for forced labor or services.

108.     Additionally, CoreCivic had a duty to timely disclose to and/or warn Plaintiffs and Class Members of their rights under the TVPA, CTVPA, California labor laws, and other applicable laws, rules, and regulations. Timely disclosure was necessary and appropriate so that Plaintiffs and Class Members could have, among other things, timely pursued and exhausted available remedies, and undertaken appropriate measures to avoid, prevent or mitigate the violations of their rights under applicable laws.

109.     There is a very close connection between CoreCivic's failure to take reasonable measures to provide a safe and lawful work environment and timely disclosure of Plaintiffs' and the Class Members' rights and the injury to Plaintiffs and the Class.

110.     When individuals have their human and labor law rights violated they are at risk for personal, financial, physical, and emotional injury, distress, and damage and need to incur additional costs and expense to protect themselves and seek and obtain redress from such invasions of their legal rights.

111.     CoreCivic is legally responsible for such unlawful violations of Plaintiffs and the Class Members' human and labor law rights and their right to a safe working environment because it failed to take reasonable measures in connection therewith. If CoreCivic had taken reasonable measures in connection with their employment of Plaintiffs and the Class Members, their legal rights would not have been violated.

112.     The policy of preventing future harm weighs in favor of finding a special relationship between CoreCivic and the Class. CoreCivic's civil immigration detainees have no choice to but to perform the Forced Labor when and how CoreCivic demands it. If CoreCivic is not held accountable for failing to take reasonable measures to protect the human rights and labor law rights of its detainees, they will not take the steps that are necessary to protect against future invasions of such rights.

-27-          Case No. 17-CV-01112-JLS-NLS

113.   It was foreseeable that if CoreCivic did not take reasonable measures, the human rights and labor law rights of Plaintiffs and Members of the Class would be violated. CoreCivic should have known to take precautions to prevent such abuses.

114.   CoreCivic breached its duty to exercise reasonable care in providing a safe work environment for, and protecting the human rights and labor law rights of, Plaintiffs and the Class Members by, without limitation:

      a. failing to implement and maintain adequate measures to safeguard detainees' rights;

      b. failing to monitor its operations to identify unlawful activity;

      c. requiring and/or allowing Plaintiffs and the Class to work in an unsafe environment; and

      d. failing to otherwise prevent human rights and labor law abuses.

115.   CoreCivic breached its duty to timely warn or notify Plaintiffs and the Class about its unlawful Forced Labor and "Dollar-A-Day Work" practices and programs. CoreCivic has failed to issue any warnings to its current and former detainees affected by these unlawful practices.  Additionally, CoreCivic was, or should have been, aware of its unlawful practices as early as November 2, 2004.

116.   But for CoreCivic's failure to implement and maintain adequate measures to provide a safe working environment for, and protect the human rights and labor law rights of, Plaintiffs and the Class Members, and its failure to monitor its operations to identify unlawful Forced Labor and Dollar-A-Day Work violations of the labor laws, Plaintiffs' and Class Members' rights would not have been violated and Class Members would not be at a heightened risk of unlawful Forced Labor and other labor law violations in the future.

117.   CoreCivic's negligence was a substantial factor in causing harm to Plaintiffs and Class Members, and in violating their human rights and labor law rights.  As a direct and proximate cause and result of CoreCivic' failure to exercise reasonable care and use reasonable measures to provide a safe working environment and safeguard the human rights and labor law rights of Plaintiffs and the Class Members, Plaintiffs and the Class

4816-3458-2119.1

Members were subjected to Forced Labor and the labor law violations set forth herein. Class Members face a heightened risk of such unlawful practices in the future.

118. Neither Plaintiffs nor other Class Members contributed to the unlawful conduct set forth herein, nor did they contribute to CoreCivic's unlawful Forced Labor practices and other labor law violations, nor to the insufficient measures to provide a safe working environment and to safeguard the human rights and labor law rights of Plaintiffs and the Class Members.

119. Plaintiffs and the Class Members seek compensatory damages and exemplary damages with pre-and-post judgment interest, the costs of suit, attorneys' fees, and other and further relief as this Court deems just and proper.

### TWELFTH CAUSE OF ACTION
#### Unjust Enrichment
#### (On Behalf of Plaintiffs Individually and the Class)

120. Plaintiffs and the Class Members incorporate the above allegations by reference.

121. "Under California law, the elements of unjust enrichment are: (a) receipt of a benefit; and (b) unjust retention of the benefit at the expense of another." *Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15-CV-00887-HSG, 2015 WL 4747533, at *8 (N.D. Cal. Aug. 11, 2015). *See also, Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'")

122. "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). "Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred "is an obligation (not a true contract [citation]) created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money." *F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008).

-29-                    Case No. 17-CV-01112-JLS-NLS

123.    Plaintiffs and Class Members conferred non-gratuitous benefits upon CoreCivic by performing "Dollar-A-Day Work" for all hours worked for which CoreCivic would otherwise have had to pay at least the applicable minimum wage or more, thereby significantly and materially increasing CoreCivic's profit margins, and unjustly enriching CoreCivic at the expense of and to the detriment of Plaintiffs and the Class Members.

124.    CoreCivic's retention of any benefit collected directly and indirectly from Plaintiffs' and Class Members' labor and services violated principles of justice, equity, and good conscience. As a result, CoreCivic has been unjustly enriched. Plaintiffs and Class Members are entitled to recover from CoreCivic all amounts that CoreCivic has wrongfully and improperly obtained, and CoreCivic should be required to disgorge to Plaintiffs and Class Members the benefits it has unjustly obtained.

125.    CoreCivic accepted or retained such benefits with knowledge that Plaintiffs' and Class Members' human rights and labor law right were being violated for financial gain. CoreCivic has been unjustly enriched in retaining the revenues and profits from Plaintiffs and Class Members' Dollar-A-Day Work, which retention under these circumstances is unjust and inequitable.

126.    As a direct and proximate result of CoreCivic's Forced Labor practices and the Dollar-A-Day Work program, Plaintiffs and Class Members have suffered concrete harm and injury, including, but not limited to, physical and emotional injury, monetary loss in connection with their labor and services provided CoreCivic purchases of services, and the unlawful violation of their human rights and labor law rights, as alleged herein.

127.    CoreCivic's retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class Members would be unjust and inequitable. Plaintiffs and Class Members are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon CoreCivic in a manner established by this Court.

128.    Plaintiffs and Class Members are further entitled to, and hereby seek, reasonable attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5, pre-and post-judgment interest at the applicable legal rate, as well as any and all further equitable relief that this Court deems appropriate.

4816-3456-2119.1

**THIRTEENTH CAUSE OF ACTION**

**Violation of Labor Code §§ 2698, *et seq.*, Private Attorney General Act ("PAGA")**

**(On Behalf of Plaintiffs Individually and the Class)**

129.     Plaintiffs and the Class Members incorporate the above allegations by reference.

130.     Plaintiffs are aggrieved employees as defined in Labor Code § 2699(a). Plaintiffs bring this cause of action on behalf of themselves and other current for former employees affected by the labor code violations alleged in this complaint.

131.     CoreCivic committed violations of the California Labor Code against Plaintiffs and, on information and belief, against other current or former employees while they were or are employed by CoreCivic as described in this complaint (and specifically when they were civil detainees in one of CoreCivies detention facilities. CoreCivic violated Labor Code §§ 201, 201.3, 201.5, 201.7, 202, 203, 203.1, 204, 226, 226.7, 432.5, 510, 512, 1194, 1197 and 1197.1 as more fully described in the causes of action asserted previously in this complaint and thus the Private Attorney General Act applies in this matter (*see,* Labor Code §2699.5).

~~130.~~132.     Pursuant to Labor Code § 2699(b) and (c) and other Labor Code provisions, Plaintiffs seek to recover civil penalties and attorneys' fees as otherwise provided by statute for which CoreCivic is liable as a result of its violations of the Labor Code as more fully described in the Fourth through Twelfth causes of action to this complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, request the Court:

a.     certify this case as a class action on behalf of the Class Members defined above, appoint Sylvester Owino and Jonathan Gomes as Class representatives, and appoint the Law Office of Robert L. Teel as Class counsel;

b.     award declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members;

c.     award injunctive relief as is necessary to protect the interests of Plaintiffs

4816-3458-2119.1

1  and the Class Members;

2      d.    award restitution, damages, treble damages, and punitive damages to

3  Plaintiffs and Class Members in an amount to be determined at trial;

4      e.    order disgorgement of CoreCivic's unjustly acquired revenue, profits,

5  and other benefits resulting from their unlawful conduct for the benefit of Plaintiffs and

6  Class Members in an equitable and efficient manner determined by the Court;

7      f.    order the imposition of a constructive trust upon CoreCivic such that its

8  enrichment, benefit, and ill-gotten gains may be allocated and distributed equitably by the

9  Court to and for the benefit of Plaintiffs and the Class Members.

10      g.    Enter judgment against CoreCivic, awarding Plaintiffs and similarly situated
employees past and present amounts pursuant to Labor Code § 2699, *et seq.*;

11      h.    Enter judgment against CoreCivic pursuant to Labor Code § 2699 directing

12  that the penalties awarded pursuant to this cause of action be distributed as follows:  75%

13  paid to the Labor and Workforce Development Agency, and 25% be paid to the aggrieved

14  Plaintiffs;

15      i.    Costs of suit, general and pursuant to Labor Code § 2699;

16      j.    Attorneys' fees payable to Plaintiffs' counsel of record pursuant to Labor

17  Code § 2699;

18      ~~g~~k.    award Plaintiffs and Class Members their reasonable litigation expenses and

19  attorneys' fees;

20      ~~h~~l.    award Plaintiffs and Class Members pre- and post-judgment interest to the

21  extent allowable; and

22      ~~i~~m.    award such other and further relief as equity and justice may require.

23  //

24  //

25  //

26  //

27  //

28

    Case No. 17-CV-01112-JLS-NLS

4816-3458-2119.1

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: ~~June 11, 2018~~May 30, 2018          /s/ Robert L. Teel

By: Robert L. Teel
**LAW OFFICE OF ROBERT L. TEEL**
ROBERT L. TEEL
*lawoffice@rlteel.com*
207 Anthes Ave., Suite 201
Langley, Washington 98260
Telephone:  (866) 833-5529
Facsimile:   (855) 609-6911

*Attorney for Plaintiffs
and the Proposed Class(es)*

DATED:

**FOLEY & LARDNER LLP**
~~Nicholas J. Fox~~J. Mark Waxman
Eileen R. Ridley
Nicholas J. Fox

Eileen R. Ridley
~~Attorneys for  SLYVESTER OWINO and
JONATHAN GOMEZ~~Attorneys for Plaintiffs
SLYVESTER OWINO, JONATHAN GOMEZ,
and the Proposed Class(es)

4816-3458-2119.1