J. MARK WAXMAN  (SBN 58579)
    mwaxman@foley.com
NICHOLAS J. FOX (SBN 279577)
    nfox@foley.com
**FOLEY & LARDNER LLP**
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
T:  858.847.6700 // F:  858.792.6773

ROBERT L. TEEL  (SBN 127081)
    lawoffice@rlteel.com
**LAW OFFICE OF ROBERT L. TEEL**
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
T: 866. 833.5529 // F:855.609.6911

EILEEN R. RIDLEY (SBN 151735)
    eridley@foley.com
ALAN R. OUELLETTE (SBN 272745)
    aouellette@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
T:  415.434.4484 // F: 415.434.4507

GEOFFREY RAUX (pro hac vice)
    graux@foley.com
**FOLEY & LARDNER LLP**
111 Huntington Ave., Suite 2500
Boston, MA 02199-7610
T: 617.342.4000 // F: 617.342.4001

Attorneys for Plaintiffs SLYVESTER OWINO,
JONATHAN GOMEZ, and the Proposed Class(es)

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SLYVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>vs.<br><br>CORECIVIC, INC.,<br><br>                              Defendant. | Case No. 17-CV-01112-JLS-NLS<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) FORCED LABOR AND VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. § 1589,** *et seq.;*<br>**(2) FORCED LABOR AND VIOLATION OF THE CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT, CAL. CIVIL CODE § 52.5;** |

CORECIVIC, INC.,

                  Counter-Claimant,

vs.

SLYVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,

                Counter-Defendants.

**(3) UNFAIR COMPETITION, CAL. BUS. & PROF. CODE §§ 17200,** *et seq.***;**

**(4) VIOLATIONS OF THE CAL. LABOR CODE;**

**(5) VIOLATION OF CAL. INDUSTRIAL WELFARE COMMISSION ORDERS;**

**(6) NEGLIGENCE;**

**(7) UNJUST ENRICHMENT; AND**

**(8) PRIVATE ATTORNEY GENERAL ACT, CAL. LABOR CODE §§ 2698,** *et seq.*

DEMAND FOR JURY TRIAL

Case No. 17-CV-01112-JLS-NLS

# INTRODUCTION

1.    Plaintiffs Sylvester Owino ("Owino") and Jonathan Gomez ("Gomez") (individually referred to herein as a "Plaintiff" and collectively as the "Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorney(s), for their complaint against Defendant, CoreCivic, Inc. ("CoreCivic" or "Defendant") files this lawsuit to stop CoreCivic's engagement/implementation of illegal practices and to obtain damages and restitution from CoreCivic for said practices of forcing/coercing detainees to clean, maintain, and operate CoreCivic's detention facilities in violation of both federal and state human trafficking and labor laws.  Plaintiffs allege the following based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters, and based upon, *inter alia*, the investigation conducted by and through their attorneys, which includes, without limitation, a review of Defendant's public documents, announcements, and wire and press releases published by and regarding CoreCivic, and information readily obtainable on the internet.

## JURISDICTION AND VENUE

2.    This Court has federal question jurisdiction because this case arises out of violations of the federal Trafficking in Victims Protection Act under 18 U.S.C. §§ 1589, *et seq.* (the "TVPA").

3.    This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because:

  a.    the amount in controversy exceeds $5,000,000, exclusive of interest and costs;

  b.    the proposed Class consists of more than 100 Class Members; and

  c.    none of the exceptions under the subsection apply to this action.

4.    This Court has supplemental jurisdiction over the violations of the California Trafficking in Victims Protection Act, Cal. Civil Code § 52.5 ("CTVPA"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), the Private Attorney General Act, Cal. Labor Code §§ 2698, *et seq.* ("PAGA"), and the California Labor Code and California Industrial

Welfare Commission Wage Orders, as well as other state statutory and common law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction over pendant state law claims).

5.   This Court has personal jurisdiction over Defendant because:

  a.   CoreCivic is registered to, and in fact does, conduct business in California; and

  b.   CoreCivic has sufficient minimum contacts in California, and

  c.   CoreCivic has intentionally availed itself by participating in the markets within California through the sale and provision of its services.

6.   Venue is proper in this District under 28 U.S.C. § 1391 because:

  a.   Plaintiffs are residents of, and domiciled in, this District,

  b.   Defendant conducts substantial business in this District, and

  c.   a substantial part of the events giving rise to Plaintiffs' claims alleged herein occurred in this District.

## PARTIES

7.   Plaintiff Sylvester Owino is a resident of the County of San Diego, in the State of California.  Mr. Owino was a civil immigration detainee who worked at CoreCivic's Otay Mesa Detention Center at various times from November 7, 2005 through March 9, 2015.

8.   Plaintiff Jonathan Gomez is a resident of the County of San Diego, in the State of California.  Mr. Gomez was a civil immigration detainee who worked at CoreCivic's Otay Mesa Detention Center at various times from June 14, 2012 through September 18, 2013.

9.   Defendant CoreCivic, Inc. is a Maryland corporation with its principal place of business at 10 Burton Hills Blvd., Nashville, Tennessee 37125.

## SUMMARY AND COMMON FACTUAL ALLEGATIONS

10.   Plaintiffs are former civil immigration detainees who bring this proposed

class action lawsuit on behalf of all civil immigration detainees who were incarcerated and forced to work by CoreCivic, a for-profit corporation engaged in the business of owning and operating detention facilities and prisons from January 1, 2004 to the opt-out date, inclusive (the "Class Period").

11. CoreCivic owns and operates detention facilities around the country, including the Otay Mesa Detention Center, a 1,492 bed detention center located in Otay Mesa, California (the "Otay Facility"). CoreCivic unlawfully forces, coerces, and uses detainees to clean, maintain, and operate their facility. In some instances CoreCivic pays detainees $1 per day, and in other instances detainees are not compensated with wages at all, for their labor and services. In 2016, CoreCivic reported $1.79 billion in total revenues.

12. Plaintiffs seek injunctive relief requiring CoreCivic to implement and maintain policies and practices to comply with all applicable laws and regulations designed to protect human rights, prevent and remedy these types of unlawful trafficking and forced labor practices, and protect detainees' employment rights, well-being and safety, as well as restitution, damages, statutory remedies, disgorgement, and other further relief this Court may deem proper.

13. Plaintiffs also seek to recover, inter alia, on their own behalf and on behalf of all others similarly situated, the difference between the fair value of the labor or work they performed and what they were paid (i.e., the $1 per day). CoreCivic violated federal law prohibiting forced labor when CoreCivic forced, coerced, and used Plaintiffs and others to work for no pay, cleaning the "pods" where they were housed, and cleaning, maintaining, and operating other areas of the CoreCivic detention facilities under threat of punishment, including lockdown and solitary confinement.

14. Plaintiffs were engaged, suffered, and permitted to work by CoreCivic at, without limitation, the Otay Facility. CoreCivic controlled the wages, hours, and working conditions of Plaintiffs. In the course of their labor and employment by CoreCivic, Plaintiffs and other putative class members, without limitation:

a.      scrubbed bathrooms, showers, toilets, and windows;

b.      cleaned and maintained CoreCivic's on-site medical facility;

c.      cleaned the medical facility's toilets, floors, and windows;

d.      cleaned patient rooms and medical staff offices;

e.      swept, mopped, stripped, and waxed the floors of the medical facility;

f.      washed medical facility laundry;

g.      swept, mopped, stripped, and waxed floors throughout the facility;

h.      washed detainee laundry;

i.      prepared and served detainee meals;

j.      assisted in preparing catered meals for law enforcement events sponsored by CoreCivic;

k.      performed clerical work for CoreCivic;

l.      prepared clothing for newly arriving detainees;

m.      provided barber services to detainees;

n.      ran and managed the law library;

o.      cleaned intake areas and solitary confinement unit;

p.      cleaned and prepared vacant portions of the facility for newly arriving detainees;

q.      cleaned the facility's warehouse; and

r.      maintained the exterior and landscaping of the CoreCivic buildings.

15.   Detainees who "volunteered" for such work were paid $1 per day.  The foregoing labor and services for which detainees were paid $1 per day are referred to herein as the "Dollar-A-Day Work."  In addition, Plaintiffs and detainees are/were only allowed to spend their $1 per day at the CoreCivic "company store" or commissary.

### *CoreCivic's Unlawful Labor and Human Trafficking Practices*

16.   In addition to the Dollar-A-Day Work, CoreCivic forced and coerced Plaintiffs and members of the putative class, to clean, maintain, scrub, sweep, and mop floors, bathrooms, showers, toilets, and windows for no pay at all, not only in their living

-4-

areas ("pods"), but also throughout the other interior and exterior areas of CoreCivic's detention facilities by threatening to punish not only those who refused to work, but also other detainees in the pods with confinement, physical restraint, substantial and sustained restriction, deprivation, and violation of their liberty, and solitary confinement, all with the intent to obtain forced labor or services and as punishment for any refusal to work causing Plaintiffs severe mental pain and suffering.   The foregoing forced and coerced labor and services under threat of punishment, confinement, physical restraint, and deprivation of liberty for which Detainees were paid nothing at all are referred to herein as the "Forced Labor."

17.    Defendant paid Plaintiffs and all its other civil immigration detainee-employees one dollar ($1) per day for Dollar-A-Day Work and nothing at all for their Forced Labor and acted with malice, oppression, fraud, and duress in committing the foregoing acts.  As a result of Defendant's violations of the law, CoreCivic was unjustly enriched.

### *Federal and State Trafficking Victims Protection Acts*

18.    As a result of the foregoing, Defendant violated federal law prohibiting forced labor. 18 U.S.C. § 1589.  In addition, Defendant violated California law prohibit human trafficking and forced labor.  Civ. Code § 52.5.  Plaintiffs seek actual damages, compensatory damages, punitive damages, treble damages, injunctive relief, and mandatory restitution on their own behalf and on behalf of all Defendant's other similarly situated detainees, as well as attorneys' fees and costs, pursuant to 18 U.S.C. §§ 1593 and 1595 and Cal. Civ. Code § 52.5(a).  Plaintiffs also seeks the greater of treble damages or ten thousand ($10,000) pursuant to Cal. Civ. Code § 52.5(b).

19.    Plaintiffs and the putative class members have suffered, and are continuing to suffer, real-world, actual, concrete harm by, without limitation, Defendant's use of Forced Labor and human trafficking, violations of applicable labor laws and orders, unfair and unlawful business practices, and negligence.  The putative class members are presently facing the same imminent real, actual, and concrete harm and injury from

CoreCivic's illegal conduct and its failure to redress the harm.

20.     The total number of civil immigration detainees who were subjected to Defendant's Forced Labor and human trafficking practices, and Defendant's illegal Dollar-A-Day Work practices is currently unknown, but these illegal practices appear endemic to the Core-Civic operations on a California-wide, and indeed a nationwide, scale. However, Core-Civic can provide the information regarding how many civil immigration detainees were subjected to these illegal practices through its solitary confinement and detention logs and also through its business records.

21.     CoreCivic has been wrongly and unjustly enriched by its use of Forced Labor and human trafficking practices, Dollar-A-Day Work practices, unlawful business practices, and the retention of such revenues and profits resulting therefrom is grossly unfair.  CoreCivic should not be allowed to retain the revenues, proceeds, profits and other benefits conferred upon it by Plaintiffs and the putative class members.

22.     Defendant's unlawful conduct complained of herein constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts.  Defendant's pattern and course of conduct has continued from November 2, 2004 until the present and is a continuing violation since that date.  Neither Plaintiffs nor the Class Members were/are aware of or discovered their legal rights or claims, or could have discovered with any amount of reasonable diligence, the true facts regarding their claims until the present. Plaintiffs and the Class Members were/are ignorant of the true facts regarding Defendant's unlawful and illegal acts, and lacked the ability to have earlier discovered the true facts, until the present due to false statements made by Defendant regarding the legality of their False Labor and Dollar-A-Day Work practices.  Discovery of the true facts did not actually occur, and could not have occurred, until after any applicable statutes of limitations.

### The For-Profit Detention Industry

23.     Throughout the country, undocumented individuals lacking legal permission to enter or remain in the United States are typically brought to a detention facility and

placed in removal proceedings in front of an immigration judge. These individuals may include refugees seeking asylum. Individuals detained at the border are only released on a case-by-case basis by the authority of U.S. Bureau of Immigration and Customs Enforcement ("ICE") officials.

24. ICE uses a combination of publicly and privately owned and operated facilities to detain immigrants. Those in detention include immigrants in the country illegally, asylum seekers, green card holders, and those awaiting immigration hearings (referred to herein as a "detainee" or civil immigration detainee").  Nine (9) of the country's ten (10) largest immigration detention facilities are operated by private companies like CoreCivic, and they hold about two-thirds of the civil immigration detainees in a system that currently keeps more than 31,000 people in custody on a typical day.

25. The for-profit civil immigration detention business is worth over $3 billion dollars a year.  While some centers are located in border areas, others are far from the border because deportation officers arrest migrants living in the interior of the country as well.  Although they have denied lobbying, private prison corporations such as Core-Civic specifically target legislators over immigration "reform." The companies' success in lobbying for immigrant detention has been so successful that by 2015, CoreCivic derived 51% of its revenue from federal contracts.

26. In March of 2017 it was announced that the United States' civil immigrant detention capacity would be increased by over four-hundred fifty per cent (450%). This signals the largest increase in immigrant detention since World War II and is, in essence, a "get into jail and work for free card" from which Defendant derives nearly $1 billion dollars a year in revenue.

**PLAINTIFF'S EXPERIENCE**

27. Plaintiff Sylvester Owino is a resident of the county San Diego, in the State of California.  Mr. Owino was a detainee at CoreCivic's Otay Facility from November 7, 2005 through March 9, 2015.  During the Class Period, Mr. Owino performed Dollar-A-

Day Work for $1 per day in an unsafe work environment and was forced and coerced to perform Forced Labor at, without limitation, the Otay Facility.

28.    Plaintiff Owino was employed by CoreCivic to provide labor and services in an unsafe working environment cleaning and maintaining CoreCivic's on-site medical facility without personal protective equipment ("PPE").  PPE is special equipment worn to create a barrier between health care workers and germs. This barrier reduces the chance of touching, being exposed to, and spreading germs and helps protect people from infections caused by contact with blood or other bodily fluids.

29.    Plaintiff Jonathan Gomez is a resident of San Diego, California and the county of San Diego who formerly was a detainee at the Otay Facility from June 14, 2012 through September 18, 2013.  During the Class Period, Mr. Gomez performed Dollar-A-Day Work for $1 per day in an unsafe work environment and was forced and coerced to perform Forced Labor at the Otay Facility.

## CLASS ACTION ALLEGATIONS

30.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all members of the "Forced Labor Class," preliminarily defined as:

### The Nationwide Forced Labor Class

All civil immigration detainees who performed Forced Labor uncompensated work for CoreCivic at any Detention Facility owned or operated by it between November 2, 2004 to the applicable opt-out date, inclusive.

Such persons are collectively referred to herein individually as a "Nationwide Forced Labor Class Member" and collectively as the "Nationwide Forced Labor Class" or "Nationwide Forced Labor Class Members."

### The California Forced Labor Class

All civil immigration detainees who performed Forced Labor uncompensated work for CoreCivic at any Detention Facility located in California owned or operated by it at time during the period from November 2, 2004 to the applicable op-out date, inclusive.

-8-

Such persons are collectively referred to herein individually as a "California Forced Labor Class Member" and collectively as the "California Forced Labor Class" or "California Forced Labor Class Members."

The California Labor Law Class

All civil immigration detainees who performed Dollar-A-Day Work for CoreCivic and were paid one dollar ($1) per day at any Detention Facility located in California owned or operated by it at any time between November 2, 2004 to the applicable op-out date, inclusive.

Such persons are collectively referred to herein individually as a "California Labor Law Class Member" and collectively as the "California Labor Law Class."

31.    The Classes described in this First Amended Complaint ("FAC") may be jointly referred to as the "Class" and proposed Members of the Classes may be jointly referred to as "Class Members."

32.    Excluded from the Class are the Defendant herein, law enforcement agencies and personnel, members of the foregoing persons' immediate families and their legal representatives, heirs, successors, or assigns, and any entity or person in which Defendant has or had a controlling or supervisory interest or control over at all relevant times.

33.    Plaintiffs satisfy the numerosity, commonality, typicality, adequacy, and predominance prerequisites for suing as representative parties pursuant to Rule 23 of the Federal Rules of Civil Procedure.

34.    Numerosity.  The exact number of proposed Class Members is currently not known, but is believed to consist of thousands if not tens of thousands of former or current CoreCivic detainees who have been forced and/or coerced to work, whether for one dollar ($1) per day or no pay whatsoever, making joinder of each individual Class Member impracticable.

35.    Commonality.  Common questions of law and fact exist for the proposed Class' claims and predominate over questions affecting only individual Class Members. Common questions include, without limitation:

a.    whether Plaintiffs and the Class Members were entitled to the

Case No. 17-CV-01112-JLS-NLS

protections of the California labor laws and California Industrial Welfare Commission wage orders;

b.  whether Plaintiffs and the Class Members performed compensable work;

c.  whether Plaintiffs and the Class Members were paid $1 per day for their labor;

d.  whether forcing and coercing Plaintiffs and the Class Members to perform Forced Labor constitutes a violation of each Class Member's TVPA and CTVPA, human rights, California labor law and California Industrial Welfare Commission wage orders, and other statutory and common law rights as set forth herein;

e.  what monitoring, limiting, and supervisory procedures and practices should CoreCivic be required to implement to ensure ongoing protection of each Class Member's TVPA, CTVPA, California labor law, and other legal rights and as part of any prohibitory and mandatory injunctive relief ordered by the Court;

f.  whether CoreCivic acted deliberately or negligently by unlawfully, without limitation:

  i.  failing to adequately protect Class Members TVPA, CTVPA, and California labor law rights

  ii.  forcing and coercing detainees to perform Forced Labor;

  iii.  failing to follow applicable laws; and

  iv.  failing to maintain adequate monitoring, limiting, and supervisory procedures, policies, and practices; and

g.  whether Plaintiffs and Class Members may obtain damages, restitution, disgorgement, declaratory, and prohibitory and mandatory injunctive relief against CoreCivic.

36.  <u>Typicality.</u>  Plaintiffs' claims are typical of the claims of the proposed Class

-10-

because, among other things, Plaintiffs and Class Members legal claims all arise from CoreCivic's unlawful practices, and Plaintiffs and Class members sustained similar injuries and statutory damages as a result of CoreCivic's uniform illegal conduct.

37.    Adequacy.  Plaintiffs will fairly and adequately protect the interests of the Class.  Their interests do not conflict with Class Members' interests and they have retained counsel competent and experienced in complex and class action litigation to vigorously prosecute this action on behalf of the Class.  In addition to satisfying the prerequisites of FRCP 23(a), Plaintiffs satisfy the requirements for maintaining a class action under FRCP 23(b)(2) and (3).

38.    Common questions of law and fact predominate over any questions affecting only individual Class Members and a Class action is superior to individual litigation because:

a.    the amount of damages available to individual Plaintiffs are insufficient to make litigation addressing CoreCivic's conduct economically feasible in the absence of the Class action procedure;

b.    individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system; and

c.    the Class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

39.    In addition, Class certification is appropriate under FRCP Rule 23(b)(1) or (b)(2) because:

a.    the prosecution of separate actions by the individual Members of the proposed Class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for CoreCivic;

b.    the prosecution of separate actions by individual Class Members

would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.   CoreCivic has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed Class as a whole.

## FIRST CAUSE OF ACTION

### Violation of the Trafficking Victims Protection Act

### 18 U.S.C. §§ 1589, *et seq*.

### (On Behalf of the Plaintiffs Individually and the Class)

40.   Plaintiffs and Class Members incorporate by reference the foregoing allegations.

41.   18 U.S.C. § 1589(a) of the Federal Trafficking Victims Protection Act provides that:

"Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means — (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under [18 U.S.C. § 1589] subsection (d)."

42.   Plaintiffs and Class Members were forced, coerced, and made to perform labor and services, including Forced Labor, for CoreCivic by means of:

a.   force, threats of force, physical restraint and threats of physical restraint;

b.   serious harm and threats of serious harm; and

-12-

c.    abuse and threatened abuse of law or legal process to Plaintiffs and the Class Members, and by means of a scheme, plan, pattern, and uniform policy intended to cause Plaintiffs and the Class to believe that, if they did not perform such labor or services, that they would suffer serious harm and/or physical restraint.

CoreCivic was unjustly enriched by the unlawful practice of forcing and coercing Plaintiffs and the Class Members to perform uncompensated Forced Labor through human trafficking.  By exploiting these unlawful practices CoreCivic materially and significantly reduced its labor costs and expenses, in addition to increasing its profits.

43.    Plaintiffs and the Class Members are victims of Forced Labor under 18 U.S.C. § 1589.  CoreCivic committed the illegal and unlawful offense(s) of Forced Labor against the Plaintiffs and the Class Members under 18 U.S.C. § 1589, *et seq*. CoreCivic knowingly and financially benefitted from implementing/participating in a venture, plan, scheme, pattern of conduct, and practice CoreCivic knew, or should have known, was unlawful and in violation of Forced Labor laws under to 18 U.S.C. § 1589. Plaintiffs and the Class Members are entitled to, without limitation, the remedies set forth in 18 U.S.C. § § 1593 and 18 U.S.C. § 1595(a).

44.    18 U.S.C. § 1593 states:

(a)  "Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalties authorized by law, the court shall order restitution for any offense under this chapter."

(b)

(1)  "The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses, as determined by the court under paragraph (3) of this subsection."

(2)  "An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A."

(3)  "As used in this subsection, the term "full amount of the victim's losses" has the same meaning as provided in section 2259(b)(3) and shall in addition include the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime

guarantees of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.)."

(4)    "The forfeiture of property under this subsection shall be governed by the provisions of section 413 (other than subsection (d) of such section) of the Controlled Substances Act (21 U.S.C. § 853)."

(c)  "As used in this section, the term "victim" means the individual harmed as a result of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or a representative of the victim's estate, or another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named such representative or guardian."

45.    18 U.S.C. § 1595(a) states:

"An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."

46.    Accordingly, Plaintiffs and the Class Members respectfully request that the Court issue declaratory relief declaring CoreCivic's practice(s) involving Forced Labor and human trafficking – forcing and coercing Plaintiffs and Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restriction, deprivation, solitary confinement - to be illegal and unlawful.

47.    Plaintiffs and Class Members request the Court to grant an injunction requiring CoreCivic to cease its unlawful practices described herein and enjoin CoreCivic from forcing and coercing Plaintiffs and the Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restriction, deprivation, and solitary confinement.

48.    Plaintiffs and the Class Members request the Court to enter an injunction in connection with the foregoing ordering that CoreCivic:

a.    engage a third party ombudsman as well as internal compliance personnel to monitor, conduct inspection, and audit CoreCivic's safeguards and procedures on a periodic basis;

b.    audit, test, and train its internal personnel regarding any new or

-14-

modified safeguards and procedures;

c.    conduct regular checks and tests on its safeguards and procedures;

d.    Periodically conduct internal training and education to inform internal personnel how to identify violations when they occur and what to do in response; and

e.    periodically and meaningfully educate its personnel and detainees about their labor and human trafficking rights through, without limitation, educational programs and classes upon detention, as well as any steps that must be taken to safeguard such rights.

49.    Plaintiffs and the Class Members have suffered damages in an amount to be determined at trial.  Plaintiffs and the Class Members request the Court enter an order pursuant to 18 U.S.C. § 1595(a) awarding Plaintiffs and the Class Members compensatory and punitive damages.

50.    Plaintiffs and the Class Members request this Court to enter an order pursuant to 18 U.S.C. § 1593 awarding Plaintiffs and the Class Members mandatory restitution in addition to the recovery of their reasonable attorneys' fees they are entitled to recover pursuant to 18 U.S.C. § 1595(a).

51.    Plaintiffs and the Class Members also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute and as they are entitled to recover pursuant to 18 U.S.C. § 1595(a).

## SECOND CAUSE OF ACTION

### Violation of the California Trafficking Victims Protection Act

### Cal. Civ. Code § 52.5

### (On Behalf of the Plaintiffs Individually and the California Forced Labor Class)

52.    Plaintiffs and California Forced Labor Class Members incorporate by reference the foregoing allegations.

53.    Cal. Civ. Code § 52.5 - The California Trafficking Victims Protection Act provides, *inter alia,* that:

---

-15-

(a) "A victim of human trafficking, as defined in Section 236.1 of the Penal Code, may bring a civil action for actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. A prevailing plaintiff may also be awarded attorney's fees and costs."

(b) "In addition to the remedies specified herein, in any action under subdivision (a), the plaintiff may be awarded up to three times his or her actual damages or ten thousand dollars ($10,000), whichever is greater. In addition, punitive damages may also be awarded upon proof of the defendant's malice, oppression, fraud, or duress in committing the act of human trafficking."

54.    Cal. Penal Code § 236.1 provides:

(a) "Any person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services, is guilty of human trafficking and shall be punished by imprisonment in the state prison for 5, 8, or 12 years and a fine of not more than five hundred thousand dollars ($500,000)."

(b) "Any person who deprives or violates the personal liberty of another with the intent to effect or maintain a violation of Section 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518 is guilty of human trafficking and shall be punished by imprisonment in the state prison for 8, 14, or 20 years and a fine of not more than five hundred thousand dollars ($500,000)."

55.    Cal. Penal Code § 236.1 also provides in relevant part,

(g)   "The Legislature finds that the definition of human trafficking in this section is equivalent to the federal definition of a severe form of trafficking found in Section 7102(8) of Title 22 of the United States Code."

(h)   For purposes of this chapter, the following definitions apply:

(1) "Coercion" includes any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; the abuse or threatened abuse of the legal process; debt bondage; or providing and facilitating the possession of any controlled substance to a person with the intent to impair the person's judgment."

(3) "Deprivation or violation of the personal liberty of another" includes substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person, under circumstances where the person receiving or apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out."

(4) "Duress" includes a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person to acquiesce in or perform an act which he or she would otherwise not

have submitted to or performed; a direct or implied threat to destroy, conceal, remove, confiscate, or possess any actual or purported passport or immigration document of the victim; or knowingly destroying, concealing, removing, confiscating, or possessing any actual or purported passport or immigration document of the victim."

(5) "Forced labor or services" means labor or services that are performed or provided by a person and are obtained or maintained through force, fraud, duress, or coercion, or equivalent conduct that would reasonably overbear the will of the person."

(6) "Great bodily injury" means a significant or substantial physical injury."

(8) "Serious harm" includes any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor, services, or commercial sexual acts in order to avoid incurring that harm."

56.   Plaintiffs and Class Members were forced, coerced, and made to perform labor and services, including Forced Labor, for CoreCivic by means of:

  a. force, threats of force, physical restraint and threats of physical restraint;

  b. serious harm and threats of serious harm; and

  c. abuse and threatened abuse of law or legal process to Plaintiffs and the Class Members; and

  d. a scheme, plan, pattern, and uniform policy intended to cause Plaintiffs and the Class Members to believe that, if they did not perform such Forced Labor, that they would suffer serious harm and/or physical restraint.

57.   Core Civic materially and significantly reduced its labor costs and expenses, and increased its profits, by unlawfully forcing and coercing Plaintiffs and the Class Members to perform uncompensated Forced Labor and human trafficking.  Plaintiffs and the Class Members are victims of Forced Labor under Cal. Civ. Code § 52.5.  CoreCivic committed the illegal and unlawful offense of Forced Labor against Plaintiffs and the Class Members under Cal. Civ. Code § 52.5.   CoreCivic knowingly and financially

benefitted from participation in a venture, plan, scheme, pattern of conduct, and practice CoreCivic knew, or should have known, were unlawful and in violation California Forced Labor laws pursuant to Cal. Civ. Code § 52.5.

58.     Accordingly, Plaintiffs and the Class Members respectfully request that the Court issue declaratory relief declaring CoreCivic's practice(s) involving Forced Labor and human trafficking – forcing and coercing Plaintiffs and Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restriction, deprivation, solitary confinement to be illegal and unlawful.

59.     Plaintiffs and the Class Members request the Court to enter an injunction requiring CoreCivic to cease the unlawful practices described herein and enjoin CoreCivic from using Forced Labor by forcing and coercing Plaintiffs and the Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restriction, and solitary confinement.

60.     Plaintiffs and the Class Members request the Court to enter an injunction in connection with the foregoing ordering that CoreCivic:

       a.     engage a third party ombudsman as well as internal compliance personnel to monitor, conduct inspection, and audit CoreCivic's safeguards and procedures on a periodic basis;

       b.     audit, test, and train its internal personnel regarding any new or modified safeguards and procedures;

       c.     conduct regular checks and tests on its safeguards and procedures;

       d.     periodically conduct internal training and education to inform internal personnel how to identify violations when they occur and what to do in response; and

       e.     periodically and meaningfully educate its personnel and detainees about their labor and human trafficking rights through, without limitation, educational programs and classes upon detention, as well as any steps that must be taken to safeguard such rights.

61.     Plaintiffs and the Class Members have suffered damages in an amount to be determined at trial.  Plaintiffs and the Class Members request the Court enter an order pursuant to Cal. Civ. Code § 52.5 awarding Plaintiffs and the Class Members compensatory and punitive damages.

62.     Plaintiffs and the Class Members request the Court enter an order pursuant to Cal. Civ. Code § 52.5 awarding Plaintiffs and the Class Members mandatory restitution.  Plaintiffs and the Class Members are entitled to recover their reasonable attorneys' fees pursuant to Cal. Civ. Code § 52.5(a).  Plaintiffs and the Class Members therefor also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute and as they are entitled to recover pursuant Cal. Civ. Code § 52.5(s).

### THIRD CAUSE OF ACTION

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

**(On Behalf of Plaintiffs Individually and the California Forced Labor Class and California Labor Law Class)**

63.     Plaintiffs and Class Members incorporate the above allegations by reference.

64.     California's Unfair Competition Law ("UCL") prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [California's False Advertising Law]."  Cal. Bus. & Prof. Code § 17200.

65.     CoreCivic willfully violated, and continues to violate, the "unlawful" prong of the UCL by violating the federal Trafficking Victims Protection Act, 18 U.S.C. § 1589, et seq., the California Trafficking Victims Protection Act, Cal. Civ. Code § 52.5, and the California labor laws and orders of the California Industrial Welfare Commission, and other applicable statutes and laws alleged herein.

66.     CoreCivic willfully violated, and continues to violate, the "unfair" prong of the UCL by gaining unjust profits from "Dollar-A-Day Work" and Forced Labor practices in violation of Plaintiffs and the Class Members' statutorily protected rights.

67.     The acts, omissions, and practices of Defendant, as described herein, further constitutes "unfair" and "unlawful" business acts and practices under the UCL in that Defendant's conduct offends public policy against human trafficking and Forced Labor, and seeks to profit and capitalize on the violations of Plaintiffs' and the Class Members' applicable federal and state human and labor law rights.

68.     As a direct and proximate result of Defendant's unlawful and unfair business practices, Plaintiffs and putative Class Members have suffered injury, including but not limited to, monetary loss in connection with their Dollar-A-Day Work and Forced Labor services directly and proximately caused by CoreCivic's unlawful and unfair conduct and business practices, as well as, the violation of their human rights and labor law rights.

69.     Accordingly, Plaintiffs and the California Forced Labor Class Members and California Labor Law Class members are entitled to, and hereby seek, an order of this Court enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to take corrective action pursuant to Section 17203 of the UCL.

70.     Plaintiffs and Class Members are further entitled to, and hereby seek an order for disgorgement and restitution of all monies acquired from the sales of the CoreCivic's services which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition by CoreCivic, as well as any other further equitable relief this Court may deem necessary, just, and proper under the circumstances. Additionally, Plaintiffs and the Class seek pre-and-post judgment interest and attorneys' fees and costs as allowed by statute. *See e.g.*, Cal. Code of Civ. Proc. § 1021.5.

## **FOURTH CAUSE OF ACTION**

**Failure to Pay Minimum Wage**

**Cal. Labor Code §§ 1194, 1197, 1197.1**

**& I.W.C. Wage Order No. 5-2001**

**(On behalf of Plaintiffs Individually and the California Labor Law Class)**

71.     Plaintiffs and Class Members incorporate by reference the foregoing

allegations.

72.   California Labor Code §§ 1194, 1197, 1197.1 and Industrial Welfare Commission Wage Order 5-2001 entitle non-exempt employees to an amount equal to or greater than the minimum wage for all hours worked. All hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation.

73.   CoreCivic did not and does not compensate Detainees, including Plaintiffs and the California Labor Law Class at the minimum wage for all "Dollar-A-Day Work" hours performed.

74.   As a result of violations of Cal. Labor Code §§ 1194, 1197, 1197.1 and Industrial Welfare Commission Wage Order 5-2001 for failure to pay minimum wage, CoreCivic is liable for civil penalties pursuant to Cal. Labor Code §§ 558, 1197.1, and 2698 et seq.

75.   Accordingly, Plaintiffs and Class Members are entitled to, and hereby seek, actual damages, punitive damages, reasonable attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5, pre-and post-judgment interest at the applicable legal rate, and any and all further equitable relief that this Court deems appropriate.

## **FIFTH CAUSE OF ACTION**

### **Failure to Pay Overtime Wages**

### **Cal. Labor Code §§ 204, 510, 1194, and Wage Order 5-2001**

### **(On behalf of Plaintiffs Individually and the California Labor Law Class)**

76.   Plaintiffs and Class Members incorporate the above allegations by reference.

77.   California Labor Code § 510 and the "Hours & Days of Work" Section of the Wage Orders entitles non-exempt employees to one and one-half times their hourly pay for any and all hours worked in excess of eight hours in any work day, for the first eight hours worked on the seventh consecutive day of work in a work week, and for any work in excess of forty hours in any one work week.  Employees are entitled to the one and one-half times their hourly pay for any and all hours worked in excess of twelve (12)

-21-

hours in any work day and in excess of eight (8) hours on the seventh (7th) consecutive work day.

78.    Plaintiffs and Class Members regularly worked in excess of eight (8) hours per day and/or forty (40) hours per week without overtime compensation.  By failing to pay overtime compensation to Plaintiffs and Class Members, CoreCivic violated and continues to violate Cal. Labor Code §§ 204, 510 and 1194 and Wage Order 5-2001.

79.    As a result of CoreCivic's unlawful acts, Plaintiffs and Class Members have been deprived of overtime compensation in an amount to be determined at trial, and are entitled to recovery of such amounts, plus interest thereon, attorneys' fees and costs, under Cal. Labor Code § 1194.

## SIXTH CAUSE OF ACTION

### Failure to Provide Mandated Meal Periods

### Cal. Labor Code §§ 226.7, 512, and I.W.C. Wage Order 5-2001

### (On behalf of Plaintiffs Individually and the California Labor Law Class)

80.    Plaintiffs and Class Members incorporate the above allegations by reference.

81.    CoreCivic failed to maintain a policy of providing meal breaks as required by Cal. Labor Code §§ 226.7, 512 and Wage Order 5-2001.

82.    Since at least three years prior to the filing of this action, Plaintiffs and Class Members have worked in excess of five hours and at times ten hours a day without being provided at least half hour meal periods in which they were relieved of their duties, as required by Cal. Labor Code §§ 226.7 and 512 and Wage Order 5-2001. *See Brinker Restaurant Corp., et al. v. Superior Court* (2012) 53 Cal. 4th 1004, 1040-41 ("The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30—minute break, and does not impede or discourage them from doing so... [A] first meal period [is required] no later than the end of an employee's fifth hour of work, and a second meal period [is required] no later than the end of an employee's 10th hour of work.").

83.     Because CoreCivic failed to provide proper meal periods, it is liable to all Plaintiffs and Class Members for one hour of additional pay at the regular rate of compensation for each work day that the proper meal periods were not provided, pursuant to Cal. Labor Code §§ 226.7 and 512 and Wage Order 5-2001, as well as interest thereon, plus reasonable attorneys' fees and costs of suit pursuant to Cal. Code of Civ. Proc. Code § 1021.5.

## SEVENTH CAUSE OF ACTION

### Failure to Provide Mandated Rest Periods

### Cal. Labor Code § 226.7 and I.W.C. Wage Order 5-2001

### (On behalf of Plaintiffs Individually and the California Labor Law Class)

84.     Plaintiffs and Class Members incorporate the above allegations by reference.

85.     Since at least three years prior to the commencement of this action. Plaintiffs and Class Members have regularly worked without any rest periods that are required by Wage Order 5-2001. See Brinker, 53 Cal. 4th 1004 at 1029 ("Employees are entitled to 10 minutes rest for shifts three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours; 30 minutes for shifts of more than 10 hours up to 14 hours, and so on.").

86.     Because CoreCivic failed to provide proper rest periods, it is liable to Plaintiffs and Class Members for one (1) hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not provided, pursuant to Cal. Labor Code § 226.7 and Wage Order 5-2001, as well as interest thereon, plus reasonable attorneys' fees and costs of suit pursuant to Cal. Code of Civ. Proc. § 1021.5.

## EIGHTH CAUSE OF ACTION

### Failure to Furnish Timely and Accurate Wage Statements

### Cal. Labor Code § 226

### (On behalf of Plaintiffs Individually and the California Labor Law Class)

87.     Plaintiffs and Class Members incorporate the above allegations by reference.

88.     California Labor Code § 226 requires an employer to furnish its employees

with an accurate itemized statement in writing showing, among other things:

    a.   all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked by each respective individual;

    b.   total hours worked by each respective individual;

    c.   gross wages earned;

    d.   net wages earned;

    e.   all deductions;

    f.   inclusive dates of the period for which the employee is paid;

    g.   the name of the employee and an employee identification or social security number; and

    h.   the name and address of the legal entity that is the employer.

89.   As a pattern and practice, in violation of Labor Code § 226(a), CoreCivic did not provide Plaintiffs or Class Members with accurate itemized wage statements in writing showing:

    a.   all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked by each respective individual;

    b.   number of hours worked;

    c.   gross wages earned;

    d.   net wages earned;

    e.   all deductions;

    f.   inclusive dates of the period for which the employee is paid;

    g.   the employee identification or social security number; and

    h.   the address of the legal entity that is the employer.

90.   As a result of CoreCivic's failure to provide accurate itemized wages statements, Plaintiffs and Class Members suffered actual damages and harm by being unable to determine their applicable hourly rate or the amount of overtime worked for

each pay period, which prevented them from becoming aware of these violations and asserting their statutory protections under California law.

91.     CoreCivic has knowingly and intentionally failed to comply with Cal. Labor Code § 226(a) and failed to provide a wage statement to Plaintiffs and Class Members.

92.     Pursuant to Cal. Labor Code § 226(e), the Plaintiffs and Class Members are entitled to recover the greater of all actual damages or fifty dollars ($50.00) for the initial pay period in which a violation occurs and one hundred dollars ($100.00) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000.00).

93.     The Plaintiffs and Class Members are entitled to an award of costs and reasonable attorneys' fees pursuant to Cal. Labor Code § 226(h).

## NINTH CAUSE OF ACTION

**Failure to Pay Compensation Upon Termination/Waiting Time Penalties**

**Cal. Labor Code §§ 201-203**

**(On behalf of Plaintiffs Individually and the California Labor Law Class)**

94.     Plaintiffs and Class Members incorporate the above allegations by reference.

95.     California Labor Code §§ 201 and 202 require CoreCivic to pay all compensation due and owing to Plaintiffs and Class Members immediately upon discharge or within seventy-two hours of their termination of employment. Cal. Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required by §§ 201 and 202, then the employer is liable for such "waiting time" penalties in the form of continued compensation up to thirty workdays.

96.     CoreCivic willfully failed to pay Plaintiffs and Class Members who are no longer employed by CoreCivic compensation due upon termination as required by Cal. Labor Code §§ 201 and 202. As a result, CoreCivic is liable to Plaintiffs and former employee Class Members waiting time penalties provided under Cal. Labor Code § 203, plus reasonable attorneys' fees and costs of suit.

## TENTH CAUSE OF ACTION

### Imposition of Unlawful Terms and Conditions of Employment

### Cal. Labor Code § 432.5

### (On behalf of Plaintiffs Individually and the California Labor Law Class)

97.    Plaintiffs and Class Members incorporate the above allegations by reference.

98.    Cal. Labor Code § 432.5 provides that no employer shall require any employee to agree, in writing, to any term or condition which is known by the employer to be prohibited by law.

99.    CoreCivic requires, as a condition of employment, that Plaintiffs and Class Members sign a written agreement which includes numerous terms that are prohibited by law, including but not limited to agreeing to work for less than minimum wage or without appropriate overtime compensation.

100.   Provisions of the employment contract, as described above, that Plaintiffs and Class Members were required to sign as a condition of employment, explicitly and unquestionably, violate several provisions of California law and public policy. Upon information and belief, CoreCivic knew that such provisions violated California law and public policy.

101.   As a result of Defendant's unlawful conduct as alleged herein, Plaintiffs and Class Members have sustained damages.

## ELEVENTH CAUSE OF ACTION

### Negligence

### (On Behalf of Plaintiffs Individually and the Class)

102.   Plaintiffs and the Class Members incorporate the above allegations by reference.

103.   In engaging Plaintiffs and the Class members to provide labor and services to CoreCivic, CoreCivic owed a duty to exercise reasonable and ordinary care in complying with all applicable local, state, and federal laws and to furnish a safe working place for its employees.

Case No. 17-CV-01112-JLS-NLS

104.   This duty included, among other things, taking reasonable measures to implement and maintain reasonable procedures to provide a safe working environment and workplace and to protect the rights of Class Members in compliance with applicable law, including, but not limited to procedures and policies:

        a.    to supervise, restrict, limit, and determine whether any Plaintiffs and the Class Members were subject to Forced Labor practices by CoreCivic or perform other labor and services under threat of punishment, confinement, physical restraint, and deprivation of liberty;

        b.    to notify Plaintiffs and the Class Members of their rights under the TVPA and CTVPA; and

        c.    when and how to notify Plaintiffs and the Class Members of CoreCivic's unlawful Forced Labor practices.

105.   In providing services to the Plaintiffs and the Class, CoreCivic owed them a duty to exercise reasonable care, without limitation in:

        a.    adequately providing a safe working environment and workplace;

        b.    adequately protecting the rights of Class Members in compliance with applicable law;

        c.    prohibiting and adequately ensuring Plaintiffs and the Class Members were not subject to Forced Labor practices;

        d.    adequately ensuring Plaintiffs and the Class Members had a safe work environment; and

        e.    protecting the rights of Plaintiffs and the Class' under the TVPA and CTVPA from CoreCivic's Forced Labor practices.

106.   CoreCivic' systems, policies, and procedures for adequately ensuring the rights of Plaintiffs and the Class Members under the TVPA and CTVPA were adequately protected were intended to, and did, affect Plaintiffs and the Class Members.  CoreCivic was aware that by utilizing Plaintiffs' and the Class Members labor and services, it had a

responsibility to take reasonable measures to protect their rights under applicable law.

107.   The duty CoreCivic owed to Plaintiffs and Class Members to protect their rights under applicable law is underscored by the Federal and California Trafficking Victims Protection Act, which recognizes the importance of preventing the crime of trafficking of a person for forced labor or services.

108.   Additionally, CoreCivic had a duty to timely disclose to and/or warn Plaintiffs and Class Members of their rights under the TVPA, CTVPA, California labor laws, and other applicable laws, rules, and regulations.  Timely disclosure was necessary and appropriate so that Plaintiffs and Class Members could have, among other things, timely pursued and exhausted available remedies, and undertaken appropriate measures to avoid, prevent or mitigate the violations of their rights under applicable laws.

109.   There is a very close connection between CoreCivic's failure to take reasonable measures to provide a safe and lawful work environment and timely disclosure of Plaintiffs' and the Class Members' rights and the injury to Plaintiffs and the Class.

110.   When individuals have their human and labor law rights violated they are at risk for personal, financial, physical, and emotional injury, distress, and damage and need to incur additional costs and expense to protect themselves and seek and obtain redress from such invasions of their legal rights.

111.   CoreCivic is legally responsible for such unlawful violations of Plaintiffs and the Class Members' human and labor law rights and their right to a safe working environment because it failed to take reasonable measures in connection therewith.  If CoreCivic had taken reasonable measures in connection with their employment of Plaintiffs and the Class Members, their legal rights would not have been violated.

112.   The policy of preventing future harm weighs in favor of finding a special relationship between CoreCivic and the Class. CoreCivic's civil immigration detainees have no choice to but to perform the Forced Labor when and how CoreCivic demands it. If CoreCivic is not held accountable for failing to take reasonable measures to protect the

human rights and labor law rights of its detainees, they will not take the steps that are necessary to protect against future invasions of such rights.

113.   It was foreseeable that if CoreCivic did not take reasonable measures, the human rights and labor law rights of Plaintiffs and Members of the Class would be violated. CoreCivic should have known to take precautions to prevent such abuses.

114.   CoreCivic breached its duty to exercise reasonable care in providing a safe work environment for, and protecting the human rights and labor law rights of, Plaintiffs and the Class Members by, without limitation:

> a.   failing to implement and maintain adequate measures to safeguard detainees' rights;
>
> b.   failing to monitor its operations to identify unlawful activity;
>
> c.   requiring and/or allowing Plaintiffs and the Class to work in an unsafe environment; and
>
> d.   failing to otherwise prevent human rights and labor law abuses.

115.   CoreCivic breached its duty to timely warn or notify Plaintiffs and the Class about its unlawful Forced Labor and "Dollar-A-Day Work" practices and programs. CoreCivic has failed to issue any warnings to its current and former detainees affected by these unlawful practices.  Additionally, CoreCivic was, or should have been, aware of its unlawful practices as early as November 2, 2004.

116.   But for CoreCivic's failure to implement and maintain adequate measures to provide a safe working environment for, and protect the human rights and labor law rights of, Plaintiffs and the Class Members, and its failure to monitor its operations to identify unlawful Forced Labor and Dollar-A-Day Work violations of the labor laws, Plaintiffs' and Class Members' rights would not have been violated and Class Members would not be at a heightened risk of unlawful Forced Labor and other labor law violations in the future.

117.   CoreCivic's negligence was a substantial factor in causing harm to Plaintiffs and Class Members, and in violating their human rights and labor law rights.  As a direct

and proximate cause and result of CoreCivic' failure to exercise reasonable care and use reasonable measures to provide a safe working environment and safeguard the human rights and labor law rights of Plaintiffs and the Class Members, Plaintiffs and the Class Members were subjected to Forced Labor and the labor law violations set forth herein. Class Members face a heightened risk of such unlawful practices in the future.

118.   Neither Plaintiffs nor other Class Members contributed to the unlawful conduct set forth herein, nor did they contribute to CoreCivic's unlawful Forced Labor practices and other labor law violations, nor to the insufficient measures to provide a safe working environment and to safeguard the human rights and labor law rights of Plaintiffs and the Class Members.

119.   Plaintiffs and the Class Members seek compensatory damages and exemplary damages with pre-and-post judgment interest, the costs of suit, attorneys' fees, and other and further relief as this Court deems just and proper.

## TWELFTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of Plaintiffs Individually and the Class)

120.   Plaintiffs and the Class Members incorporate the above allegations by reference.

121.   "Under California law, the elements of unjust enrichment are: (a) receipt of a benefit; and (b) unjust retention of the benefit at the expense of another."  Valencia v. Volkswagen Grp. of Am. Inc., No. 15-CV-00887-HSG, 2015 WL 4747533, at *8 (N.D. Cal. Aug. 11, 2015). *See also*, *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.")

122.   "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). "Whether termed unjust enrichment, quasi-

contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred "is an obligation (not a true contract [citation]) created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money." F.D.I.C. v. Dintino, 167 Cal. App. 4th 333, 346 (2008).

123.   Plaintiffs and Class Members conferred non-gratuitous benefits upon CoreCivic by performing "Dollar-A-Day Work" for all hours worked for which CoreCivic would otherwise have had to pay at least the applicable minimum wage or more, thereby significantly and materially increasing CoreCivic's profit margins, and unjustly enriching CoreCivic at the expense of and to the detriment of Plaintiffs and the Class Members.

124.   CoreCivic's retention of any benefit collected directly and indirectly from Plaintiffs' and Class Members' labor and services violated principles of justice, equity, and good conscience. As a result, CoreCivic has been unjustly enriched.  Plaintiffs and Class Members are entitled to recover from CoreCivic all amounts that CoreCivic has wrongfully and improperly obtained, and CoreCivic should be required to disgorge to Plaintiffs and Class Members the benefits it has unjustly obtained.

125.   CoreCivic accepted or retained such benefits with knowledge that Plaintiffs' and Class Members' human rights and labor law right were being violated for financial gain.  CoreCivic has been unjustly enriched in retaining the revenues and profits from Plaintiffs and Class Members' Dollar-A-Day Work, which retention under these circumstances is unjust and inequitable.

126.   As a direct and proximate result of CoreCivic's Forced Labor practices and the Dollar-A-Day Work program, Plaintiffs and Class Members have suffered concrete harm and injury, including, but not limited to, physical and emotional injury, monetary loss in connection with their labor and services provided CoreCivic purchases of services, and the unlawful violation of their human rights and labor law rights, as alleged herein.

127.   CoreCivic's retention of the non-gratuitous benefits conferred on them by

Plaintiffs and Class Members would be unjust and inequitable. Plaintiffs and Class Members are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon CoreCivic in a manner established by this Court.

128. Plaintiffs and Class Members are further entitled to, and hereby seek, reasonable attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5, pre-and post-judgment interest at the applicable legal rate, as well as any and all further equitable relief that this Court deems appropriate.

<u>**THIRTEENTH CAUSE OF ACTION**</u>

**Violation of Labor Code §§ 2698, *et seq.*, Private Attorney General Act**
**(On Behalf of Plaintiffs Individually and the Class)**

129. Plaintiffs and the Class Members incorporate the above allegations by reference.

130. Under PAGA, an aggrieved employee, on behalf of him or herself and other current or former employees as well as the general public, may bring a representative action as a private attorney general to recover penalties for an employer's violations of the Cal. Labor Code and IWC Wage Orders. These civil penalties are in addition to any other relief available under the California Labor Code.

131. Plaintiffs are aggrieved employees as defined in Labor Code § 2699(a). Plaintiffs bring this cause of action on behalf of themselves and other current and former employees impacted by CoreCivic's violations of the Cal. Labor Code and IWC Wage Order 5-2001 as described fully herein.

132. As set forth above (and specifically in Plaintiffs' Fourth through Twelfth Causes of Action), CoreCivic committed violations of the California Labor Code against Plaintiffs and, on information and belief, against other current or former employees while they were or are employed by CoreCivic as described in this FAC (and specifically when they were civil detainees in one of CoreCivic's detention facilities).

133. Plaintiffs thus seek to recover civil penalties and attorneys' fees and costs as authorized under PAGA as a result of CoreCivic's violations of the California Labor

Code and IWC Wage Order 5-2001.

134.   Under PAGA, Plaintiffs are entitled to recover the maximum civil penalties permitted by law for the violations of the California Labor Code that are alleged in this FAC.

135.   Plaintiffs are entitled to civil penalties, to be paid by Defendant and allocated as PAGA requires, pursuant to Cal. Labor Code § 2699(a), for Defendant's violations of the Cal. Labor Code for which a civil penalty is already specifically provided by law.

136.   Plaintiffs are also entitled to civil penalties, to be paid by Defendant and allocated as PAGA requires, pursuant to Cal. Labor Code § 2699(f), for Defendant's violations of the Cal. Labor Code for which a civil penalty is not already specifically provided.

137.   Additionally, Plaintiffs are entitled to recover their attorney's fees and costs pursuant to Cal. Labor Code § 2699(g)(1).

138.   On June 11, 2018, Plaintiffs provided written notice by certified mail to the LWDA of the legal claims and theories of this case (a true and correct cop of the June 11, 2018 notice and receipt from the LWDA is attached hereto as Exhibit "A").  Plaintiffs simultaneously provided a copy of that notice by certified mail to CoreCivic and their counsel of record in this action.  The LWDA did not provide notice "within 65 calendar days of the postmark date of" Plaintiffs' notice, so Plaintiffs are entitled to – and hereby do – assert a PAGA claim in this action arising from Defendant's violations of the Cal. Labor Code IWC Wage Order 5-2001.  Cal. Labor Code § 2699.3(a)(2)

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, request the Court:

a.   certify this case as a class action on behalf of the Class Members defined above, appoint Sylvester Owino and Jonathan Gomes as Class representatives, and appoint the Law Office of Robert L. Teel as Class counsel;

b.      award declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members;

c.      award injunctive relief as is necessary to protect the interests of Plaintiffs and the Class Members;

d.      award restitution, damages, treble damages, and punitive damages to Plaintiffs and Class Members in an amount to be determined at trial;

e.      order disgorgement of CoreCivic's unjustly acquired revenue, profits, and other benefits resulting from their unlawful conduct for the benefit of Plaintiffs and Class Members in an equitable and efficient manner determined by the Court;

f.      order the imposition of a constructive trust upon CoreCivic such that its enrichment, benefit, and ill-gotten gains may be allocated and distributed equitably by the Court to and for the benefit of Plaintiffs and the Class Members.

g.      enter judgment against CoreCivic, awarding Plaintiffs and similarly situated employees past and present amounts pursuant to Labor Code § 2699, *et seq.*;

h.      enter judgment against CoreCivic pursuant to Labor Code § 2699 directing that the penalties awarded pursuant to this cause of action be distributed as follows:  75% paid to the LWDA, and 25% paid to the aggrieved Plaintiffs;

i.      costs of suit pursuant to Labor Code § 2699(g)(1);

j.      attorneys' fees pursuant to Labor Code § 2699(g)(1);

k.      award Plaintiffs and Class Members their reasonable litigation expenses and attorneys' fees;

l.      award Plaintiffs and Class Members pre- and post-judgment interest to the extent allowable; and

m.      award such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED:  October 12, 2018

**FOLEY & LARDNER LLP**
J. Mark Waxman
Eileen R. Ridley
Geoffrey Raux
Nicholas J. Fox
Alan R. Ouellette

*/s/* Eileen R. Ridley
Eileen R. Ridley
Attorneys for Plaintiffs SLYVESTER OWINO,
JONATHAN GOMEZ, and the Proposed
Class(es)

**LAW OFFICE OF ROBERT L. TEEL**
Robert L. Teel
  lawoffice@rlteel.com
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
Telephone:  (866) 833-5529
Facsimile:  (855) 609-6911

Attorneys for Plaintiffs SLYVESTER OWINO,
JONATHAN GOMEZ, and the Proposed
Class(es)

-35-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 12, 2018 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

/s/ Eileen R. Ridley
Eileen R. Ridley