J. MARK WAXMAN  (SBN 58579)
  mwaxman@foley.com
NICHOLAS J. FOX (SBN 279577)
  nfox@foley.com
**FOLEY & LARDNER LLP**
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130
T:  858.847.6700 // F:   858.792.6773

EILEEN R. RIDLEY (SBN 151735)
  eridley@foley.com
ALAN R. OUELLETTE (SBN 272745)
  aouellette@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
T:  415.434.4484 // F: 415.434.4507

ROBERT L. TEEL  (SBN 127081)
  lawoffice@rlteel.com
**LAW OFFICE OF ROBERT L. TEEL**
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
T: 866.833.5529 // F:855.609.6911

GEOFFREY M. RAUX (pro hac vice)
  graux@foley.com
**FOLEY & LARDNER LLP**
111 Huntington Ave.
Boston, MA 02199-7610
T: 617.342.4000 // F: 617.342.4001

Attorneys for Plaintiffs SYLVESTER OWINO,
JONATHAN GOMEZ, and the Proposed Class(es)

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>                               Plaintiffs,<br><br>        vs.<br><br>CORECIVIC, INC.,<br><br>                               Defendant. | Case No. 3:17-CV-01112-JLS-NLS<br><br>**CLASS ACTION**<br><br>**JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 3** |
| CORECIVIC, INC.,<br><br>                               Counter-Claimant,<br><br>        vs.<br><br>SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>                               Counter-Defendants. | Judge:  Hon. Janis L. Sammartino<br>Magistrate:  Hon. Nita L. Stormes |

## I.   INTRODUCTION

Pursuant to the Court's Scheduling Order and Civil Case Procedures, the parties move the Court to resolve a discovery dispute concerning Plaintiffs' intent to conduct further Rule 30(b)(6) depositions.[1]   The relevant deposition topic is attached hereto as **Exhibit A**.  The content of this request and the parties' respective positions are included in sections III and IV, *infra*.

## II.   PROCEDURAL BACKGROUND

On July 27, 2018, the Court entered a Scheduling Order.  [Dkt. 57.]  The Scheduling Order provides that "[f]act and class discovery are not bifurcated."  [*Id.* at ¶ 4.]  The Order sets a deadline for class discovery to be completed, but not one for fact discovery.  [*Id.*]

On April 23, 2019, Plaintiffs served a second 30(b)(6) deposition notice on Defendant regarding the profitability of Defendant's contracts with ICE.[2]  [Declaration of J. Mark Waxman ("Waxman Decl.") at ¶ 5; Ex. A.]  Defendant objected on May 3, 2019, noting that because Plaintiffs had taken 11 hours of deposition of Defendant on March 4-5, 2019, Plaintiffs would not be able to take additional or additional time for 30(b)(6) depositions.  [Waxman Decl. at ¶ 6.]  Defendant stated that Plaintiffs would need to seek leave of court for any additional depositions or time.  [*Id.*]  Defendant's letter also stated that Plaintiffs' requested notice topic was not relevant, duplicative of prior deposition testimony, and covered topics that involve protected trade secret information.   [*Id.*]  Plaintiffs responded to Defendant's letter on May 14, 2019, clarifying the topic of the notice, and commenting on its relevance to Plaintiffs' First Amended Complaint [Dkt. 67] and Defendant's Answer and Counter Claims [Dkt. 70].  [*See* Waxman Decl. at ¶ 8.]

Plaintiffs and Defendant met and conferred telephonically on May 16, 2019 regarding the deposition notice and this Joint Motion.  [Waxman Decl. at ¶ 9.]  The filing of this Motion follows 45 days after the initial response from Defendant's counsel regarding the noticed deposition.

---

[1] All Rule references herein are to the Federal Rules of Civil Procedure.
[2] Plaintiffs noticed a first 30(b)(6) deposition that was taken on March 4-5, 2019.

4821-3856-5018.2

## III.   PLAINTIFFS' POSITION

The parties seek resolution on two main topics:

(1) May Plaintiffs take further 30(b)(6) depositions, on topics not previously covered and beyond topics focused on and in connection with prior their class certification motion, without being limited by Fed. R. Civ. Pro. Rule 30(a)(2)(A)?

(2) May Plaintiffs continue to seek discovery to conduct the noticed corporate representative deposition on relevant, not previously covered topics, notwithstanding the pending motion to certify a class?

### A.   PLAINTIFFS MOVE FOR LEAVE TO TAKE ADDITIONAL 30(B)(6) DEPOSITIONS.

On its face, Rule 30(a)(2)(A) does not limit a party from noticing additional Rule 30(b)(6) depositions on topics not previously covered in prior depositions. *See* Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2103 (2d ed., Vol. 33 2018) (2019 update) ("The fact that a Rule 30(b)(6) notice must specify limited topics for examination implies that additional inquiry into other relevant topics should not be precluded by the fact that inquiry has first been made on the topics designated for the first Rule 30(b)(6) deposition."). If a party requests leave for further Rule 30(b)(6) depositions, a Court must grant it to the extent consistent with Rule 26(b)(2). *FCC v. Mizuho Medy Co. Ltd.*, No. 07cv189 JAH (NLS), 2009 U.S. Dist. LEXIS 135856 at \*8-\*9 (S.D. Cal. Sept. 25, 2009).

The Ninth Circuit has not determined if a corporate 30(b)(6) deposition is subject to the limitations of Rule 30(a)(2)(A), including the limitation on deposing a deponent already deposed. *Heath v. Google LLC*, No.15-cv-01824-BLF (VKD), 2018 U.S. Dist. LEXIS 161223 at \*5 (N.D. Cal. Sept. 19, 2018); *Behrend v. Comcast Corp.*, No. CV 09-05435-VBF (AGRx), 2009 U.S. Dist. LEXIS 140969 at \*4-\*5 (C.D. Cal. Aug.18, 2009). Lower courts are split regarding this issue. *See e.g.*, *id.*

Regardless of whether or not Defendant is considered to be a deponent already deposed, Plaintiffs seek leave to take further Rule 30(b)(6) depositions in this case. Although class and fact discovery were not bifurcated,  as discussed with both Defendant

and the Court at the time the discovery timelines were established, Plaintiffs focused their initial depositions on class discovery, with the understanding that further written and oral discovery would be needed.  As a result, when class discovery closed on March 15, 2019, Plaintiffs turned to focus on fact and merits discovery, which has necessarily expanded the scope of Plaintiffs' (and Defendant's) discovery needs.  This is because, regardless of the outcome of the motion for class certification, there are relevant deposition topics to pursue in order to move this case forward, even if the certification motion is denied.

That desired discovery will be both documentary and through appropriate depositions. The pending notice sets forth a number of topics on which deposition discovery in particular is both relevant (see discussion *infra*) and necessary to address issues raised in the case.  Since the close of class discovery, Defendant has provided, and will continue to provide, relevant written discovery and document production.  [*See* Waxman Decl. at ¶ 4.]  But, this additional written discovery alone will not be sufficient. In order for Plaintiffs to understand the documents produced by Defendant and the facts important to Plaintiffs' claims, or make a reasoned determination with respect to the underlying facts and counterclaim defenses to be presented at the trial of this action, further depositions are needed.  As there is no stay on discovery, Plaintiffs respectfully request leave to take additional Rule 30(b)(6) and other depositions.

**B.   PLAINTIFFS MOVE FOR LEAVE TO TAKE THE DEPOSITION NOTICED ON APRIL 23, 2019.**

Should the Court determine that Plaintiffs require leave to take the requested deposition, Plaintiffs hereby request such leave.  The requested deposition is on the topic of the budgeting and financial considerations and the profitability of Defendant's contracts with I.C.E. which address the housing of the Plaintiffs in this action.  [*Id.* at ¶ 5; Ex. A.] The requested deposition is relevant to Plaintiffs' claims and Defendant's affirmative defenses and Counter-Claims, and will aid in the evaluation of each.  This deposition is not on a topic already covered by previous deposition testimony.

This deposition would not put the total number of Plaintiffs' depositions thus far at

more than the ten allowed without leave under Rule 30, even if the deposition is counted separately from the previous Rule 30(b)(6) deposition.

### This Joint Motion is Timely

Section VI.C of the Civil Case Procedures states that a Joint Motion for Determination of Discovery Dispute must be filed "within forty-five (45) days of the date of the even giving rise to the dispute . . ." Section VI.C.2.b. clarifies that the trigger date for the dispute in written discovery is the date of the initial response. Plaintiffs received Defendant's objections with its opposition to the noticed deposition on May 3, 2019. It is this date, then, that triggers the 45-day deadline. No other portion of the Civil Case Procedures apply in this situation. Here, only a written discovery notice was served and no dispute existed prior to Plaintiffs' receipt of Defendant's written objections to the deposition notice on May 3, 2019. Section VI.C.2.a. only applies to disputes regarding oral discovery and tethers the discovery dispute deadline to the receipt of the deposition transcript from the court reporter, which is inapplicable here.

### The Discovery Sought is Directly Relevant

The noticed deposition is directly relevant to Plaintiffs' claims asserted in the First Amended Complaint for: Violation of the California Trafficking Victims Protection Act (Second Cause of Action), Violation of California's Unfair Competition Law (Third Cause of Action), and Unjust Enrichment (Twelfth Cause of Action). [*See* Dkt. 67.] It seeks information which bears directly on facts which will support or defeat a number of claims in this case. For example, Defendant's affirmative defenses stating that it has not unjustly retained any benefits at the expense of Plaintiffs (No. 30), it is entitled to an offset from any award for costs incurred for providing material benefits to Plaintiffs (No. 35), and a requirement to pay Plaintiffs minimum wage would make it "impossible" for Defendant to comply with its contractual obligations to I.C.E. (No. 36). Information about the economic performance of the contracts in question will produce facts which test whether any of what Defendant has alleged is true, or if so, how such claims should be evaluated. Additionally, this deposition is directly relevant to as Defendant's unjust enrichment counter-claim,

Case No. 17-CV-01112-JLS-NLS

which alleges that Plaintiffs and/or putative class members would be unjustly enriched from any reward that did not include an offset for Defendant's provision of basic needs items and resources (*e.g.*, clothing, housing, administration of the Voluntary Work Program).  [*See* Dkt. 70.]

Examples of the potential value of the deposition testimony abounds. For example, Plaintiffs aim to prove that Defendant reduced its labor costs and expenses due to Plaintiffs' labor through the "Voluntary Work Program" at each of Defendant's detention facilities—i.e., *but for* Plaintiffs' labor, Defendant would have had to pay non-detainee employees at least a minimum wage to perform the same work throughout the facilities.  [Dkt. 67 at ¶ 57, 67-68, 120-28.]  The deposition will elicit testimony on the monetary loss to Plaintiffs regarding Defendant's unfair business practices and human and labor law rights violations. The extent to which Defendant benefited economically from the contracts in question goes to the heart of the sought after unjust enrichment.

Further, this deposition will speak to the veracity of Defendant's affirmative defenses and counter-claim that it has not been unjustly enriched and that an award to Plaintiffs and/or putative class members.  This deposition will elicit testimony regarding the scope of asserted monetary and non-monetary unjust benefits that Defendant alleges Plaintiffs have received.

Finally, Defendant has alleged in its counter-claims that Plaintiffs would be unjustly enriched should they be successful in their claims.  [*Id.*]  Without this deposition, it would be difficult for Plaintiffs to understand the potential value of this claim.  Defendant alleges that Plaintiffs and/or putative class members would be unjustly enriched by any award without offsetting such award with respect to the monetary and other benefits Defendant alleges it provided to I.C.E. detainees (who, incidentally, were involuntarily housed at Defendant's detention facilities).  [*See id.*]  Defendant's counter-claim alleges that this offset would include (but is not limited to) the cost of housing, food, clothing, and recreation.  [*Id.* at ¶ 23-25.]  The noticed deposition will allow Plaintiffs to more fully understand the costs asserted by Defendant.

**The Discovery Sought is Not Duplicative**

This requested deposition topics are not be duplicative of prior deposition testimony. Defendant apparently claims there are four instances in the prior Rule 30(b)(6) deposition that Defendant claims were on the topic noticed.  [Waxman Decl. at ¶ 7.]  Plaintiffs carefully reviewed the prior deposition testimony, and found no testimony on the topic on which this deposition is noticed.  [*See* Waxman Decl. Ex. 1.] While the prior Rule 30(b)(6) deposition did elicit some testimony regarding contracts between I.C.E. and Defendant, that testimony was limited (at best) to an indication of which persons employed by Defendant negotiate such contracts.  [*See id.*]  The subject matter of this deposition would be to understand how the budgeting process works with regards to Defendant's contracts with I.C.E., and the economic elements of contract performance.  This topic does not overlap with the topics of the previous Rule 30(b)(6) deposition.

And, of course, document productions are not duplicative of deposition testimony. While Defendant may assert that a document "tells all" when it comes to finance, no such documents have been produced, and how the various elements are put together and evaluated by Defendant is not found in any document Defendant has produced.

**Plaintiffs Approach to Discovery is Reasonable**

This deposition is reasonable given the size of this case.  As of the filing of this motion, Defendant has produced more than 10,000 documents, totaling more than 95,000 pages, not including the pages of spreadsheets, which are counted as one page for the purposes of Bates Numbers.  Plaintiffs aim to avoid the burden of drawn-out depositions by spreading out topic-specific depositions, as there are many topics related to this litigation.  Plaintiffs are willing to agree to the location and time of each deposition.

With respect to Defendant's contention that this deposition seeks proprietary, trade secret information, Plaintiffs note that the Court has entered a comprehensive and *stipulated* Protective Order in this case.  [Dkt. 60.]  The Protective Order speaks directly to the protection of potential trade secret or other confidential information: "All portions of the deposition transcripts designated as CONFIDENTIAL INFORMATION will be

sealed and will not be disseminated . . . ."  [*Id.* at 5:15-17.]  The Protective Order is not designed to *limit* discovery in this case; rather, it is to ensure that discovery purportedly containing such information as trade secrets is protected from public dissemination.  Given that the Protective Order is in place, simply because a deposition *may* elicit trade secret information does not constitute a limit on discovery in this case.[3]

Plaintiffs noted in their response letter to Defendant that they were amenable to the modification of the deposition notice for clarity and efficiency.  [Waxman Decl. at ¶ 8.] Plaintiffs still hold by this, and are willing to modify this deposition notice as required by the Court or as determined by negotiation with Defendant.

## IV.   DEFENDANT'S POSITION

### A.   Background and Introduction.

On March 4 and 5, 2019, pursuant to Fed.R.Civ.P. 30(b)(6), Plaintiffs deposed Jason Ellis (the individual CoreCivic employee designated in response to Plaintiffs' first Notice) in Nashville, Tennessee.  (Declaration of A. Hesman at ¶2.)  While depositions are limited to one day of seven hours, Plaintiffs sought leave and were granted permission to depose Mr. Ellis for 11 hours over the course of two days.  (Dkt. 80.)  The Court permitted Plaintiffs to this extended deposition based on their assertion that the additional time would "promote efficiency and conserve party resources so that the deposition may be completed on March 4-5, 2019 without counsel for the parties undertaking a second trip to Nashville to complete the deposition at a later date. . . ."  (Dkt. 78 at 5.)  Plaintiffs never indicated they would seek an additional deposition of CoreCivic at a later date.

Despite being granted (and utilizing) additional time to depose CoreCivic, on April 23, 2019, Plaintiffs noticed CoreCivic's deposition a second time.  (Exhibit A.)  Defendant promptly notified Plaintiffs of its objections to the Notice.  (Declaration of A. Hesman at ¶4.)  Defendant objected because:  (1) Plaintiffs failed to seek leave to depose CoreCivic a

---

[3] Moreover, Defendant has simply asserted—without specificity or proof—that the deposition *might* involve trade secret information.  It is not clear what specific information Defendant considers to be a trade secret, or whether that information actually qualifies for trade secret protection.

second time; (2) the Rule 26(b)(2) factors weigh heavily against allowing Plaintiffs to depose CoreCivic a second time; and (3) the topics in Plaintiffs' second 30(b)(6) Notice sought irrelevant information beyond the scope permitted by Rule 26(b)(1). (*Id.*) Plaintiffs responded on May 15 and the parties met and conferred the following day. (*Id.* at ¶¶5-6.) After the meet and confer, Plaintiffs' counsel advised he would send a draft of their portion of a joint motion the following week. (*Id.* at ¶7.) Nearly one month passed. Defense counsel heard nothing from Plaintiffs' counsel regarding the dispute. (*Id.* at ¶8.) Then, on June 11, 2019, twenty-six days after the meet-and-confer and forty-nine days after Plaintiffs noticed the second deposition, Plaintiffs' counsel sent a proposed joint motion, and advised they intended to file it just four business days later. (*Id.* at ¶9.)

In addition to being untimely, Plaintiffs' Motion should be denied because the discovery Plaintiff seeks is only arguably relevant to class certification. Class discovery closed three months ago and no class has been certified.[4]  (Dkts, 57, 84.) As such, Plaintiffs' individual claims are the only claims pending before the Court. Because Plaintiffs were only incarcerated at one (now closed) CoreCivic facility, they are not entitled to discovery regarding every contract CoreCivic has ever negotiated with ICE, as their second Notice requests.  For these, and the more specific reasons detailed below, the Court should deny Plaintiffs' Motion.[5]

### B.    Plaintiffs' Motion is Untimely.

Pursuant to Section VI(C) of the Court's Civil Case Procedures, "if the parties do not resolve a discovery dispute through the meet and confer process, counsel must, **within forty-five (45) days of the date of the event giving rise to the dispute** . . . file a [Joint Motion] . . . with the Court. (Civil Case Procedures for Honorable Nita L. Stormes; *see*

---

[4] Defendants' Response to Plaintiffs' Motion for Class Certification is not due until July 11, 2019.

[5] Plaintiffs' Motion seeks relief beyond the only dispute the parties have met and conferred regarding:  whether Plaintiffs can depose CoreCivic a second time on the topics outlined in their April 23, 2019 Notice. As such, any additional relief Plaintiffs seek (whether they can conduct additional depositions beyond the topics contained in their April 23, 2019 Notice, whether they can conduct written discovery on particular subject matters, etc.), is premature and not ripe for the Court's review.

*also* Dkt. 57 at ¶6.)  Here, the event that gave rise to this dispute (whether Plaintiffs can depose CoreCivic a second time) is Plaintiffs' April 23, 2019 deposition Notice. [1] Indeed, this is the only possible "trigger date" as a deposition notice is neither oral nor written discovery.  (Stormes Civil Case Procedures at VI(C)(2).)  And because Plaintiffs were required to seek leave before noticing the deposition, but failed to.    As such, the deadline for Plaintiffs to file a joint motion on this issue was June 7, 2019.  Instead of providing Defendant with their portion of a joint motion in advance of the June 7, 2019 deadline (as they represented they would do during the May 16, 2019 meet-and-confer), Plaintiffs did nothing, leaving Defendant to believe they abandoned the issue.  Plaintiffs' failure to timely submit this Motion in accordance with the Court's Civil Procedures, alone, should result in its denial.  *See Estate of McNeil by & through Berkes v. FreestyleMX.com, Inc.*, No. 13CV2703 NLS (KSC), 2015 WL 13566927, at *2 (S.D. Cal. Apr. 27, 2015) (plaintiffs' failure to adhere to Judge Stormes' chamber's rules, or to the scheduling order, resulted in waiver of plaintiffs' discovery issue and denial of their motion).

Additionally, Plaintiffs' Motion should be denied because they failed to promptly bring the dispute to the Court's attention.  As this Court previously recognized, parties should "promptly turn[] to the Court for guidance" after a meet-and-confer reveals the dispute cannot be resolved informally.  *Flores v. J.C. Penney Corp.*, No. 04CV2337-IEG (NLS), 2006 WL 8442702, at *2 (S.D. Cal. Mar. 20, 2006) (citing *Claytor v. Computer Assoc. Int'l, Inc.,* 211 F.R.D. 665, 667 (D. Kan. 2003)) (plaintiff's discovery motion filed too late, because "as soon as defendant advised plaintiff that no additional information would be forthcoming, [plaintiff] should have turned to the court for guidance").  Plaintiffs' decision to lie in wait for nearly a month before sending Defendant a copy of their joint motion, coupled with their demand that Defense counsel provide their portion for filing just four business days later, should also result in the denial of Plaintiffs' Motion.

## C.    Plaintiffs' Request to Depose CoreCivic a Second Time Should be Denied.

Even if the Court determines Plaintiffs' Motion is timely, it should deny it because Plaintiffs cannot establish good cause to depose CoreCivic a second time.  While Plaintiffs

-9-                        Case No. 17-CV-01112-JLS-NLS

served their Notice without first seeking leave, they now concede they were first required to seek leave because they already deposed CoreCivic.    Fed.R.Civ.P. 30(a)(2)(ii); *Friedman v. 24 Hour Fitness USA, Inc.*, No. CV 06-6282-AHM(CTx), 2008 WL 11338168, at *2 (C.D. Cal. Nov. 14, 2008) (finding plaintiffs' second 30(b)(6) notice to corporate defendant invalid because plaintiffs did not first seek leave of court to do so); (Declaration of A. Hesman at ¶6.)

The Court shall only grant leave "to the extent consistent with the principles stated in Rule 26(b)(2)," which allows courts to limit discovery in instances in which the court determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

As discussed below, these factors weigh against allowing Plaintiffs to depose CoreCivic a second time.  Their Motion should be denied.

### 1.    The Topics in Plaintiffs' Second Notice Are Cumulative, Duplicative, and Can Be Obtained From Other Sources That Are More Convenient, Less Burdensome, and Less Expensive.

Plaintiff's Notice is cumulative and duplicative.  It requests information regarding CoreCivic's contracts with ICE, but Plaintiffs already possess this information.  To date, Defendant has produced twenty ICE contracts which cover twenty-four facilities over the relevant time period.[6]  To the extent Plaintiffs have specific questions regarding the contracts, they can refer to the contracts or propound written discovery.  *See Tyus v. Wendy's of Las Vegas, Inc.*, 2:14-CV-729-GMN-VCF, 2015 WL 13678046, at *3 (D. Nev. Apr. 6, 2015) (finding topic requiring designee to familiarize itself with specific details and

---

[6] Indeed, in their Section, Plaintiffs acknowledge the staggering number of documents Defendant has produced in this case.

minutiae was better propounded as an interrogatory than as a topic in a 30(b)(6) notice). Moreover, during the first deposition of CoreCivic, Plaintiffs' counsel asked Mr. Ellis questions regarding CoreCivic's negotiation and budgeting process. (Waxman Declaration at ¶7.) Indeed, Plaintiffs concede that "the prior Rule 30(b)(6) deposition did elicit some testimony regarding contracts between ICE and Defendant. . ." (Plaintiffs' Section, *supra*). At a minimum, the fact Plaintiffs elicited testimony regarding CoreCivic's contracts with ICE establishes that they had the opportunity to question Mr. Ellis regarding "how the budgeting process works with regards to Defendant's contracts with I.C.E., and the economic elements of contract performance." (Plaintiffs' Section, *supra*.) That they chose not to (or neglected to) does not justify a second deposition.

Finally, the information sought in Plaintiffs' Notice can be obtained from more convenient, less burdensome, and less expensive sources. In addition to already possessing the information described above, on May 29, 2019, Plaintiffs propounded written discovery requesting the same information requested in their second Notice.[7] (Declaration of A. Hesman at ¶11.) "Serving a duplicative Rule 30(b)(6) deposition notice contemporaneous with [a party's] written discovery requests violates the requirements of Rule 26(b) that discovery be reasonably tailored and proportional to the needs of the case." *Bank of Am., N.A. v. SFR Investments Pool 1 LLC*, 215CV01042APGGWF, 2016 WL 2843802, at *3 (D. Nev. May 12, 2016). This is especially so where, as is the case here, the information Plaintiffs seek is contained in documents they possess or will possess once Defendant responds to their written discovery. Because Plaintiffs requested this information through written discovery, and Defendant's responses are not yet due, it is improper, duplicative, and not proportional to the needs of the case for them to require a designee to testify to the same information. Moreover, obtaining this information through written discovery is less expensive and burdensome as it does not require Counsel to travel to Nashville and prepare a designee a second time.

///

---

[7] Defendant has until June 28, 2019 to respond.

4821-3856-5018.2

### 2. Plaintiffs Had Ample Opportunity to Obtain the Information Sought in Their Second Notice During Their First Deposition of CoreCivic.

Plaintiffs' failure to include the topics contained in their second Notice in their first Notice, and their failure to explore them during the first deposition as discussed in Section IV(c)(1) above, should result in denial of their Motion as they had the opportunity to obtain the information during the first deposition, but did not. This is unlike cases where courts allowed a second deposition of a party in order to explore *new* evidence. *See Zamora v. D'Arrigo Bro. Co. of Cal.*, C04-00047 JW, 2006 WL 3227870, at *2 (N.D. Cal. Nov. 7, 2006) (allowing second deposition to take place two years later to ask about data produced subsequent to the first deposition) (citing cases). As is the case here, courts have refused to permit second depositions where the discovering party could have sought the information in the first deposition, but neglected to. *See Blackwell v. City of San Francisco*, C-07-4629 SBA (EMC), 2010 WL 2608330, at *2 (N.D. Cal. June 25, 2010) (denying plaintiff's request for leave to take a second 30(b)(6) deposition where plaintiff "had an opportunity to obtain the information now sought through the first deposition" and "should have been able to cover the subject matters identified in the notice for the second deposition at the time of the first deposition").

Nothing prevented Plaintiffs from including their second Notice topics in their first Notice. Plaintiffs cannot continue to notice depositions of the same party every time they think of additional topics they neglected to previously cover. And Defendant and its counsel should not be punished for Plaintiffs' failure, by having to unnecessarily incur additional expenses and fees to again travel to Nashville, Tennessee to prepare and defend against a second deposition. Especially where, as discussed above, Plaintiffs were granted additional time and days to depose CoreCivic the first time based on their representation to the Court and Counsel that additional time would "promote efficiency and conserve party resources so that the deposition may be completed on March 4-5, 2019 without counsel for the parties undertaking a second trip to Nashville . . ." (Dkt. 78 at 5.) Permitting Plaintiffs to take a second deposition frustrates these goals.

4821-3856-5018.2

### 3. The Topics in Plaintiffs' Second Notice Do Not Comply with Rule 26.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1).  The 2015 Amendments emphasize that "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee notes (2015 amendments); *see also Salazar v. McDonald's Corp.*, No. 14-CV-02096-RS (MEJ), 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016) (noting there is "a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts").  These amendments encourage trial courts to exercise their broad discretion to limit and tailor discovery to avoid abuse and overuse, and to actively manage discovery to accomplish Rule 1's goal to secure the just, speedy, and inexpensive determination of every action and proceeding.

Additionally, a party who notices a Rule 30(b)(6) deposition should apply fairness and reasonableness to the scope of the matters the witness is required to testify about.  For Rule 30(b)(6) to effectively function, "the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Mailhoit v. Home Depot U.S.A., Inc.*, CV1103892DOCSSX, 2012 WL 12884049, at *2 (C.D. Cal. Aug. 27, 2012) (internal citations and quotations omitted).  The "reasonable particularity" requirement of Rule 30(b)(6) "requires that the requesting party describe topics with enough specificity to enable the responding party to designate and prepare one or more deponents."  (*Id.* at *3.)

4821-3856-5018.2

Plaintiffs' second Notice contains the following topic: "[C]oreCivic contract negotiation with United States Immigration and Customs Enforcement, including but not limited to:

> (a) The process of negotiation of the contract, i.e. the steps in the process;
>
> (b) The determination of the costs or charges to be proposed to ICE; and
> p
> (c) The elements that go into determining the economic factors involved in the contract, including overhead, profit targets or goals, costs of goods and labor, and costs of supplies.

(Exhibit A at 1.)

This topic is overbroad. First, it contains the phrase "including but not limited to." *See Shapiro v. Am.'s Credit Union*, C12-5237-RBL, 2013 WL 12310679, at *2 (W.D. Wash. May 31, 2013) (notice containing "including but not limited to" language was overbroad). Second, it is not limited in time or scope and instead seeks detailed information regarding every negotiation CoreCivic has ever had with ICE. Because CoreCivic has contracted with ICE since 1986, the breadth of this topic is unreasonable. "[A]n overbroad Rule 30(b)(6) notice subjects the responding party to an impossible task. If the responding party cannot identify the outer limits of the topics listed in the notice, it will likely be unable to produce a witness fully prepared to testify on the topics." *HSBC Bank USA, N.A. v. Green Valley Pecos Homeowners Ass'n, Inc*., 216CV00242JCMGWF, 2016 WL 6915301, at *3 (D. Nev. Nov. 21, 2016) (citation omitted). "[L]isted topics must focus on relevant subjects . . . the responding party cannot be required to interpret overbroad topics. *Id*. (citation omitted). While a corporation must make a good faith effort to prepare a 30(b)(6) witness to "fully and unevasively answer questions about the designated subject matter . . . that task becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand." *Apple, Inc. v. Samsung Electronics Co., Ltd*., 2012 WL 1511901 at *2 (N.D. Cal. Jan. 27, 2012) (internal quotation marks omitted). Although Rule 30(b)(6) requires a designated witness to thoroughly educate him or herself on the noticed topic, there must be a limit to the specificity of the information the deponent can reasonably

be expected to provide." *West v. Jewelry Innovations, Inc.*, C07-01812 JF (HRL), 2008 WL 512731, at *2 (N.D. Cal. Feb. 25, 2008) (internal citation omitted).  It is unreasonable to require a designee, or even several designees, to become familiar with the breadth of information covered by this topic.  As such, and coupled with the travel requirements discussed above, this topic is also unduly burdensome.  *See Tyus v. Wendy's of Las Vegas, Inc.*, No. 2:14–cv–729–GMN–VCF, 2015 WL 13678046, at *2-3 (citing *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 306 (1962)) ("The Rules also require the court and the requesting party to avoid imposing an undue burden on the producing party. . . . The court has a duty . . . to protect a party from being needlessly burdened.").

Further, the topic is vague.  Plaintiffs' topic includes phrases such as "process of negotiation," "determination of costs," and "economic factors," but fails to sufficiently identify what particular information they seek.  Because every contract and negotiation is different and Plaintiffs' topic covers a 33-year period, "[p]laintiffs place the burden on [d]efendants to identify [the information] to prepare for the deposition." *Silva v. San Pablo Police Dep't,* 16-CV-04360-VC (KAW), 2018 WL 358789, at *2 (N.D. Cal. Jan. 11, 2018) (quashing plaintiffs' 30(b)(6) notice for being vague).  This is not Defendant's burden to bear.

Furthermore, the topic is not relevant.  Plaintiffs allege they were forced to work at one CoreCivic facility for insufficient or no pay in violation of various federal and state laws.  The process by which Defendant enters into contracts with its governmental partners (the only topic area contained in their second Notice) is not relevant to these claims.  Plaintiffs now claim they will utilize the second deposition to obtain information relevant to their unjust enrichment claim and Defendant's affirmative defenses, by exploring whether CoreCivic reduced its labor costs and expenses due to Plaintiffs' labor, and the scope of benefits Plaintiffs received.  (Plaintiffs' Section, *supra.*)  But the topic in Plaintiffs' second Notice requests information regarding contract negotiations, not information regarding the benefits allegedly received by Defendant.  Regardless, for the same reasons discussed in Section IV(C)(1), information pertaining to Defendant's alleged

4821-3856-5018.2

benefits is more properly sought through written discovery or by a review of the documents already in Plaintiffs' possession.  Further, the only issue arguably relevant to the merits of their claims, is whether their labor enriched Defendant.  Evidence pertaining to Plaintiffs' (inaccurate) allegation that the Voluntary Work Program creates profits for Defendant is not needed for this inquiry.  Because class discovery closed on March 15, 2019, and Plaintiffs filed their Motion for Class Certification on April 15, 2019 (Dkt. 84), Plaintiffs are foreclosed from seeking this information now as it is no longer relevant.  (Dkt. 57 at 2.)  Moreover, because Plaintiffs were only incarcerated at one facility—San Diego Correctional Facility—they are not entitled to discovery regarding the negotiation of every ICE contract, as their second Notice requests, because class discovery has closed.

Even if relevant to Plaintiffs' individual claims, whether Defendant was unjustly enriched by Plaintiffs' labor is a question that can be answered through targeted written discovery regarding the individual Plaintiffs, or by a review of their records, which Plaintiffs already possess.  Plaintiffs possess the contracts; they speak for themselves. While Defendant maintains that this information is not relevant, Plaintiffs can utilize these contracts, and other documentation Defendant has produced and/or that is publicly available, to determine Defendant's alleged profitability.  It is unnecessary for Plaintiffs to travel to Nashville, Tennessee to depose CoreCivic to obtain this information, especially because they previously deposed CoreCivic for 11 hours over the course of two days.

Finally, the topic seeks testimony regarding the strategies CoreCivic employs when negotiating contracts.  In addition to being irrelevant, Plaintiffs are not entitled to this trade secret information.  Trade secrets "may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. Oct. 28, 2008).  Compelling reasons exist to protect trade secrets.  *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  Disclosure of this information to Plaintiffs, Plaintiffs' counsel, or the public would compromise CoreCivic's competitive business advantage and result in substantial

4821-3856-5018.2

commercial harm.  *See Saint Alphonsus Med. Ctr.--Nampa, Inc. v. St. Luke's Health Sys., Ltd.,* No. 1:12-CV-00560-BLW, 2014 WL 3101716, at *8 (D. Idaho July 3, 2014) (finding information regarding company's negotiation strategy to be "highly confidential," and that disclosure would compromise its negotiating strength).   Plaintiffs' argument that Defendant is somehow required to provide such information because there is a protective order in place is unavailing.  That the Protective Order permits Defendant to designate documents "confidential" before they are produced, does not entitle Plaintiffs to obtain confidential information they would not otherwise be entitled to.

The Court has already permitted Plaintiffs to go beyond Rule 30's limitations by allowing them to depose CoreCivic for 11 hours over the course of two days.  Plaintiffs should not be permitted to depose CoreCivic a second time, especially where they offer no legitimate justification for why they failed to obtain the information they now request during the first deposition, and where they seek irrelevant information they are not entitled to.  Plaintiffs' Motion should be denied.

## V.   **CONCLUSION**

For the foregoing reasons, the parties ask the Court to resolve this Joint Motion.

Case No. 17-CV-01112-JLS-NLS

4821-3856-5018.2

DATED:  June 17, 2019

**FOLEY & LARDNER LLP**
J. Mark Waxman
Eileen R. Ridley
Geoffrey Raux
Nicholas J. Fox
Alan R. Ouellette

_/s/_ J. Mark Waxman
J. Mark Waxman

**LAW OFFICE OF ROBERT L. TEEL**
Robert L. Teel

Attorneys for Plaintiffs/ Counter-Defendants
SYLVESTER OWINO, JONATHAN
GOMEZ, and the Proposed Class(es)

DATED:  June 17, 2019

**STRUCK LOVE BOJANOWSKI & ACEDO, PLC**
Daniel P. Struck
Rachel Love
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee

_/s/_ Ashlee Hesman
Ashlee B. Hesman

**LAW OFFICE OF ETHAN H. NELSON**
Ethan H. Nelson

Attorneys for DEFENDANT/COUNTER-
CLAIMANT CORECIVIC, INC.

4821-3856-5018.2

# EXHIBIT A

## TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition upon oral examination of Defendant CoreCivic, Inc. on June 18, 2019 at 9:00 a.m., at the offices of Alpha Reporting Corp., 1 Vantage Way, Suite D115, Nashville, TN 37228.  In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant CoreCivic, Inc. is hereby notified of its obligation to designate one or more officers, directors, or managing agents (or other persons who consent to do so) to testify on their behalf as to CoreCivic contract negotiation with United States Immigration and Customs Enforcement, including but not limited to:

(a) The process of negotiation of the contract, i.e. the steps in the process;

(b) The determination of the costs or charges to be proposed to ICE; and

(c) The elements that go into determining the economic factors involved in the contract, including overhead, profit targets or goals, costs of goods and labor, and costs of supplies.

Case No. 17-CV-01112-JLS-NLS

4821-3856-5018.2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 17, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

*/s/* J. Mark Waxman

4821-3856-5018.2