# Exhibit 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

______________________________________________

SYLVESTER OWINO, on behalf of themselves, and all others similarly situated, et al.,

Plaintiff,

vs. Case No. 3:17-cv-01112-JLS-NLS

CORECIVIC, INC., a Maryland corporation,

Defendant.

________________________________________________

THE DEPOSITION OF JASON ELLIS

MARCH 4, 2019

Reported By:

PATRICIA A. NILSEN,

RMR, CRR, CRC

Job No. 3225918

Pages 1 - 270

The deposition of JASON ELLIS, taken on behalf of the Plaintiffs, pursuant to Notice on MARCH 4, 2019, beginning at approximately 9:11 a.m. in the offices of Alpha Reporting.

This deposition is taken in accordance with the terms and provisions of the Federal Rules of Civil Procedure. All objections are reserved except as to form.

The signature of the witness is reserved.

APPEARANCES

For the Plaintiffs:

EILEEN REGINA RIDLEY
ALAN R. OUELLETE
Attorneys at Law
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, CA 94104
(415) 434-4484

eridley@foley.com

ROBERT L. TEEL (via video conf.)
Attorney at Law
1425 Broadway
Mail Code: 20-6690
Seattle, WA 98122
866-833-5529
lawoffice@rlteel.com

For the Defendant:

DANIEL P. STRUCK
Attorney at Law
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
(480) 420-1620
dstruck@strucklove.com

Reported By:

PATRICIA A. NILSEN, RMR, CRR, CRC
TN Certified Court Reporter

Videotaped By: DAVID DRUMEL

INDEX


| WITNESS: | PAGE |
|---|---|
| JASON ELLIS | |
| Examination | |
| By Ms. Ridley | 6 |


EXHIBITS


| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 65 | Notice of deposition | 11 |
| EXHIBIT 66 | Policy 19-100, the resident work program for Otay Mesa Detention Center | 195 |
| EXHIBIT 67 | Post orders for food service | 197 |
| EXHIBIT 68 | Document entitled Work/Program Plan Guidelines (ICE) | 208 |
| EXHIBIT 69 | Document entitled San Diego Correctional Facility Inmate/Detainee Safety Rules | 228 |
| EXHIBIT 70 | One-page document entitled Detainee Voluntary Work Program Agreement | 236 |

EXHIBITS


| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 71 | Document entitled CoreCivic Eloy Detention Center Detainee Handbook Supplement | 244 |
| EXHIBIT 72 | Document headed Weekend Pod Utility Porter | 251 |
| EXHIBIT 73 | Work/Program Plan Guidelines | 265 |

policies and procedures that facilities would have would originate with the facility support center, correct?
A. Correct.
Q. Okay. Contracts with partners: When you say "partners," who are you referring to?
A. When I refer to "partners," I refer to a number of partners or customers that we currently partner with. It could be ICE or Immigration; it could be the US Marshal Service, the Bureau of Prisons; any number of states that we contract with; county entities, the Bureau of Prisons.
Those are -- are some.
Q. Okay. And to your understanding, CoreCivic has contracts with these clients, correct?
A. Correct.
Q. Okay. And I take it that the negotiation of those contracts would be done by folks at the facility support center?
A. Correct.
Q. As opposed to folks at specific facilities?
A. Correct.
Q. Okay. So that -- I'm just picking a

facility: If -- if Otay Mesa has a -- is -- is working with ICE detainees, and there is an ICE contract, that ICE contract would have been negotiated by someone at the facility support center, not someone at Otay Mesa?

A. That's correct.

Q. Fair enough. Okay.

What about vendors? So, for example, I take it CoreCivic has a vendor for food service, correct?

A. Correct. CoreCivic has multiple vendors for food service.

Q. Okay. How about contracts with those vendors? Would those be negotiated by folks at the facility support center, or would those be negotiated by the individual facilities?

A. To my knowledge, those would be negotiated by members at the facility support center.

Q. Okay. Does each -- to your knowledge, does each facility that CoreCivic has that deals with ICE detainees have a warden?

A. I'm sorry?

MR. STRUCK: Have a what?

MS. RIDLEY: Have a warden.

MR. STRUCK: Form.

when they do their budgeting, they look to their historical experience about who's in the voluntary work program as part of that budget, correct?

MR. STRUCK: Form.

A. I think all of the expenditures are captured, and going forward, everything is taken into consideration.

Q. Including the historical numbers of voluntary work participants?

A. It's my understanding that that would be captured in the history of the budget.

Q. Right. If -- if no one volunteered to work for food services, who would do the work?

MR. STRUCK: Form. Foundation.

A. In my opinion -- we contract with a subcontractor to assist our staff with operating the food service departments and facilities. If -- and I have no idea what we would do, because it could vary; it could vary from us hiring more contract staff or requiring our contract staffing to increase, to ensure that -- that the food service operation or -- or whatever is run effectively.

We could hire more staff to do that. I mean, there's -- there's a -- we could contract

with a -- a third party or another party to subsidize that.

Q. And I take it that same logic would be true with regard to other categories of work that was being performed by voluntary work participants?

MR. STRUCK: Form.

A. Yeah, I -- I think food services is a little bit different. As far as cleaning, as far as the cleaning duties, as far as the laundry duties, I don't know if we would have to increase to a great degree the staffing. We may have to reallocate. But it -- it may be a little bit different with -- in other departments.

Q. Okay. Are you aware of any staff person getting paid a dollar a day?

A. I'm not aware of any staff person getting paid a dollar a day.

Q. Are you aware of any third-party vendor getting paid a dollar a day for their work at any facility?

A. I'm unaware of a third party getting paid a dollar a day.

Q. Staff is paid more than a dollar a day, correct?

A. To my knowledge, yes.

A. You're not bringing them from -- to my knowledge you're not bringing them from your unit --

Q. Right?

A. -- unless you've been assigned that equipment.

And -- and I will tell you, as an example -- I'm not trying to be difficult.

As an example, some kitchen workers, or some workers that work in the voluntary work program, are provided with rubber boots, slip-resistant boots. So they can be assigned those boots, and they can be assigned some other type of clothing or equipment that's special to their job assignment, and technically, we assign those to them; and as long as they're -- they participate in that -- that work program, or that work detail, they're responsible for keeping up with that.

So that's -- that's the example. That's why I asked that question.

Q. That's fine, and -- and that's a great example.

And those boots are provided to the workers by the CoreCivic facility, correct?

A. That's correct.
Q. Okay. And I'm not expected to buy those boots, correct?
A. That's correct.
Q. Okay. And in the food service, you know, if I'm using an oven or a -- you know, a grill, or using food, all of those tools are supplied by CoreCivic, correct?
A. That's correct.
Q. Okay. Same thing with maintenance: Maybe I need to use a ladder or a screwdriver or a hammer. All of those tools are supplied by the CoreCivic facility, correct?
MR. STRUCK: Form.
A. And you give some examples, such as a ladder and other equipment similar to that, they would be provided; the detainees don't have to purchase those to facilitate their work duties.
Q. Okay. Fair enough.
Now, we talked little bit about how much ICE detainees are paid, and -- and you made reference to the performance standards, right? Those are the ICE standards?
A. Correct.
Q. Okay. Do the ICE standards limit how much

I declare under penalty of perjury under the laws that the foregoing is true and correct.

Executed on _________________ , 20___,

at _____________, ___________________________.

_________________ ______________________

DATE WITNESS

Sworn to and Subscribed before me,

this_______day of________________, 2018.

_____________________

Notary Public My commission expires:

______________________

COURT REPORTER'S CERTIFICATE

STATE OF TENNESSEE:

I, PATRICIA A. NILSEN, Licensed Reporter for the State of Tennessee, CERTIFY:

1. The foregoing deposition was taken before me at the time and place stated in the foregoing styled cause with the appearances as noted;

2. Being a Court Reporter, I then reported the deposition in Stenotype to the best of my skill and ability, and the foregoing pages contain a full, true and correct transcript of my said Stenotype notes then and there taken;

3. I am not in the employ of and am not related to any of the parties or their counsel, and I have no interest in the matter involved.

WITNESS MY SIGNATURE, this, the 15th day of March, 2019.

___________________________________

PATRICIA A. NILSEN, RMR, CRR, CRC
TN Licensed Court Reporter
LCR Number: 717
Expiration: 6/30/2020

Tennessee Rules of Civil Procedure

Depositions Upon Oral Examination

Rule 30

Rule 30.05: Submission to Witness; Changes; Signing.

When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by the witness, unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign. If the deposition is not signed by the witness within 30 days of its submission, the officer shall sign it and state on the record the fact of the waiver or of the illness or absence of the witness or the fact of the refusal to sign together with the reason, if any, given therefor; and the deposition

may then be used as fully as though signed unless on a motion to suppress under Rule 32.04(4) the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.

DISCLAIMER: THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FORINFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2016. PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.