# Exhibit 5

1           UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF CALIFORNIA
2           Case No.:  3:17-cv-01112-JLS-NLS
3

SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of
4   themselves and all others similarly situated,
5       Plaintiffs,
6   vs.
7   CORECIVIC, INC.,
8       Defendants.
    _____
9   CORCIVIC, INC.,
10       Counter-Claimant
11  vs.
12  SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of
    themselves and all others similarly situated,
13       Counter-Defendants.
14  _____
15
16              DEPOSITION of
17              SUSAN HUFFMAN
18        taken on behalf of Plaintiffs
19            January 21, 2019
20          10:23 a.m. to 3:30 p.m.
21
22  BEFORE:
    PHILIP RYAN, RPR
23  Notary Public - State of
    Florida at Large
24  Job No. 3178837
25  Pages 1 - 134

                                        Page 1

```
 1   APPEARANCES:
 2
 3   ATTORNEY/S FOR PLAINTIFF
 4        FOLEY & LARDNER, LLP
          ALAN R. OUELLETTE, ESQUIRE
 5        555 California Street
          Suite 1700
 6        San Francisco, CA 94104-1520
 7
 8        MARK G. WAXMAN, ESQUIRE
 9        Foley & Lardner, LLP
          3579 Valley Centre Drive
10        Suite 300
11        San Diego, CA 92130
12        (Via telephone.)
13
     ATTORNEY/S FOR DEFENDANT
14        STRUCK, LOVE, BOJANOWSKI & ACEDO, PLC
          RACHEL LOVE, ESQUIRE
15        3100 West Ray Road
16        Suite 300
17        Chandler, AZ 85226
18
     ALSO PRESENT:
19        HINSHAW
          BURKE G. LOPEZ, ESQUIRE
20        100 S. Ashley Drive, Suite 500
          Tampa, FL 33602
21
22   On behalf of the Trinity Services Group.
23        WHITNEY COONEY, ESQUIRE
24
25   In-house counsel, Trinity Services Group.
```

Page 2

```
 1                          INDEX
     DIRECT EXAMINATION                              PAGE
 2   BY MR. OUELLETTE                                   4
 3
 4
 5                          EXHIBITS
     Exhibit 1           Subpoena.                       7
 6   Exhibit 2           National Food Service          17
 7                       Agreement
 8   Exhibit 3           Assignment and                 19
                         Assumption Agreement
 9   Exhibit 4           Document Bates labeled         58
10                       CCOG22741 to 746
11   Exhibit 5           Staffing levels               82
12   Exhibit 6           Document Bates labeled         83
13                       Trinity 228 through 229
14   Exhibit 7           Contract extension            85
15   Exhibit 8           Trinity 848 Kitchen           94
16                       worker schedule
     Exhibit 9           Kitchen worker Rules         106
17   Exhibit 10          Bates stamped document       118
18                       CCOG25798 through 25799
     Exhibit 11          e-mail string                119
19   Exhibit 12          document Bates labeled       123
20                       CCOG26077 through 26081
     Exhibit 13          Organizational summary       126
21                       as of 10/15/2018
22   Exhibit 14          Document Bates labeled       128
23                       Trinity 238 through
24                       Trinity 847 (marked
25                       confidential)
```

Veritext Legal Solutions
866 299-5127

Exhibit 5 - Page 107

```
 1              THE WITNESS:  No.
 2    BY MR. OUELLETTE:
 3        Q    And why is that?
 4        A    If there weren't enough workers?  Why is
 5    it -- why would it -- it wouldn't be considered an
 6    emergency.
 7        Q    What if there is a work stoppage by inmate or
 8    detainee workers, could that be an emergency under the
 9    National Food Service Agreement?
10              MR. LOPEZ:  Object to the form.  Go ahead and
11         answer.
12              THE WITNESS:  Yes.
13    BY MR. OUELLETTE:
14        Q    Okay.  And if there is a strike by inmate or
15    detainee workers at a Corecivic facility, could that
16    constitute an emergency under the contract?
17              MR. LOPEZ:  Object to the form.  Go ahead and
18         answer.
19              MS. LOVE:  Join.
20              THE WITNESS:  Yes.
21    BY MR. OUELLETTE:
22        Q    Why would that be the case?
23        A    Under the terms of the contract, that's -- I
24    mean that could be considered an emergency.
25        Q    Would it be an emergency because kitchen
```

Page 26

```
1    services are an important function of a correctional
2    facility?
3         A    Yes.
4         Q    It's important because, to put it crudely,
5    people need to eat?
6              MS. LOVE:  Form.
7              MR. LOPEZ:  You can answer.
8              THE WITNESS:  Yes.
9    BY MR. OUELLETTE:
10        Q    Because kitchen services are an essential
11   function of a correctional facility, if there are not
12   enough workers to operate the kitchen, be it through a
13   work stoppage or a strike, that could constitute an
14   emergency under Exhibit 2?
15             MS. LOVE:  Form.
16             MR. LOPEZ:  Go ahead and answer.
17             THE WITNESS:  Yes.
18   BY MR. OUELLETTE:
19        Q    Has this provision of the contract ever been
20   invoked due to a strike or other form of work stoppage?
21             MR. LOPEZ:  Object to the form.  Go ahead and
22        answer.
23   BY MR. OUELLETTE:
24        Q    To your knowledge?
25        A    No.
```

Page 27

```
 1    agreement a food service contingency plan for each
 2    facility, setting forth the procedures for continuity of
 3    food service during an emergency, including but not
 4    limited to an emergency menu, which may include
 5    reasonable variations in a facility's menu cycle and
 6    service methods."
 7              Did Trinity submit a contingency plan for each
 8    Corecivic facility as described in this section?
 9        A    Yes.
10        Q    Are those plans in writing?
11        A    Yes.
12        Q    Do those plans include a contingency plan for
13    instances where there's a work stoppage or a strike in
14    the kitchen?
15        A    No.
16        Q    Why is that the case?  Why do they not include
17    a contingency plan for work stoppages and strikes?
18              MR. LOPEZ:  Object to the form.  You can
19        answer him if you can.
20              THE WITNESS:  In the event that there is a
21        work stoppage, Corecivic provides the workers,
22        whether it's educational staff, correctional
23        officers.
24    BY MR. OUELLETTE:
25        Q    Has there ever been an instance
```

Page 30

```
 1    where -- actually, let me withdraw that.

 2                So for purposes of the contingency plan, is it

 3    an assumption essentially that Trinity will not provide

 4    additional workers to operate the kitchen?

 5                MR. LOPEZ:  Object to the form.  Go ahead and

 6          answer.

 7                THE WITNESS:  Yes.

 8    BY MR. OUELLETTE:

 9          Q     The contract also assumes that it's going to

10    be Corecivic that provides any kitchen staff that would

11    be needed to operate the kitchen services?

12                MS. LOVE:  Form; foundation.

13                MR. OUELLETTE:  Correct?

14                MR. LOPEZ:  You can answer.

15                THE WITNESS:  Trinity would provide the

16          oversight in the kitchen.  The Corecivic staff

17          would provide the function, would do the work.

18    BY MR. OUELLETTE:

19          Q     And in the event of a situation where there is

20    either a work stoppage or a strike by inmates and

21    detainees at the Corecivic facility, Corecivic would

22    need to provide additional staff to operate those

23    kitchens; correct?

24          A     Yes.

25          Q     Has there been an instance where there was a
```

Page 31

1    shortage of inmate and detainee workers for

2    Corecivic's -- any Corecivic facility?

3         A    Yes.

4         Q    Has that happened before?

5         A    Yes.

6         Q    Is that where -- actually, let me withdraw

7    that.

8              In instances where Corecivic could not provide

9    sufficient detainees and inmate workers to operate a

10   kitchen facility, what steps did Corecivic undertake to

11   make sure there were sufficient workers in the kitchens?

12             MS. LOVE:  Form and foundation.

13             MR. LOPEZ:  You can answer.

14             THE WITNESS:  I don't know what steps they

15        take.

16   BY MR. OUELLETTE:

17        Q    You mentioned that the contingency plan

18   assumes that Corecivic will provide the staff in the

19   event of a work stoppage or a strike, and you

20   specifically mentioned correctional officers.  Are you

21   aware of an instance where Corecivic has had a

22   correctional officer work in a kitchen because of

23   shortage of detainee or inmate labor?

24        A    Yes.

25        Q    Then I think you also said educational --

                                          Page 32

1      A    Hold on just a second.  Going back.  Shortage

2  of?

3      Q    Inmate or detainee workers.

4      A    Okay.  You're fine.

5      Q    In addition to correctional officers, you

6  also -- you used the word educational -- was it staff?

7      A    Yes.

8      Q    What is educational staff?

9      A    Teachers.  I don't know their official titles

10  in the facility, but they would be the educational

11  department.

12      Q    These would be educational staff, though, at a

13  Corecivic facility?

14      A    Yes.

15      Q    Okay.  Are you aware of an instance where

16  Corecivic has staffed one of its kitchen facilities with

17  educational staff because of a shortage of inmate and

18  detainee -- inmate or detainee workers?

19      A    Yes.

20      Q    Okay.  Is it your understanding that the

21  educational staff that has on occasion worked in a

22  Corecivic facility kitchen, is it your understanding

23  that those educational staff are Corecivic employees?

24      A    Yes.

25      Q    They're not employees of Trinity?

Page 33

1          A     That's correct.

2          Q     And with respect to the correctional officers

3     that have had to staff Corecivic facility kitchens due

4     to inmate and detainee shortages in terms of labor,

5     those correctional officers are, to your understanding,

6     employees of Corecivic?

7          A     Yes.

8          Q     In addition to educational staff and

9     correctional officers, are there any other types of

10    Corecivic employees who have staffed a facility kitchen

11    that you're aware of when there's been a shortage of

12    labor?

13         A     Yes.

14         Q     What are those other positions?

15         A     They would be administrative support,

16    correctional counselors.  I mean, that's -- that's about

17    it.

18         Q     Okay.  Those administrative support staff that

19    have worked in a Corecivic facility kitchen due to a

20    detainee or inmate labor work shortage, based on your

21    understanding, are employees of Corecivic?

22         A     Yes.

23         Q     And the same is true with respect to the

24    correctional counselors; correct?

25         A     Yes.

                                            Page 34

```
 1        Q     Would you expect -- would you expect, based on

 2    their status as employees of Corecivic, that they are

 3    paid for their work?

 4              MR. LOPEZ:  Object to the form.  You can

 5        answer.

 6              MS. LOVE:  Form.  Foundation.

 7    BY MR. OUELLETTE:

 8        Q     That would be your expectation?

 9        A     Yes.

10        Q     Would you also expect that those individuals

11    who are Corecivic employees that work in Corecivic

12    facility kitchens would earn benefits?

13              MS. LOVE:  Form and foundation.

14              MR. LOPEZ:  You can answer.

15              THE WITNESS:  Yes.

16    BY MR. OUELLETTE:

17        Q     Can I have you take a look at Subsection 9?

18    It's also on Trinity 5.  It's the section beginning at

19    the bottom of the page.  Subsection 9 states, "Compass

20    employees.  Compass shall supply and maintain all

21    Compass employees necessary for the delivery of food

22    service at the facilities in accordance with this

23    agreement."

24              How does Trinity determine the number of

25    Trinity employees that are necessary for the delivery of
```

Page 35

1    the National Food Service Agreement, contemplates the

2    potential for an instance where Trinity needs to go and

3    find workers to staff the kitchens in the event of a

4    work shortage?

5          MR. LOPEZ:  Object to the form.  Go ahead and

6       answer.

7          THE WITNESS:  Can you say that again?

8    BY MR. OUELLETTE:

9       Q    Yeah.  Is it correct that this contract

10   contemplates a situation where Trinity might need to go

11   out and find additional workers to staff a Corecivic

12   kitchen facility?

13      A    Yes.  I mean, I would say so.

14      Q    And if a work shortage were to occur as

15   described in Subsection 7, which we were just reviewing,

16   those workers that Trinity would have to go out and

17   find, would perform the same basic functions as the

18   inmate and detainee workers that typically staff

19   Corecivic kitchen facilities; correct?

20         MR. LOPEZ:  Object to the form.  Go ahead and

21      answer if you can.

22         THE WITNESS:  Yes.

23   BY MR. OUELLETTE:

24      Q    Those functions would include the categories

25   of work that are described in Subsection 7 on Trinity 11

Page 76

1    and 12, namely, kitchen and cafeteria cleaning and

2    sanitation, food preparation and production, and

3    storeroom functions; correct?

4         A    Yes.

5         Q    In the event that a situation arises similar

6    to what is described in this provision of the contract,

7    how would Trinity find workers to staff Corecivic

8    kitchen facilities?

9              MR. LOPEZ:  Object to the form.  Go ahead.

10             MS. LOVE:  Join.

11             THE WITNESS:  Recruiting.

12   BY MR. OUELLETTE:

13        Q    Trinity would likely advertise for the

14   position; correct?

15        A    They could, yes.

16        Q    Okay.  And the workers that would need to be

17   hired would be employees of Trinity; is that right?

18        A    Yes.

19        Q    And you would expect that those workers would

20   be paid at least minimum wage; correct?

21        A    Yes.

22        Q    And Trinity would likely provide benefits to

23   those workers; correct?

24             MR. LOPEZ:  Object to the form.  Go ahead.

25             THE WITNESS:  Yes.

Page 77

```
 1    BY MR. OUELLETTE:
 2         Q    And then under the contract, the provision
 3    titled Inmate Workers, Subsection 7, Trinity would have
 4    the ability to bill Corecivic for those additional labor
 5    costs; correct?
 6         A    Yes.
 7         Q    Under the following section titled Financial
 8    Arrangements, on Trinity 13, there is a Subsection D.
 9    Do you see that?
10         A    Yes.
11         Q    That provision reads -- and I'm just going to
12    paraphrase, but I'll indicate where I'm doing so.
13              "Individual facility adjustments.  The food
14    service price per meal for a facility may be subject to
15    adjustment in the form of an increase or decrease upon
16    the occurrence of any of the following:"  Here is where
17    I'm paraphrasing.
18              Ongoing material shortage of inmate workers.
19              Do you see that?
20         A    Yes.
21         Q    Do you understand this provision to authorize
22    either an increase or decrease in the price per meal for
23    a facility in the event of an ongoing material shortage
24    of inmate and detainee workers?
25              MR. LOPEZ:  Object to the form.  Go ahead and
```

Page 78

```
 1        answer.
 2              THE WITNESS:  Well, yes.
 3   BY MR. OUELLETTE:
 4        Q    Has there been an instance where Trinity has
 5   sought an adjustment to the price per meal for a
 6   facility due to an ongoing material shortage of inmate
 7   or detainee workers?
 8        A    No.
 9        Q    In the event of an ongoing material shortage
10   of inmate and detainee workers, would you expect Trinity
11   to seek to increase or decrease the food service price
12   per meal for a facility?
13              MR. LOPEZ:  Object to the form.  Go ahead and
14        answer it.
15              THE WITNESS:  It would be an increase.
16   BY MR. OUELLETTE:
17        Q    Why would it be an increase?
18        A    Our labor would increase.
19        Q    And the labor would increase because that
20   labor is typically performed -- the kitchen work is
21   typically performed by Corecivic inmates and detainee
22   workers?
23        A    By inmates, yeah.
24        Q    Does Trinity currently factor the number of
25   detainees and inmate workers for a particular facility
```

Page 79

```
 1   into its bidding and budgeting process for that
 2   facility?
 3       A    No.
 4       Q    Is that because Trinity presumes some minimum
 5   level of inmate and detainee workers that are going to
 6   be provided by Corecivic?
 7            MR. LOPEZ:  Object to the form.  Go ahead.
 8            THE WITNESS:  Yes.
 9   BY MR. OUELLETTE:
10       Q    And in the event of -- actually, I'll withdraw
11   that.
12            Is there any other reason why the number of
13   detainee and inmate workers at a facility is not
14   factored into Trinity's budgeting and bidding process,
15   in addition to what you just mentioned?
16            MR. LOPEZ:  Object to the form.  Go ahead.
17            THE WITNESS:  No.
18   BY MR. OUELLETTE:
19       Q    Can I have you look at Trinity 15.  You'll see
20   a section, Subsection F, that begins with Staffing
21   Vacancies at the top.
22       A    Yes.
23       Q    This provision provides, "With respect to
24   vacancies in food service management position, Compass
25   will be assessed $250 per day based on five days per
```

Page 80

1    week."  And it continues to provide some additional

2    parameters.

3            And just to paraphrase, the penalty continues

4    until Compass hires or assigns to permanently fill the

5    vacant position.

6            Do you know why this provision was included in

7    the contract?

8        A    I don't.

9        Q    Can I please ask you to turn to Trinity 18?

10   And under the heading Miscellaneous Provisions, the

11   first subsection is titled Independent Contractor

12   Relationship.

13           Do you see that?

14       A    Yes.

15       Q    That provision states in part, "The parties

16   hereto specifically agree that Compass, its agents and

17   employees, are agents of CCA while they are providing

18   services under this agreement.  Accordingly, in

19   performing its duties and responsibilities under this

20   agreement, Compass, its agents and employees, shall at

21   all times act and perform as agents of CCA but not as

22   employees of CCA."

23           Under the contract, is it correct that

24   Trinity, Trinity's agents and Trinity's employees are

25   agents of Corecivic while they are providing services

                                                Page 81

```
 1   under this contract?
 2           MR. LOPEZ:  Object to the form.  Go ahead.
 3           MS. LOVE:  Form and foundation.
 4           THE WITNESS:  Yes.
 5   BY MR. OUELLETTE:
 6       Q    Is it correct that -- let me restate it
 7   differently.
 8           While Trinity is supervising and managing
 9   detainee and inmate workers as contemplated by
10   Exhibit 2, Trinity is Corecivic's agent for purposes of
11   that supervision and management?
12           MS. LOVE:  Form.  Foundation.  Calls for a
13       legal conclusion.
14           MR. LOPEZ:  You can go ahead and answer.
15           THE WITNESS:  Yes.
16   BY MR. OUELLETTE:
17       Q    Let's put Exhibit 2 aside.
18           MR. OUELLETTE:  Can you please mark this as
19       the next exhibit.
20           (Whereupon, Exhibit 5 was marked for
21   identification.)
22       Q    You have been handed a document that has been
23   marked as Deposition Exhibit Number 5.  It is Bates
24   labeled Trinity 223 through Trinity 227.
25           Can you take a moment to review the document
```

Page 82

```
1          I declare under penalty of perjury
2    under the laws that the foregoing is
3    true and correct.

4
5          Executed on _____ , 20___,
6    at _____, _____.

7
8
9
10
11          _____
12                  SUSAN HUFFMAN
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 132

```
 1                    CERTIFICATE OF OATH

 2

 3    STATE OF FLORIDA          )

 4    COUNTY OF HILLSBOROUGH )

 5

 6        I, the undersigned authority, certify that SUSAN

 7    HUFFMAN personally appeared before me and was duly

 8    sworn.

 9        WITNESS my hand and official seal this 5th day of

10    February, 2019.

11

12

13              _____

14              PHILIP RYAN, RPR

15              Notary Public - State of Florida

16              My Commission No.:  GG 194852

17              Expires:  06-28-22.

18

19

20

21

22

23

24

25

                                              Page  133
```

```
1                        CERTIFICATE

2

3    STATE OF FLORIDA        )

4    COUNTY OF HILLSBOROUGH )

5

6        I, PHILIP RYAN, RPR, certify that I was authorized

7    to and did stenographically report the deposition of

8    SUSAN HUFFMAN; that a review of the transcript was

9    requested; and that the transcript is a true and

10   complete record of my stenographic notes.

11

12       I further certify that I am not a relative,

13   employee, attorney, or counsel of any of the parties,

14   nor am I a relative or employee of any of the parties'

15   attorney or counsel connected with the action, nor am I

16   financially interested in the action.

17

18       DATED this 5th day of February, 2019.

19

20

21

22

23

24       PHILIP RYAN RPR

25

                                          Page 134
```

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2016. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

Exhibit 5 - Page 126

```
                 VERITEXT LEGAL SOLUTIONS
         COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.
```

Exhibit 5 - Page 127