```
 1                UNITED STATES DISTRICT COURT

              SOUTHERN DISTRICT OF CALIFORNIA

 2        _____

 3        SYLVESTER OWINO, on behalf of

          themselves, and all others similarly

 4        situated, et al.,

 5                        Plaintiff,

 6            vs.            Case No. 3:17-cv-01112-JLS-NLS

 7        CORECIVIC, INC., a Maryland

          corporation,

 8

                          Defendant.

 9        _____

10

11

12             THE DEPOSITION OF JASON ELLIS

13                      VOLUME II

14                   MARCH 5, 2019

15

16

17

18

19

20

21

22

23        Reported by:

24        PATRICIA A. NILSEN, RMR, CRR, CRC

25        PAGES 271 - 468

                                              Page 271
```

```
1                    The deposition of JASON ELLIS, taken
2        on behalf of the Plaintiffs, pursuant to Notice on
3        MARCH 5, 2019, beginning at approximately 8:07 a.m.
4        in the offices of Alpha Reporting.
5                    This deposition is taken in
6        accordance with the terms and provisions of the
7        Federal Rules of Civil Procedure.  All objections
8        are reserved except as to form.
9                    The signature of the witness is
10       reserved.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 272

```
 1                          APPEARANCES
 2
         For the Plaintiffs:
 3
                          EILEEN REGINA RIDLEY
 4                        ALAN R. OUELLETE
                          Attorneys at Law
 5                        FOLEY & LARDNER LLP
                          555 California Street, Suite 1700
 6                        San Francisco, CA 94104
                          (415) 434-4484
 7                        eridley@foley.com
 8                        ROBERT L. TEEL (via video conf.)
                          Attorney at Law
 9                        1425 Broadway
                          Mail Code: 20-6690
10                        Seattle, WA 98122
                          866-833-5529
11                        lawoffice@rlteel.com
12       For the Defendant:
13                        DANIEL P. STRUCK
                          Attorney at Law
14                        STRUCK LOVE BOJANOWSKI & ACEDO, PLC
                          3100 West Ray Road, Suite 300
15                        Chandler, AZ 85226
                          (480) 420-1620
16                        dstruck@strucklove.com
17       Reported By:
18                        PATRICIA A. NILSEN, RMR, CRR, CRC
                          TN Certified Court Reporter
19                        Alpha Reporting Corporation
                          One Vantage Way
20                        Nashville, Tennessee 38228
                          615.244.4812
21
22       Videotaped By: DAVID DRUMEL
23
24
25


                                        Page 273
```

```
 1                        INDEX
 2
                                              PAGE
     WITNESS:
 3
 4            JASON ELLIS
 5   Examination
       By Ms. Ridley                          277
 6
 7                      EXHIBITS
 8   NUMBER              DESCRIPTION           PAGE
 9   EXHIBIT 74   Document entitled Stewart    281
10            Detention Center, Sanitation and
11            Hygiene
12   EXHIBIT 75   Document entitled San Diego  286
13            Correctional Facility, Sanitation
14            and Hygiene
15   EXHIBIT 76   Sanitation and hygiene daily 292
16            housekeeping plan for North Georgia
17            Detention Center
18   EXHIBIT 77   Excerpts from a disciplinary 293
19            log
20   EXHIBIT 78   Excerpts from a disciplinary 314
21            log
22   EXHIBIT 79   Document entitled T. Don     317
23            Hutto Residential Center Informal
24            Resolution Counseling 2018
25   EXHIBIT 80   Segregation/restrictive      323
```

Veritext Legal Solutions
866 299-5127

Exhibit 4 - Page 74

1                    housing unit management policy

2    EXHIBIT 81    Index of policies                    327

3    EXHIBIT 82    Chapter 15 Resident Rules            329

4                  and Discipline for Otay Mesa

5                  Detention Center

6    EXHIBIT 83    Segregation/restrictive              338

7                  housing unit management policy for

8                  Otay Mesa Detention Center

9    EXHIBIT 84    Inmate/Resident Grievance            341

10                 Procedures for California City

11                 Correctional Center

12   EXHIBIT 85    OMDC Grievance Log                   343

13   EXHIBIT 86    Document titled Authorized           354

14                 In-cell Property List

15   EXHIBIT 87    Inmate resident property             355

16                 policy for the California City

17                 Correctional Center, effective 2012

18   EXHIBIT 88    Document Bates-stamped               364

19                 CCOG00002503 to 2506, facility

20                 commissary checking account

21   EXHIBIT 89    Document Bates-stamped               374

22                 CGOG00002531 to 2535,

23                 inmate/resident commissary

24                 operations Chapter 2 policy for the

25                 Otay Mesa Detention Center

Veritext Legal Solutions
866 299-5127

Exhibit 4 - Page 75

```
 1    EXHIBIT 90   CoreCivic 2018 commissary        380

 2              manual

 3    EXHIBIT 91   San Diego Correctional           411

 4              Facility inmate account summary

 5    EXHIBIT 92   Copy of a detainee               418

 6              fingerprint card

 7    EXHIBIT 93   Record of compensation or        454

 8              pay received by a detainee at the

 9              California City Correctional

10              Facility

11    EXHIBIT 94   Record of compensation or        457

12              pay received by a detainee at the

13              Otay Mesa Detention Center

14    EXHIBIT 95   Record of compensation or        457

15              pay received by a detainee at the

16              San Diego Correctional Facility

17    EXHIBIT 96   Record of compensation or        458

18              pay received by a detainee at the

19              Houston Processing Center

20    EXHIBIT 97   Wage determination approval      460

21              for Webb County, Texas

22

23

24

25

                                        Page 276
```

1    listed -- mentioned in the handbook, or referred in

2    the handbook.  How to be safe and how to comply

3    with the rules and the regulations, and -- and the

4    safety as well, to remain safe, and how safety is

5    a -- a top priority.

6    Q.       Okay.  And so then I take it all this sort

7    of entry paperwork and -- including whatever the --

8    the detainee signs, would be done within that

9    period when they first enter the -- the facility;

10   is that correct?

11   A.       That's correct.  With exception of the

12   orientation, which is completed.

13   Q.       Within 24 hours after that?

14   A.       Yes.

15   Q.       Okay.  Got it.  Okay.  Understood.

16           MS. RIDLEY:  You said 74, right?

17   This is going to be marked as 74.

18               (EXHIBIT NO. 74, document

19   entitled Stewart Detention Center, Sanitation

20   and Hygiene, was marked for identification and

21   attached hereto.)

22   BY MS. RIDLEY:

23   Q.       What I've had marked as 74 is a document

24   entitled "Stewart Detention Center, Sanitation and

25   Hygiene."  It's five pages.  I will represent to

Page 281

1       you that the Bates page is CCOG791215 -- sorry,

2       7912 to 7915.

3       A.      And you said it's five pages.  I have four

4       pages.

5       Q.      One, two -- you know what?  So do I.  It

6       just says "1 of 5" for some reason on the top.

7       So ...

8       A.      Sure.

9       Q.      Okay.  Yeah.  I will tell you, it was

10      produced to us this way.  I don't know what the

11      last page is, if --

12      A.      Okay.

13      Q.      Do you have a sense of what the last page

14      would be?

15      A.      I don't.

16      Q.      Okay.  All right.

17              So this is entitled Sanitation and Hygiene

18      Daily Housekeeping Plan.  Have you seen this

19      document before?

20      A.      I have.

21      Q.      Okay.  Is this among the documents that

22      you looked at in preparation for your deposition?

23      A.      I believe so.

24      Q.      Okay.  And have you seen this form of

25      document; in other words, sort of template like

Page 282

1     this?

2     A.     I have.

3     Q.     Okay.  And then just to coordinate from

4     yesterday, you'll see it says "Policy 12-100."  Do

5     you see where I am?

6     A.     I do.

7     Q.     Okay.  So it's my understanding that

8     Policy 12, that's referring to the general

9     CoreCivic policy; and then the dash and 100 refers

10    to a specific facility?

11    A.     Yes.

12    Q.     And whatever tweaks, if any, that they

13    might have within it, correct?

14    A.     Yes.

15    Q.     Okay.  Fair enough.

16            And on this one, it seems to indicate that

17    a Stacey Stone approved this.  And it says

18    "Facility Administrator."  Do you know who Stacey

19    Stone is?

20    A.     I do.

21    Q.     Okay.  Is Stacey a male?

22    A.     He is, yes.

23    Q.     Okay.

24    A.     Yes.

25    Q.     Okay.  And "Stacey" is S-T-A-C-E-Y.

Page 283

1              And so this seems to have gone through the

2         approval process -- again, as we discussed -- both

3         at the facility and at the FSC, correct?

4         A.       Correct.

5         Q.       Okay.  And you'll see in the definitions,

6         under "12-100.3" -- do you see where I am?

7         A.       I do.

8         Q.       It defines the common living area as "any

9         area in the unit other than the assigned cell that

10        is used by all inmates/residents assigned to that

11        unit."  Right?

12        A.       I see that, yes.

13        Q.       And that's consistent with what we were

14        talking about yesterday about what the common

15        living area would be?

16        A.       Yes.

17        Q.       Okay.  And it says, underneath that, it

18        says "Inmate/Resident, any adult or juvenile, male

19        or female, housed in a CoreCivic facility.  Inmate

20        residents may also be referred to as detainees,

21        prisoners, or offenders, depending upon the

22        classification in accordance with the facility

23        management contracts."

24              And so this seems to indicate, you know,

25        there are some facilities where you have both

                                                Page 284

```
 1        detainees, ICE detainees, as well as inmates, those
 2        who are incarcerated because they have a charge
 3        against them.  Correct?
 4        A.      My understanding, it appears that this
 5        definition is put together so that it comprises
 6        inmates, residents, and detainees.  That -- that
 7        would be my understanding.
 8        Q.      Just to cover all of them?
 9        A.      Yes.
10        Q.      All of that entire population?
11        A.      Yes.
12        Q.      Okay.  Very well.
13                So under 12 point -- excuse me --
14        12-100.4 -- do you see where I am?
15        A.      I do.
16        Q.      It says, "Common living areas."  And it
17        says, "all inmates/residents assigned to a unit are
18        responsible for maintaining the common living area
19        in a clean and sanitary manner."
20                Do you see where I am?
21        A.      I do.
22        Q.      Okay.  And I take it that's -- you've seen
23        that before; that's a -- a common description of
24        the procedures and expectations regarding the
25        common living areas?
```

Page 285

```
1          A.      I've seen this before, yes.
2          Q.      Okay.  And if you take a look at --
3     that's A, common living areas.  Take a look at B,
4     on the next page.  Are you with me?
5          A.      I am.
6          Q.      It says, "Private living areas."  It says,
7     "All inmates/residents are responsible for
8     maintaining their assigned living area in a clean
9     and sanitary manner on a daily basis."
10             Right?
11         A.      I see that.
12         Q.      And you've seen that commonly on CoreCivic
13    policies regarding sanitation and hygiene on its
14    facilities, correct?
15         A.      Yes, I've seen this on -- in a number of
16    different policies.
17         Q.      Okay.  In fact, that point -- keep that
18    with you, but I'm going to have to mark another
19    document as 75.
20                 (EXHIBIT NO. 75, document
21    entitled San Diego Correctional Facility,
22    Sanitation and Hygiene, was marked for
23    identification and attached hereto.)
24    BY MS. RIDLEY:
25         Q.      Document 65 -- excuse me, 75 -- is another
```

Page 286

```
1          example of a sanitation and hygiene daily
2          housekeeping plan.  Its Bates stamp is CG --
3          CCOG8558 to 8561.
4                   This one refers to the San Diego
5          Correctional Facility, correct?
6          A.       Correct.
7          Q.       Right.  Whereas the Exhibit 74 is --
8          references Stewart, correct?
9          A.       That's correct.
10         Q.       Okay.  But if you compare the two, they're
11         quite similar, correct?
12                       MR. STRUCK:  Form.
13         A.       Yeah, let me look.  Specifically -- what
14         comparisons?
15         Q.       Well, for example, take a look at
16         Exhibit 75, under "Procedure, common living areas."
17         Right?
18         A.       Yes.
19         Q.       It also says, "All detainees/inmates
20         assigned to a unit are responsible for maintaining
21         the common living area in a clean and sanitary
22         manner."  Correct?
23         A.       Yes, correct.
24         Q.       And then if you take a look at B, it says,
25         "All detainees/inmates are responsible for
```

Page 287

1    maintaining their assigned living area in a clean

2    and sanitary manner."

3           Again, this is private living areas,

4    correct?

5    A.       Correct.

6    Q.       So that is -- that is -- if you compare

7    the same language to 74, they're consistent with

8    one another, correct?

9              MR. STRUCK:  I'm just going to make

10   an objection.  I mean, in terms of the headings,

11   they're consistent, but I think within -- if

12   you'll -- if you'll compare the two documents, it

13   looks there are differences.

14             MS. RIDLEY:  That's not the question.

15   The question was --

16             MR. STRUCK:  Okay.  Well -- object to

17   the form, then.

18             MS. RIDLEY:  It goes to -- okay.

19   A.       So once again, the question is?

20   BY MS. RIDLEY:

21   Q.       So if you take a look at the two

22   documents, they both have a "Procedure" section,

23   correct?

24   A.       Correct.

25   Q.       And they have a procedure -- "A, common

Page 288

1      living areas," correct?

2      A.      Correct.

3      Q.      And the first sentence on both says, "All

4      detainees/inmates assigned to a unit are

5      responsible for maintaining the common living area

6      in a clean and sanitary manner"?

7      A.      In -- in one it says "All

8      inmates/residents," and the other says "All

9      detainees/inmates."

10     Q.      But otherwise it's consistent, correct?

11     A.      Correct.

12     Q.      All right.  And if you turn to the

13     "Private living areas" -- that's under B for both,

14     right?

15     A.      Yes.

16     Q.      It says, "All inmates/residents are

17     responsible for maintaining their assigned living

18     area in a clean and sanitary manner."

19             Again, the Stewart refers to

20     inmates/residents whereas the San Diego refers to

21     detainees/inmates; but otherwise, the language is

22     the same, correct?

23                  MR. STRUCK:  Object to the form.

24     There are -- there's additional language in the

25     Stewart policy in that sentence that's not included

Page 289

1      in the San Diego policy.  Specifically, one says

2      "on a daily basis" and the other one does not.

3                    MS. RIDLEY:  So I don't want -- I

4      don't want coaching.  I'm just asking about the one

5      line.

6                    MR. STRUCK:  I'm not coaching, and it

7      is the one line.  And it just -- it just misstates

8      what the documents say.

9                    MS. RIDLEY:  I'm not stating "the

10     document."  I'm referring to a line.

11                    MR. STRUCK:  That is a --

12                    MS. RIDLEY:  You see both lines.

13     Correct?

14                    MR. STRUCK:  That is a -- yes.

15     And -- and if you look at both lines in the

16     document, one has two additional words.

17                    MS. RIDLEY:  I'm not going to

18     argue --

19                    MR. STRUCK:  Okay.

20                    MS. RIDLEY:  -- with you about this.

21     If you have an objection, you can state it.  It's

22     not supposed to be a narrative.

23     BY MS. RIDLEY:

24     Q.        The question is, both have "Section B,

25     private living areas," correct?

Page 290

1      A.      Correct.

2      Q.      Both indicate that all

3      detainees/inmates -- San Diego says

4      "detainees/inmates"; Stewart says

5      "inmates/residents."  They both say, "All

6      inmates/residents" -- or detainees/inmates -- "are

7      responsible for maintaining their assigned living

8      area in a clean and sanitary manner on a daily

9      basis."  Correct?

10                    MR. STRUCK:  Object to the form.

11     A.      Yeah.  The -- the Stewart -- the San Diego

12     one doesn't say on "a daily basis."

13     Q.      But they both say that they are

14     responsible for maintaining their assigned living

15     area, correct?

16     A.      Correct.

17     Q.      Okay.  So substantive -- they have

18     substantively the same language, correct?

19                    MR. STRUCK:  Form.

20     A.      Other than the -- the "daily basis"

21     portion, they appear to be the same.

22     Q.      Okay.  So again, it appears that

23     they've -- both of these come from a template form

24     with some -- some language changes to some portion,

25     but they basically take a template form from

                                    Page 291

1          CoreCivic and then do some edits with regard to

2          each facility, correct?

3                    MR. STRUCK:   Form.

4          A.       There -- there are a lot of similarities,

5          and then there are some differences.

6          Q.       Right.

7          A.       Correct.

8                    MS. RIDLEY:   Okay.  Let me mark this

9          as Exhibit 76.

10                   (EXHIBIT NO. 76, sanitation and

11         hygiene daily housekeeping plan for North

12         Georgia Detention Center, was marked for

13         identification and attached hereto.)

14         BY MS. RIDLEY:

15         Q.       Okay.  What I've had marked as 76 is,

16         again, a sanitation and hygiene daily housekeeping

17         plan, this time for North Georgia Detention Center.

18         This is Bates-stamped CCOG32093 to 96.

19                   You've seen this form, correct?

20         A.       I have, yes.

21         Q.       Okay.  And again, this is a similar

22         template to what we've seen in Exhibit 74 and 75,

23         correct?

24         A.       Correct.

25         Q.       Okay.  And again, it has a "Procedure"

                                              Page 292

```
1        section and an A for "common living areas,"
2        correct?
3        A.        Correct.
4        Q.        And again, on number one, it says, "All
5        detainees/inmates assigned to a unit are
6        responsible for maintaining the common area in a
7        clean and sanitary manner," correct?
8        A.        Correct.
9        Q.        And then in B, on "Private living areas,"
10       it says, "All detainees/inmates are responsible for
11       maintaining their assigned living area in a clean
12       and sanitary manner."  Correct?
13       A.        Correct.
14       Q.        And in each instance, 74, 75 and 76, these
15       had to be approved by the FSC as well as the
16       facility, correct?
17       A.        That's correct.
18       Q.        And that's just pursuant to procedures for
19       CoreCivic facilities regarding policies to be
20       applied, correct?
21       A.        Correct.
22       Q.        Okay.
23                     (EXHIBIT NO. 77, excerpts from a
24       disciplinary log, was marked for
25       identification and attached hereto.)
```

Page 293

1       is related specifically to the segregated housing

2       area?

3       A.      No.  We're talking about equipment for all

4       of the detainees, both for those in restrictive

5       housing and general population.

6       Q.      Okay.  Thank you.

7               And you mentioned the 30 percent margin.

8       A.      Yes.

9       Q.      Okay.  And that's for all facilities,

10      correct?

11      A.      That's for all the ICE facilities.

12      Q.      Okay.  Fair enough.

13      A.      That doesn't necessarily mean all

14      facilities that house ICE detainees.  Those are the

15      ICE-contracted facilities.

16      Q.      For facilities that are not

17      ICE-contracted, do you know what the margin is for

18      the commissary?

19      A.      I don't know.

20      Q.      Do you know if there is a set margin for

21      those, like the ICE facilities?

22      A.      From my understanding, there is a set

23      margin or markup; it could be margin or a markup.

24      But I -- I'm not sure what it is.

25      Q.      You're not sure what it is, meaning what

Page 373

```
 1                    (EXHIBIT NO. 91, San Diego

 2      Correctional Facility inmate account summary,

 3      was marked for identification and attached

 4      hereto.)

 5      BY MS. RIDLEY:

 6      Q.        Okay.  Exhibit 91 is a document which has

 7      been Bates-stamped CCOG00002363, ending in 2383.

 8                Do you recognize this form of document?

 9      A.        I do recognize the form.

10      Q.        What do you recognize the form as?

11      A.        The San Diego Correctional Facility inmate

12      account summary.

13      Q.        Okay.  Have you seen this document before?

14      A.        I don't believe I have.

15      Q.        Okay.  Have you seen similar documents?

16      A.        I believe so.

17      Q.        Yeah.  This seems to be a printout of

18      essentially an account summary related to inmate

19      accounts at this particular facility, correct?

20      A.        Correct.

21      Q.        Okay.  This happens to be regarding

22      Sylvester Owino, correct?

23      A.        Correct.

24      Q.        Okay.  So my first question is, is it your

25      understanding that each CoreCivic facility has a
```

Page 411

1     similar report capability for each ICE detainee's

2     account?

3                    MR. STRUCK:   Form.

4     A.       It's my understanding that CoreCivic

5     facilities have similar processes and similar

6     records.

7     Q.       So if I wanted to know the sort of account

8     history for a specific detainee or inmate, they

9     would be able to provide me a report providing

10    similar information, correct?

11                   MR. STRUCK:   Form.

12    A.       Who would be able to provide -- are you

13    asking who --

14    Q.       The facility.

15    A.       It -- it all -- as long as their retention

16    of records allows -- as long as they're still

17    current and have the -- they've retained the

18    records.

19    Q.       Would these reports be generated by the

20    facility or by FSC?

21    A.       I believe the reports would be generated

22    by the facility.

23    Q.       Would FSC have access to the reports?

24                   MR. STRUCK:   Form.   Foundation.

25    A.       There are -- there are departments at the

                                              Page 412

```
1              Could you take a look at 43123.
2      A.     Yes.
3      Q.     This is one of those requests for
4      assistance, correct?
5      A.     Yes.
6      Q.     It says, "I am asking for assistance to be
7      given a chance to work in the kitchen.  Requested
8      several times before but still waiting for
9      response.  I am currently working as special
10     details, which I don't get paid."
11             Do you know what special details work is
12     done where they don't get paid?
13     A.     No.
14     Q.     Okay.  It says, "don't get paid mostly,
15     and I need money to buy basic needs."
16             Are you familiar with detainees requesting
17     work in order to pay for basic needs?
18     A.     I'm sorry.  Am I familiar with a detainee
19     requesting work --
20     Q.     Work assignments in order to --
21     A.     -- for basic needs?  I don't know what
22     they're referring to as "basic needs."
23     Q.     Okay.  Are you familiar with instances
24     where detainees have asked for work assignments in
25     order to gain some money to be used at the
```

Page 445

1     commissary?

2     A.     I'm familiar with instances where

3     detainees have requested jobs so that they can have

4     funds to purchase from the commissary.

5     Q.     Okay.  Would you characterize such

6     requests as unusual?

7             MR. STRUCK:  Form.

8     A.     Yeah, I don't know if it would be unusual

9     or not, because I don't know how many request work;

10    I don't know how many choose not to request work.

11    So that's a -- that's a tough question to answer.

12    Q.     You just know that that happens from time

13    to time?

14            MR. STRUCK:  Form.

15    A.     I do know that it -- I do know that

16    detainees request an opportunity to be a part of

17    the voluntary work program so that they can make

18    money to afford items on commissary.

19    Q.     Would you take a look, please, at 43127 to

20    43130 -- 134.

21    A.     Okay.

22    Q.     Do you recognize this form of document?

23    A.     I do.  There are multiple documents, or --

24    Q.     Yeah.

25    A.     -- not just one document.  But I do

Page 446

1      Q.        Okay.

2                     MS. RIDLEY:   I'm going to have this

3      marked as 93.

4                     (EXHIBIT NO. 93, record of

5      compensation or pay received by a detainee at

6      the California City Correctional Facility, was

7      marked for identification and attached

8      hereto.)

9      BY MS. RIDLEY:

10     Q.        What I've marked as 93 is a document that

11     is an excerpt from the document produced as

12     CCOG00009314.  Do you recognize this form of

13     document?

14     A.        I do recognize this form of document.

15     Q.        What do you recognize it as?

16     A.        It appears that this is a record of

17     compensation or pay received by a detainee at the

18     California City Correctional Facility.

19     Q.        Okay.  Have you heard the phrase "OMS

20     report"?

21     A.        I have.

22     Q.        What is "OMS"?

23     A.        Offender management services.

24     Q.        Okay.

25     A.        Or offender management system.

                                        Page 454

```
1         Q.      Okay.  And would the OMS produce such
2    reports that would be similar to what's exhibited
3    in Exhibit 93?
4                  MR. STRUCK:  Form.  Foundation.
5         A.      I'm not sure if it would be a similar
6    report or the same report.
7         Q.      Okay.  I take it, though, that CoreCivic
8    would have -- would have the ability to report the
9    amount of pay received for work done at a CoreCivic
10   facility, correct?
11                 MR. STRUCK:  Form.
12        A.      Correct.
13        Q.      And at least with regard to Exhibit 93,
14   that's what's being reflected in this document for
15   ████████████████████████████, correct?
16                 MR. STRUCK:  Form.
17        Q.      At least for the first page?
18        A.      Yeah, it appears that that's accurate for
19   the first page.
20        Q.      There are other individuals as it goes on;
21   this is just an excerpt.  Correct?
22        A.      Correct.
23        Q.      And in this form, the first column
24   identifies the immigration agent -- or the agency
25   involved with regard to the detainee, correct?
```

Page 455

1      A.       Correct.

2      Q.       Second column refers to the detainee in

3      question, correct?

4      A.       Correct.

5      Q.       Third column provides the receipt number,

6      correct?

7      A.       Correct.

8      Q.       Fourth column reflects the deposit from.

9      Is that what work they were doing?

10     A.       I believe that's their work assignment at

11     the time.

12     Q.       Okay.  The next column is the amount they

13     were paid, correct?

14     A.       Correct.

15     Q.       And that's per day, correct?

16     A.       Correct.

17     Q.       The next column is the description of --

18     of what the payment is, correct?

19     A.       Correct.

20     Q.       And then the last is the date of the

21     payment, correct?

22     A.       Correct.

23     Q.       Okay.

24              MS. RIDLEY:  I'll have this marked

25     as -- keep 93 handy.  I'll have this marked as 94.

Veritext Legal Solutions
866 299-5127

Exhibit 4 - Page 97

1                    (EXHIBIT NO. 94, record of

2       compensation or pay received by a detainee at

3       the Otay Mesa Detention Center, was marked for

4       identification and attached hereto.)

5       BY MS. RIDLEY:

6       Q.        Exhibit 94 is Bates-stamped CCOG00009326

7       to 9 -- oh, sorry.  It's excerpts from document

8       produced as CCOG00009326.

9                    This is a similar document to Exhibit 93,

10      correct?

11      A.        Correct.

12      Q.        94 concerns the facility at Otay Mesa,

13      correct?

14      A.        Correct.

15      Q.        Whereas 93 refers to California City

16      Correctional Facility, correct?

17      A.        Correct.

18      Q.        But essentially providing similar

19      information in a similar format, correct?

20      A.        Correct.

21                      MS. RIDLEY:  I'll have this marked

22      as 95.

23                      (EXHIBIT NO. 95, record of

24      compensation or pay received by a detainee at

25      the San Diego Correctional Facility, was

                                           Page 457

```
 1              marked for identification and attached
 2         hereto.)
 3         BY MS. RIDLEY:
 4         Q.       Exhibit 95 is excerpts from the document
 5         produced Bates-stamped CCOG00009327.
 6                  This document is similar to Exhibit 93
 7         and 94, correct?
 8         A.       Correct.
 9         Q.       Again, similar format with those two
10         documents -- those two exhibits, correct?
11         A.       Correct.
12         Q.       Similar information, correct?
13         A.       Correct.
14         Q.       Although Exhibit 95 concerns a different
15         facility, San Diego, correct?
16         A.       Correct.
17         Q.       Fine.
18                       MS. RIDLEY:  Then I'm going to mark
19         this as 96.
20                       (EXHIBIT NO. 96, record of
21         compensation or pay received by a detainee at
22         the Houston Processing Center, was marked for
23         identification and attached hereto.)
24         BY MS. RIDLEY:
25         Q.       Exhibit 96 is excerpts from the document
```

Page 458

1        produced as CCOG00009318.

2               Again, similar to Exhibits 93, 94, and 95,

3        correct?

4        A.      Correct.

5        Q.      Similar format?

6        A.      Correct.

7        Q.      Similar information, correct?

8        A.      Correct.

9        Q.      Just deals with the Houston Processing

10       Center?

11       A.      Correct.

12       Q.      So I take it that we could get similar

13       reports as to each CoreCivic facility?

14       A.      I believe you could get similar reports

15       for each facility.

16               MR. STRUCK:  Belated objection to

17       foundation.

18               MS. RIDLEY:  Why don't we take a

19       short break.

20               VIDEOGRAPHER:  Off the record at

21       1:00 p.m.

22               (Recess)

23               VIDEOGRAPHER:  Returning to the

24       record.  The time is 1:08 p.m.

25               MS. RIDLEY:  I'm going to mark this

                                        Page 459

1          I declare under penalty of perjury

2     under the laws that the foregoing is

3     true and correct.

4

5          Executed on _____ , 20___,

6     at _____, _____.

7

8

9

10

11        _____

12             WITNESS SIGNATURE

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 468

```
1              COURT REPORTER'S CERTIFICATE
2
3   STATE OF TENNESSEE:
4                  I, PATRICIA A. NILSEN, Licensed
        Reporter for the State of Tennessee, CERTIFY:
5                  1. The foregoing deposition was
        taken before me at the time and place stated in the
6       foregoing styled cause with the appearances as
        noted;
7                  2. Being a Court Reporter, I then
        reported the deposition in Stenotype to the best of
8       my skill and ability, and the foregoing pages
        contain a full, true and correct transcript of my
9       said Stenotype notes then and there taken;
                   3. I am not in the employ of and am
10      not related to any of the parties or their counsel,
        and I have no interest in the matter involved.
11
                   WITNESS MY SIGNATURE, this,
12      the 18th day of March, 2019.
13
14
15
16
17
18                 <%8338,Signature%>
19                 PATRICIA A. NILSEN, RMR, CRR, CRC
20                 TN Licensed Court Reporter
21                 LCR Number: 717
22                 Expiration: 6/30/2020
23
24
25
                                            Page 469
```

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2016. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

Exhibit 4 - Page 103

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.

Exhibit 4 - Page 104