J. MARK WAXMAN  (SBN 58579)
    mwaxman@foley.com
NICHOLAS J. FOX (SBN 279577)
    nfox@foley.com
**FOLEY & LARDNER LLP**
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
T:  858.847.6700 // F:   858.792.6773


EILEEN R. RIDLEY (SBN 151735)
    eridley@foley.com
ALAN R. OUELLETTE (SBN 272745)
    aouellette@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
T:  415.434.4484 // F: 415.434.4507

ROBERT L. TEEL  (SBN 127081)
    lawoffice@rlteel.com
**LAW OFFICE OF ROBERT L. TEEL**
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
T: 866. 833.5529 // F:855.609.6911


GEOFFREY RAUX (*pro hac vice*)
    graux@foley.com
**FOLEY & LARDNER LLP**
111 Huntington Ave., Suite 2500
Boston, MA 02199-7610
T: 617.342.4000 // F: 617.342.4001

Attorneys for Plaintiffs SYLVESTER OWINO, JONATHAN GOMEZ, and the Proposed Class(es)

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CORECIVIC, INC.,<br><br>Defendant.<br><hr>CORECIVIC, INC.,<br><br>Counter-Claimant,<br><br>vs.<br><br>SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>Counter-Defendants. | Case No. 3:17-CV-01112-JLS-NLS<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:   October 10, 2019<br>Time:  1:30 p.m.<br>Place:  Courtroom 4D<br><br>Judge:  Hon. Janis L. Sammartino<br>Magistrate:  Hon. Nita L. Stormes<br><br>DEMAND FOR JURY TRIAL |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  UNDISPUTED EVIDENCE DEMONSTRATES PLAINTIFFS ARE
     ENTITLED TO PARTIAL SUMMARY JUDGMENT .........................................3

     A.  I.C.E. DETAINEES ARE A VIRTUALLY FREE LABOR FORCE
         FOR DEFENDANT RESULTING IN MASSIVE SAVINGS TO
         DEFENDANT ........................................................................................3

     B.  DEFENDANT'S COMMON POLICIES AND PRACTICES FOR
         LABOR PERFORMED IN CALIFORNIA FACILITIES .........................4

         1.  I.C.E. Detainee Work For The "Voluntary Work
             Program" In Defendant's California Detention Facilities...............4

         2.  Defendant's Policy Of Violating California Labor Law................8

III. PLAINTIFFS AND THE CALIFORNIA LABOR LAW CLASS ARE
     ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF
     WHETHER THEY ARE "EMPLOYEES" ...........................................................9

     A.  APPLICABLE LEGAL STANDARDS .................................................9

         1.  Partial Summary Judgment ................................................................9

         2.  "To Employ" Under California Labor Law ..................................10

     B.  DISCUSSION ......................................................................................12

         1.  Plaintiffs And The California Labor Law Class Are
             "Employees" Who Are "Employed By" Defendant
             Under California Law......................................................................13

         2.  Plaintiffs And The California Labor Law Class Are Not
             "Volunteers" Under California Labor Law, And There
             Is No "$1.00 Per Day" Limitation On I.C.E. Detainee
             Compensation ..................................................................................15

         3.  Defendant Violated California Labor Code Section 226
             By Failing To Provide Wage Statements To I.C.E.
             Detainee Workers ............................................................................18

         4.  Defendant Violated California Labor Code Section 1194
             By Failing To Pay Minimum Wage To I.C.E. Detainee
             Workers ............................................................................................19

IV.  CONCLUSION.................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...................................................................................10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................................10

*Klamath Water Users Protective Ass'n v. Patterson*,
    204 F.3d 1206 (9th Cir. 2000) ..................................................................10

*Norris-Wilson v. Delta-T Group, Inc.*,
    270 F.R.D. 596 (S.D. Cal. 2010) ..............................................................11

*Novoa v. GEO Group, Inc.*,
    Case No. EDCV 17-2514 JGB, 2018 WL 334494 (C.D. Cal. June 21,
    2018) ...........................................................................................................11

*Pinnacle Fitness & Rec. Mgmt., Ltd. Liab. Co. v. Jerry & Vickie Moyes
    Family Tr.*,
    844 F. Supp. 2d 1078 (S.D. Cal. Jan. 4, 2012) ........................................10

*Randolph v. Budget Rent-A-Car*,
    97 F.3d 319 (9th Cir. 1996) ......................................................................11

*United States v. California*,
    Case No. 18-16496, 2019 WL 1717075 (9th Cir., Apr. 18, 2019)..............12, 13, 15

**State Cases**

*Brassinga v. City of Mountain View*,
    66 Cal. App. 4th 195 (Cal. Ct. App. 1998)...............................................16

*Brinker Rest. Corp. v. Superior Court*,
    53 Cal. 4th 1004 (2012) .........................................................................2, 10, 11

*Flowers v. Los Angeles County Metropolitan Transportation Authority*,
    243 Cal. App. 4th 66 (Cal. Ct. App. 2015)...............................................19

*Hoppmann v. Workers' Comp. Appeals Bd.*,
    226 Cal. App. 3d 1119 (Cal. Ct. App. 1991)........................................16, 17

*Martinez v. Combs*,
   49 Cal. 4th 35 (2010) ................................................................... 9, 11, 13, 15

*Murphy v. Kenneth Cole Prods. Inc.*,
   40 Cal. 4th 1094 (2007) .............................................................................. 10

**Federal Statutes**

Fed. R. Civ. P. 56(a) ....................................................................................... 10

Fed. R. Civ. P. 56(c) ....................................................................................... 10

Immigration Reform and Control Act of 1986 ........................................... 12, 15

Internal Revenue Code
   § 501(c)(3) ............................................................................................ 15, 17

**State Statutes**

I.W.C. Wage Order 5-2001 ......................................................................... *passim*

Cal. Labor Code
   § 226 ...................................................................................................... 2, 18
   § 226(a) ............................................................................................ 9, 18, 19
   § 226(e)(2)(A) ............................................................................................. 18
   § 1171.5 ...................................................................................................... 11
   § 1194 ................................................................................................. *passim*
   § 1194(a) ..................................................................................................... 19
   § 1720.4(a) .................................................................................................. 15
   § 2750 ......................................................................................................... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction

Plaintiffs[1] are civil immigration detainees who are involuntarily confined at Defendant's detention facilities in California under the custody of Immigration and Customs Enforcement ("I.C.E."). Plaintiffs were detained based solely on their immigration status, and not because they have been convicted of any crime. During their period of detention, Plaintiffs performed a wide variety of work for Defendant (much of which Plaintiffs allege was coerced in some form).[2] (*See* ECF Nos. 84 – 86 [Pl. Mot. Class Cert.]; *see also* ECF No. 84-1 at 13:3 – 18:18.) However, this Motion focuses on work performed by I.C.E. detainees while participating in Defendant's so-called "Voluntary Work Program." With respect to that work, on May 14, 2018, this Court held that ". . . at a minimum, Defendant controls the wages, hours and working conditions of Plaintiffs and putative class members. As such, Defendant employed Plaintiffs and putative class members for purposes of California Labor Code § 1194." (ECF No. 38 [Order] at 40; *see also id.* at 37 – 44 (citing *Martinez v. Combs*, 49 Cal. 4th 35 (2010)).)[3]

The undisputed facts establish not only that Plaintiffs were "employees" of Defendant because Defendant controlled the hours, wages, and working environment and conditions of Plaintiffs, but also that Defendant admittedly failed to comply with various provisions of the California Labor Code regarding the work done by Plaintiffs, including

---

[1] Unless otherwise noted, "Plaintiffs" will reference not only the named Plaintiffs to this action but also the CA Labor Law Class defined in the Notice of Motion and Plaintiffs' pending Motion For Class Certification (to the extent one is certified). Should the CA Labor Law Class not be certified such that partial summary judgment cannot be granted as to that class of detainee workers, Plaintiffs still proceed with this Motion as to their individual claims.

[2] Although Plaintiffs and the CA Labor Law Class were ostensibly participants in a self-proclaimed "Voluntary Work Program," under applicable California law, they were not actually "volunteers," but instead were individuals entitled to protections afforded employees under the California Labor Code, as discussed in detail below.

[3] The Court also denied Defendant's motion to dismiss to the extent that Plaintiffs' operative complaint was based on I.W.C. Wage Order 5-2001. (ECF No. 38 [Order] at 47 – 48.) All ECF references herein cite to the ECF pagination in the Court's docket.

violation of section 226 (wage statements) and section 1194 (minimum wage), as well as related provisions in I.W.C. Wage Order 5-2001.[4]

Defendant apparently seeks to avoid its legal obligations under the California Labor Code by claiming that Plaintiffs are "volunteers" when they work—willfully or otherwise—in Defendant's "Voluntary Work Program," or by incorrectly asserting that Defendant was limited in the amount it could pay I.C.E. detainee workers to $1.00 per day.

The first position is inconsistent with both California law regarding "volunteers" for purposes of the Labor Code and Defendant's course of conduct toward Plaintiffs. Defendant's position ignores the fact that Defendant controls the wages, hours, working conditions, and work assignments of Plaintiffs, and Defendant treats Plaintiffs as employees by, among other things, having them sign work-related contracts, giving detainee workers job performance reviews, potentially paying detainees bonuses, and overall treating Plaintiffs as employees—except that, in reality, Defendant exploits civil immigration detainees while they work up to eight-hour shifts (and sometimes more) for about $1.00 per day, all without scheduled rest breaks, meal breaks, or overtime pay.

Defendant's second position ignores the fact that Defendant itself recognizes that there is no such thing as a "$1.00 per day" limitation regarding detainee worker compensation, and Defendant in fact routinely pays more—but never an amount remotely near the required California prevailing minimum wage.  Defendant's initial argument to the contrary in its motion to dismiss was simply a red herring not supported by actual facts.

Thus, Plaintiffs are entitled to the partial summary judgment sought herein as a matter of law.

///

---

[4] The California Legislature established the Industrial Welfare Commission ("I.W.C.") and delegated to it the authority to promulgate wage orders fixing for each industry minimum wages, maximum hours of work, and conditions of labor.  From time to time, the Legislature has enacted statutes to regulate wages, hours, and working conditions directly. "Consequently, wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC."  *See Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1026 (2012).

## II.     Undisputed Evidence Demonstrates Plaintiffs Are Entitled To Partial Summary Judgment

### A.     I.C.E. Detainees Are A Virtually Free Labor Force For Defendant Resulting In Massive Savings To Defendant

At all times relevant to this lawsuit, I.C.E. detainees at Defendant's California detention facilities[5] have worked, and continue to work, as part of Defendant's "Voluntary Work Program" ("VWP").  (*See* Separate Statement of Undisputed Material Facts ["SSUMF"] No. 1.)[6]  Defendant exploited I.C.E. detainees— who were under Defendant's sole control and supervision—by using them as a virtually free labor force to perform "essential" facility operations.  The centrality of the I.C.E. detainee workers to facility operations cannot be understated:  When there has been a shortage of I.C.E. detainees to perform particular functions at Defendant's facilities, Defendant has had to use its own non-detainee employees to perform the exact same work as I.C.E. detainees.  (*See* SSUMF No. 2.)  As a result, Defendant was able to profit significantly from the work of I.C.E. detainees by reducing the number of non-detainee employees and contractors that it would otherwise have needed to hire and compensate at a prevailing wage (and with benefits) to perform the same tasks that I.C.E. detainees performed.  (*See* SSUMF No. 3.)

---

[5] By way of background, Defendant has or had three detention facilities in California.  The Otay Mesa Detention Center ("OMDC") opened in 2015, and for the last year held an average of about 1,340 residents per day, of which approximately 980 residents per day were civil detainees under the custody of I.C.E.  (*See* Declaration of Eileen R. Ridley ["Ridley Decl."], Ex. 1 (Figueroa Depo.), at 11:3-14, 13:17 – 14:5.)  OMDC is the only detention facility in California that currently houses I.C.E. detainees.  (*See* Ridley Decl., Ex. 2 (Ellis Depo. Vol. 1), at 130:19 – 131:1.)

The San Diego Correctional Facility ("SDCF") was the predecessor detention facility to OMDC.  SDCF closed operations towards the end of 2015, and most detainees were relocated to the new facility at OMDC.  (*See* Ridley Decl., Ex. 2 (Ellis Depo. Vol. 1), at 229:11 – 230:17.)

The California City Correctional Facility ("CCCF") is currently leased by Defendant to the California Department of Corrections and Rehabilitation, and the Department operates the facility and houses their inmates there.  (*See* Ridley Decl., Ex. 3 (Ellis Depo. Vol. 2), at 359:24 – 360:12 (representation of Defendant's counsel).)

[6] Much of the evidence cited in support of this Motion has also been submitted to the Court as part of Plaintiffs' Motion For Class Certification.  (*See* ECF Nos. 84 – 86.)

Without a virtually free labor force of I.C.E. detainees, Defendant would have to hire more employees or have its contractors hire more employees to complete the work of I.C.E. detainees.[7]  (*See* SSUMF No. 4.)  Defendant's corporate witness, and the corporate witness for Defendant's food services contractor (Trinity Services Group, Inc.), both confirmed what basic economics dictates:  Defendant would have incurred additional costs to operate its facilities absent the labor performed by I.C.E. detainees.  (*See* SSUMF No. 5.)  Defendant's focus on obtaining virtually free labor from I.C.E. detainees is so pervasive and institutionalized that Defendant's budgets actually assume I.C.E. detainees will comprise part of Defendant's labor force.  (*See* SSUMF No. 6.)

**B.     Defendant's Common Policies And Practices For Labor Performed In California Facilities**

The undisputed facts establish that I.C.E. detainees performing work through the VWP in Defendant's California detention facilities: (1) are "hired" for a specific "job" that had its own "job description"; (2) in many instances are given a particular work schedule or shift; (3) are assigned, in writing, specific tasks or job responsibilities as part of the "job description"; (4) receive job- and safety-related training (including certain training required before commencing on-the-job work); (5) are supposed to receive pay from Defendant for a day's work; and (6) could be promoted, demoted, receive a bonus, or be terminated from their job based on job performance and periodic evaluations.[8]

**1.     I.C.E. Detainee Work For The "Voluntary Work Program" In Defendant's California Detention Facilities**

I.C.E. detainees at Defendant's California detention facilities have worked, and

---

[7] It makes no difference whether the additional non-detainee employees would need to be hired directly by Defendant or one of its contractors because Defendant considers third-party contractors related to facility operations as an extension of Defendant.  (*See* SSUMF No. 7.).

[8] To the extent Defendant contends that any policies, procedures, training materials, job descriptions, and the like that are submitted in support of this Motion are incomplete, such shortcomings are the result of Defendant's failure to maintain, identify, or produce a complete set of documents for each California detention facility.

continue to work, as part of the VWP.  (*See* SSUMF No. 1.)[9]  While in operation, all three California detention facilities had a substantially similar policy applicable to the VWP: Policy No. 19-100, which governed the "Inmate / Detainee Employment System."  (*See* SSUMF No. 8.)  The stated purpose of Policy No. 19-100 and its various iterations over time and at each California facility was "to provide a detainee work assignment plan that provides for detainee labor, subject to the number of work opportunities available . . . ." (*See* SSUMF No. 9.)

Defendant exercised sole control over which I.C.E. detainees would be selected for work assignments in the VWP.  (*See* SSUMF No. 10.)  Policy No. 19-100 further prohibited discrimination in hiring I.C.E. detainees to perform work as part of the VWP.  (*See* SSUMF No. 11.)  An I.C.E. detainee must sign up to be considered for a particular job in the VWP, and will only get that job after a "thorough review" of the detainee's file and history, as well as specific job requirements.  (*See* SSUMF No. 12.)  The primary factors in "hiring a detainee as a worker" are the I.C.E. detainee's security classification level and "the specific requirements of the job."  (*See* SSUMF No. 13.)

Policy No. 19-100 provides that I.C.E. detainee work performance would be "regularly evaluated and recorded."  (*See* SSUMF No. 14.)  An I.C.E. detainee may be removed from his or her job for "[u]nexcused absences" or "unsatisfactory work performance."  (*See* SSUMF No. 15.)

Defendant exercises exclusive control over which I.C.E. detainees perform work as part of the VWP, and if selected, I.C.E. detainees "are required to sign a work agreement stating that they are volunteering to work."  (*See* SSUMF No. 16.)  The work agreements typically limit daily and weekly working hours, require adherence to regulations and grooming standards, note that job termination can occur for unsatisfactory performance, and fix the rate of compensation typically in the range of $0.75 to $1.50 per day:

///

---

[9] During discovery, Defendant produced reports identifying every I.C.E. detainee that worked and was paid through the VWP, as well as the daily rate of payment for the I.C.E. detainees.  (*See* Ridley Decl., Ex. 3 (Ellis Depo. Vol. 2), at 454:4-18.)

### Detainee Voluntary Work Program Agreement

Detainees that participate in the volunteer work program will not be permitted to work in excess of eight (8) hours daily or forty (40) hours weekly.

Detainees that participate in the volunteer work program are required to work according to an assigned work schedule and to participate in all work related training. Unexcused absences from work or unsatisfactory work performance could result in removal from the voluntary work program. Detainees must adhere to all safety regulations and to all medical and grooming standards associated with the work assignment. Compensation will be $1.00 per day.

(*See* SSUMF No. 16; *see generally* Ridley Decl., Ex. 11 (SDCF Inmate/Detainee Voluntary Work Program Agreement).) Defendant's corporate witness acknowledges that Defendant is "responsible" for paying the daily wages to the I.C.E. detainee workers in the VWP. (*See* SSUMF No. 17.) Depending on the year, particular iteration of Policy No. 19-100, and particular job, I.C.E. detainees working at Defendant's California facilities were paid between $0.75 and $1.50 *per day* for their work in nearly every instance—nowhere near the minimum hourly wage mandated by California law. (*See* SSUMF No. 18.)

Critically, Defendant (or its facility-specific staff, including wardens) can set daily pay for I.C.E. detainee workers in the VWP *higher* than $1.00 per day. (*See* SSUMF No. 19.) In fact, there is no limit as to what I.C.E. detainee workers in the VWP can be paid for a day's work. (*See* SSUMF No. 20.)

Some facilities, such as OMDC, pay $1.50 per day for certain jobs (such as work in the kitchen) as incentives for I.C.E. detainee workers to work those jobs. (*See* SSUMF No. 21.) Moreover, Defendant (or its facility-specific staff, including wardens) can provide "bonuses" or "incentives" to I.C.E. detainee workers in the VWP, including bonus pay or "perks" such as extra food, snacks, pre-paid phone cards, or movies. (*See* SSUMF No. 22.) "Bonuses" or "incentives" are awarded by facility-specific staff, such as the warden or other management-level officers. (*See* SSUMF No. 23.)

I.C.E. detainee workers "are required to work according to a schedule," which should approximate "the workday in the community"—meaning that a "detainee employed full time" in the program should not work more than eight hours per day and forty hours

per week.  (*See* SSUMF No. 24.)  Moreover, Defendant paid I.C.E. detainees these daily (not hourly) wages for shifts lasting up to 8 hours.  (*See* SSUMF No. 25.)  Defendant also did not provide regularly scheduled rest and meal breaks to I.C.E. detainees who worked through the VWP; as a result, I.C.E. detainees carried out their job duties through the VWP without any regularly scheduled rest or meal breaks.  (*See* SSUMF No. 26.)

I.C.E. detainee workers are expected to "report for work" at the required time, not leave the job without approval, perform job tasks diligently and conscientiously, exercise care in working, and use safety equipment and other precautions "in accordance with the work supervisor's instructions."  (*See* SSUMF No. 27.)  I.C.E. detainee workers must also receive job-specific training from the work supervisor about the work assignment, including safety-related training, and must sign a form indicating that the detainee received and understood the training.  (*See* SSUMF No. 28.)  Defendant provides I.C.E. detainees with safety gear and equipment (including OSHA-compliant safety equipment) based on the needs of the job.  (*See* SSUMF No. 29.)

Each detention facility must develop and maintain a complete listing of all jobs at the facility that are part of the VWP, including specific job descriptions for each of those positions, as well as any special requirements or qualifications for each job.  (*See* SSUMF No. 30.)  While working in the VWP, I.C.E. detainees have worked, and continue to work, as "housemen, housewomen, cleaning people," maintenance workers, and workers that carry out Defendant's laundry, food service, and commissary operations.  (*See* SSUMF No. 31.)  Other jobs included floor buffer, dining hall porter, laundry room worker, living pod porter, windows and doors cleaner, and shower porter—each of which had its own specific "job description" outlining the various job-related tasks the detainee worker is expected to complete as part of his or her job assignment.  (*See* SSUMF No. 31; *see generally* Ridley Decl., Exs. 25 – 30.)

Moreover, some jobs (such as food service) require medical clearances (*see* SSUMF No. 32), and have further job requirements and specifications, including detailed protocols for safety and how to perform job functions, as well as memoranda outlining job incentives

and "perks" specific to those jobs (*see* SSUMF No. 33).

The contracts between Defendant and the Federal government for the operation of these detention facilities generally required that Defendant and its facilities comply with all applicable federal, state, and local laws and regulations.  (*See* SSUMF No. 34.)[10]

In sum, as confirmed by Defendant's own policies and procedures, as well as Defendant's corporate witness and the Warden in charge of its largest California facility (OMDC), Defendant (1) controls the wages paid to I.C.E. detainees; (2) is "responsible" for paying those wages to I.C.E. detainees who perform work; (3) concedes that there is *no maximum limitation* on what I.C.E. detainees can be paid by Defendant under I.C.E.'s Performance-Based National Detention Standards, or otherwise; (4) controls the hours and shifts worked by I.C.E. detainees; (5) determines an I.C.E. detainee's suitability for a job; (6) determines which job an I.C.E. detainee will work; (7) evaluates the work performance of the I.C.E. detainees; (8) determines whether an I.C.E. detainee is complying with Defendant's work agreements; (9) controls the training provided to I.C.E. detainees; (10) provides the safety equipment necessary for I.C.E. detainees to complete their job assignments; (11) determines whether bonuses or other incentives will be given to I.C.E. detainees; (12) supervises I.C.E. detainees for the entire duration of their shifts; and (13) controls the decision of, and reserves the ability to, terminate an I.C.E. detainee from a particular job assignment or the VWP entirely.  (*See generally* SSUMF Nos. 8 – 34.)

## 2.  Defendant's Policy Of Violating California Labor Law

Defendant plainly admits that it did not consider or treat I.C.E. detainees who worked through the VWP in California detention facilities as employees of Defendant as a matter of uniform policy and practice.  (ECF No. 18 [Mot. To Dismiss] at 17; ECF No. 70 [Counter-Claim] at ¶ 28.)[11]  As a result of this uniform policy and practice, Defendant did

---

[10] As noted above, OMDC was the successor facility to SDCF.  The SDCF contract had option periods for the contract to renew through 2022.  (*See* Ridley Decl., Ex. 38 (SDCF Contract with Office of Fed. Detention Trustee, July 2005), at pp. 5 – 7.)

[11] Defendant instead apparently views the I.C.E. detainees as "volunteers," even though Defendant exercised control over the wages, hours, and working conditions of the I.C.E. detainees, which instead makes them "employees" under California labor law.  *See*

-8-                    Case No. 17-CV-01112-JLS-NLS

not comply with California labor law that required Defendant to, among other things:

- Pay I.C.E. detainees who worked in the VWP the minimum wage mandated by California Labor Code § 1194 and I.W.C. Wage Order No. 5-2001 (*see* SSUMF No. 35); and

- Provide I.C.E. detainees who worked in the VWP with an itemized statement in writing showing the categories of information set forth in California Labor Code § 226(a), including (1) gross wages earned, (2) total hours worked, (3) any applicable deductions, (4) net wages earned, (5) the pay period, and (6) the applicable hourly rates in effect and the corresponding number of hours worked during the pay period (*see* SSUMF No. 36).

## III.  Plaintiffs And The California Labor Law Class Are Entitled To Partial Summary Judgment On The Issue Of Whether They Are "Employees"

Because Defendant controls the I.C.E. detainees' working conditions, hours of work, types of work, and compensation for work (including bonus or incentive compensation), in addition to making all determinations on any promotions, demotions, or terminations within the VWP, the I.C.E. detainee workers are "employees" who are "employed by" Defendant and therefore are entitled to the protections afforded by California law.  Thus, the undisputed, material "facts on the ground" clearly confirm support for the Court's prior Motion To Dismiss determination regarding Plaintiffs' employment status.  (*See* ECF No. 38 [Order] at 40; *see also id.* at 37 – 44 (citing *Martinez, supra,* 49 Cal. 4th 35 (2010)).)

### A.  Applicable Legal Standards

#### 1.  Partial Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court may grant partial summary judgment on any claim or defense—"or the part of each claim or

---

*Martinez, supra,* 49 Cal. 4th at 64 (holding that "[t]o employ" means, *inter alia,* "to exercise control over the wages, hours or working conditions" of the employee).

As discussed below, Defendant's "volunteer" classification violates California labor law. In addition to satisfying the test for employment under *Martinez*, all of the undisputed facts set forth in this Motion distinguish I.C.E. detainees who work through the VWP from Defendant's other civilian volunteers.  As Defendant's corporate witness confirmed, true "volunteers," in contrast to I.C.E. detainees, would not be paid for their work—"or they wouldn't be volunteers." (*See* Ridley Decl., Ex. 2 (Ellis Depo. Vol. 1), at 120:18 – 121:15.)

defense"—on which summary judgment is sought. *See* Fed. R. Civ. P. 56(a). This includes adjudication of issues within a claim. *See, e.g., Pinnacle Fitness & Rec. Mgmt., Ltd. Liab. Co. v. Jerry & Vickie Moyes Family Tr.*, 844 F. Supp. 2d 1078, 1093 (S.D. Cal. Jan. 4, 2012) ("[P]artial summary judgment 'on all or any part of a claim' may be entered as to that portion of the claim . . . .") (quoting Fed. R. Civ. P. 56(a)).

Partial summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); s*ee also Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000) (recognizing that where material facts are undisputed, the court only decides the application of relevant law). A dispute is "genuine" only when "the evidence presented is such that a jury applying [the appropriate] evidentiary standard could reasonably find for either the plaintiff or the defendant." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the moving party meets the threshold requirements of Rule 56, the burden shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256. It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of [its] pleadings." *Id*. Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. To make such a showing, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 325.

### 2. "To Employ" Under California Labor Law

The California Supreme Court recognized that "in light of the remedial nature of legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions [of the California Labor Code] are to be liberally construed with an eye to promoting such protection." *See Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1026-27 (2012) (internal quotation and citation omitted); *accord Murphy v. Kenneth Cole Prods. Inc.*, 40 Cal. 4th 1094, 1103

(2007) ("[S]tatutes governing conditions of employment are to be construed broadly in favor of protecting employees.").[12]

California law defines an "employee" as one engaged "to do something for the benefit of the employer or a third person." *See* Cal. Labor Code § 2750. A person working for another can be an "employee" regardless of the worker's immigration status. *See* Cal. Labor Code § 1171.5.[13] Whether a person is an "employee" depends on degree of control over that person that the purported employer has a right to exercise: Where the purported employer has the right to control the mode and manner of doing work, an employer-employee relationship exists. *See Randolph v. Budget Rent-A-Car*, 97 F.3d 319 (9th Cir. 1996); *accord Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596 (S.D. Cal. 2010).

An "employer" under the various I.W.C. Wage Orders means "any person . . . who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." *See Martinez*, *supra*, 49 Cal. 4th at 64; *see also* I.W.C. Wage Order 5-2001, at 2(H).

Thus, to "employ" a person under the I.W.C.'s definition has three disjunctive meanings: (1) to exercise control over the wages, hours, or working conditions; (2) to suffer or permit to work; or (3) to engage, thereby creating a common law employment relationship. *See Martinez*, *supra*, 49 Cal. 4th at 64; *see also* I.W.C. Wage Order 5-2001, at 2(E), (H).

///

---

[12] I.W.C. Wage Orders are accorded the same dignity as statutes (*see Brinker*, *supra*, 53 Cal. 4th at 1027), and in line with California's broad reach of its protective, remedial Labor Code and regulations, I.W.C. Wage Orders should be construed broadly in favor of employees (*see* ECF No. 82 [Order], at 5:5-9). Other California District Courts are in accord with this Court's prior conclusion. *See, e.g., Novoa v. GEO Group, Inc.*, Case No. EDCV 17-2514 JGB (SHKx), 2018 WL 334494 (C.D. Cal. June 21, 2018); *see also* ECF No. 82 [Order Denying Mot. For Reconsideration].

[13] The Court already concluded that Federal law does not control the definition of "employee" for purposes of California labor law. (*See* ECF No. 38 [Order] at 39.) Moreover, the Court concluded that the relevant inquiry is *not* whether Defendant violated any Federal law related to employing undocumented workers, but is rather whether Plaintiffs and the California Labor Law Class can recover for violations of California labor law. (*See id.* at 42.)

## B.   Discussion

This Court already concluded that ". . . at a minimum, Defendant controls the wages, hours and working conditions of Plaintiffs and putative class members.  As such, Defendant employed Plaintiffs and putative class members for purposes of California Labor Code § 1194."  (ECF No. 38 [Order] at 40; *see also id.* at 37 – 44 (citing *Martinez*, *supra*, 49 Cal. 4th at 64).)  This Court also rejected Defendant's argument that Federal law, such as the Immigration Reform and Control Act of 1986, preempted protections afforded by the California Labor Code.  (*Id.* at 30 – 37.)  Notably, the basis for Defendant's conflict preemption argument—that Defendant could only pay I.C.E. detainee workers *a maximum* of $1.00 per day (*see* ECF No. 18-1 [Mot. To Dismiss] at 24:8 – 25:12; ECF No. 26 [Reply] at 14:22 – 15:20; ECF No. 38 [Order] at 35:6 – 37:9)—is clearly refuted by the actual, undisputed facts, which show the $1.00 per day was a *minimum*.  (*See* SSUMF Nos. 19 – 23.)[14]

Moreover, the Court's initial analysis of the conflict preemption question is now fully supported by the Ninth Circuit's recent decision in *United States v. California*, Case No. 18-16496, 2019 WL 1717075 (9th Cir., Apr. 18, 2019), which involved three recently enacted California statutes "expressly designed to protect its residents from federal immigration enforcement."  *Id.* at *2.  In rejecting the Federal government's conflict preemption argument, the Ninth Circuit observed that "'nothing in IRCA (or federal immigration policy generally) demands that *employers, site owners, or general contractors* be absolved from' a state's employee-protection efforts 'whenever undocumented aliens provide labor.'"  *Id.* at *10 (internal citation omitted) (emphasis added); *see also id.* at *12 (noting that the historical police powers of the States are not to be superseded absent a clear and manifest intent from Congress, and that the statutes at issue in that case do not evince

---

[14] In this regard, the fact that the Court initially found the conflict preemption issue to be "a close question" (*see* ECF No. 38 [Order] at 36:18) was based on the misrepresentation of Defendant as to what I.C.E. detainees could in reality be paid.  The question is no longer a close one:  I.C.E. detainees can be paid more than $1.00 per day, but Defendant exercises its control over wages to limit I.C.E. detainee worker compensation to between $0.75 and $1.50 per day, excluding "perks" or bonuses.

California's "active frustration" of the Federal government's ability to discharge its immigration operations—i.e., the statutes at issue do not "regulate whether or where an immigration detainee may be confined, require that federal detention decisions or removal proceedings conform to state law, or mandate that I.C.E. contractors obtain a state license").[15]  The same applies here:  California labor law governs obligations between California employers and their employees generally, without specifically targeting or otherwise burdening Federal relationships or operations.  This conclusion is consistent with Defendant's contracts with the Federal government, which require Defendant to follow all applicable state and local laws, which would include Labor Code provisions.  (*See* SSUMF No. 34.)

The undisputed facts affirm the Court's initial conclusion that Defendant "employs" I.C.E. detainee workers because Defendant controls the hours, wages, and working conditions of those detainees.  This conclusion is affirmed by the Ninth Circuit's recent decision confirming that a State's exercise of its historical police powers in adopting labor protections for employees (which might encompass I.C.E. detainee workers, as is the case here) does not conflict with Federal immigration objectives.

1.     **Plaintiffs And The California Labor Law Class Are "Employees" Who Are "Employed By" Defendant Under California Law**

As set forth in detail above, Defendant's policies, procedures, I.C.E. detainee job descriptions, training materials, and sworn testimony of Defendant's own witnesses, all demonstrate that Defendant employs I.C.E. detainees in the VWP because Defendant controls the wages, hours, duties, responsibilities, working conditions, and job evaluations of its I.C.E. detainee worker population.  *See Martinez*, *supra*, 49 Cal. 4th at 60-61, 64; *see also* I.W.C. Wage Order 5-2001, at 2(E) – (H).

---

[15] The Ninth Circuit further noted that the conflict preemption analysis applies when a state law causes a disruption of a Federal relationship or the undermining of a Federal operation, but in that case although there was a Federal relationship (between Federal immigration authorities and the employers they regulate), the State statute at issue was directed to the relationship between private employers and their employees.  *Id.* at *9.

As confirmed by Defendant's own policies and procedures, as well as Defendant's corporate witness and the Warden in charge of its largest California facility (OMDC), Defendant (1) controls the wages paid to I.C.E. detainees; (2) is "responsible" for paying I.C.E. detainees who work through the VWP; (3) concedes that there is *no maximum limitation* on what I.C.E. detainees can be paid by Defendant under I.C.E.'s Performance-Based National Detention Standards, or otherwise; (4) controls the hours and shifts worked by I.C.E. detainees; (5) determines an I.C.E. detainee's suitability for a job; (6) determines which job an I.C.E. detainee will work; (7) evaluates the work performance of the I.C.E. detainees; (8) determines whether an I.C.E. detainee is complying with Defendant's work agreements; (9) controls the training provided to I.C.E. detainees; (10) provides the safety equipment necessary for I.C.E. detainees to complete their job assignments; (11) determines whether bonuses or other incentives will be paid to I.C.E. detainees; (12) supervises I.C.E. detainees for the entire duration of their shifts; and (13) controls the decision of, and reserves the ability to, terminate an I.C.E. detainee from a particular job assignment or the VWP entirely.  (*See generally* SSUMF Nos. 8 – 34.)

Moreover, the extensive reach of Defendant's control over I.C.E. detainees in the VWP is amply evidenced in Plaintiffs' own detainee files, which contain various acknowledgements, agreements, rules and regulations, training checklists and lesson plans, and job descriptions—all that would be expected in a normal employer-employee relationship.  (*See* SSUMF Nos. 37 – 45.)  Without question, Defendant controls every facet of daily work life for I.C.E. detainee workers.  And Defendant does so at great benefit:  But for the I.C.E. detainee workers' participation in the VWP, Defendant would have had to pay non-detainee workers (at California minimum wage) to perform the same tasks—a point underscored by Warden Figueroa's testimony about OMDC's staff having to take over detainee work assignments when there were detainee worker shortages (which also was confirmed by Defendant's corporate witness).  (*See* SSUMF Nos. 2 – 6.)

The evidence is undisputed, voluminous, and compelling:  Defendant exercised direct control over the wages, hours, and working conditions of I.C.E. detainees who

worked as part of the VWP, and therefore Defendant "employed" these workers.  *See Martinez*, *supra*, 49 Cal. 4th at 60-61, 64; *see also* I.W.C. Wage Order 5-2001, at 2(E), (H).  The Court should grant Plaintiffs' Motion and find that, as a matter of law and based on undisputed evidence, I.C.E. detainee workers working as part of the VWP in Defendant's California detention facilities are "employees" who are "employed by" Defendant, and therefore are entitled to the protections of California's extensive and employee-protective labor laws.

## 2.  Plaintiffs And The California Labor Law Class Are Not "Volunteers" Under California Labor Law, And There Is No "$1.00 Per Day" Limitation On I.C.E. Detainee Compensation

Defendant may attempt to argue that I.C.E. detainees are not required to work in Defendant's detention facilities, and any I.C.E. detainee who signs up for the VWP must be a "volunteer."  California law, however, which is applicable here, does not support the notion that I.C.E. detainees who are being held in Defendant's California detention facilities would somehow qualify as a "volunteer" by providing compensable work to Defendant, and as a result not receive the protections of the California Labor Code applicable to their work efforts.  *See also United States v. California*, Case No. 18-16496, 2019 WL 1717075 at *10 (9th Cir., Apr. 18, 2019) ("'[N]othing in IRCA (or federal immigration policy generally) demands that employers, site owners, or general contractors be absolved from' a state's employee-protection efforts 'whenever undocumented aliens provide labor.'" (internal citation omitted).)

To protect against abuse of "volunteer" status, California law narrowly defines who can qualify as a "volunteer" for labor law purposes.  A "volunteer" is "an individual who performs work for civic, charitable, or humanitarian reasons for a public agency or corporation qualified under Section 501(c)(3) of the Internal Revenue Code as a tax-exempt organization, without promise, expectation, or receipt of any compensation for work performed."  Cal. Labor Code § 1720.4(a).

The focus is not on how the parties characterize their relationship, but instead is on

the reality of the situation.  *See Hoppmann v. Workers' Comp. Appeals Bd.*, 226 Cal. App. 3d 1119, 1126-27 (Cal. Ct. App. 1991) (classifying worker's compensation claimant as an "employee" despite his referring to himself as a church "volunteer").  Any characterization that I.C.E. detainees "volunteer" to work for Defendant (for which Defendant promises to pay the workers) fails because "[t]he mere fact that an employee is given the freedom to decline a particular assignment does not mean that, when the employee accepts an assignment and engages in compensated work, he or she is transformed into a volunteer.  Slavish obedience is not a requisite element of an employment relationship." *Brassinga v. City of Mountain View*, 66 Cal. App. 4th 195, 214 (Cal. Ct. App. 1998).

Under California law, I.C.E. detainee workers were not, and could not be, "volunteers" because it is undisputed that the VWP paid compensation to the I.C.E. detainees for the work they performed for Defendant (typically between $0.75 and $1.50 for one day's work).  The compensation was expected by I.C.E. detainee workers, agreed to by Defendant, and Defendant was "responsible" for making the payments.[16]  The simple fact that there was a "promise, expectation, [and] receipt" of compensation for the I.C.E. detainee's work—paid by Defendant to the detainees—disqualifies them from "volunteer" status under California law.[17]  In a similar vein, I.C.E. detainee workers could receive "bonuses," "perks," and/or "incentives" for the work they performed.  (*See* SSUMF Nos. 22 – 23.)  The fact that I.C.E. detainees were given incentives to do certain work—i.e., Defendant would pay them more or provide perks for taking different jobs—is also inherently inconsistent with the concept of a "volunteer" under California law.[18]

---

[16] Warden Figueroa testified (and Defendant's corporate witness confirmed) the rates at which I.C.E. detainees were paid were in reality determined by Defendant because the pay regulations promulgated by I.C.E. for the VWP simply set the *minimum* amount to be paid. Warden Figueroa testified that he could unilaterally adjust those pay rates (sometimes with input or approval from his superiors), including awarding incentives to workers, and that he was never told that he could not pay detainees more.  (*See* SSUMF Nos. 17, 19 – 20.)

[17] Mr. Ellis (Defendant's corporate witness) recognized the same concept:  Although some detention facilities may have civilian volunteers, these individuals are not paid because otherwise they would not be volunteers.  (*See* Ridley Decl., Ex. 2 (Ellis Depo. Vol. 1), at 120:18 – 121:15.)

[18] In order to qualify for this exemption, Defendant would also have to provide evidence

-16-                    Case No. 17-CV-01112-JLS-NLS

Furthermore, as Warden Figueroa testified, from time to time Defendant's staff may have to perform tasks otherwise assigned to I.C.E. detainee workers when there was a detainee worker shortage, but I.C.E. detainee workers would never perform tasks assigned to Defendant's non-detainee staff.  The fact that sometimes Defendant's non-detainee staff (who are paid upwards of $33.84 per hour) would perform I.C.E. detainee work due to detainee worker shortages demonstrates that, but for the I.C.E. detainee labor pool, Defendant would have to pay non-detainee employees at least minimum wage to perform the very same tasks.  (*See* SSUMF Nos. 1 – 6.)  It cannot reasonably be said that the I.C.E. detainee workers are "volunteers" when non-detainee personnel would be paid at least minimum wage to perform the same work.  *See also Hoppmann*, *supra*, 226 Cal. App. 3d at 1125 ("[T]he claimant worked shoulder to shoulder with covered employees, did the same work, received wages, and ran the same risks.  . . . [S]ervices are not voluntary because the worker is poor and must work, or receives less than others may be able to obtain.").

Nor is there a limit that has been imposed under Federal law or Defendant's contracts with the Federal government as to what Defendant could pay I.C.E. detainees for their work.  Not only did the Court specifically reject this argument in ruling on Defendant's Motion to Dismiss, but discovery shows that the Defendant itself never thought there was a *maximum* wage that it could pay I.C.E. detainee workers.  Indeed, Warden Figueroa testified that the wage of $1.00 per day set forth in applicable I.C.E. guidelines and Defendant's policies and contracts was the *minimum* compensation paid to an I.C.E. detainee for one day's work (which was confirmed by Defendant's corporate witness, Mr. Ellis).  (*See* SSUMF Nos. 17, 19 – 20.)  Warden Figueroa has never been told that he cannot pay more than the policy minimum, and he further testified that he is able to set wages

---

that the reason I.C.E. detainees decided to work was for "civic, charitable, or humanitarian reasons"—a point on which Defendant has no evidence and which is refuted in Plaintiffs' pending Motion For Class Certification.  Moreover, Defendant would also have to establish that it is a "corporation qualified under Section 501(c)(3) of the Internal Revenue Code as a tax-exempt organization"—again, a point where it cannot carry its evidentiary burden.

unilaterally for I.C.E. detainee workers (including $1.50 per day to incentivize work in certain jobs), and that the Warden and other management-level officers have sole discretion to award performance-based bonus pay or other incentives.  (*See* SSUMF Nos. 22 – 23.) The argument made by Defendant to the Court in its Motion To Dismiss was, at best, a "red herring."

### 3.   Defendant Violated California Labor Code Section 226 By Failing To Provide Wage Statements To I.C.E. Detainee Workers

California Labor Code Section 226(a) requires that an employer furnish to its employees, at the time of each payment of wages, an accurate and itemized statement that includes, among other information: (1) gross wages earned; (2) total hours worked by the employee; (3) all deductions; (4) net wages earned; (5) the inclusive dates of the period for which the employee is paid; (6) the name of the employee and the last four digits of his or her social security number or an employee identification number; (7) the name and address of the legal entity that is the employer; and (8) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.  *See* Cal. Labor Code § 226(a).  "An employee is deemed to suffer injury . . . if the employer fails to provide a wage statement."  *See* Cal. Labor Code § 226(e)(2)(A).

Here, Defendant admits that it violated Section 226(a) because it failed to provide accurate, itemized wage statements containing the above statutorily required information to its I.C.E. detainee workers for each pay period during which those workers performed work.  (*See* SSUMF No. 36.)  This is not a question of incorrect wage statements because no wage statement—at all—was provided to Plaintiffs.  Defendant plainly admits that it did not consider or treat I.C.E. detainees who worked through the VWP in California detention facilities as employees of Defendant as a matter of uniform policy and practice. (ECF No. 18 [Mot. To Dismiss] at 17; ECF No. 70 [Counter-Claim] at ¶ 28.)  Defendant also admitted that it did not provide I.C.E. detainee workers with an itemized statement in writing showing the categories of information set forth in California Labor Code Section 226(a).  (*See* SSUMF No. 36.)

This means that Defendant violated Section 226(a)—per pay period—for each I.C.E. detainee who worked for Defendant at one of its California detention facilities and was paid through the VWP.

The Court should grant Plaintiffs' Motion and conclude as a matter of law based on undisputed evidence that Defendant had a legal obligation under Section 226(a) to provide proper wage statements to its I.C.E. detainee worker population, and that Defendant failed to do so for each Plaintiff and for each pay period during which each I.C.E. detainee performed work in one of Defendant's California facilities.

**4.    Defendant Violated California Labor Code Section 1194 By Failing To Pay Minimum Wage To I.C.E. Detainee Workers**

California Labor Code Section 1194 provides:  "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Labor Code § 1194(a).[19]

Defendant admits that it violated Section 1194 because, although there was no limitation of what it could pay for the work performed, it failed to pay the prevailing minimum wage to Plaintiffs for each pay period during which those workers performed work.  (*See* SSUMF Nos. 17 – 21, 35.)[20]   In addition, through Defendant's policies,

_____

[19] In this regard, Defendant's argument that I.C.E. detainee workers are "volunteers," or that those workers otherwise agreed to be paid a lesser wage, is preempted by Section 1194 because any such agreement violates public policy.  *See* Cal. Labor Code § 1194(a); *see also Flowers v. Los Angeles County Metropolitan Transportation Authority*, 243 Cal. App. 4th 66 (Cal. Ct. App. 2015) (noting that under both Federal and California law, employees may not agree to waive their entitlement to the minimum wage, nor may a collective bargaining agreement waive that right).

[20] In seeking partial summary judgment as to Defendant's failure to pay minimum wages to Plaintiffs under Section 1194, Plaintiffs in no way waive or otherwise concede their claim (or the validity thereof) that Defendant also failed to pay overtime wages as required by that Section, or the amount that Defendant may be required to pay or disgorge as unjust enrichment from its illegal and unfair business practices.  However, this Motion only seeks partial summary judgment on the failure to pay minimum wages under the applicable Labor Code provisions.

procedures, and I.C.E. detainee work agreements, Defendant fixed the *daily* (not hourly) wages for Plaintiffs between $0.75 and $1.50 (depending on year and type of job).  (*See* SSUMF Nos. 18, 21.)

Critically, Defendant exercised exclusive control over setting wages for Plaintiffs (including bonuses and incentives), and kept those wages well below the applicable prevailing minimum wage in California for each Plaintiff's period(s) of detention to maximize its own profitability. (*See* SSUMF Nos. 17 – 21, 35.)  This means that Defendant violated Section 1194—per hour, per day, per week, and per pay period—for each I.C.E. detainee who worked for Defendant at one of its California detention facilities and was paid through the VWP.

Therefore, the Court should grant Plaintiffs' Motion and conclude as a matter of law based on undisputed evidence that Defendant had a legal obligation under Section 1194 to pay the prevailing minimum wage to its I.C.E. detainee worker population, and that Defendant failed to do so for each Plaintiff—and for each hour, each day, each week, and each pay period—during which each Plaintiff performed work in one of Defendant's California facilities.

///
///
///
///
///
///
///
///
///
///
///
///

## IV.   Conclusion

For all of the foregoing reasons, the Court should grant partial summary judgment in favor of Plaintiffs and the California Labor Law Class, and determine that, as a matter of law and based on undisputed evidence, I.C.E. detainees who performed or still perform work for Defendant as part of the "Voluntary Work Program" at any of Defendant's detention facilities in California are "employees" who are "employed by" Defendant under the California Labor Code and I.W.C. Wage Order 5-2001, and that Defendant violated California Labor Code sections 226 and 1194, as well as I.W.C. Wage Order No. 5-2001, as to Plaintiffs and the California Labor Law Class.

DATED:  June 5, 2019

**FOLEY & LARDNER LLP**
J. Mark Waxman
Eileen R. Ridley
Geoffrey Raux
Nicholas J. Fox
Alan R. Ouellette


*/s/ J. Mark Waxman*
J. Mark Waxman
Eileen R. Ridley
Attorneys for Plaintiffs SYLVESTER OWINO, JONATHAN GOMEZ, and the Proposed Class(es)

**LAW OFFICE OF ROBERT L. TEEL**
Robert L. Teel
  lawoffice@rlteel.com
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
Telephone:  (866) 833-5529
Facsimile:  (855) 609-6911

Attorneys for Plaintiffs SYLVESTER OWINO, JONATHAN GOMEZ, and the Proposed Class(es)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 5, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

*/s/ J. Mark Waxman*
J. Mark Waxman
