J. MARK WAXMAN  (SBN 58579)
    mwaxman@foley.com
NICHOLAS J. FOX (SBN 279577)
    nfox@foley.com
**FOLEY & LARDNER LLP**
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
T: 858.847.6700 // F:  858.792.6773

EILEEN R. RIDLEY (SBN 151735)
    eridley@foley.com
ALAN R. OUELLETTE (SBN 272745)
    aouellette@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
T: 415.434.4484 // F: 415.434.4507

ROBERT L. TEEL (SBN 127081)
    lawoffice@rlteel.com
**LAW OFFICE OF ROBERT L. TEEL**
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
T: 866. 833.5529 // F:855.609.6911

GEOFFREY M. RAUX (pro hac vice)
    graux@foley.com
**FOLEY & LARDNER LLP**
111 Huntington Avenue
Boston, MA 02199-7610
T: 617.342.4000 // F: 617.342.4001

Attorneys for Plaintiffs SYLVESTER OWINO,
JONATHAN GOMEZ, and the Proposed Class(es)

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>vs.<br><br>CORECIVIC, INC.,<br><br>               Defendant. | Case No. 3:17-CV-01112-JLS-NLS<br><br>**<u>CLASS ACTION</u>**<br><br>**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| CORECIVIC, INC.,<br><br>            Counter-Claimant,<br><br>vs.<br><br>SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>            Counter-Defendants. | Date:   August 22, 2019<br>Time:  2:00 p.m.<br>Place:  Courtroom 4D<br><br>Judge:  Hon. Janis L. Sammartino<br>Magistrate:  Hon. Nita L. Stormes<br><br>DEMAND FOR JURY TRIAL |

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ............................................................................... 1

II.    ARGUMENT ....................................................................................... 1

      A.    CORECIVIC DOES NOT DISPUTE THAT THE CALIFORNIA LABOR LAW CLASS SHOULD BE CERTIFIED. .................................. 1

      B.    CORECIVIC CANNOT DEFEAT CLASS CERTIFICATION BY DENYING THE EXISTENCE OF ITS OWN ADMITTED POLICIES AND PRACTICES. ............................................................. 2

           1.    The So-Called "Voluntary Work Program." .................................. 2

           2.    CoreCivic's Policy Of Compelling ICE Detainees To Clean Above And Beyond The Personal Housekeeping Tasks In The PBNDS. ................................................................ 3

           3.    CoreCivic's Policy Of Threatening Discipline To Obtain Work. ........................................................................ 4

           4.    CoreCivic's Policy Of Withholding Basic Living Necessities. ........................................................................ 5

      C.    THE CA AND NATIONAL BASIC NECESSITIES CLASSES ADVANCE THE SAME THEORY OF LIABILITY ALLEGED IN THE FIRST AMENDED COMPLAINT ............................................. 6

      D.    PLAINTIFFS SATISFY THE REQUIREMENTS FOR CLASS CERTIFICATION. ............................................................................ 7

           1.    The Classes Are Not Over-Inclusive, Overbroad, Or Vague. ........................................................................ 7

           2.    The Proposed Classes Satisfy The Numerosity Requirement. ........................................................................ 9

           3.    Commonality And Predominance Are Satisfied. .......................... 10

           4.    Plaintiffs Satisfy The Typicality And Adequacy Requirements. ........................................................................ 12

           5.    Class Treatment Is The Superior Method Of Adjudication. ........................................................................ 14

III.    CONCLUSION ................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Similasan Corp.*,
    306 F.R.D. 635 (S.D. Cal. 2015) .............................................................. 9, 10

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................... 15

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) .................................................................................... 12

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ...................................................................... 13

*Bee, Denning, Inc. v. Capital All. Grp.*,
    310 F.R.D. 614 (S.D. Cal. 2015) .............................................................. 6, 10

*Brandon v. Nat'l R.R. Passenger Corp. Amtrak*,
    No. CV 12-5796 PSG VBKX, 2013 WL 800265 (C.D. Cal. Mar. 1, 2013) ................. 9

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ...................................................................... 7

*Dibb v. Allianceone Receivables Mgmt., Inc.*,
    No. 14-5835 RJB, 2015 WL 8970778 (W.D. Wash. Dec. 16, 2015)........................... 13

*Evans v. IAC/Interactive Corp.*,
    244 F.R.D. 568 (C.D. Cal. 2007)................................................................ 14

*Howell v. Advantage RN, LLC*,
    No. 17-CV-0883 JLS (BLM), 2018 WL 3437123
    (S.D. Cal. July 17, 2018) ............................................................................ 11

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ...................................................................... 11

*Menocal v. GEO Grp., Inc.*,
    882 F.3d 905 (10th Cir. 2018) .................................................................... 15

*In re Monster Worldwide, Inc. Securities Litig.*,
    251 F.R.D. 132 (S.D.N.Y 2008) ................................................................ 15

*Nat'l Fed'n of Blind v. Target Corp.*,
   582 F.Supp.2d 1185 (N.D. Cal. 2007) ........................................................ 13

*Rannis v. Recchia*,
   380 Fed. Appx. 646 (9th Cir. 2010) ............................................................. 9

*Ruiz v. XPO Last Mile, Inc.*,
   No. 5CV2125 JLS (KSC), 2016 WL 4515859 (S.D. Cal. Feb. 1, 2016) .................... 11

*Starline Windows Inc. v. Quanex Bldg. Prod. Corp.*,
   No. 15-CV-1282-L (WVG), 2016 WL 4485564 (S.D. Cal. July 21, 2016) ................. 3

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ....................................................................... 11

*Tourgeman v. Collins Fin. Servs., Inc.*,
   No. 08-CV-1392 JLS (NLS), 2011 WL 5025152
   (S.D. Cal. Oct. 21, 2011) ............................................................................ 11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................... 11

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ..................................................................... 11

**California Cases**

*Augustus v. ABM Security Service, Inc.*,
   2 Cal. 5th 257 (2016) .................................................................................. 8

*Cortez v. Purolator Air Filtration Prods. Co.*,
   23 Cal. 4th 163, 173 (2000) ......................................................................... 9

**Federal Statutes**

18 U.S.C. § 1589(a) ...................................................................................... 14

18 U.S.C. § 1589(c)(2) .............................................................................. 4, 12

**Federal Rules**

Fed. Rule Civ. P. 23 ..................................................................................... 13

Fed. Rule Civ. P. 23(a) ............................................................................. 1, 10

Fed. Rule Civ. P. 23(a)(2) ............................................................................ 11

Fed. Rule Civ. P. 23(a) and (b)(3) ................................................................ 1

Fed. Rule Civ. P. 23(b)(3) .............................................................. 14, 15

Fed. Rule Civ. P. 30(b)(6) ............................................................ 2, 3, 8

**California Statutes**

Cal. Civ. Code § 52.5(c) ................................................................... 9

Cal. Lab. Code § 226 ...................................................................... 12

Cal. Penal Code § 236.1(h)(3) ....................................................... 14

Cal. Penal Code § 236.1(h)(4) .................................................. 4, 12

Cal. Lab. Code § 226(a) .................................................................. 3

Cal. Lab. Code § 432 ....................................................................... 2

## I.      INTRODUCTION

CoreCivic fails to advance any argument capable of precluding the certification of the following five classes:

- **CA Labor Law Class**, which is alleged as to Plaintiffs' claims for violations of the California Labor Code, violations of the IWC's Wage Order No. 5-2001, violations of the UCL, unjust enrichment, and negligence;
- **CA Forced Labor Class** and **CA Basic Necessities Class**, which are alleged as to Plaintiffs' claims for violations of the Federal TVPA,[1] violations of the CA TVPA, violations of the UCL, unjust enrichment, and negligence; and
- **National Forced Labor Class** and **National Basic Necessities Class**, which are alleged as to Plaintiffs' claims for violations of the Federal TVPA.

Because the claims of each of the proposed classes hinge on the determination of the legality or illegality of CoreCivic's corporate-wide policies and practices, they satisfy the requirements of Rule 23(a), common questions of law and fact predominate, and class treatment is the superior method of adjudication.

## II.      ARGUMENT

### A.      CoreCivic Does Not Dispute That The California Labor Law Class Should Be Certified.

At the outset, Plaintiffs note that CoreCivic does not oppose the certification of the California Labor Class as to Plaintiffs' claims under the California Labor Code, IWC Wage Order No. 5-2001, and the UCL for (1) failure to pay ICE detainees minimum wage, (2) failure to provide wage statements, and (3) imposing unlawful terms and conditions on CoreCivic's employment of ICE detainees. CoreCivic concedes that the question of "whether detainees who participate in the VWP are CoreCivic's employees under California law" is a "common question" and does not dispute that the requirements of Rule 23(a) and (b)(3) are all satisfied as to these claims. [Opp. at 32:14-15.] At a minimum, the California Labor Class should be certified as to these claims.[2]

---

[1] If the Court declines to certify the National Forced Labor Classes, the Court should certify the CA Forced Labor Classes as to Plaintiffs' claims for violations of both the Federal TVPA and the CA TVPA, which are based on the same policies and practices.

[2] CoreCivic's arguments only address Plaintiffs' claims for unpaid overtime wages and failure to provide meal and rest breaks. [*Id*. at 15:2-4, 19:2-7, 28:22-25, 32:21-28.]

**B.**     **CoreCivic Cannot Defeat Class Certification By Denying The Existence Of Its Own Admitted Policies And Practices.**

CoreCivic principally argues that the policies and practices on which Plaintiffs' class claims are based do not, in fact, exist.  In spite of this, the Opposition Brief largely confirms the existence of the policies and practices set forth in Plaintiffs' Motion. Further, CoreCivic cannot defeat class certification by arguing that the terms of its written policies and procedures do not mean what they plainly state and by distancing itself from the testimony of its Rule 30(b)(6) representative, Jason Ellis, who confirmed that CoreCivic creates and implements enterprise-wide policies and practices that its facilities are all bound to use.[3]

**1.**     **The So-Called "Voluntary Work Program."**

CoreCivic does not dispute—and instead confirms—that CoreCivic, as a matter of policy and practice, (1) "select[s]" and hires ICE detainees for work [Opp. at 11:2], (2) requires ICE detainees to sign employment agreements prior to working at a CoreCivic facility that generally[4] fixes the rate of compensation at $1.00 to $1.50 per day in violation of California Labor Code § 432 [*id*. at 10:27-11:4], (3) pays ICE detainees wages that are less than the minimum wage mandated by California law [*id*. at 11:5-7], (4) exercises its discretion in awarding ICE detainees "bonuses" or other "extra incentives" for labor performed [*id*. at 11:7-8], (5) only allows ICE detainees to spend their earnings at the company store or "commissary" during their period of detention [*id*. at 11:8-9], (6) controls the work schedules and job assignments of ICE detainees [*id*. at 11:12-24], (7) implements standards by which job performance is measured [*id*. at 12:1-2], and (8) controls and exercises its discretion over the decision of whether to terminate an ICE detainee's employment [*id*. at 12:2-4].  The Opposition Brief also does not address or dispute that CoreCivic, as a matter of policy and practice, failed to provide the

---

[3] All citations are to the Declaration of Eileen R. Ridley, Dkt. 85, unless noted otherwise.
[4] CoreCivic does not address the numerous documented instances in which ICE detainees in its California facilities were only paid $.75 per day for their work.  [Ex. 45-50, 88.]

putative class members with itemized wage statements showing the categories of information set forth in California Labor Code § 226(a).  [Ex. 44 (RFA Response).]

> ## 2. CoreCivic's Policy Of Compelling ICE Detainees To Clean Above And Beyond The Personal Housekeeping Tasks In The PBNDS.

CoreCivic asserts that it "does not have a policy or practice of requiring detainees to clean the common areas of their housing unit under threat of disciplinary segregation." [Opp. at 3:20-21.]  In support of this claim, CoreCivic advances a distorted reading of the applicable written policies and procedures and overlooks the testimony of Mr. Ellis, whose admissions are binding on CoreCivic.  *Starline Windows Inc. v. Quanex Bldg. Prod. Corp.*, No. 15-CV-1282-L (WVG), 2016 WL 4485564, at *4 (S.D. Cal. July 21, 2016) ("The testimony of a Rule 30(b)(6) designee 'represents the knowledge of the corporation, not of the individual deponents.'").  Neither is persuasive.

CoreCivic concedes that it cannot compel ICE detainees to work aside from the personal housekeeping tasks specified in the ICE PBNDS.  [Opp. at 2:5-8.]  In spite of this, CoreCivic's own written policies and procedures require ICE detainees to "maintain[] the common living area in a clean and sanitary manner."  [Ex. 12-20 (Sanitation Policies).]  CoreCivic argues that this obligation actually means that ICE detainees "must clean up *after themselves* in the housing unit common areas."  [Opp. at 4:4-5.]  This is not what the policy states, nor is it consistent with the fact that ICE detainees are responsible for tasks that require—by their nature—cleaning up after others, including removing trash from the common areas, sweeping and mopping floors, and cleaning toilet bowls, sinks, showers, and furniture.  [Ex. 12-20 (Sanitation Policies).]

CoreCivic illogically claims that "[d]etainee/inmate workers," and not ICE detainees, are assigned the task of cleaning up the common living areas.  [Opp. at 5:1-3.] If an ICE detainee is performing work, they are necessarily a "detainee worker." CoreCivic urges the Court to read the phrase "[d]etainee/inmate workers" to mean detainees "who volunteer to participate in the VWP as porters and are paid for their participation."  [*Id*. at 5:10-12.]  Again, this is not what CoreCivic's policy states, nor is it

consistent with the policy's express mandate that ICE detainees "*will* be assigned to each area on a regular basis to perform the daily cleaning routine of the common area" and "*will*… provide seven (7) day per week coverage to maintain sanitation of the facility" without any reference to cleaning tasks being completed on a "voluntary" basis.  [Ex. 12-20 (Sanitation Policies) (emphasis added).]  This is confirmed by CoreCivic's policy and practice of requiring ICE detainees to sign attestations that they "may not be *compelled* to work *other than* to perform housekeeping tasks in [their] own cell *and the community living area*."  [Ex. 11 (Detainee File) at CCOG43019 (emphasis added).[5]]

### 3.  CoreCivic's Policy Of Threatening Discipline To Obtain Work.

CoreCivic does not dispute that ICE detainees may be disciplined with punishments as severe as disciplinary segregation[6] for "refusal to obey an order," conduct that CoreCivic deems "disruptive" to the orderly operation of its facilities, or "refusal to clean assigned living area."  [Opp. at 5:15-16.]  Rather, CoreCivic claims that it "does not threaten to or actually discipline detainees for failure or refusal to clean.  [*Id*. at 5:9-10.]

CoreCivic's assertion that its disciplinary policies are not used to "force detainees to work outside their assigned living areas" is directly contradicted by the testimony of Mr. Ellis, who confirmed that "any of the types of discipline is possible" when ICE detainees perform work at CoreCivic's facilities, including "restrictive housing."  [Ex. 3 (Ellis Dep. (Vol. 1)) at 157:5-16.]  This threat of discipline is even present when ICE detainees work through the VWP, undermining any claim by CoreCivic that the VWP is ever truly "voluntary."  [*Id*.]  Indeed, Mr. Ellis confirmed that even an infraction as minor as "not timely reporting for a shift" is subject to discipline.  [*Id*. at 157:17-23.]  Consistent with Mr. Ellis' testimony, CoreCivic's own Post Orders states that "[i]f an

---

[5] *See also* Owino Decl. at ¶¶ 18-21; Gomez Decl. at ¶¶ 15-17; Nunez Decl. at ¶ 6; Ortiz Decl. at ¶¶ 3, 5; Santibanez Decl. at ¶ 8, Jones Decl. at ¶ 10.

[6] The Opposition Brief focuses on disciplinary segregation.  As explained below, CoreCivic also violated the CA TVPA and the Federal TVPA by coercing ICE detainees to work under threat of discipline, including the threat of disciplinary segregation, as well as threats that would cause a reasonable person under similar circumstances to perform labor or provide services.  *See* Cal. Penal Code § 236.1(h)(4); 18 U.S.C. § 1589(c)(2).

inmate/resident does not report to work, call the unit **to locate and summon** the inmate/resident worker" and expressly notes that "**[d]isciplinary action** may be taken for absences and tardiness." [Ex. 27-29 (Post Orders).] CoreCivic conveyed the threat of discipline to ICE detainees at intake and through its admissions handbook, and they were constantly reminded of the risks of disobeying an order through CoreCivic's enforcement of its policy. [Ortiz Decl. at ¶ 4; Nunez Decl. at ¶ 4; Owino Decl. at ¶¶ 23-24; Gomez Decl. at ¶¶ 19-20; Santibanez Decl. at ¶¶ 3-4, Jones Decl. at ¶¶ 3-8.]

### 4. CoreCivic's Policy Of Withholding Basic Living Necessities.

CoreCivic agrees that it is required to "ensure[] that each detainee is able to maintain acceptable personal hygiene practices through the provision of adequate bathing facilities and the issuance and exchange of clean clothing, bedding, linens, towels" and to "replenish" personal hygiene items "as needed." [Opp. at 7:22-23:4; *see also* ICE PBNDS, § 4.5, at 327-28.] CoreCivic also agrees that ICE detainees (1) are prohibited from having any of their own personal property, and (2) may purchase clean clothing and hygiene items from the commissary through their trust account, which can only be funded by working through the VWP or by having someone outside of the facility transfer money into it. [Opp. at 8:4-7, 9:1-6.] If an ICE detainee does not have someone outside of the facility with the ability and means to transfer money into his or her trust account, the VWP is the only way an ICE detainee can fund the trust account. [*Id*.]

CoreCivic argues that it does not have a policy or practice of "deny[ing] detainees clothing and basic living necessities in order to coerce them into participating in the VWP." [Opp. at 7:21-22.] However, the Opposition Brief itself directly contradicts this assertion. CoreCivic cites to numerous examples in which ICE detainees purchased basic living necessities that CoreCivic was required to provide ICE detainees when needed and at no cost under the PBNDS, including shampoo, soap, toothpaste, lotion and clean clothing. [*Id*. at 9:7-10:6.] From these citations, CoreCivic bizarrely concludes that the purchase of shampoo, soap, toothpaste, lotion and clean clothing is inconsistent with "the spending habits of detainees who were coerced into participating in the VWP in order to

purchase 'basic living necessities.'" [Opp. at 10:4-6.] This argument is baseless, as the examples cited by CoreCivic evidence ICE detainees using VWP pay in order to purchase basic living necessities. [*Id*. at 9:7-10:6.] If ICE detainees were provided with sufficient clothing and hygiene items, they would not need to spend the nominal amount they are paid through the VWP to purchase these items.[7]

In short, there was nothing "voluntary" about an ICE detainee's participation in the VWP where the VWP represented the sole means of earning money to purchase basic living necessities that could only be obtained through the commissary. CoreCivic's claim that it "does not profit from commissary sales" is contradicted by CoreCivic's own written policy that states that a 30 percent margin is used in order "to maintain commissary profits." [Ex. 3 (Ellis Dep. (Vol. 1)) at 40:19-41:14; Ex. 4 (Ellis Dep. (Vol. 2)) at 373:7-10; Ex. 43 (Commissary Checking Account Policy) at CCOG2503.]

## C. The CA And National Basic Necessities Classes Advance The Same Theory Of Liability Alleged In The First Amended Complaint.

CoreCivic's contention that the CA and National Basic Necessities Classes are "not certifiable" because they "involve an *entirely different* theory of liability" than those alleged in Plaintiffs' operative pleading is without merit. [Opp. at 14:1-2.] The Court may consider "a new class definition that is *narrower* than the class definition originally proposed" so long as it "does not involve a new claim for relief." *Bee, Denning, Inc. v. Capital All. Grp*., 310 F.R.D. 614, 621 (S.D. Cal. 2015). Here, the CA and National Basic Necessities Classes assert the same theories of liability that Plaintiffs alleged in the FAC—namely, violations of the CA TVPA, Federal TVPA, and the UCL, as well as unjust enrichment and negligence. [Dkt. 67.] The Basic Necessities Classes do not add "a new claim for relief" to the case. Further, the Basic Necessities Classes are also

---

[7] Indeed, former ICE detainees confirm that they needed to join the VWP in order to purchase basic living necessities. [Owino Decl. at ¶¶ 25-29; Gomez Decl. at ¶¶ 21-25; Nunez Decl. at ¶¶ 6-9; Ortiz Decl. at ¶¶ 6-9; Santibanez Decl. at ¶¶ 9-10, Jones Decl. at ¶¶ 11-14.] CoreCivic's own policies show that it fails to provide ICE detainees with the minimum standard issue mandated by the PBNDS. [*See, e.g.,* Ex. 25 (Eloy Handbook) at CCOG-21168.]

defined more narrowly than the Nationwide and California Forced Labor Classes alleged in the FAC, which refer to "[a]ll civil immigration detainees who performed Forced Labor" generally, without any limiting principle.  [*Id*. at 8:18-28.]  In contrast, the Basic Necessities Classes tether the definition of "Forced Labor" to ICE detainees that worked through CoreCivic's VWP and purchased basic living necessities at the commissary.  [Dkt. 84 at 1:26-2:3, 2:11-16.]  As a result, there is no merit to the argument that the Basic Necessities Classes present "an entirely different theory of liability."

### D.   Plaintiffs Satisfy The Requirements For Class Certification.

#### 1.   <u>The Classes Are Not Over-Inclusive, Overbroad, Or Vague.</u>

The Opposition Brief advances a disjointed sequence of arguments that supposedly bear on the question of "ascertainability."  None of them have merit.  Moreover, the Ninth Circuit has expressly rejected imposing an "ascertainability" requirement for class certification.  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 fn. 4 (9th Cir. 2017) ("ConAgra cites no other precedent to support the notion that our court has adopted an "ascertainability" requirement.  This is not surprising because we have not.").

##### a.   The Proposed Classes Are Not Over-Inclusive.

CoreCivic argues—without reference to any supporting evidence—that the CA Labor Law and Basic Necessities Classes are over-inclusive "because they include putative class members who have no claim."  [Opp. at 14:26-28.]  CoreCivic does not challenge the Forced Labor Classes on this basis.  [*Id*.]

As to the CA Labor Law Class, CoreCivic claims that the class definition "includes detainees who never worked enough daily or weekly hours to entitle them to a rest period, meal period, or overtime wages."  [*Id*. at 15:3-4.]  Notably, however, CoreCivic does not dispute that CoreCivic's failure to pay minimum wage, failure to provide wage statements, and imposition of unlawful terms and conditions of employment directly impact every single member of the CA Labor Law Class.  As to the meal and rest period claims, CoreCivic fails to provide any evidence documenting that meal and rest periods were ever provided to workers.  In contrast, the declarations of Plaintiffs confirm

CoreCivic's practice of failing to provide "duty free" meal and rest breaks.  [Owino Decl. at ¶¶ 6-9, 16; Gomez Decl. at ¶¶ 6-7, 12]; *Augustus v. ABM Security Service, Inc.*, 2 Cal. 5th 257, 269 (2016).  CoreCivic admits that overtime was never paid.  [Opp. at 11:5-6.]

For the Basic Necessities Classes, CoreCivic speculates that the class definitions include ICE detainees who "simply wanted to have more (or different items) on hand." [*Id*. at 15:9-11.]  This supposition, without supporting evidence, is not relevant to whether the proposed class definitions are "ascertainable."  Further, as discussed in Part II(B)(4), *infra*, it is undermined by the common sense reality that ICE detainees would not spend the handful of dollars that they earn each week on items such as soap and toothpaste if they were replenished by CoreCivic as required by the PBNDS.

### b.    The Proposed Classes Are Clear And Unambiguous.

CoreCivic's attempt at injecting subjective inquiries into Plaintiffs' class definitions is similarly misplaced.  CoreCivic argues that the Forced Labor Class and Basic Necessities Class definitions are "vague" because "they turn on subjective criteria." [Opp. at 16:2-5.]  CoreCivic does not challenge the CA Labor Law Class on this basis. [*Id*.]  Contrary to this assertion, the Forced Labor class definitions are not vague because, as a matter of policy and practice, every ICE detainee that worked at a CoreCivic facility did so under threat of discipline.  [*See supra* Part II(B)(2)-(3).]  This was confirmed by CoreCivic's Rule 30(b)(6) representative.  [*Id*.]  The term "basic living necessities" is also not vague, as it unmistakably refers to personal hygiene items, such as soap, grooming supplies, toothpaste, shampoo and lotion, and clean clothing.  [*See, e.g.,* ICE PBNDS, § 4.5, at 327-28.]

### c.    The Proposed Classes Are Well-Tailored.

CoreCivic's attempt to relitigate its statute of limitations defense as to the proposed CA Classes under the guise of an "ascertainability" challenge is similarly misguided. [Opp. at 16:28-18:6.]  As this Court has already recognized, Plaintiffs' class claims for violations of the CA TVPA are actionable from January 1, 2006 to the present.  [Dkt. 38 at 29:18-19.]  CoreCivic mischaracterizes the statute of limitation applicable to the CA

Forced Labor Class.  A claim under the CA TVPA "shall be commenced within seven years of the date on which the trafficking victim was freed from the trafficking situation." Cal. Civ. Code § 52.5(c).  The statute does not limit how far back in time violations of the statute are actionable so long as the action is commenced within seven years from the time that the trafficking victim is freed.  [*Id.*]  Thus, CoreCivic's argument that the "class period cannot reach back before May 31, 2010" is incorrect.

As to the CA Labor Law Class, Plaintiffs' class claims for violations of California wage and hour law are actionable from May 31, 2013 to the present because the UCL's four year statute of limitations applies to Plaintiffs' claims.  *Brandon v. Nat'l R.R. Passenger Corp. Amtrak*, No. CV 12-5796 PSG VBKX, 2013 WL 800265 (C.D. Cal. Mar. 1, 2013), at *3 (C.D. Cal. March 1, 2013) (holding that "[u]nder the UCL, wages are recoverable, and courts favor UCL suits over claims under statutes with shorter statutes of limitations") (citing *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000)).

## 2.    <u>The Proposed Classes Satisfy The Numerosity Requirement.</u>

The numerosity requirement is satisfied for each proposed class.  Where, as here, "the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."  *Allen v. Similasan Corp.*, 306 F.R.D. 635, 644 (S.D. Cal. 2015).  In general, "courts find the numerosity requirement satisfied when a class includes at least 40 members."  *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010).  The CA Labor Law Class has at least 8,346 putative class members.  [Ex. 45-50, 88 (OMS Reports).]  CoreCivic's attempt at manufacturing an issue out of thin air by claiming that the OMS reports cited by Plaintiffs only show "55 detainees who received an account deposit for 'Job Pay'" should be disregarded.  [Opp. at 18:21-19:1.]  As CoreCivic knows, Plaintiffs filed excerpts of the OMS reports because their size renders them nearly impossible to file on the public docket.  [Dkt. 85 (Ridley Decl.) at ¶ 59 ("Excerpts of the spreadsheets are attached hereto as Exhibits 45 through Exhibit 88.  Due to their size, Plaintiffs have excerpted the

documents, but can and will provide the Court with complete spreadsheets in native format upon request."]  Tellingly, CoreCivic does not attempt to dispute Plaintiffs' calculation that the California Labor Law Class contains at least 8,346 members.

Nor does CoreCivic meaningfully dispute that general knowledge and common sense establish that the remaining four classes are large enough to satisfy the numerosity requirement of Rule 23(a), even if their exact sizes are not currently known.  *Allen*, 306 F.R.D. at 644.  For the Basic Necessities Classes, CoreCivic's commissary purchase reports will show which detainees used their VWP wages to purchase basic living necessities, which Plaintiffs reasonably believe will total several thousands of the 17,319 ICE detainees that worked through CoreCivic's VWP in California between January 1, 2006 and the present and tens of thousands of the approximately 123,815 ICE detainees that worked in CoreCivic's California and non-California facilities between December 23, 2008 and the present.  [Ex. 6 (Figueroa Dep.) at 18:14-19:6; Ex. 4 (Ellis Dep. (Vol. 2)) at 411:6-412:6; Ridley Decl. ¶ 59.]  The Forced Labor Classes arise out of CoreCivic's policy and practice of requiring "*all*" ICE detainees to perform cleaning work outside of the ICE detainees' immediate living areas under threat of discipline. [*See supra* Part II(B)(2)-(3).]  Therefore, each of the proposed Forced Labor Classes will necessarily include several thousands of former and current ICE detainees.  [*See id*.]

### 3.   Commonality And Predominance Are Satisfied.

The Opposition Brief argues that the commonality and predominance requirements are not satisfied because CoreCivic does not have the policies or practices alleged by Plaintiffs.  However, as set forth in Part II(B), *supra*, the common policies and practices alleged by Plaintiffs are either confirmed by CoreCivic in the Opposition Brief or established by CoreCivic's own written policies and Mr. Ellis' testimony.

CoreCivic fails to address, and effectively concedes, that (1) its facilities use template policies and procedures that are created by CoreCivic's Facility Support Center, which functions as CoreCivic's "corporate office," and (2) the use of the template policies and procedures are mandatory such that the facilities do not have the ability to

"opt out" of them.  [Ex. 3 (Ellis Dep. (Vol. 1) at 50:15-51:25, 54:24-55:4, 59:1-5, 68:1-9; Ex. 6 (Figueroa Dep.) at 59:8-12.]  CoreCivic's argument also overlooks Mr. Ellis' testimony that the VWP, sanitation, and discipline policies on which Plaintiffs rely are "standard policies" that are applicable across CoreCivic's facilities.  [Ex. 3 (Ellis Dep. (Vol. 1)) at 75:9-25; 77:13-17.]

At best, CoreCivic has created a dispute of material fact concerning the existence of the policies and practices that are the subject of Plaintiffs' class claims.  But merely denying the existence of a policy or practice in the face of overwhelming evidence to the contrary is not sufficient to defeat class certification.  *Howell v. Advantage RN, LLC*, No. 17-CV-0883 JLS (BLM), 2018 WL 3437123, at *2 (S.D. Cal. July 17, 2018) (holding that "a weighing of competing evidence is inappropriate at this stage of the litigation") (citing  *Staton v. Boeing Co*., 327 F.3d 938, 954 (9th Cir. 2003)); *Tourgeman v. Collins Fin. Servs., Inc*., No. 08-CV-1392 JLS (NLS), 2011 WL 5025152, at *3 (S.D. Cal. Oct. 21, 2011) (holding that "the court may not go so far as to judge the validity of the moving party's claims" and noting that the court has "broad discretion" to certify the class) (citing *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1186 (9th Cir. 2001)).

Moreover, CoreCivic's denial of the existence of the policies and practices identified by Plaintiffs create "a viable common question" of whether such a policy existed, "and the truth or falsity of that claim will drive the resolution of this case."  *See Ruiz v. XPO Last Mile, Inc.*, No. 5CV2125 JLS (KSC), 2016 WL 4515859, at *7 (S.D. Cal. Feb. 1, 2016).  Because Plaintiffs' claims all hinge on the existence of common policies and practices, they necessarily depend on common contentions that are capable of classwide resolution.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (providing that Rule 23(a)(2) is satisfied where the "class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

CoreCivic's assertion that "individual questions predominate" because "a common

question cannot simply be whether all putative class members have 'suffered a violation of the same provision of law'" misses the mark entirely.  [Opp. at 29:20-23.]  Here, Plaintiffs and the putative class members were subjected to the same generally applicable policies and practices while involuntarily confined at CoreCivic as ICE detainees.  Their claims depend on whether the challenged policies and practices are unlawful and will "prevail or fail in unison" based on the Court's adjudication of that issue.  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013).  Plaintiffs' claims under the CA and Federal TVPA do not turn on "individualized inquiries."  [Opp. at 29:26.]  Where liability depends on a threat of disciplinary action, the statutes both call for the application of an objective standard to determine whether a "reasonable person"—in this case, ICE detainees involuntarily confined in a prison-like facility—would perform the work mandated by CoreCivic.  Cal. Penal Code § 236.1(h)(4); 18 U.S.C. § 1589(c)(2).

### 4.   Plaintiffs Satisfy The Typicality And Adequacy Requirements.

Following a nearly five-page long summary of Plaintiffs' declarations, which document their firsthand experience of CoreCivic's rampant violations of California labor law, the UCL, and the CA and Federal TVPA, CoreCivic disingenuously concludes that Plaintiffs are not typical or adequate class representatives.  [Opp. at 24:7-9.]  CoreCivic does not dispute the adequacy of Plaintiffs' proposed class counsel.

As to the CA Labor Law Class, CoreCivic appears to predicate its argument on the assertion that Plaintiffs did not specifically define the dates and times on which the labor law violations occurred.  This is not a necessary hurdle for Mr. Owino and Mr. Gomez to clear.  The fact that Plaintiffs were incarcerated at a prison-like facility after having all of their property and personal belongings confiscated would necessarily make it difficult for Mr. Owino and Mr. Gomez to maintain records regarding the specifics of their confinement.  Tellingly, CoreCivic failed to submit any documents or records establishing that Plaintiffs did not work during the applicable limitations period in spite of the fact that CoreCivic employed Mr. Owino and Mr. Gomez and were better positioned (and required by California law) to maintain such employment records.  Cal.

Labor Code § 226.  Nevertheless, Plaintiffs' declarations establish their experiences at CoreCivic *throughout* their periods of detention.[8]  CoreCivic's remaining statute of limitations challenges are similarly misplaced because "[c]ourts have been nearly unanimous in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiff, does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present." *Dibb v. Allianceone Receivables Mgmt., Inc*., No. 14-5835 RJB, 2015 WL 8970778, at *8 (W.D. Wash. Dec. 16, 2015).  Even if CoreCivic were correct, this would not defeat class certification, Plaintiffs' counsel have been retained by another former ICE detainee who was a VWP worker in California through September 2018 that could be added as a class representative and fully resolve any issues that the Court finds.  *Nat'l Fed'n of Blind v. Target Corp*., 582 F.Supp.2d 1185, 1201 (N.D. Cal. 2007) ("As long as the proposed class satisfies the requirements of Rule 23, the court may certify the class conditioned upon the substitution of another named plaintiff.").

With respect to the Basic Necessities Classes, CoreCivic argues that Plaintiffs "received outside monetary support and did not need to work to purchase basic hygiene supplies."  [Opp. at 23:26-27.]  Whether Plaintiffs received contributions from outside sources is immaterial because it does not change the fact that Plaintiffs worked through the VWP for the purpose of purchasing basic living supplies resulting from CoreCivic's policy and practice of withholding adequate clothing and personal hygiene items from ICE detainees.  [*See supra* Part II(B)(4).]  While other ICE detainees may not have received contributions from outside sources, factual differences among class members do not defeat typicality in a case dealing with a uniform policy or practice, provided that "the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong v. Davis*,

---

[8] CoreCivic's own records also undermine its argument.  [Supp. Ridley Decl. at Ex. 1 (2015 Owino Work Agreements); Ex. 2 (Gomez Account Summary).]

275 F.3d 849, 869 (9th Cir. 2001).  Plaintiffs more than satisfy this standard.

Finally, for the Forced Labor Classes, CoreCivic contends that Plaintiffs "do[] not even allege that [they] were placed in restrictive housing or otherwise disciplined for refusing to work."  [Opp. at 23:24-26.]  This is not the standard for liability under the CA or Federal TVPA, which both prohibit "threats" of unlawful injury, force, physical restraint, or serious harm to obtain work or services.  Cal. Penal Code § 236.1(h)(3); 18 U.S.C. § 1589(a).  Plaintiffs and the putative class members all worked as a direct result of such threats.  [*See* Part II(B)(3).]  Plaintiffs can adequately represent the interests of a national class because they were subjected to CoreCivic's enterprise-wide policies and practices and their claims are typical of the class.  *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 573, 576 (C.D. Cal. 2007) (certifying Texas resident for national class where he was subject to the same "common course of conduct" and "policy" of defendant).

In short, CoreCivic does not (and cannot) dispute that Plaintiffs (1) were involuntarily confined at one or more of CoreCivic's facilities as ICE detainees, (2) worked through the VWP in California for $1 per day, (3) cleaned common living areas under threat of discipline for no pay at all, (4) provided evidence that CoreCivic threatened ICE detainees with disciplinary action if they did not clean common living areas, (5) provided evidence that they witnessed other ICE detainees being punished for failure to clean common living areas, (6) provided evidence that they followed orders to clean or perform work so as to avoid punishment as a result of witnessing CoreCivic punishing other ICE detainees for refusing to comply with orders, and (7) provided evidence that they were provided with insufficient clean clothing and personal hygiene supplies such that they spent their VWP pay at the commissary to obtain basic living necessities.  [Opp. at 20:19-24:18.]  CoreCivic's attempt at creating a semantic dispute regarding Plaintiffs' declarations is without merit.

## 5.   <u>Class Treatment Is The Superior Method Of Adjudication.</u>

CoreCivic does not dispute that class actions are superior under Rule 23(b)(3) when they allow for the "vindication of the rights of groups of people who individually

would be without effective strength to bring their opponents into court at all." *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 915 (10th Cir. 2018) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).  Indeed, in drafting Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"  *Amchem Prod., Inc. v. Windsor*, 521 U.S. at 617.  Nor does CoreCivic dispute that many of the putative class members have a limited understanding of the law, limited English skills, limited resources to pursue recovery, and a meaningful fear of retaliation, which all "weigh in favor of class certification."  *Menocal*, 882 F.3d at 915.

CoreCivic's arguments regarding other pending litigation against CoreCivic—in addition to demonstrating the scope of CoreCivic's enterprise-wide policies and practices—confirms that the class members are geographically dispersed.  *In re Monster Worldwide, Inc. Securities Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y 2008).  CoreCivic's claim that the pending litigations in California, Georgia, and Texas show that the putative class members have an interest in controlling their own separate actions is undermined by the fact that all the actions cited by CoreCivic are also class actions.  This lawsuit was the first filed against CoreCivic and is the farthest along as it is the only case to have reached the class certification stage.  This Court has already ruled that *Carlos Gonzalez v. CoreCivic*, 17-CV-2573 JLS (NLS) (S.D. Cal. 2017) is subordinate to this case, and it is currently stayed.  *Barrientos v. CoreCivic* and *Martha Gonazalez v CoreCivic* are both stayed pending CoreCivic's appeals to the 11th Circuit and 5th Circuit, respectively.

While CoreCivic complains that "individualized damages calculations can affect the efficacy and judicial economy of trial management," CoreCivic acknowledges that "damage calculations cannot defeat class certification."  [Opp. at 35:2-5.]  This is especially true where, as here, liability depends on the common question of whether CoreCivic's challenged policies and practices were lawful.

## III.    **CONCLUSION**

Plaintiffs respectfully request that the Court grant the Motion in its entirety.

DATED:  August 1, 2019

**FOLEY & LARDNER LLP**
J. Mark Waxman
Eileen R. Ridley
Geoffrey M. Raux
Nicholas J. Fox
Alan R. Ouellette


/s/ Eileen R. Ridley
Eileen R. Ridley
Attorneys for Plaintiffs SYLVESTER OWINO,
JONATHAN GOMEZ, and the Proposed
Class(es)

**LAW OFFICE OF ROBERT L. TEEL**
Robert L. Teel
    lawoffice@rlteel.com
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
Telephone:  (866) 833-5529
Facsimile:  (855) 609-6911

Attorneys for Plaintiffs SYLVESTER OWINO,
JONATHAN GOMEZ, and the Proposed
Class(es)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 1, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

*/s/* Eileen R. Ridley
Eileen R. Ridley