J. MARK WAXMAN (SBN 58579)
mwaxman@foley.com
NICHOLAS J. FOX (SBN 279577)
nfox@foley.com
**FOLEY & LARDNER LLP**
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130
T: 858.847.6700 // F: 858.792.6773

EILEEN R. RIDLEY (SBN 151735)
eridley@foley.com
ALAN R. OUELLETTE (SBN 272745)
aouellette@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
T: 415.434.4484 // F: 415.434.4507

ROBERT L. TEEL (SBN 127081)
lawoffice@rlteel.com
**LAW OFFICE OF ROBERT L. TEEL**
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
T: 866. 833.5529 // F:855.609.6911

GEOFFREY M. RAUX (*pro hac vice*)
graux@foley.com
**FOLEY & LARDNER LLP**
111 Huntington Ave.
Boston, MA 02199-7610
T: 617.342.4000 // F: 617.342.4001

Attorneys for Plaintiffs SLYVESTER OWINO,
JONATHAN GOMEZ, and the Proposed Class(es)

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SLYVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>CORECIVIC, INC.,<br><br>    Defendant.<br><hr>CORECIVIC, INC.,<br><br>    Counter-Claimant,<br><br>vs.<br><br>SLYVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>    Counter-Defendants. | Case No. 3:17-CV-01112-JLS-NLS<br><br>**CLASS ACTION**<br><br>**DECLARATION OF DIEGO SANTIBANEZ**<br><br><br><br>Judge: Hon. Janis L. Sammartino<br>Magistrate: Hon. Nita L. Stormes |

Case No. 17-CV-01112-JLS-NLS

I, Diego Santibanez, declare as follows:

1. I am over eighteen years of age. I have personal knowledge of the contents of this declaration. If called upon to do so, I could and would testify under oath about the contents of this declaration.

2. I was detained at the Otay Mesa Detention Center from March 2, 2015 to November 31, 2015. The Otay Mesa Detention Center is operated by CoreCivic, Inc.

3. During my detention at the Otay Mesa Detention Center, I was required to abide by all orders and instructions issued by CoreCivic guards and employees, including performing cleaning tasks in common and private living areas without pay. If I refused to obey the orders and instructions issued to me by CoreCivic guards and employees, I would be subject to punishment, including being placed in solitary confinement/segregation.

4. I understood that I could be punished for refusing to obey any orders and instructions given to me by CoreCivic guards and employees based on my knowledge of the written rules and policies issued by CoreCivic, my personal observation of other detainees who were punished for refusing to follow orders and instructions, from talking with other detainees, who informed me that any failure to obey the orders and instructions issued by CoreCivic guards and employees would result in punishment such as segregation, and from my own personal experience of being punished while I was detained. On several occasions during my detention, the entire unit – which is where approximately 320 detainees were housed – was placed on lockdown, and we were given "no daylight" (*i.e.*, no time out of our cells) because a single detainee refused to comply with an order to clean areas in his cell or in the unit.

5. During almost the entire period of my detention, I worked for CoreCivic as part of what was called the "Voluntary Work Program," as a cleaning porter, primarily cleaning inside the housing units and in the cafeteria. My supervisor was an employee of CoreCivic and CoreCivic's employees at the detention center determined my pay, hours, work schedule, and training. My job performance was reviewed by my supervisor. If I

-1-   Case No. 17-CV-01112-JLS-NLS

performed poorly, I could be terminated. Typically, I worked two to three hours per day for six days during each week. There were no scheduled rest breaks or other breaks during my shifts. I was only paid $1 for each day I worked, regardless of how many hours I worked during that day.

6. I was not given any documentation as part of my job in the Voluntary Work Program and was not provided any information regarding gross wages earned, total hours worked, applicable deductions, net wages earned, the pay period, the applicable hourly rates in effect, or the corresponding number of hours worked during the pay period.

7. In addition to my work as a cleaning porter, I performed several painting "details," which were special assignments that involved work painting part of the facility. I typically worked more than eight hours in a single day while on details. I was paid $2 per day for my work on the painting details.

8. In addition to my work on painting details, and as part of the Voluntary Work Program as a cleaning porter, I had to perform cleaning work in the private and communal areas of my housing unit without any pay, or I would have been punished. I had to clean floors, make my bed, clean the toilet and sink, wipe down walls and clean furniture and air vents. Often toilets would clog, and I was forced on at least three occasions to reach my arm down pipes outside of my cell to unclog the blockage. On those occasions, CoreCivic officers would have a plumber come to watch the work, but the plumber did not actually do the work. I was required to unclog the pipes myself. In addition, whenever there was a visit of the detention center by an official person, all detainees were required to do a "deep clean," scrubbing walls and floors throughout the detention center for no pay. This happened two or three times during the time of my detention.

9. I joined the Voluntary Work Program because it was the only way that I could earn money during my time at the Otay Mesa Detention Center. I did not want to

work, and several of my fellow detainees who had money in their accounts chose not to work. I did not have sufficient money in my account, so I had to join the Voluntary Work Program. Otherwise, I would not have been able to purchase food, clothing, and basic hygiene items from the commissary, or purchase phone cards to call my family. During my time at the Otay Mesa Detention Center, CoreCivic provided me with only two small "hotel size" bars of soap per week. These would only last two or three days. It would usually take CoreCivic four days to provide me with new soap, so I had to buy my own from the commissary. Similarly, each week I was given small tubes of toothpaste by CoreCivic, approximately two inches long. This would be used up quickly and was not replaced by CoreCivic in a timely manner, so I also had to use money I made through the Voluntary Work Program to purchase enough toothpaste to brush my teeth. Purchasing additional hygiene items like soap and toothpaste from the commissary was the only way to avoid not having these items when I ran out during the week.

10. I was permitted to make phone calls to family and friends during my time at the Otay Mesa Detention Center. These calls cost me money. Purchasing phone cards at the commissary was the only way I was able to call my family and friends.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23 day of May, 2019, in Tijuana, Mexico.

Diego Santibanez