J. MARK WAXMAN (SBN 58579)
mwaxman@foley.com
NICHOLAS J. FOX (SBN 279577)
nfox@foley.com
**FOLEY & LARDNER LLP**
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
T: 858.847.6700 // F: 858.792.6773

EILEEN R. RIDLEY (SBN 151735)
eridley@foley.com
ALAN R. OUELLETTE (SBN 272745)
aouellette@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
T: 415.434.4484 // F: 415.434.4507

ROBERT L. TEEL (SBN 127081)
lawoffice@rlteel.com
**LAW OFFICE OF ROBERT L. TEEL**
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
T: 866. 833.5529 // F:855.609.6911

GEOFFREY M. RAUX (*pro hac vice*)
graux@foley.com
**FOLEY & LARDNER LLP**
111 Huntington Ave.
Boston, MA 02199-7610
T: 617.342.4000 // F: 617.342.4001

Attorneys for Plaintiffs SLYVESTER OWINO,
JONATHAN GOMEZ, and the Proposed Class(es)

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SLYVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>CORECIVIC, INC.,<br><br>　　　　　　　　Defendant.<br><br>CORECIVIC, INC.,<br><br>　　　　　　　　Counter-Claimant,<br><br>vs.<br><br>SLYVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　Counter-Defendants. | Case No. 3:17-CV-01112-JLS-NLS<br><br>**CLASS ACTION**<br><br>**DECLARATION OF SUE JONES**<br><br><br>Judge: Hon. Janis L. Sammartino<br>Magistrate: Hon. Nita L. Stormes |

Case No. 17-CV-01112-JLS-NLS

I, Sue Jones, declare as follows:

1. I am over eighteen years of age. I have personal knowledge of the contents of this declaration. If called upon to do so, I could and would testify under oath about the contents of this declaration.

2. I was detained at the Central Arizona Florence Correctional Complex from February 10, 2019 to June 24, 2019. The Central Arizona Florence Correctional Complex is operated by CoreCivic, Inc. I was in the custody of the City of Mesa, Arizona, but I was detained alongside individuals in the custody of Immigration and Customs Enforcement ("ICE"). The condition, treatment, and standards applied to me during my detention were identical to those applied to detainees in the custody of ICE.

3. During my detention at the Central Arizona Florence Correctional Complex, I and all detainees with whom I resided, including detainees in the custody of ICE, were required to abide by all orders and instructions issued by CoreCivic guards and employees, including to perform cleaning tasks in common and private living areas without pay. If any of us refused to obey the orders and instructions issued by CoreCivic guards and employees, we would be subject to punishment, including being placed in solitary confinement/isolation.

4. I understood that I and my fellow detainees could be punished for refusing to obey any orders and instructions given by CoreCivic guards and employees based on my knowledge of the written rules and policies issued by CoreCivic, my personal observation of other detainees who were punished for refusing to follow orders and instructions, from talking with other detainees who informed me that any failure to obey the orders and instructions issued by CoreCivic guards and employees would result in punishment such as isolation, and from my own personal experience of being punished while I was detained. I witnessed several detainees, including ICE detainees, who were punished for refusing to comply with orders to perform cleaning work or for poor performance doing such work.

5. I witnessed Ms. Garcia, one of the CoreCivic counselors, and Officer Peace, one of the CoreCivic guards, both punish detainees for refusing to work on multiple occasions. For example, regularly throughout the time of my detention (approximately 2-3 times per week), Officer Peace and Ms. Garcia would critique the work of detainees forced to clean shower stalls and would punish them for their performance by locking them in their cells. In addition, there were frequent occasions throughout the period of my detention where a detainee would refuse to comply with an order to perform work or maintenance. Officer Peace would respond in these circumstances by threatening to "spray" detainees (with pepper spray), although I never witnessed her actually following through with that threat. She did, however, regularly place the entire pod on lockdown if any detainee refused to obey her orders to work.

6. On April 23, 2019, I was attacked in FD-pod by an ICE detainee for refusing to do work that I was instructing her to do. Because of my various trade skills, including experience with plumbing and painting, I was placed in a supervisory role by CoreCivic and required to supervise teams of detainee workers. This put me in an awkward and difficult position since I was also a detainee. It is not a position I wanted. On April 23, 2019, I instructed a detainee to perform work cleaning the tables and pod in the kitchen area. She refused and then, when I was not looking, attacked me, causing serious injury to my thumb. She was punished by CoreCivic and placed in isolation.

7. On another occasion, which took place at some point during the period of May 13, 2019 – May 17, 2019, a CoreCivic guard was ordering two detainees in a male pod to come out of their cells and perform cleaning work. The detainees refused and the guard began screaming at them. Eventually, the guard put the entire housing pod on lockdown to punish everyone for the refusal of the two detainees to work. I believe this incident was recorded by video. Similar events, with male detainees refusing to obey orders to work, also resulted in entire housing pods being placed on lockdown. In general, it was commonplace for CoreCivic to punish all detainees in a pod, including ICE detainees, for the refusal of any individual detainee to perform work when ordered.

8. Another example is cleaning of the recreation yard. Each day all detainees, including ICE detainees, were forced to clean the recreation yard, walking through the entire yard picking up trash and other items. If any detainee refused to participate, the entire pod would be sent back inside and would lose the opportunity to have rec time for that day. Detainees were not paid for this work.

9. During the period of my detention, I worked for CoreCivic as part of what was called the "Voluntary Work Program," primarily cleaning showers, tables, and floors in the detention center. My supervisor was an employee of CoreCivic and CoreCivic's employees at the detention center determined my pay, hours, work schedule, and training. My job performance was reviewed by my supervisor. If I performed poorly, I could be terminated. Typically, I would be required to clean three shifts during each day. The "shifts" were from 10:30 a.m. – 12:00 p.m., 3:00 p.m. – 5:00 p.m., and 6:30 p.m. – 8:00 p.m. I was only paid $2 for each day I worked, regardless of how many hours I worked during that day. In general, I would work seven days per week.

10. Separate from my work as part of the Voluntary Work Program, I worked on several "details," performing tasks such as plumbing, painting, and electrical work. I painted the entire FD-pod during the time of my detention, and did substantial work on the plumbing system. Plumbing issues at the Central Arizona Florence Correctional Complex were widespread. Drinking fountains did not function, and toilets routinely clogged and would overflow. I had experience in plumbing and other maintenance tasks, and was soon given more responsibility by CoreCivic guards. I was not paid money for this work, but was given extra trays of food as "compensation." As described above, during my work on these details, and because of my experience, I was often given authority over other detainees, including the authority to hire and terminate detainees from the details.

11. I joined the Voluntary Work Program and agreed to work on details because if I did not I would have been forced to spend a large portion of each day locked in my cell. Any time that work was being done in the housing pods, those detainees who were

not working were generally forced to remain in their cells, with the exception of recreation time from 6:45 a.m. to 7:45 a.m., and during meal times. Joining the Voluntary Work Program was also the only way that I could earn money to purchase food, clothing, and basic hygiene items from the commissary, or purchase phone cards to call my friends and family.

12. During my time at the Central Arizona Florence Correctional Complex, CoreCivic provided me and other detainees with only 1 small bar of soap per week, one small tube of toothpaste, a small bottle of shampoo, and a single roll of toilet paper. These item would only last a few days. CoreCivic would not promptly resupply them, meaning that detainees would have to either go without, steal from other detainees, or purchase new items from the commissary.

13. Clothing was also a problem. Detainees were issued a limited set of clothes and most of them did not fit. The only way to obtain new clothes would be to purchase additional items from the commissary, which I did on several occasions.

14. Detainees could make phone calls to family and friends during my time at the Central Arizona Florence Correctional Complex, but these calls cost money. To make the calls, you had to use phone cards that could only be purchased at the commissary. For me and many other detainees, including many ICE detainees, the only way that we could afford to purchase these phone cards was to work in the Voluntary Work Program.

15. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2 day of July, 2019, in Mesa, Arizona.

_Sue Jones_
Sue Jones