1   STRUCK LOVE BOJANOWSKI & ACEDO, PLC
    Daniel P. Struck, AZ Bar #012377
2   *(admitted pro hac vice)*
    Rachel Love, AZ Bar #019881
3   *(admitted pro hac vice)*
    Nicholas D. Acedo, AZ Bar #021644
4   *(admitted pro hac vice)*
    Ashlee B. Hesman, AZ Bar #028874
5   *(admitted pro hac vice)*
    Jacob B. Lee, AZ Bar #030371
6   *(admitted pro hac vice)*
    3100 West Ray Road, Suite 300
7   Chandler, Arizona 85226
    Tel.: (480) 420-1600
8   Fax: (480) 420-1695
    dstruck@strucklove.com
9   rlove@strucklove.com
    nacedo@strucklove.com
10  ahesman@strucklove.com
    jlee@strucklove.com
11
    LAW OFFICE OF ETHAN H. NELSON
12  Ethan H. Nelson, CA Bar #262448
    4 Park Plaza, Suite 1025
13  Irvine, California 92614
    Tel.: (949) 229-0961
14  Fax: (949) 861-7122
    ethannelsonesq@gmail.com
15
    Attorneys for Defendant/Counter-Claimant
16  CoreCivic, Inc.

17          **UNITED STATES DISTRICT COURT**

18          **SOUTHERN DISTRICT OF CALIFORNIA**

19  Sylvester Owino and Jonathan Gomez,        NO. 3:17-cv-01112-JLS-NLS
    on behalf of themselves, and all others
20  similarly situated,                        **DECLARATION OF JACOB B. LEE**

21              Plaintiffs,                     Date: October 10, 2019
                                                Time: 1:30pm
22  v.                                          Courtroom: 4D
                                                Judge:  Honorable Janis L. Sammartino
23  CoreCivic, Inc., a Maryland
    corporation,
24
                Defendant.
25

26

27

28

Declaration of Jacob B. Lee                                          17cv01112-JLS-NLS

CoreCivic, Inc., a Maryland
corporation,

               Counter-Claimant,

v.

Sylvester Owino and Jonathan Gomez,
on behalf of themselves, and all others
similarly situated,

               Counter-Defendants.

      I, Jacob B. Lee, make the following Declaration:

      1.     I am over the age of 18 years and competent to testify to the matters set forth in this Declaration.

      2.     I am counsel of record for Defendant CoreCivic ("CoreCivic") in the above-referenced matter. I am licensed to practice in Arizona and Nevada, and have been admitted *pro hac vice* in this matter. (Doc. 40.) I make this Declaration in support of CoreCivic's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment.

      3.     CoreCivic intends to raise various factual and legal arguments in opposition to Plaintiffs' Motion, as well as in its own related Cross-Motion. Additional discovery is required, however, to allow CoreCivic to "present facts essential to justify its opposition," *see* Fed. R. Civ. P. 56(d), as well as to support its related arguments that will need to be addressed in CoreCivic's Cross-Motion for Summary Judgment.

      4.     Specifically, CoreCivic intends to conduct discovery regarding the following facts:

      5.     Written discovery and/or depositions of ICE personnel regarding the increased operational and regulatory burdens that would result from a finding that detainees participating in the federally-mandated VWP are CoreCivic employees under California law, including but not limited to the following:

      a.    compliance with tax regulations under federal and state law, such as withholdings, for aliens who are in the country illegally and do not have a Social Security Number, who are not authorized to work, or whose authorization to work has been revoked due to, or in conjunction with, an order of deportation;

      b.    compliance with regulations under the Immigration and Naturalization Act, such as verifying employment authorization for prospective VWP participants, obtaining employment authorization for prospective participants who are not already authorized, and denying participation to, or removing from participation, aliens who are not authorized and are not eligible for employment under the applicable statutes;

      c.    compliance with regulations under the Services Contract Act, such as identifying prevailing wages in the community;

      d.    compliance with regulations under California law, such as the prohibition on informing ICE about the unauthorized status of detainees, and how to allow detainees in a secure detention facility to take legally adequate meal and rest breaks; and

      e.    increased cost of operating the VWP, including payment of salaries and benefits to VWP participants, and further including whether CoreCivic could seek to recover the increased costs from ICE, either through directly billing ICE for the increased costs or through an equitable adjustment of the per-diem contract rates.

6.    Written discovery and/or depositions of ICE personnel regarding ICE's control over the VWP at each facility, including but not limited to the following:

a. the development and purpose of ICE's Performance-Based National Detention Standards ("PBNDS");

b. the purpose and intent of the VWP;

c. how ICE administers the VWP at its SPCs compared to the VWP at CoreCivic's facilities;

d. whether ICE consider VWP participants at its SPCs to be employees;

e. whether ICE pays VWP participants at its SPCs minimum wage, and if not, the wages they actually pay;

f. whether ICE provides meal and rest breaks, pay stubs, and other employment benefits to VWP participants at its SPCs;

g. the number of ICE personnel at each CoreCivic facility;

h. ICE's oversight of operations generally at each CoreCivic facility, including the methods by which it ensures compliance with applicable contracts, statutes, regulations, and standards;

i. whether ICE determines or has any input into the assignments that are offered at each CoreCivic facility;

j. whether ICE determines or has any input into eligibility requirements for VWP participants at each CoreCivic facility;

k. whether ICE must approve or has any input into the assignments given to particular detainees at each CoreCivic facility;

l. whether ICE can compel CoreCivic to remove a detainee from the VWP at each CoreCivic facility;

m. Whether ICE determine or has any input into safety procedures and training for VWP jobs at each CoreCivic facility;

n. Whether ICE determines or has any input into the number of hours VWP participants work in a shift, day, and/or week in each assignment, including whether ICE determines or has any

input into the minimum or maximum number of hours for each at each CoreCivic facility;

o.   whether ICE created or had any input into Policy 19-100 at each facility, as well as the Detainee Voluntary Work Program Agreement used at each CoreCivic facility, including approval of CoreCivic-created documents;

p.   whether ICE must approve, or has any input into or control over, the rates paid to VWP participants at each CoreCivic facility, including setting limits on the amount that may be paid each shift, day, or week;

q.   whether ICE must approve, or has any input into or control over, any increases of the rates paid to VWP participants at each CoreCivic facility;

r.   whether ICE must approve, or has any input into or control over, any bonuses or incentives provided to ICE detainees in certain assignments at each CoreCivic facility;

s.   whether ICE evaluates the performance of detainees participating in the VWP at each CoreCivic facility;

t.   whether ICE supervises any VWP shifts at each CoreCivic facility; and

u.   whether ICE provides any other oversight of the VWP at each CoreCivic facility.

7.   Written discovery and/or depositions of personnel from other federal, state, and local entities that operate similar detainee work programs regarding their implementation of those programs, including but not limited to the following:

a.   whether they consider program participants to be employees;

b.   whether they pay program participants minimum wage, and if not, the wages they actually pay; and

         c.     whether they provide meal and rest breaks, pay stubs, and other employment benefits to program participants.

8.    Written discovery and/or depositions of Plaintiffs regarding their participation in the VWP, including but not limited to the following:

     a.     whether they were authorized to work prior to participating in the VWP;

     b.     the shifts and hours they actually worked;

     c.     the reasons they participated in the VWP;

     d.     their expectations as VWP participants; and

     e.     any statements made to them personally about the purpose and implementation of the VWP by CoreCivic employees.

9.    Declarations from CoreCivic personnel regarding the increased operational burdens that would result from a finding that detainees participating in the federally-mandated Voluntary Work Program ("VWP") are CoreCivic employees under California law, including but not limited to the following:

     a.     increased cost of operating the VWP, including payment of salaries and benefits to VWP participants, and further including whether CoreCivic could or would seek to recover the increased costs from ICE, either through directly billing ICE for the increased costs or through an equitable adjustment of the per-diem contract rates;

     b.     adjustments to facility staffing patterns for administrative, management, and security staff, including whether CoreCivic would utilize third-party services to complete the tasks traditionally done by VWP participants; and

     c.     compliance with tax regulations under federal and state law, such as withholdings, for aliens who are in the country illegally and do not have a Social Security Number, who are not

authorized to work, or whose authorization to work has been revoked due to, or in conjunction with, an order of deportation.

10. Declarations from CoreCivic personnel regarding the level of control CoreCivic exerts over ICE detainees in its facilities, as compared to the level of control CoreCivic exerts over convicted prisoners in the same or similar facilities.

11. Declarations from CoreCivic personnel regarding ICE's control over the VWP at each facility, including but not limited to the following:

    a. whether decisions regarding the implementation of the VWP at each facility were based on comparisons to other correctional and detention facilities in California that operate similar programs, whether for federal, state, or local inmates and/or detainees, including but not limited to government-owned and -operated Service Processing Centers ("SPCs"), whether in California or nationwide;

    b. the number of ICE personnel on-site at each facility;

    c. ICE's oversight of facility operations generally, including the methods by which it ensures compliance with applicable contracts, statutes, regulations, and standards;

    d. whether ICE determines or has any input into the assignments that are offered at each facility;

    e. whether ICE determines or has any input into eligibility requirements for VWP participants at each facility;

    f. whether ICE must approve or has any input into the assignments given to particular detainees at each facility;

    g. whether ICE can compel CoreCivic to remove a detainee from the VWP;

    h. Whether ICE determine or has any input into safety procedures and training for VWP jobs;

i.     Whether ICE determines or has any input into the number of hours VWP participants work in a shift, day, and/or week in each assignment, including whether ICE determines or has any input into the minimum or maximum number of hours for each;

j.     whether ICE created or had any input into Policy 19-100 at each facility, as well as the Detainee Voluntary Work Program Agreement used at each facility, including approval of CoreCivic-created documents;

k.     whether ICE must approve, or has any input into or control over, the rates paid to VWP participants at each facility, including setting limits on the amount that may be paid each shift, day, or week;

l.     whether ICE must approve, or has any input into or control over, any increases of the rates paid to VWP participants at each facility;

m.     whether ICE must approve, or has any input into or control over, any bonuses or incentives provided to ICE detainees in certain assignments at each facility;

n.     whether ICE evaluates the performance of detainees participating in the VWP at each facility;

o.     whether ICE supervises any VWP shifts at each facility; and

p.     whether ICE provides any other oversight of the VWP at each facility.

12.     There is no reason to believe these facts do not exist. The difficulty, however, lies in identifying those ICE (and other federal government agency) employees who are the best sources of this information, in addition to the regulatory steps CoreCivic must take under *Touhy v. Ragen*, 340 U.S. 462 (1951), in order to obtain discovery from ICE and other federal government agencies. Such

1    requests typically take up to six months to get a response as to whether the agency

2    will permit the requested discovery.

3         13.    CoreCivic will face similar difficulty in identifying those CoreCivic

4    employees who are the best sources of this information, whether at the corporate or

5    facility level, for the applicable time periods. This decision will necessarily be

6    impacted by the Court's ruling on Plaintiffs' Motion for Class Certification, which

7    will establish which, if any, classes may proceed, and for what time frame.

8    CoreCivic is a large company, with sometimes frequent turnover, especially at the

9    facility level, making the identification of the proper declarants more difficult the

10   further back in time CoreCivic is required to go.

11        14.    The time frame at issue is particularly important with regard to

12   California City Correctional Center ("CaCCC"), which has not housed ICE

13   detainees since late 2013. If the applicable class period for the California labor law

14   classes is determined to be three years prior to the filing of Plaintiffs' Complaint

15   (filed on May 31, 2017), CaCCC would not be included. If, however, the applicable

16   class period is determined to be four years prior to the filing of the Complaint,

17   detainees housed at CaCCC from May 31, 2013 to the date CaCCC stopped

18   housing ICE detainees would be part of the class(es). Requiring CoreCivic to begin

19   gathering the information listed above for CaCCC even though it may ultimately be

20   unnecessary would only waste time and resources in a case that already involves

21   significant time and resources.

22        15.    These facts are necessary to establish—or at least demonstrate triable

23   issues of fact as to—CoreCivic's defenses that it does not "employ" VWP

24   participants, as that term is defined under California labor law; that it is immune

25   from California's labor laws with respect to VWP participants under the doctrines

26   of intergovernmental immunity and sovereign immunity as a federal government

27   contractor; and that California's labor laws are pre-empted by federal immigration

28   detention law.

16.     Without these facts, CoreCivic will be unable to establish that it does not exert sufficient control over VWP participants to be considered their employer, and/or that it exerts too much control over ICE detainees generally to be considered their employer. CoreCivic will similarly be unable to establish that application of California's labor laws to CoreCivic as it pertains to operation of the VWP would discriminate against the federal government by imposing a burden on the federal government's operations or policy objectives that is not imposed on similar facilities housing state and local pretrial detainees, or that it was acting pursuant to the authorization and direction of the federal government and within the scope of the same. Finally, CoreCivic will be unable to establish that application of California's labor laws to the VWP at CoreCivic facilities would burden or interfere with the federal government's immigration enforcement policy.[1]

17.     On August 29, 2019, I emailed Plaintiffs' counsel and asked them whether they would stipulate to continue briefing on the Motion for Partial Summary Judgment to allow CoreCivic to conduct the discovery listed above, or whether CoreCivic would need to seek relief under Rule 56(d).

18.     Plaintiffs' counsel stated they would not stipulate to continue briefing, taking the position that CoreCivic should have already conducted the discovery it needed.

/ / /

/ / /

---

[1] Although the Court addressed some of these arguments in its Order on CoreCivic's Motion to Dismiss, those rulings were made in the context of a Rule 12(b)(6) motion, which requires the Court to accept as true the factual allegations of the Complaint for purposes of the motion. CoreCivic is entitled to present facts demonstrating that the facts alleged in the Complaint are not true, and/or are insufficient to establish liability.

1    I declare under penalty of perjury that the foregoing is true and correct to the

2  best of my knowledge.

3    EXECUTED this 5th day of September, 2019 at Chandler, Arizona.

4                                              s/ Jacob B. Lee
5                                              JACOB B. LEE

6  3617682.1

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28