J. MARK WAXMAN (SBN 58579)
mwaxman@foley.com
NICHOLAS J. FOX (SBN 279577)
nfox@foley.com
**FOLEY & LARDNER LLP**
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130
T: 858.847.6700 // F: 858.792.6773

EILEEN R. RIDLEY (SBN 151735)
eridley@foley.com
ALAN R. OUELLETTE (SBN 272745)
aouellette@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
T: 415.434.4484 // F: 415.434.4507

ROBERT L. TEEL (SBN 127081)
lawoffice@rlteel.com
**LAW OFFICE OF ROBERT L. TEEL**
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
T: 866. 833.5529 // F:855.609.6911

GEOFFREY M. RAUX (*pro hac vice*)
graux@foley.com
**FOLEY & LARDNER LLP**
111 Huntington Avenue
Boston, MA 02199-7610
T: 617.342.4000 // F: 617.342.4001

Attorneys for Plaintiffs SYLVESTER OWINO,
JONATHAN GOMEZ, and the Proposed Class(es)

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>CORECIVIC, INC.,<br><br>　　　　　　　Defendant.<br><br>―――――――――――<br>CORECIVIC, INC.,<br><br>　　　　　　　Counter-Claimant,<br><br>vs.<br><br>SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Counter-Defendants. | Case No. 3:17-CV-01112-JLS-NLS<br><br>**CLASS ACTION**<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: December 19, 2019<br>Time: 2:30 p.m.<br>Place: Courtroom 4D<br><br>Judge: Hon. Janis L. Sammartino<br>Magistrate: Hon. Nita L. Stormes<br><br>DEMAND FOR JURY TRIAL |

Case No. 17-CV-01112-JLS-NLS

## I. INTRODUCTION

Pursuant to the Court's Order: (1) Ordering Additional Briefing On Plaintiffs' Motion For Class Certification, And (2) Continuing Hearing (Dkt. 143) (the "Order"), Plaintiffs hereby submit this Supplemental Brief on the issue of Article III standing. As an initial matter, Plaintiffs note that, in addition to their claims for prospective equitable relief, Plaintiffs seek monetary damages, restitution, interest, penalties, punitive damages, and fees and costs. As to these forms of relief, Plaintiffs possess Article III standing because they suffered a particularized and concrete injury-in-fact resulting from CoreCivic's challenged policies and practices, and the proposed classes should be certified as to claims seeking these forms of relief.

Further, Plaintiffs satisfy the requirement of Article III standing for their claims for injunctive and declaratory relief because (1) the statutes under which they brought suit authorize prospective equitable relief without any additional harm beyond the unlawful conduct itself, and (2) the significant likelihood that Plaintiffs will be harmed again in a similar way by CoreCivic's challenged policies and practices. In the event that the Court finds that Plaintiffs lack Article III standing for their claims for injunctive and equitable relief, Plaintiffs' counsel have already been retained by another former detainee at Otay Mesa Detention Center who also possesses Article III standing and is willing to join the case as a Plaintiff and serve as a Class Representative. Thus, Plaintiffs should be allowed to amend their First Amended Complaint ("FAC") to include additional named plaintiffs.

## II. ARGUMENT

### A. Plaintiffs Possess Article III Standing To Pursue Their Claims For Monetary Damages, Restitution, Interest, Penalties, Punitive Damages, And Fees And Costs.

For each of the five proposed classes, Mr. Owino and Mr. Gomez seek monetary damages, restitution, interest, penalties, punitive damages, and fees and costs. [Dkt. 67 (FAC) at 15: 49-51, 19:61-62, 20:70, 21:74-75, 22:79, 23:86, 25:92-93, 30:119, 31:127-32:128.] It is undisputed that both Plaintiffs were injured as a direct result of CoreCivic's

challenged policies and practices while they were detained at a CoreCivic facility. First, Plaintiffs were not paid minimum or overtime wages as mandated by the California Labor Code and IWC Wage Order No. 5-2001 for their work, and both were subject to unlawful conditions of employment by CoreCivic's failure to provide meal and rest periods, or furnish wage statements. Second, CoreCivic obtained both free and undercompensated labor from Plaintiffs through its policy and practice of (1) threatening ICE detainees with discipline if they did not comply with CoreCivic's orders to work for CoreCivic's benefit, and (2) depriving ICE detainees of basic living necessities to coerce them into joining CoreCivic's "Voluntary Work Program" ("VWP") so that they could afford basic living necessities—which are only available through CoreCivic's commissary.

Both Plaintiffs suffered a concrete and particularized injury-in-fact, which is directly traceable to CoreCivic's policies and practices and can be redressed by a favorable ruling. Thus, Plaintiffs possess Article III standing to seek monetary damages, restitution, interest, penalties, punitive damages, and fees and costs for CoreCivic's violations of the California Labor Code, IWC Wage Order No. 5-2001, the Federal TVPA, and the California TVPA. *Wisdom v. Easton Diamond Sports, LLC*, No. CV 18-4078 DSF (SSx), 2019 U.S. Dist. LEXIS 24500, at *4 (C.D. Cal. Feb. 11, 2019) (holding that to have Article III standing, a plaintiff "must demonstrate an (i) injury-in-fact, (ii) that is causally connected to the Defendant, and (iii) likely to be redressed by a favorable decision") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs also possess Article III standing to seek restitution for violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) ("UCL"), as well as unjust enrichment. *See Torrent v. Yakult U.S.A., Inc.*, No. SACV 15-00124-CJC(JCGx), 2016 U.S. Dist. LEXIS 130700, at *7-8 (S.D. Cal. Jan. 5, 2016) (holding that Article III standing exists to pursue "UCL claim and to seek restitution" where plaintiff was injured by defendant's misrepresentations and the injury can be redressed "by a favorable ruling awarding restitution").

Thus, at a minimum, Plaintiffs' Motion for Class Certification should be granted as to class claims seeking monetary damages, restitution, interest, penalties, punitive

damages, and fees and costs. *Tschudy v. J.C. Penney Corp., Inc.*, No. 11-cv-1011 JM (KSC), 2014 U.S. Dist. LEXIS 174382, at *19 (S.D. Cal. Dec. 17, 2014) (certifying class action and appointing plaintiffs as class representatives as to their "claims for damages, penalties, restitution, disgorgement, and fees and costs," even though plaintiffs were deemed to "not have standing to seek injunctive relief").[1]

### B. Plaintiffs Possess Article III Standing To Pursue Their Claims For Prospective Equitable Relief.

The Court correctly notes that Plaintiffs seek injunctive relief for violations of the Federal TVPA, California TVPA, and the UCL, as well as declaratory relief through their claims for violations of the Federal TVPA and California TVPA. [Dkt. 143 at 2:17-20.] The Court is also correct that Mr. Owino's and Mr. Gomez's respective detentions ended prior to May 31, 2017, when they filed this lawsuit. [*Id*. at 2:23-26.] Even though Plaintiffs were released from CoreCivic's custody prior to the filing of their original complaint, Plaintiffs nevertheless have Article III standing to pursue their claims for prospective equitable relief.

The Supreme Court has recognized that "[t]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," and that "in such a case, a plaintiff need not allege any *additional* harm beyond the one identified by

---

[1] In the Order, the Court cites to *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550 (S.D. Cal. 2013) for the proposition that the "['Maraventano Plaintiffs'] who were former employees of the defendant could '[]not establish a sufficient likelihood that they w[ould] again be wronged by [the defendant employer]'s allegedly improper conduct,' meaning that the plaintiffs 'ha[d] no standing to pursue injunctive relief and, therefore, their claims are not typical of the proposed class." *Balasanyan*, 294 F.R.D at 562. Although the Maraventano Plaintiffs lacked standing to seek injunctive relief, the Court nevertheless certified them as class representatives as to other forms of relief sought because the Maraventano Plaintiffs' individual claims were typical of the proposed class. *Id*. at 574. Indeed, the typicality inquiry "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). Even if the Court held that Plaintiffs lacked Article III standing to seek prospective injunctive relief, that finding would not preclude certification of the five proposed classes as to Plaintiffs' other remedies. Further, this matter is distinguishable from *Balasanvan* in that Plaintiffs were involuntarily detained and face the threat of future detainment in the same conditions. In *Balasanvan*, the Maraventano Plaintiffs were merely former commission-based employees who were not paid for pre- and post-closing hours.

Congress." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543-44 (2016) (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998)). As discussed above, Plaintiffs have suffered actual injury as a result of CoreCivic's challenged policies and practices, and the statutes under which they sue authorize and confer standing for prospective equitable relief for victims of human trafficking and unlawful or unfair business practices based on a past harm. *See, e.g.*, Cal. Civ. Code § 52.5(a) ("A victim of human trafficking . . . may bring a civil action for actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief."); Cal. Bus. & Prof. Code § 17203 ("Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . . ."). No "*additional* harm" is required under *Spokeo*.

A narrower construction of Article III standing would be particularly impracticable in the context of human trafficking claims arising from forced labor, as trafficking victims by definition rarely would have the ability, or access to the resources necessary, to pursue a claim for prospective equitable relief while captive or otherwise living under coercion or duress. Because Plaintiffs were actually harmed by conduct proscribed by statute, and those statutes authorize prospective equitable relief, Plaintiffs possess Article III standing to pursue recovery in the form of injunctive and declaratory relief on behalf of themselves and the proposed classes. *See Ingalls v. Spotify USA, Inc.*, 2017 U.S. Dist. LEXIS 110817, *14-18 (N.D. Cal. July 17, 2017) ("If this order were to construe Article III standing as narrowly as defendant advocates, federal courts could never enjoin Section 17200 claims. Such holding 'would eviscerate the intent of the California Legislature.'" (citing *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012)).

///
///
///

C. **Plaintiffs Can Plead Article III Standing To Pursue Their Claims For Prospective Equitable Relief Based On The Threat Of Repeated Injury.**

Plaintiffs' claims for prospective equitable relief are further supported by the threat of repeated injury caused by CoreCivic. The Ninth Circuit recognizes that Article III standing exists where, as here, there is "a sufficient likelihood that [plaintiff] will again be wronged in a similar way." *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1113 (9th Cir. 2017) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). In determining whether an injury is similar, the Ninth Circuit has instructed that courts "must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Id.* (citing *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001)).

Plaintiffs respectfully submit to the Court that they can amend the FAC to add the following allegations, which would clarify Plaintiffs' standing to pursue claims for prospective equitable relief:

- Mr. Owino is currently seeking asylum, and therefore does not have lawful status in the United States. [Supplemental Declaration of Sylvester Owino ("Owino Decl."), ¶ 5.] Consequently, Mr. Owino is subject to detainment by ICE at any time.
- Mr. Gomez currently holds a green card, but that has not precluded him from detainment by ICE. [Supplemental Declaration of Jonathan Gomez ("Gomez Decl."), ¶¶ 5 – 6.]
- The Trump Administration has detained and continues to detain immigrants based on their immigration status, even when they are seeking asylum. *See, e.g.*, Christina Goldbaum, "'I Don't Want to Die': Asylum Seekers Once in Limbo, Face Deportation Under Trump," N.Y. Times (online, April 21, 2019), *available at* https://www.nytimes.com/2019/04/21/nyregion/asylum-seekers-deportation.html (last visited November 15, 2019).
- Consistent with this reality, Mr. Owino has been detained by ICE for an

-5-  Case No. 17-CV-01112-JLS-NLS

extensive period of time, and has been transferred between various detention facilities during that time. [Owino Decl., ¶¶ 3 – 4.] And as noted above, Mr. Gomez was detained by ICE despite having a valid green card. [Gomez Decl., ¶¶ 5 – 6.]

- Mr. Owino has spent nine and a half years in ICE custody. For seven of those nine and a half years, Mr. Owino was detained and transferred among CoreCivic facilities and subject to CoreCivic's challenged policies and practices. [Owino Decl., ¶¶ 3 – 4, 7.]
- Mr. Gomez has spent 15 months in ICE custody, was detained at a CoreCivic facility during all of that time, and was subject to CoreCivic's challenged policies and practices. [Gomez Decl., ¶¶ 3, 8.]
- Mr. Owino and Mr. Gomez have reasonable, deeply held concerns and fears that they will be detained in the future based on their prior periods of detainment and the current policies of the Trump administration. [Owino Decl., ¶¶ 6 – 11; Gomez Decl., ¶¶ 6 – 13.]
- Based on Mr. Owino and Mr. Gomez's prior experience, they also have a reasonable belief that they will be detained at a CoreCivic facility because both Mr. Owino and Mr. Gomez are residents of San Diego County, California, and Otay Mesa Detention Center would almost certainly be their initial point of detainment. [Owino Decl., ¶ 11; Gomez Decl., ¶ 13.]
- CoreCivic's challenged policies and practices continue to this date.

As a result, there is a "sufficient likelihood" that both Plaintiffs will be detained at a CoreCivic facility in the future and subject to CoreCivic's challenged policies and practices. *See Davidson*, 873 F.3d at 1113. The fact that Mr. Owino has already been detained at a CoreCivic facility for an extensive period of time, combined with his current unlawful status in the United States while he awaits adjudication of his asylum petition, "strongly undermines" any "contention that a repeat detention is 'highly unlikely.'" *Creedle v. Miami-Dade Cty.*, 349 F. Supp. 3d 1276, 1288 (S.D. Fla. 2018). The same is

true for Mr. Gomez who, in spite of holding a green card, has still been subject to detainment by ICE.  *See id*.

### D. If The Court Finds That Plaintiffs Do Not Possess Article III Standing, The Deficiency Is Readily Curable By The Addition Of A New Plaintiff And Class Representative.

As noted in Plaintiffs' Reply Brief in Support of Motion for Class Certification [Dkt. 127:9-12], Plaintiffs' counsel have been retained by a former detainee and putative class member, Achiri Nelson Geh, who was subject to and harmed by the same policies and practices as Plaintiffs while detained at Otay Mesa Detention Center between April 24, 2017 and October 28, 2019.  [Declaration of Achiri Nelson Geh ("Geh Decl."), ¶¶ 2 – 15.]

If the Court determines that neither Plaintiff has standing to seek prospective equitable relief, Mr. Geh, who is already a member of all five putative classes, should be permitted to join the case as a named Plaintiff and to serve as a Class Representative in this action.  "Standing is satisfied if at least one named plaintiff meets the requirements" of Article III.  *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 160 (S.D. Cal. Mar. 27, 2019) (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 619 (N.D. Cal. 2015)).  Here, Mr. Geh was detained at Otay Mesa Detention Center at the time Plaintiffs filed their original complaint on May 31, 2017 and their operative FAC on October 12, 2018.  [Dkt. 1, 67.]  As a result, Mr. Geh would possess Article III standing to seek prospective equitable relief because "[a] plaintiff's standing is assessed as of the time an action was initiated and is unaffected by subsequent developments."  *Hernandez v. Lynch*, No. EDCV 16-00620-JGB (KKx), 2016 U.S. Dist. LEXIS 191881, at *37 (C.D. Cal. Nov. 10, 2016) (citing *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008)).

The fact that Mr. Geh was recently released from CoreCivic's custody further supports Mr. Geh's standing to pursue prospective equitable relief.  Like Mr. Owino, Mr. Geh is an asylum seeker and does not have lawful status in the United States and can be imminently detained at any time.  [Geh Decl., ¶¶ 16 – 17.]  Moreover, Mr. Geh is currently

required to wear an ankle bracelet so that ICE can confirm his location at all times, which makes the threat of future detainment at a CoreCivic facility even more tangible and easy to effectuate. [*Id.*] Based on Mr. Geh's prior periods of detention at a CoreCivic facility, he possesses a reasonable belief that he will be detained again and sent to a CoreCivic facility, where he will again be exposed to CoreCivic's unlawful policies and practices concerning detainee labor. [*Id.*]

Mr. Geh's recent release from his detainment at a CoreCivic facility also does not moot Mr. Geh's claims for prospective equitable relief because his claims are necessarily "transitory" and may evade review. *See Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997) (holding that the release of a pre-trial detainee appears to present the "classic example of a transitory claim" that would allow the Court to "validly certify a class on remand, even though the named plaintiff's claims are already moot, since the relation back doctrine will relate to [the plaintiff's] standing at the outset of the case" (quotation and citation omitted)); *Hernandez*, 2016 U.S. Dist. LEXIS 191881, at *39 (holding that "where a plaintiff's claim becomes moot while he seeks to certify a class" because the plaintiff has been released from custody, "his action will not be rendered moot if his claims are 'inherently transitory' (such that the trial court could not have ruled on the motion for class certification before his or her claim expired), as similarly-situated class members would have the same complaint" (citing *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090-91 (9th Cir. 2011))).

Finally, Plaintiffs note that there are putative class members who are presently detained at CoreCivic's facilities who also have Article III standing to assert a claim for prospective equitable relief. If the Court is not inclined to permit Mr. Geh to join the case as a Plaintiff and serve as a Class Representative, Plaintiffs' counsel request the opportunity to investigate and interview putative class members presently detained who would have standing to serve as a Plaintiff and Class Representative for prospective equitable relief.[2] To date, CoreCivic has effectively blocked Plaintiffs' counsel from

---

[2] Plaintiffs further note that at least three members of Plaintiffs' putative classes from the

-8-                    Case No. 17-CV-01112-JLS-NLS

accessing and interviewing presently detained putative class members, and Plaintiffs' counsel respectfully request an order permitting them to speak with detained putative class members during a site inspection that will be scheduled as soon as possible at CoreCivic's Otay Mesa Detention Center.

### III. CONCLUSION

For the reasons discussed above, Plaintiffs respectfully submit to the Court that they possess Article III standing to assert the relief sought in their First Amended Complaint. If the Court ultimately finds to the contrary, Plaintiffs respectfully request that the Court permit Mr. Geh to intervene as a Plaintiff and Class Representative in this action, or order any further relief that the Court deems just and appropriate.

DATED:  November 15, 2019

**FOLEY & LARDNER LLP**
J. Mark Waxman
Eileen R. Ridley
Geoffrey Raux
Nicholas J. Fox
Alan R. Ouellette


*/s/ Eileen R. Ridley*
Eileen R. Ridley
Attorneys for Plaintiffs SYLVESTER OWINO, JONATHAN GOMEZ, and the Proposed Class(es)

**LAW OFFICE OF ROBERT L. TEEL**
Robert L. Teel
  lawoffice@rlteel.com
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
Telephone:  (866) 833-5529
Facsimile:  (855) 609-6911

Attorneys for Plaintiffs SYLVESTER OWINO, JONATHAN GOMEZ, and the Proposed Class(es)

---

stayed *Gonzalez, et al., v. CoreCivic, Inc.* action, Case No. 17-CV-2573 JLS (NLS), filed suit while they were detained at CoreCivic's Otay Mesa Detention Center.  These three putative class members could also join the Plaintiffs in the instant action in order to preserve the claims for prospective equitable relief.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 15, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

*/s/ Eileen R. Ridley*
Eileen R. Ridley