J. MARK WAXMAN  (SBN 58579)
    mwaxman@foley.com
NICHOLAS J. FOX (SBN 279577)
    nfox@foley.com
**FOLEY & LARDNER LLP**
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130
T:  858.847.6700 // F:   858.792.6773

EILEEN R. RIDLEY (SBN 151735)
    eridley@foley.com
ALAN R. OUELLETTE (SBN 272745)
    aouellette@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
T:  415.434.4484 // F: 415.434.4507

ROBERT L. TEEL  (SBN 127081)
    lawoffice@rlteel.com
**LAW OFFICE OF ROBERT L. TEEL**
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
T: 866. 833.5529 // F:855.609.6911

GEOFFREY M. RAUX (*pro hac vice*)
    graux@foley.com
**FOLEY & LARDNER LLP**
111 Huntington Ave.
Boston, MA 02199-7610
T: 617.342.4000 // F: 617.342.4001

Attorneys for Plaintiffs SYLVESTER OWINO,
JONATHAN GOMEZ, and the Proposed Class(es)

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>vs.<br><br>CORECIVIC, INC.,<br><br>              Defendant. | Case No. 3:17-CV-01112-JLS-NLS<br><br>**CLASS ACTION**<br><br>**DECLARATION OF**<br>**ACHIRI NELSON GEH** |
| CORECIVIC, INC.,<br><br>              Counter-Claimant,<br><br>vs.<br><br>SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>              Counter-Defendants. | Date:   December 19, 2019<br>Time:  1:30 p.m.<br>Place:  Courtroom 4D<br><br>Judge:  Hon. Janis L. Sammartino<br>Magistrate:  Hon. Nita L. Stormes |

1      I, Achiri Nelson Geh, declare as follows:

2      1.      I am over eighteen years of age.  I have personal knowledge of the contents

3  of this declaration.  If called upon to do so, I could and would testify under oath about the

4  contents of this declaration.

5      2.      I was detained at the Otay Mesa Detention Center from approximately April

6  24, 2017 to the end of November, 2018, and then again from August 2019 to October 28,

7  2019.  During the period of December 1, 2018 to early August 2019, I was detained at

8  Etowah County Detention Center in Gadsden, Alabama.  The Otay Mesa Detention

9  Center is operated by CoreCivic, Inc.  The Etowah County Detention Center is operated

10  by the United States Immigration and Customs Enforcement ("ICE").

11      3.      During both periods of my detention at the Otay Mesa Detention Center, I

12  was required to abide by all orders and instructions issued by CoreCivic guards and

13  employees, including to perform cleaning tasks in common and private living areas

14  without pay.  If I refused to obey the orders and instructions issued to me by CoreCivic

15  guards and employees, I would be subject to punishment, including being placed in

16  solitary confinement/segregation.

17      4.      I understood that I could be punished for refusing to obey any orders and

18  instructions given to me by CoreCivic guards and employees based on my knowledge of

19  the written rules and policies issued by CoreCivic, my personal observation of other

20  detainees who were punished for refusing to follow orders and instructions, from talking

21  with other detainees who informed me that any failure to obey the orders and instructions

22  issued by CoreCivic guards and employees would result in punishment such as

23  segregation, and from my own personal experience of being punished while I was

24  detained.

25      5.      In general, if detainees refused to obey orders and instructions given by

26  CoreCivic guards and employees, they would be removed from their living pods and sent

27  to "Echo Unit," which was a housing pod that had many restrictions, including frequent

28  lockdowns.

6.     During the first period of my detention at the Otay Mesa Detention Center, from April 2017 to November 2018, I worked for CoreCivic as part of what was called the "Voluntary Work Program" in the kitchen, preparing and serving meals to other detainees.  My supervisor was an employee of CoreCivic and CoreCivic's employees at the detention center determined my pay, hours, work schedule, and training.  My job performance was reviewed by my supervisor.  If I performed poorly, I could be terminated or punished.

7.     I was supposed to work only five days per week, for six hours per day. However, there was almost always a lack of workers for the kitchen.  This meant that I typically worked seven days per week, and would have to work more than six hours per day.  I would often be forced to work double shifts, starting at 9:00 a.m. to 3:00 p.m., and then again from 3:00 p.m. to 10:30 or 11:00 p.m. on the same day.  I worked double shifts more than 50 times while detained at the Otay Mesa Detention Center.

8.     I was only paid $1.50 for each day I worked, regardless of how many hours I worked during that day.  Occasionally, I would be paid a "bonus" of $5.00 for working 30 consecutive days.  I received this bonus on multiple occasions during detention.

9.     On one occasion, after working for at least seven consecutive days, I told supervisors at CoreCivic that I wanted a day off.  They told me that I would be placed in isolation if I did not report to work, so I did.  On another occasion, again after working at more seven days in a row, I refused to work.  On this occasion, I was removed from the Voluntary Work Program for a period of 30 days and they threatened to move me to Echo Unit.  However, I was not moved and was eventually reinstated in my job at the kitchen. After that experience, I knew better than to ever refuse to work again.

10.     I was not given any documentation as part of my job in the Voluntary Work Program providing me with information regarding gross wages earned, total hours worked, applicable deductions, net wages earned, the pay period or the applicable hourly rates in effect and the corresponding number of hours worked during the pay period.

///

-2-            Case No. 17-CV-01112-JLS-NLS

1    11.     In addition to my work in the kitchen as part of the Voluntary Work

2  Program, I had to perform cleaning work in the private and communal areas of my

3  housing unit without any pay or I would have been punished.  I had to clean floors, make

4  my bed, clean the toilet and sink, wipe down walls and clean furniture and air vents.

5  Although I never refused to do this work, I witnessed other ICE detainees refuse who

6  were then placed in isolation by CoreCivic as punishment.

7    12.     In addition, whenever there was a visit of the detention center by an official

8  person, all detainees were required to do a "deep clean," scrubbing walls and floors

9  throughout the detention center for no pay.  This happened two to four times during the

10  time of my detention.

11    13.     I joined the Voluntary Work Program because it was the only way that I

12  could earn money during my time at the Otay Mesa Detention Center.  If I did not join

13  the Voluntary Work Program I would not have been able to purchase supplemental food,

14  clothing, and basic hygiene items from the commissary, or purchase phone cards to call

15  my family.

16    14.     During my time at the Otay Mesa Detention Center, CoreCivic provided me

17  with only 2 small bars of soap per week.  These would only last two or three days.  When

18  I asked CoreCivic employees for new soap, they responded that they had already

19  distributed it for the week.  So I had to buy my own from the commissary.  This was the

20  same thing with respect to toothpaste.  The toothpaste tubes that I was given by

21  CoreCivic were too small and did not last, so I had to use the money I made through the

22  Voluntary Work Program to purchase extra toothpaste to brush my teeth.  Purchasing

23  additional hygiene items like soap and toothpaste from the commissary was the only way

24  to avoid not having these items when I ran out during the week.

25    15.     I was permitted to make phone calls to family and friends during my time at

26  the Otay Mesa Detention Center.  These calls cost me money.  Purchasing phone cards at

27  the commissary was the only way I could call my family and friends.

28  ///

-3-                    Case No. 17-CV-01112-JLS-NLS

16.     My detention at the Otay Mesa Detention Center and the Etowah County Detention Center was related to my immigration status, not any criminal charge or conviction.  Through the help of my immigration attorney, I was recently released on a bond as my case remains pending in federal court.  I currently wear an ankle bracelet to confirm my location.  I am worried that I could be put back in detention at any time, and expect that I would be placed back in the detention center if I do not win my immigration case.

17.     I understand the general nature of the claims raised and the facts, policies, and procedures that form the basis of the claims asserted in this lawsuit and I have agreed to become an additional named plaintiff in the lawsuit, along with Mr. Gomez and Mr. Owino. I understand that, if I were to become a plaintiff, I would be a representative of several classes of current and former detainee workers and detainees forced to work, and I would be seeking relief in this lawsuit on behalf of those classes.

18.     I am not antagonistic to any other members of the classes in this lawsuit that I would potentially represent.  On the contrary, the shared and common experiences that all members of the classes have faced, including myself, unite us in challenging the policies and practices at issue in this case.  CoreCivic's policies and practices are unlawful, and I seek to obtain relief for all members of these classes who were subject to these unlawful policies and practices.

19.     Accordingly, if I became a plaintiff, I would fairly and adequately protect the interests of the classes that I seek to represent.

20.     Given my dedication to challenging these unlawful policies and seeking relief for all of those detainees who were subjected to the same, I would set aside the time

///

///

///

///

///

necessary to be significantly involved and invested in this lawsuit as it progresses, and to prosecute the action vigorously on behalf of all classes.

21.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14 day of November, 2019, in Oakland, California.

_____
Achiri Nelson Geh

1

**<u>CERTIFICATE OF SERVICE</u>**

2        The undersigned hereby certifies that a true and correct copy of the above and

3  foregoing document has been served on November 15, 2019, to all counsel of record who

4  are deemed to have consented to electronic service via the Court's CM/ECF system per

5  Civil Local Rule 5.4.

6

7                          */s/ Eileen R. Ridley*
                            Eileen R. Ridley

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28