J. MARK WAXMAN (SBN 58579)
  mwaxman@foley.com
NICHOLAS J. FOX (SBN 279577)
  nfox@foley.com
**FOLEY & LARDNER LLP**
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130
T: 858.847.6700 // F: 858.792.6773

EILEEN R. RIDLEY (SBN 151735)
  eridley@foley.com
ALAN R. OUELLETTE (SBN 272745)
  aouellette@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
T: 415.434.4484 // F: 415.434.4507

ROBERT L. TEEL (SBN 127081)
  lawoffice@rlteel.com
**LAW OFFICE OF ROBERT L. TEEL**
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
T: 866. 833.5529 // F:855.609.6911

GEOFFREY RAUX (*pro hac vice*)
  graux@foley.com
**FOLEY & LARDNER LLP**
111 Huntington Ave., Suite 2500
Boston, MA 02199-7610
T: 617.342.4000 // F: 617.342.4001

Attorneys for Plaintiffs SYLVESTER OWINO,
JONATHAN GOMEZ, and the Proposed Class(es)

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>CORECIVIC, INC.,<br><br>　　　　　　　　　　Defendant.<br><br>―――――――――――――――<br>CORECIVIC, INC.,<br><br>　　　　　　　Counter-Claimant,<br><br>vs.<br><br>SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Counter-Defendants. | Case No. 3:17-CV-01112-JLS-NLS<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CORECIVIC, INC.'S RENEWED MOTION FOR LEAVE TO FILE DOCUMENTS UNDER SEAL [D.I. 155]**<br><br>Judge: Hon. Janis L. Sammartino<br>Magistrate: Hon. Nita L. Stormes |

Case No. 17-CV-01112-JLS-NLS

## I. Introduction

Plaintiffs Sylvester Owino and Jonathan Gomez file this Opposition to Defendant CoreCivic, Inc.'s Renewed Motion For Leave To File Documents Under Seal. (D.I. 155.) In denying in part Plaintiffs' Motion To Seal Regarding Plaintiffs' Supplemental Reply Brief (D.I. 149), this Court noted the absence of articulated, compelling reasons to seal information identifying CoreCivic's personnel. (D.I. 152 [Ord.] at 3:17-23.) CoreCivic's position in the Renewed Motion is inconsistent with its prior position on the necessity of sealing its employees' *full* names: CoreCivic previously sought to seal only *first* names, and does not articulate a basis for the change in position.[1]

## II. CoreCivic Must Provide "Compelling Reasons" To Seal Information from the Public Record in this Case

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler*

---

[1] To the extent CoreCivic actually intended to seal just the first names and not full names of its employees (despite numerous references to "full" names in the Renewed Motion), Plaintiffs acknowledge that redacting first names is consistent with the Parties' prior practice under the Protective Order.

Plaintiffs also acknowledge, however, that stipulated practices for discovery purposes may not be sufficient by themselves to redact that same information in public filings, the determination of which is committed to this Court. *See Cochoit v. Schiff Nutrition Int'l, Inc.*, Case No. 16-cv-01371, 2018 WL 1895695, at *2 (C.D. Cal. Apr. 19, 2018) ("confidential" designation made pursuant to a protective order was insufficient by itself to warrant sealing, and proffering party's reliance on protective order resulted in failure to make particularized showing—much less compelling showing—to restrict public access); *see also Joint Equity Comm. of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, Case No. 10-cv-0401, 2012 WL 234396, at *2–3 (C.D. Cal. Jan. 24, 2012) (same).

-1-                     Case No. 17-CV-01112-JLS-NLS

*Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135. The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1102. When the underlying motion relates to the merits of a lawsuit in more than just a tangential degree, the "compelling reasons" standard applies; but if the underlying motion relates tangentially to the merits, the lower "good cause" standard applies. *Id.* at 1096–98.

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exists when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598). However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* (citing *Foltz*, 331 F.3d at 1136). The decision to seal documents is "one best left to the sound discretion of the trial court" upon consideration of "the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.[2]

**III.   CoreCivic Seeks To Seal Its Employees' Full Names, Despite Previously Seeking To Seal Only First Names, and Provides No Basis To Change Position**

CoreCivic seeks to seal from the public record the *full* names of its employees working in the Otay Mesa Detention Center. (D.I. 155 [Mot.] at 2:15-19.)[3] However,

---

[2] The exhibits in question are related to Plaintiffs' Supplemental Reply Brief (D.I. 148), as requested by this Court (D.I. 143; D.I. 146), which collectively relate to Plaintiffs' Motion for Class Certification (D.I. 84). CoreCivic does not dispute that the Motion for Class Certification relates to the merits of the lawsuit in more than a tangential degree, thus requiring "compelling reasons" as the standard to seal information. (D.I. 155 [Mot.] at 4:15-23.)

[3] Although not expressly stated in the Renewed Motion, Plaintiffs presume that CoreCivic's request would also apply to employees in other detention facilities, including

-2-   Case No. 17-CV-01112-JLS-NLS

CoreCivic's position is inconsistent with its prior position and practice regarding sealing of this information.

*First*, although CoreCivic observes that the Protective Order includes certain employee identifying information within the definition of "Confidential Information" (D.I. 155 [Mot.] at 2:20 – 3:12), the Protective Order notably *excludes* the employees' last names (and applies the same standard to contractors). (D.I. 60 [Prot. Ord.] at ¶ 14 ["The parties recognize that ["Confidential Information"] containing the address, identifying information (*does not include* last name of current and former CoreCivic employees and contractors) . . . ." (emphasis added)].) CoreCivic specifically added this provision to the Protective Order, which should be evident by the type of information the provision designates as "Confidential." However, CoreCivic offers no reason to depart from the terms it previously requested.

*Second*, in a prior sealing motion in this case, CoreCivic requested that this Court seal only the *first* names of its employees from the pubic record. (*See* D.I. 104 [Mot. To Seal] at 12:16-17 ["CoreCivic requests [that] these exhibits . . . be filed with all staff first names redacted."].) Similar to its departure from the Protective Order's terms, CoreCivic offers no basis supporting its change in position from the same request in prior pleadings.

*Third*, although CoreCivic identifies alleged concerns with security and safety of its detention facilities and operations, as well as its employees' privacy, as bases to support sealing its employees' full names (*see* D.I. 155 [Mot.] at 4:15 – 7:4), these were the same reasons previously asserted to seal only the first names of CoreCivic's employees. (*See* D.I. 104 [Mot. To Seal] at 12:17-21 [contending that first names constitute "security-sensitive, privacy-protected information to which detainees at CoreCivic's facilities are not privy, and which are not divulged to current or former detainees in order to protect the employees' privacy and security"]; *id.* at 12:21 – 13:10 [further asserting that placing full names on the public docket may allow current and former detainees to discover correctional

---

the any third-party contractors referenced in a publicly filed document.

officers' full names].)  CoreCivic previously offered these same reasons to support limited sealing, but now uses those reasons to broaden the scope of sealing present and past information without justification for the change.[4]

*Fourth*, undercutting CoreCivic's "security and safety" rationale is CoreCivic's concession that current detainees already have access to the employees' last names because correctional officers' name badges include last names.  (D.I. 155 [Mot.] at 6:7-10; D.I. 155-1 [Warden Decl.] at ¶ 7 (first names do not appear on OMDC officers' name badges, and officers are not allowed to use first names in front of detainees).)  If current detainees already have access to the last names of CoreCivic's correctional staff by virtue of day-to-day interaction with them, it is not apparent why including at least last names in the public record would provide current and former detainees with more information than they already have available to them.

*Fifth*, redacting full names of employees is inconsistent with CoreCivic's prior practice and treatment of such information in this case.  For example, although the Warden's Declaration is signed "C. LaRose"—perhaps to emphasize the importance of keeping certain information confidential (*see* D.I. 155-1 [Warden Decl.])—the Declaration underscores that last names in the public record is perfectly acceptable, and further illustrates that even first initials of first names do not require redaction.

Curiously, and regardless of whether that was the intended result of the Warden's signature, Warden LaRose's full name already appears in the public record.  (*See* D.I. 111-10.)  Moreover, it appears there because CoreCivic *did not oppose* the filing of various policies in the public record—in fact affirmatively consenting to such filing—even when those policies included the full name of a correctional officer or business / administrative employee.  (*See* D.I. 101 [Mot. To Seal] at 2:12-14]; *see also* D.I. 110-2 to -5, -19 to -22 [warden full names, or first initial and middle initial, at top of policies]; D.I. 110-25

---

[4] Notably, the Court observed in its recent Order that the Renewed Motion may impact documents already filed on the public docket. (D.I. 152 n.1.)  Although the Court's Order may intimate the lack of compelling reasons to seal the same information in prior filings, CoreCivic's Renewed Motion pivots from its prior position and seeks to have full names redacted in all publicly filed documents.

-4-   Case No. 17-CV-01112-JLS-NLS

[admission form listing last name of admitting officer]; D.I. 111-2 to -4 [deposition transcripts listing full names of CoreCivic wardens or corporate employees]; D.I. 111-6 to 1-14 [warden full names, or administrative / business names, at top of policies].)  The same is true when CoreCivic proffered evidence in support of its own pleadings.  (*See, e.g.*, D.I. 118 [Opp. Class Cert.].)

*Sixth*, CoreCivic goes to extensive lengths in its Renewed Motion that it has not done in prior motions to seal to outline the potential security risks associated with disclosing this information to inmates or detainees, particularly those with criminal histories.[5]  CoreCivic simply relies on generic statements about potential risks, oftentimes failing to differentiate between "inmates" (detained as convicted felons) and "detainees" (civilly detained while their immigration status is adjudicated).  CoreCivic fails to provide any concrete, quantitative data relevant to instances at OMDC, or CoreCivic's facilities generally, to warrant lumping all "detainees" into the same group with "inmates" (although it might further reflect the general application of CoreCivic's policies to all detainees).[6]

The only evidence CoreCivic offers is from OMDC's current Warden who has worked in "corrections" for 23 years (mostly in Ohio), with the last four years of his career specifically working for CoreCivic, and the last three months as the Warden of OMDC. (D.I. 155-1 [Warden Decl.] at ¶¶ 2 – 3.)  The Warden's testimony is anecdotal, with no information specifically tied to CoreCivic's facilities, let alone OMDC.[7]  Nor does the

---

[5] One might wonder whether CoreCivic's aside is simply to highlight the criminal histories of some detainees (inmates or civil) while critical motions are pending before the Court. Such irrelevant argument is counter to the acknowledged reality that, for this matter, the detainees are in custody for civil immigration issues—not criminal charges or convictions.

[6] For example, although CoreCivic references Plaintiff Owino's criminal conviction from over 16 years ago, it does not cite any altercation between Owino and correctional staff, or any threats Owino made towards staff, throughout Owino's 9.5 years of detention or the almost five years since his release.  Nor does that irrelevant reference change the fact that CoreCivic housed for *civil immigration issues*.

[7] Plaintiffs do not intend to minimize any reaction the Warden or his family may have felt in response to any threats described in the Warden's Declaration, but the Warden's Declaration does not link any of his experiences in 23 years of corrections to his time with CoreCivic, let alone OMDC, or to any civil detainees.

Warden provide any context in which these threats took place. For example, the Warden states he received threats "from inmates," but does indicate (1) whether "detainees" made similar threats; (2) whether these threats occurred at OMDC or even at another CoreCivic facility; (3) when these threats occurred (i.e., recently or at the start of his 23-year career in corrections); or (4) the circumstances surrounding the threats (e.g., a "threat" uttered out of frustration or anger, or a direct and credible threat). The same ambiguities exist for people purportedly watching the Warden's house, or threat anonymous letters, and these ambiguities further compound when the Warden has numerous years of experience spread over state correctional facilities and private prisons, and further between populations of convicted felons and civil immigration detainees.

In fact, one might seriously question whether civil detainees committed any of these actions. "Inmates" are criminal convicts who may be detained in CoreCivic's custody for extensive periods of time—decades, depending on the conviction—and as a result may have deep animosity towards their captors. But civil detainees are detained while their immigration status is adjudicated, and if a civil detainee "loses" his or her immigration proceeding, then the detainee is *deported*. Many of the threats the Warden describes require physical presence in the United States, which highlights further ambiguity as to whether these threats can actually be attributed to "detainees" in any significant degree, or whether they likely come from convicted felons who are released into the community based on terms associated with their conviction, sentence, and probation / parole.

///
///
///
///
///
///
///
///

## IV. Conclusion

CoreCivic ultimately bears the burden to demonstrate compelling reasons to seal the requested information, but for the reasons set forth above, CoreCivic's present attempt is inconsistent with its prior position and practice regarding this information, and CoreCivic does not articulate a basis for its change in position.

DATED: December 30, 2019

**FOLEY & LARDNER LLP**
J. Mark Waxman
Eileen R. Ridley
Geoffrey Raux
Nicholas J. Fox
Alan R. Ouellette

*/s/ Nicholas J. Fox*
Nicholas J. Fox
Attorneys for Plaintiffs SYLVESTER OWINO, JONATHAN GOMEZ, and the Proposed Class(es)

**LAW OFFICE OF ROBERT L. TEEL**
Robert L. Teel

Attorneys for Plaintiffs SYLVESTER OWINO, JONATHAN GOMEZ, and the Proposed Class(es)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies I served a true and correct copy of the above and foregoing document was served on December 30, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

*/s/ Nicholas J. Fox*
Nicholas J. Fox