```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF CALIFORNIA



SYLVESTER OWINO, ET AL.,          )    17-CV-1112-JLS
         PLAINTIFFS,              )
                                  )
VS.                               )    SAN DIEGO, CA
                                  )    DECEMBER 19, 2019
CORECIVIC, INC.,                  )    1:30 P.M.
         DEFENDANT.              )



                  TRANSCRIPT OF MOTION HEARING

         BEFORE THE HONORABLE JANIS L. SAMMARTINO

              UNITED STATES DISTRICT JUDGE




APPEARANCES:

FOR THE PLAINTIFFS:  FOLEY & LARDNER LLP
                     BY:  EILEEN R. RIDLEY, ESQ.
                          ALAN R. OUELLETTE, ESQ.
                          NICHOLAS J. FOX, ESQ.

FOR THE DEFENDANT:   STRUCK LOVE BOJANOWSKI & ACEDO, PLC
                     BY:  NICHOLAS D. ACEDO, ESQ.
                          JACOB B. LEE, ESQ.

COURT REPORTER:      FRANK J. RANGUS, OCR
                     U. S. COURTHOUSE
                     333 W. BROADWAY, SUITE 420
                     SAN DIEGO, CA  92101
                     (619) 318-8590



PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.
```

I  N  D  E  X

PROCEEDINGS                        PAGE

*THE COURT'S TENTATIVE RULING*          4

*THE COURT'S QUESTIONS:*

TO PLAINTIFFS                      8

TO DEFENDANT                       22

```
1              THE DEPUTY CLERK:  CALLING MATTER NUMBER TWO,
2    17-CV-1112, OWINO, ET AL. VS. CORE CIVIC, INC., FOR A MOTION
3    HEARING.
4              THE COURT:  OKAY.  GOOD AFTERNOON, COUNSEL.
5              APPEARANCES, PLEASE.
6              MS. RIDLEY:  GOOD AFTERNOON, YOUR HONOR.
7              EILEEN RIDLEY, ALAN OUELLETTE, AND NICHOLAS FOX,
8    FOLEY & LARDNER, ON BEHALF OF THE PLAINTIFFS.
9              THE COURT:  THANK YOU.
10             MR. ACEDO:  GOOD AFTERNOON, YOUR HONOR.
11             NICHOLAS ACEDO AND JACOB LEE ON BEHALF OF CORE CIVIC.
12             THE COURT:  OKAY.  THANK YOU.
13             THIS IS WHAT WE'RE GOING TO DO THIS AFTERNOON.  I'VE
14   GOT A TENTATIVE FOR YOU ON THIS MATTER, AND I'LL READ IT
15   SLOWLY.  THEN I HAVE QUITE A FEW QUESTIONS FOR YOU, FOR EACH
16   SIDE, AND I WOULD ASK YOU, AND I'LL SAY THIS A SECOND TIME
17   WHEN WE GET CLOSER TO THE QUESTION, PLEASE JUST ANSWER THE
18   QUESTION.  AS COMPETENT LAWYERS, I KNOW THERE'S A DESIRE TO
19   FULLY, YOU KNOW, ROUND OUT CONCEPTS AND WHAT NOT, BUT I REALLY
20   WOULD LIKE DIRECT ANSWERS TO MY QUESTIONS.  AT THE CONCLUSION
21   OF THAT, I'LL GIVE EACH SIDE TEN MINUTES, UNINTERRUPTED, TO
22   TELL ME WHATEVER YOU WANT TO TELL ME.  BUT I HAVE AREAS OF
23   CONCERN BASED ON WHAT I HAVE READ AND REVIEWED AND HENCE MY
24   QUESTIONS, AND SO I WOULD LIKE THEM SPECIFICALLY ANSWERED.  SO
25   LET'S START WITH THE TENTATIVE.
```

1            WE ARE HERE TODAY ON SEVERAL MOTIONS:  (1) PLAINTIFFS

2      AND COUNTER-DEFENDANTS SYLVESTER OWINO AND JONATHAN GOMEZ'S

3      MOTION FOR CLASS CERTIFICATION; (2) PLAINTIFFS' MOTION FOR

4      PARTIAL SUMMARY JUDGMENT; (3) DEFENDANT AND COUNTER-CLAIMANT

5      CORE CIVIC'S MOTION FOR JUDGMENT ON THE PLEADINGS; AND (4)

6      PLAINTIFFS' MOTION TO EXCLUDE EVIDENCE FROM THE COURT'S CLASS

7      CERTIFICATION DECISION.  THE COURT HAS PREPARED THE FOLLOWING

8      TENTATIVE RULING ON THESE MOTIONS.

9            FIRST, THE COURT IS INCLINED TO DENY WITHOUT

10     PREJUDICE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON

11     THE GROUNDS THAT THE ONE-WAY INTERVENTION RULE PRECLUDES THE

12     COURT FROM RULING ON A MERITS-BASED MOTION BEFORE THE CLASS IS

13     CERTIFIED AND NOTIFIED WITHOUT THE CONSENT OF THE DEFENDANT.

14           SECOND, THE COURT IS INCLINED TO DENY DEFENDANT'S

15     MOTION FOR SUMMARY JUDGMENT ON THE PLEADINGS ON THE GROUNDS

16     THAT DEFENDANT HAS WAIVED ANY CHALLENGE TO THE COURT'S

17     PERSONAL JURISDICTION OVER IT.

18           THIRD, THE COURT IS INCLINED TO DENY AS MOOT

19     PLAINTIFFS' MOTION TO EXCLUDE ON THE GROUNDS THAT THE UNTIMELY

20     PRODUCED DOCUMENTS ARE NOT NECESSARY TO THE COURT'S

21     DETERMINATION OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION.

22           THIS BRINGS THE COURT TO PLAINTIFFS' MOTION FOR CLASS

23     CERTIFICATION, WHICH PRESENTS SEVERAL ISSUES THE COURT WOULD

24     LIKE TO DISCUSS TODAY.

25           FIRST, THE COURT IS TENTATIVELY INCLINED TO CONCLUDE

1    THAT IT CANNOT CERTIFY THE CALIFORNIA AND NATIONAL BASIC

2    NECESSITIES CLASSES, WHICH WERE NOT ALLEGED IN EITHER

3    COMPLAINT AND APPEAR TO THE COURT TO BE DIFFERENT FROM, RATHER

4    THAN NARROWER VERSIONS OF, THE CLASSES ALLEGED IN THE

5    COMPLAINTS.

6              SECOND, THE COURT IS TENTATIVELY INCLINED TO CONCLUDE

7    THAT, ALTHOUGH PLAINTIFFS HAVE ESTABLISHED ARTICLE III

8    STANDING FOR THEIR CLAIMS FOR MONEY DAMAGES, RESTITUTION,

9    INTEREST, PENALTIES, PUNITIVE DAMAGES, AND FEES AND COSTS,

10   THEY HAVE FAILED TO ESTABLISH ARTICLE III STANDING FOR THEIR

11   CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF.  PLAINTIFFS MUST

12   ESTABLISH A SUFFICIENT LIKELIHOOD OF FUTURE HARM, A SHOWING

13   THAT IS LACKING ON THE CURRENT RECORD.  FURTHER, BECAUSE

14   PLAINTIFFS APPEAR NEVER TO HAVE HAD STANDING DURING THE

15   PENDENCY OF THIS ACTION, THE COURT IS TENTATIVELY INCLINED TO

16   DISMISS WITHOUT PREJUDICE THE CLAIMS FOR PROSPECTIVE EQUITABLE

17   RELIEF.

18              THIRD, THE COURT IS TENTATIVELY INCLINED TO CONCLUDE

19   THAT THE CLAIMS OF MR. OWINO AND MR. GOMEZ ARE NOT TYPICAL OF

20   THOSE OF THE CALIFORNIA LABOR LAW CLASS AS CURRENTLY DEFINED

21   ON SEVERAL GROUNDS.  (A) MR. OWINO AND MR. GOMEZ ARE BOTH

22   FORMER DETAINEES BUT SEEK TO CERTIFY A CLASS COMPRISED OF BOTH

23   FORMER AND CURRENT PARTICIPANTS IN DEFENDANT'S VOLUNTEER WORK

24   PROGRAM.  FURTHER, THE CURRENT PARTICIPANTS IN DEFENDANT'S

25   VOLUNTEER WORK PROGRAM DO NOT SHARE MR. OWINO AND MR. GOMEZ'S

1    CLAIMS FOR WAITING TIME PENALTIES.  (B) MR. OWINO AND MR.

2    GOMEZ WORKED ONLY AS KITCHEN STAFF, CHEMICAL PORTERS, AND

3    CLEANERS, BUT IT IS UNCLEAR TO THE COURT WHAT OTHER POSITIONS

4    WERE HELD BY PARTICIPANTS IN THEIR VOLUNTEER WORK PROGRAM,

5    WHAT THEIR DUTIES WERE, AND WHAT THEIR SCHEDULES WERE LIKE.

6    AND (C) PLAINTIFFS' WAGE STATEMENT CLAIMS ARE SUBJECT TO A

7    ONE- OR THREE-YEAR STATUTE OF LIMITATIONS DEPENDING ON WHETHER

8    THEY SEEK PENALTIES OR ACTUAL DAMAGES, BUT MR. GOMEZ IS

9    OUTSIDE BOTH LIMITATIONS PERIODS AND MR. OWINO IS OUTSIDE THE

10   PENALTIES LIMITATIONS PERIOD.

11        FOURTH, THE COURT IS TENTATIVELY INCLINED TO CONCLUDE

12   THAT COMMON ISSUES DO NOT PREDOMINATE AS TO THE CALIFORNIA

13   LABOR LAW CLASS.  ALTHOUGH THE COURT IS INCLINED TO CONCLUDE

14   THAT PLAINTIFFS HAVE ESTABLISHED A UNIFORM POLICY NOT TO PAY A

15   MINIMUM WAGE OR OVERTIME TO DETAINEES IN THE VOLUNTEER WORK

16   PROGRAM, IT IS INCLINED TO CONCLUDE THAT PLAINTIFFS HAVE NOT

17   MADE SUCH A SHOWING AS TO MEAL AND REST PERIODS.  THE COURT IS

18   ALSO CONCERNED WITH THE ABILITY TO ADJUDICATE THESE CLAIMS ON

19   A CLASS-WIDE BASIS GIVEN THE APPARENT ABSENCE OF ANY

20   TIMEKEEPING RECORDS.

21        IN LIGHT OF THESE ISSUES, THE COURT IS TENTATIVELY

22   INCLINED TO DISMISS PLAINTIFFS' CLAIMS FOR PROSPECTIVE

23   EQUITABLE RELIEF AND TO DENY CERTIFICATION AS TO THE BASIC

24   NECESSITIES AND CALIFORNIA LABOR LAW CLASSES, BUT TO GRANT

25   CERTIFICATION AS TO THE CALIFORNIA AND NATIONAL FORCED LABOR

1    CLASSES.  THAT SAID, THE COURT IS UNCLEAR WHETHER IT IS

2    POSSIBLE TO CERTIFY THE CALIFORNIA LABOR LAW CLASS AS TO SOME

3    OF PLAINTIFFS' CLAIMS AND FOR CERTAIN POSITIONS HELD BY MR.

4    OWINO AND MR. GOMEZ.  ACCORDINGLY, THE COURT HAS A NUMBER OF

5    QUESTIONS FOR EACH SIDE, FOCUSING PARTICULARLY ON CLASS

6    CERTIFICATION AND CERTIFICATION OF THE CALIFORNIA LABOR LAW

7    CLASS.

8            SO THAT CONCLUDES THE COURT'S TENTATIVE.

9            NOW, COUNSEL, I WOULD NOTE I RECEIVED A LATE FILING

10   ON NEWLY FILED AUTHORITY FROM THE CASE IN THE CENTRAL DISTRICT

11   INVOLVING GEO, AND I GOT THIS VERY LATE YESTERDAY ONLY BECAUSE

12   I HAVE SUCH A VIGILANT STAFF.  NORMALLY, IT WOULDN'T HAVE COME

13   TO ME UNTIL SOMETIME TODAY, OR MAYBE EVEN TOMORROW.  I'VE

14   LOOKED AT IT VERY, VERY QUICKLY, AND SO I WILL SPEND FURTHER

15   TIME WITH THAT IF IT'S RELEVANT.  I MEAN, I'VE LOOKED AT IT

16   ENOUGH TO KNOW THAT THE STANDING ISSUE, WHAT I CONSIDER TO BE

17   STANDING ISSUES RELEVANT TO HIS CASE, BUT I DON'T KNOW IF IT'S

18   RELEVANT.  BUT I'LL TAKE A LOOK AT THAT AND DETERMINE THAT,

19   AND YOU CAN TELL ME WHAT, IF ANYTHING (PAUSE) -- I DON'T THINK

20   IT WARRANTS ANYTHING ADDITIONAL FROM EITHER SIDE, IF YOU'RE

21   PREPARED TO ADDRESS IT, BUT IT'S A DISTRICT COURT CASE.  YOU

22   KNOW, IT IS WHAT IT IS.  SO I JUST RAISE THAT FOR WHAT IT'S

23   WORTH.  I DO HAVE IT.

24           SO I WOULD LIKE TO START WITH PLAINTIFF.  IF YOU'D

25   COME TO THE PODIUM, COUNSEL, AND I REITERATE THAT IF WE COULD

1    JUST FOCUS JUST ON THE QUESTION.

2              MS. RIDLEY:  I UNDERSTAND.

3              THE COURT:  I KNOW THAT'S HARD.  IT'S HARD FOR

4    LAWYERS, BUT IT WOULD BE MOST HELPFUL IF WE COULD.

5              LET ME START WITH THIS.  LET'S SUPPOSE, COUNSEL, I

6    STUCK WITH THE TENTATIVE.  WHAT I'M GOING TO DO AT THE END OF

7    THIS, I'M GOING TO TAKE IT UNDER SUBMISSION.  I'M GOING TO GO

8    BACK THROUGH EVERYTHING.  I'M GOING TO SPEND TIME WITH JUDGE

9    BERNAL'S STATEMENT OF DECISION.  I'M GOING TO CONSIDER

10   EVERYTHING THAT'S SAID HERE.  SO IT WILL BE SOME TIME, AND

11   THEN YOU'LL GET A REASONED STATEMENT.  BUT'S LET'S SUPPOSE,

12   AFTER ALL OF THAT, I ADOPT THE TENTATIVE RULING.  WHERE WOULD

13   WE GO FROM HERE, AND WOULD PLAINTIFFS INTEND TO FILE A RENEWED

14   MOTION OR SEEK LEAVE TO AMEND THEIR COMPLAINT?

15             MS. RIDLEY:  DIRECTLY ANSWERING THE QUESTION, I THINK

16   WE MIGHT CONSIDER A RENEWED MOTION AND TO AMEND TO INCLUDE MR.

17   GEH AS A REPRESENTATIVE PLAINTIFF, YOUR HONOR.

18             THE COURT:  OKAY.  OKAY, I APPRECIATE THAT.

19             CAN THE COURT ALLOW PLAINTIFFS TO AMEND THEIR

20   COMPLAINT TO SUBSTITUTE A NEW CLASS REPRESENTATIVE WHO IS A

21   CURRENT DETAINEE OF DEFENDANT AND WOULD THEREFORE HAVE ARTICLE

22   III STANDING TO ASSERT CLAIMS FOR PROSPECTIVE EQUITABLE

23   RELIEF?

24             MS. RIDLEY:  WE BELIEVE THAT THE COURT MAY DO THAT,

25   IN PARTICULAR, IF THE COURT BELIEVES THAT THERE ARE SOME

1    PREDOMINATING LEGAL ISSUES AND THAT THE NAMING OF THAT NEW

2    PARTY WOULD RECTIFY ANY JURISDICTIONAL ISSUES WITH REGARD TO

3    THE STANDING OR OTHER ISSUES WITH THE REPRESENTATIVE

4    PLAINTIFFS, AND WE'VE CITED AUTHORITY IN THAT REGARD.  I WOULD

5    NOTE IN PARTICULAR THE ISSUE OF FOLKS WHO ARE RIGHT NOW

6    DETAINED AND THE ACCESS TO THEM HAS BEEN A PROBLEM IN THAT

7    DEFENDANTS HAVE NOT PROVIDED US THE ACCESS WITH REGARD TO

8    CURRENT DETAINEES.

9            THE COURT:  OKAY.  DOES DEFENDANT MAINTAIN RECORDS OF

10   THE HOURS WORKED BY DETAINEES OR ANY BREAKS THAT THEY TOOK?

11   AND IF THEY DO, WOULD YOU CITE WITH SPECIFICITY IN THE RECORD

12   WHERE THOSE ARE?  AND IF NOT, HOW WOULD THE COURT GO ABOUT

13   ADJUDICATING THE CLAIMS OF THE CALIFORNIA LABOR LAW CLASS ON A

14   CLASS-WIDE BASIS, PARTICULARLY THE CLAIMS FOR UNPAID OVERTIME,

15   MISSED REST AND MEAL BREAKS?

16           MS. RIDLEY:  YOUR HONOR, THE DEFENDANTS HAVE RECORDS

17   WITH REGARD TO THE WORK BEING DONE BY THE DETAINEES.  SOME

18   HAVE SOME INDICATION OF THE AMOUNT OF TIME THAT THE DETAINEES

19   WORKED, BUT --

20           THE COURT:  BUT WHERE IN THE RECORD DO I HAVE THAT?

21           MS. RIDLEY:  I BELIEVE, YOUR HONOR, IT IS IN THE

22   REPORTS WITH REGARD TO THE ACCOUNTS AND THE PAYMENTS, THE OMS,

23   ETC., REPORTS.  NOW, I WILL ALSO SAY, BECAUSE IT'S ONE OF THE

24   CLAIMS THAT WE HAVE, IS THAT IT IS OUR POSITION, OBVIOUSLY,

25   THAT WE BELIEVE THAT THE VOLUNTARY WORKERS ARE EMPLOYEES AND

1   THAT WAGE STATEMENTS AND THE LIKE WERE NOT, IN FACT, ROUTINELY

2   CREATED.  THAT IS PART OF THE PROBLEM, IS THAT THEY DID NOT

3   FOLLOW CALIFORNIA LAW AND, IN OUR BELIEF, SHOULDN'T BE

4   BENEFITED BY FAILING TO PROVIDE THOSE RECORDS OR MAINTAINING

5   THOSE RECORDS.

6         THE COURT:  OKAY.  SO, CAN YOU BE MORE SPECIFIC AS TO

7   WHERE THIS IS IN OUR RECORD?  AND IF YOU NEED TO FIND IT AND

8   THEN COME BACK AND TELL ME, THAT'S FINE, BUT IT WOULD BE VERY,

9   VERY HELPFUL TO THE COURT.

10        MS. RIDLEY:  WE CAN DO THAT, YOUR HONOR.

11        THE COURT:  IT SEEMED TO ME, IN THE VERY QUICK REVIEW

12  OF JUDGE BERNAL'S ORDER, THERE WAS BETTER RECORD-KEEPING BY

13  GEO.

14        MS. RIDLEY:  SO, YOUR HONOR, WE HAVE EXHIBIT 8, FOR

15  EXAMPLE, WHICH IS THE --

16        THE COURT:  EIGHT?

17        MS. RIDLEY:  EIGHT.

18        THE COURT:  THANK YOU.  OKAY.

19        MS. RIDLEY:  WHICH IS THE RESIDENT WORK ASSIGNMENT.

20  WE HAVE REMOVAL FROM WORK DETAIL REFERENCES FOR EXHIBIT 10.

21  THEIR OWN RECORDS AND MANUALS HAVE, ESSENTIALLY, LINKS TO THE

22  AMOUNT OF TIME AND THE STATEMENT THAT PEOPLE AREN'T SUPPOSED

23  TO WORK OVER EIGHT HOURS AND THE LIKE.  THOSE ARE IN THE

24  MANUALS, YOUR HONOR, THAT WE PRESENTED TO THE COURT.

25        THE COURT:  OKAY.  DOES DEFENDANT -- AND YOU MAY HAVE

1    JUST ANSWERED THIS -- HAVE ANY POLICIES THAT OUTLINE THE

2    NUMBER OF HOURS REQUIRED TO BE WORKED PER SHIFT FOR THE

3    VARIOUS POSITIONS HELD THROUGH THE VOLUNTEER WORK PROGRAM, AND

4    YOU'RE SAYING THOSE WOULD BE IN THE LINKS TO THE MANUAL?

5              MS. RIDLEY:  THAT'S EXACTLY RIGHT, YOUR HONOR.

6              THE COURT:  OKAY.  AND IS THE SAME TRUE FOR MEAL AND

7    REST BREAKS?

8              MS. RIDLEY:  THEY DO NOT REFERENCE MEAL AND REST

9    BREAKS DIRECTLY.  THAT IS, AGAIN, PART OF THE ISSUE, IS THAT,

10   NOTWITHSTANDING WORKING, THEY'RE NOT PROVIDING THE MEAL AND

11   REST BREAKS IN QUESTION, AND I WOULD NOTE THAT THE RECORDS

12   REFLECT THAT DEFENDANT ADMITS THAT THEY DON'T MAINTAIN TYPICAL

13   EMPLOYMENT RECORDS AND THE LIKE.

14             THE COURT:  AND IF THERE ARE POLICIES, ARE THOSE

15   UNIFORM THROUGHOUT DEFENDANT'S FACILITIES?

16             MS. RIDLEY:  THE ANSWER IS YES, YOUR HONOR, AND IT'S

17   IMPORTANT THAT DEFENDANT'S PERSON MOST KNOWLEDGEABLE THAT WAS

18   DEPOSED, MR. ELLIS, AND I BELIEVE HIS TRANSCRIPT IS EXHIBIT 3

19   BEFORE THE COURT, HE TESTIFIED THAT, IN FACT, THESE POLICIES

20   WERE, IN FACT, STANDARD, THAT THE FACILITIES DO NOT HAVE THE

21   OPTION OF OPTING OUT OF THEM.

22             THE COURT:  OKAY.  NOW, GIVEN THAT MR. OWINO WORKED

23   IN THE KITCHEN AND HE WORKED ALSO AS A CHEMICAL PORTER AND

24   CLEANER AND MR. GOMEZ WORKED AS A CLEANER, ARE THEIR CLAIMS

25   TYPICAL OF EVERYONE IN THE VOLUNTEER WORK PROGRAM WHO HELD

1    OTHER POSITIONS?

2              MS. RIDLEY:  THE ANSWER IS YES, YOUR HONOR, AND IF I

3    CAN EXPAND ON THAT A LITTLE BIT.

4              THE COURT:  SURE.  GO AHEAD.

5              MS. RIDLEY:  I'M TRYING TO FOLLOW YOUR HONOR'S

6    REQUEST TO ACTUALLY ANSWER THE QUESTION.

7              THE COURT:  AND YOU ARE DOING MUCH BETTER THAN MOST,

8    MA'AM.  SO GO AHEAD AND ELABORATE ON THIS.

9              MS. RIDLEY:  ALL RIGHT.  SO THE ANSWER IS YES,

10   BECAUSE THE OVERARCHING QUESTION IS, ARE THESE STANDARD

11   POLICIES THAT CORE CIVIC HAS, ARE THEY -- IS THERE ANY

12   IMPLEMENTATION IN THE ESTABLISHMENT OF THE VOLUNTARY WORK

13   PROGRAM CONCOMITANT WITH THE WORKERS, REGARDLESS OF THEIR

14   POSITION, BEING EMPLOYEES?  AND IF THEY ARE EMPLOYEES AS A

15   MATTER OF LAW, HAS DEFENDANT BEEN COMPLIANT WITH THE

16   APPLICABLE LABOR CODE PROVISIONS?  IT IS NOT DETERMINATIVE IF

17   PERSON ONE IS IN THE KITCHEN AND PERSON TWO IS A PORTER,

18   BECAUSE THE QUESTION IS, ARE THEY EMPLOYEES AND WERE THEY --

19   ASSUMING QUESTION ONE IS ANSWERED YES LEGALLY -- WERE THEY

20   TREATED AS EMPLOYEES COMPLIANT WITH THE LAW?  SO THE

21   NOMENCLATURE OF WHAT THEY DID IS NOT DETERMINATIVE OF THOSE

22   KEY QUESTIONS.

23             THE COURT:  OKAY.  SO THERE WOULD BE NO REASON TO

24   NARROW THE CLASS TO ENCOMPASS ONLY THOSE POSITIONS HELD BY THE

25   NAMED PLAINTIFFS.

```
 1              MS. RIDLEY:  THAT'S EXACTLY RIGHT, YOUR HONOR --

 2              THE COURT:  OKAY.

 3              MS. RIDLEY:  -- BECAUSE THERE WAS NO -- FOR EXAMPLE,

 4    THERE'S NO EVIDENCE TO SUGGEST THAT THOSE POLICIES SOMEHOW

 5    WERE APPLIED DIFFERENTLY IF YOU WERE A HOUSEKEEPER OR A PORTER

 6    VS. A KITCHEN WORKER.

 7              THE COURT:  SO YOU WOULDN'T THINK THERE WOULD BE A

 8    NEED TO AMEND THE COMPLAINT TO ADD ADDITIONAL CLASS

 9    REPRESENTATIVES FOR THAT REASON.

10              MS. RIDLEY:  THAT'S EXACTLY RIGHT.

11              THE COURT:  OKAY.

12              MS. RIDLEY:  THAT'S EXACTLY RIGHT, AND IN FACT THE

13    POLICIES AS WRITTEN DON'T CHANGE OR DEFINE DIFFERENCES BASED

14    ON THE WORK ACTIVITY INVOLVED; JUST THE FACT THAT THEY'RE IN

15    THE PROGRAM, THE POLICIES APPLY.

16              THE COURT:  OKAY.  NOW, YOU'RE SEEKING TO CERTIFY THE

17    CALIFORNIA LABOR CLASS ENCOMPASSING BOTH FORMER AND CURRENT

18    PARTICIPANTS IN THE VOLUNTEER WORK PROGRAM, BUT THE NINTH

19    CAUSE OF ACTION FOR FAILURE TO PAY COMPENSATION UPON

20    TERMINATION APPLIES ONLY TO FORMER PARTICIPANTS.  WHAT DOES

21    THAT DO TO THE CLASS?

22              MS. RIDLEY:  AT MOST, I THINK IT WOULD NARROW THE

23    CLASS JUST TO THE, TO THOSE WHO ARE FORMER.

24              THE COURT:  OKAY.  TURNING TO THE STATUTE OF

25    LIMITATIONS -- GO AHEAD.  DO YOU WANT TO SAY SOMETHING ELSE?
```

1    GO AHEAD.

2              MS. RIDLEY:  NO.  I WAS JUST THINKING ABOUT A GLASS

3    OF WATER BECAUSE I'M HOT.

4              THE COURT:  GET ONE.  IT'S TERRIBLY WARM IN HERE.

5              MS. RIDLEY:  THANK YOU, YOUR HONOR.

6              THE COURT:  SURE.  OF COURSE.

7              MS. RIDLEY:  IT'S SOMEWHAT IRONIC BECAUSE I WAS

8    TALKING ABOUT HOW COOLER IT WAS DOWN HERE THAN I ANTICIPATED,

9    SO.

10             THE COURT:  NOT IN THIS COURTROOM, I DON'T THINK.

11             MS. RIDLEY:  THANK YOU, YOUR HONOR.

12             THE COURT:  OF COURSE.  I WANT TO TURN TO THE STATUTE

13   OF LIMITATIONS.  THERE ARE TWO STATUTES OF LIMITATIONS FOR

14   PLAINTIFFS' WAGE STATEMENT CLAIMS:  A THREE-YEAR LIMITATIONS

15   PERIOD FOR CLAIMS FOR ACTUAL DAMAGES AND ONE-YEAR PERIOD FOR

16   PENALTIES.  GIVEN THE DATE OF THIS ACTION, THE DATE THIS

17   ACTION WAS INITIATED AND THE DATES THAT MR. OWINO AND MR.

18   GOMEZ CEASED PARTICIPATING IN THE VOLUNTEER WORK PROGRAM, IT

19   APPEARS TO THE COURT -- AND CORRECT ME IF I'M WRONG -- THAT

20   NEITHER MR. OWINO NOR MR. GOMEZ, NEITHER ONE IS WITHIN THE

21   LIMITATIONS PERIOD FOR PENALTIES, BUT MR. GOMEZ IS, AND MR.

22   GOMEZ IS ALSO OUTSIDE THE LIMITATIONS PERIOD FOR ACTUAL

23   DAMAGES.  SO, WHAT ARE THE IMPLICATIONS OF THAT, COUNSEL, FOR

24   CERTIFICATION OF THE CALIFORNIA LABOR LAW CLASS?

25             MS. RIDLEY:  WELL, YOUR HONOR, I WANT TO NOTE THAT WE

1   ALSO BROUGHT IN CONNECTION WITH THOSE CLAIMS A UCL CLAIM.

2           THE COURT:  RIGHT.  YOU DID.

3           MS. RIDLEY:  THAT EXTENDS THROUGH THE FOUR YEARS, THE

4   STATUTE OF LIMITATIONS, INCLUDING THOSE STATUTORY DAMAGES, AND

5   SO THEY WOULD BE WELL WITHIN THOSE PROVISIONS, YOUR HONOR.

6           THE COURT:  OKAY.

7           MS. RIDLEY:  AND THAT, THAT IS NOT UNCOMMON IN

8   EMPLOYMENT CLAIMS.

9           THE COURT:  OKAY.  SO YOU DON'T THINK IT IMPACTS IT

10  AT ALL, THEN.

11          MS. RIDLEY:  I DON'T, YOUR HONOR.

12          THE COURT:  OKAY.  GIVEN THE CONCERNS THAT THE COURT

13  OUTLINED IN ITS TENTATIVE, IS THERE A WAY TO NARROW THE

14  CALIFORNIA LABOR LAW CLASS SUCH THAT THE COURT CAN GRANT

15  CERTIFICATION AS TO SOME OF PLAINTIFFS' CLAIMS OR TO SOME OF

16  THE POSITIONS, BUT I THINK YOU'RE GOING TO SAY WE DON'T NEED

17  TO GO BY POSITIONS, HELD BY DETAINEES PARTICIPATING IN THE

18  VOLUNTEER WORK PROGRAM, OR DO YOU THINK THERE'S A NEED FOR

19  SUBCLASSES?

20          MS. RIDLEY:  THERE MAY BE A NEED FOR SUBCLASSES, YOUR

21  HONOR.  I (PAUSE) -- LET ME START WITH THE BEGINNING.  I WOULD

22  NOT LIMIT THE CLASS TO POSITIONS FOR THE REASONS I PREVIOUSLY

23  STATED.

24          THE COURT:  OKAY.

25          MS. RIDLEY:  SO THAT'S STAGE ONE.

```
1              STAGE TWO, HAVING HEARD THE COURT'S TENTATIVE

2     VIS-A-VIS THE PROSPECTIVE INJUNCTIVE AND EQUITABLE RELIEF, IT

3     MAY BE NARROWED TO NOT INCLUDE THOSE CLAIMS.  THAT HAVING --

4     ALTHOUGH I HAVE SOME ARGUMENTS REGARDING THAT, BUT I'LL

5     RESERVE THAT.  YOU POTENTIALLY COULD HAVE SOME SUBCLASSES,

6     ALTHOUGH, AGAIN, I THINK SOME BASIC CLASSES ARE APPROPRIATELY

7     DESCRIBED, FOR EXAMPLE.  BASED ON OUR THEORY THAT THERE'S A

8     GENERALIZED POLICY THAT MAKES EVERYBODY AN EMPLOYEE REGARDLESS

9     OF POSITION, I THINK THERE ARE CLASSES, FOR EXAMPLE, REGARDING

10    MINIMUM WAGE, THAT IT DOESN'T NEED TO BE NARROWED ANY FURTHER.

11    I THINK THERE ARE CLASSES ABOUT THE FAILURE TO PROVIDE WAGE

12    STATEMENTS.  IT DOESN'T NEED TO BE NARROWED ANY FURTHER.

13             AND I THINK WE WENT THROUGH THOSE CLASSES, YOUR

14    HONOR, IN OUR OPENING BRIEF ON PAGE 17, AND THIS IS ON PAGE

15    17, LINES 13 THROUGH 19.  SO IT'S THE MINIMUM WAGE MANDATED BY

16    LABOR CODE 1194, 1197, AND WAGE ORDER 5-2001; OVERTIME WAGES

17    UNDER LABOR CODE 204, 510, 1194, AND THE WAGE ORDER 5-2001;

18    PROVISION OF WAGE STATEMENTS UNDER LABOR CODE 226; AND THEN

19    THERE'S THE FINAL PROVIDING MEAL AND REST PERIODS.  TO THE

20    EXTENT THAT THE EVIDENCE SHOWS THAT NO MEAL AND REST PERIODS

21    WERE PROVIDED, AGAIN, THE FACT THAT NONE WERE PROVIDED, I

22    DON'T THINK YOU HAVE TO NARROW THAT ANY MORE.

23             THE COURT:  OKAY.

24             MS. RIDLEY:  AND I'M SORRY.  JUST TO BE CLEAR, THAT'S

25    UNDER CALIFORNIA LABOR CODE 226.7, 512, AND AGAIN THE WAGE
```

1    ORDER.

2              THE COURT:  OKAY.  THANK YOU.

3              CAN I CERTIFY THE BASIC NECESSITIES CLASS WHEN THERE

4    ARE NO ALLEGATIONS IN THE OPERATIVE COMPLAINT REGARDING

5    DETAINEES BEING FORCED TO WORK TO PURCHASE BASIC NECESSITIES

6    IN THE COMMISSARY?

7              MS. RIDLEY:  THE ANSWER IS, YOUR HONOR, YES, YOU CAN.

8    WE ACTUALLY DO BELIEVE IT'S NARROW AND IT'S NOT DIFFERENT, AND

9    IF I MAY BE ABLE TO EXPAND.

10             THE COURT:  PLEASE.

11             MS. RIDLEY:  SO, WHEN WE'RE TALKING ABOUT THE FORCED

12   LABOR, PART OF REVIEWING THAT ISSUE, WHICH I UNDERSTAND THE

13   COURT IS TENTATIVELY INCLINED TO GRANT, ONE HAS TO LOOK AT THE

14   CIRCUMSTANCES OF THE SITUATION REGARDING THE LABOR.  IN THIS

15   CASE, THAT CIRCUMSTANCE DEALS WITH TWO ITEMS.  ONE IS THE

16   THREAT OF DISCIPLINE, WHICH WE'VE DISCUSSED.  THE SECOND IS

17   THE CIRCUMSTANCE OF WE HAVE INVOLUNTARILY DETAINED PEOPLE WHO

18   ARE NOT CRIMINALLY CHARGED, WHO ARE IN A SITUATION WHERE WE

19   BELIEVE THE EVIDENCE SHOWS THEY ARE BEING DEPRIVED OF CERTAIN

20   NECESSITIES, AND IN ORDER TO BE ABLE TO REPLENISH THEM, THEY

21   NEED TO PURCHASE THEM IN A COMMISSARY.  IN ORDER TO DO THAT,

22   THEY NEED MONEY, AND FOR A GREAT MANY OF THEM THAT COMES FROM

23   HAVING, BEING FORCED INTO THIS WORK SITUATION, AND HAVING NO

24   OTHER MEANS OF REMUNERATION OR LITTLE MEANS OF REMUNERATION

25   OTHER THAN THAT PROGRAM, IT IS PART OF THE NATURE OF THE

1    FORCED CONDITIONS THAT A REASONABLE PERSON IN THEIR SITUATION

2    WOULD FEEL COMPELLED TO DO THE WORK.  SO IT IS, IN FACT, PART

3    AND PARCEL OF, ALTHOUGH SOMEWHAT NARROW OF, THE CLAIMS

4    REGARDING THE FORCED WORK CLASSES.

5         THE COURT:  OKAY.  DO YOU CONTEND, COUNSEL, THAT

6    SPOKEO CHANGED THE LAW SUCH THAT PLAINTIFFS NO LONGER NEED TO

7    DEMONSTRATE A SUFFICIENT LIKELIHOOD OF FUTURE HARM TO

8    ESTABLISH ARTICLE III STANDING FOR PROSPECTIVE EQUITABLE

9    RELIEF?

10        MS. RIDLEY:  I THINK IT CHANGED THE LAW, YOUR HONOR,

11   SUCH THAT IN CERTAIN INSTANCES WHERE YOU HAD CLAIMS THAT, IN

12   FACT, YOU DON'T -- IT'S A BROADER STANCE, AND, IN FACT, IT'S A

13   CLAIM SUCH AS THIS ONE.  SO, FOR EXAMPLE, FIRST OF ALL, WE

14   HAVE, WE BELIEVE, THE REPRESENTATIVE PLAINTIFFS AND THE

15   PUTATIVE PLAINTIFFS HAVE ACTUAL INJURY-IN-FACT FOR ALL THE

16   REASONS WE DISCUSSED WITH REGARD TO BOTH THE LABOR CODE AND

17   THE FORCED LABOR, BUT IN ADDITION TO THAT THE ISSUES HERE, WE

18   BELIEVE, DO FOCUS ON A REAL THREAT OF FUTURE HARM.  FOR

19   EXAMPLE -- OR CONTINUED HARM, BECAUSE WHAT WE HAVE HERE IS A

20   THREAT THAT THEY, IN FACT, MAY BE DETERRED AGAIN AND DETAINED

21   IN THESE FACILITIES, AND THAT'S NOT AN IDLE ONE.  I MEAN, I

22   WOULD NOTE THAT MR. GOMEZ, EVEN THOUGH HE HAD GREEN CARD

23   STATUS, WAS DETAINED IN ONE OF THESE FACILITIES FOR OVER A

24   YEAR.

25        SO THERE IS NO INDICATION THAT EITHER REPRESENTATIVE

1    PLAINTIFF, MR. OWINO OR MR. GOMEZ, ARE NOT POTENTIALLY GOING

2    TO BE PLACED BACK INTO THESE DETENTION FACILITIES, AND THAT IS

3    A REAL RISK OF HARM IN THE FUTURE.  AND IF THAT'S THE CASE AND

4    NOTHING, THERE'S NO POTENTIAL CLAIM FOR PROSPECTIVE INJUNCTIVE

5    RELIEF, THEY WILL BE PLACED BACK AGAIN INTO A SITUATION WHERE

6    THE CALIFORNIA LABOR CODE IS NOT BEING FOLLOWED.  THEY ARE, IN

7    FACT, ESSENTIALLY, EMPLOYEES BEING FORCED TO WORK, AND THEY'RE

8    IN A FORCED LABOR CONTEXT.

9         I'LL NOTE, AND I THINK IT'S REALLY VERY INTERESTING,

10   IS THAT THE CALIFORNIA TVPA PRESUMES THAT -- IT HAS A STATUTE

11   OF LIMITATIONS THAT STEMS FROM THE TIME THE PERSON'S FREED,

12   BUT IT PRESUMES INJUNCTIVE RELIEF.  IN OTHER WORDS, IT DOESN'T

13   SEE A HURDLE HERE FOR THE TYPE OF CLAIM AND THE FACT THAT THE

14   PERSON MAY BE, IN FACT, RELEASED.  AND IF YOU LOOK AT THE

15   HERNANDEZ CASE, WHICH WE CITED, THIS TRANSITORY ISSUE OF

16   POTENTIALLY BEING RELEASED AND POTENTIALLY COMING BACK AGAIN,

17   THAT DOESN'T DESTROY THE POTENTIAL FOR STANDING OR CERT.

18        AND SO WE WOULD CONTEND IN THIS PARTICULAR

19   CIRCUMSTANCE -- AND I KNOW THE COURT CITED TO NORDSTROM, BUT

20   NORDSTROM WAS SOMETHING DIFFERENT.  NORDSTROM WAS AN

21   EMPLOYMENT SITUATION WHERE PEOPLE WERE VOLUNTARILY BEING

22   EMPLOYED AND THAT EMPLOYMENT EVENTUALLY TERMINATED.  THESE

23   FOLKS DON'T HAVE THAT SORT OF VOLUNTARY CIRCUMSTANCE, AND I

24   THINK THAT'S A QUALITATIVELY AND IMPORTANT DIFFERENCE BETWEEN

25   THE CIRCUMSTANCES THAT WE'RE DEALING WITH, AS WELL AS, OR

1    COMPARED TO WHAT WAS IN NORDSTROM.

2            THE COURT:  OKAY.  YOU'VE ASKED FOR LEAVE TO AMEND TO

3    ADD ADDITIONAL ALLEGATIONS SUPPORTING BOTH YOUR NAMED

4    PLAINTIFFS' LIKELIHOOD OF FUTURE HARM.  CORRECT?

5            MS. RIDLEY:  WE DID.

6            THE COURT:  AND SO I GUESS -- SHOULD I TAKE THAT AS

7    CONCEDING TO A CERTAIN EXTENT THAT THE FIRST OPERATIVE, THE

8    OPERATIVE FIRST AMENDED COMPLAINT DOESN'T CONTAIN SUCH FACTS?

9            MS. RIDLEY:  NO, YOUR HONOR.  IT'S -- FRANKLY, IT'S

10   SORT OF IN THE KIN OF THE SAME STATEMENT THAT THE COURT SAID,

11   LAWYERS WANT TO EXPAND BECAUSE THEY WANT TO BE GOOD LAWYERS.

12   FRANKLY, WE'RE TRYING TO COVER ALL GROUNDS AS WE'RE SUPPOSED

13   TO AS LAWYERS.

14           THE COURT:  ALL RIGHT.  NOW, YOU MENTIONED ADDING

15   ANOTHER FORMER DETAINEE, MR. GEH?

16           MS. RIDLEY:  GEH.  G-E-H FOR THE RECORD.

17           THE COURT:  G-E-H.  I KNOW HOW HE SPELLS IT.  I'M

18   JUST NOT SURE HOW HE PRONOUNCES IT.

19           MS. RIDLEY:  I'M WITH YOU.  I UNDERSTAND.

20           THE COURT:  HOW WOULD HE HAVE STANDING TO SEEK

21   PROSPECTIVE INJUNCTIVE RELIEF ON BEHALF OF CURRENT DETAINEES?

22           MS. RIDLEY:  WELL, HE WOULD BE -- WELL, HE WAS

23   DETAINED AT THE TIME OF THE LAWSUIT, SO HE WOULD RELATE BACK

24   AND SO WOULD BE ABLE TO DO IT.

25           THE COURT:  OKAY.  GIVEN THE DEADLINE TO AMEND THE

1    PLEADINGS HAS PASSED, YOU WOULD NEED TO ESTABLISH GOOD CAUSE

2    TO MODIFY THE SCHEDULING ORDER AND TO BE GRANTED LEAVE TO

3    AMEND.  WHAT FACTS WOULD SUPPORT THAT FINDING, AND WHY HAVEN'T

4    YOU SOUGHT THAT RELIEF BEFORE NOW?

5            MS. RIDLEY:  SO THE FACTS WOULD BE -- AGAIN, I WOULD

6    COMMEND TO THE COURT THE REALITY OF THE DIFFICULTY OF BEING

7    EVEN ABLE TO TALK TO DETAINED PEOPLE IN THESE FACILITIES.

8            THE COURT:  OKAY.

9            MS. RIDLEY:  LIKE IT OR NOT, THE DEFENDANTS ACTUALLY

10   PUT QUITE A BIT OF HURDLES TO BEING ABLE TO DO SO.  EVEN WHEN

11   WE VISITED, WE COULDN'T SPEAK TO ANY OF THE DETAINEES, AND

12   THEIR POSITION WAS THOSE DETAINEES HAD TO ASK TO TALK TO US,

13   WHICH, OF COURSE, COULDN'T HAPPEN BECAUSE THEY WOULDN'T

14   NECESSARILY KNOW, FRANKLY, WHAT WE WERE DOING AND WHY WE WERE

15   THERE.

16           THE COURT:  TRUE.

17           MS. RIDLEY:  SO THERE WAS A SIGNIFICANT HURDLE TO

18   BEING ABLE TO DO SO, AND NOTABLY WE HAVE BEEN DILIGENT IN

19   TRYING TO FIND AND ADD FOLKS.  MR. GEH, FRANKLY, WAS ONLY

20   RECENTLY, YOU KNOW, FREED, AND SO WERE ABLE TO TALK TO HIM.

21   BUT THERE HAS BEEN A SIGNIFICANT THRESHOLD DIFFICULTY IN EVEN

22   TALKING WITH FOLKS WHO WOULD BE POTENTIAL NAMED PLAINTIFFS,

23   ALTHOUGH THEY'RE CERTAINLY WITHIN THE POTENTIAL PUTATIVE

24   CLASS.  SO THAT, YOUR HONOR, HAS BEEN A MAJOR BLOCK WITH

25   REGARD TO ADDING.

1            I WOULD NOTE THAT THE COURT'S FOCUS ON THE POTENTIAL

2    CLASS AND WHAT TYPICALLY COURTS DO IN ORDER TO PROTECT THE

3    INTERESTS OF THE CLASS, BECAUSE IT'S DIFFERENT THAN YOUR

4    TYPICAL, YOU KNOW, SINGLE-PLAINTIFF SITUATION, IS THAT, TO THE

5    EXTENT THE COURT UNDERSTANDS OR BELIEVES THAT THERE IS A

6    PUTATIVE CLASS, TO THE EXTENT WE'VE BEEN THWARTED FROM TALKING

7    TO THEM TO BE ABLE TO ADD THEM, I THINK THAT IS A SIGNIFICANT

8    FACT TO CONSIDER AS TO WHY THERE'S GOOD CAUSE TO AMEND.  AND I

9    WOULD FURTHER NOTE THAT IT WOULD BE AN AMENDING WITH REGARD TO

10   A PARTY, BUT IT WOULDN'T BE SUBSTANTIALLY CHANGING THE NATURE

11   OF THE CASE IN AND OF THE ALLEGATIONS BEING PRESENTED, YOUR

12   HONOR.

13           THE COURT:  OKAY.  I APPRECIATE THAT ANSWER.  THANK

14   YOU.  THOSE ARE THE ONLY QUESTIONS I HAVE FOR YOU RIGHT NOW,

15   AND YOU'LL HAVE SOME TIME AFTER I SPEAK WITH DEFENSE COUNSEL

16   TO TELL ME WHATEVER YOU'D LIKE TO TELL ME UNINTERRUPTED,

17   COUNSEL.

18           MS. RIDLEY:  OKAY.  FAIR ENOUGH.

19           THE COURT:  THANK YOU.

20           MS. RIDLEY:  THANK YOU, YOUR HONOR.

21           THE COURT:  GOOD AFTERNOON, COUNSEL.

22           MR. ACEDO:  GOOD AFTERNOON, YOUR HONOR.

23           THE COURT:  WE'RE GOING TO GO BACK THROUGH SOME OF

24   THE SAME QUESTIONS THAT I ASKED OPPOSING COUNSEL, AND THAT IS,

25   I TOLD YOU WHAT I'M GOING TO DO AT THE CONCLUSION OF THIS

1    HEARING.  I WOULDN'T WASTE ANYBODY'S TIME IF WHAT I TOLD YOU

2    WASN'T CAPABLE OF BEING MODIFIED BASED ON THE ARGUMENTS HERE

3    AND THE ANSWERS TO MY QUESTIONS.  BUT IF I WERE TO ADOPT THE

4    TENTATIVE, WHAT'S YOUR VIEW OF WHERE WE WOULD GO FROM HERE?

5    NOW, PLAINTIFF HAS TOLD US THEY WOULD PROBABLY SEEK TO AMEND

6    THE COMPLAINT.  WOULD YOU OBJECT?  WHAT DO YOU THINK?

7            MR. ACEDO:  YES, YOUR HONOR, WE WOULD OBJECT.  WE

8    THINK IT'S TOO LATE.  AND, FRANKLY, I THINK IT'S HYPOCRITICAL

9    THAT IN THEIR BRIEFING OPPOSING OUR PERSONAL JURISDICTION

10   DEFENSE THEY'VE ARGUED THAT WE'VE WAIVED IT AND IT'S TOO LATE,

11   BUT HERE WE ARE IN ORAL ARGUMENT AND THEY'RE ASKING YOU TO

12   AMEND THE COMPLAINT AND ADD ALL OF THESE ALLEGATIONS.  SO, I

13   MEAN, THE EQUITIES HAVE TO GO BOTH WAYS.

14           I MEAN, IF THEY'RE GOING TO ARGUE THAT WE'VE WAIVED

15   THE DEFENSE, EVEN THOUGH THAT'S SOMETHING THAT WAS, IN FACT,

16   IN OUR ANSWER TO THEIR AMENDED COMPLAINT, THEN I THINK IT

17   WORKS BOTH WAYS.  I THINK IT IS TOO LATE AND THE DEADLINE TO

18   AMEND THE COMPLAINT HAS PASSED, AND THE FACT THAT THIS IS

19   COMING IN RESPONSE TO OUR BRIEFING, WHICH TRIGGERED YOUR ORDER

20   ON STANDING, WHICH IS TRIGGERING YOUR QUESTIONS TODAY, I THINK

21   THAT THAT IS DEFINITELY WELL BEYOND ANY REASONABLE DEADLINE OR

22   REQUEST TO AMEND THE COMPLAINT.

23           THE COURT:  WHAT ABOUT A RENEWED MOTION?

24           MR. ACEDO:  A RENEWED MOTION FOR?

25           THE COURT:  FOR ANYTHING IN THIS THAT'S TURNED DOWN

1    HERE.  IF I ADOPT THE TENTATIVE, WHERE WOULD WE GO FROM HERE,

2    COUNSEL, IN YOUR VIEW?

3          MR. ACEDO:  WELL, IT LOOKS LIKE IF YOU ADOPT IT AND

4    WE KEEP THOSE FORCED LABOR CLAIMS, IT WOULD JUST PROCEED ONLY

5    ON THOSE CLAIMS.

6          THE COURT:  OKAY.  LET ME SEE HERE.  DO YOU WANT TO

7    COMMENT -- SOME OF THESE QUESTIONS ARE MORE GEARED FOR

8    PLAINTIFF.  BUT IF I ALLOW THE PLAINTIFFS TO AMEND THEIR

9    COMPLAINT TO SUBSTITUTE A NEW CLASS REPRESENTATIVE WHO'S A

10   CURRENT DETAINEE AND WOULD HAVE ARTICLE III STANDING TO ASSERT

11   CLAIMS FOR PROSPECTIVE EQUITABLE RELIEF, WHY DON'T YOU COMMENT

12   ON THAT?

13         MR. ACEDO:  SURE.  I DON'T THINK THAT THAT'S ALLOWED

14   IN THIS CASE, AND HERE IS WHY.  THERE WAS A JURISDICTIONAL

15   DEFECT FROM THE OUTSET.  YOU CAN'T CURE THAT JURISDICTIONAL

16   DEFECT WITH AN AMENDMENT TO EVEN BRING IN A NEW CLASS REP THAT

17   HAS CURRENT STANDING.  YOU SIMPLY CAN'T DO THAT.  IF ANOTHER

18   DETAINEE HAS CURRENT STANDING, THAT DETAINEE CAN FILE THEIR

19   OWN SEPARATE LAWSUIT, BUT WE CANNOT BRING THAT DETAINEE INTO

20   THIS.  THIS LAWSUIT IS ALREADY DEAD FOR LACK OF JURISDICTION,

21   AND THAT CANNOT BE CURED.

22         THE COURT:  ONE THING THAT I WANTED TO DISCUSS IS

23   RECORD-KEEPING AND MAINTENANCE OF RECORDS OF HOURS WORKED BY

24   DETAINEES, BREAK PERIODS, MEAL BREAKS.  DID YOUR CLIENT KEEP

25   ANY?  WHERE ARE THEY IN MY RECORD THAT'S BEFORE THE COURT?

1    AND IF I DON'T HAVE RECORDS, HOW WOULD I GO ABOUT ADJUDICATING

2    THE CLAIMS ON A CLASS-WIDE BASIS, ESPECIALLY FOR OVERTIME AND

3    MISSED BREAKS --

4              MR. ACEDO:  SURE.

5              THE COURT:  -- AND MEALS?

6              MR. ACEDO:  BECAUSE THE DETAINEES ARE NOT EMPLOYEES

7    AND THEY'VE NEVER BEEN FOUND TO BE EMPLOYEES, CORE CIVIC DOES

8    NOT KEEP THOSE RECORDS IN THE REGULAR COURSE OF BUSINESS.

9    THEY DON'T KEEP PRECISE RECORDS OF WHEN THEY PUNCH IN AND

10   PUNCH OUT, WHEN THEY TAKE THEIR BREAKS, AND FOR HOW LONG

11   THEY'VE TAKEN THEIR BREAKS, BECAUSE THE COMPENSATION UNDER THE

12   VOLUNTARY WORK PROGRAM IS $1 PER DAY.  SO, IF THEY WORK DURING

13   THE DAY, THEN THAT'S ALL THAT IS RECORDED.  BUT MY

14   UNDERSTANDING --

15             THE COURT:  WAIT A SECOND.  SLOW DOWN FOR A MINUTE.

16   IF THEY WORK ANY PART OF THE DAY, WHAT DO THEY GET?

17             MR. ACEDO:  JUST THE ONE -- IF THEY WORK ONE HOUR OR

18   EIGHT HOURS, IT'S $1 PER DAY, OR, DEPENDING ON THE JOB, I

19   BELIEVE IT COULD BE A DOLLAR-FIFTY OR $2, DEPENDING ON THE

20   JOB.  BUT WHETHER IT'S ONE HOUR OR EIGHT HOURS, IT'S THE SAME

21   COMPENSATION.

22             THE COURT:  YOU'RE FAMILIAR WITH THE CASE IN THE

23   CENTRAL DISTRICT INVOLVING GEO?

24             MR. ACEDO:  I'M AWARE OF IT.  THAT'S RIGHT.  I'M NOT

25   AWARE OF THE INS AND OUTS OF THE ORDER THAT CAME OUT THREE

1    WEEKS AGO THAT THEY NOTICED YESTERDAY.

2         THE COURT:  I'M JUST CURIOUS BECAUSE THE ORDER

3    REFERENCES RECORD-KEEPING AND WHAT NOT.  I WAS JUST CURIOUS

4    WHAT YOUR RECORDS LOOK LIKE AS OPPOSED TO THEIR RECORDS.  I

5    MEAN, IT SOUNDED AS THOUGH THEY HAD RECORDS OF A DIFFERENT

6    SORT, AND I'M JUST CURIOUS.

7         MR. ACEDO:  YES, AND THEY MAY BE.  AGAIN, CORE CIVIC

8    DOES NOT KEEP THOSE DETAILED RECORDS IN THE REGULAR COURSE OF

9    BUSINESS.  THERE MAY BE INSTANCES --

10        THE COURT:  AND YOU DON'T KEEP THOSE RECORDS BECAUSE?

11        MR. ACEDO:  IT'S UNNECESSARY, BECAUSE IT DOESN'T

12   MATTER IF -- IT DOESN'T MATTER HOW MANY HOURS THEY WORK IN A

13   DAY AS LONG AS IT'S LESS THAN EIGHT HOURS.  THEY'RE ONLY

14   GETTING COMPENSATED ONE OR $2 PER DAY.  YOU WOULD PRESUMABLY

15   KEEP THOSE KINDS OF RECORDS IF YOU WERE GETTING PAID BY THE

16   HOUR SO YOU CAN KEEP TRACK OF HOW MANY HOURS THAT YOU WERE

17   PAID, BUT THEY DON'T.  THEY DON'T GET PAID BY THE HOUR.  THEY

18   GET PAID BY THE DAY, AND I WILL SAY THERE MAY BE --

19        THE COURT:  SO THERE WAS NO NEED FOR YOU TO PROVIDE

20   MEAL AND REST BREAKS?

21        MR. ACEDO:  OH, WE DO PROVIDE THEM.  THE DECLARATIONS

22   THAT WE SUBMITTED --

23        THE COURT:  BUT HOW WOULD WE KNOW THAT?

24        MR. ACEDO:  WE HAVE DECLARATIONS FROM OUR STAFF, FROM

25   THE OFFICIALS THAT PROVIDE THEM, THAT THAT IS THE PRACTICE AT

1    THE FACILITIES, THAT THEY GET BREAKS.  THEY GET REST BREAKS.

2    THEY GET MEAL BREAKS.  A LOT OF THESE JOBS, THE PORTER JOB,

3    THOSE ARE JUST, YOU KNOW, ONCE EVERY TWO OR THREE HOURS, AND

4    IT JUST TAKES AN HOUR OR TWO.  THE KITCHEN JOBS ARE A LITTLE

5    BIT MORE TIME.  THE OUTSIDE JOBS, THERE ARE DIFFERENT HOURS,

6    DIFFERENT TIMES.  THEY'RE CONDUCTED IN DIFFERENT AREAS OF THE

7    FACILITIES.

8         THE COURT:  I MEAN, WHAT'S THE IMPACT OF THE NATURE

9    OF THE RECORDS THAT YOU DO HAVE ON CLASS CERTIFICATION?

10        MR. ACEDO:  WELL, I THINK IT MAKES IT VERY DIFFICULT,

11   AS YOU POINTED OUT.  I MEAN, IF WE DON'T HAVE THE RECORD --

12   AND THERE MAY BE INSTANCES WHERE THERE WAS A RECORD KEPT HERE

13   AND THERE AT THIS FACILITY OR THAT FACILITY THAT WAS THAT

14   SPECIFIC.  ALL I CAN SAY IS, IN THE COURSE OF DISCOVERY, WHAT

15   WE'VE GATHERED AND PRODUCED HAVE NOT BEEN THAT DETAILED.  IT

16   WILL JUST SHOW THAT THEY WORKED ON A PARTICULAR DAY.  BUT AS

17   YOU MENTIONED, THAT MAKES IT EXTREMELY DIFFICULT TO LITIGATE

18   ANY SINGLE CASE, MUCH LESS A CASE ON A CLASS-WIDE BASIS WHERE

19   THERE'S THOUSANDS OF DETAINEES THAT ARE ALL COMING IN, SAYING,

20   I DIDN'T GET A BREAK ON THIS DAY, I DIDN'T GET A BREAK ON THIS

21   DAY AND I WORKED MORE THAN EIGHT HOURS.  YOU'RE GOING TO HAVE

22   TO HAVE, LITERALLY, THOUSANDS OF MINI-TRIALS TO DRILL DOWN ON

23   EVERY SINGLE DAY, EVER SINGLE SHIFT THAT EVERY SINGLE DETAINEE

24   WORKED TO FIGURE THAT OUT.  YOU CAN'T DO THAT ON A CLASS-WIDE

25   BASIS FOR ANY OF THESE CLAIMS.

```
1              THE COURT:  WELL, WHERE IN THE RECORD DO I HAVE

2    REFERENCES TO WHAT RECORDS YOU DO HAVE?  I MEAN (PAUSE) --

3              MR. ACEDO:  I DON'T HAVE THAT.

4              THE COURT:  -- COUNSEL CITED ME TO EXHIBITS 8, 10,

5    LINKS TO THE MANUAL.  WHO ELSE SHOULD I BE GOING TO TO GET ALL

6    THIS?

7              MR. ACEDO:  I CAN GET THE EXACT EXHIBITS WHEN I SIT

8    DOWN, YOUR HONOR.  I LOOKED AT EXHIBIT 8.  I THINK THAT'S THE

9    DEPOSITION TRANSCRIPT, BUT I'M NOT SURE WHERE IN THE RECORD IT

10   IS.  BUT WHAT IS IN THE RECORD REFLECTS WHAT IS, HOW THEY

11   TYPICALLY KEEP TRACK OF THIS.

12             THE COURT:  AND YOU'RE SUGGESTING THAT THE BEST

13   EVIDENCE IS DECLARATIONS FROM YOUR EMPLOYEES.

14             MR. ACEDO:  THAT'S CORRECT, AND --

15             THE COURT:  WHAT ABOUT DECLARATIONS FROM THE

16   DETAINEES THEMSELVES?

17             MR. ACEDO:  SURE, AND THEY'VE GOT FOUR OUT OF ABOUT

18   8,000 DETAINEES.  THEY'VE GOT DECLARATIONS FROM FOUR OF THEM,

19   AND THAT WOULD BE COMPETING EVIDENCE THAT THEY DIDN'T GET A

20   BREAK AND THEY WORKED THIS MANY HOURS, AND WE WOULD SAY, WELL,

21   THIS IS WHAT THE POLICY IS.  BUT GOING BACK TO WHETHER THAT'S

22   THE MOST EFFICIENT AND SUPERIOR WAY TO LITIGATE AN ACTION --

23             THE COURT:  WELL, WE KNOW THAT IF THIS DOESN'T HAPPEN

24   ON A CLASS BASIS, IT DOESN'T HAPPEN.  RIGHT, COUNSEL?

25             MR. ACEDO:  WELL, THAT'S NOT NECESSARILY --
```

1              THE COURT:  THESE DETAINEES ARE NOT IN A POSITION TO

2     TAKE ANY ACTION.  THEY'RE NOT GOING TO TAKE CORE CIVIC OR GEO

3     OR ANY OF THE OTHER PRIVATE FACILITIES TO SMALL CLAIMS COURT

4     OR BRING THEM INTO A CIVIL COURTROOM, ARE THEY?

5              MR. ACEDO:  WELL, I --

6              THE COURT:  IT'S NOT LIKELY TO HAPPEN.

7              MR. ACEDO:  ALL OF THEM?  NOT LIKELY.  BUT YOU'RE

8     PRESUMING THAT THEY ACTUALLY HAVE A CAUSE OF ACTION --

9              THE COURT:  NO, NO.

10             MR. ACEDO:  -- THEY FELT COMPELLED TO WORK.

11             THE COURT:  YOU'RE SAYING IT'S NOT A SUPERIOR WAY OF

12    DOING THIS, AND I'M SAYING IT MAY BE THE ONLY WAY TO CONSIDER

13    DOING THIS.  I DON'T KNOW.  I DON'T KNOW.  THESE CASES -- WE

14    DON'T HAVE ANY GUIDANCE FROM THE CIRCUIT, BECAUSE THESE CASES

15    ARE JUST NOW BEING BROUGHT.  CORRECT?

16             MR. ACEDO:  RIGHT.  THESE ARE RECENT CASES.

17             THE COURT:  THESE ARE RECENT CASES.  THESE ARE NEW

18    CASES.  I DON'T KNOW IF THERE'S ANY CASES FURTHER ALONG THAN

19    THE CASE THAT WAS CITED TO ME OUT OF THE CENTRAL DISTRICT.  DO

20    YOU KNOW OF ANY?

21             MR. ACEDO:  WELL, THAT ARE THIS FAR ALONG?  NO.  THE

22    MEDI-CAL CASE IS FURTHER ALONG THAN THIS CASE.  THE NOVOA CASE

23    WAS JUST CERTIFIED, AND THEN THIS IS THE NEXT ONE IN LINE.

24    THAT'S MY UNDERSTANDING.  BUT I AGREE, YOUR HONOR, THAT THIS

25    IS A TOUGH ISSUE.  IT'S A NEW ISSUE.  IT'S A NOVEL ISSUE.

1      SUPERIORITY, YOU HAVE TO LOOK AT VARIOUS THINGS.  THE FACT

2      THAT ALL 8,000 CLASS MEMBERS MAY NOT BRING THEIR INDIVIDUAL

3      SUITS, THAT'S ONE THING TO CONSIDER, AND THAT LIKELY WOULD BE

4      TRUE THAT THEY WOULDN'T DO THAT, BUT THEN YOU'VE GOT TO LOOK

5      AT THE OTHER SIDE OF THE COIN.  IS THIS REALLY -- IS THE

6      ALTERNATIVE THE ONLY ALTERNATIVE, WHICH IS TO HAVE A CLASS

7      ACTION?  BECAUSE AT THE END OF THE DAY WE'LL END UP BACK HERE

8      IN THIS COURTROOM AND WE'RE TRYING TO LITIGATE EACH OF THESE

9      INDIVIDUAL CLAIMS WHERE THERE JUST ISN'T THE PROOF, THERE'S NO

10     PLAN IN PLACE, THE DIFFICULTIES TO DO THAT.

11          SO WE CAN CERTIFY IT AND SAY, WELL, THE ONLY

12     ALTERNATIVE IS THIS, BUT AT THE END OF THE DAY WE END UP BACK

13     HERE, AND IT'S JUST NOT FEASIBLE.  IT'S JUST NOT EFFICIENT OR

14     ECONOMICAL.  AND IF IT REALLY MEANT THAT MUCH TO THE

15     DETAINEES, IF THEY, IN FACT, BELIEVE THAT THEY WERE COMPELLED

16     TO WORK OR FORCED TO WORK, OR IF THEY BELIEVE THAT THEY WERE

17     REALLY EMPLOYEES UNDER CALIFORNIA LAW, SOMETHING THAT'S NEVER

18     BEEN HELD IN THIS STATE, THEN THEY CAN PURSUE THEIR ACTION FOR

19     WHATEVER NUMBER OF HOURS THEY BELIEVE THAT THEY WORKED.

20          THE COURT:  OKAY.  SO LET ME GO BACK TO MY QUESTION.

21     THE NUMBER OF HOURS THAT ARE REQUIRED TO BE WORKED ARE IN THE

22     MANUALS, AND YOU CAN LOOK, DIRECT ME IF THERE'S ANYTHING YOU

23     WANT ME TO LOOK AT, BECAUSE I WAS DIRECTED TO EXHIBIT 8,

24     EXHIBIT 10, THE MANUALS AND LINKS IN THE MANUALS THAT GO TO

25     THE HOURS AND WHAT NOT.  SO YOU WOULD AGREE WITH THAT.

1          MR. ACEDO:  THE MANUAL SIMPLY SAYS THAT YOU CAN WORK

2     NO MORE THAN EIGHT HOURS IN A DAY OR 40 HOURS IN A WEEK.

3     THERE IS NO -- THAT I'VE SEEN -- LIST OF HOW MANY HOURS EVERY

4     OTHER JOB IS OR HOW LONG THEY ARE.  ALL WE HAVE ARE THE

5     (PAUSE) --

6          THE COURT:  I'M SORRY.  DOES IT HAVE REST AND MEAL

7     BREAKS SPELLED OUT IN ADDITION TO THE HOURS YOU CAN WORK?

8          MR. ACEDO:  NOT IN A WRITTEN POLICY, NO, YOUR HONOR.

9          THE COURT:  NOT IN A WRITTEN POLICY.  SO MEAL AND

10    REST BREAKS ARE DETERMINED BY WHOM?

11         MR. ACEDO:  WELL, THE OFFICER, WHOEVER, THE STAFF

12    MEMBER, WHOEVER IS SUPERVISING THE KITCHEN, WHICH, BY THE WAY,

13    IS -- IN OMDC, THAT'S RUN BY A VENDOR NAMED TRINITY, OR IF

14    IT'S THE PORTERS OR THE OUTSIDE WORKERS, THEY'RE ALL SORT OF

15    SUPERVISED BY AN OFFICIAL.  THEY REGULATE THAT INTERNALLY.

16    THEY KNOW WHO'S ON A SHIFT AND HOW LONG THE SHIFT IS AND WHEN

17    THEY START AND WHEN THEY STOP.

18         THE COURT:  BUT HOW DO THEY KNOW WHAT TO DO?  I MEAN,

19    THEY'VE JUST GOT A POLICY THAT TELLS THEM YOU'RE ENTITLED TO A

20    MEAL BREAK AFTER SO MANY HOURS, YOU'RE ENTITLED TO A REST

21    BREAK AFTER SO MUCH TIME.  I MEAN, HOW DO THESE FOLKS KNOW

22    THAT?  THE NUMBER OF HOURS TOTAL IS SET BY YOUR COMPANY'S

23    POLICY, AND I TAKE IT THAT'S UNIFORM THROUGHOUT THE SYSTEM,

24    YOUR COMPANY, CORE CIVIC.

25         MR. ACEDO:  THAT'S THE STANDARD, YES.

```
1              THE COURT:  RIGHT.

2              MR. ACEDO:  YES, YOUR HONOR, AND MY UNDERSTANDING IS

3   THAT ICE DOESN'T REQUIRE MEAL BREAKS, REST BREAKS BEING

4   SPELLED OUT, EITHER, I PRESUME, BECAUSE THAT'S ONLY NECESSARY

5   WHEN YOU'RE DEALING WITH AN EMPLOYER-EMPLOYEE RELATIONSHIP.

6   IF THAT WERE THE CASE, I'M SURE THERE WOULD BE, IT WOULD BE

7   SPELLED OUT IN POLICIES, HANDBOOKS, ORDERS.  BUT THIS HAS

8   NEVER BEEN A THING, SO THERE AREN'T THOSE TYPES OF WRITINGS.

9              THE COURT:  SO YOUR POSITION WOULD BE, NUMBER ONE,

10  THEY'RE NOT EMPLOYEES.  NUMBER TWO, YOU'RE FOLLOWING THE

11  GUIDELINES SET OUT BY THE GOVERNMENT WHEN THEY CONTRACT WITH

12  YOU TO DO THIS, AND IF IT'S NOT SET OUT, THEN YOU DON'T HAVE

13  TO DO IT.

14             MR. ACEDO:  WELL --

15             THE COURT:  BUT MAYBE, MAYBE SOME SUPERVISOR WOULD

16  EXTEND A MEAL BREAK OR A REST BREAK AS APPROPRIATE.

17             MR. ACEDO:  WELL, THEY WOULD.  HERE'S AN EXAMPLE.

18  LIKE THE KITCHEN WORKERS, THEY TYPICALLY WORK FIVE-AND-A-HALF

19  TO SIX HOURS A DAY.  THEY HAVE TO GET UP BEFORE THE INMATES

20  WAKE UP AND HAVE BREAKFAST PREPARED, AND THEN WHEN EVERYBODY

21  HAS -- THE DETAINEES -- I'M SORRY -- THE DETAINEES HAVE

22  BREAKFAST, THEY GO ON THEIR WAY.  THE BATHROOM AND KITCHEN

23  WORKERS HAVE THEIR MEAL, AND THEN AFTER THAT, THEN THEY CLEAN

24  UP, AND THEN THEY GET READY FOR THE NEXT SHIFT.  THE NEXT

25  SHIFT COMES ON.
```

1          SO IT JUST NATURALLY WORKS OUT.  THOSE DETAINEES NEED

2     TO EAT MEALS JUST LIKE EVERYONE ELSE.  THE WAY THAT IT'S

3     STRUCTURED IS, THEY PREPARE THE MEAL.  THEY SERVE THE MEAL.

4     THEY CLEAN UP.  THEY EAT.  SO IT'S BUILT INTO THEIR SHIFT.

5     THESE OTHER CHORES THAT TAKE AN HOUR, 30 MINUTES HERE, TWO,

6     TWO-AND-A-HALF HOURS, THE MAILROOM, FOR EXAMPLE, THERE'S A LOT

7     OF STANDING AROUND.  YOU KNOW, YOU FINISH YOUR TASK.  THEY

8     KNOW HOW LONG IT TAKES.  ALL RIGHT, YOU KNOW, THERE'S NOTHING

9     TO DO.

10          THIS ISN'T A SITUATION WHERE, YOU KNOW, YOU CAN GO TO

11     JACK-IN-THE-BOX OR MCDONALD'S ON YOUR WAY OR GO RUN AND DO A

12     AN ERRAND.  I MEAN, THAT'S WHY YOU NEED TO HAVE -- YOU KNOW,

13     THESE ARE THE POLICIES.  YOU GET A 15-MINUTE BREAK EVERY SO

14     MANY HOURS, SO YOU'RE ON NOTICE AND YOU CAN PLAN FOR THAT.

15     BUT HERE, BECAUSE YOU'RE ON BREAK, YOU KNOW, THEY TURN AROUND

16     AND WALK BACK TO THEIR LIVING POD.  THAT'S IT.  AND THEN THEY

17     KNOW THEY'VE GOT TO COME BACK AND CLEAN DURING THE NEXT SHIFT.

18          THE COURT:  OKAY.  WELL, LET ME MOVE ON.  MR. OWINO

19     WORKED IN THE KITCHEN AND AS A CHEMICAL PORTER AND CLEANER.

20     MR. GOMEZ WAS A CLEANER.  ARE THESE CLAIMS TYPICAL OF THOSE IN

21     THE VOLUNTEER WORK PROGRAM WHO HELD OTHER POSITIONS?  ARE

22     THEIR CLAIMS TYPICAL?

23          MR. ACEDO:  I DO THINK THAT THE DIFFERENCES IN THE

24     JOB DESCRIPTION DOES MATTER, FOR A COUPLE OF REASONS.  ONE,

25     EVERY JOB IS A DIFFERENT TASK.  IF YOU'RE SWEEPING THE FLOOR

1    OR DOING THE LAUNDRY, THOSE THINGS TAKE DIFFERENT AMOUNTS OF

2    TIME.  SO, LIKE THE KITCHEN WORKERS, IT'S FIVE-AND-A-HALF TO

3    SIX HOURS A SHIFT.  IF YOU ARE JUST CLEANING UP A LIVING POD,

4    THAT'S 30 MINUTES.  SO I THINK IT DOES MATTER.  IF YOU'RE JUST

5    A PORTER, YOU'RE NEVER GOING TO WORK 40 HOURS IN A WEEK OR

6    EIGHT HOURS IN A DAY.

7            THE COURT:  DO I HAVE IN THE RECORD A BREAKDOWN OF

8    THE DIFFERENT JOBS AND THE HOURS THAT IT REQUIRES AND THE KIND

9    OF SCHEDULE, THE APPROXIMATE SCHEDULE THAT DETAINEES WOULD BE,

10   UH (PAUSE) --

11           MR. ACEDO:  YES.  THE ANSWER IS YES.

12           THE COURT:  CAN YOU TELL ME WHERE THAT IS?  (PAUSE)

13           WE CAN COME BACK TO IT IF WE NEED TO.

14           MR. ACEDO:  THE NAME JUST ESCAPES ME, YOUR HONOR.

15   HE'S THE (PAUSE) -- OKAY.  THAT'S EXHIBIT (PAUSE) -- TOPASNA

16   IS HIS LAST NAME.  IT LOOKS LIKE HIS DECLARATION IS EXHIBIT

17   17.

18           THE COURT:  OKAY.  WELL, THAT'S HELPFUL.

19           SO YOU WOULD TAKE THE POSITION THAT I WOULD NEED TO

20   NARROW THE CALIFORNIA LABOR LAW CLASS TO INCLUDE ONLY THOSE

21   POSITIONS THAT MR. OWINO AND MR. GOMEZ HELD.

22           MR. ACEDO:  WELL, AT A, AT A --

23           THE COURT:  OR, OR PLAINTIFFS COULD AMEND THE

24   COMPLAINT, BUT THAT'S ANOTHER WHOLE ISSUE OVER THERE AS TO

25   WHETHER OR NOT THAT WOULD BE PERMITTED, TO ADD MORE REPS.  BUT

1    YOU THINK IT'S DONE BY THE JOB.

2          MR. ACEDO:  I THINK THAT CERTAINLY INFLUENCES THE

3    TYPICALITY FACTOR, AND WHEN YOU'RE LOOKING AT THE CLASS

4    DEFINITIONS, THEY DIDN'T BREAK IT OUT LIKE THAT.  WHAT'S

5    BEFORE YOU, YOUR HONOR, ARE THOSE CLASS DEFINITIONS, AND THEY

6    JUST -- THEY DON'T DISTINGUISH IT, JUST AS DETAINEES, AND FOR

7    THAT REASON WE SHOULDN'T BE GETTING INTO SUBCLASSING IT OR

8    AMENDING IT OUT.  SO THE MOTION SHOULD BE DENIED.

9          THE COURT:  OKAY.  THE PLAINTIFFS ARE SEEKING

10   CERTIFICATION OF THE CALIFORNIA LABOR LAW CLASS FOR BOTH

11   FORMER AND CURRENT PARTICIPANTS IN THE VOLUNTEER WORK PROGRAM,

12   BUT THE NINTH CAUSE OF ACTION FOR FAILURE TO PAY COMPENSATION

13   UPON TERMINATION APPLIES ONLY TO FORMER PARTICIPANTS.  WHAT IS

14   THE IMPACT OF THAT ON THE CALIFORNIA LABOR LAW CLASS, SIR?

15         MR. ACEDO:  I THINK IT'S AN EASY ANSWER.  THEY DON'T

16   MENTION THAT CAUSE OF ACTION IN THEIR MOTION AT ALL.  THEY

17   DON'T MENTION LABOR CODE SECTIONS 201 TO 203.  THEY DON'T MOVE

18   TO CERTIFY THAT CLASS.  IT'S AS EASY AS THAT.

19         THE COURT:  OKAY.  WHAT ABOUT THE STATUTE OF

20   LIMITATIONS?  WE'VE GOT A THREE-YEAR PERIOD FOR CLAIMS FOR

21   ACTUAL DAMAGES, A ONE-YEAR PERIOD FOR PENALTIES.  GIVEN THE

22   DATE WHEN THIS ACTION STARTED AND THE DATE ON WHICH MR. OWINO

23   AND MR. GOMEZ CEASED PARTICIPATION IN THE VOLUNTEER WORK

24   PROGRAM, IT APPEARS TO THE COURT THAT NEITHER MR. OWINO NOR

25   MR. GOMEZ IS WITHIN THE LIMITATION PERIOD FOR PENALTIES AND

1    THAT MR. GOMEZ IS OUTSIDE THE LIMITATION PERIOD FOR ACTUAL

2    DAMAGES.  WHAT DOES THAT DO, COUNSEL, IN YOUR VIEW, FOR

3    CERTIFYING THE CALIFORNIA LABOR LAW CLASS?

4         MR. ACEDO:  TO BE TYPICAL OF THE CLASS, YOU HAVE TO

5    HAVE A VALID CLAIM.  IF YOU DON'T HAVE A VALID CLAIM,

6    OBVIOUSLY, IT'S TIME-BARRED.  AS YOU POINTED OUT, BOTH OWINO'S

7    AND GOMEZ'S CLAIMS ARE TIME-BARRED.  BECAUSE THEY DO NOT HAVE

8    AN INDIVIDUAL CLAIM, THEY CANNOT REPRESENT THE CLASS FOR LACK

9    OF TYPICALITY.

10        AND WE DISAGREE WITH THE PLAINTIFFS' POSITION THAT

11   THE UCL, BECAUSE IT HAS A LONGER STATUTE OF LIMITATIONS,

12   SOMEHOW STRETCHES THAT OUT FROM THREE YEARS TO FOUR YEARS.

13   THERE'S NO AUTHORITY FOR THAT.  THEY CITED NONE.  I BELIEVE

14   THEY CITED ONE CASE THAT DOESN'T STAND FOR THAT PROPOSITION,

15   BUT THEY DON'T GET TO PICK AND CHOOSE WHICH STATUTE OF

16   LIMITATIONS APPLIES TO THEIR CLAIMS.  IF THEY'RE BRINGING A

17   CLAIM FOR NEGLIGENCE, THAT'S TWO YEARS.  THAT'S IT.  IF

18   THEY'RE BRINGING A CLAIM FOR LABOR CODE PENALTY PROVISIONS,

19   THAT'S ONE YEAR.  THAT'S IT.  THEY DON'T GET TO BOOTSTRAP A

20   CLAIM WITH A LONGER STATUTE OF LIMITATIONS, WHICH IS

21   DERIVATIVE, BY THE WAY.  THEY'VE ADMITTED THAT THIS UCL CLAIM

22   IS A DERIVATIVE CLAIM.  IT'S DERIVATIVE TO EVERYTHING ELSE.

23   IT'S NOT THE DRIVING CLAIM.  IT'S DERIVATIVE.  SO, IF IT'S

24   DERIVATIVE, YOU HAVE TO GO WITH WHAT THE STATUTE OF

25   LIMITATIONS IS FOR THE PREDICATE CLAIM.

1              THE COURT:  YOU HEARD THE COURT'S CONCERNS OUTLINED

2      IN MY TENTATIVE.  IS THERE A WAY TO NARROW THE CALIFORNIA

3      LABOR LAW CLASS SUCH THAT THE COURT COULD GRANT CERTIFICATION

4      TO SOME CLAIMS OR TO SOME OF THE POSITIONS HELD BY DETAINEES

5      PARTICIPATING IN THE VOLUNTEER WORK PROGRAM?  WOULD THERE BE A

6      NEED FOR SUBCLASSES, OR HOW DO YOU FEEL ABOUT THAT?

7              MR. ACEDO:  WELL, OBVIOUSLY, OUR POSITION IS THAT

8      NONE OF THEM SHOULD BE CERTIFIED FOR VARIOUS REASONS.  BUT IF

9      YOU WOULD ALLOW ME, I'D LIKE TO GO THROUGH SOME OF THESE,

10     BECAUSE I THINK WE CAN EASILY WIPE THEM OUT, AND THEN WHAT'S

11     LEFT MAY BE DEBATABLE.  BUT, AS I POINT OUT, THE NINTH CAUSE

12     OF ACTION, THEY DON'T MENTION THAT IN THEIR BRIEFING.  THAT

13     SHOULD BE OUT.

14             NONE OF THE LABOR CODE CLAIMS CAN BE CERTIFIED TO THE

15     EXTENT THAT THEY'RE BASED ON THE WAGE HOUR, THE WAGE ORDER

16     5-2001, OR TO THE EXTENT THEY SEEK PENALTIES, OR TO THE EXTENT

17     THAT THERE'S A DERIVATIVE NEGLIGENCE CLAIM FOR ALL THE REASONS

18     WE JUST STATED, THAT THOSE ARE THREE-, TWO-, AND ONE-YEAR

19     STATUTES OF LIMITATIONS.  THEY'RE TIME-BARRED.  SO THOSE ALL

20     GO OUT THE WINDOW.

21             THE WAGE STATEMENT CLAIM -- THAT'S THE EIGHTH CAUSE

22     OF ACTION -- THAT ONLY SEEKS PENALTIES.  IF YOU LOOK AT

23     PARAGRAPH 92 OF THEIR AMENDED COMPLAINT, IT LOOKS TO US LIKE

24     THAT THE ONLY REMEDY FOR THAT CLAIM, THE WAGE STATE CLAIM, IS

25     PENALTIES, AND BECAUSE EITHER OWINO OR GOMEZ CAN'T BRING A

1    CLAIM FOR PENALTIES BECAUSE IT'S TIME-BARRED, THAT CAN'T BE

2    CERTIFIED.

3           YOU'VE GOT THE REST BREAK, MEAL BREAK, AND OVERTIME

4    WAGE CLAIMS.  I BELIEVE OUR STRONGEST ARGUMENT ON THOSE CLAIMS

5    IS THAT INDIVIDUAL ISSUES PREDOMINATE.  FOR ALL, EACH ONE OF

6    THOSE CLAIMS, YOU HAVE TO DECIDE FOR EACH DETAINEE, HOW LONG

7    DID YOU WORK?  DID YOU GET A BREAK?  HOW MANY DAYS IN THE WEEK

8    DID YOU WORK?  ALL OF THOSE CLAIMS, YOU HAVE TO LOOK AT, YOU

9    ACTUALLY HAVE TO LOOK AT HOW MANY HOURS OF EACH DAY AND EACH

10   WEEK THEY WORKED.  THOSE ARE INDIVIDUAL QUESTIONS FOR EACH

11   DETAINEE.  IT'S NOT LIKE THE MINIMUM WAGE CLAIM WHERE, IF YOU

12   WORKED ONE HOUR AND YOU GOT $1 AND YOU DIDN'T GET MINIMUM

13   WAGE, THERE'S A VIOLATION.  THOSE THREE CLAIMS -- REST BREAK,

14   MEAL BREAK, AND OVERTIME -- YOU HAVE TO DELVE INTO THE FACTS

15   OF EACH CASE.  THAT'S NOT A ONE-STROKE ANSWER, AND FOR THAT

16   REASON THOSE THREE CLAIMS SHOULD NOT BE CERTIFIED.

17          NOW, WHEN YOU LOOK AT THE MINIMUM WAGE CLAIM --

18   THAT'S THE FOURTH CAUSE OF ACTION -- I'D FIRST POINT OUT THAT

19   THE TENTH CAUSE OF ACTION, WHICH IS THE UNLAWFUL TERM CLAIM,

20   IT LOOKS LIKE THAT UNLAWFUL TERM CLAIM, WHICH IS THAT WE

21   ALLEGEDLY REQUIRED DETAINEES TO SIGN OFF ON TERMS OF

22   EMPLOYMENT THAT VIOLATED THE LAW, THAT CAN ONLY ATTACH TO THE

23   MINIMUM WAGE CLAIM, BECAUSE THEY CITE TO THE HANDBOOK THAT

24   SAYS COMPENSATION WILL BE $1.  SO, IF THAT UNLAWFUL TERM CLAIM

25   IS SOLELY BASED ON THAT MINIMUM WAGE CLAIM, IT CAN ONLY BE

1    CERTIFIED TO THE EXTENT THAT THE MINIMUM WAGE CLAIM CAN BE

2    CERTIFIED.

3            AND SO THAT'S REALLY WHAT I BELIEVE, IS, YOU KNOW, IF

4    THERE'S ANY DEBATE HERE, IT'S THIS MINIMUM WAGE.  AS THEY

5    POINT OUT, THERE'S A COMMON ISSUE, WHETHER THEY'RE EMPLOYEES

6    OR NOT.  THAT WOULD CUT ACROSS ALL THE CLAIMS.  BUT WHEN YOU

7    LOOK AT JUST THE MINIMUM WAGE CLAIMS, YES, THAT WOULD BE A

8    COMMON QUESTION.  ARE THEY EMPLOYEES UNDER CALIFORNIA LAW?

9    BUT ONCE YOU'VE ANSWERED THAT QUESTION, IT BECOMES A

10   SMORGASBORD OF ISSUES.

11           DAMAGES, AND I UNDERSTAND THAT NORMALLY DAMAGES

12   CANNOT MEET CLASS CERTIFICATION.  THAT'S THE GENERAL

13   PRINCIPLE, BUT I THINK THERE'S ALSO AN IMPLIED LIMITING

14   PRINCIPLE THAT WHEN YOU'VE GOT SEVERAL THOUSANDS OF INMATES,

15   OR DETAINEES -- EXCUSE ME -- AND WE DON'T HAVE THE RECORDS TO

16   KNOW HOW MANY HOURS THAT EACH OF THEM WORKED, TO BE ABLE TO

17   FIGURE THAT OUT, AND THEN ON TOP OF THAT YOU'VE GOT CORE

18   CIVIC'S COUNTERCLAIM FOR UNJUST ENRICHMENT, WHEN YOU HAVE TO

19   LOOK AT EACH INDIVIDUAL, AND I THINK THIS IS A VERY IMPORTANT

20   DISTINCTION FROM OTHER CASES, YOU'VE GOT CORE CIVIC'S UNJUST

21   ENRICHMENT CLAIM.  SO, IF YOU'VE GOT DETAINEE OWINO WHO WORKED

22   EIGHT HOURS IN A DAY AND HE DIDN'T GET MINIMUM WAGE, WHAT YOU

23   WOULD THEN NEED TO DO IS DEDUCT FROM THAT THE COST OF HIS

24   LIVING, THE COST OF HIS DETENTION, EVERYTHING THAT HE'S

25   GETTING FOR FREE AT CORE CIVIC'S EXPENSE.  THAT IS OUR

1    COUNTERCLAIM FOR UNJUST ENRICHMENT, AND YOU WOULD HAVE TO DO

2    THAT FOR EACH DETAINEE.

3              THE COURT:  OKAY.  THIS CASE PRESENTS SO MANY ISSUES.

4              MR. ACEDO:  IT DOES.

5              THE COURT:  IT PRESENTS A LOT OF ISSUES.  OKAY.

6              MR. ACEDO:  AND FOR THAT REASON, I DON'T THINK THAT

7    THE REACTION SHOULD BE, LET'S JUST CERTIFY IT AND FIGURE IT

8    OUT, BECAUSE IT'S JUST GOING TO BE MORE AND MORE ISSUES, AND I

9    THINK THAT GOES TO THE SUPERIORITY PROBLEM.

10             THE COURT:  NO, NO.  BECAUSE IT'S DIFFICULT, WE

11   SHOULDN'T WALK AWAY FROM IT, EITHER, AND SAY, I DON'T THINK

12   THESE PEOPLE HAVE ANY RECOURSE.  OR DETAINEES.  I MEAN, WE

13   REALLY NEED TO TAKE A LOOK AT THIS AND FIGURE SOMETHING OUT,

14   YOU KNOW, WITH THE LAW THAT WE HAVE HERE.  SO, OKAY.  I THINK

15   I UNDERSTAND THAT ANSWER.

16             SO HERE, COUNSEL, A QUESTION JUST FOR DEFENSE.  HOW

17   COULD THE COURT POSSIBLY CONCLUDE AFTER TWO-AND-A-HALF YEARS

18   INTO THIS CASE THAT YOU HAVEN'T WAIVED AN OBJECTION TO

19   PERSONAL JURISDICTION, SIR?

20             MR. ACEDO:  IT'S OUR POSITION, YOUR HONOR, THAT YOU

21   CAN ONLY RAISE THAT DEFENSE ONCE IT BECOMES AVAILABLE, AND

22   THAT DEFENSE IS NOT EVEN YET AVAILABLE UNTIL AND UNLESS THE

23   COURT CERTIFIES THE CLASS.  AS PLAINTIFFS POINT OUT, NONE OF

24   THE PUTATIVE CLASS MEMBERS ARE NAMED PLAINTIFFS.  THEY'RE NOT

25   CLASS REPRESENTATIVES.  THEY DON'T EVEN EXIST IN THIS LAWSUIT.

1    WE'VE CITED CASES WHERE COURTS HAVE ALLOWED THESE TYPES OF

2    MOTIONS TO BE FILED CONTEMPORANEOUSLY WITH OR IN OPPOSITION TO

3    A MOTION FOR CLASS CERTIFICATION.  THEY'VE CITED CASES THAT

4    HAVE RULED THAT YOU'VE GOT TO FILE IT IN THAT INITIAL RULE 12

5    MOTION.  THERE'S CASES ON BOTH SIDES, ADMITTEDLY, BUT WHAT I

6    THINK THAT THAT ALLOWS, WHAT I THINK WHAT THAT GIVES YOU IS

7    THE DISCRETION.  IT GIVES YOU DISCRETION.  IT'S NOT A

8    HARD-AND-FAST RULE.

9            AND I KNOW THAT THE -- YOU SAID TWO YEARS.  I'M NOT

10   SURE IF THAT'S WHEN THE COMPLAINT WAS FILED OR OUR ORIGINAL

11   ANSWER.  BUT IF YOU LOOK AT OUR ORIGINAL ANSWER, WE WERE

12   RESPONDING TO THE TWO NAMED PLAINTIFFS THAT THERE IS PERSONAL

13   JURISDICTION OVER THOSE TWO.  WE REJECTED ALL OTHER

14   ALLEGATIONS TO THE EXTENT THAT THEY WENT TO CLASS

15   CERTIFICATION.  WE DENIED THOSE, WHICH WOULD ARGUABLY INCLUDE

16   ANY FUTURE PERSONAL JURISDICTION OF A NATIONWIDE CLASS CLAIM.

17   THEN WE ACTUALLY AMENDED OUR ANSWER TO MAKE IT MORE CLEAR TO

18   THE COURT SO THAT EVERYBODY WAS ON NOTICE, AND THAT'S WHAT

19   DIFFERENTIATES OUR CASE FROM A LOT OF CASES THEY CITE WHERE

20   THE DEFENDANTS IN THOSE CASES WOULD RAISE FOR THE FIRST TIME

21   IN AN OPPOSITION A MOTION FOR CLASS CERTIFICATION.  WE

22   ACTUALLY HAVE IT IN OUR ANSWER TO THE AMENDED COMPLAINT.

23           THE OTHER POINT I WOULD LIKE TO MAKE IS, THEY DIDN'T

24   RAISE ANY ISSUE WITH THIS FOR A YEAR.  THE FIRST TIME THAT

25   THEY BROUGHT THIS UP WAS IN THEIR RESPONSE TO OUR MOTION.  IF

```
 1    THERE WAS PREJUDICE, IF THERE WAS A CONCERN, THEY SHOULD HAVE

 2    RAISED IT AT THAT TIME AND THEY DIDN'T FOR OVER A YEAR, AND WE

 3    WEREN'T EVEN SURE IF THEY WERE GOING TO MOVE FORWARD WITH

 4    THESE NATIONWIDE CLAIMS.  IF THEY NEVER MOVED FOR IT, THIS

 5    ISSUE IS MOOT, WHICH I THINK GOES TO WHY IT'S PREMATURE UNTIL

 6    AND UNLESS THEY'VE ACTUALLY MOVED FOR CLASS CERTIFICATION OR

 7    THAT IT'S CERTIFIED.  AND NOT ONLY DID THEY MOVE FOR CLASS

 8    CERTIFICATION ON THE NATIONWIDE CLAIM, THEY ADDED TWO -- THEY

 9    ADDED ANOTHER NATIONWIDE CLAIM.

10         THE COURT:  OKAY.  DID YOU OBJECT TO DISCOVERY

11    CONCERNING THE BASIC NECESSITY CLASSES?

12         MR. ACEDO:  OBJECT TO DISCOVERY?

13         THE COURT:  DID YOU OBJECT TO DISCOVERY IN THAT AREA?

14         MR. ACEDO:  YEAH.  THAT WASN'T -- THAT WAS -- THERE'S

15    NO MENTION OF THAT IN THE COMPLAINT.  THERE'S NO MENTION OF A

16    BASIC NECESSITIES CLAIM.

17         THE COURT:  I KNOW.  OKAY.

18         MR. ACEDO:  SO, NO, THAT WAS NOT AN AREA THAT WE

19    EXPLORED.  AND, FRANKLY, IT'S IRONIC THAT, ONCE THEY BRING IT

20    UP FOR THE FIRST TIME IN THE MOTION AND THEN WE'VE GOT TO

21    SCRAMBLE AND TRY TO REBUT IT WITH EVIDENCE, THEY WANT TO MOVE

22    TO EXCLUDE THAT EVIDENCE WHEN WE HAD NO NOTICE THAT THIS WAS

23    EVEN PART OF THE CLAIM.

24         AND I'D LIKE TO TANGENT OFF TO SOMETHING THAT THEY

25    HAD SAID IN RESPONSE TO YOUR QUESTION ABOUT, ABOUT THIS ISSUE.
```

1          I LOST MY TRAIN OF THOUGHT.  GIVE ME A SECOND.

2          THE COURT:  SURE.

3          MR. ACEDO:  I'LL STOP AT THAT POINT.

4          THE COURT:  OKAY.  YOU CAN BRING THAT UP WHENEVER YOU

5   RECALL THAT THOUGHT.

6          I'M ASSUMING, SIR, THAT YOU WOULD OBJECT TO

7   PLAINTIFFS AMENDING THE COMPLAINT TO CURE ANY DEFICIENCIES

8   SHOULD THEY REMAIN IN THE COURT'S FINAL RULING.

9          MR. ACEDO:  YES, YOUR HONOR.

10          THE COURT:  AND IS THERE EVIDENCE IN THE RECORD, AND

11   WHERE IS IT, THAT YOUR POLICIES ARE NOT UNIFORM ACROSS ALL

12   YOUR FACILITIES, OR DO YOU CONCEDE THAT THEY ARE UNIFORM

13   ACROSS ALL YOUR FACILITIES?

14          MR. ACEDO:  I BELIEVE THEY SUBMITTED SEVEN, POLICIES

15   FROM SEVEN FACILITIES OF THE 24.  IF YOU JUST LOOK AT THOSE

16   POLICIES THEMSELVES, THEY'RE NOT IDENTICAL.  THEY GENERALLY

17   SAY THE SAME THING, AND WE DON'T DISPUTE THAT AS A NATIONWIDE

18   CORPORATION, OR I SHOULD SAY A CORPORATION WITH FACILITIES

19   NATIONWIDE, THERE'S GOT TO BE CERTAIN STANDARDS.  THE STANDARD

20   IS ICE AND WE'VE GOT TO FOLLOW THOSE STANDARDS, SO WE CREATE

21   STANDARD POLICIES.  BUT AT THE FACILITY LEVEL, I CAN'T TELL

22   YOU WHAT THE POLICY IS AT ONE OF THE FACILITIES THAT THEY

23   DIDN'T EVEN BRING UP.  I CAN'T TELL YOU WITH CERTAINTY, YEAH,

24   THAT POLICY IS IDENTICAL.

25          THE COURT:  WOULD THIS BE A FAIR STATEMENT, THAT THE

1   POLICIES ARE UNIFORM, BUT THERE MAY BE SOME MINOR VARIANCES IN

2   A FACILITY, AND THAT THEY WOULD STILL ALL BE IN COMPLIANCE

3   WITH WHAT ICE REQUIRES AND WHAT YOUR COMPANY REQUIRES IN THE

4   POLICY?

5            MR. ACEDO:  THAT WOULD BE ACCURATE.

6            THE COURT:  ALL RIGHT.  I THINK THOSE ARE THE ONLY

7   QUESTIONS I HAVE AT THIS TIME.  WE'VE BEEN IN SESSION FOR A

8   LITTLE BIT OVER AN HOUR.  I'M GOING TO SAY WE TAKE TEN MINUTES

9   TO COOL OFF AND COME BACK.  THEN WHAT I'D LIKE TO DO IS GIVE

10  PLAINTIFF TEN MINUTES AND YOU TEN MINUTES.  I WON'T INTERRUPT.

11  YOU SAW THE AREAS OF THE COURT'S CONCERN.  YOU SAW THE AREAS I

12  HAD QUESTIONS ON.  I'D LIKE TO HEAR YOUR VIEWS AND YOUR VIEWS

13  ON IT BEFORE WE DEEM IT AS SUBMITTED.  OKAY.  GET A GLASS OF

14  WATER AND COOL OFF.

15           MS. RIDLEY:  THANK YOU, YOUR HONOR.

16           THE COURT:  THANK YOU.

17           (RECESS)

18           THE COURT:  COUNSEL, I WANTED TO GO OVER MY NOTES AND

19  YOUR RESPONSES AND THINGS AND SEE IF THERE'S ANYTHING ELSE I

20  WANTED TO ASK YOU.  I DON'T HAVE ANYTHING ELSE AT THIS TIME.

21           SO I'D LIKE TO HEAR FROM PLAINTIFF.  YOU'VE GOT TEN

22  MINUTES UNINTERRUPTED, HOPEFULLY, MA'AM.

23           MS. RIDLEY:  THANK YOU, YOUR HONOR.

24           YOUR HONOR, IN LIGHT OF YOUR QUESTIONS, I WANT TO

25  FOCUS MY DISCUSSION BASED ON YOUR QUESTIONS.  WITH RESPECT TO

1    THE COURT -- I BELIEVE THE COURT ON THE LABOR CLASS IS GOING

2    TOO DEEP INTO QUESTIONS AND IT DOESN'T NEED TO.

3         THE COURT:  OKAY.

4         MS. RIDLEY:  I BELIEVE THE COURT CAN AND SHOULD FIND

5    A CALIFORNIA LABOR CLASS, AND THIS IS NOT UNIQUE.  IN FACT, I

6    WOULD COMMEND AND ASK THE COURT TO TAKE A LOOK AT THE NOVOA

7    CASE.  VERY SIMILAR SITUATION.  ALSO HAD INDIVIDUALS WITH

8    DIFFERENT POSITIONS.  FOUND A LABOR CLASS IN AND OF ITSELF

9    BASED ON THE ISSUE, THE CENTRAL LEGAL ISSUE OF, ARE THEY

10   EMPLOYEES OR ARE THEY NOT?  AND BASED ON THAT, WAS THERE

11   COMPLIANCE WITH THE APPLICABLE LAW?

12        THE COURT:  SO THIS IS THE CASE THAT YOU'VE PROVIDED

13   ME.

14        MS. RIDLEY:  THAT'S EXACTLY RIGHT.

15        THE COURT:  WELL, BUT YOU'RE SAYING AT THAT POINT THE

16   JUDGE HAS ALREADY DECIDED THAT THEY'RE EMPLOYEES?

17        MS. RIDLEY:  WHAT THE JUDGE IS DECIDING IS THAT THERE

18   IS A PREDOMINANT LEGAL QUESTION, OVERARCHING, AS TO WHETHER OR

19   NOT THE INDIVIDUALS WHO WERE IN THE WORK PROGRAM SHOULD BE

20   CONSIDERED AS A MATTER OF LAW EMPLOYEES, AND IF SO, WERE THEY,

21   WERE THEY TREATED IN COMPLIANCE WITH CALIFORNIA LABOR LAW?

22        THE COURT:  AND THAT WAS THE BASIS FOR A

23   CERTIFICATION.

24        MS. RIDLEY:  EXACTLY.

25        THE COURT:  OKAY.

1          MS. RIDLEY:  AND THAT'S EXACTLY WHAT WE'RE TALKING

2   ABOUT HERE.

3          THE COURT:  OKAY.

4          MS. RIDLEY:  OKAY.  AND SO, AGAIN, WE BELIEVE YOU CAN

5   AND SHOULD DO THAT, AND PART OF THE ISSUE WITH REGARD TO THAT

6   IS ALSO DESCRIBED IN THE SPECIFIC, AS I NOTED BEFORE, THE

7   AREAS OF THE LABOR CODE THAT I IDENTIFIED IN OUR BRIEF ON PAGE

8   17.  YOU KNOW, FOR EXAMPLE, THE FACT THAT NO MINIMUM --

9   ASSUMING THERE IS A DETERMINATION WITH REGARD TO WHETHER OR

10  NOT THEY'RE EMPLOYEES, THAT'S THE FIRST OVERARCHING,

11  PREDOMINANT QUESTION.  THAT QUESTION DOESN'T CHANGE

12  IRRESPECTIVE OF WHAT THE PERSON DID OR DIDN'T DO IN WORK.

13  IT'S JUST A BLANK QUESTION.

14         THE COURT:  IT'S OVERARCHING.

15         MS. RIDLEY:  IT'S OVERARCHING.  YOU COULD BE CLEANING

16  OR YOU COULD BE IN THE KITCHEN; STILL AN OVERARCHING QUESTION.

17         THE COURT:  RIGHT.

18         MS. RIDLEY:  AND THEN ONCE YOU GET TO THAT QUESTION,

19  THE OTHER QUESTIONS REGARDING, WERE THEY PAID MINIMUM WAGE,

20  DID THEY GET OVERTIME, DID THEY GET MEAL OR REST PERIODS,

21  ETC., THOSE ARE OVERARCHING QUESTIONS, TOO.  THE AMOUNT OF

22  DAMAGES, WHICH REALLY GOES TO HOW LONG DID THEY WORK, THINGS

23  OF THAT SORT, THAT IS NOT -- EVEN IF A PLAINTIFF HAS DIFFERENT

24  DAMAGES, THAT DOES NOT SERVE BY LAW TO NEGATE THE

25  CERTIFICATION OF A CLASS.

1          BUT TO ANSWER SOME OF THE QUESTIONS THAT THE COURT

2     HAD, I WILL NOTE THERE IS PLENTY OF EVIDENCE REGARDING

3     SCHEDULING.  IF YOU TAKE A LOOK AT THE OMS REPORTS, YOU CAN

4     FIND THEM IN THE RECORD IN TWO PLACES.  IT'S UNDER DOCUMENT

5     97, WHICH IS MY DECLARATION, EXHIBITS 12 THROUGH 18.  IT'S

6     ALSO ON DOCKET 85, EXHIBITS 45 THROUGH 88.  THOSE DOCUMENTS

7     SAY WHO WORKED, WHEN THEY WORKED, DOING WHAT, WHAT THEY WERE

8     PAID.

9          WHAT'S ALSO INTERESTING IS, WE HAVE EVEN TESTIMONY

10    THAT TALKS ABOUT THINGS LIKE SHIFTS.  IF YOU TAKE A LOOK AT

11    THE DECLARATION OF MR. TOPASNA, HE TALKS ABOUT TYPICAL SHIFT

12    LENGTHS, AND I WON'T BELABOR THE ISSUE, BUT FOR EXAMPLE, ON

13    PARAGRAPH 39, AND THIS IS IN DOCKET 118, HE SAYS KITCHEN

14    WORKERS TYPICALLY WORK FOUR- TO SIX-HOUR SHIFTS, EITHER

15    BREAKFAST, LUNCH, OR DINNER, FIVE DAYS A WEEK, THEN DESCRIBES

16    THE BREAKFAST SHIFT AS THREE A.M. TO 8:30, THE LUNCH AT NINE

17    A.M. TO THREE, AND HE GOES ON IN PARAGRAPHS 39 THROUGH 42 AND

18    TALKS ABOUT DIFFERENT OTHER POSITIONS AND THE TYPICAL TIME

19    THAT WOULD BE EXPECTED FOR THE PEOPLE TO WORK.

20          ON TOP OF THAT, IF YOU TAKE A LOOK AT THE ACTUAL

21    POLICIES AND MANUALS, FOR EXAMPLE, EXHIBIT, DOCKET 97-3, AT

22    EXHIBIT 5, UNDER (H) -- THIS IS ON -- IT'S PAGE BATES-STAMPED

23    CCOG00076709.  IT SAYS, THE DETAINEE WORKDAY WILL APPROXIMATE

24    THE WORKDAY IN THE COMMUNITY, AND WE SEE THAT OVER AND OVER

25    AGAIN.  AT EXHIBIT 8, WORK SCHEDULE, THE JOBS COORDINATOR,

1    PROGRAM MANAGER, AND DEPARTMENT HEADS WILL DETERMINE THE HOURS

2    OF WORK SO AS TO ALLOW THE MAXIMUM PARTICIPATION IN THE JOB

3    AND EDUCATION PROGRAM.  THE INMATE RESIDENT WORKDAY WILL

4    APPROXIMATE THE WORKDAY OF THE COMMUNITY.

5            AND WHAT'S NOTABLE IS, AND I BELIEVE MY OPPOSING

6    COLLEAGUE SPECIFICALLY NOTED, THESE ARE TYPICAL.  IN OTHER

7    WORDS, THERE'S NO PROBLEM WITH TYPICALITY.  THESE ARE YOUR

8    TYPICAL WORKDAYS.  THE ACTUAL TASK THAT'S BEING DONE MIGHT BE

9    DIFFERENT, BUT THERE ARE TYPICAL WORKDAYS.  THEY GET PAID THE

10   SAME WAY, AND IT'S ALL UNDER THE SAME POLICY, THE POLICY OF

11   HAVING THIS WORK PROGRAM.

12           NOW, THE QUESTION WITH REGARD TO HOW MUCH, SHOULD

13   THERE BE MORE RECORDS, SHOULD THERE BE A SHOWING OF MEAL AND

14   ALL THAT, THE ANSWER IS OBVIOUSLY YES IF IT WAS COMPLYING WITH

15   THE LAW, BUT THEY SHOULD NOT BENEFIT FOR FAILURE TO COMPLY

16   WITH THE LAW.  AND NOTABLY, EVEN THE ICE REQUIREMENTS SAY, IF

17   YOU'RE GOING TO HAVE THIS VOLUNTARY WORK PROGRAM, YOU HAVE TO

18   PAY THEM AT LEAST A DOLLAR.  IT'S NOT A MAXIMUM.  AT LEAST A

19   DOLLAR.  AND THEN IT ALSO SAYS, BUT YOU HAVE TO COMPLY WITH

20   THE LAW.  SO ICE REQUIRES COMPLIANCE WITH THE LAW.  SO THE

21   FACT THAT THEY DON'T HAVE RECORDS AND THEY DIDN'T PAY THE

22   MINIMUM WAGE AND THEY DIDN'T GIVE THEM WAGE STATEMENTS, ALL OF

23   THAT THEY CANNOT USE TO THEIR BENEFIT NOW TO SOMEHOW SAY THESE

24   DETAINEES HAVE NO ABILITY TO SEEK REDRESS.  SO WE BELIEVE, AS

25   I SAID, YOU CAN ABSOLUTELY AND SHOULD CERTIFY A CALIFORNIA

1    LABOR CLASS.

2            WITH REGARD TO THE ISSUE RELATED TO THE STATUTE OF

3    LIMITATIONS, COUNSEL IS JUST INCORRECT, AND I WOULD ASK THE

4    COURT TO RECONSIDER THE BRANDON CASE, WHICH IS 2013 WESTLAW

5    800265, AS WELL AS THE CORTEZ CASE, WHICH IS 23 CAL.4TH 163.

6    THE ASSERTION OF THE UCL EXTENDS THE STATUTORY TIME PERIOD,

7    AND, FRANKLY, THAT IS TYPICAL OF LABOR CLAIMS IN CALIFORNIA.

8            THE QUESTION OF WHETHER OR NOT IT'S APPROPRIATE OR

9    PERMISSIBLE TO SUBSTITUTE ANOTHER POTENTIAL CLASS MEMBER AS A

10   REPRESENTATIVE MEMBER, I WOULD ASK THE COURT TO TAKE A LOOK AT

11   NATIONAL FEDERATION OF THE BLIND VS. TARGET AS AUTHORITY THAT

12   THAT, IN FACT, CAN BE DONE.

13           AND I WANT TO BE CLEAR THAT, TO THE EXTENT WE TALKED

14   ABOUT AMENDMENT, AGAIN, WE BELIEVE WE'VE ASSERTED APPROPRIATE

15   GROUNDS FOR THE CLASSES WE'VE ASKED FOR.  THE AMENDMENT WOULD

16   BE TO ADD GEH, IF REQUIRED BY THE COURT, AND, IF NECESSARY, TO

17   TALK ABOUT THE ISSUES REGARDING NECESSITIES, AND I WANT TO

18   ADDRESS THAT FOR RIGHT NOW.

19           THE ISSUE WITH REGARD TO NECESSITIES, AS WE SAID, IS,

20   IN FACT, A NARROW DISCUSSION OF THE TWO FORCED LABOR CLAIMS.

21   IT'S NOT A NEW THEORY, AND, IN FACT, THERE WAS A GREAT DEAL OF

22   DISCOVERY IN THIS CASE REGARDING IT.  WE GOT THE COMMISSARY

23   INFORMATION.  WE WERE GETTING INFORMATION ABOUT THE ACTUAL

24   PURCHASES, FRANKLY, BY THE DETAINEES, AND THOSE RECORDS

25   ESTABLISH THAT THEY WERE DOING THINGS LIKE BUYING SOAP AND

1    TOOTHPASTE AND BASIC NECESSITIES.

2         I THINK IT'S REALLY IMPORTANT TO REMIND OURSELVES

3    WHERE THESE PEOPLE ARE.  THEY ARE IN A FACILITY THEY DON'T

4    WISH TO BE.  THE IDEA THAT SOMEHOW DEFENDANT THINKS THAT THEY

5    SOMEHOW HAVE THE RIGHT TO HAVE A CROSS-CLAIM TO NEGATE THE

6    COST OF HAVING THEM PRESENT THERE, THIS IS NOT A RESORT WHERE

7    THEY'RE CHOOSING TO STAY.  THEY ARE BEING COMPELLED TO STAY

8    AGAINST THEIR WILL.  THE FACT THAT THEY'RE NOT EVEN GIVEN THE

9    BASIC NECESSITIES FOR HYGIENE FOR THE PERIOD OF STAYS WE'RE

10   TALKING ABOUT, MR. GOMEZ WAS INCARCERATED FOR OVER A YEAR

11   WHILE HE HAD A GREEN CARD.

12        THE COURT:  THAT'S VERY TROUBLING.

13        MS. RIDLEY:  IT'S VERY TROUBLING.  MR. OWINO WAS

14   INCARCERATED FOR NINE-AND-A-HALF YEARS.  THE OIG ITSELF HAD

15   QUESTIONS WITH REGARD TO WHETHER OR NOT THESE FACILITIES WERE

16   PROVIDING THE BASIC NECESSITIES.  IT IS A FORM OF DISCIPLINE.

17   IT IS PART OF THE FORCED LABOR ASPECT OF OUR CLAIMS.  IF YOU

18   THINK YOU CAN GET YOUR BASIC NECESSITIES FOR HYGIENE EXCEPT

19   FOR COMPLYING WITH THE REQUIREMENT OF WORK OR HAVING THAT AS

20   THE ONLY MEANS FOR WHICH, THAT YOU CAN PURCHASE THOSE ITEMS,

21   YOU ARE BEING FORCED TO WORK.  IT IS A THREAT OF DISCIPLINE.

22   IT FALLS SQUARELY WITHIN THOSE TWO CLASSES.

23        AND SO IT IS NOT A DIFFERENT CLAIM.  IT IS PART AND

24   PARCEL OF THE GENERAL CIRCUMSTANCE, WHICH IS EXACTLY WHAT

25   NEEDS TO BE LOOKED AT.  A REASONABLE PERSON UNDER THE TVPA,

1    BOTH THE CALIFORNIA AND THE NATIONAL ONE, YOU'RE SUPPOSED TO

2    LOOK AT IT WITH A REASONABLE PERSON STANDARD.  A REASONABLE

3    PERSON IN THIS SITUATION WILL FEEL COMPELLED TO WORK IN ORDER

4    TO GET THE BASIC INFORMATION, OR BASIC PRODUCTS.

5            THE COURT:  PRODUCTS.

6            MS. RIDLEY:  WHAT WE HAVE HERE IS A MODERN-DAY

7    COMPANY TOWN, ONLY HERE THE PEOPLE DON'T GET TO GO IN AND OUT.

8    THERE, THEY'RE THERE AGAINST THEIR WILL.

9            THE COURT:  BECAUSE ICE IS RULING IT.

10           MS. RIDLEY:  THAT'S EXACTLY RIGHT.

11           THE COURT:  LET ME ASK YOU THIS.  THESE PEOPLE ARE

12   THERE.  IT'S UNUSUAL FOR SOMEBODY WHO HAD A GREEN CARD TO BE

13   TURNED IN TO THIS FACILITY, BUT HE HAD NO CRIMINAL CHARGES.

14           MS. RIDLEY:  NO CRIMINAL CHARGES.

15           THE COURT:  THEY ARE WAITING FOR SOME DETERMINATION

16   ABOUT ENTRY INTO THIS COUNTRY UNDER (PAUSE) --

17           MS. RIDLEY:  IMMIGRATION ISSUES. YES.  IMMIGRATION

18   STATUS.  THAT'S EXACTLY RIGHT.

19           THE COURT:  IMMIGRATION STATUS, AND THAT'S SOLELY IT.

20           MS. RIDLEY:  THAT'S SOLELY IT.  BUT WHAT'S REALLY

21   REMARKABLE, NONE OF THESE DETAINEES, NONE OF THE PUTATIVE

22   CLASS, NONE OF THE REPRESENTATIVE PLAINTIFFS HAVE ANY --

23   THEY'RE NOT, THEY'RE NOT BEING DETAINED BECAUSE OF CRIMINAL

24   ISSUES.  IT'S ALWAYS THE CIVIL ISSUE ABOUT THEIR STATUS AS TO

25   IMMIGRATION.

1            THE COURT:  AS TO IMMIGRATION.

2            MS. RIDLEY:  NO ONE IS DISPUTING THAT.

3            THE COURT:  OKAY.

4            MS. RIDLEY:  BUT WHAT'S REALLY INTERESTING IS, THEY

5    ARE BEING HOUSED IN FACILITIES WHERE THERE ARE INMATES.  NOW,

6    THE INMATES ARE NOT PART OF THE CLASS, BUT THEY ARE INMATES,

7    AND THEY'RE BEING TREATED EXACTLY THE SAME.  THERE'S NO

8    DISTINCTION.

9            THE COURT:  BECAUSE THESE FACILITIES DO HOUSE OUR

10   CRIMINAL DETAINEES.

11           MS. RIDLEY:  SOME OF THEM DO.

12           THE COURT:  YES.

13           MS. RIDLEY:  THAT'S EXACTLY RIGHT, AND SO IT IS

14   IMPORTANT TO ALWAYS KEEP IN MIND THE CIRCUMSTANCES OF WHERE

15   THESE PEOPLE ARE STAYING.

16           WITH REGARD TO THE ISSUE, AS TO THE JURISDICTIONAL

17   ISSUE, WE BELIEVE IT WAS, IN FACT, WAIVED.  I DON'T WANT TO

18   SPEND A WHOLE LOT OF TIME.  I WILL MAKE A NOTE, THOUGH.  WE

19   TRAVELED ACROSS STATE LINES NATIONALLY TO DEPOSE THEIR

20   WITNESSES.  THERE WAS A LOT OF COMMITMENT WITH REGARD TO

21   PREPARING FOR THESE MOTIONS, AND THE IDEA THAT, SUDDENLY, THEY

22   FOUND OUT THERE MIGHT BE POTENTIAL CLASS MEMBERS THAT SUGGEST

23   THE REASON FOR THE CLAIM OF WAIVER NOW, THAT GOES BEYOND.  THE

24   REALITY IS, THEY DIDN'T RAISE IT.  THEY HAVE WAIVED IT.

25           AND IT'S ABSOLUTELY DIFFERENT THAN THE IDEA THAT IF

1    THE COURT NEEDS OR WISHES OR BELIEVES THAT MR. GEH BE PART OF

2    THIS AS A REPRESENTATIVE PLAINTIFF, THAT'S NOT CHANGING A

3    CLAIM.  THAT'S NOT WAIVING ANYTHING, PARTICULARLY IN LIGHT OF

4    THE, FRANKLY, SOMEWHAT STRANGLEHOLD THEY HAVE WITH REGARD TO

5    THE PRESENT DETAINEES AND WHO CAN SPEAK TO THEM AND IN WHAT

6    CONDITION THEY CAN BE SPOKEN TO.

7            FINALLY, I WOULD NOTE THAT, WHILE WE AGREE WITH THE

8    COURT'S DISCUSSED TENTATIVE *VIS-A-VIS* THE FORCED LABOR, OR

9    FORCED LABOR CLAIMS, WE AGAIN BELIEVE THAT THE ISSUE OF

10   NECESSITIES FALLS RIGHT WITHIN THAT AND THAT THE COURT SHOULD

11   ABSOLUTELY CERTIFY A CLASS REGARDING THE LABOR CLAIMS AS

12   DESCRIBED AND PARTICULARLY HIGHLIGHTED IN OUR OPENING BRIEF AT

13   PAGE 17.

14           THE COURT:  COUNSEL, THE CASE THAT YOU PROVIDED FROM

15   THE CENTRAL DISTRICT, IS THERE ANYTHING ELSE OUT THERE THAT'S

16   CLOSE TO THIS, OR IS IT THESE TWO CASES?

17           MS. RIDLEY:  IT'S REALLY THESE TWO CASES, QUITE

18   FRANKLY, YOUR HONOR, AT LEAST PARTICULARLY REGARDING THE

19   COMBINATION OF THE LABOR CODE AND THE CALIFORNIA AND NATIONAL

20   TVPA CLAIMS.

21           THE COURT:  OKAY.  THE OTHER QUESTION I HAD IS, HOW

22   DO YOU GET ACCESS TO THE DETAINEES?

23           MS. RIDLEY:  YOU HAVE TO -- WE HAVE TO ASK TO DO SO,

24   AND WE HAVE TO GET PERMISSION FROM THE DEFENDANTS.

25   DEFENDANT'S POSITION, AS WE PRESENTED TO THE COURT WITH REGARD

1    TO THE SUPPLEMENTAL MATERIALS, IS THAT THEY THINK THAT THE

2    DETAINEES SHOULD ASK TO SEE US.

3            THE COURT:  WELL, THAT DOESN'T MAKE ANY SENSE.  THAT

4    MAKES NO SENSE.  SO, I MEAN, SHORT OF THAT, HOW ARE YOU

5    GETTING -- SO YOU HAVE NO ACCESS.

6            MS. RIDLEY:  WE HAVE NO ACCESS.  THEY HAVE COMPLETE

7    CONTROL.

8            THE COURT:  OKAY.  ANY SUGGESTIONS THERE?

9            MS. RIDLEY:  YOUR HONOR, WE WOULD LIKE THE ABILITY TO

10   GO TO FACILITIES AND MEET, MEET WITH THEM IN THE FACILITIES,

11   NOT TO GO OUT OF THE FACILITIES.  WE CAN DO IT IN THE

12   FACILITIES.  I'M HAPPY TO DO IT AND GO FROM THERE.

13           THE COURT:  OKAY.  AND DEFENDANTS ARE NOT WILLING TO

14   MEET YOU ON THAT.

15           MS. RIDLEY:  THEIR POSITION IN WRITING HAS BEEN THAT

16   THE DETAINEES HAVE TO REQUEST TO MEET US.

17           THE COURT:  OKAY.  THANK YOU, COUNSEL.  YOUR COMMENTS

18   HAVE BEEN HELPFUL.

19           MS. RIDLEY:  THANK YOU VERY MUCH, YOUR HONOR.

20           THE COURT:  OKAY, COUNSEL, I'LL TRY NOT TO INTERRUPT

21   YOU.  YOU'VE GOT YOUR TEN MINUTES, SIR.  GO AHEAD.

22           MR. ACEDO:  OKAY.  ON THEIR LAST POINT, YOUR HONOR,

23   THE ISSUE ABOUT WHETHER THEY CAN SPEAK WITH DETAINEES CAME UP

24   A YEAR AGO IN PREPARATION OF THEIR TOUR, AND WHAT THEY WANTED

25   TO DO WAS, AS THEY'RE WALKING AROUND, TALK TO DETAINEES.  THAT

1    PRESENTS OBVIOUS SAFETY AND SECURITY RISKS.  WE WERE

2    UNWILLING TO DO IT AT THAT TIME.

3            THE COURT:  SAFETY AND SECURITY RISKS.  THESE ARE

4    PEOPLE THAT ARE BEING CIVILLY DETAINED.  THEY ARE NOT

5    CRIMINALS.  THEY HAVEN'T VIOLATED ANY LAWS.  THEY'RE JUST

6    BEING HELD BECAUSE THEY DON'T HAVE STATUS YET TO BE IN THIS

7    COUNTRY.  WHAT IS THE CONCERN, SIR?

8            MR. ACEDO:  WELL, THE CONCERN IS THE DISRUPTION OF

9    OPERATIONS.  I MEAN, WHEN WE HAD TO DO THESE, THE TOURS, THE

10   OPERATION OF THE FACILITIES HAD TO BE CHANGED, AND WHETHER OR

11   NOT THEY HAD ANY PENDING CHARGES AGAINST THEM AT THAT TIME IS

12   ONE THING.  WE KNOW OWINO, I BELIEVE, HAD BEEN CONVICTED OF A

13   CRIME AND GOT DONE SERVING HIS SENTENCE AND THEN WAS SENT

14   THERE BECAUSE HE WAS GOING TO BE DEPORTED BECAUSE HIS LICENSE

15   TO BE IN THE COUNTRY HAD BEEN REVOKED.  THAT'S WHY HE WAS IN

16   THERE.  I MEAN, WE'RE NOT SAYING -- I MEAN, THERE'S NO

17   EVIDENCE, RIGHT?

18           THE COURT:  YOU MAY BE RIGHT ON ALL OF THAT, BUT YOU

19   HOLD CAPTIVE, SIR, THE EVIDENCE THAT THEY NEED TO PROCEED, AND

20   YOU CAN'T USE THAT AS THE BASIS FOR THWARTING THE LITIGATION,

21   I WOULDN'T THINK.  I MEAN, I'M JUST THROWING THESE COMMENTS

22   OUT.  IT'S SOMETHING THAT STRIKES ME, YOU KNOW, IF THE

23   DETAINEES NEED TO ASK TO SPEAK WITH COUNSEL, THEN MAYBE EVERY

24   SINGLE ONE OF THEM SHOULD BE TOLD IN AN APPROPRIATE WAY WHAT'S

25   GOING ON, WHAT'S BEING DONE ON THEIR BEHALF, AND WHAT IS

1    NEEDED, AND THAT ON A PARTICULAR DATE AND TIME THESE PEOPLE

2    ARE GOING TO BE THERE AND THAT THEY, IF THEY ARE WILLING TO,

3    THEY COULD SIGN UP TO SEE THEM.  I DON'T KNOW, BUT IT CAN'T BE

4    THAT WE WALL PLAINTIFFS OFF FROM THEIR PROSPECTIVE CLASS.

5          MR. ACEDO:  AND THAT'S NOT WHAT'S HAPPENING.

6          THE COURT:  NO, NO, I'M NOT SAYING THAT IT IS, BUT

7    THE END RESULT OF WHAT YOU'RE SUGGESTING COULD BE THAT SINCE

8    FOR A YEAR YOU ALL HAVEN'T WORKED ANYTHING OUT.

9          MR. ACEDO:  AND THE REASON WHY NOTHING HAS BEEN

10   WORKED OUT, AND THIS IS MY POINT, YOUR HONOR, IS, THEY NEVER

11   CAME BACK TO US AND SAID, HEY, WE NEED TO DO THIS; LET'S SET

12   SOMETHING UP.  THIS EXCHANGE WAS WITH RESPECT TO A SCHEDULED

13   FACILITY VISIT THAT HAD TO GO FORWARD AND WE AGREED TO THAT,

14   AND WHEN THEY ASKED US THAT THEY WANTED TO DO THAT, AND THE

15   RECORD WILL REFLECT THIS, YOU NEED TO GO THROUGH THE NORMAL

16   CHANNELS, WHICH WAS SEND A LETTER, EXPLAIN WHY YOU NEED THIS,

17   ETC., ETC.  SINCE THAT TIME, THEY'VE NEVER COME BACK AND SAID,

18   HEY, WE MAY NEED TO AMEND OUR COMPLAINT AND ADD, OR, HEY, WE

19   NEED TO TALK TO SOME PEOPLE.  THEY'VE NEVER DONE THAT.  AND I

20   AGREE THERE CAN'T BE A WALL, BECAUSE IT'S CIRCULAR.

21         THE COURT:  WELL, MAYBE THIS DISCUSSION WILL MAKE

22   THINGS WORK A LITTLE MORE SMOOTHLY FOR BOTH SIDES.  I HOPE SO.

23         MR. ACEDO:  SURE.

24         THE COURT:  BUT WE DIGRESS.  I WANT TO HEAR YOUR

25   COMMENTS UNINTERRUPTED, SIR.  GO AHEAD, SIR.

1          MR. ACEDO:  SURE.  AND I JUST WANTED TO ADDRESS THAT,

2     BECAUSE I THINK IT'S UNFAIR THAT WE'RE BEING ACCUSED OF

3     OBSTRUCTING WHEN THAT'S SIMPLY NOT THE CASE.  THEY SAT ON

4     THEIR HANDS, AND WE'RE MORE THAN WILLING TO WORK WITH THEM TO

5     TRY TO FIGURE SOMETHING OUT.  IT WAS ONE INCIDENT.  IT WAS IN

6     CONJUNCTION WITH THE FACILITY TOURS, AND THAT WAS IT.  NOT ONE

7     TIME IN THE LAST YEAR HAVE THEY SAID, HEY, WE NEED TO WORK

8     SOMETHING OUT.  WE'RE HAPPY TO WORK WITH THEM.

9          THE COURT:  WELL, YOU KNOW NOW AND THEY KNOW NOW THAT

10    THE COURT IS CONCERNED ABOUT THAT.  BUT GO AHEAD.  TELL ME

11    WHAT YOU WANT TO TELL ME.  I APPRECIATE YOUR COMMENTS.  THAT'S

12    HELPFUL, SIR.

13         MR. ACEDO:  THE NOVOA CASE THAT THEY SUBMITTED TO THE

14    COURT YESTERDAY, I BRIEFLY GLANCED AT IT.  IT LOOKS LIKE THAT

15    ONLY INVOLVED THE MINIMUM WAGE CLAIM.  I DON'T THINK, BUT I

16    NEED TO CONFIRM THIS, THAT IT INVOLVED THE OTHER TYPES OF

17    CLAIMS.

18         THE COURT:  I HAVEN'T SPENT ANY TIME WITH IT, EITHER,

19    EXCEPT TO FLIP THROUGH IT AND SKIM IT IN THE QUICKEST WAY.  SO

20    I'LL READ IT CAREFULLY, SIR.

21         MR. ACEDO:  AND I WOULD LIKE TO -- WE'D ACTUALLY LIKE

22    AN OPPORTUNITY TO PRESENT SOME BRIEFING ON IT.  WHAT THEY

23    SUBMITTED YESTERDAY WAS, THIS IS JUST RELEVANT TO OUR

24    ARGUMENTS.  NOW, WE'RE HEARING FOR THE FIRST TIME THAT, OKAY,

25    IT'S RELEVANT TO THE MINIMUM WAGE CLAIM BECAUSE THERE'S THIS

1    COMMON ISSUE.  WE'D LIKE TO DELVE INTO THAT.  AND LIKE YOU

2    POINTED OUT, THERE'S THIS CASE AND THAT CASE SO FAR, AND IF

3    THERE'S ANY BEARING ON IT, WE WOULD LIKE AN OPPORTUNITY TO

4    BRIEF IT.

5         THE COURT:  THAT'S FINE.  WE'LL DISCUSS THAT AT THE

6    END.  I THINK THAT'S A FAIR SUGGESTION.  IF YOU WOULD LIKE TO,

7    I WILL CERTAINLY PERMIT THAT IN ALL LIKELIHOOD.  OKAY.  GO

8    AHEAD.

9         MR. ACEDO:  I WOULD LIKE TO TALK ABOUT THE TWO

10   CLASSES THAT YOU WERE INCLINED TO GRANT CERTIFICATION.  THAT

11   WAS THE NATIONAL FORCED LABOR CLASS AND THE CALIFORNIA FORCED

12   LABOR CLASS.  THEIR CLAIM ON -- THEIR ALLEGATION FOR BOTH OF

13   THOSE CLAIMS IS THAT WE HAVE A POLICY OF FORCING DETAINEES TO

14   CLEAN COMMON LIVING AREAS, AND THAT ALLEGATION IS BASED ON,

15   FOR EXAMPLE, IN OTAY MESA, POLICY 12-100, WHICH SAYS, ALL

16   DETAINEES/INMATES ASSIGNED TO A UNIT ARE RESPONSIBLE FOR

17   MAINTAINING THE COMMON LIVING AREA IN A CLEAN AND SANITARY

18   MANNER.

19        THEY'RE USING THAT POLICY TO SUGGEST THAT WE'RE

20   FORCING THEM TO CLEAN, THE WORDS THAT I JUST READ.  WE'VE GOT

21   DECLARATIONS THAT WE'VE SUBMITTED THAT EXPLAIN THAT MAINTAIN

22   DOESN'T MEAN CLEAN UP AFTER OTHERS.  MAINTAIN MEANS CLEAN UP

23   AFTER YOURSELF.  IF YOU READ THE REST OF THE POLICY DIRECTLY

24   UNDERNEATH WHAT I JUST READ, IT ELABORATES ON THAT:  TRASH

25   WILL NOT BE THROWN ANYWHERE EXCEPT IN CONTAINERS.  TOWELS,

1    BLANKETS, CLOTHING, AND ANY PERSONAL BELONGING WILL NOT BE

2    LEFT IN THE COMMON AREA.  THE WALLS IN THE COMMON AREA WILL BE

3    KEPT FREE OF WRITING.

4         THOSE ALL SUGGEST AND SUPPORT AND PROVE, IN

5    CONJUNCTION WITH OUR DECLARATIONS, THAT THIS POLICY SIMPLY

6    MEANS THAT YOU CAN'T MAKE A MESS IN THE COMMON AREAS, AND IF

7    YOU DO, PICK IT UP, JUST LIKE IN ANY HOUSEHOLD, IN MOST

8    HOUSEHOLDS.  THEY TRY TO TURN THAT POLICY INTO SOMETHING ELSE

9    WITH FOUR DECLARATIONS THAT SAY THAT THERE'S ACTUALLY A

10   PRACTICE OF APPLYING IT DIFFERENTLY, THAT THEY ACTUALLY DO

11   FORCE THEM UNDER THREAT OF SOLITARY CONFINEMENT.

12        AND ON THAT POINT I WANT TO POINT BACK TO WAL-MART

13   VS. DUKES, WHICH SAYS THAT, IF A CLASS WANTS TO BE CERTIFIED

14   BASED ON A POLICY OR PRACTICE, THERE HAS TO BE SIGNIFICANT

15   PROOF OF THAT.  FOUR DECLARATIONS OUT OF 8,000 DETAINEES IN

16   CALIFORNIA, 120,000 DETAINEES NATIONWIDE, HARDLY SUPPORTS EVEN

17   AN INFERENCE THAT THERE'S A PRACTICE OF THIS GOING ON

18   ANYWHERE.  FOUR DECLARATIONS, YOUR HONOR.  THEY'VE GOT THE

19   POLICY I JUST READ AND FOUR DECLARATIONS TO TELL YOU THAT WE

20   HAVE GOT THIS POLICY OF FORCING DETAINEES TO CLEAN UNDER

21   THREAT OF SOLITARY CONFINEMENT.  THAT REASON ALONE IS ENOUGH

22   TO DENY CERTIFICATION ON BOTH THE FORCED LABOR CLAIMS.

23        THEY SUBMITTED -- WELL, THEY ALSO POINT TO THE

24   DISCIPLINARY POLICY THAT SAYS YOU CAN BE DISCIPLINED FOR

25   REFUSING TO CLEAN YOUR PERSONAL LIVING SPACE, WHICH IS

1    REQUIRED BY ICE, AND WHICH THEY AGREE IS NOT THEIR CLAIM.

2    THEY'RE FOCUSED ON THE COMMON LIVING AREAS.  SO THAT HAS NO

3    APPLICATION.

4           THEY POINT TO THE POLICY THAT SAYS YOU MUST OBEY

5    STAFF ORDERS.  THAT'S AN IMPORTANT ORDER.  THEY TRY TO MAKE

6    THE CONNECTION THAT WE'VE GOT POLICY *A*, THE SANITATION POLICY,

7    AND POLICY *B*, WHICH SAYS YOU MUST FALL IN ORDER.  THEY COMBINE

8    THEM TOGETHER TO SAY THERE'S THIS PRACTICE OF FORCING THESE

9    DETAINEES TO WORK.  WHAT DO THEY HAVE, WHAT HAVE THEY

10   SUBMITTED AS PROOF OF THAT CONNECTION TO THAT INFERENCE?

11   NOTHING.  THEY'VE SUBMITTED DISCIPLINARY GRIEVANCES OR ORDERS

12   THAT THEY SAY SHOW THIS, BUT IF YOU LOOK AT THOSE DISCIPLINES,

13   NOT A SINGLE DETAINEE WAS DISCIPLINED FOR REFUSING TO CLEAN A

14   COMMON AREA.  NOT A SINGLE ONE.

15          THERE'S SIMPLY NO EVIDENCE TO SUPPORT THESE POLICIES

16   AND PRACTICES THAT THEY WANT TO BASE THIS CLASS ACTION ON, AND

17   THAT'S A CERTIFICATION REQUIREMENT UNDER WAL-MART VS. DUKES.

18   EVEN IF THEY WERE TO SATISFY THAT PRONG, THE SIGNIFICANT PROOF

19   PRONG, WHICH THEY HAVE NOT, THEY ALSO HAVE TO SHOW

20   COMMONALITY.  THEY CAN'T DO THAT, EITHER.  IF YOU LOOK AT WHAT

21   SECTION 1589 OF THE TVPA REQUIRES AND ALSO THE CALIFORNIA

22   HUMAN TRAFFICKING STATUTE, BOTH OF THEM REQUIRE SUBJECTIVE

23   INQUIRIES.  THE TVPA REQUIRES THEM TO SHOW THAT WE OBTAINED

24   LABOR SERVICES BY MEANS OF SERIOUS HARM OR THREAT OF SERIOUS

25   HARM, BY MEANS OF, AND THAT'S CAUSATION.  THEY HAVE TO SHOW

1    THAT THIS DETAINEE PERFORMED THAT WORK BECAUSE THEY FELT

2    THREATENED, OR WERE THREATENED, OR WERE HARMED.  SAME WITH THE

3    CALIFORNIA TVPA.  THEY MUST SHOW THAT IT WAS ACCOMPLISHED

4    THROUGH COERCION OR THROUGH FORCE.  THEY SAY THAT THOSE ARE

5    OBJECTIVE INQUIRIES, AND THEY CITE TO THE DEFINITIONS OF

6    SERIOUS HARM IN BOTH OF THOSE STATUTES, AND I AGREE.  THOSE

7    DEFINITIONS OF WHAT CONSTITUTES A SERIOUS HARM IS A REASONABLE

8    STANDARD.  IT'S AN OBJECTIVE STANDARD.

9         BUT THAT'S NOT THE INQUIRY I'M TALKING ABOUT.  WE'RE

10   TALKING ABOUT THE *BY MEANS OF*, THE *ACCOMPLISHED THROUGH*, THE

11   CAUSATION ELEMENT.  THAT IS A CASE-BY-CASE INQUIRY WHERE

12   YOU'RE GOING TO HAVE TO ASK EVERY DETAINEE, DID YOU WORK, OR

13   DID YOU CLEAN A COMMON AREA?  YES.  WHY DID YOU CLEAN THE

14   COMMON AREA?  IF THEY SAY, BECAUSE I FELT THREATENED, OKAY,

15   THE ALLEGATION STATED A CLAIM.  IF THEY SAY, I WANTED

16   SOMETHING TO DO, I WAS BORED, I LIKE KEEPING A CLEAN COMMON

17   AREA, NO CLAIM.  YOU CAN'T FIND LIABILITY ACROSS THE BOARD FOR

18   120,000 DETAINEES, OR EVEN 18,000 DETAINEES, ON A YES-OR-NO

19   ANSWER TO THAT QUESTION, BECAUSE YOU HAVE TO ASK THAT

20   INDIVIDUAL QUESTION EACH TIME.

21        JUMPING TO THE STANDING ISSUE, YOUR HONOR, THIS IS

22   SOMETHING THAT WE DIDN'T TALK ABOUT, BUT I JUST WANT TO

23   REITERATE OUR POSITION THAT THE MOTION FOR CLASS CERTIFICATION

24   DID NOT MOVE UNDER 23(B)(2), WHICH IS NECESSARY TO CERTIFY A

25   CLAIM FOR INJUNCTIVE OR DECLARATORY RELIEF.  THEIR MOTION ONLY

1    SOUGHT CERTIFICATION UNDER (B)(3).  THEY SAY IN THEIR REPLY

2    THAT YOU CAN MOVE UNDER (B)(3) AND YOU GET BOTH.  IT'S NOT

3    TRUE.  THE CASES THEY CITE DON'T SAY THAT.  ACTUALLY, THE

4    CASES THAT THEY CITE -- WOULD YOU LIKE ME TO PAUSE?

5             THE COURT:  I THINK WE HAVE TO CLOSE THAT DOOR.

6             WHAT'S GOING ON OUT THERE.

7             (OFF-THE-RECORD DISCUSSION)

8             THE COURT:  GO AHEAD, COUNSEL.

9             MR. ACEDO:  I WOULD ENCOURAGE YOU TO GO BACK AND READ

10   THE CASES THAT THEY CITED.  IF YOU WANT TO CERTIFY A CLAIM,

11   CLASS CLAIM FOR INJUNCTIVE OR DECLARATORY RELIEF, YOU HAVE TO

12   SATISFY SECTION (B)(2).  THEY DIDN'T EVEN MOVE ON THAT.  ANY

13   AMENDMENT WOULD BE FUTILE BECAUSE YOU'D HAVE TO GO BACK AND

14   LET THEM RE-FILE THE MOTION FOR CLASS CERTIFICATION, AND THAT

15   DEADLINE HAS PASSED.  SO IT'S NOT JUST AS EASY, EVEN IF YOU'RE

16   INCLINED TO LET THEM AMEND, TO DO THAT.  I MEAN, THEY WOULD

17   HAVE TO RE-MOVE UNDER (B)(2) TO GET BACK INJUNCTIVE CLASS-WIDE

18   RELIEF.

19            ON THEIR BASIC NECESSITIES CLAIM, YOUR HONOR, I KNOW

20   YOU'RE INCLINED TO DENY CERTIFICATION, BUT AGAIN I'D LIKE TO

21   POINT OUT THE LACK OF ANY PROOF THAT WE INTENTIONALLY WITHHELD

22   ANY BASIC NECESSITY AS A WAY TO COERCE THEM INTO

23   PARTICIPATING.  THEY JUST ASSUME IT'S SO.  THEY ASSUME THAT

24   DETAINEE WORKED.  DETAINEE BOUGHT SHAMPOO OR SOAP.  THEREFORE,

25   DETAINEE HAD TO WORK TO BUY THE SHAMPOO OR SOAP BECAUSE IT WAS

1    DEPRIVED.  THEY DON'T MAKE THE CONNECTION.

2          GO BACK AND LOOK AT THE DECLARATIONS OF OWINO AND

3    GOMEZ.  THEY JUST SAID THAT THEY BOUGHT IT, AND WHEN YOU LOOK

4    AT OWINO'S AND GOMEZ'S ACCOUNTS, THEY HAD THOUSANDS OF DOLLARS

5    IN THERE.  THEY DIDN'T NEED TO WORK.  THEY HAD THE MONEY.  AND

6    LOOK AT WHAT THEY'RE BUYING.  WHAT THEY'RE BUYING ARE THE

7    BASIC LIVING NECESSITIES.  WE PROVIDE WHAT ICE REQUIRES, AND

8    IF THEY WANT TWO BOTTLES OF SHAMPOO INSTEAD OF ONE, THEY CAN

9    GO BUY THAT SECOND BOTTLE OF SHAMPOO.  IF THEY HAVE OCD AND

10   THEY NEED TO TAKE THREE SHOWERS A DAY AND THEY RUN OUT OF

11   THEIR SOAP, THEY CAN BUY MORE SOAP.  BUT THERE'S NO PROOF THAT

12   WE'VE INTENTIONALLY WITHHELD ANYTHING AS A MEANS TO COERCE

13   THEIR PARTICIPATION IN THE VOLUNTARY WORK PROGRAM.  IT'S ALL

14   BASED ON SPECULATION AND ASSUMPTION, AND IT'S SIMPLY NOT TRUE.

15          THE LAST POINT, YOUR HONOR, I'D LIKE TO MAKE IS WHAT

16   WE LEFT OFF TALKING ABOUT AND YOUR CONCERN THAT IF WE DON'T

17   SET CERTIFIED CLASSES, HOW ARE THESE DETAINEES GOING TO BE

18   ABLE TO PURSUE RELIEF?  I UNDERSTAND THESE ARE DIFFICULT

19   QUESTIONS, BUT WHETHER OR NOT THEY CAN ULTIMATELY BRING A

20   CLAIM SHOULD NOT, OR WHETHER THEY'RE MOTIVATED OR WOULD LIKE

21   TO BRING A CLAIM SHOULD NOT INFLUENCE THAT ULTIMATE

22   DETERMINATION.  WE NEED TO APPLY THE LAW.  WE NEED TO FOLLOW

23   THE LAW.  COURTS DISMISS CLAIMS ALL THE TIME, ALL OF THE TIME,

24   FOR VARIOUS REASONS.  THAT SHOULDN'T BE A CONTROLLING FACTOR.

25   I MEAN, IF YOU LOOK AT THESE OTHER LAWSUITS AGAINST CORE CIVIC

1    IN TEXAS AND GEORGIA, THERE ARE MOTIVATED DETAINEES.

2              THE COURT:  ARE THEY ON THE SAME BASIS?

3              MR. ACEDO:  YES.

4              THE COURT:  SO, HOW FAR ARE THOSE CASES?

5              MR. ACEDO:  BOTH OF THOSE CASES ARE STAYED.

6              THE COURT:  PENDING WHAT?

7              MR. ACEDO:  PENDING AN APPEAL.  THOSE TWO CASES --

8              THE COURT:  SO, HOW FAR -- APPEAL OF WHAT?  WHAT

9    ORDER?

10             MR. ACEDO:  IN BOTH OF THOSE CASES, YOUR HONOR, WE

11   MOVED TO DISMISS, ARGUING THAT THE TVPA DID NOT APPLY IN THIS

12   CONTEXT.  WE MADE THAT SIMILAR MOTION HERE, AND YOU DENIED

13   THAT.

14             THE COURT:  OKAY.

15             MR. ACEDO:  THEY DENIED IT AS WELL, BUT THEY

16   CERTIFIED IT FOR IMMEDIATE APPEAL.

17             THE COURT:  SO, WHAT CIRCUITS HAVE THOSE CASES?

18   THAT'S INTERESTING.  AND HOW LONG HAVE THEY HAD THEM, AND WHEN

19   ARE THEY GOING TO HAVE ORAL ARGUMENT?

20             MR. ACEDO:  I KNOW.  IT'S EXCITING.  THE FIFTH

21   CIRCUIT IS THE MARTHA GONZALEZ CASE --

22             THE COURT:  OKAY.

23             MR. ACEDO:  -- AND THE ELEVENTH CIRCUIT IS THE

24   BARRIENTOS CASE.

25             THE COURT:  BOTH (PAUSE) --

1              MR. ACEDO:  BRIEFING IN GONZALEZ JUST ENDED TUESDAY,

2    SO THERE HASN'T BEEN ORAL ARGUMENT SET.  ORAL ARGUMENT HAS

3    BEEN SET IN THE ELEVENTH CIRCUIT FOR THE END OF JANUARY.  I

4    BELIEVE JANUARY 31ST.

5              THE COURT:  OKAY.  SO THERE ARE CASES.  THEY'RE A

6    LITTLE BIT FURTHER ALONG, BUT THEY'RE OUT OF OUR CIRCUIT AND,

7    YOU KNOW, IN A LITTLE BIT DIFFERENT POSTURE.

8              MR. ACEDO:  DISCOVERY HASN'T EVEN STARTED --

9              THE COURT:  I UNDERSTAND THAT.

10             MR. ACEDO:  -- BUT DIFFERENT POSTURES, AND THOSE

11   COURTS CAN ULTIMATELY SAY THE TVPA DOESN'T APPLY AND THESE

12   CLAIMS DON'T EVEN EXIST; THAT, AS A MATTER OF LAW, THEY CANNOT

13   BRING THESE CLAIMS.

14             THE COURT:  WERE YOU INVOLVED IN ANY OF THESE?

15             MR. ACEDO:  YES, YOUR HONOR.

16             THE COURT:  SO YOU HANDLED THEM.

17             MR. ACEDO:  YES, YOUR HONOR.

18             THE COURT:  OKAY.

19             MR. ACEDO:  AGAIN, THIS IS A RULING THAT -- YOU MADE

20   A SIMILAR RULING --

21             THE COURT:  RIGHT.

22             MR. ACEDO:  -- JUST AS THOSE TWO DISTRICT COURTS, AND

23   YOU DENIED IT, JUST AS THOSE TWO DISTRICT COURTS DID.

24             THE COURT:  OKAY.

25             MR. ACEDO:  AND I DO NOT BELIEVE WE MOVED TO CERTIFY

1    AN INTERLOCUTORY APPEAL.

2         THE COURT:  I DON'T BELIEVE YOU DID, EITHER.  I

3    USUALLY REMEMBER WHEN SOMEBODY ASKS FOR THAT, AND I DON'T

4    RECALL YOUR ASKING FOR THAT, SIR.

5         MR. ACEDO:  WELL, WHAT WE DID MOVE TO CERTIFY WAS THE

6    PREEMPTION ISSUE, WHICH YOU SAID WAS A CLOSE CALL, BUT YOU

7    DIDN'T GRANT IT.  BUT WE DIDN'T MOVE ON THE TVPA ISSUE.  THE

8    NORTHERN DISTRICT OF GEORGIA, OR THE MIDDLE DISTRICT OF

9    GEORGIA *SUA SPONTE* CERTIFIED THAT QUESTION BECAUSE THE

10   DISTRICT COURT BELIEVED THAT THERE WERE SUBSTANTIAL GROUNDS

11   FOR A DIFFERENCE OF OPINION AND IT WAS IMPORTANT TO THE CASE.

12   THOSE CASES COULD -- YOU KNOW, WHATEVER THEIR -- YOU KNOW,

13   THOSE RULINGS AREN'T BINDING ON THE COURT, OBVIOUSLY --

14        THE COURT:  NO, NO.

15        MR. ACEDO:  -- BUT THEY WILL AT LEAST DECIDE IN THOSE

16   JURISDICTIONS WHETHER THOSE DETAINEES EVEN HAVE A TVPA CLAIM.

17   AND THEN IF THEY SAY THAT THERE IS NO TVPA CLAIM IN THIS

18   CONTEXT, THE DETAINEES IN GEORGIA AND TEXAS CANNOT BRING A

19   CLAIM.  AND IF YOU WERE NOT TO CERTIFY HERE, THEY'RE IN THE

20   SAME POSITION.  AND MY POINT IS, WE SHOULDN'T LET THAT

21   INFLUENCE THIS, THE FACT THAT THEY MAY NOT --

22        THE COURT:  YOU SAY THEY CAN'T BRING THEIR CLAIM.

23   THEY CAN BRING A CLAIM.

24        MR. ACEDO:  NOT A TVPA CLAIM.

25        THE COURT:  NOT A TVPA CLAIM, BUT THEY COULD DO

1    SOMETHING ELSE IN THE COURTS OF THIS COUNTRY.

2              MR. ACEDO:  SURE.

3              THE COURT:  GO TO SMALL CLAIMS COURT.  LET'S JUST

4    TAKE AN EASY ONE.  YOU CAN GO TO SMALL CLAIMS COURT.

5              MR. ACEDO:  SURE.  THERE'S OTHER REMEDIES.  AND TO BE

6    CLEAR, YOUR HONOR, WE'RE NOT SAYING -- ASSUMING THESE

7    ALLEGATIONS WERE TRUE, WE'RE NOT TAKING THE POSITION THAT WE

8    CAN STILL DO IT.  ABSOLUTELY NOT.  IT'S REPREHENSIBLE WHAT

9    THEY'RE ALLEGING.  WE'RE JUST SAYING, UNDER THE TVPA, THAT IS

10   NOT AN APPROPRIATE REMEDY.  THEY HAVE TO LOOK ELSEWHERE FOR

11   THE REMEDIES.  IF THEY WANT TO GO TO STATE LAW, BRING

12   STATE-LAW CLAIMS, LABOR-LAW CLAIMS, LIKE THE PLAINTIFFS IN

13   THIS CASE, THEY CAN.  NOTABLY, THE PLAINTIFFS IN MEDI-CAL

14   TRIED TO BRING STATE-LAW CLAIMS, AND THE DISTRICT COURT IN

15   MEDI-CAL DENIED IT, SAID THAT YOU CANNOT BRING LABOR-LAW

16   CLAIMS.

17             SO DETAINEES AND PLAINTIFFS OF VARIOUS SORTS ARE

18   DENIED CLAIMS FOR VARIOUS REASONS, FOR LEGAL REASONS, AND

19   THESE ARE HARD LEGAL ISSUES.  BUT, YOU KNOW, IF YOU DENY

20   CERTIFICATION AND THE PUTATIVE CLASS MEMBERS WANT TO PURSUE

21   RELIEF, HOWEVER THEY MAY DO THAT, THEY'RE MORE THAN WELCOME

22   TO.

23             THE COURT:  LET ME ASK YOU THIS.  OTHER THAN THE

24   FIFTH AND THE ELEVENTH CIRCUITS, ANYTHING ELSE OUT THERE?

25             MR. ACEDO:  THE CARLOS GONZALEZ CASE THAT'S IN FRONT

1    OF YOU THAT YOU STAYED, BUT THOSE ARE THE ONLY FOUR CASES

2    THAT, AS I'M STANDING HERE RIGHT NOW, I'M AWARE OF AGAINST

3    CORE CIVIC, AGAINST CORE CIVIC, AND THERE'S THE NOVOA CASE AND

4    THE MEDI-CAL CASE.  THOSE ARE BOTH CASES AGAINST GEO.  AND AS

5    YOU LOOK AT THIS NOVOA DECISION, AND I WILL WHEN I'M DONE WITH

6    THIS ARGUMENT, KEEP IN MIND THAT, AND I BELIEVE THIS IS TRUE,

7    THEY CERTIFIED FORCED LABOR CLAIMS BECAUSE THE TENTH CIRCUIT

8    IN MEDI-CAL SAID YOU CAN CERTIFY THESE TYPES OF CLAIMS.

9            BUT THIS IS WHAT'S IMPORTANT TO REMEMBER.  IN THE

10   MEDI-CAL CASE, WHICH THE NOVOA COURT ADOPTED, THEY HAD THE GEO

11   POLICIES IN FRONT OF THEM.  THAT'S WHAT THEY WERE LOOKING AT,

12   GEO'S POLICIES, AND GEO'S POLICIES EXPRESSLY -- THE HANDBOOKS

13   ACTUALLY SAY YOU ARE REQUIRED TO CLEAN THE COMMON LIVING

14   AREAS, AND IF YOU DON'T, YOU WILL BE DISCIPLINED, AND THEY

15   GAVE ALL OF THE DETAINEES/INMATES THAT POLICY.  IT WAS A

16   PROGRAM.

17           THAT'S FAR DIFFERENT FROM WHAT WE'VE GOT HERE, BUT --

18   AND I'M TELLING YOU THAT SO WHEN YOU GO BACK TO LOOK AT NOVOA

19   AND TRY TO FOLLOW THE TRAIL TO MEDI-CAL, THAT'S WHY THOSE

20   COURTS CERTIFIED THOSE CLAIMS, BECAUSE THEY SAID THERE WAS A

21   CLASS-WIDE INFERENCE OF CAUSATION, WHICH IT'S OUR POSITION THE

22   NINTH CIRCUIT DOESN'T HAVE THAT PROPOSITION.  IT'S A TENTH

23   CIRCUIT THING.  BUT THE POLICIES ARE COMPLETELY DIFFERENT, AND

24   I THINK THE PROOF OF THAT IS THAT THE PLAINTIFFS HAVEN'T EVEN

25   TRIED TO RELY ON MEDI-CAL IN CONJUNCTION WITH THE COMMONALITY

1    AND PREDOMINANCE ARGUMENTS.

2            THE COURT:  LET ME ASK YOU THIS, COUNSEL.  WHEN WE

3    STARTED THIS, YOU STARTED BY TALKING ABOUT JUDGE BERNAL'S

4    DECISION.  HOW MUCH TIME DO YOU NEED, HOW MANY PAGES DO YOU

5    NEED, AND CAN WE LIMIT OURSELVES?  BECAUSE I HAVE A LOT OF

6    MATERIAL IN THIS, AND I'M GOING TO GO BACK THROUGH EVERYTHING,

7    AND IT WILL TAKE A WHILE TO SEE WHERE I COME OUT ON THIS.  BUT

8    I AM WILLING TO LET YOU BRIEF THAT AND LET OPPOSING COUNSEL

9    BRIEF IT.  I MEAN, I'M CURIOUS.  SHOULD IT BE SIMULTANEOUS

10   BRIEFING WITH A REPLY, ONE REPLY?  WHAT WOULD YOU PROPOSE?

11           AND THEN I'LL ASK YOU, COUNSEL, WHAT YOU THINK AND

12   HOW MUCH TIME.

13           I KNOW WE'RE COMING TO A TIME OF YEAR WHERE I HOPE

14   YOU AND EVERYBODY IS TAKING A LITTLE BIT OF TIME OFF.  SO TELL

15   ME WHAT WOULD WORK FOR YOU.

16           MR. ACEDO:  IF I COULD ASK MY WIFE, AND THIS IS WHAT

17   I'LL PROPOSE.  PLAINTIFFS FILE SOMETHING, FIVE PAGES, TO TELL

18   YOU WHY THEY THINK IT'S RELEVANT, AND I THINK IT'S IMPORTANT

19   THAT THEY FILE SOMETHING FIRST, BECAUSE WE'RE NOT ENTIRELY

20   CLEAR WHAT THEY'RE RELYING ON IT FOR.  THEY FILE SOMETHING

21   FIRST, FIVE PAGES.  WE GET THE RESPONSE, FIVE PAGES.  IT WOULD

22   BE NICE IF THAT FIRST DEADLINE WAS ON THE OTHER SIDE OF THE

23   NEW YEAR.

24           THE COURT:  I THINK IT COULD BE, COUNSEL.  OF COURSE.

25   SO YOU THINK THAT WOULD BE SUFFICIENT?

1           MR. ACEDO:  I THINK SO.

2           THE COURT:  THEN I COULD DEEM THIS MATTER SUBMITTED

3   AND TAKE THAT INTO ACCOUNT IN MY FURTHER WORK ON THIS CASE.

4   OKAY.

5           MR. ACEDO:  AND I HAVE NOTHING ELSE.

6           THE COURT:  OKAY.  THANK YOU.

7           SO YOU BROUGHT THIS CASE TO THE COURT'S ATTENTION,

8   AND I WASN'T SURE IF PEOPLE WANTED TO DO ADDITIONAL BRIEFING.

9   IS FIVE PAGES SUFFICIENT, COUNSEL?

10          MS. RIDLEY:  I THINK IT IS --

11          THE COURT:  OKAY.

12          MS. RIDLEY:  -- WITH THE REQUEST AND THE PLEA THAT

13  THE FIVE PAGES BE AFTER THE HOLIDAYS.

14          THE COURT:  NO, NO, NO.  ABSOLUTELY.  ABSOLUTELY,

15  COUNSEL.  YOU TELL ME WHEN YOU WOULD WANT TO FILE.

16  MID-JANUARY, LATER JANUARY.  WHATEVER YOU LIKE, MA'AM.

17          MS. RIDLEY:  I THINK MID-JANUARY IS FINE, FRANKLY,

18  YOUR HONOR.

19          THE COURT:  SO I CAN'T SEE THE CALENDAR, JESSICA.

20  GIVE ME A FRIDAY IN MID-JANUARY.

21          THE DEPUTY CLERK:  JANUARY 17TH.

22          THE COURT:  CAN YOU FILE BY JANUARY 17TH?

23          MS. RIDLEY:  YES, YOUR HONOR.

24          THE COURT:  AND TWO WEEKS TO FILE A RESPONSE,

25  COUNSEL?

1          MR. ACEDO:  SURE.

2          THE COURT:  OKAY.

3          THE DEPUTY CLERK:  JANUARY 31ST.

4          THE COURT:  JANUARY 31ST, DEFENSE WILL FILE, AND THEN

5    I'LL DEEM THE MATTER SUBMITTED, AND I'LL BE GOING BACK THROUGH

6    EVERYTHING IN ADVANCE OF THAT, LOOKING AT THINGS.

7          DID YOU NEED TO ADD ANYTHING?

8          MS. RIDLEY:  JUST BRIEFLY.

9          THE COURT:  SURE.

10          MS. RIDLEY:  COUNSEL IS WRONG WITH REGARD TO THE

11   TVPA.  THERE'S MORE THAN SUBSTANTIAL EVIDENCE WITH REGARD TO

12   IT.  IT CERTAINLY INCLUDES MR. OWINO AND GOMEZ'S DECLARATIONS,

13   BUT IT SPECIFICALLY INCLUDES TESTIMONY BY WARDENS THAT WE

14   SUBMITTED, THE ACTUAL POLICIES, AND I'LL READ IT.  THE WRITTEN

15   SANITATION PROVIDES, QUOTE, ALL DETAINEES/INMATES ASSIGNED TO

16   A UNIT ARE RESPONSIBLE FOR MAINTAINING THE COMMON LIVING AREA

17   IN A CLEAN AND SANITARY MANNER.  UNDER THIS POLICY, DETAINEES

18   WILL BE ASSIGNED TO EACH AREA ON A PERMANENT BASIS TO PERFORM

19   THE DAILY CLEANING ROUTINE OF THE COMMON AREA.  SO IT WASN'T

20   JUST THEIR OWN AREA.  IT WAS AN OVERALL REQUIREMENT, AND IT

21   WAS UNDER PENALTY OF DISCIPLINE IF THEY DIDN'T DO IT, AND WE

22   HAVE DISCIPLINARY RECORDS OF PEOPLE ACTUALLY BEING DISCIPLINED

23   FOR NOT FOLLOWING EITHER ORDERS OR KEEPING AREAS CLEAN.  SO

24   THERE'S MORE THAN SUBSTANTIAL EVIDENCE.

25          AND THAT'S ALL I HAVE.  I KNOW WE'VE BEEN SPENDING

1    QUITE A BIT OF TIME ON THIS.

2              THE COURT:  THAT'S OKAY.

3              AND DO YOU NEED 30 SECONDS?  I KNOW YOU DISAGREE WITH

4    THAT.  YOU TAKE EXCEPTION.  BUT GO AHEAD, JUST TO BE FAIR.

5              MR. ACEDO:  WHERE WERE YOU READING FROM?

6              MS. RIDLEY:  I WAS READING FROM MY OWN BRIEF, BUT IT

7    WAS FROM THE SANITATION POLICIES.

8              MR. ACEDO:  I BELIEVE WHAT SHE WAS REFERRING TO IS

9    EXHIBIT 11, WHICH IS THE VOLUNTARY RELEASE THAT INMATES SIGN,

10   AND IT DOES SAY SOMETHING TO THE EFFECT OF THEY WERE

11   RESPONSIBLE FOR COMMON AREAS.  AGAIN, THE DECLARATIONS THAT WE

12   SUBMITTED SAY THAT THAT IS TO SIMPLY MAINTAIN, PICKING UP

13   AFTER YOURSELF, NOT TO CLEAN UP AFTER OTHERS, AND THE SECOND

14   SENTENCE SHE READ, THE DECLARATIONS SHOW THAT THAT IS FOR THE

15   INMATE OR THE DETAINEE WORKERS.  THAT'S THEIR JOBS TO DO THE

16   WEEKLY OR THE DAILY CLEANING.

17             THE COURT:  OKAY.  WELL, COUNSEL, I APPRECIATE YOUR

18   COMMENTS THIS AFTERNOON.  I APPRECIATE YOUR PRECISE ANSWERS TO

19   MY QUESTIONS.  I'M GOING TO LOOK FORWARD TO THE BRIEFING, AND

20   I'M GOING TO SPEND SOME TIME WITH THIS DECISION MYSELF AND GO

21   BACK THROUGH THINGS AND EXHIBITS THAT I'VE ASKED ABOUT THIS

22   AFTERNOON.  IT'S A FASCINATING ISSUE AND AREA.  IF ANYBODY

23   SEES ANY ADDITIONAL AUTHORITY OTHER THAN WHAT WE'VE LEARNED

24   ABOUT IN THE CENTRAL DISTRICT AND NOW THE FIFTH AND THE

25   ELEVENTH CIRCUITS, AND WE KNEW ABOUT THE MEDI-CAL DECISION IN

1    THE TENTH CIRCUIT, BUT ANYTHING ELSE, PLEASE LET US KNOW, LET

2    THE COURT KNOW, AND THANK YOU.  I APPRECIATE IT.

3            MS. RIDLEY:  THANK YOU FOR ALL YOUR WORK, YOUR HONOR.

4            MR. ACEDO:  THANK YOU.

5            (PROCEEDINGS ADJOURNED AT 3:38 P.M.)

6    --------------------------------------------------------------

7                    (END OF TRANSCRIPT)

8

9            I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

10   HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

11   ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

12

13           S/FRANK J. RANGUS _____

14           FRANK J. RANGUS, OCR

15

16

17

18

19

20

21

22

23

24

25