UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>                        Plaintiffs,<br><br>v.<br><br>CORECIVIC, INC., a Maryland corporation,<br><br>                        Defendant.<br>_____<br>CORECIVIC, INC.,<br><br>                   Counter-Claimant,<br><br>v.<br><br>SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>               Counter-Defendants. | Case No.: 17-CV-1112 JLS (NLS)<br><br>**ORDER: (1) DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, (2) DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, (3) DENYING AS MOOT PLAINTIFFS' MOTION TO EXCLUDE, AND (4) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>(ECF Nos. 97, 117, 128, 155) |

Presently before the Court are Plaintiffs and Counter-Defendants Sylvester Owino and Jonathan Gomez's Motion for Class Certification ("Cert. Mot.," ECF No. 84), Motion for Partial Summary Judgment ("MPSJ," ECF No. 97), and Motion to Exclude Evidence

from Class Certification Decision ("Mot. to Exclude," ECF No. 128), as well as Defendant and Cross-Claimant CoreCivic, Inc.'s Motion for Judgment on the Pleadings ("MJP," ECF No. 117). The Court held a hearing on December 19, 2019. *See* ECF Nos. 154, 159 ("Tr."). Having carefully considered the Parties' arguments, the evidence, and the law, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for Partial Summary Judgment (ECF No. 97), **DENIES** Defendant's Motion for Judgment on the Pleadings (ECF No. 117), **DENIES AS MOOT** Plaintiffs' Motion to Exclude (ECF No. 128), and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Class Certification (ECF No. 84), as follows.

## BACKGROUND

### I. Factual Background[1]

Plaintiffs are civil immigration detainees who are involuntary confined at Defendant's detention facilities under the custody of Immigration and Customs Enforcement ("ICE"). *See* Pls.' Stmt. of Facts, ECF Nos. 97-2, 99-1 (sealed), ¶¶ 1, 37, 41. During their period of detention, Plaintiffs and other ICE detainees performed work for Defendant through a Voluntary Work Program ("VWP"). *Id.* Defendant paid those participating in the VWP between $0.75 and $1.50 per day, *id.* ¶ 18, which is less than California's minimum wage. *See id.* ¶ 35. Defendant also coerced detainees to perform additional, uncompensated work under threat of punishment. *See id.* ¶¶ 11, 13, 16.

### II. Procedural Background

Plaintiffs filed this putative class action on May 1, 2017, alleging seven causes of action for (1) forced labor and violation of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589 *et seq.*; (2) forced labor and violation of the California

---

[1] Plaintiffs request the Court to exclude "attachment B to Exhibit 1, and all attachments to Exhibits 4, 6, 7, 8, 11, and 13" filed in support of Defendant's opposition to their Motion for Class Certification "on the grounds that they were not timely produced" by the March 15, 2019 deadline to complete class discovery imposed by Magistrate Judge Nita L. Stormes. *See* ECF No. 128-1 at 1. Because the Court does not rely on any of the attachments Plaintiffs have challenged in ruling on Plaintiffs' Certification Motion, the Court **DENIES AS MOOT** Plaintiffs' Motion to Exclude (ECF No. 128).

TVPA, Cal. Civ. Code § 52.5; (3) unfair competition, Cal. Bus & Prof. Code §§ 17200 *et seq.*; (4) violations of the California Labor Code; (5) violation of California Industrial Welfare Commission ("IWC") Orders; (6) negligence; and (7) unjust enrichment. *See generally* ECF No. 1. Plaintiffs alleged that the action was being brought on behalf of three classes: (1) a "Nationwide Forced Labor Class" comprised of "[a]ll civil immigration detainees who performed Forced Labor uncompensated work for CoreCivic at any Detention Facility owned or operated by it between November 2, 2004[,] to the applicable opt-out date, inclusive"; (2) a "California Forced Labor Class" comprised of "[a]ll civil immigration detainees who performed Forced Labor uncompensated work for CoreCivic at any Detention Facility located in California owned or operated by it at [any] time during the period from November 2, 2004[,] to the applicable op-out date, inclusive"; and (3) a "California Labor Law Class" comprised of "[a]ll civil immigration detainees who performed Dollar-A-Day Work for CoreCivic and were paid one dollar ($1) per day at any Detention Facility located in California owned or operated by it at any time between November 2, 2004[,] to the applicable op-out date, inclusive." *Id.* ¶ 30.

On August 11, 2017, Defendant moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), *see generally* ECF No. 18, a motion that the Court later granted in part and denied in part. *See generally* ECF No. 38. Defendant then answered Plaintiffs' complaint, "admit[ting] that jurisdiction is proper in this Court." *See* ECF No. 44 ¶¶ 2–3, 5. Although Defendant raised several affirmative defenses, it did not raise any jurisdictional defenses. *See id.* at 21–27.

On September 11, 2018, Plaintiffs moved to file an amended complaint "for the purpose of adding a claim for violations of the Private Attorney General Act ("PAGA"), Cal. Labor Code §§ 2698, *et seq.*," ECF No. 64, a request Defendant did not oppose. *See* ECF No. 65. The Court therefore granted Plaintiffs' motion, *see* ECF No. 66, and Plaintiffs filed their First Amended Complaint on October 12, 2018, *see generally* ECF No. 67 ("FAC"), adding a new cause of action for violation of PAGA "[o]n [b]ehalf of Plaintiffs [i]ndividually and the Class." *See id.* ¶¶ 129–38. Again, Plaintiffs alleged three classes: a

Nationwide Forced Labor Class, a California Forced Labor Class, and a California Labor Law Class. *See id.* ¶ 30.

Defendant answered Plaintiffs' First Amended Complaint on October 26, 2018. *See generally* ECF No. 70. For the first time, Defendant "admit[ted] only that this Court has specific personal jurisdiction over CoreCivic as to the claims arising out of CoreCivic's California facilities" and "denie[d] that this Court has general personal jurisdiction over CoreCivic as to claims arising out of CoreCivic's non-California facilities." *Id.* ¶ 5; *see also id.* ¶ 31 ("CoreCivic further affirmatively alleges that this Court lacks personal jurisdiction over CoreCivic as to Plaintiffs' claims arising out of CoreCivic's non-California facilities."). CoreCivic also raised a new affirmative defense in its answer to Plaintiffs' First Amended Complaint: "As a separate defense, and in the alternative, CoreCivic alleges that this Court lacks personal jurisdiction over CoreCivic as to Plaintiffs' claims arising out of Plaintiffs' non-California facilities." *Id.* at 22 ¶ 8.

On April 15, 2019, Plaintiffs filed their Certification Motion, seeking to certify five classes, *see generally* ECF No. 84, and Plaintiffs filed their Motion for Partial Summary Judgment, seeking summary adjudication as to whether Plaintiffs are employees under California law and on Plaintiffs' claims for violation of California Labor Code sections 226 and 1194, on June 5, 2019. *See generally* ECF No. 97. On July 11, 2019, Defendant filed its Motion for Judgment on the Pleadings, "mov[ing] this Court, pursuant to Fed. R. Civ. P. 12(c) to grant judgment on the pleadings and dismiss all putative class claims that arose outside of California for lack of personal jurisdiction." *See* ECF No. 117 at 2. Plaintiffs moved to exclude certain evidence Defendant introduced in its opposition to their Certification Motion on August 1, 2019, "on the grounds that Defendant violated this Court's scheduling order regarding class discovery, as well as two of the Court's discovery orders," by producing documents "to Plaintiffs for the first time months after the close of class discovery." *See* ECF No. 128 at 2.

/ / /

/ / /

# PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment, or partial summary judgment, is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## II. Analysis

Plaintiffs seek summary adjudication as to (1) their status as "employees" under California law, and (2) Defendant's liability to them under California Labor Code sections 226 and 1194 and Industrial Welfare Commission ("IWC") Wage Order No. 5-2001. *See* ECF No. 97 at 2. Defendant contends that Plaintiffs' motion must be denied because the "one-way intervention rule" precludes Plaintiffs from seeking summary judgment before class certification.[2] ECF No. 133 at 3–4. Plaintiffs respond that "the 'one-way intervention' rule is a procedural red herring." ECF No. 141 at 9.

The one-way intervention rule is intended "to protect defendants from unfair 'one-way intervention,' where the members of a class not yet certified can wait for the court's ruling on summary judgment and either opt in to a favorable ruling or avoid being bound by an unfavorable one." *Villa v. San Francisco Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1021 (N.D. Cal. 2015) (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974)). The one-way intervention rule is supported by "[t]he purpose of Rule 23(c)(2)[, which] is to ensure that the plaintiff class receives notice of the action well *before* the merits of the case are adjudicated." *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995). This purpose is the result of the "1966 amendments [that] were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments." *Am. Pipe & Const. Co.*, 414 U.S. at 547.

---

[2] Defendant also asks the Court to deny or defer ruling on Plaintiffs' Motion for Partial Summary Judgment until Defendant has had the opportunity to conduct "[e]ssential [m]erits [d]iscovery." ECF No. 133 at 6–10. Although the Court tends to agree with Plaintiffs that Defendant has not made the requisite showing under Federal Rule of Civil Procedure 56(d), *see* ECF No. 141 at 2–8, the Court need not reach the issue because the one-way intervention rule is dispositive.

While the one-way intervention rule typically precludes a court from ruling on a merits-based motion before the class is certified and notified, *see Schwarzschild*, 69 F.3d at 296, there is an exception "when early resolution of a motion for summary judgment seems likely to protect both the parties and the court from needless and costly further litigation." *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984). However, "[d]efendants must consent to this procedure, as the judgment against the individual plaintiff 'will not be res judicata as to other individual plaintiffs or other members of any class that may be certified.'" *Schwarz v. Meinberg*, No. CV1300356BROPLAX, 2016 WL 9115353, at *2 (C.D. Cal. July 15, 2016) (quoting *Wright*, 742 F.2d at 544); *see also Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-5693 PSG (RZX), 2015 WL 4476932, at *4 (C.D. Cal. May 27, 2015).

The Court concludes that the one-way intervention rule applies here. The class was neither certified nor notified prior to Plaintiffs' filing of their Motion for Partial Summary Judgment; consequently, a ruling on the merits is premature because it has the potential to leave Defendant open to "being pecked to death" by plaintiffs seeking an alternative outcome. *See Fireside Bank v. Super. Ct.*, 40 Cal. 4th 1069, 1078 (2007) (quoting *Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 363 (7th Cir. 1987)). Further, the exception does not apply here because Defendant did not consent to a pre-certification ruling on Plaintiffs' Motion for Partial Summary Judgment. *See* ECF No. 133 at 4 ("CoreCivic has not consented—and does not consent—to the adjudication of these merits issues before a class-certification ruling.") (citing *Gessele v. Jack in the Box, Inc.*, No. 3:10-cv-960-ST, 2012 WL 3686274, at *3 (D. Or. Aug. 24, 2012)).

Because "there is no reason the briefing on the MPSJ could not have been completed already as scheduled," Plaintiffs suggest that the Court defer ruling on its Motion, without allowing Defendant a second opportunity to brief the merits, until after the class certification procedures have been completed. ECF No. 141 at 9–10. But Plaintiffs do not cite, and the Court has not found, any authority supporting Plaintiffs' request. *See Gomez v. Rossi Concrete Inc.*, No. 08CV1442 BTM CAB, 2011 WL 666888, at *2 (S.D. Cal. Feb.

17, 2011) (denying pre-certification motion for summary judgement without prejudice); *see also Villa*, 104 F. Supp. 3d at 1023 (same). Further, Defendant should not be penalized for asserting its rights under the one-intervention rule.

Consequently, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for Partial Summary Judgment. Should Plaintiffs elect to renew their Motion for Partial Summary Judgment following the Court's resolution of their Motion for Class Certification, Defendant must either respond on the merits or "identify specific facts to be obtained in discovery that [a]re essential to oppose summary judgment." *See Leonard v. Baker*, 714 F. App'x 718, 719 (9th Cir. 2018) (citing *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)).

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

### I. Legal Standard

Any party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings attacks the legal sufficiency of the claims alleged in the complaint. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). The Court must construe "all material allegations of the non-moving party as contained in the pleadings as true, and [construe] the pleadings in the light most favorable to the [non-moving] party." *Doyle v. Raley's Inc.*, 158 F.3d 1012, 1014 (9th Cir. 1998). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

/ / /

/ / /

## II. Analysis

Defendant requests that the Court "grant judgment on the pleadings and dismiss all putative class claims that arose outside of California for lack of personal jurisdiction." ECF No. 117 at 2; *see also* ECF No. 117-1 at 1, 9. Defendant contends that "courts have approved such jurisdictional challenges at the class-certification stage." ECF No. 117-1 at 1 (citing *Gasser v. Kiss My Face, LLC*, No. 17-CV-01675-JSC, 2018 WL 4538729, at *2 (N.D. Cal. Sept. 21, 2018)).

Plaintiffs urge the Court to "deny Defendant's Motion for Judgment on the Pleadings . . . because it is a procedurally improper, belated personal jurisdiction challenge Defendant should have raised two years ago when litigation began, and which Defendant waived due to its failure to do so." ECF No. 134 at 1. Specifically, Plaintiffs argue that "Defendant waived its challenge by failing to raise it in the prior Rule 12(b) motion, and through its extensive litigation conduct." *Id.* at 2.

Defendant responds that it did not waive its personal jurisdiction defense because "personal jurisdiction is waived only if it was both *available* and omitted from the earlier motion." ECF No. 140 at 1 (emphasis in original). Defendant contends that the personal jurisdiction defense was not available to it at the time it filed its Rule 12(b) motion to dismiss because "CoreCivic had no good faith basis to challenge personal jurisdiction over the non-plaintiff, putative class members' claims" prior to class certification, *see id.*, rendering "any personal jurisdiction challenge to the putative class members' claims . . . premature and procedurally improper at the motion-to-dismiss stage." *Id.* at 2.

The Court concludes that Defendant has waived any challenge to the Court's personal jurisdiction. "'Lack of personal jurisdiction' is a 'defense to a claim for relief' that the Federal Rules expressly recognize." *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 164 (S.D. Cal. 2019) (quoting Fed. R. Civ. P. 12(b)(2)). "Challenges to alleged defects in a district court's personal jurisdiction are expressly waived unless a defendant timely asserts the defense in a motion to dismiss or in a responsive pleading." *Id.* (citing Fed. R. Civ. P. 12(h)(1); *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1983); *Williams v.*

*Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986); *Braver v. Northstar Alarm Servs.*, 329 F.R.D. 320 (W.D. Okla. 2018)). "An exception to this rule exists when a defense or objection was unavailable at the time the defendant filed its earlier motion or responsive pleading." *Id.* (citing Fed. R. Civ. P. 12(g)(2)). "A defense is considered 'available' unless its legal basis did not exist at the time of the answer or earlier pre-answer motion." *Id.* at 164–65 (citing *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 964 (D.C. Cir. 2016); *Tinn v. EMM Labs, Inc.*, No. 07-cv-00963-AC, 2008 WL 3861889, at *3 (D. Or. Aug. 19, 2008)).

Here, "[Defendant] could have asserted a personal jurisdiction challenge to Plaintiffs' initial May . . . 2017 . . . complaint[], . . . which alleged [a] nationwide T[V]PA class[]." *See id.* at 165. *Bristol-Myers Squibb* was decided on June 19, 2017, and Defendant did not respond to Plaintiffs' initial Complaint until August 11, 2017, *see* ECF No. 18, or answer Plaintiff's initial Complaint until June 8, 2018. *See* ECF No. 44. Whether or not a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) would have been premature, *see* ECF No. 171 at 2–4 (citing *Molock v. Whole Foods Mktg. Grp., Inc.*, No. 187162, 2020 WL 1146733, at *2–3 (D.D.C. Mar. 10, 2020)), the legal basis for the defense was known to the Defendant when it responded to Plaintiff's initial Complaint, thereby rendered the personal jurisdiction defense available. Consequently, "[Defendant]'s failure to assert personal jurisdiction in its first responsive pleadings to [Plaintiffs'] original complaint[] constitutes a waiver of such a defense." *See McCurley*, 331 F.R.D. at 165; *see also Mussat v. Enclarity, Inc.*, 362 F. Supp. 3d 468, 470 (N.D. Ill. 2019) (denying Rule 12(c) motion to dismiss for lack of personal jurisdiction in putative nationwide class action on grounds that defense was waived under Rules 12(g)(2) and 12(h)). The Court therefore **DENIES** Defendant's Motion for Judgment on the Pleadings.

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### I.    Legal Standard

Motions for class certification proceed under Rule 23(a) of the Federal Rules of Civil Procedure. Rule 23(a) provides four prerequisites to a class action: (1) the class is so

numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"), and (4) the representative parties will fairly and adequately protect the interests of the class ("adequate representation").  Fed. R. Civ. P. 23(a).

A proposed class must also satisfy one of the subdivisions of Rule 23(b).  Here, Plaintiffs seek to proceed under Rule 23(b)(3), which requires that "the court find[] that the [common questions] predominate over any questions affecting only individual members ['predominance'], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ['superiority']."  The relevant factors in this inquiry include the class members' interest in individually controlling the litigation, other litigation already commenced, the desirability (or not) of consolidating the litigation in this forum, and manageability.  Fed. R. Civ. P. 23(b)(3)(A)–(D).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (internal quotations omitted).  "Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  *Id.*  The court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case."  *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).  A weighing of competing evidence, however, is inappropriate at this stage of the litigation.  *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

## II.   Analysis

Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), Plaintiffs seek to certify the following five classes:

1.    The California Labor Law Class, comprised of "[a]ll ICE detainees who (i) were detained at a CoreCivic facility located in California between May 31, 2013 and the present, and (ii) worked through CoreCivic's [VWP] during their period of detention in California," ECF No. 84 at 1;[3]

2.    The California Forced Labor Class, comprised of "[a]ll ICE detainees who (i) were detained at a CoreCivic facility located in California between January 1, 2006 and the present, (ii) cleaned areas of the facilities above and beyond the personal housekeeping tasks enumerated in ICE's Performance Based National Detention Standards 2011 (the "ICE PBNDS"), and (iii) performed such work under threat of discipline irrespective of whether the work was paid or unpaid," *id.*;

3.    The California Basic Necessities Class, comprised of "[a]ll ICE detainees who (i) were detained at a CoreCivic facility located in California between January 1, 2006 and the present, (ii) worked through CoreCivic's VWP, and (iii) purchased basic living necessities through CoreCivic's commissary during their period of detention in California," *id.* at 1–2;

4.    The National Forced Labor Class, comprised of "[a]ll ICE detainees who (i) were detained at a CoreCivic facility between December 23, 2008 and the present, (ii) cleaned areas of the facilities above and beyond the personal housekeeping tasks enumerated in the ICE PBNDS, and (iii) performed such work under threat of discipline irrespective of whether the work was paid or unpaid," *id.* at 2; and

5.    The National Basic Necessities Class, comprised of "[a]ll ICE detainees who (i) were detained at a CoreCivic facility between December 23, 2008 to the present, (ii) worked through CoreCivic's VWP, and (iii) purchased basic living necessities through CoreCivic's commissary during their period of detention." *Id.*

---

[3] Defendant contends that "Plaintiffs exclude Count Nine (Failure to Pay Compensation Upon Termination/Waiting Time Penalties, Cal. Labor Code §§ 201–203) from the list of claims that this Class is pursuing," *see* ECF No. 118 at 12 (citing ECF No. 84-1 at 17); however, Plaintiffs explicitly include Count Nine in their Notice of Motion, *see* ECF No. 84 at 1.

### A. *Preliminary Considerations*

Before addressing the Rule 23(a) and Rule 23(b)(3) factors, the Court addresses Defendant's arguments concerning the certification of the Basic Necessities Classes, Plaintiffs' standing to pursue prospective equitable relief, and the ascertainability of the proposed classes.

#### 1. *The Basic Necessities Classes*

As an initial matter, Defendant contends that "[t]he Court cannot certify the Basic Necessities Classes because it 'is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it.'" ECF No. 118 at 13 (citing *Reyes v. Educ. Credit Mgmt. Corp.*, 322 F.R.D. 552, 559 (S.D. Cal. 2017) (quoting *Costelo v. Chertoff*, 258 F.R.D. 600, 605 (C.D. Cal. 2009)), *vacated & remanded on other grounds*, 773 Fed. App'x 989 (9th Cir. 2019)); *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 621 (S.D. Cal. 2015)). Defendant notes that, "[a]lthough a Court is not precluded from considering a new class 'that is *narrower* than the class definition originally proposed,' . . . Plaintiffs' Basic Necessities Classes involve an *entirely different* theory of liability, based on factual allegations that simply do not exist in the Complaint." *Id.* at 13–14 (quoting *Bee, Denning*, 310 F.R.D. at 621) (emphasis in original).

Plaintiffs counter that "the CA and National Basic Necessities Classes assert the same theories of liability that Plaintiffs alleged in the FAC—namely, violations of the CA TVPA, Federal TVPA, and UCL, as well as unjust enrichment and negligence." ECF No. 127 at 6. "Further, the Basic Necessities Classes are also defined more narrowly than the Nationwide and California Forced Labor Classes alleged in the FAC, which refer to '[a]ll civil immigration detainees who performed Forced Labor' generally, without any limiting principle," whereas "the Basic Necessities Classes tether the definition of 'Forced Labor' to ICE detainees that worked through CoreCivic's VWP and purchased basic living necessities at the commissary." *Id.* at 6–7 (quoting FAC ¶ 30; ECF No. 84 at 1–2).

"Generally, a plaintiff may only seek to certify a class as defined in a complaint—courts will not certify classes different from, or broader than, a class alleged in the

complaint without plaintiff moving to amend the complaint." *Richie v. Blue Shield of Cal.*, No. C-13-2693 EMC, 2014 WL 6982943, at *13 (N.D. Cal. Dec. 9, 2014) (citing *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181, at *2 (N.D. Ill. Jan. 4, 2013); *Costelo*, 258 F.R.D. at 604–05). Despite Plaintiffs' assertion that the Basic Necessities Classes are "defined more narrowly" than the Forced Labor Classes alleged in their First Amended Complaint, the Court concludes that those classes are new classes hinging on allegations not appearing in the First Amended Complaint.

The First Amended Complaint's only reference to the commissary is that "Plaintiffs and detainees are/were only allowed to spend their $1 per day at the CoreCivic 'company store' or commissary." FAC ¶ 15. This is entirely different than alleging that Plaintiffs *had to spend* their earnings at the commissary on *basic necessities* that were not provided by Defendant. Indeed, the only mention of "basic necessities" is made in Defendant's Counter-Claim. *See, e.g.*, ECF No. 70 at 31 ¶ 13 ("CoreCivic provides basic necessities to all detainees housed in its California facilities, including but not limited to housing, food, clothing, and recreation."); *id.* at 33 ¶ 23 (same); *id.* at 35 ¶ 33 ("The work performed by these detainees is performed for reasons other than compensation, as detainees participating in the [VWP] do not participate in commerce and do not depend on the wages they earn for basic necessities such as, for example, housing, food, clothing, and recreation, while detained, as those necessities are provided to them at taxpayer expense."); *id.* at Prayer ¶ D (requesting "an order awarding CoreCivic all costs and expenses incurred in providing basic necessities to Counter-Defendants and the putative class members, including but not limited to housing, food, clothing, and recreation").

If Plaintiffs uncovered the "basic necessities" theory of liability during discovery, they should have diligently sought leave to amend their First Amended Complaint to assert it. *See, e.g.*, *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2009 WL 281941, at *2 (N.D. Cal. Feb. 5, 2009) (granting motion for leave to file second amended complaint "to broaden the scope of the class and then obtain certification of the broader class"); *see also Ortiz v. McNeil-PPC, Inc.*, No. 07CV678-MMA(CAB), 2009 WL 1322962, at *2 (S.D.

Cal. May 8, 2009) (denying motion to file amended complaint to obtain class certification where the "[p]laintiffs failed to exercise the requisite diligence in seeking to amend the consolidated complaint"). But this Plaintiffs failed to do. In her July 27, 2018 Scheduling Order, Magistrate Judge Stormes imposed a deadline of October 26, 2018, by which to file "[a]ny motion to join other parties, to amend the pleadings, or to file additional pleadings." ECF No. 57 ¶ 3. On September 11, 2018, Plaintiffs sought leave to file the operative First Amended Complaint, *see* ECF No. 64, which does not mention the provision of—let alone the alleged forced purchase of—basic necessities. *See generally* FAC. Plaintiffs did not seek leave to modify the Scheduling Order to add these allegations either before or after filing the instant Motion for Class Certification, and they do not even attempt to make a showing of good cause for allowing them to amend their class allegations at this stage. *See Ortiz*, 2009 WL 1322962, at *2 (setting forth good cause standard under Rule 16(b) for modification of scheduling order and concluding that the plaintiffs failed to exercise diligence or make a showing of good cause); *see also infra* note 5.

Accordingly, the Court **DENIES** Plaintiffs' Motion for Class Certification as to the California and Nationwide Basic Necessities Classes, which were neither included in nor narrower than the classes alleged in Plaintiffs' First Amended Complaint. *See, e.g.*, *Davis v. AT&T Corp.*, No. 15CV2342-DMS (DHB), 2017 WL 1155350, at *3–4 (S.D. Cal. Mar. 28, 2017) (declining to certify class where the "proposed class is not simply a narrower version of that proposed in the Complaints" but rather "is an entirely different class" because "the nature of the modification to the class definition (a completely different class), whether additional discovery is required (yes) and whether Defendant will be prejudiced (yes), weigh in favor of declining to address the amended class in this case"); *Romero v. Alta-Dena Certified Dairy, LLC*, No. CV13-04846 R (FFMX), 2014 WL 12479370, at *1 (C.D. Cal. Jan. 30, 2014) ("Plaintiff's proposed 'Mandatory Uniform' and 'Auto Meal Deduction' classes encompass allegations and class definitions that are not found in the operative first amended complaint. Certification of those classes is denied on that basis.") (citing *Johnson v. Harley-Davidson Motor Co. Grp.*, 285 F.R.D. 573, 577 n.2 (E.D. Cal.

2012); *Costelo*, 258 F.R.D. at 604–05); *see also Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 335 (C.D. Cal. 2016) (denying motion to certify class where the plaintiff had failed to allege the underlying claim in his operative complaint and denying leave to amend the complaint to add such a claim).

### 2. Standing

In the context of a putative class action, the plaintiff bears the burden of showing that at least one named plaintiff meets the requirements for Article III standing as to each form of relief sought. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011) (citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)).

Here, it is undisputed that Plaintiffs have Article III standing for their claims for monetary damages, restitution, interest, penalties, punitive damages, and fees and costs. *See* ECF No. 144 at 1–2; ECF No. 148 at 2, 8. In addition, however, Plaintiffs seek declaratory relief as to their causes of action for violation of the TVPA and the California TVPA, *see* FAC ¶¶ 35(g), 39(c), 46, 58; *see also id.* Prayer ¶ b, as well as injunctive relief as to their causes of action for violation of the TVPA, the California TVPA, and the UCL. *See* FAC ¶¶ 35(e) & (g), 39(c), 47–48, 59–60, 69; *see also id.* Prayer ¶ c. To establish standing for such prospective equitable relief, the plaintiff must be able to show "a significant likelihood that she will be wronged again in a similar way." *Ellis*, 657 F.3d at 978 (citing *Bates*, 511 F.3d at 985).

Mr. Owino's detention, however, ended on March 9, 2015, *see* ECF No. 84-3 ¶ 2, and Mr. Gomez's on September 18, 2013,[4] *see* ECF No. 84-4 ¶ 2, well before their initial complaint was filed on May 31, 2017, *see generally* ECF No. 1, and the operative First

---

[4] Plaintiffs' status as former participants in the VWP presents other issues unrelated to standing. For example, Plaintiffs assert a claim for waiting time penalties, *see* FAC ¶¶ 94–96; however, such penalties "would be due to *severed or terminated* class members if Defendant[] were found liable on any of the class claims," *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 410 (N.D. Cal. 2013) (emphasis added), whereas Plaintiffs seek to certify a class comprised of both *former and current* participants in the VWP. *See* FAC ¶ 30. Accordingly, "[an unspecified portion] of the Class Members would be entitled to certain penalties sought in the Complaint, but the [rest] would not." *See Lusby*, 297 F.R.D. at 410.

Amended Complaint on October 12, 2018. *See generally* ECF No. 67. On November 7, 2019, the Court therefore ordered "the Parties to submit additional briefing on the following issues: (1) Mr. Owino's and Mr. Gomez's standing to pursue each form of relief sought in their First Amended Complaint; (2) the implications of their standing (or lack thereof) on their pending Motion for Class Certification; and (3) the redressability of their standing (or lack thereof) by amendment." ECF No. 143 at 3.

a.     Named Plaintiffs' Standing

In their supplemental brief, Plaintiffs contend that, "even through Plaintiffs were released from CoreCivic's custody prior to the filing of their original complaint, Plaintiffs nonetheless have Article III standing to pursue their claims for prospective equitable relief" because "[t]he Supreme Court has recognized that '[t]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." ECF No. 144 at 3 (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540, 1543 (2016)). "Because Plaintiffs were actually harmed by conduct proscribed by statute, and those statutes authorize prospective relief, Plaintiffs possess Article III standing to pursue recovery in the form of injunctive and declaratory relief on behalf of themselves and the proposed classes." *Id.* at 4 (citing *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2017 WL 3021037, at *7 (N.D. Cal. July 17, 2017)).

Defendant counters that "a statute does not automatically confer Article III standing simply because the statute authorizes prospective relief," ECF No. 145 at 3–4 (citing *Rivas v. Rail Delivery Servs., Inc.*, 423 F.3d 1079, 1083 (9th Cir. 2005)), and "Plaintiffs lack standing because they were not "exposed to a 'real and immediate threat' of future injury at the time they filed their original Complaint." *Id.* at 3 (citing *Nordstrom v. Ryan*, 856 F.3d 1265, 1270 n.2 (9th Cir. 2017)).

Defendant is correct that *Spokeo* does not relieve Plaintiffs seeking prospective equitable relief from establishing a sufficient likelihood of future harm, *see, e.g.*, *Joslin v. Clif Bar & Co.*, No. 4:18-CV-04941-JSW, 2019 WL 5690632, at *2 (N.D. Cal. Aug. 26, 2019) (recognizing after *Spokeo* that, "to show they have standing to seek injunctive relief,

17-CV-1112 JLS (NLS)

Plaintiffs must "demonstrate that [they have] suffered or [are] threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that [they] will again be wronged in a similar way'") (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)), and the Court concludes that Plaintiffs' have failed to make the requisite showing.  There are no allegations in the First Amended Complaint regarding Plaintiffs' likelihood of being detained at a CoreCivic facility in the future.  *See generally* FAC; *see also* ECF No. 144 at 5–6 ("Plaintiffs respectfully submit to the Court that they can amend the FAC to add . . . allegations[ that] would clarify Plaintiffs' . . . 'sufficient likelihood' . . . [of] be[ing] detained at a CoreCivic facility in the future."). The Court therefore concludes that Plaintiffs have failed to establish Article III standing to seek injunctive relief in the operative First Amended Complaint.

b.     Redressability Through Amendment

Because the Court determines that they have failed to establish standing to seek prospective equitable relief, Plaintiffs request leave to amend their First Amended Complaint to add new allegations regarding the "'sufficient likelihood' that both Plaintiffs will be detained at a CoreCivic facility in the future and subject to CoreCivic's challenged policies and practices," *See* ECF No. 144 at 6 (citing *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1113 (9th Cir. 2017)), or to add a new class representative.  *See id.* at 7–9. Plaintiffs note that their "counsel have been retained by a former detainee and putative class member, Achiri Nelson Geh, who was subject to and harmed by the same policies and practices as Plaintiffs while detained at Otay Mesa Detention Center [("OMDC")] between April 24, 2017[,] and October 28, 2019." *Id.* at 7.  Additionally, "there are putative class members who are presently detained at CoreCivic's facilities who also have Article III standing to assert a claim for prospective equitable relief."  *Id.* at 8.

Defendant responds that amendment would be futile because Plaintiffs have "waived any classwide prospective relief" by "fail[ing] to seek certification of the putative classes pursuant to Rule 23(b)(2)."  ECF No. 145 at 5.  Further, "Plaintiffs do not even try to meet their burden under Rule 15 for amending pleadings."  ECF No. 145 at 7 (citing *Foman v.*

*Davis*, 371 U.S. 178, 182 (1962)). In any event, "add[ing] a new class representative cannot resurrect the class claims for prospective relief," *id.* at 6 (citing *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2013)), and Mr. Geh—as a former detainee himself—"would not be a proper substitute anyway." *Id.* at 6 n.3. Mr. Owino's and Mr. Gomez's proposed amendments also "fall woefully short of establishing a 'real and immediate threat of repeated injury.'" *Id.* at 7 (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)).

On reply, Plaintiffs respond that they have not "'waived' their claims for prospective equitable relief by moving for class certification under Rule 23(b)(3)" because "courts routinely certify classes seeking both damages and prospective equitable relief under Rule 23(b)(3)" and seeking certification under Rule 23(b)(2) would be "questionable . . . given the significance of the proposed classes' claims for damages." ECF No. 148 at 1. Plaintiffs also reiterate that "there is 'a sufficient likelihood that [plaintiff] will again be wronged in a similar way,'" *id.* at 9 (quoting *Davidson*, 873 F.3d at 1113) (alteration in original), and that "other members of the putative class can be substituted into the case as named Plaintiffs in the event the Court finds that Plaintiffs do not possess Article III standing to pursue prospective equitable relief," including Mr. Geh; "all named plaintiffs in the currently stayed action *Gonzalez, et al. v. CoreCivic, Inc.*, Case No. 17-CV-2573 JLS (NLS)"; and any of the "hundreds of putative class members who are currently incarcerated at CoreCivic's facilities." *Id.* at 9–10.

The Court concludes that Plaintiffs cannot cure Mr. Owino's and Mr. Gomez's lack of standing through amendment. First, the Court agrees with Defendant that amendment would be futile as to Mr. Owino and Mr. Gomez because their proposed amendments fail to allege a sufficient likelihood of future harm. Although the Court acknowledges and agrees that Mr. Owino and Mr. Gomez "have reasonable, deeply held concerns and fears that they will be detained in the future," *see* ECF No. 144 at 6 (citing ECF No. 144-1 ¶¶ 6–11; ECF No. 144-2 ¶¶ 6–13), their proposed amendments fall short of establishing that repeat detention is "certainly impending." *See Davidson*, 873 F.3d at 1113. As

Defendant notes, Mr. "Owino has been out of ICE custody for four years, [Mr.] Gomez has been out of ICE custody for six years, and neither has been arrested or detained by ICE since—even in the 2 ½ years after filings this lawsuit." ECF No. 145 at 8 (citing ECF No. 144-1 ¶ 3; ECF No. 144-2 ¶ 3). Accordingly, even if the Court were to permit amendment,[5]

---

[5] Defendant is also correct that Plaintiffs have not attempted to make the requisite showing for leave to amend. *See* ECF No. 145 at 7. Although Defendant analyzes the propriety of amendment under Federal Rule of Civil Procedure 15, *see id.*, Magistrate Judge Stormes set a deadline to amend the pleadings of October 26, 2018. *See* ECF No. 57 ¶ 3. Accordingly, Plaintiffs must establish "good cause" to modify Magistrate Judge Stormes' scheduling order pursuant to Federal Rule of Civil Procedure 16(b)(4). *See, e.g.*, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992). "Unlike Rule 15(a)'s liberal amendment policy[,] which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* at 609. If the party seeking to modify the scheduling order "was not diligent, the inquiry should end." *Id.* "[C]ourts often find good cause when the motion to amend the scheduling order is based upon new and pertinent information," but not where the amendment is "based on information that ha[s] been available to [the party] throughout the suit." *Lyon v. U.S. Immigration & Customs Enf't*, 308 F.R.D. 203, 216 (N.D. Cal. 2015) (citing *Johnson*, 975 F.2d at 609; *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)); *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (affirming district court's denial of leave to amend because "[t]he good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action."), *aff'd*, 135 S. Ct. 1591 (2015).

Here, Plaintiffs have not "specifically request[ed] that the court modify the scheduling order," *Wolf v. Hewlett Packard Co.*, No. CV1501221BROGJSX, 2016 WL 8931307, at *4 (C.D. Cal. Apr. 18, 2016) (citing *C.F. v. Capistrano Unified Sch. Dist.*, 647 F. Supp. 2d 1187, 1190 (C.D. Cal. 2009)), nor have they attempted to show due diligence. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–95 (9th Cir. 2000) (affirming denial of motion to amend where plaintiffs "failed to show diligence"). That alone suffices to end the Court's good cause inquiry, *see Johnson*, 975 F.2d at 609; *see also Hoffman*, 315 F.R.D. at 336; however, despite Plaintiffs' well-founded objections to access to Defendant's detainees, *see* Tr. at 53:21–57:12, they have been in possession of all facts relevant to their standing since the inception of this suit, and, pursuant to Federal Rule of Civil Procedure 11, had an affirmative duty to investigate the theoretical underpinnings of their complaint—including their standing—before filing. *See Soto v. Castlerock Farming & Transp., Inc.*, No. 1:09-CV-00701 AWI, 2011 WL 3489876, at *7 (E.D. Cal. Aug. 9, 2011) ("Plaintiffs have known the causes of action since at least the filing of the first complaint in 2005, and named [the named plaintiffs] as the class representatives in 2009. Plaintiffs were obligated to know at that time whether they adequately represented the claims they brought in that complaint.") (citing Fed. R. Civ. P. 11(b)(3)); *see also Kunimoto v. Fidell*, 26 Fed. App'x 630, 631–32 (9th Cir. 2001) (affirming imposition of Rule 11 sanctions where complaint was filed by plaintiffs lacking standing). Accordingly, denial of leave to amend to cure Plaintiffs' standing is appropriate. *See, e.g.*, *In re W. States*, 715 F.3d at 737; *Johnson*, 975 F.3d at 609–10; *Wolf*, 2016 WL 8931307, at *6 (denying leave to amend where "it appears Plaintiff has been aware of the facts giving rise to the need for amendment since the inception of this action" and "Plaintiff therefore fails to establish good cause"); *Soto*, 2011 WL 3489876, at *7.

17-CV-1112 JLS (NLS)

Plaintiffs' proposed amendments would fail to establish Article III standing to pursue their claims for prospective equitable relief. *See, e.g.*, *Mendia v. Garcia*, 165 F. Supp. 3d 861, 895 (N.D. Cal. 2016) ("Although Plaintiff articulates his fear of being subject to another immigration detainer, he does not explain why or how this is likely to occur again."); *Diamond v. Corizon Health, Inc.*, No. 16-CV-03534-JSC, 2016 WL 7034036, at *5 (N.D. Cal. Dec. 2, 2016) ("Plaintiffs . . . fail to demonstrate a risk of repeated injury because the repeated injury would require a string of contingencies to occur to Plaintiffs. Plaintiffs' alleged threat of injury would first require their arrest and placement in custody at an Alameda County jail.").

Second, the proposed amendment would also be futile as to Mr. Geh. Although Mr. Geh was detained when this action and the operative First Amended Complaint were filed, that does not mean that he would have standing as of the date of a future amendment to add him as a named plaintiff. While generally "[s]tanding is determined by the facts that exist at the time the complaint is filed," *Gonzalez v. Immigration & Customs Enf't*, No. CV1304416BROFFMX, 2014 WL 12605369, at *3 (C.D. Cal. Oct. 24, 2014) (quoting *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992)), "[t]he standing of a later-added plaintiff is determined as of the date of the amended complaint which brought him into the action." *Id.* (citing *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004)). Consequently, Mr. Geh "has no standing" because "he is not *currently* detained [at OMDC] or in ICE custody." *See* ECF No. 145 at 6 n.3 (emphasis in original) (citing ECF No. 144-3 ¶¶ 2, 16).

Third, Defendant is correct that substitution of one of the named plaintiffs in the *Gonzalez* action or another current CoreCivic detainee would be improper under these circumstances. *See* ECF No. 145 at 6. "In a complaint involving multiple claims, *at least one named plaintiff* must have Article III standing for each asserted claim." *Hoffman*, 315 F.R.D. at 333 (emphasis in original) (citing *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1070 (N.D. Cal. 2015); Newberg on Class Actions § 2:5 (5th ed.)). "A finding that no class representative has standing with respect to a given claim requires

dismissal of that claim." *Id.* (quoting Newberg on Class Actions § 2:5 (5th ed.)); *see also Lierboe*, 350 F.3d at 1023 (remanding with instructions to dismiss where the named plaintiff never had standing to assert claim). Because neither Mr. Owino nor Mr. Gonzalez had standing to assert claims for prospective equitable relief when they initiated this case, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' first, second, and third causes of action to the extent they seek injunctive and/or declaratory relief.[6] *See, e.g., Davis v. Homecomings Fin.*, No. C05-1466RSL, 2007 WL 1600809, at *4–5 (W.D. Wash. June 1, 2007) (decertifying class and concluding that "substitution is not warranted because this is not a case where the named plaintiff had a valid claim that later became moot"); *In re Admin. Comm. Erisa Litig.*, No. C03-3302 PJH, 2005 WL 3454126, at *8 (N.D. Cal. Dec. 16, 2005) (denying motion for class certification and dismissing complaint where named plaintiff failed to establish standing); *Williams v. Boeing Co.*, No. C98-761P, 2005 WL 2921960, at *10 (W.D. Wash. Nov. 4, 2005) (decertifying class as to certain claims and concluding that "intervention would not be appropriate" because "the named Plaintiffs have not demonstrated standing in the first instance to maintain such claims"), *aff'd in part, dismissed in part*, 517 F.3d 1120 (9th Cir. 2008).

### c. Implications for Class Certification

Because Plaintiffs have failed to establish standing to pursue injunctive or declaratory relief, the Court **DENIES** Plaintiff's Certification Motion as to Plaintiffs' claims for prospective equitable relief and **DISMISSES WITHOUT PREJUDICE** those claims. *See supra* Section II.A.2.b; *see also, e.g., Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047–48 (9th Cir. 2014) (reversing certification of class claims for prospective relief where named plaintiffs were no longer employed by defendant at time class was certified and therefore lacked standing) (citing *Bd. of Sch. Comm'rs of Indianapolis v. Jacobs*, 420 U.S. 128, 129 (1975) (per curiam), *Kuahulu v. Emp'rs Ins. of*

---

[6] The Court therefore does not reach Defendant's argument that Plaintiffs have "waived any classwide prospective relief" by "fail[ing] to seek certification of the putative classes pursuant to Rule 23(b)(2)." ECF No. 145 at 5.

*Wausau*, 557 F.2d 1334, 1336–37 (9th Cir. 1977)); *Gustafson v. Goodman Mfg. Co. LP*, No. CV-13-08274-PCT-JAT, 2016 WL 1029333, at *8 (D. Ariz. Mar. 14, 2016) ("If a plaintiff lacks standing or has no claim 'she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail.'") (quoting *Lierboe*, 350 F.3d at 1022; *Pence v. Andrus*, 586 F.2d 733, 736–37 (9th Cir. 1978)); *see also B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) (affirming district court's dismissal of class claims for injunctive relief where named plaintiff was no longer a student of the defendant school district and therefore lacked standing to seek injunctive relief); *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 562 (S.D. Cal. 2013) (concluding that named plaintiffs who were former employees of the defendant could "[]not establish a sufficient likelihood that they w[ould] again be wronged by [the defendant employer]'s allegedly improper conduct," meaning that the plaintiffs "ha[d] no standing to pursue injunctive relief and, therefore, their claims are not typical of the proposed class").

But "CoreCivic does not dispute that Plaintiffs possess Article III standing to seek monetary damages, restitution, interest, penalties, punitive damages, and fees and costs for the putative classes. Nor does CoreCivic dispute in its Supplemental Brief that the Court can and should certify the . . . proposed classes as to claims seeking these remedies." ECF No. 148 at 2. The Court therefore concludes that it may continue the class certification analysis as to Plaintiffs' remaining claims. *See, e.g.*, *Balasanyan*, 294 F.R.D. at 562 (granting class certification as to remaining claims despite denying certification as to claims for injunctive relief, for which the named plaintiffs failed to establish standing).

### 3. Ascertainability

Defendant challenges the "ascertainability" of Plaintiffs' proposed classes, contending that the Class definitions are over-inclusive and too vague and that the Class periods are overly broad. *See* ECF No. 118 at 14–18. Plaintiffs respond that "the Ninth Circuit has expressly rejected imposing an 'ascertainability' requirement for class certification." ECF No. 127 at 7 (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir.), *cert. denied*, 138 S. Ct. 313 (2017)).

Plaintiffs are correct: In *Briseno*, the Ninth Circuit clarified that "ascertainability" is not a pre-requisite to class certification and that "the types of alleged definitional deficiencies other courts have referred to as 'ascertainability' issues . . . [are addressed] through analysis of Rule 23's enumerated requirements." 844 F.3d at 1124 n.4 (citing *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136–39 (9th Cir. 2016); *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986)). The Court therefore addresses Defendant's challenges to the breadth and vagueness of the Class definitions and periods below.

## B.  *Rule 23(a) Requirements*

### 1.  *Numerosity*

"[A] proposed class must be 'so numerous that joinder of all members is impracticable.'" *Rannis v. Recchia*, 380 Fed. App'x 646, 650 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(1)). While "[t]he numerosity requirement is not tied to any fixed numerical threshold[,] . . . [i]n general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Id.* at 651.

Plaintiffs claim that Rule 23(a)'s numerosity requirement is satisfied because "the CA Labor Law Class has at least 8,346 putative class members" and, "[w]hile the exact size of the other [two] proposed classes are not currently known, general knowledge and common sense indicate that they are large enough to satisfy the numerosity requirement of Rule 23(a)." ECF No. 87 at 15 (citing Ridley Decl. Exs. 45–50 & 88, ECF Nos. 85-46–51 & 85-89 (public redacted versions), ECF Nos. 87-33–38 & 87-76 (sealed versions)). This is because "[t]he CA Forced Labor Class and the National Forced Labor Class arise out of CoreCivic's policy and practice of requiring '*all*' ICE detainees at its facilities to perform cleaning work outside of the ICE detainees' immediate living areas under threat of discipline," meaning those "classes will necessarily include several thousands of former and current ICE detainees, and the requirement of numerosity is satisfied." *Id.* at 16 (emphasis in original).

/ / /

Defendant counters that Plaintiffs have failed to meet their burden because "[a] higher level of proof than mere common[-]sense impression or extrapolation from cursory allegations is required." ECF No. 118 at 18 (quoting *Allen v. Similasan Corp.* ("*Similasan*"), 306 F.R.D. 635, 681 (S.D. Cal. 2015)) (alteration in original). Regarding the California Labor Law Class, for example, the exhibits to which Plaintiffs cite "identify only 55 detainees who received an account deposit for 'Job Pay[,]'" and "Plaintiffs fail to identify the number of detainees who were eligible for, but did not receive, a rest period, meal period, or overtime wages." *Id.* at 18–19. Similarly, Plaintiffs' "speculation [regarding the sizes of the Force Labor Classes] does not satisfy the numerosity requirement." *Id.* at 20 (citing *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999)).

Plaintiffs rejoin that "[t]he numerosity requirement is satisfied for each proposed class." ECF No. 127 at 9. As for the California Labor Law Class, "Plaintiffs filed excerpts of the OMS reports because their size renders them nearly impossible to file on the public docket." *Id.* As for the Forced Labor Classes, "each will necessarily include several thousands of former and current ICE detainees" because they "arise out of CoreCivic's policy and practice of requiring '*all*' ICE detainees to perform cleaning work outside of the ICE detainees' immediate living areas under threat of discipline." *Id.* at 10 (emphasis in original).

The Court concludes that Plaintiffs have satisfied Rule 23(a)'s numerosity requirement for the California Labor Law Class, the California Forced Labor Class, and the Nationwide Forced Labor Class. Plaintiffs need not prove the identity of each class member at the class certification stage, *see, e.g.*, *Allen v. Hyland's Inc.* ("*Hyland's*"), 300 F.R.D. 643, 658 (C.D. Cal. 2014), and the Court concludes that it is readily apparent from the number of ICE detainees Defendant has housed in its various facilities in California and nationwide over the years at issue that the classes are so numerous that it would be impracticable to join all parties here. *See, e.g.*, *Similasan*, 306 F.R.D. at 644 (concluding that it was "readily apparent that the class is so numerous that it would be impracticable to

join all parties" where the "[d]efendant sells its Products through at least thirteen retailers"); *Hyland's*, 300 F.R.D. at 660 (finding that numerosity "is easily satisfied given that the putative class action includes consumers of twelve products sold nationwide over the course of several years").

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

Plaintiffs argue that their "claims all hinge on common contentions that are capable of classwide resolution." ECF No. 87 at 16. Defendant contends that Plaintiffs have failed to establish that Defendant has policies or practices common to all putative class members, *see* ECF No. 118 at 25–29, and that individual questions predominate. *See id.* at 29–33. Because Plaintiffs and Defendant have collapsed their arguments concerning the predominance of common issues under Rule 23(b)(3) with their discussion of commonality under Rule 23(a)(2), *compare* ECF No. 87 at 24; *and* ECF No. 127 at 10–12, *with* ECF No. 118 at 24–33, the Court discusses both commonality and predominance under the "far more demanding" Rule 23(b)(3) predominance analysis. *See infra* Section II.C.1; *see also* ECF No. 118 at 25 (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).

### 3. Typicality and Adequacy

The Ninth Circuit has explained that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Staton*, 327 F.3d at 957; *Hanlon*, 150 F.3d at 1019. The test of typicality "is

whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).

Rule 23(a)(4) also requires that "the representative parties will fairly and adequately protect the interests of the class." "To determine whether the representation meets this standard, [courts] ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

### a. Representative Plaintiffs

Plaintiffs contend that their "own claims are typical of the classes that they seek to represent" because, "[l]ike the putative class members, Plaintiffs were also subject to CoreCivic's uniform policies and practices." ECF No. 87 at 22. Further, Plaintiffs urge that they will adequately represent the proposed Classes because "Plaintiffs each seek relief on behalf of the class as a whole and have no interest antagonistic to other class members." *Id.* at 23. Defendant raises several challenges to Mr. Owino's and Mr. Gomez's adequacy and typicality, *see* ECF No. 118 at 20–24, which the Court addresses in turn.

### i. Membership in the Proposed Classes

First, Defendant argues that neither Mr. Owino nor Mr. Gomez has demonstrated through his declaration that he is a member of any of the proposed classes he seeks to represent. *See* ECF No. 87 at 21–22, 23. Plaintiffs respond that they need "not specifically define the dates and times on which the labor law violations occurred" and that "CoreCivic failed to submit any documents or records establishing that Plaintiff did not work during the applicable limitations period in spite of the fact that CoreCivic employed Mr. Owino and Mr. Gomez and w[as] better positioned (and required by California law) to maintain such employment records." ECF No. 127 at 12.

/ / /

The Forced Labor Classes:  The Court concludes that both Mr. Owino and Mr. Gomez have adequately established for purposes of class certification that they are members of the California and National Forced Labor Classes.  For example, Mr. Owino and Mr. Gomez both attest that "[d]etainees were . . . responsible for removing trash from the common areas of the living pods *on a daily basis*, sweeping and mopping floors, and cleaning toilet bowls, sinks, showers, and furniture," ECF No. 84-3 ¶ 20 (emphasis added); ECF No. 84-4 ¶ 16 (emphasis added), and that they "were not paid for working to clean the common areas when instructed by OMDC staff."  ECF No. 84-3 ¶ 21; ECF No. 84-4 ¶ 17.  Further, the detainees "almost always complied," ECF No. 84-3 ¶ 23; ECF No. 84-4 ¶ 19, "to avoid any punishment," ECF No. 84-3 ¶ 24; *see also* ECF No. 84-4 ¶ 20, because non-compliant detainees "could be subject to more random and frequent searches and cell tossing," "removed from the general living pod and placed in more restrictive housing," or saddled with a disciplinary note in their files that "could negatively impact [their] case before the judge."  ECF No. 84-3 ¶ 23; ECF No. 84-4 ¶ 19.

The California Labor Law Class:  The Court concludes that Mr. Owino and Mr. Gomez adequately have established that they were never paid a minimum wage through the VWP program, *see* ECF No. 84-3 ¶ 10; ECF No. 84-4 ¶ 8, and that they never received wage statements.  *See* ECF No. 84-3 ¶ 13; ECF No. 84-4 ¶ 10.  As such, the Court also concludes that they have established for purposes of class certification that Defendant failed to pay compensation upon termination and imposed unlawful terms and conditions of employment.[7]

As for the claims for failure to pay overtime wages and failure to provide mandated meal and rest periods, however, the Court concludes that Mr. Owino has established that he is a member of the class for his work in the kitchen but that Mr. Owino and Mr. Gomez have failed to establish that they are members of the class for any other positions they held

---

[7] Mr. Owino's and Mr. Gomez's claims for waiting time penalties, however, may not be typical of those of the Class to the extent Mr. Owino and Mr. Gomez seek to represent *current* detainees still participating in the VWP.  *See supra* note 4.

while detained by Defendant.[8]  As for Mr. Owino's work in the kitchen, he attests that he "worked in the kitchen on and off throughout each period of detention at OMDC."  ECF No. 84-3 ¶ 5.  His "normal shift in the kitchen was from 3:00 a.m. – 12:00 p.m., five days per week," *id.* ¶ 6, and that his "usual schedule would be to work from 3:00 a.m. until about 6:30 a.m." and from 7:00 a.m. to "12:00 p.m. without any other scheduled rest break."  *Id.* ¶ 7.  Although there was typically a meal "break" between 6:30 a.m. and 7:00 a.m., the kitchen crew had to use at least some of that time to prepare their own meals.  *Id.*  Further, "there were many instances where [Mr. Owino] and other kitchen workers would work more than [their] shift[,] . . . including up to 14 working hours in a day." *Id.* ¶ 6.  Mr. Owino was paid $1.00 per day, *id.* ¶ 10, regardless of the length of his shift or any extra hours worked.  *See id.* ¶ 11.  His pay was also capped at $5.00 per week, meaning that when he worked a sixth and/or seventh day each week, he would not receive any additional payment.  *See id.* ¶ 22.  Accordingly, Mr. Owino has proven that, as a member of the kitchen crew, he may not have been paid overtime, provided with mandatory rest periods, and provided with proper meal periods.

But the declarations fail to provide sufficient detail as to Mr. Owino's work as a chemical porter and cleaner or as to Mr. Gomez's work as a cleaner for the Court to conclude that they are members of the California Labor Class as to the overtime and rest and meal break claims as to those positions.  Mr. Owino and Mr. Gomez both attest that there was "no set shift" for these positions and that they were expected to "work 'until the job was done[,]'" without any "scheduled rest or meal breaks."  ECF No. 84-3 ¶¶ 8–9; ECF No. 84-4 ¶ 7.  From the limited evidence in the record, it appears that the "typical" schedule for these positions was between two and six hours per shift, *see* ECF No. 118-5 at 479

---

[8] There also may exist typicality issues where, as here, the representative plaintiffs seek to represent a class comprised of individuals holding positions that differ from their own. *See, e.g.*, *Kelley v. SBC, Inc.*, No. 97-CV-2729 CW, 1998 WL 1794379, at *15 (N.D. Cal. Nov. 18, 1998) ("[T]he typicality requirement is not met for a class that would include both employees in Plaintiffs' positions, in which there is substantial diversity, and other positions that named Plaintiffs do not hold.  The Court thus finds that Plaintiffs meet the typicality requirement only as to a class comprised of the positions that they held.").

¶¶ 40–42;[9] however, a rest period is only mandated for shifts lasting at least three-and-a-half hours, IWC Order No. 5-2001, Section 12(A), while a meal break is only required for shifts lasting at least five hours. *See* Cal. Labor Code § 512(a). Plaintiffs therefore have failed to establish that they were entitled to overtime or meal or rest periods for work performed as chemical porters or cleaners.

ii.     Statute of Limitations

Second, Defendant contends that both Mr. Owino and Mr. Gomez may be time-barred from pursuing claims under the California Labor Code and IWC Orders. *See* ECF No. 118 at 23–24. Plaintiffs counter that "possible differences in the application of a statute of limitations to individual class members, including the named plaintiff, does not preclude certification of a class action so long as the necessary commonality and, in the 23(b)(3) class action, predominance, are otherwise present." ECF No. 127 at 13 (quoting *Dibb v. Allianceone Receivables Mgmt., Inc.*, No. 14-5835 RJB, 2015 WL 8970778, at *8 (W.D. Wash. Dec. 16, 2015)).

The Court must first determine the applicable class periods. Plaintiffs claim that their "claims for unpaid wages and for violations of the UCL are all governed by a four[-]year statute of limitations." ECF No. 160 at 3 (citing *White v. Home Depot U.S.A., Inc.*, No. 17-cv-00752-BAS-AGS, 2019 WL 1171163, at *24 (S.D. Cal. Mar. 13, 2019)). Defendant responds that the California Labor Code claims are time-barred and that Plaintiffs can pursue only the UCL claim. *See* ECF No. 164 at 2–3 (citing *Mendoza v. Bank of Am. Corp.*, No. 19-cv-02491-LB, 2019 WL 4142140, at *9 (N.D. Cal. Aug. 30, 2019); *Vasquez v. Randstad US, L.P.*, No. 17-CV-04342-EMC, 2018 WL 327451, at *4 (N.D. Cal. Jan. 9, 2018); *Van v. Language Line Servs., Inc.*, No. 14-CV-03791-LHK, 2016 WL 3143951, at *30 (N.D. Cal. June 6, 2016), *aff'd in part*, 733 F. App'x 349 (9th Cir. 2018); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178–79 (2000)).

---

[9] Pin citations to Defendant's exhibits refer to the pagination provided by Defendant at the bottom of each page.

For purposes of the Certification Motion, this is a distinction without a difference: Even if Plaintiff's claims under the California Labor Code are time-barred, they still may recover for the majority of the alleged violations under the UCL. Accordingly, the Class Period for the California Labor Class to the extent it is predicated on Defendant's alleged failure to pay wages, including the meal and rest break claims, *see Tompkins v. C & S Wholesale Grocers, Inc.*, No. 2:11-CV-02836-GEB, 2012 WL 639349, at *5 (E.D. Cal. Feb. 27, 2012) (citing *Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 898 (C.D. Cal. 2005)), begins May 31, 2013. *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1076 (N.D. Cal. 2019) (citing *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179 (2000)). The waiting time claims and wage statement claims, however, seek remedies that cannot be pursued under the UCL. *See, e.g.*, *Gomez v. J. Jacobo Farm Labor Contractor, Inc.*, No. 115CV01489AWIBAM, 2019 WL 5787805, at *25–26 (E.D. Cal. Nov. 6, 2019) (wage statement claims); *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401–02 (2010) (waiting time claims). Consequently, the Class Period for the California Labor Law Class to the extent it is predicated on Defendant's alleged failure timely to pay compensation upon termination begins May 31, 2014, *see Hassan v. Praxair, Inc.*, No. LACV1802811JAKAFMX, 2019 WL 3064435, at *5 (C.D. Cal. Mar. 4, 2019), and there are two Class Periods for Defendant's alleged failure to provide wage statements, *see Troester v. Starbucks Corp.*, No. CV1207677CJCPJWX, 2019 WL 2902487, at *2 (C.D. Cal. May 21, 2019) (collecting cases): (1) for purposes of penalties, the Class Period begins May 31, 2016, pursuant to California Code of Civil Procedure section 340; and (2) for purpose of actual damages, the Class Period begins May 31, 2014, pursuant to California Code of Civil Procedure section 338. *See Gomez*, 2019 WL 5787805, at *23; *Troester*, 2019 WL 2902487, at *2; *Franke v. Anderson Merchandisers LLC*, No. CV173241 DSFAFMX, 2017 WL 3224656, at *8 (C.D. Cal. July 28, 2017).

/ / /

/ / /

/ / /

Mr. Gomez was released from detention on September 18, 2013, *see* ECF No. 84-4 ¶ 2, and Mr. Owino was released on March 9, 2015.[10]  *See* ECF No. 84-3 ¶ 2.  On the current record, it appears that Mr. Owino is part of the California Labor Law Class for the wage claims, for failure to pay compensation upon termination, and for waiting time penalties and actual damages for the failure to provide wage statements, whereas Mr. Gomez is only part of the California Labor Law Class for the wage claims.  Mr. Owino's inability to pursue penalties under Section 226 and Mr. Gomez's inability to pursue waiting time penalties under Section 203 and either penalties or actual damages under Section 226 present a legitimate challenge to their typicality.  *See Lindblom v. Santander Consumer USA, Inc.*, No. 15-CV-0990-BAM, 2018 WL 573356, at *5 (E.D. Cal. Jan. 26, 2018) ("[T]his Court and other courts in this Circuit routinely preclude potentially time-barred plaintiffs from serving as class representatives when they seek to represent members with timely claims.") (collecting cases); *Deirmenjian v. Deutsche Bank, A.G.*, No. CV0600774MMMRCX, 2010 WL 11505699, at *25 (C.D. Cal. May 13, 2010) ("Because none of the proposed class representatives appears to have a viable claim, the court finds that the typicality requirement is not satisfied."); *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 463 (S.D. Cal. 2007) ("Plaintiff experienced no harm within the one year statute of limitations because she did not receive a pay stub that allegedly failed to document exact work hours. . . .  Plaintiff therefore lacks standing.") (citing *Sosna*

---

[10] Defendant argued for the first time in its post-hearing supplemental brief that, "[a]lthough Mr. Owino's last stay at SDCF was from February 9, 2015 to March 9, 2015 (Dkt. 147-1, ¶ 7), the last day he worked at SDCF (the only CoreCivic facility he was detained at) was . . . May 22, 2013 (Dkt. 118-7 at 155, CCOG0000246[3])."  *See* ECF No. 164 at 2.  If this is true, Mr. Owino will not be a member of the California Labor Law Class, the Class Period for which begins May 31, 2013.  *See supra* page 31.  Although the Court permitted Plaintiffs to file a response to Defendant's supplemental brief, thereby mitigating any due process concerns, the Court is disinclined to resolve this issue at the class certification stage given Defendant's belated assertion of this defense and factual disputes concerning whether Mr. Owino worked during the Class Period for the California Labor Law Class, *see* ECF No. 169 at 1, 3–4; *compare* ECF No. 84-3 ¶ 5 ("During each period of detention at OMDC, I performed work through the 'Volunteer Work Program.'"), *with* ECF No. 118-7 at 774 (claiming to show that Mr. Owino's last date of payment through the VWP was May 22, 2013), particularly given that Mr. Gomez remains a viable class representative for the majority of the claims of the California Labor Law Class.

*v. Iowa*, 419 U.S. 393, 402–03 (1975)); *see also Troester*, 2019 WL 2902487, at \*2 ("[W]hether [the named plaintiff] can represent . . . class members [who may pursue penalties under Section 226] is a typicality issue for class certification."); *Burton v. Mountain W. Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 609 (D. Mont. 2003) ("[The proposed class representative's] claim is time-barred and she cannot serve as a class representative.").

Accordingly, the Court concludes that neither Mr. Owino nor Mr. Gomez is typical of the members of the California Labor Law Class seeking penalties under Section 226 and that Mr. Gomez is not typical of members of the California Labor Law Class seeking waiting time penalties under Section 203 or penalties or actual damages under Section 226.

iii.     Non-California Facilities

Finally, as to the National Forced Labor Class, Defendant urges that because both Mr. Owino and Mr. Gomez were detained at California facilities, "they cannot say that they suffered the same or similar injury as putative class members at these facilities" and "they also have no incentive to pursue a class action on behalf of detainees in facilities they never stepped foot in." ECF No. 118 at 24. Defendant also contends that Plaintiffs have failed to meet their burden to establish uniform policies as to sanitation and discipline because Plaintiffs have introduced evidence concerning the policies of only ten of Defendant's twenty-four nationwide facilities and the declarations of only four detainees, all of whom are from Defendant's California facilities. *Id.* at 26.

Plaintiffs rejoin that they "and the putative class members all worked as a direct result of . . . threats" of discipline and that "Plaintiffs can adequately represent the interests of a national class because they were subjected to CoreCivic's enterprise-wide policies and practices and their claims are typical of the class." ECF No. 127 at 14 (citing *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 573, 576 (C.D. Cal. 2007)). Further, "CoreCivic fails to address, and effectively concedes, that (1) its facilities use template policies and procedures that are create by CoreCivic's Facility Support Center, which functions as CoreCivic's 'corporate office,' and (2) the use of the template policies and procedures are

33

mandatory such that facilities do not have the ability to 'opt out' of them." ECF No. 127 at 10–11 (citing Ridley Decl. Ex. 3 at 50:15–51:25, 54:24–55:4, 59:1–5, 68:1–9; Ridley Decl. Ex. 6 at 59:8–12). "CoreCivic[] . . . also overlooks Mr. Ellis' testimony that the VWP, sanitation, and discipline policies on which Plaintiffs rely are 'standard policies' that are applicable across CoreCivic's facilities." *Id.* at 11 (citing Ridley Decl. Ex. 3 at 75:9–25, 77:13–17).

The Court concludes that Plaintiffs adequately have established standardized policies concerning the cleaning of common areas under threat of discipline across Defendant's non-California facilities. The policies from ten of Defendant's twenty-four facilities, *see* ECF No. 118 at 3; *see also* Ridley Decl. Exs. 9, 12–29, coupled with the testimony from Defendant's Rule 30(b)(6) witness that Defendant uses template policies throughout its facilities from which the facilities cannot opt out, *see* Ridley Decl. Ex. 3 at 49:21–51:147 54:24–55:13, 59:1–5, 68:1–9, 75:9–25, 77:13–17, compel the Court to conclude that Plaintiffs have met their burden at the class certification stage as to the standardization of Defendant's policies across its facilities. *See Alba*, 2007 WL 953849, at *2 (noting that contention that policy was applied differently in California "goes to the merits of the dispute"). Consequently, for purposes of class certification, the Court concludes that Plaintiffs have established that their claims under the TVPA are typical of those of the putative members of the National Forced Labor Class given the uniformity of policies across Defendant's facilities for the cleaning of common areas and discipline for failure to comply. *See infra* Section II.C.1.a.2; *see also Balasanyan*, 294 F.R.D. at 562 (concluding that California plaintiffs were typical of proposed nationwide class over the defendant employer's argument "that Plaintiffs have failed to show that their experiences are typical of the experiences of more than 60,000 draw commission salespeople in 30 different states at 117 stores" because the defendant "offer[ed] no additional information as to why Plaintiffs fall short of typicality"); *In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.*, 289 F.R.D. 526, 535 (N.D. Cal. 2012) ("Plaintiffs are typical of the proposed class [of current and former employees from hundreds of retail auto parts stores

in California] because they were subject to the same policy as the proposed class."), *aff'd*, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. 2010) ("Plaintiffs have provided evidence that indicates that they were subject to all of these alleged wrongs and that the relevant policies were common across Defendant's California facilities.").

### b. Plaintiffs' Counsel

Plaintiffs' counsel indicates that it "does not have any conflicts with other class members and will prosecute the action vigorously on behalf of both the named and absent class members," ECF No. 87 at 23–24 (citing Ridley Decl. ¶¶ 2–16; Teel Decl. ¶ 4), and that its attorneys "are well qualified, have significant experience in prosecuting complex litigation cases, and have previously been certified as class counsel in a class action involving claims against a prison technology company on behalf of detainees/prisoners." *Id.* at 24 (citing Ridley Decl. ¶¶ 2–16; Teel Decl. ¶¶ 9–25). Further, "CoreCivic does not dispute the adequacy of Plaintiffs' proposed class counsel." ECF No. 127 at 12. Consequently, the Court concludes that Plaintiffs' counsel "will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4).

### C. *Rule 23(b)(3) Requirements*

Rule 23(b)(3) states that a class may be maintained if the requirements of Rule 23(a) are fulfilled and if "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### 1. *Predominance of Common Issues*

The predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" to determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623; *see also* Fed. R. Civ. P. 23(b)(3) (to certify a class, the court must find that "questions of law or fact common to class members predominate over any

questions affecting only individual members"). "Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (quotation marks omitted). A court must analyze these elements to "determine which are subject to common proof and which are subject to individualized proof." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 310–11 (N.D. Cal. 2010), *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012).

### a. Uniformity of Defendant's Policies

As an initial matter, Defendant contends that, "to certify a claim based on a policy or practice, a plaintiff must present 'significant proof' that a policy or practice in fact exists *and* that the entire class was subjected to it." ECF No. 118 at 25 (citing *Wal-Mart*, 564 U.S. at 353; *Ellis*, 657 F.3d at 983) (emphasis in original). Defendant challenges Plaintiffs' proof regarding the uniformity of its sanitation and disciplinary policies and overtime and break policies. *See id.* at 25–29.

### i. California Labor Law Class: Overtime and Rest and Meal Break Policies

Defendant argues that Plaintiffs have failed to "provide any evidence to support any . . . policies" that Defendant does "not pay[] overtime wages and refus[es] to provide rest and meal breaks, in violation of California's labor laws." ECF No. 118 at 28. In fact, Defendant argues, its policy explicitly "*prohibit[s]* detainees from working more than eight hours in a day or forty hours in a week." *Id.* (emphasis in original).

Plaintiffs counter that "the common policies and practices alleged by Plaintiffs are either confirmed by CoreCivic in its Opposition Brief or established by CoreCivic's own written policies and Mr. Ellis' testimony." ECF No. 127 at 10. "At best, CoreCivic has created a dispute of material fact concerning the existence of the policies and practices that are the subject of Plaintiffs' class claims[, b]ut merely denying the existence of a policy or practice in the face of overwhelming evidence to the contrary is not sufficient to defeat class certification." *Id.* (citing *Howell v. Advantage RN, LLC*, No. 17-CV-0883 JLS

36

(BLM), 2018 WL 3437123, at *2 (S.D. Cal. July 17, 2018); *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-1392 JLS (NLS), 2011 WL 5025152, at *3 (S.D. Cal. Oct. 21, 2011)). "Moreover, CoreCivic's denial of the existence of the policies and practices identified by Plaintiffs create 'a viable common question' of whether such a policy existed, 'and the truth or falsity of that claim will drive the resolution of this case.'" *Id.* (citing *Ruiz v. XPO Last Mile, Inc.*, No. 5CV2125 JLS (KSC), 2016 WL 4515859, at *7 (S.D. Cal. Feb. 1, 2016)).

Overtime Wages: The Court concludes that Plaintiffs have met their burden for class certification of establishing that Defendant implemented common policies and practices in California as to the failure to pay overtime wages. Plaintiffs have introduced several of Defendant's policies, handbooks, and a VWP Agreement Form. *See* Ridley Decl. Exs. 9, 11, 12, 14, 19, 21, 24, 27. The VWP is among the "standard policies" created by template by Defendant's own Facility Support Center's policies and procedures department from which Defendant's facilities cannot "opt out." *See* Ridley Decl. Ex. 3 at 49:21–51:147 54:24–55:13, 59:1–5, 68:1–9, 75:9–25, 77:13–17. Not only do these policies not provide for payment of overtime, *see generally* Ridley Decl. Exs. 9, 12, 14, 19, 21, 24, 27, but it is clear that no overtime wages—if earned—were ever paid because "[c]ompensation [was] $1.00 per day." Ridley Decl. Ex. 9. Accordingly, the Court concludes that Plaintiffs have established a uniform policy as to the payment of overtime wages.[11] *See Alba v. Papa John's USA, Inc.*, No. CV 05-7487 GAF (CTX), 2007 WL 953849, at *1 (C.D. Cal. Feb. 7, 2007); *see also id.* at *2 ("[To the extent d]efendant[] contend[s] that the policy was applied . . . in accordance with California . . . law, that contention goes to the merits of the dispute and not to the question of whether common issues predominate") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974); *Staton*, 327 F.3d at 954).

/ / /

---

[11] The Court reiterates that this issue is distinct from that of whether Plaintiffs have established their entitlement to overtime wages, *i.e.*, whether there exist uniform policies *requiring* detainees to work overtime. *See infra* Section II.C.1.b.

<u>Rest and Meal Breaks</u>:  The Court concludes, however, that Plaintiffs have failed to establish a uniform policy as to the provision of meal and rest breaks.  To establish the existence of uniform policies, Plaintiffs cite to their own declarations and the deposition testimony of Jason Ellis and Fred Figueroa, two of Defendant's employees.  *See* ECF No. 87 at 7 (citing ECF No. 84-3 ¶¶ 7–9; ECF No. 84-4 ¶ 7; Ridley Decl. Ex. 3 (ECF No. 85-4) at 129:23–130:15; Ridley Decl. Ex. 6 (ECF No. 85-7) at 34:2–8).  Mr. Owino, for example, attests that, as a member of the kitchen crew, he received only one, thirty-minute meal "break," during which he was required to prepare his own meal, and no rest breaks while working a 3:00 a.m. to 12:00 p.m. shift.  ECF No. 84-3 ¶ 7.  As a chemical porter and cleaner, he would work shifts of an unspecified length with "no scheduled rest or meal breaks."  ECF No. 84-4 ¶¶ 8–9.  Similarly, Mr. Gomez worked as a cleaner for shifts of an unspecified length without "scheduled rest or meal breaks."  ECF No. 84-4 ¶ 7.  Mr. Ellis testified both that he was "not sure if there are -- there are breaks or not" and that he was "sure there would be breaks, some breaks at least" but that he "d[id]n't know the length of those breaks or -- or the duration."  Ridley Decl. Ex. 3 at 129:23–130:15.  Mr. Figueroa testified that the "outside crew" works between 7:30 a.m. and 3:00 p.m. with "a lunch break in the middle" and "no regularly scheduled break."  Ridley Decl. Ex. 6 at 34:2–8.

On this record, the Court concludes that Plaintiffs have failed to establish a uniform policy as to the denial of rest and meal breaks.  In the absence of a written policy, "Plaintiffs must show 'substantial evidence' of a systematic policy" depriving detainees of rest and meal breaks.  *See Nevarez v. Costco Wholesale Corp.*, No. 2:19-CV-03454-SVW-SK, 2019 WL 7421960, at *7 (C.D. Cal. Dec. 26, 2019) (citing *In re AutoZone*, 289 F.R.D. at 539; *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1051 (2012)).  As discussed above, *see supra* Section II.B.3.a.1, Plaintiffs have failed to meet this burden.  Indeed, Plaintiffs have introduced no evidence that detainees in the VWP holding positions other than the morning kitchen shift were deprived of a legally mandated rest or meal break.  *See id.*  As for that one shift, Plaintiffs have introduced the sworn testimony of only one detainee, Mr. Owino, to support an allegedly systemic policy of depriving those detainees of legally mandated

breaks. ECF No. 84-3 ¶ 7. The Court cannot conclude that Mr. Owino's testimony as to his "normal shift," *see id.* ¶ 6, amounts to "substantial evidence," particularly given the testimony of D. Topasna, Chief of Unit Management at the San Diego Correctional Facility ("SDCF") and OMDC, *see* Def.'s Ex. at 472 ¶ 3, that Defendant's practice was that the breakfast shift went from 3 a.m. to 8:30 a.m. with "a meal break and . . . multiple rest periods."[12] *Id.* at 479 ¶ 39. The Court therefore concludes that, based on the current record, Plaintiffs have failed to establish that Defendant has a uniform policy or practice of denying detainees legally mandated rest and meal breaks.

ii.     Forced Labor Classes: Sanitation and Discipline Policies

Defendant also contends that Plaintiffs have failed to introduce significant proof that the putative class members were subjected to uniform sanitation and disciplinary policies that forced detainees to clean common areas under threat of discipline. *See* ECF No. 118 at 25–26. Specifically, the written policies themselves require only that the detainees clean their assigned living areas, whereas detainees in the VWP program are required to clean the common areas, *see id.* at 25, and detainees are not disciplined with segregation for failing to clean. *See id.* at 25–26. Further, the only evidence that detainees are forced to clean common areas under threat of disciplinary segregation comes from the declarations of four detainees, which "is not 'significant proof' that more than 120,000 detainees were subject to their claimed policy." *See id.* at 26.

Plaintiffs dispute Defendant's reading of the sanitation policy, contending that there is insufficient evidence that the cleaning policies of which Plaintiffs complain apply only to those participating in the VWP. *See* ECF No. 127 at 3–4. Further, Defendant's own witness confirmed that "any of the types of discipline is possible," *see id.* at 4 (citing Ridley Decl. Ex. 3 at 157:5–16), and this threat of discipline was conveyed to all detainees at intake through the admission handbook and reinforced through Defendant's enforcement

---

[12] Although not evidence, this is consistent with Defendant's counsel's representation at the hearing that whether breaks were provided was determined by the individual supervising officer. *See* Tr. at 31:6–33:17.

of the policy, as attested to by half-a-dozen detainees. *See id.* at 5 (citing Pl.'s Exs. 27–29; Ortiz Decl. ¶ 4; Nunez Decl. ¶ 4; Owino Decl. ¶¶ 23–24; Gomez Decl. ¶¶ 19–20; Santibanez Decl. ¶¶ 3–4; Jones Decl. ¶¶ 3–8).

The Court concludes that Plaintiffs sufficiently have demonstrated for purposes of class certification that Defendant implemented common sanitation and discipline policies that together may have coerced detainees to clean areas of Defendant's facilities beyond the personal housekeeping tasks enumerated in the ICE PBNDS. First, Defendant's sanitation policies provide that "[a]ll detainees/inmates assigned to a unit are responsible for maintaining the common living area in a clean and sanitary manner" and that "[d]etainee/inmate workers will be assigned to each area on a permanent basis to perform the daily cleaning routine of the common area," including trash removal, sweeping and mopping, cleaning and scrubbing of bathroom facilities, and wiping off of furniture. Ridley Decl. Ex. 12 (ECF No. 87-7) at 1–2 (OMDC in California); Ridley Decl. Exs. 13 (ECF No. 87-8) and 18 (ECF No. 87-13) at 1–2 (Stewart Detention Center in Georgia); Ridley Decl. Exs. 14 (ECF No. 87-9) and 19 (ECF No. 87-14) at 1–2 (SDCF in California); Ridley Decl. Ex. 15 (ECF No. 87-10) at 1–2 (North Georgia Detention Center); Ridley Decl. Ex. 16 (ECF No. 87-11) at 1–2 (Northeast Ohio Correctional Center); Ridley Decl. Ex. 17 (ECF No. 87-12) at 1–2 (T. Don Hutto Residential Center in Texas); Ridley Decl. Ex. 20 (ECF No. 87-15) at 1–2 (La Palma Correctional Center in Arizona). Although Defendant is adamant that these policies "do[] not require detainees to *clean* the common areas of the housing units," *see, e.g.*, ECF No. 118 at 4 (emphasis in original), this is not clear from the face of the policies. For example, as for the "COMMON LIVING AREAS," the policies note not only that "[a]ll detainees/inmates assigned to a unit are responsible for maintaining the common living area in a clean and sanitary manner," but also that "[t]he officer assigned to that unit will see that all materials needed to carry out this cleaning assignment are provided." *See, e.g.*, Ridley Decl. Ex. 12 at 1. Further, the policies outline a "CLEANING PROGRAM FOR OTHER AREAS," indicating that "[a]ll floors will be swept and mopped on a daily basis," "[t]oilet bowls and sinks will be cleaned daily," "[t]he

showers and floors will be mopped and scrubbed daily," "[a]ll furniture will be dusted on a daily basis and cleaned when necessary," "[a]ll trash will be emptied daily," "[w]indows will be washed weekly or more often when erquired," "[w]alls and doors will be wiped daily," and "[a]ll equipment will be dusted or cleaned on a daily basis." *Id.* at 1–2. There is no indication from the face of the policies that these tasks are to be performed only by those participating in the VWP, and there exists a dispute of fact based on the declarations submitted by staff of Defendant, who testified that the sanitation policies did not require detainees to clean up after others, *see* ECF No. 123 ¶¶ 6–21; ECF No. 118-2 at 68–70 ¶¶ 5–20, 130–33 ¶¶ 9–25, 136–38 ¶¶ 6–20; ECF No. 118-5 at 466–69 ¶¶ 6–22, 473–6 ¶¶ 6–23, and those submitted by several detainees, who testified that they were required— separate and apart from the VWP—to clean common areas, including windows, floors, toilets, sinks, showers, and furniture, without payment and under threat of punishment. *See* ECF No. 84-3 ¶¶ 17–24; ECF No. 84-4 ¶¶ 13–20; ECF No. 84-5 ¶¶ 3–4, 6; ECF No. 84-6 ¶¶ 3–4, 5.[13] As Plaintiffs note, the Court cannot resolve factual disputes of this nature at this stage in the litigation. *See* ECF No. 127 at 11 (citing *Howell v. Advantage RN, LLC*, No. 17-CV-0883 JLS (BLM), 2018 WL 3437123, at *2 (S.D. Cal. July 17, 2018)).

Second, Defendant's policies and the declarations of putative class members support Plaintiffs' contention that Defendant may have procured this labor under threat of punishment. For example, the Detainee Admission and Orientation Handbook for OMDC indicates that "**[i]t is expected that staff will receive your full cooperation while you are in this facility**," Ridley Decl. Ex. 21 (ECF No. 85-22) at 8 (emphasis in original); detainees are to "[o]bey all orders as given by staff members," *id.*; and detainees are to "***ADHERE TO ALL OTHER RULES AS INSTRUCTED BY ANY STAFF MEMBER***." *Id.* at 39 (emphasis in original). As for disciplinary action, the OMDC handbook notes that "[r]efusal to clean assigned living area" or "[r]efus[al] to obey a staff member/officer's

---

[13] There are two paragraphs numbered "5" in the Declaration of Jonathan Ortiz Dubon. The Court cites to the second paragraph 5.

order" may be sanctioned with, among other things, "[d]isciplinary transfer (recommended)," "[d]isciplinary [s]egregation (up to 72 hours)," "[l]oss of privileges (e.g., commissary, vending machines, movies, recreation, etc.)," "[c]hange housing," or "[r]estrict to housing pod." *Id.* at 45. The same recommended disciplinary actions can be found in handbooks from other of Defendant's facilities, both within and outside of California. *See* Ridley Decl. Ex. 22 (ECF No. 85-23) at 29 (Florence Correctional Center in Arizona); Ridley Decl. Ex. 23 (ECF No. 85-24) at 29 (SDCF in California); Ridley Decl. Ex. 24 (ECF No. 85-25) at 49 (Laredo Processing Center in Texas); Ridley Decl. Ex. 25 (ECF No. 85-26) at 17 (Eloy Detention Center in Arizona); Ridley Decl. Ex. 26 (ECF No. 85-27) at 17 (Houston Processing Center in Texas). At this stage, this suffices to show that Defendant had a uniform disciplinary policy that could reasonably be understood to have subjected detainees to discipline for failure to comply with the uniform sanitation policy. This conclusion is bolstered by the declarations of Plaintiffs and other putative class members, who attest that failure to abide by an order to clean the commons areas could result in disciplinary action consistent with the uniform disciplinary policy or even other retaliatory measures. *See, e.g.*, ECF No. 84-3 ¶¶ 19, 23–24; ECF No. 84-4 ¶¶ 15, 19–20; ECF No. 84-5 ¶¶ 3–4; ECF No. 84-6 ¶¶ 3–4.

The Court therefore concludes that, for purposes of class certification, Plaintiffs sufficiently have established that Defendant instituted uniform sanitation and disciplinary policies that were applied class-wide and, taken together, may have coerced detainees under threat of discipline into performing cleaning duties beyond those permitted by ICE.

b.     The California Labor Law Class

Plaintiffs urge that the claims of the California Labor Law Class "all turn on a common legal question: whether ICE detainees that worked through the VWP at CoreCivic's facilities in California are employees of CoreCivic under California law and entitled to the protections for employees set forth in the California Labor Code and the IWC's Wage Order No. 5-2001." ECF No. 87 at 17. Although Defendant "does not dispute that [whether detainees who participate in the VWP are CoreCivic's employees under

California law] is a common question," it does contest whether it is "a 'significant aspect of the case.'" ECF No. 118 at 32 (quoting *Hanlon*, 150 F.3d at 1022). Defendant asserts that "[t]here are many other individual questions needed to fully resolve the putative class member[s'] claims," including detainees' status as authorized or unauthorized aliens, hours worked, whether detainees received meal and/or rest periods, the amount of damages, and the amount of any offset. *See id.* at 32–33.

Plaintiffs claim that Defendant "misses the mark entirely" because "Plaintiffs and the putative class members were subjected to the same generally applicable policies and practices while involuntarily confined at CoreCivic as ICE detainees," meaning "[t]heir claims depend on whether the challenged policies and practices are unlawful and will 'prevail or fail in unison' based on the Court's adjudication of that issue." ECF No. 127 at 12 (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)).

Plaintiffs are correct that "[c]ertification is appropriate where the legality of a particular policy presents a 'significant question of law' that is 'apt to drive the resolution of the litigation.'" *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 437 (C.D. Cal. 2014) (quoting *Abdullah v. U.S. Sec. Assoc.*, 731 F.3d 952, 963 (9th Cir. 2013) (citing *Wal-Mart*, 564 U.S. at 350)); *see also Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 604–05 (C.D. Cal. 2015) ("The factual issue of whether [the defendant's] policies actually require—or are interpreted to require—[the alleged labor law violation] is one that is common to the class as a whole, and it is capable of resolution by common proof."); *Alba*, 2007 WL 953849, at *14 ("Whether the [defendant's] policy satisfies the right to meal and rest periods under California law is a question of law . . . common to the proposed subclass."). Nevertheless, the Court must "take into consideration all factors that militate in favor of, or against, class certification." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) (citing *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958–59 (9th Cir. 2009)).

"Considering whether 'questions of law or fact common to the class predominate' begins, of course, with the elements of the underlying cause of action." *Soares v. Flowers*

*Foods, Inc.*, 320 F.R.D. 464, 478 (N.D. Cal. 2017) (quoting *Erica P. John Fund*, 563 U.S. at 809). "[T]he Court identifies the substantive issues related to plaintiff's claims . . . then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried." *Id.* (quoting *Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 426 (N.D. Cal. 2013)). "The predominance inquiry requires that plaintiff demonstrate that common questions predominate as to each cause of action for which plaintiff seeks class certification." *Gaudin*, 297 F.R.D. at 426 (citing *Amchem Prods.*, 521 U.S. at 620). Further, "[a] court evaluating predominance 'must determine whether the elements necessary to establish liability,'" here, employee status, "'are susceptible to common proof or, if not, whether there are ways to manage effectively proof of any element that may require individualized evidence.'" *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 608 (N.D. Cal. 2014) (quoting *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 533 (2014)).

Here, Plaintiffs urge that their "claims for violations of the California Labor Code and violations of the IWC's Wage Order No. 5-2001 all hinge on the common legal issue of whether CoreCivic's classification of ICE detainees that worked through the VWP as 'volunteers' was correct or whether the ICE detainees were employees of CoreCivic under California law." *See* ECF No. 87 at 18. Strictly speaking, this does not suffice to meet Plaintiffs' burden. *See, e.g., Abikar v. Bristol Bay Native Corp.*, No. 317CV01036 GPCAGS, 2018 WL 6593747, at *7 (S.D. Cal. Dec. 14, 2018) (concluding that the plaintiffs failed to meet their burden of establishing predominance under Rule 23(b)(3) where their "predominance assertion ma[de] no reference to their underlying claims"); *accord Celena King v. Great Am. Chicken Corp.*, No. CV 17-4510-GW(ASX), 2019 WL 6348463, at *3 (C.D. Cal. July 18, 2019) (denying class certification where the plaintiff failed to address predominance as to each cause of action). Nonetheless, "public policy favor[s] disposition of cases on their merits," *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998); consequently, the Court analyzes each of Plaintiff's claims.

/ / /

### i. Minimum Wage

Plaintiffs' fourth cause of action is for failure to pay minimum wage in violation of California Labor Code sections 1194, 1197, and 1197.1 and IWC Wage Order No. 5-2001. *See* FAC ¶¶ 71–75. Whether asserted under the California Labor Code or the UCL, *see supra* Section II.B.3.a.ii, the Court concludes that common issues predominate as to the minimum wage claim.

Here, there are common, predominating questions concerning Defendant's classification of detainees participating in the VWP as volunteers and, consequently, whether those detainees were paid according to California's minimum wage statutes and regulations. Previously, the Court expressed concern regarding whether this claim was susceptible to common proof, *see, e.g.*, Tr. at 6:17–20; however, upon further reflection and review of the record, the Court concludes that "[m]ethods of common proof could be devised" to determine whether detainees participating in the VWP were paid a minimum wage. *See Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 402 (C.D. Cal. 2008), *aff'd*, 375 F. App'x 734 (9th Cir. 2010). Although Defendant does not maintain detailed time-keeping records for its detainees, *cf. Novoa v. GEO Group, Inc.*, No. EDCV172514 JGBSHKX, 2019 WL 7195331, at *3 (C.D. Cal. Nov. 26, 2019), there still exist records for days on which detainees worked, *see, e.g.*, Ridley Decl. Exs. 45–50, and—even if the records currently before the Court are not complete—there appear to be set schedules for the various positions held by participants in the VWP. *See, e.g.*, Def.'s Exs. at 479–80 ¶¶ 39–42. Together, this evidence may allow the trier of fact to determine which participants in the VWP were paid less than the minimum wage—and by how much—based on the difference between the payment received and the number of hours per shift for the position, thereby "avoid[ing] testimony by every class member." *See Kamar*, 254 F.R.D. at 402. The Court therefore concludes that there exist common, predominating questions for the California Labor Law Class as to Plaintiffs' minimum wage cause of action.

/ / /

### ii.  Overtime

Plaintiff's fifth cause of action is for failure to pay overtime wages in violation of California Labor Code sections 204, 510, and 1194 and IWC Wage Order No. 5-2001. *See* FAC ¶¶ 76–79.  The Court concludes that Plaintiffs have not met their burden of establishing that common issues predominate as to this claim.

Not only have Plaintiffs failed to establish that there exists a common policy that detainees were required to work overtime, *see supra* Section II.B.3.a.i, but it is not clear to the Court that Plaintiffs' claim is susceptible to common proof.  Should the Court determine that the members of the California Labor Law Class were employees rather than detainees, there must be some means of determining on a class-wide basis which detainees are entitled to overtimes wages, which is a question of liability and not damages.  In the absence of a written policy or schedule mandating overtime or substantial evidence that the shifts actually worked by detainees entitled them to overtime, Plaintiffs have failed to establish that the overtime claim is susceptible to common proof.[14]  *See, e.g.*, *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 642 (N.D. Cal. 2010) ("Plaintiff has provided no evidence of any company-wide or class-wide policy of requiring 'off-the-clock' work, and the individualized assessment necessary to ascertain whether there were in fact any employees who were told to work 'off-the-clock' would not be susceptible to common proof.").

This issue is exacerbated by the breadth of the defined California Labor Class as "*[a]ll* ICE detainees . . . detained at a CoreCivic facility located in California . . . [who] worked through CoreCivic's voluntary work program." *See* ECF No. 87 at 14.  Essentially, Plaintiffs seek to certify a class comprised of an untold number of unenumerated positions, including cleaners, laundry workers, kitchen crews, clerical workers, barbers, librarians, and landscapers.  *See* FAC ¶ 14.  "Because it is highly unlikely that all positions

---

[14] To be clear, the Court does not conclude that Plaintiffs *cannot* establish that their overtime claims are susceptible to common proof.  For example, the overtime claims may be susceptible to common proof if Plaintiffs can adduce additional evidence as to a written or unspoken policy applying throughout California requiring VWP participants to work overtime.

and job duties at Defendant['s facilitie]s are identical, and that all Class Members would be seeking the same relief, the Court is not persuaded[, at least on the current record,] that there are no dissimilarities in the proposed class that could 'impede the generation of common answers apt to drive the resolution of the litigation.'" *See Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 410–11 (N.D. Cal. 2013) (quoting *Wal-Mart*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009))) (citing *Nielson v. Sports Authority*, No. C 11-4724 SBA, 2012 WL 5941614, at *3 (N.D. Cal. Nov. 27, 2012); *Tijero v. Aaron Brothers, Inc.*, No. C 10-01089 SBA, 2013 WL 60464, at *4 (N.D. Cal. Jan. 2, 2013); *Kelley v. SBC, Inc.*, No. C 97-2729 CW, 1998 WL 1794379, at *14 (N.D. Cal. Nov. 18, 1998)).

For all these reasons, the Court concludes that Plaintiffs have failed to establish that common issues predominate as to the California Labor Law Class for the overtime claims.

### iii. Meal Breaks

Plaintiff's sixth cause of action is for failure to provide mandated meal breaks in violation of California Labor Code sections 226.7 and 512 and IWC Wage Order No. 5-2001. FAC ¶¶ 80–83. Again, the Court concludes that Plaintiffs have not met their burden of establishing that common issues predominate as to this claim.

As with the overtime claims, *see supra* Section II.C.1.b.ii, Plaintiffs have failed to introduce evidence of a common policy that detainees in the VWP were denied meal breaks, *see supra* Section II.B.3.a.i, or that the meal break claims are susceptible to common proof. Should the Court determine that the members of the California Labor Law Class were employees rather than detainees, there must be some means of determining on a class-wide basis which detainees were entitled to a meal break and which detainees did not receive the mandated meal break. Again, these are questions going to liability and not only to damages. Because Plaintiffs have failed to introduce evidence concerning the entitlement to meal breaks for the various positions held through the VWP or a common policy or systematic practice concerning the deprivation of such breaks, they have failed to establish that common issues predominate as to meal break claims of the California

Labor Law Class. *See, e.g.*, *Chavez v. AmeriGas Propane, Inc.*, No. CV1305813MMM MANX, 2015 WL 12859721, at *14 (C.D. Cal. Feb. 11, 2015) ("[T]his does not suffice to show that the company had a uniform corporate policy of preventing [the class members] from taking required meal breaks, such that a violation of the wage and hour laws could be proved on a classwide basis."); *Washington*, 271 F.R.D. at 641–42 ("[The defendant's] time records will not show when . . . breaks were taken . . . . For this reason, individualized analyses must be conducted to determine whether and when . . . breaks were not taken. Moreover . . . , the inquiries would not answer the critical question of *why* rest breaks were not taken—a question that will necessitate an individualized inquiry.") (footnote omitted) (emphasis in original). Accordingly, the Court concludes that Plaintiffs have failed to establish that common issues predominate as to the California Labor Law Class for the meal break claims.[15]

#### iv.    Rest Breaks

Plaintiff's seventh cause of action is for failure to provide mandated rest breaks in violation of California Labor Code section 226.7 and IWC Wage Order No. 5-2001. FAC ¶¶ 84–86. For the same reasons the Court concludes that Plaintiffs have failed to establish that Plaintiffs have not met their burden of establishing that common issues predominate as to the meal break claims, *see supra* Section II.C.1.b.iii, the Court also concludes that Plaintiffs have failed to establish that common issues predominate as to the California Labor Law Class for the rest break claims.

#### v.    Wage Statements

Plaintiffs' eighth cause of action is for failure to provide timely and accurate wage statements in violation of California Labor Code section 226. FAC ¶¶ 87–93. Defendant does not oppose certification of the California Labor Law Class as to this claim, *see generally* ECF No. 118; *see also* ECF No. 127 at 1, arguing only that it is time-barred

---

[15] Again, the Court reiterates that it does not conclude that Plaintiffs cannot establish that their meal break claims are susceptible to common proof, *see supra* note 15, although the weight of authority tends to indicate that it may be more difficult for Plaintiffs to meet their burden as to these claims.

17-CV-1112 JLS (NLS)

because Plaintiffs seek only penalties.  *See, e.g.*, ECF No. 118 at 17.  The Court concludes that whether Defendant provided wage statements to the participants in the VWP is susceptible to common proof.  Accordingly, to the extent the wage statement claims are not time-barred,[16] the Court concludes that there exist common, predominating questions for the California Labor Law Class as to Plaintiffs' claims concerning Defendant's failure to provide wage statements.

vi. Payment of Compensation Upon Termination

Plaintiffs' ninth cause of action is for failure to pay compensation upon termination/waiting time penalties pursuant to California Labor Code sections 201 through 203.  FAC ¶¶ 94–96.  Defendant does not appear to contend that common issues do not predominate, *see generally* ECF No. 118 at 32–33; rather, Defendant appears to contest only the timeliness of this claim.  *See id.* at 17; *see also supra* Section II.B.3.a.ii.  The Court concludes that whether Defendant paid compensation to the participants in the VWP upon termination is susceptible to common proof.  Accordingly, the Court concludes that there exist common, predominating questions for the California Labor Law Class as to Plaintiffs' claims concerning Defendant's failure to pay compensation upon termination.

vii. Unlawful Conditions of Employment

Plaintiffs' tenth cause of action is for imposition of unlawful terms or conditions of employment pursuant to California Labor Code section 432.5.  FAC ¶¶ 97–101.  As with the wage statement claims, *see supra* Section II.C.1.b.v, Defendant does not oppose certification of the California Labor Law Class as to this claim, *see generally* ECF No. 118; *see also* ECF No. 127 at 1, although it does contend that the only applicable underlying claim is for failure to pay minimum wages.[17]  *See, e.g.*, Tr. at 38:18–39:2.  The Court

---

[16] Defendant contends that the wage statement claims are time-barred because Plaintiffs appear to seek only penalties.  *See, e.g.*, Tr. at 37:21–38:2 (citing FAC ¶ 92).  Whether Plaintiffs seek solely penalties or other remedies for their wage statement claims is beyond the scope of the Certification Motion.

[17] Plaintiffs allege that the agreement "include[d] numerous terms that are prohibited by law, including but not limited to agreeing to work for less than minimum wage or without appropriate overtime

17-CV-1112 JLS (NLS)

concludes that whether Defendant has imposed unlawful conditions of employment upon the participants in the VWP for the alleged violations of the California Labor Code that are susceptible to common proof is itself susceptible to common proof. Accordingly, the Court concludes that there exist common, predominating questions for the California Labor Law Class as to Plaintiffs' claims concerning Defendant's imposition of unlawful conditions of employment.

### viii.   Conclusion

The Court therefore concludes, pursuant to any limitations discussed above, that Plaintiffs have established that common questions predominate as to the California Labor Law Class's causes of action for failure to pay minimum wage, failure to provide wage statements, failure to pay compensation upon termination, and imposition of unlawful conditions of employment based on those violations, as well as any viable derivative causes of action. *See infra* Section II.C.1.e.

### c.   The National Forced Labor Class

Plaintiffs argue that the claims of the National Forced Labor Class hinge upon whether "CoreCivic's policy and practice of forcing ICE detainees to clean areas of the facility above and beyond personal housekeeping tasks enumerated in the ICE PBNDS under treat of discipline, including solitary confinement, . . . constitute[s] a violation of the Federal TVPA's prohibition on obtaining labor or services by means of force or serious harm[;] threats of force or serious harm[;] or by means of any scheme, plan, or pattern intended to cause a person to believe that serious harm would result if that person did not perform such labor or services." ECF No. 87 at 21. Defendant responds that "a common question cannot simply be whether all putative class members have 'suffered a violation of the same provision of law,'" ECF No. 118 at 29 (citing *Wal-Mart*, 564 U.S. at 350), and that "resolving whether each putative class member was in fact a victim of a TVPA . . .

---

compensation." FAC ¶ 99. Whether the other claims the Court has certified as part of the California Labor Law Class, namely, the wage statement claims and failure to pay compensation upon termination claims, were among the terms in the written agreement is beyond the purview of this Order.

17-CV-1112 JLS (NLS)

violation requires the resolution of many individualized inquiries that are particular to each class member," essentially, "*why* did you work?," a question that "will require delving into each class member's subjective state of mind." *Id.* at 29–30. Plaintiffs reply that their "claims under the CA and Federal TVPA do not turn on 'individualized inquiries[,]'" because "[w]here liability depends on a threat of disciplinary action, the statutes both call for the application of an objective standard to determine whether a 'reasonable person'—in this case, ICE detainees involuntarily confined in a prison-like facility—would perform the work mandated by CoreCivic." ECF No. 127 at 12 (citing Cal. Penal Code § 236.1(h)(4); 18 U.S.C. § 1589(c)(2)).

The Court allowed both sides to present additional briefing on *Novoa*, 2019 WL 7195331, in which the district court certified classes similar to the proposed California and National Forced Labor Classes here. *See id.* at *10, *16 & n.11, *20; *see also* ECF Nos. 153, 160, 164. In its supplemental brief, Defendant urges the Court to conclude that *Novoa* is distinguishable based on the fact that "there is no undisputed written policy in this case" and that "*Novoa* adopted *Menocal*[ *v. GEO Group, Inc.*, 320 F.R.D. 258 (D. Colo. 2017)]'s predominance analysis, which is . . . inapplicable here" because the Plaintiffs here "do not even allege that they were aware of the written policies or worked because of them." *See* ECF No. 164 at 4–5. Further, *Menocal* was "based on unique Tenth Circuit jurisprudence permitting classwide causation evidence . . . , which the Ninth Circuit has not adopted," *id.* at 5 n.4 (citing *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076 (10th Cir. 2014); *Poulos v. Caesars World, Inc.*, 379 F.3d 668 (9th Cir. 2004)), and "[w]hether the labor was obtained 'by means of' or 'accomplished through' the threat is still an individualized, subjective inquiry." *Id.* at 5 n.5 (citing *David v. Signal Int'l, LLC*, No. 08-1220, 2012 WL 10759668, at *20–22 (E.D. La. Jan. 4, 2012)).

Finally, on March 19, 2020, Defendant requested that the Court consider the recent decision in *Barrientos v. CoreCivic, Inc.*, No. 18-15081, 2020 WL 964358 (11th Cir. Feb. 28, 2020), in which the Eleventh Circuit affirmed the district court's denial of Defendant's motion to dismiss a TVPA claim asserted by ICE detainees in Georgia and "h[e]ld that the

TVPA applies to private for-profit contractors operating federal immigration detention facilities." *Id.* at *9; *see also* ECF No. 172.[18]  Defendants contend that *Barrientos* "supports Defendant's argument that the putative National Forced Labor Class cannot be certified because each class member must *individually* establish that their allegation of forced labor rises to the level of an actionable claim under the [TVPA], a determination that cannot be made for all class members in one stroke." ECF No. 172 at 1.  Not surprisingly, Plaintiffs respond that "*Barrientos* supports the Court's tentative decision to certify Plaintiffs' Forced Labor [C]lasses" and that Defendant "misrepresents the holding of *Barrientos*[,] . . . which was expressly 'limited to the legal question of the TVPA's applicability to private contractors operating federal immigration detention facilities[.]'" ECF No. 173 at 1 (quoting *Barrientos*, 2020 WL 964358, at *1).

Having carefully reviewed the Parties' arguments and the additional authorities submitted by each side, the Court ultimately agrees with Plaintiffs.  First, the Court concludes that *Barrientos* offers little guidance here.  Not only is *Barrientos* not binding on this Court, but Plaintiffs are correct that "the discrete legal issue before [the Eleventh Circuit]" has no bearing on the Parties' arguments for and against class certification.  *See* 2020 WL 964358 at *6; *see also* ECF No. 173 at 1.  Defendant's attempt to divine from *Barrientos* whether the Eleventh Circuit would conclude that individual questions predominate such that class certification of a TVPA would be improper is nothing more than unsubstantiated tea-leaf reading and is therefore of minimal relevance here.

Second, the Court rejects Defendant's contention that "[w]hether the labor was obtained 'by means of' or 'accomplished through' the threat is still an individualized, subjective inquiry." *See* ECF No. 164 at 5 n.5 (citing *David*, 2012 WL 10759668, at *20–22).  As an initial matter, the court in *David* concluded that "individual issues with

---

[18] To the extent Defendant requests the opportunity to further brief *Barrientos*, *see* ECF No. 172 at 3, the Court only granted additional briefing on *Novoa* at the request of Defendant, *see* Tr. at 57:21–22, whereas Plaintiffs have indicated their belief that additional briefing on *Barrientos* is not required.  *See* ECF No. 173 at 1–2.  The Court therefore **DENIES** Defendant's request to further brief *Barrientos*.

respect to coercion and consent will predominate Plaintiffs' § 1589 forced labor claims." *See* 2012 WL 10759668, at *22. The Court is not convinced that this analysis applies within the Ninth Circuit, where a TVPA claim requires the plaintiff to establish that the employer intended to cause the victim to believe that he or she would suffer serious harm by means of an objectively, sufficiently serious threat of harm. *See United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011); *accord Tanedo v. E. Baton Rouge Par. Sch. Bd.*, No. LA CV10-01172 JAK, 2011 WL 7095434, at *8 (C.D. Cal. Dec. 12, 2011); *see also Novoa*, 2019 WL 7195331, at *16 n.11.

Even if coercion and/or consent were a relevant determination such that there exists a subjective inquiry, however, the court in *David* acknowledged that a TVPA claim may be suitable for class certification under certain circumstances resembling those here. *See* 2012 WL 10759668, at *21. Indeed, the court in *David* concluded that certification was not appropriate on the facts of that case, which "involve[d] paid workers who in fact could leave their jobs at any time, . . . were for the most part paid well, free to come and go as they pleased, and some [of whom] even took vacations and bought cars." *Id.* Further, "the 'threats' that Plaintiffs allege were made to compel them to work were often made to individuals, not to the class as a whole," meaning that "[t]he pressure to work for [the defendant] arguably came at least in part from a set of circumstances that each plaintiff individually brought upon himself." *Id.* Here, by contrast, the putative class members were not paid more than a dollar or two a day and were not free to come and go as they pleased. *See, e.g.*, FAC ¶ 10. Further, Plaintiffs allege that the threats were communicated to the class as a whole through Defendant's uniform disciplinary policy. *Id.* ¶ 42(c). Consequently, *David* does not support Defendant's contention.

On the other hand, two district courts applying Ninth Circuit precedent have concluded that individual issues do not predominate where "the class members share a large number of common attributes— . . . allowing the fact-finder to use a common 'reasonable person' standard for all class members." *See Tanedo*, 2011 WL 7095434, at *8; *see also Novoa*, 2019 WL 7195331, at *16 (adopting analysis of *Menocal*); *Menocal*,

320 F.R.D. at 267 ("The circumstances here—namely the class members' detainment, the imposition of a uniform policy, and the numerous other questions common to the class—certainly make it beneficial to permit such an inference [of causation on a class-wide basis].").  As in *Tanedo* and *Novoa*, the putative class members share a large number of common attributes, including that they are immigrants who are or were involuntarily detained in Defendant's facilities and subjected to common sanitation and disciplinary policies.

Third and finally, the Court disagrees with Defendant that the Ninth Circuit does not permit "classwide causation evidence," such that *Novoa* and *Menocal* are inapplicable.  *See* ECF No. 164 at 5 n.4 (citing *CGC Holding*, 773 F.3d 1076; *Poulos*, 379 F.3d at 668).  The cases on which Defendant relies, *CGC Holding* and *Poulos*, were both Racketeer Influences and Corrupt Organizations cases.  *See CGC Holding*, 773 F.3d at 1089–93; *Poulos*, 379 F.3d at 664.  To the extent those cases have any bearing in the TVPA context, *see Menocal*, 320 F.R.D. at 267 n.5 (acknowledging that *CGC Holding* did "not dictate the outcome in this matter"), the Ninth Circuit's "narrow and case-specific" decision in *Poulos* was based on its determination that "gambling is not a context in which [the court] can assume that potential class members are always similarly situated."  379 F.3d at 665–66.  In other contexts, such as consumer protection putative class actions, for example, the Ninth Circuit has recognized that reliance or causation can be inferred on a class-wide basis where the putative class members are similarly situated; in *Walker v. Life Insurance Company of the Southwest*, No. 19-55241, 2020 WL 1329665 (9th Cir. Mar. 23, 2020), for example, the Ninth Circuit reiterated that in the context of UCL actions "the operative question has become whether the defendant so pervasively disseminated material misrepresentations that all plaintiffs must have been exposed to them."  *Id.* at *5 (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020–21 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)).  The sum total of these authorities is that an inference of class-wide causation may be permissible where, as here,

/ / /

the putative class members share a large number of common attributes such that they are similarly situated. As discussed above, the Court concludes that this is such a case.

As in *Tanedo*, "[c]ommon questions of fact include . . . whether Defendant[] utilized threats of serious . . . harm to compel Plaintiffs to work" and "[c]ommon questions of law include . . . whether Defendants' conduct violated the TVPA," answers to which "are 'capable of classwide resolution[]' and "will determine . . . if the Plaintiffs were threatened with serious . . . harm, an issue central to the TVPA claims." *See* 2011 WL 7095434, at \*6 (quoting *Wal-Mart*, 564 U.S. at 350). Accordingly, the Court concludes that the commonality and predominance requirements are satisfied as to the National Forced Labor Class.

### d. The California Forced Labor Class

Plaintiffs assert that the claims of the California Forced Labor Class "all depend on resolution of . . . [w]hether CoreCivic's policy and practice requiring ICE detainees in its California facilities to clean areas of the facility above and beyond the personal housekeeping tasks enumerated in the ICE PBNDS under threat of discipline constitutes 'human trafficking' within the meaning of California Penal Code § 236.1(a)." ECF No. 87 at 19. As with the National Forced Labor Class, Defendant contends that there are not common questions of law and fact governing the California Forced Labor Class because "the California facilities do not have a policy or practice of forcing detainees to clean common areas under threat of disciplinary segregation" and "[t]he allegations of four detainees is not 'significant proof' that 'several thousands' . . . of detainees in California facilities were subject to their claimed policy." ECF No. 118 at 27. "Furthermore, resolving whether each putative class member was in fact a victim of a . . . California TVPA violation requires the resolution of many individualized inquiries that are particular to each class member." *Id.* at 29.

For the same reasons the Court determines that Plaintiffs have established there are common questions of law and fact that predominate as to the National Forced Labor Class,

///

17-CV-1112 JLS (NLS)

*see supra* Section III.C.1.c, the Court also determines that Plaintiffs have met their burden as to commonality and predominance for the California Forced Labor Class.

### e. Derivative Claims

Plaintiffs' third cause of action is for violation of the UCL, FAC ¶¶ 63–70; eleventh cause of action is for negligence, *id.* ¶¶ 102–19; and twelfth cause of action is for unjust enrichment. *Id.* ¶¶ 120–28. Plaintiffs acknowledge that each of these causes of action are derivative of the claims for violations of California labor law, *see, e.g.*, ECF No. 87 at 18, and California and federal TVPA. *See, e.g.*, *id.* at 20. Consequently, to the extent these claims are causes of action not barred by the statute of limitations,[19] the Court concludes that common questions predominate to the same extent discussed above. *See supra* Sections II.C.1.b.i–vii, II.C.1.c–d.

### 2. Superiority

The final requirement for class certification is "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). "In determining superiority, courts must consider the four factors of Rule 23(b)(3)." *Zinser*, 253 F.3d at 1190. The Rule 23(b)(3) factors are:

> (A) [T]he class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

/ / /

---

[19] For example, Defendant contends that Plaintiff's negligence cause of action is time-barred. *See, e.g.*, ECF No. 118 at 17. Further, "[i]n California, there is not a standalone cause of action for 'unjust enrichment,' . . . [although] a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014)) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010); *Jogani v. Super. Ct.*, 165 Cal. App. 4th 901 (2008)). The Court declines to resolve these issues at this time and on the current record.

Fed. R. Civ. P. 23(b)(3). The superiority inquiry focuses "on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (internal quotation marks omitted). A district court has "broad discretion" in determining whether class treatment is superior. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

Plaintiffs contend that a class action is superior here because "many of the putative class members have a limited understanding of the law, limited English skills, and limited resources to devote to pursuing recovery." ECF No. 87 at 25. "Many former ICE detainees also fear retaliation given their uncertain immigration status or ongoing immigration proceedings." *Id.* (citing *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017)). "Finally, the class members are geographically dispersed given the number of CoreCivic facilities throughout the United States." *Id.* (citing *In re Monster Worldwide, Inc. Secs. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008)).

Defendant claims that "Plaintiffs fail to meaningfully address, much less meet their burden of establishing through evidence, that class treatment is the 'superior' method for resolving all claims efficiently and economically." ECF No. 118 at 33. Specifically, Defendant contends, "[t]he putative National classes have no meaningful ties to California, and Plaintiffs provide no reason why this forum is superior." *Id.* (citing Fed. R. Civ. P. 23(b)(3)(C)). Defendant claims that this action is not manageable as a class action because it involves "*five* classes, which . . . will include more than 120,000 people who are scattered across a multitude of countries." *Id.* at 34. According to Defendant, individualized inquiries as to liability and damages also weigh against class certification here. *See id.* at 34–35.

Plaintiffs note that "damages calculations cannot defeat class certification," ECF No. 127 (quoting ECF No. 118 at 35), and note that "CoreCivic's arguments regarding other pending litigation against CoreCivic—in addition to demonstrating the scope of CoreCivic's enterprise-wide policies and practices—confirms that the class members are

geographically dispersed." *Id.* (citing *In re Monster Worldwide, Inc. Secs. Litig.*, 251 F.R.D. at 139). Further, this is the first-filed of the several class actions to which Defendant cites "and is the farthest along." *Id.*

Although Defendant is correct that this action could prove unwieldy, it is also precisely the sort of action where class-wide litigation is superior to other methods of litigation. *See* Tr. at 28:23–29:13 ("[I]f this doesn't happen on a class basis, it doesn't happen. . . . These detainees are not in a position to take any action. . . . [A class action] may be the only way to consider doing this."). Here, "the 'risks, small recovery, and relatively high costs of litigation' make it unlikely that plaintiffs would individually pursue their claims," "considerations . . . [that] vividly point[] to the need for class treatment." *See Just Film, Inc.*, 847 F.3d at 1123; *see also Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). Further, "litigation on a classwide basis would promote greater efficiency in resolving the classes' claims." *Id.* at 1123–24 (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). Because no viable alternative method for adjudication exists, the Court concludes that class-wide litigation is superior. *See, e.g.*, *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) (concluding that district court erred in concluding that class action was not superior where "it appears that no[ other means for putative class members to adjudicate their claims] exist[s]"); *see also Bennett v. GoDaddy.com LLC*, No. CV-16-03908-PHX-ROS, 2019 WL 1552911, at *13 (D. Ariz. Apr. 8, 2019) ("Realistically, the only alternative is for Defendant to avoid effectively all liability for its actions. . . . A class action is far superior to the alternative of most of the allegedly harmed individuals obtaining no relief.") (citing *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)).

/ / /

/ / /

## CONCLUSION

In light of the foregoing, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for Partial Summary Judgment (ECF No. 97), **DENIES** Defendant's Motion for Judgment on the Pleadings (ECF No. 117), **DENIES AS MOOT** Plaintiff's Motion to Exclude (ECF No. 128), and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Class Certification (ECF No. 84). Specifically, the Court **CERTIFIES** the California and National Forced Labor Classes in their entirety and the California Labor Law Class as to the causes of action for failure to pay minimum wage, failure to provide wage statements for actual damages, failure to pay compensation upon termination, and imposition of unlawful conditions of employment, pursuant to any limitations detailed above. The Court also **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claims for injunctive relief and **CONCLUDES** that Mr. Gomez is neither an adequate nor typical representative as to the wage statement and failure to pay compensation upon termination claims. The Parties **SHALL MEET AND CONFER**[20] regarding the status of this litigation and their anticipated next steps and **SHALL FILE** a joint status report within fourteen (14) days of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated: April 1, 2020

Hon. Janis L. Sammartino
United States District Judge

---

[20] In light of the current COVID-19 public emergency, *see, e.g.*, Order of the Chief Judge No. 18 (S.D. Cal. filed Mar. 17, 2020); Executive Order N-33-20, Executive Department of the State of California (March 19, 2020), the Parties are encouraged to meet and confer telephonically.

17-CV-1112 JLS (NLS)