EILEEN R. RIDLEY (SBN 151735)
eridley@foley.com
ALAN R. OUELLETTE (SBN 272745)
aouellette@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
T: 415.434.4484 // F: 415.434.4507

NICHOLAS J. FOX (SBN 279577)
nfox@foley.com
**FOLEY & LARDNER LLP**
11988 El Camino Real, Suite 400
San Diego, CA 92130
T: 858.847.6700 // F: 858.792.6773

ROBERT L. TEEL  (SBN 127081)
lawoffice@rlteel.com
**LAW OFFICE OF ROBERT L. TEEL**
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
T: 866.833.5529 // F: 855.609.6911

GEOFFREY M. RAUX (*pro hac vice*)
graux@foley.com
**FOLEY & LARDNER LLP**
111 Huntington Avenue
Boston, MA 02199-7610
T: 617.342.4000 // F: 617.342.4001

Attorneys for Plaintiffs SYLVESTER OWINO,
JONATHAN GOMEZ, and the Certified Class(es)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>CORECIVIC, INC.,<br><br>                    Defendant. | Case No. 3:17-CV-01112-JLS-NLS<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CORECIVIC, INC.'S MOTION FOR RECONSIDERATION [ECF No. 181]** |
| CORECIVIC, INC.,<br><br>                    Counter-Claimant,<br><br>        vs.<br><br>SYLVESTER OWINO and JONATHAN GOMEZ, on behalf of themselves and all others similarly situated,<br><br>                    Counter-Defendants. | Date:          June 18, 2020<br>Time:          1:30 p.m.<br>Courtroom:  4D<br>Judge:         Hon. Janis L. Sammartino<br>Magistrate:  Hon. Nita L. Stormes |

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................... 1

II.     GOVERNING LEGAL STANDARD ........................................................ 2

III.    ARGUMENT ............................................................................................. 3

     A.    THE COURT PROPERLY DENIED CORECIVIC'S MOTION FOR JUDGMENT ON THE PLEADINGS BECAUSE CORECIVIC WAIVED ITS JURISDICTIONAL CHALLENGE .................................... 4

        1.    CoreCivic Did Not Properly Seek Reconsideration of the Court's Finding that CoreCivic Waived Its Jurisdictional Challenge .................................................... 4

        2.    CoreCivic Fails To Demonstrate How the Court's Finding on Waiver Was Clearly Erroneous or the Result of Misapprehension ............................................. 5

        3.    CoreCivic's  Jurisdiction Challenge Still Fails on the Merits .............................................................................. 11

     B.    THE COURT PROPERLY CERTIFIED THE CA LABOR LAW CLASS .............................................................................................. 13

        1.    CoreCivic's Reliance On Cases Decided Outside Of The Wage And Hour Context Should Be Disregarded ................ 14

        2.    CoreCivic's Failure To Comply With California's Recordkeeping And Wage Statement Laws Does Not Defeat Class Certification ............................................. 16

     C.    THE COURT PROPERLY CERTIFIED THE CA AND NATIONAL FORCED LABOR CLASSES .................................. 20

IV.     CONCLUSION ....................................................................................... 25

CERTIFICATE OF SERVICE .............................................................................. 27

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*389 Orange St. Partners v. Arnold*,
    179 F.3d 656 (9th Cir. 1999) ....................................................... 2

*Al Haj v. Pfizer Inc.*,
    338 F. Supp. 3d 815 (N.D. Ill. 2018) ........................................ 11

*Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*,
    No. 11-cv-246, 2013 WL 12066133 (S.D. Cal. July 19, 2013) .................. 3, 6

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680 (1946) ......................................................... 17, 18

*Appleton Elec. Co. v. Advance-United Expressways*,
    494 F.2d 126 (7th Cir. 1974) .................................................. 10

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    No. C 10-4387 PJH, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ................... 14

*Ausmus v. Lexington Ins. Co.*,
    No. 08-cv-2342, 2009 WL 2058549 (S.D. Cal. July 15, 2009) ................... 2

*Bluford by Aldapa v. Fowler Packaging Co., Inc.*,
    323 F.R.D. 316 (E.D. Cal. 2018) ........................................... 19, 20

*Caldera v. J.M. Smucker Co.*,
    No. CV 12-4936-GHK, 2014 WL 1477400 (C.D. Cal. Apr. 15, 2014) .............. 14

*Campion v. Old Republic Home Protection Co.*,
    No. 09-cv-748, 2011 WL 1935967 (S.D. Cal. May 20, 2011) ..................... 3

*Carpenter v. PetSmart, Inc.*,
    No. 19-cv-1731, 2020 WL 996947 (S.D. Cal. Mar. 2, 2020) .................... 13

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ........................................................ 14, 15

*Cruson v. Jackson Nat'l Life Ins. Co.*,
    954 F.3d 240 (5th Cir. Mar, 25, 2020) .................................... 9, 10, 11

*Daniel F. v. Blue Shield of Cal.*,
  305 F.R.D. 115 (N.D. Cal. 2014)..................................................................... 14

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002)............................................................................................. 10

*Heathman v. Portfolio Recovery Assocs., LLC*,
  No. 12-cv-201, 2013 WL 1284184 (S.D. Cal. Mar. 26, 2013)........................ 3

*Kamar v. Radio Shack Corp.*,
  254 F.R.D. 387 (C.D. Cal. 2008)............................................................ 18, 25

*Kona Enters., Inc. v. Estate of Bishop*,
  229 F.3d 877 (9th Cir. 2000) ..................................................................... 2, 3, 5

*Leyva v. Medline Indus., Inc.*,
  716 F.3d 510 (9th Cir. 2013) ........................................................................... 15

*Longest v. Green Tree Servicing LLC*,
  308 F.R.D. 310 (C.D. Cal. 2015)..................................................................... 14

*Marlo v. UPS, Inc.*,
  639 F.3d 942 (9th Cir. 2011) ........................................................................... 25

*McCurley v. Royal Seas Cruises, Inc.*,
  331 F.R.D. 142 (S.D. Cal. 2019) ....................................................................... 7

*Meredith v. Oregon*,
  321 F.3d 807 (9th Cir. 2003) ............................................................................. 5

*Molock v. Whole Foods Mkt. Grp., Inc.*,
  952 F.3d 293 (D.C. Cir. 2020)..................................................................... 9, 11

*Moser v. Health Ins. Innovations, Inc.*,
  2019 WL 3719889 (S.D. Cal. Aug. 2019) ........................................................ 7

*Mussat v. Enclarity, Inc.*,
  362 F. Supp. 3d 468 (N.D. Ill. 2019).................................................................. 7

*Mussat v. IQVIA, Inc.*,
  953 F.3d 441 (7th Cir. 2020) ........................................................................... 11

*In re MyFord Touch Consumer Litig.*,
  No. 13-cv-03072-EMC, 2016 WL 7734558 (N.D. Cal. Sep. 14, 2016) ........ 14

*Navajo Nation v. Norris*,
 331 F.3d 1041 (9th Cir. 2003) ........................................................................ 2

*Neale v. Volvo Cars of N. Am., LLC*,
 794 F.3d 353 (3d Cir. 2015) ......................................................................... 11

*Negrete v. ConAgra Foods, Inc.*,
 No. CV 16-0631 FMO, 2019 WL 1960276 (C.D. Cal. Mar. 29, 2019) ..................... 25

*Nguyen v. Nissan N. Am., Inc.*,
 932 F.3d 811 (9th Cir. 2019) ........................................................................ 14

*Parsons v. Ryan*,
 754 F.3d 657 (9th Cir. 2014) ........................................................................ 22

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985) .................................................................................... 10

*In re POM Wonderful, LLC*,
 No. ML 10-02199 DDP, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ............. 14, 15

*Poulos v. Caesars World, Inc.*,
 379 F.3d 654 (9th Cir. 2004) ......................................................................... 5

*Pulaski & Middleman, LLC v. Google, Inc.*,
 802 F.3d 979 (9th Cir. 2015) ........................................................................ 14

*Ridgeway v. Walmart Inc.*,
 946 F.3d 1066 (9th Cir. 2020) .................................................................. 18, 19

*Robinson v. OnStar, LLC*,
 No. 15-cv-1731 JLS (MSB), 2020 WL 364221 (S.D. Cal. Jan. 22, 2020) ................... 7

*Snyder v. Harris*,
 394 U.S. 332 (1969) .................................................................................... 10

*Starline Windows Inc. v. Quanex Bldg. Prod. Corp.*,
 No. 15-CV-1282-L (WVG), 2016 WL 4485564 (S.D. Cal. July 21, 2016) ................ 24

*Stemple v. QC Holdings, Inc.*,
 2015 WL 1344906 (S.D. Cal. 2015) ................................................................ 22

*In re Tableware Antitrust Litig.*,
 241 F.R.D. 644 (N.D. Cal. 2007) ................................................................... 15

*ThermoLife Int'l, LLC v. Myogenix Corp.*,
   No. 13-cv-651, 2017 WL 4792426 (S.D. Cal. Oct. 24, 2017) .................................. 3, 6

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)........................................................................ 16, 17, 18

*Vaquero v. Ashley Furniture Indus.*,
   824 F.3d 1150 (9th Cir. 2016) ............................................................. 13, 14, 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)........................................................................... 21, 22

**California Cases**

*Bell v. Farmers Ins. Exchange*,
   115 Cal. App. 4th 715 (2004) ............................................................... 18

*Bluford v. Safeway Stores, Inc.*,
   216 Cal. App. 4th 864 (2013) .............................................................. 19, 20

**Federal Statutes**

Federal Trafficking Victims Protection Act, 18 U.S.C. §§ 1589, *et seq.* ...................... 4, 23

**California Statutes**

Cal. Penal Code § 236.1(h)(4) ..................................................................... 23

**Federal Rules**

Civ. L.R. 7.1(i)(1) ................................................................................ 2

Fed. R. Civ. P. 12 ...................................................................... 5, 6, 7, 8, 9, 10

Fed. R. Civ. P. 12(b) ............................................................................ 1, 8

Fed. R. Civ. P. 12(b)(2) ......................................................................... 8, 9

Fed. R. Civ. P. 12(c) ............................................................................. 7

Fed. R. Civ. P. 12(g) ............................................................................ 7, 8

Fed. R. Civ. P. 12(h) ............................................................................. 7

Fed. R. Civ. P. 23 ............................................................................. 12, 25

Fed. R. Civ. P. 23(b)(3) .......................................................................... 14

Fed. R. Civ. P. 23(f) ................................................................................. 1, 5

Fed. R. Civ. P. 30(b)(6) ................................................................. 19, 23, 24

Fed. R. Civ. P. 56 ........................................................................................ 7

**Other Authorities**

5C Wright & Miller, *Federal Practice and Procedure* § 1388 (3d. ed., Apr.
    2019 Supp.) ....................................................................................... 7, 8

## I.  <u>Introduction</u>

As evidenced in its 59-page decision granting-in-part Plaintiffs' Motion for Class Certification and denying CoreCivic's Motion for Judgment on the Pleadings ("Certification Order"), the Court thoroughly considered the class- and jurisdiction-related issues addressed in the Parties' voluminous briefing and evidentiary submissions.  (*See* ECF No. 179 ["Cert. Order"].)  The Court's efforts were not a mere exercise in futility, only to be relegated to the bin of "clearly erroneous" decisions by a litigant unsatisfied with the outcome.  Mere disagreement with the Court's conclusions is not a basis to rehash the same legal or factual arguments that the Parties previously briefed (or could have briefed).

Yet that is the basis of CoreCivic's Motion for Reconsideration:  CoreCivic simply disagrees with the Court's conclusions in the Certification Order and wants a second bite at the apple—but this time with the benefit of the Certification Order's analysis.  CoreCivic notably fails to identify any newly discovered facts or controlling cases that were unavailable to include in the briefing on the underlying motions.  Instead, CoreCivic's sole basis for reconsideration is that the Court purportedly committed clear error or misapprehended certain arguments.  (ECF No. 181 ["Motion"] at 9:3-4.[1])  But just because CoreCivic believes the Court did not address a specific argument, or expressly discuss every piece of evidence submitted, does not mean that the Court overlooked it; the Court likely just found the argument or evidence inconsequential or unpersuasive to the issues or the analysis.    As a result, the Court should deny CoreCivic's Motion for Reconsideration.

The Court properly denied CoreCivic's Motion for Judgment on the Pleadings because, at the very least, CoreCivic waived its jurisdictional challenge by failing to raise it as an "available" defense in its Rule 12(b) motion.  The Court also properly certified various classes under Federal and California law based on ample evidence of common policies, practices, and procedures across all of CoreCivic's detention facilities.  In the end, CoreCivic may seek permissive appellate review under Rule 23(f) (*see* ECF No. 184 [Joint Disc. Mot.] at 5:18), but this Motion is not a vehicle to supplement the record with already-

---

[1] All citations to the Docket are to the ECF pagination.

existing facts or citations to non-controlling authority prior to seeking appellate review. The Court should deny the Motion for Reconsideration.

## II.   **Governing Legal Standard**

A party may apply for reconsideration "[w]henever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part." Civ. L.R. 7.1(i)(1). Although the decision to grant or deny a motion for reconsideration is committed to the sound discretion of the Court (*see Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003)), reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Absent unusual circumstances, the party seeking reconsideration must either (1) present the court with newly discovered evidence; (2) demonstrate that the court committed clear error, or that the initial decision was manifestly unjust; or (3) identify an intervening change in controlling law. *Id.* However, a party may not raise new arguments or present new evidence that it reasonably could have presented earlier or could have discovered with reasonable diligence. *Id.* (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). A motion for reconsideration "is not another opportunity for the losing party to make its strongest case, reassert arguments, or revamp previously unmeritorious arguments," nor is it a "device[] permitting the unsuccessful party to rehash arguments previously presented," or to proffer "'after thoughts' or 'shifting of ground'" once a court has ruled on the underlying motion. *Ausmus v. Lexington Ins. Co.*, No. 08-cv-2342, 2009 WL 2058549, at *2 (S.D. Cal. July 15, 2009) (quotations and citations omitted).

Here, CoreCivic seeks reconsideration of the Certification Order only on the ground of clear error, which includes the Court's purported misapprehension of CoreCivic's arguments.[2] (Motion at 9:3-4.) "Clear error . . . occurs when the reviewing court on the

---

[2] Although CoreCivic submits additional exhibits for the first time in support of its Motion for Reconsideration, these exhibits existed and were available to CoreCivic when the Parties briefed the Motion for Class Certification. (*See* ECF No. 182-2 [Pl. Init. Disclosures]; 182-3 [Pl. Interrog. Resp.].) CoreCivic contends that it did not submit these exhibits because "Plaintiffs did not make an argument requiring their submission." (ECF No. 182 [Acedo Decl.] at ¶ 6.) However, these exhibits purportedly relate to class-wide

entire record is left with the definite and firm conviction that a mistake has been committed." *ThermoLife Int'l, LLC v. Myogenix Corp.*, No. 13-cv-651, 2017 WL 4792426, at *4 (S.D. Cal. Oct. 24, 2017) (quotations and citations omitted). "Clearly erroneous is a very exacting standard. Mere doubts or disagreement about the wisdom of a prior decision will not suffice. To be clearly erroneous, a decision must be more than just maybe or probably wrong; it must be dead wrong." *Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*, No. 11-cv-246, 2013 WL 12066133, at *1 (S.D. Cal. July 19, 2013) (citing *Heathman v. Portfolio Recovery Assocs., LLC*, No. 12-cv-201, 2013 WL 1284184, at *1 (S.D. Cal. Mar. 26, 2013)). The same standard applies when a party seeks reconsideration of an initial class certification decision, which courts generally evaluate under the stringent "law of the case" doctrine. *See, e.g.*, *Campion v. Old Republic Home Protection Co.*, No. 09-cv-748, 2011 WL 1935967, at *1 (S.D. Cal. May 20, 2011) (observing that the moving party "must demonstrate a wholesale disregard, misapplication, or failure to recognize controlling precedent" (quotations and citations omitted)).

## III.   <u>Argument</u>

The Court should deny CoreCivic's Motion for Reconsideration Motion because CoreCivic fails to satisfy any of the bases to grant such relief—i.e., CoreCivic presents no newly discovered evidence, identifies no intervening change in controlling law, and does not articulate any clear error. The Motion for Reconsideration is just another attempt to resurrect a long-resolved jurisdictional challenge while making a last-ditch, scattershot attack on the certified classes. CoreCivic presents nothing new or of consequence; instead, it uses the Motion for Reconsideration to re-hash old arguments, re-formulate failed arguments, or present new unpersuasive arguments for the first time.

---

damages—an issue CoreCivic raised in its Class Certification Opposition (ECF No. 118 at 40:2-14) and argued during the heading (ECF No. 159 at 39)—demonstrating that CoreCivic certainly *could have* presented these exhibits earlier. *See Kona Enters.*, 229 F.3d at 890.

In addition, CoreCivic does not cite any new *controlling* legal authority to support its Motion for Reconsideration; instead, the Motion for Reconsideration simply adds to the prior flurry of notices of supplemental authority that cited to non-binding decisions.

## A. The Court Properly Denied CoreCivic's Motion for Judgment on the Pleadings Because CoreCivic Waived Its Jurisdictional Challenge

The Court should deny CoreCivic's Motion for Reconsideration regarding the Court's finding that CoreCivic waived any personal jurisdiction challenge as to the claims of non-resident putative class members for several reasons: (1) CoreCivic did not properly seek review of that portion of the Certification Order; (2) CoreCivic fails to demonstrate how the Court's finding on waiver was clearly erroneous or resulted from a misapprehension of CoreCivic's argument; and (3) CoreCivic's "new" cases are neither controlling nor persuasive.[3]

### 1. CoreCivic Did Not Properly Seek Reconsideration of the Court's Finding that CoreCivic Waived Its Jurisdictional Challenge

As a procedural matter, the Court should deny the Motion for Reconsideration as to CoreCivic's waived jurisdictional challenge because that ruling is not properly part of the class certification ruling that CoreCivic asks the Court to reconsider. (Cert. Order at 8:11–10:24.) Although the Certification Order consolidated the Court's rulings on three separate motions—partial summary judgment, class certification, and judgment on the pleadings—CoreCivic raised the jurisdictional challenge in its Motion for Judgment on the Pleadings, and Plaintiffs noted CoreCivic's waiver in their Opposition. (ECF Nos. 117-1 [Mot. Jud. Plead.] at 6:19–9:26; 134 [Opp.] at 10:2–17:1; 140 [Reply] at 7:1–14:23.) However, CoreCivic only seeks reconsideration of the Certification Order "certifying the CA Forced Labor, National Forced Labor, and CA Labor Law Classes (Dkt. 179)." (Motion at 9:1-3.) In effect, CoreCivic attempts to seek review of a ruling that is not part-and-parcel of the actual ruling that is the subject of the Motion for Reconsideration.[4]

---

[3] Even if the Court determines reconsideration is warranted, for the reasons set forth in Plaintiffs' Opposition to the Motion for Judgment on the Pleadings, the Court still properly exercises personal jurisdiction over the claims of non-resident Class Members because the claims of the National Forced Labor Class are based on the same conduct in violation of the same Federal law (i.e., the Federal Trafficking Victims Protection Act, 18 U.S.C. §§ 1589, *et seq.*). (*See* ECF No. 134 [Opp. Judg. Plead.] at 19–32.)

[4] Other than a single, one-sentence footnote mentioning that CoreCivic had filed the Motion for Judgment on the Pleadings, CoreCivic never raised its jurisdictional challenge in its

The import of this sleight-of-hand becomes apparent in light of CoreCivic's anticipated petition seeking permissive appellate review of the class certification ruling. (ECF No. 184 [Joint Disc. Mot.] at 5:18.) Rule 23(f) gives a Circuit Court discretion to review a *class certification* order; however, it does not permit a Circuit Court to review ancillary or pendent rulings unless those rulings are "inextricably intertwined" with or "necessary to ensure meaningful review of" the class certification ruling. *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 668 (9th Cir. 2004) (citing *Meredith v. Oregon*, 321 F.3d 807, 812 (9th Cir. 2003)).[5] Accordingly, even if the Court is inclined to consider the jurisdictional ruling as part of the Motion for Reconsideration, Plaintiffs preserve their objection here that including the jurisdictional issue in the Motion for Reconsideration does not make that issue "inextricably intertwined" with the class certification ruling.

## 2. CoreCivic Fails To Demonstrate How the Court's Finding on Waiver Was Clearly Erroneous or the Result of Misapprehension

The Court should deny the Motion for Reconsideration because CoreCivic does not demonstrate how the Court committed clear error or misapprehended CoreCivic's challenge to personal jurisdiction over the claims of non-resident putative class members.[6] CoreCivic's argument that the defense was "unavailable" to raise in its Rule 12 motion because the non-resident putative class members were not yet parties to this case lacks merit. (Motion at 11:16-24.) CoreCivic's position is undermined by its own actions in this case, overlooks the complexities of unnamed class members' status as "parties" due to the

---

Opposition to Class Certification. (ECF No. 118 [Class Cert. Opp.] at 20 n.13.) Moreover, this footnote did not incorporate by reference the arguments regarding jurisdiction. (*Id.*)

[5] A pendent ruling is "inextricably intertwined" with the ruling properly subject to interlocutory review if the legal theories are so intertwined that the reviewing court must decide the pendent issue in order to review the interlocutory issue, or if resolving the interlocutory issue necessarily resolves the pendent issue. *See Poulos*, 379 F.3d at 669 (citing *Meredith*, 321 F.3d at 813–14). Here, the Motion for Judgment on the Pleadings is a stand-alone motion that attempts to challenge the Court's *jurisdiction*—i.e., the power to adjudicate the claims of non-resident Class Members. Resolving the jurisdictional question has no bearing on whether those claims are otherwise amenable to class-wide treatment.

[6] As noted above, CoreCivic does not present any newly discovered facts or identify any change in controlling legal authority. *See* Civ. L.R. 7.1(i)(1); *see also Kona Enters.*, 229 F.3d at 890.

representative nature of class actions, relies on non-binding cases, and in any event does nothing to compel a different result on the merits of nationwide jurisdiction.

*First*, CoreCivic cannot satisfy the "clearly erroneous" standard that is the basis for its Motion for Reconsideration.  CoreCivic effectively foreclosed reconsideration on the waiver issue during oral argument:

> It's [CoreCivic's] position, Your Honor, that you can only raise that defense once it becomes available, and that defense is not even yet available until and unless the Court certifies the class.  As Plaintiffs point out, none of the putative class members are named plaintiffs.  They're not class representatives.  They don't even exist in this lawsuit.  [CoreCivic has] cited cases where courts have allowed these types of motions to be filed contemporaneously with or in opposition to a motion for class certification.  [Plaintiffs have] cited cases that have ruled that you've got to file it in that initial Rule 12 motion.  *There's cases on both sides, admittedly, but what I think that that allows, what I think that gives you is the discretion.  It gives you discretion.  It's not a hard-and-fast rule.*

(*See* ECF No. 159 [Transcript] at 40:20–41:8 [emphasis added].)  CoreCivic's own concession that courts have decided the waiver issue differently, and that it views the issue as one of discretion and not a "hard-and'-fast rule," cannot possibly leave a "definite and firm conviction that a mistake has been committed" (*see ThermoLife Int'l*, 2017 WL 4792426, at *4), or that the decision was "dead wrong" (*see Alvarado Orthopedic Research*, 2013 WL 12066133, at *1).

*Second*, the Court properly concluded that the jurisdictional defense was available to CoreCivic at the time it filed its Rule 12 motion, and that CoreCivic waived the defense by failing to raise it in its pre-answer motion.  (Cert. Order at 9:22–10:8.)  The Court's analysis was methodical and applied black-letter law:  A defendant challenging a court's exercise of personal jurisdiction must timely assert the defense either by raising it in a Rule 12 motion or preserving it in its answer.  Failure to do so waives the defense.  An exception to the waiver rule is when the defense was "unavailable" at the time the defendant filed a pre-answer motion or an answer—i.e., if the legal basis for the defense did not exist at the

time.[7]   (*Id.*)   The Complaint made clear that Plaintiffs would seek to represent a putative nationwide class under the Federal TVPA based on CoreCivic's common policies, procedures, and practices across all detention facilities.  (*See* ECF No. 1 [Compl.] at ¶¶ 10, 11, 13, 14-17, 20, 22, 24, 30, 35; *see also* Cert. Order at 10:14-18.)  CoreCivic knew that it operated detention facilities in numerous States, and that the detainees housed in those facilities were putative class members in this lawsuit.  Thus, CoreCivic had notice of the purported legal basis to challenge personal jurisdiction over non-resident putative class members and their claims from the outset.  Because CoreCivic failed to raise the defense in its Rule 12 motion, the Court properly concluded that CoreCivic waived the defense.  (Cert. Order at 10:9-24.)  Numerous cases are in accord with the Court's conclusion.[8]

*Third*, CoreCivic's contention that the defense was not available when it filed its Rule 12 motion is fatally flawed and unsupported in fact or theory—a point illustrated by the disconnect between CoreCivic's argument and its actions in this case.  As noted above, a defendant seeking to challenge personal jurisdiction must either raise the defense in a Rule 12 motion or preserve the defense in the answer.  *See* Fed. R. Civ. P. 12.  Once Plaintiffs noted CoreCivic's waiver (*see* ECF No. 134 [Opp. Judg. Plead.] at 10:2–15:9), CoreCivic has consistently reiterated that it could assert the jurisdictional challenge in its Motion for Judgment on the Pleadings because it had preserved the defense in its Answer.  (Motion at 15 n.2; ECF No. 140 [Judg. Plead. Reply] at 8:25–9:3 ["CoreCivic explicitly pled the lack of personal jurisdiction . . . in its Answer to the Amended Complaint, thus preserving it for a future Rule 12(c) or Rule 56 motion."]).  CoreCivic's "preservation" argument is fundamentally inconsistent with its "unavailability" argument:  CoreCivic provides no explanation why the defense was "unavailable" for CoreCivic to raise in its

---

[7] Stated another way, a defense is "available" if the defendant had "reasonable notice" of it at the time the defendant first filed a Rule 12 motion.  *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1388 (3d. ed., Apr. 2019 Supp.).

[8] *See Robinson v. OnStar, LLC*, No. 15-cv-1731 JLS (MSB), 2020 WL 364221, at *9 (S.D. Cal. Jan. 22, 2020); *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 164–66 (S.D. Cal. 2019); *Moser v. Health Ins. Innovations, Inc.*, 2019 WL 3719889, at *4–5 (S.D. Cal. Aug. 2019); *accord Mussat v. Enclarity, Inc.*, 362 F. Supp. 3d 468, 477 (N.D. Ill. 2019) (denying Rule 12(c) motion predicated on lack of personal jurisdiction in putative nationwide class action because defense was waived under Rules 12(g)(2) and 12(h)).

Rule 12(b) motion but at the same time was "available" for CoreCivic to preserve in its Answer.

*Fourth*, even though CoreCivic claims it "preserved" the defense in its Answer, the exact opposite is true. (Motion at 15 n.2.) If CoreCivic believes it could "preserve" the defense in its Answer, then it could have raised the defense in its Rule 12 motion. When CoreCivic filed its Rule 12 motion, it committed itself to raising all available defenses identified in Rule 12(b)(2) – (7) in that same motion. *See* Fed. R. Civ. P. 12(g) (consolidation requirement). Rule 12(g) does not permit a defendant to elect which of the Rule 12(b)(2) – (7) defenses to include in the pre-answer motion and which to save for an answer. Thus, CoreCivic's failure to raise the defense in its Rule 12 motion not only precludes CoreCivic from re-raising it in a later motion, but that failure also bars CoreCivic from even asserting the defense in it Answer. *See* 5C *Fed. Prac. & Proc. Civ.* § 1391 (3d ed., Apr. 2019 Supp.). CoreCivic's contention that it preserved the defense in its answer is just that—a contention, without any legal significance due to the prior waiver.

Moreover, as detailed in Plaintiffs' Opposition to the Motion for Judgment on the Pleadings, even if CoreCivic could have preserved the defense in its Answer, it never properly did so because (1) CoreCivic actually *admitted* the personal jurisdiction allegations in its Answer to the Original Complaint; (2) CoreCivic surreptitiously changed those admissions in its Answer to Plaintiffs' First Amended Complaint, but the changes had no legal effect in light of the prior admissions; (3) Plaintiffs' amendment—adding a Private Attorney General Act claim—was derivative of existing facts and claims, so there was no new basis for CoreCivic to change its jurisdictional admissions[2]; and (4) CoreCivic made the changes on the last day to amend pleadings but did so without seeking leave of Court, thus rendering those changes legally ineffective. (ECF No. 134 [Opp. Judg. Plead.]

---

[2] Although an amended pleading may identify new facts that create what was a previously unavailable defense (*see* 5C *Fed. Prac. & Proc. Civ.* § 1388), Plaintiffs' amendment added no new facts. As a result, CoreCivic cannot rely on the First Amended Complaint as a basis to change its prior admissions.

at 12:1–15:2 & nn. 10–18.)  Therefore, even if the Court was inclined to reconsider the waiver issue in theory, the practical effect is still the same.

*Fifth*, CoreCivic's argument fails to appreciate the distinction between when a defense is *available* to a defendant and when the defense is ripe for adjudication.  The Court acknowledged this distinction:  "Whether or not a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) would have been *premature* [citations], the legal basis for the defense *was known* to the Defendant when it responded to [the] Complaint."  (Cert. Order at 10:14-18 [emphases added].)   The Court's distinction squarely addresses CoreCivic's argument as to when the defense was available; thus, the Court did not misapprehend the argument.  CoreCivic is just displeased with the result.

In addition, even though the Court was drawing a distinction between the holding in *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293 (D.C. Cir. 2020) that the jurisdictional challenge in that case was premature, the procedural history in *Molock* underscores why the Court's distinction is correct.  In *Molock*, the defendant raised the jurisdictional challenge in its pre-answer motion—thus preserving the defense—even though the Court of Appeals determined that adjudicating the defense at the pleading stage was procedurally "premature."  But here, CoreCivic failed to preserve the defense at all—instead it *admitted to jurisdiction*.  (ECF No. 134 [Opp. Judg. Plead.] at 10:2–15:9.) Indeed, a defense can be preserved even if it is not yet ripe to adjudicate, but a defense not preserved is a defense not adjudicated.  CoreCivic knows the distinction; it previously acknowledged it.  (ECF No. 140 [Judg. Plead. Reply] at 9:3-5 [arguing the defense "only became an available *and actionable* defense when Plaintiffs actually moved for class certification . . . ." [emphasis added].)

*Sixth*, CoreCivic's citation to another recent decision, *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240 (5th Cir. Mar, 25, 2020), also does not warrant reconsideration of the waiver issue.  *Cruson* held that a defendant does not waive its right to challenge personal jurisdiction as to non-resident putative class members simply by failing to raise the defense in a Rule 12 motion challenging the named plaintiffs' claims.  *Id.* at 249–52.

The Court of Appeals reasoned that until a class is certified, the non-resident putative class members are not yet before the court, and thus their claims were not yet before the court such that the defendant could move to dismiss them for lack of jurisdiction.  *Id.*  *Cruson* does not merit reconsideration of the Court's ruling on waiver[10] for several reasons.

*First*, *Cruson* is not controlling authority and is not binding on this Court.  Absent such authority, the Court should not reconsider a ruling that is well-supported by numerous other District Court decisions in California and elsewhere that reach the same conclusion.

*Second*, and relatedly, *Cruson* is a recent decision that departs from the view expressed by a majority of District Court that have considered the waiver issue and reached the same conclusion as this Court.

*Third*, *Cruson*'s reasoning appears too generalized to withstand scrutiny.  *Cruson*'s analysis distills down to the idea that putative class members are not "parties" to a lawsuit until class certification.  Simple enough in principle, but hardly the state of the law when considering the representative nature of class actions.  For example, although CoreCivic contends (and *Cruson* holds) that putative class members are not parties to a lawsuit until a court certifies a class, this blunt assessment overlooks the fact that unnamed class members in a *certified* class are still not "full" or "actual" parties to the litigation.  Instead, class members are "parties" for some purposes.[11]  But for other purposes, they are not considered parties.[12]  Neither CoreCivic nor *Cruson* provide a sound reason why non-

---

[10] Notably, *Cruson* is limited to whether the defense was available for purposes of waiver; the Court of Appeal did not address whether the District Court could ultimately exercise jurisdiction over the non-resident, putative class members.  *Cruson*, 954 F.3d at n.7.

[11]  For example, in certified class actions, the unnamed class members are considered "parties" for purposes of being bound by a court-approved class settlement (*see Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002)); for purposes of appealing a court-approved class settlement (*see Devlin*, 536 U.S. at 14); and for purposes of being bound by any judgment as to the class (*see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985)).  In putative but yet uncertified class actions, the unnamed class members "are . . . parties in the sense that the filing of an action on behalf of the class tolls a statute of limitations against them" (*see Devlin*, 536 U.S. at 10).

[12] In putative class actions, the unnamed class members are *not* considered "parties" for purposes of determining whether there is complete diversity of citizenship in cases governed by state substantive law (*see Devlin*, 536 U.S. at 10); or for purposes of calculating the amount in controversy in diversity suits not brought under the Class Action Fairness Act (*see Snyder v. Harris*, 394 U.S. 332, 338 (1969)); or for purposes of assessing venue (*see Appleton Elec. Co. v. Advance-United Expressways*, 494 F.2d 126, 140 (7th Cir.

resident, unnamed Class Members should be considered "parties" for purposes of challenging personal jurisdiction at the class certification stage, even though they are not considered parties for other purposes.  Other District Courts have rejected the self-serving, selective approach that CoreCivic seeks to utilize here:  "Although absent class members are *not* parties for purposes of diversity of citizenship, amount in controversy, Article III standing, and venue, they *are* parties for purposes of personal jurisdiction over the defendant.  That cannot be right."  *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815, 820 (N.D. Ill. 2018).

*Fourth*, even if the Court accepted *Cruson*'s reasoning and holding, and concluded that CoreCivic did not waive its jurisdictional challenge, the endgame would remain unchanged because neither CoreCivic, nor *Cruson*, nor *Molock* reach the underling merits of the jurisdictional question.  Indeed, *Cruson* did not consider the effect of a defendant actually *admitting* to personal jurisdiction as is the case here.  However, the Seventh Circuit did reach the merits in *Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020), where the Circuit Court held "that the principles announced in *Bristol-Myers* do not apply to the case of a nationwide class action filed in federal court under a federal statute."  *Id.* at 443.  The holding directly answers the underlying merits question.  If the Court is inclined to accept CoreCivic's invitation to follow non-binding authority to conclude that CoreCivic did not waive its jurisdictional challenge, then Plaintiffs also invite the Court to consider the authority from the Seventh Circuit, which dispenses with the underlying merits issue in favor of asserting jurisdiction.

### 3.    CoreCivic's  Jurisdiction Challenge Still Fails on the Merits

Even if the Court does reconsider CoreCivic's belated jurisdictional challenge, CoreCivic's substantive argument ultimately fails on the merits for the reasons set forth in Plaintiffs' Opposition to CoreCivic's Motion for Judgment on the Pleadings:

---

1974)); or in the sense that they need not have Article III standing to be part of the class (*see Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 367 (3d Cir. 2015)).

*First*, *Bristol-Myers* does not apply to Federal courts generally, or at least does not apply to Federal courts exercising Federal Question subject matter jurisdiction, because (1) Federal law comes from the United States as common sovereign to all United States residents, and therefore the territorial limitations that the Due Process Clause imposes on State sovereignty have no application; (2) Federal law generally applies to all persons in the United States—regardless of any person's "home" State—which eliminates concerns about a State's extraterritorial application of its own law; (3) Federal law regulates the same conduct throughout the country under the same standard, which mitigates provincial or competing State interests; and (4) the Federal courts' authority derives from the United States as Federal sovereign, which does not present any concerns about a State's "coercive" power over a non-resident defendant.  (ECF No. 134 [Opp. Judg. Plead.] at 21:2–24:12.)

*Second*, *Bristol-Myers* does not apply to class actions under Rule 23 because (1) unnamed putative class members are not "parties" to the lawsuit, so their claims are irrelevant to personal jurisdiction; (2) once a class is certified, the class members are still not full "parties" to the lawsuit given the representative nature of the class action device (e.g., the citizenship of certified class members does not destroy complete diversity); and (3) Rule 23's procedural safeguards protect both absent class members' rights *as well as* a defendant's right to ensure class treatment is proper for the Federal claims and that class members will be bound by any judgment.  (*Id.* at 24:13–26:4.)

*Third*, the Court can properly exercise personal jurisdiction over the claims of non-resident Class Members because the Court already exercises personal jurisdiction over the very same conduct that occurred in California and violated the same Federal law.  This case does not involve *multi-state* classes applying various *State* laws; instead, the nationwide class claims are premised on the *same* nationwide conduct (i.e., CoreCivic's common policies, procedures, and practices related to the "Voluntary Work Program") that violates the *same* Federal statute (i.e., the Federal TVPA).  Thus, CoreCivic's wrongful conduct in California is *necessarily the same conduct* at its facilities outside of California.  So long as this Court can exercise personal jurisdiction over the California detainees'

Federal TVPA claims (which is undisputed), it can also exercise jurisdiction over the same "non-forum conduct" without offending Due Process. (*Id.* at 28:2–32:8.)[13]

## B. **The Court Properly Certified The CA Labor Law Class**

While CoreCivic broadly argues that the Court should not have certified the CA Labor Law Class, the Motion fails to mention—let alone advance any basis for the reconsideration of—the Certification Order regarding Plaintiffs' claims for the imposition of unlawful terms and conditions of employment and failure to provide timely and accurate wage statements. Nor does CoreCivic substantively address Plaintiffs' claim for failure to pay compensation upon termination/waiting time penalties.[14] As a result, Plaintiffs do not address these claims here.

As to Plaintiffs' remaining claim for failure to pay minimum wage, CoreCivic fails to advance any basis for the Court to reconsider its Certification Order as to Plaintiffs' minimum wage claim. As an initial matter, CoreCivic's argument is essentially that individual damages calculations preclude a finding that common issues predominate. This was addressed in the briefing on the class certification motion. The Ninth Circuit has consistently rejected this argument. *Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("[T]he rule is clear: the need for individual damages calculations does not, alone, defeat class certification. Accordingly, we hold that the district court permissibly ruled that individual claims did not predominate in this case."). CoreCivic also seeks reconsideration based on inapplicable legal authorities—which CoreCivic then misreads and misapplies—and argues again that its own failure to comply with California recordkeeping and wage statement laws mandates the denial of Plaintiffs' Motion for Class

---

[13] Nor does CoreCivic's citation to Judge Bencivengo's recent decision in *Carpenter v. PetSmart, Inc.*, change the analysis. *See Carpenter v. PetSmart, Inc.*, No. 19-cv-1731, 2020 WL 996947, at *5-6 (S.D. Cal. Mar. 2, 2020). Aside from the irony of citing another case in which the defendant challenged personal jurisdiction over the claims of non-California putative class members at the pleading stage—clearly demonstrating such jurisdictional challenges are "available" to class action defendants—*Carpenter* involved a putative nationwide class action predicated on violations of each State's respective law, and not predicated on the same conduct violating the same standard under the same Federal law (as is the case here).

[14] The Court correctly noted that Plaintiffs explicitly included Count Nine in their Notice of Motion and that it was properly before the Court. (Cert. Order at n.3.)

Certification.  Neither warrants reconsideration of the Certification Order.

        **1.**      **CoreCivic's Reliance On Cases Decided Outside Of The Wage And Hour Context Should Be Disregarded**

CoreCivic principally relies on *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), for the proposition that Plaintiffs failed to demonstrate that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." (Motion at 21:23-25.) CoreCivic's reliance on *Comcast* is entirely misplaced because *Comcast* does not have any application in wage-and-hour class actions seeking payment of minimum wage.  The Ninth Circuit has "interpreted *Comcast* to mean that '**plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability**.'" *Vaquero*, 824 F.3d at 1154 (emphasis added) (citing *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987-88 (9th Cir. 2015)).  Unlike in *Comcast*, which involved an antitrust class action, *Vaquero* held that "[n]o such problem exists" where plaintiffs "allege[] that Defendants' consciously chosen compensation policy deprived the class members of earnings in violation of California's minimum wage laws." *Vaquero*, 824 F.3d at 1154-55. This is because "**[i]n a wage and hour case…the employer-defendant's actions necessarily caused the class members' injury**." *Id.* at 1155 (emphasis added).  *Vaquero* also expressly confirmed that *Comcast* did not alter "well settled" precedent that "damage calculations alone cannot defeat class certification." *Id.*

CoreCivic cites to an array of cases involving alleged violations of consumer protection and antitrust laws that, under *Vaquero*, have no application to Plaintiffs' claim for payment of minimum wage.[15]  The district court cases cited by CoreCivic also confirm

---

[15] *See Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 813 (9th Cir. 2019) (automobile products defect); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 WL 7734558, at *1 (N.D. Cal. Sep. 14, 2016) (same); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 333 (C.D. Cal. 2015) (force-placed insurance kickback scheme); *Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 120 (N.D. Cal. 2014) (coverage for mental health residential treatment); *Caldera v. J.M. Smucker Co.*, No. CV 12-4936-GHK (VBKx), 2014 WL 1477400, at *1 (C.D. Cal. Apr. 15, 2014) (deceptive labelling on shortening and butter products); *In re POM Wonderful, LLC*, No. ML 10-02199 DDP (RZx), 2014 WL 1225184, at *1 (C.D. Cal. Mar. 25, 2014) (deceptive advertising); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 WL 60097, at *1-2 (N.D. Cal. Jan. 7, 2014)

CoreCivic's misreading of *Comcast*, which merely requires plaintiffs in non-wage and hour cases to establish that there is a sufficient nexus between the damages claimed by plaintiffs and the plaintiffs' theory of liability, not that class action plaintiffs are required to establish the specific amount of each class member's individual damages. *In re POM Wonderful, LLC* is illustrative. There, the district court directly rejected the same argument advanced by CoreCivic here and affirmed that, "as the Ninth Circuit has explained, *Comcast* holds that, under rigorous analysis, 'plaintiffs must be able to show that their damages **stemmed from the defendant's actions that created the legal liability**.'" *In re POM Wonderful, LLC*, 2014 WL 1225184, at *2 (emphasis added) (citing *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)). As a result, the district court—post-certification in the context of a motion to decertify the class after the close of discovery in a class action involving deceptive advertising practices pertaining to pomegranate juice—"examined Plaintiffs' damages models and the relationship of those models to Plaintiffs' legal theories, **without requiring, as Defendant would have it, that the models distinguish injured class members from uninjured class members or reveal the amount of each individual's damages**." *Id.* at *2 (emphasis added).

As applied here, CoreCivic misclassified the CA Labor Law Class members as "volunteers" rather than "employees" under California law by way of consciously chosen and generally applicable policies and practices. (ECF Nos. 85-4 [Ellis Depo.] at 80:21–81:3, 82:1–83:4, 83:16–20.) It is undisputed that CoreCivic did not pay members of the CA Labor Law Class the minimum wage required under California law for employees. (ECF Nos. 85-46, 85-47, 85-48, 85-49, 85-50, 85-51, 85-89 [OMS Reports].) There is no question that CoreCivic's conduct (the misclassification of employees as "volunteers" and failure to pay minimum wage) "necessarily caused" the injury claimed by the CA Labor Law Class (deficient payment for labor provided as an employee of CoreCivic). Therefore, *Comcast* does not provide any basis for the Court to reconsider its Certification Order as

---

(deceptive labelling); *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 652 (N.D. Cal. 2007) (antitrust suit).

to Plaintiffs' claims for unpaid minimum wage.  *See Vaquero*, 824 F.3d at 1155.

### 2.  CoreCivic's Failure To Comply With California's Recordkeeping And Wage Statement Laws Does Not Defeat Class Certification

The Court should also reject CoreCivic's continued attempt to avoid class certification, and ultimately liability, by invoking its failure to comply with California's recordkeeping and wage statement laws.  (Motion at 24:2-9.)  CoreCivic is flatly wrong that damages cannot be established on a class-wide basis because of CoreCivic's own failure to maintain basic employment records.  Indeed, CoreCivic's argument is premised on the contention that the only permissible way of establishing class-wide damages, in the absence of complete employment records, is for "individual testimony by each class member."  (*Id.* at 23:28–24:1.)  The Supreme Court and Ninth Circuit have repeatedly rejected this argument in wage and hour class actions.  More importantly, this Court's determination that the "evidence [in the record] may allow the trier of fact to determine which participants in the VWP were paid less than the minimum wage—and by how much—based on the difference between the payment received and the number of hours per shift for the position" is in accord with Supreme Court and Ninth Circuit precedent.  (Cert. Order at 45:21-25.).

In *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), the Supreme Court reviewed the certification of a class of employees who claimed that their employer had violated wage and hour laws by failing to pay overtime compensation for time spent donning and doffing protective gear.  *Id.* at 1043.  Tyson had failed to keep records of such time and it was undisputed that the class members spent *different* amounts of time donning and doffing *different* types of protective gear designed for *different* job assignments.  *Id.* at 1042–43.  Specifically, the time spent donning ranged from around thirty seconds to more than ten minutes, and the time doffing varied from under two minutes to over nine minutes. *Id.* at 1055.  Consequently, damages awarded to the class may be distributed to persons "who did not work any uncompensated overtime."  *Id.* at 1041.  After a jury verdict in the employees' favor, Tyson moved to decertify the class and set aside the jury verdict, arguing

that this variance made class and collective certification inappropriate.  *Id.* at 1044–45.

The Supreme Court affirmed the class and collective certifications.  *Id.* at 1046–47.  Because of Tyson's dereliction of its recordkeeping duties, the Supreme Court endorsed the use of "representative evidence"—which includes testimony, video recordings, and expert studies—to establish both liability (the employee's entitlement to overtime wages by working more than 40 hours in a given week) and damages (the amount of overtime wages owed) on a class-wide basis.  Representative evidence is admissible so long as it "could have sustained a reasonable jury finding as to hours worked in each employee's individual action, that sample is a permissible means of establishing the employees' hours worked in a class action."  *Id.* at 1046–47.  Further, even if "reasonable minds may differ" about the probative value of representative evidence in determining the "time actually worked by each employee," that question is to be resolved by the jury, *not* at the class certification stage.  *Id.* at 1049.

In so holding, the Supreme Court relied on its decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), which held that "when employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work," employees should not be denied "any recovery on the ground that he is unable to prove the precise extent of uncompensated work."  *Tyson Foods*, 136 S. Ct. at 1047 (quoting *Mt. Clemens*, 328 U.S. at 687).  The Supreme Court held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Id.*  Under these circumstances, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."  *Id.*  *Mt. Clemens* also explicitly rejected the notion that allowing approximate damages in such situations would be unfair due to its imprecise nature or because employers sometimes make good-faith mistakes over what constitutes compensable "work":

> The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the [statutory] requirements . . . . And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances . . . In such a case it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.

*Mt. Clemens*, 328 U.S. at 688 (quotations and citations omitted).[16]

Following *Tyson Foods*, the Ninth Circuit has repeatedly rejected the argument—advanced by CoreCivic here—that specific records detailing hours worked for each class member are necessary to support an award of class-wide damages. Recently, in *Ridgeway v. Walmart Inc.*, 946 F.3d 1066 (9th Cir. 2020), the Ninth Circuit upheld a jury's decision to award class-wide damages in a wage and hour class action even though "variation abounded" among the class members in terms of the length of rest breaks and uncompensated inspection time. *Ridgeway*, 946 F.3d at 1086. For example, the employees relied on representative evidence establishing a "fifteen-minute average" for unpaid inspection time even though one of the named plaintiffs testified that his inspections only "took between seven and ten minutes." *Id.* at 1087. The jury ultimately adopted the fifteen-minute inspection calculation and awarded class-wide damages based on that average. *Id.* at 1088. In affirming the damages award, the Ninth Circuit noted that "if Wal-Mart believed the testimony was not perfectly representative, its recourse was to present that argument to the jury." *Id.* at 1087. "All that is required is enough representative evidence to allow a jury to draw a reasonable inference about the unpaid hours worked." *Id.* at 1088 (citing *Tyson Foods*, 136 S. Ct. at 1047–49). The Ninth Circuit found that the

---

[16] *Kamar*, which the Court cited in the Certification Order, distills these principles. While *Kamar* pre-dates *Tyson Foods*, it is entirely consistent with later rulings. *Kamar* explained that "California law requires employers to maintain timekeeping records, including the start and end times for each work period," and where an employer does not have the "required records for a claimant, then the claimant would have a relatively light burden of producing evidence of his hours before the burden shifts to the employer to produce specific evidence refuting the employees claim." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 403 (C.D. Cal. 2008) (citing *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715, 748 (2004); and *Mt. Clemens*, 328 U.S. at 686–87).

-18-                          Case No. 17-CV-01112-JLS-NLS

representative evidence proffered by the employees supported an award of class-wide damages because "many plaintiffs testified about the length of their rest breaks and inspection time" and further confirmed that, "[i]n a class action, testimony alone may serve as the basis for classwide damages." *Id.*

Here, as the Court acknowledged, the testimony of CoreCivic's witnesses confirm the "typical" or "usual" shift lengths. (Cert. Order at 45:7-27.) CoreCivic's records documenting the days worked by ICE detainees, the wages that they were paid and their job assignments—coupled with the testimony of class members and CoreCivic personnel regarding hours worked—will allow a jury to draw a reasonable inference about the unpaid hours worked by the class members. (*See id.* at 45:15-24.) So too will additional evidence obtained through merits discovery, as Plaintiffs seek documents and ESI pertaining to shift lengths and will seek a Rule 30(b)(6) deposition concerning the length of detainee shifts for each job assignment during the relevant time period. Even without formal recordkeeping, CoreCivic possesses this information in other formats and is under a discovery obligation to produce it.

CoreCivic also fundamentally misapprehends the holdings of *Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864 (2013), and the citation to *Bluford by Aldapa v. Fowler Packaging Co., Inc.*, 323 F.R.D. 316 (E.D. Cal. 2018). Specifically, CoreCivic perplexingly cites these cases for the proposition that, "[i]n California, employees must be compensated for each hour worked at least at the legal minimum wage, which cannot be arrived at by averaging." (Motion at 24:10-15.) However, the "averaging" referenced in *Bluford* and *Aldapa* refers to the California appellate court's holding that employer's cannot avoid liability for failing to separately compensate employees for rest breaks under a piece-rate compensation system where the total compensation received by the employee exceeds the minimum wage based on an ***hourly average***. *Bluford*, 216 Cal. App. 4th at 872 (holding that "employees must be compensated for each hour worked at either the legal minimum wage or the contractual hourly rate, **and compliance cannot be determined by averaging hourly compensation**." (emphasis added)). *Bluford* involved truck drivers who

-19-                    Case No. 17-CV-01112-JLS-NLS

were compensated based on the miles they drove and for the performance of specific tasks. *Id.* at 867. Even though the truck drivers received payment well in excess of minimum wage when averaging hourly compensation, the truck drivers were entitled to additional compensation because the piece-rate compensation system did not separately account for rest breaks. *Id.* at 871–72. *Aldapa* similarly noted that "California law also requires piece-rate employees to be separately compensated for rest-break periods at an amount not less than the minimum wage." *Aldapa*, 323 F.R.D. at 336. Accordingly, *Aldapa* and *Bluford* have no application here, as they have nothing to do with calculating unpaid wages on a class-wide basis.

In short, the Court correctly concluded that representative evidence can fill the evidentiary gap created by CoreCivic's failure to comply with California's wage statement and recordkeeping requirements. There is simply no merit to CoreCivic's argument that its failure to follow the law warrants reconsideration of the Certification Order.[17]

## C.   The Court Properly Certified the CA and National Forced Labor Classes

CoreCivic's argument that Plaintiffs failed to present "significant proof" of a class-wide policy of forced labor is predicated on the assertion that the "Court impermissibly placed the burden on *CoreCivic* to *disprove* Plaintiffs' interpretation of the policies." (Motion at 8:3-7 [emphasis in original].) CoreCivic's argument does not find any support in the Court's Certification Order, nor does CoreCivic point to any supposed burden shifting. Rather, CoreCivic merely reasserts the exact same arguments that the Court duly

---

[17] Moreover, at oral argument—and in the course of a single transcript page—CoreCivic conceded (1) common questions exist as to the minimum wage class; (2) calculating damages does not preclude class certification; and (3) CoreCivic did not maintain records to make such calculations: "As [Plaintiffs] point out, there's a common issue, whether (detainees are) employees or not. That would cut across all the claims. . . . Damages, and I understand normally damages cannot [**meet**] class certification. That's the general principle, but I think there's also a limiting principle that when you've got several thousands of [detainees], and [CoreCivic doesn't] have the records to know how many hours that each of them worked, to be able to figure that out . . . ." (*See* ECF No. 159 [Transcript] at 39.)

Plaintiffs note that [**meet**] in the quotation likely should be "defeat"—i.e., "[N]ormally damages cannot **defeat** class certification"—which is consistent with applicable law and the immediately following sentence where CoreCivic insists on a "limiting principle" (which conveniently exempts it from liability due to its own failure to keep accurate records that otherwise would evidence its own liability).

considered and rejected in ruling on Plaintiffs' Motion for Class Certification.[18]  (*See, e.g.,* ECF No. 118 [Opp. Class Cert.] at 3:19–5:7, 25:13–27:8.)

CoreCivic's central argument is that the Court's ruling runs afoul of *Wal-Mart*. (Motion at 14:12-20.)   CoreCivic's reliance on *Wal-Mart* is inapposite.   *Wal-Mart* considered a proposed Title VII class of 1.5 million female employees challenging discretionary decisions made by managers in 3,400 stores across the United States. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 342–43 (2011).  The plaintiffs alleged a general corporate policy of conferring discretion on local managers to make employment decisions. *Id.* at 339.  As a result, plaintiffs attempted to "sue about literally millions of employment decisions at once," which precluded a finding of commonality because "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." *Id.* at 352, 355–56.

In contrast, CoreCivic implemented an enterprise-wide policy and practice, memorialized in writing, which required ICE detainees to work under threat of discipline. (Cert. Order at 33:21–34:21.)   The declarations of ICE detainees confirm CoreCivic's implementation of this policy and practice as stated, and merits discovery will further support this claim.  (*See, e.g.*, ECF Nos. 84-3, 84-4, 84-5, 84-6, 127-4, 127-5, 144-3.) Unlike in *Wal-Mart*, which involved millions of discretionary decisions made by 3,400 different managers, Plaintiffs' TVPA claims are predicated on standardized policy documents that are based on templates created by CoreCivic's Facility Support Center or "corporate office." (ECF No. 85-4 [Ellis Depo.] at 50:15–51:25, 54:24–55:4, 59:1-5; ECF No. 85-7 [Figueroa Depo.] at 59:8-12.)   CoreCivic does not provide its facilities with discretion to not enforce its standardized policies that they are, without exception, required

---

[18] CoreCivic's only additional argument is that the start date for the CA Forced Labor Class should be shortened from January 1, 2006 to May 31, 2010.  (Motion at 19:13–20:15.)  The Court previously addressed this issue in its ruling on CoreCivic's Motion to Dismiss, where the Court concluded that Plaintiffs "cannot state a claim for events that occurred prior to January 1, 2006," which resolved the question of the appropriate Class Period for Plaintiffs' claims under the California TVPA.  (ECF No. 38 at 29:13-19.)  CoreCivic's remaining argument is more suitable for consideration as a dispositive motion after Plaintiffs are afforded discovery on this issue.

to implement.  Indeed, CoreCivic's facilities do not have the ability to "opt out" if they do not "want to comply with, abide by, utilize a policy that's in place."  (ECF 85-4 [Ellis Depo.] at 68:1-9.)

While "there may have been many answers in *Wal-Mart* to the question "why was I disfavored?,'" there is no such concern in this case.  *See Parsons v. Ryan*, 754 F.3d 657, 681–82 (9th Cir. 2014).  Here, class certification was appropriate because there is only a single answer to questions such as "did CoreCivic obtain labor by detainees under threat of discipline."  *See id.* (distinguishing *Wal-Mart* from cases where plaintiffs proffer sufficient "proof of the existence of systemic policies and practices" and compiling authorities certifying class actions where inmates allege that "systemic policies and practices . . . expose inmates to a substantial risk of harm").

CoreCivic's remaining arguments concern CoreCivic's contorted interpretation of its enterprise-wide policies, which expressly mandate that ICE detainees "**will** be assigned to each area on a regular basis to perform the daily cleaning routine of the common area" and "**will** . . . provide seven (7) day per week coverage to maintain sanitation of the facility" without any reference to cleaning tasks being completed on a "voluntary" basis.  (*See, e.g.*, ECF Nos. 85-13, 85-14, 85-15, 85-16, 85-17, 85-18, 85-19, 85-20, 85-21 [collectively, and hereinafter, "Sanitation Policies"].)  CoreCivic claims that its policies do not result in labor obtained under actual or threatened force, yet somehow requires seven-pages of textual analysis and six self-serving declarations to explain why the policies do not mean what they say.  (Motion at 8:13–14:11.)  CoreCivic's attempt to manufacture an alternate interpretation of the policies has already been rejected by the Court, and the Motion does nothing to alter that result here.  *See Stemple v. QC Holdings, Inc.*, 2015 WL 1344906, at *3 n.3 (S.D. Cal. 2015) (reconsideration was inappropriate because "Defendant asks the Court to reconsider many of the same arguments it previously raised" and "any new arguments or issues . . . could have been raised at the time it filed its opposition").

CoreCivic—yet again—urges the Court to read the phrase "[d]etainee/inmate workers" to mean "detainee who works in the Voluntary Work Program."  (Motion at

10:14-16.)  Again, this argument should be rejected.  First, this contrived distinction is not supported by the text of CoreCivic's policies.  On their face, CoreCivic's policies require **all** ICE detainees to "maintain[] the common living area in a clean and sanitary manner." (*See* Sanitation Policies.)  The officers assigned to the units are obligated to provide "materials needed to carry out this cleaning **assignment**."  (*See id.* [emphasis added].) CoreCivic again argues that the policy "only requires detainees to clean up after themselves."  (Motion at 10:10-13.)  This is not what the policy states, nor is it consistent with the fact that ICE detainees are responsible for tasks that require—by their nature— cleaning up after others, including removing trash from the common areas, sweeping and mopping floors, and cleaning toilet bowls, sinks, showers, and furniture.  (*See* Sanitation Policies.)  Moreover, if an ICE detainee is cleaning a common area of a facility, they are necessarily a "detainee worker."

Second, CoreCivic's argument overlooks the basic reality that labor obtained under threat of discipline violates the Federal TVPA and California TVPA irrespective of whether the work is uncompensated or compensated at the rate of $1 per day.  *See* 18 U.S.C. § 1589(c)(2); Cal. Penal Code § 236.1(h)(4).  This simple fact renders the detainee/detainee worker distinction that CoreCivic attempts to manufacture entirely meaningless.  (Cert. Order at 12:5-10, 16–20 [certifying the National and CA Forced Labor Classes "irrespective of whether the work was paid **or unpaid**" (emphasis added)].) CoreCivic's policy and practice of requiring ICE detainees to work under threat of discipline—even where they are compensated at the rate of $1 per day—is confirmed by CoreCivic's work agreements with ICE detainees, its written policies, and the testimony of its Rule 30(b)(6) witness.

Specifically, CoreCivic requires ICE detainees to sign attestations that they "may not be **compelled** to work **other than** to perform housekeeping tasks in [their] own cell **and the community living area**."  (ECF No. 85-12 at CCOG43019 [emphasis added].) CoreCivic's policies also provide that "[i]f an inmate/resident does not report to work, call the unit **to locate and summon** the inmate/resident worker.  **Disciplinary action** may be

taken for absences and tardiness." (ECF No. 85-28 [OMDC Post Order], at 1; *see also* ECF Nos. 85-29, 85-30 [Post Orders].)  CoreCivic's Rule 30(b)(6) witness, Mr. Ellis, affirmed that an infraction as minor as a detainee "not timely reporting for a shift" is subject to discipline.[19] (ECF No. 85-4 at 157:17-23.)  Mr. Ellis also testified that "any of the types of discipline is possible" when ICE detainees perform work at CoreCivic's facilities—even when an ICE detainee is working through the VWP.[20]  (*Id.* at 157:5-23.)  CoreCivic conveyed this threat of discipline to ICE detainees through its uniform disciplinary policy, and detainees were constantly reminded of the risks of disobeying an order through CoreCivic's enforcement of its policy.  (*See, e.g.*, ECF Nos. 84-3 [Owino Decl.], 84-4 [Gomez Decl.], 84-5 [Carrillo Decl.], 84-6 [Dubon Decl.]; ECF Nos. 127-4 [Santibanez Decl.], 127-5 [Jones Decl.]; ECF No. 144-3 [Geh Decl.].)

In short, CoreCivic's protestation that detainees are not forced to work is belied by its own work agreements with detainees and written policies, which expressly provide that (1) detainees can be compelled to perform housekeeping tasks in common areas of the facilities, (2) detainees that do not timely report to work should be located and summoned

---

[19] As CoreCivic's Rule 30(b)(6) witness, the testimony of Mr. Ellis is binding on CoreCivic.  *Starline Windows Inc. v. Quanex Bldg. Prod. Corp.*, No. 15-CV-1282-L (WVG), 2016 WL 4485564, at *4 (S.D. Cal. July 21, 2016) ("The testimony of a Rule 30(b)(6) designee represents the knowledge of the corporation, not of the individual deponents." (quotation and citation omitted)).

[20] While Plaintiffs do not believe that this issue is properly before the Court due to CoreCivic's failure to raise it in the Motion, Plaintiffs understand that CoreCivic will argue in its Reply—as it did in a recent discovery motion—that the "National and California Forced Labor Classes are limited to detainees who cleaned the common living areas of a facility because of CoreCivic's sanitation and disciplinary policies," as opposed to "other areas of the facility." (*See* ECF No. 184 [Joint Disc. Mot.] at 4:18–5:2.)  To the extent that there is a difference between "common living areas" and areas of the facility outside of a detainee's personal living area (CoreCivic has never explained the basis for this distinction), Plaintiffs note that the Certification Order is clear: the certified classes include detainees that "cleaned areas of the facility above and beyond the personal housekeeping tasks enumerated in the PBNDS" where the cleaning is obtained "under threat of discipline." (Cert. Order at 12:5-20.)  The sanitation and discipline policies are evidence of CoreCivic's common policy and practice of requiring detainees to clean under threat of discipline, but those policies do not somehow narrow the scope of Plaintiffs' claims.  The certified classes, by their definitions, refer to the "areas of the facility" not addressed by the PBNDS' personal housekeeping requirements.  Mr. Ellis' testimony and CoreCivic's written policies discussed above further confirm that CoreCivic obtains detainee labor, including cleaning services, under threat of discipline throughout its facilities (again, assuming that there is any basis to the distinction that CoreCivic is attempting to manufacture in the first instance, which does not appear to be the case).

to their shift, (3) detainees may be disciplined if they are absent from or tardy to a work shift, and (4) any type of discipline is possible when detainees work at CoreCivic's facilities.  The exact same argument by CoreCivic has already been presented to and rejected by the Court.

Even if CoreCivic arguably presented disputed questions of fact regarding the terms of its written policies and the testimony of Mr. Ellis, they cannot be resolved at the class certification stage.  *Negrete v. ConAgra Foods, Inc.*, No. CV 16-0631 FMO (AJWx), 2019 WL 1960276, at *11 (C.D. Cal. Mar. 29, 2019) (quoting *Kamar*, 254 F.R.D. at 395 ("[T]he Court must only determine whether the plaintiffs have proffered enough evidence to meet the requirements of Rule 23; the Court need not weigh the persuasiveness of conflicting or competing evidence" at the class certification stage)).  The Court's role at this stage is not to determine a defendant's liability, but rather, to determine whether there is a policy that may provide an eventual class-wide finding.  *Marlo v. UPS, Inc.*, 639 F.3d 942, 949 (9th Cir. 2011).  CoreCivic's written policies, as well as the testimony of Mr. Ellis, clearly establish a policy of obtaining labor under threat of discipline that may provide an eventual class-wide finding of liability.  CoreCivic's previously presented and tortured interpretation of the evidence and self-serving arguments to the contrary should be disregarded.

## IV.    <u>Conclusion</u>

The Court spent extensive time reviewing the parties' briefing on the various issues raised in the Plaintiffs' Motion for Class Certification and CoreCivic's Motion for Judgment on the Pleadings, as well as preparing the Certification Order.  CoreCivic identifies no new facts, legal authorities, or arguments that were previously unavailable when briefing those issues; moreover, the points CoreCivic does raise are either rehashed from prior arguments the Court already considered and rejected, or are new arguments presented for the first time.  Further delay that accompanies reconsideration of prior rulings is not warranted on these facts.  The Motion for Reconsideration should be denied.

DATED:  June 4, 2020

**FOLEY & LARDNER LLP**
Eileen R. Ridley
Geoffrey M. Raux
Nicholas J. Fox
Alan R. Ouellette


*/s/* Eileen R. Ridley
Eileen R. Ridley
Attorneys for Plaintiffs SYLVESTER OWINO,
JONATHAN GOMEZ, and the Certified
Class(es)

**LAW OFFICE OF ROBERT L. TEEL**
Robert L. Teel
   lawoffice@rlteel.com
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
Telephone:  (866) 833-5529
Facsimile:  (855) 609-6911

Attorneys for Plaintiffs SYLVESTER OWINO,
JONATHAN GOMEZ, and the Certified
Class(es)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 4, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

*/s/* Eileen R. Ridley
Eileen R. Ridley