STRUCK LOVE BOJANOWSKI & ACEDO, PLC
Daniel P. Struck, AZ Bar #012377
*(admitted pro hac vice)*
Rachel Love, AZ Bar #019881
*(admitted pro hac vice)*
Nicholas D. Acedo, AZ Bar #021644
*(admitted pro hac vice)*
Ashlee B. Hesman, AZ Bar #028874
*(admitted pro hac vice)*
Jacob B. Lee, AZ Bar #030371
*(admitted pro hac vice)*
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Tel.:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com

LAW OFFICE OF ETHAN H. NELSON
Ethan H. Nelson, CA Bar #262448
4 Park Plaza, Suite 1025
Irvine, California 92614
Tel.: (949) 229-0961
Fax: (949) 861-7122
ethannelsonesq@gmail.com

Attorneys for Defendant/Counter-Claimant
CoreCivic, Inc.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| Sylvester Owino and Jonathan Gomez, on behalf of themselves, and all others similarly situated, | NO. 3:17-cv-01112-JLS-NLS |
|---|---|
| Plaintiffs, | **DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING APPEAL** |
| v. | Date: June 10, 2021 |
| CoreCivic, Inc., a Maryland corporation, | Time: 1:30 p.m. |
| Defendant. | Courtroom: 4D |
| | Judge: Honorable Janis L. Sammartino |

CoreCivic, Inc., a Maryland
corporation,

Counter-Claimant,

v.

Sylvester Owino and Jonathan Gomez,
on behalf of themselves, and all others
similarly situated,

Counter-Defendants.

In light of the Ninth Circuit's Order granting Defendant CoreCivic's Rule 23(f) Petition to immediately appeal the Court's class-certification orders (Dkt. 216), CoreCivic requests this Court to stay all proceedings pending the final outcome of that appeal.  Plaintiffs agree to a stay of proceedings but insist that CoreCivic continue its collection and production of electronically stored information ("ESI") and detainee files.[1]  The Court should grant a stay without exception because it is precisely that massive class discovery that should be stayed until the Ninth Circuit effectively determines whether it must be undertaken. Without a full stay, the extraordinary time and expense to conduct that class discovery will be wasted if the Ninth Circuit ultimately reverses the class-certification orders or narrows their scope.  This Motion is supported by the following Memorandum of Points and Authorities and the attached Declaration of Counsel ("Decl.").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Background.

On April 1, 2020, the Court granted Plaintiffs' Motion for Class Certification and certified three Classes (Dkt. 179), which Plaintiffs have defined as follows:

> National Forced Labor Class: "[a]ll ICE detainees who (i) were
> detained at a CoreCivic facility between December 23, 2008 and the

---

[1] Plaintiffs also insist that Judge Stormes rule on the pending discovery dispute concerning the scope of that discovery. (Dkt. 215.)

present, (ii) cleaned areas of the facilities above and beyond the personal housekeeping tasks enumerated in the ICE PBNDS, and (iii) performed such work under threat of discipline irrespective of whether the work was paid or unpaid[.]"

California Forced Labor Class: "[a]ll ICE detainees who (i) were detained at a CoreCivic facility located in California between January 1, 2006 and the present, (ii) cleaned areas of the facilities above and beyond the personal housekeeping tasks enumerated in [the ICE PBNDS], and (iii) performed such work under threat of discipline irrespective of whether the work was paid or unpaid[.]"

California Labor Law Class: "[a]ll ICE detainees who (i) were detained at a CoreCivic facility located in California between May 31, 2013 and the present, and (ii) worked through CoreCivic's Voluntary Work Program during their period of detention in California[.]"

(Dkt. 84-1 at 1-2.)  The Court denied CoreCivic's Motion for Reconsideration on January 13, 2021.  (Dkt. 210.)

CoreCivic timely filed a Petition for Permission to Appeal pursuant to Rule 23(f) challenging the class-certification orders, which the Ninth Circuit granted on March 10, 2021.  (Dkt. 216.)  As a result of that Order, the deadline to execute the Class Notice Plan has been postponed.  (Dkt. 214.)  In seeking that postponement, the parties agreed that: "[I]f the Ninth Circuit decertifies all classes, the resources expended to launch the Class Notice Plan will be wasted. If the Ninth Circuit decertifies some of the classes or narrows their scope, the Class Notice Plan will have disseminated inaccurate information to class members, requiring the parties to expend additional resources to correct the information and potentially causing confusion among class members."  (Dkt. 213.)

Despite this agreement, when counsel for CoreCivic asked Plaintiffs if they would agree to stay all proceedings after the Ninth Circuit granted the Rule 23(f) Petition, Plaintiffs insisted that CoreCivic continue collecting and producing ESI and detainee files in response to their class discovery requests.[2]  As discussed

---

[2] Plaintiffs otherwise did not object to staying the proceedings.

below, that is a potentially wasteful endeavor on a massive scale.  All proceedings should be stayed.

## II.   The Court Should Stay All Proceedings Pending the Final Outcome of CoreCivic's Appeal of the Class-Certification Orders.

A district court has "broad discretion" to stay proceedings.  *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997).  That discretion stems from the court's inherent authority "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  In considering a stay of proceedings, a court should weigh "the competing interests which will be affected by the granting or refusal to grant a stay."  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  Competing interests include "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *Id*. (citing *Landis*, 299 U.S. at 254–55).

As noted above, Plaintiffs do not object to a stay of proceedings (deadlines or discovery), except for the collection and production of ESI and detainee file discovery.  But that class discovery is a primary reason why a stay should be ordered pending the class-certification appeal.  The time and expense associated with conducting that class discovery is so massive that it is illogical to force it now, when the Ninth Circuit could reverse class certification and eliminate entitlement to any class discovery.  Plaintiffs are seeking discovery dating back to January 1, 2006, from more than 24 different CoreCivic facilities, a timeframe and scope that includes, more than 1,000,000 detainee bookings.  (Decl., ¶¶ 3–5.)  The competing interests—requiring CoreCivic to engage in this costly and potentially unnecessary discovery compared to little or no prejudice to Plaintiffs—strongly favor granting a stay of this class discovery pending the outcome of the Rule 23(f) appeal.

## ESI

Plaintiffs have demanded ESI from more than 980 individual custodians who held positions at one or more facilities.  (*Id*., ¶ 7.)  The ESI collection for only 74 custodians from a single CoreCivic facility took approximately 384 hours—with the e-discovery collections system literally being run 24 hours per day, 7 days per week—and resulted in the collection of approximately 3.6 million items (1.8TB of compressed data).  (*Id*., ¶ 11; *see also* Dkt. 215, 215-1.)  CoreCivic estimates that it will take a total of approximately 5,088 hours to collect the estimated 47.7 million items from the complete body of 980 custodians. (Decl., ¶ 12.)  Assuming CoreCivic devoted 8 hours a day, 5 days a week, to that collection, CoreCivic estimates that it would take approximately 127 weeks—i.e., nearly 2.5 years—to complete.[3]  (*Id*., ¶ 13.)  Uploading and transmitting the collected ESI to a vendor, and then decompressing, deduplicating, fixing errors, indexing the items, and applying search terms will take an additional 2 years.  (*Id*., ¶¶ 14–17.)  CoreCivic initially estimated that the total vendor cost would be $753,752.00 just to complete these tasks.[4]  (*Id*., ¶ 19.)  However, actual experience with processing that limited initial collection consisting of less than 10% of the custodians that Plaintiffs demand yielded an actual invoiced cost of more than $185,000.  (*Id*.)  While it is difficult to estimate the expenses prior to completion of collection, the total cost to process, deduplicate, and cull this ESI for more than 24 facilities (to allow further review and production) now appears likely to be more than $2,000,000.  (*Id*.)

---

[3] CoreCivic has explored the possibility of saving internal costs and time by having a vendor conduct the collection tasks. (Decl., ¶ 20.) CoreCivic solicited proposals from four vendors to complete that task and estimates it would take anywhere from 4 weeks to 6 months to complete the imaging, with a cost ranging from $54,000.00 to $156,000.00 in up-front costs, plus vendor travel expenses and network storage costs. (*Id*.) Once the imaging is complete, ESI would still have to be collected and processed as described herein. (*Id*.)

[4] In addition, for ESI that is collected, CoreCivic incurs a monthly vendor data hosting cost ranging from $7 to $13 per GB, depending on the volume hosted. (Decl., ¶ 21.)

Once the collection and post-collection processes are complete, CoreCivic must then review the ESI for responsiveness and privileged information. Comparison estimate models previously received for review of 1,127,237 items ranged from $963,965.39 for a Continuous Active Learning/Technology Assisted Review of 48% of the items (to reach an 80% confidence level), to $1,291,025.07 for a managed review team of 25 individuals conducting a linear review of each item family member. (*Id.*, ¶ 22.) Based upon the collection experience with the first wave of collected custodians, CoreCivic extrapolates, that without modification of custodians or search terms, there will be more than 8,000,000 electronic files to review, with a range of costs of $6,800,000 to $9,100,000 simply to review that total ESI for production. (*Id.*, ¶ 23.)[5]

### Detainee Files

Plaintiffs are also requesting ICE detainee files. (*Id.*, ¶ 26.) These files are not electronic but exist only as hard-copy records manually stored at each facility for each detainee booking. (*Id.*, ¶ 25.) The Court has ordered the production of between 34,779 and 37,605 detainee files. (*Id.*, ¶¶ 28–29.) To put the scope of that production in perspective, CoreCivic previously produced 190 detainee files, which totaled 17,403 pages (92 pages per file). (*Id.*, ¶ 27.) Thus, this production will likely contain between 3,000,000 and 3,500,000 pages of documents and cost

---

[5] The parties submitted their Joint Motion for Determination of Discovery Dispute No. 5 on February 19, 2021. (Dkt. 215.) CoreCivic attached the Declaration of John Pfeiffer to its portion of the Joint Motion, which laid out in detail the burdens associated with the expansive discovery Plaintiffs are demanding, which would take at least *five years* to complete. (Dkt. 215, 251-1.) In light of these burdens, CoreCivic proposed limitations to the number of custodians, which would significantly decrease (but not eliminate) the burden on CoreCivic while still providing sufficient representative discovery to litigate the claims and defenses regarding company-wide policies and practices at issue. (Dkt. 215.) CoreCivic proposed that all remaining deadlines, including discovery and trial-related deadlines, be extended by one year to allow completion of CoreCivic's proposed narrowed ESI discovery. (*Id.*) The matter remains pending. Further, based upon experiences with larger scale collection, CoreCivic expects that the parties may need to refine the search terms selected, and if they are unable to come to agreement themselves, may require further assistance from the Court. (Decl., ¶ 24 n.4.)

between \$416,000.00 and \$449,800.80 to scan the documents (not including the costs associated with shipping the boxes from the facilities to the vendor to be scanned). (*Id.*, ¶¶ 30–32.) That cost does not even account for the time necessary for personnel to locate the files. (*Id.*, ¶ 33.) Locating a file involves confirming the detainee's discharge date, finding the box(es) corresponding to that date in storage, and then conducting a hand search to locate those files within each box.[6] (*Id.*)

If CoreCivic is required to proceed with this grossly expensive class discovery and incur the associated fees and expenses, only to have the Classes decertified, the financial injury to CoreCivic will be irreparable.[7] That hardship and inequity far outweigh any conceivable prejudice to Plaintiffs if a stay were granted.[8] A stay of this class discovery will also simplify issues by pausing the likelihood of discovery disputes regarding the scope of discovery—discovery disputes that will never come to fruition if the Ninth Circuit reverses the class certification orders—and will keep the entire case on the same track.

## III. Conclusion.

For these reasons, CoreCivic respectfully requests the Court to stay all proceedings pending the final outcome of the appeal from the class-certification orders.

---

[6] Given the costs, CoreCivic intends to produce these detainee files by inspection at each of the facilities at issue (or central warehouse, for those facilities which are no longer operated by CoreCivic). (Decl., ¶ 35.) Although that production will save on costs associated with shipping and scanning the documents, it will require counsel from both sides to travel to the various facilities, review the paper records, and flag the individual pages each party wants scanned and produced from each of the sample files. (*Id.*) CoreCivic is not able to estimate how much this will cost, as travel costs vary depending on the location and time of year. (*Id.*) Either way, the burden of continuing with this discovery is significant. (*Id.*)

[7] All documents pertaining to the named Plaintiffs have already been produced. (Decl., ¶ 41.)

[8] CoreCivic's Opening Brief is currently due by June 18, 2021. (Dkt. 218.)

1    Dated:  May 7, 2021

2

3                                              By s/ Jacob B. Lee
                                                  Daniel P. Struck
4                                                 dstruck@strucklove.com
                                                  Rachel Love
5                                                 rlove@strucklove.com
                                                  Nicholas D. Acedo
6                                                 nacedo@strucklove.com
                                                  Ashlee B. Hesman
7                                                 ahesman@strucklove.com
                                                  Jacob B. Lee
8                                                 jlee@strucklove.com
                                                  STRUCK LOVE BOJANOWSKI & ACEDO, PLC
9
                                                  Ethan H. Nelson
10                                                LAW OFFICE OF ETHAN H. NELSON
                                                  ethannelsonesq@gmail.com
11
                                                  Attorneys for Defendant/Counter-Claimant
12                                                CoreCivic, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Motion to Stay                          7                        17cv01112-JLS-NLS
Proceedings Pending Appeal

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 7, 2021, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

Dated:  May 7, 2021

By s/ Jacob B. Lee