UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER OWINO, JONATHAN GOMEZ, on behalf of themselves, and all other similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br>CORECIVIC, INC., a Maryland corporation,<br><br>                                    Defendant.<br><br>AND RELATED CROSS ACTION | Case No.: 3:17-cv-1112-JLS-NLS<br><br>**ORDER REGARDING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 5**<br><br>**[ECF No. 215]** |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 5.  ECF 215.  The parties raise to the Court a dispute regarding the scope of the ESI that Defendant CoreCivic must produce.  *Id.*

## I.      BACKGROUND

This dispute has a lengthy procedural history.  On April 1, 2020, the Court issued an order that, among other things, certified three classes:

- The <u>California Forced Labor Class</u>, comprising of "[a]ll ICE detainees who (i) were detained at a CoreCivic facility located in California between

1

January 1, 2006 and the present, (ii) cleaned areas of the facilities above and beyond the personal housekeeping tasks enumerated in ICE's Performance Based National Detention Standards 2011 (the "ICE PBNDS"), and (iii) performed such work under threat of discipline irrespective of whether the work was paid or unpaid" as to all claims;

- The National Forced Labor Class, comprising of "[a]ll ICE detainees who (i) were detained at a CoreCivic facility between December 23, 2008 and the present, (ii) cleaned areas of the facilities above and beyond the personal housekeeping tasks enumerated in the ICE PBNDS, and (iii) performed such work under threat of discipline irrespective of whether the work was paid or unpaid" as to all claims; and

- The California Labor Law Class, comprising of "[a]ll ICE detainees who (i) were detained at a CoreCivic facility located in California between May 31, 2013 and the present, and (ii) worked through CoreCivic's [VWP] during their period of detention in California" as to some claims.

ECF No. 179 at 12, 59.  On April 15, 2020, CoreCivic filed a motion for reconsideration on this order.  ECF No. 181, 210.

While the motion for reconsideration was pending, on June 1, 2020, the parties filed a Motion for Determination of Discovery Dispute No. 4, which involved issues related to ESI discovery for the case.  ECF No. 184.  On July 20, 2020, the Court issued an Order on this motion, specifying the ESI protocol that the parties should follow, specifically with regard to the custodians and search terms.  ECF No. 192.

On January 31, 2021, the Court denied CoreCivic's motion for reconsideration.  ECF No. 210.  CoreCivic then began the process to appeal to the Ninth Circuit pursuant to Federal Rule of Civil Procedure 23(f) on the class certification order.  ECF No. 212.  On February 21, 2021, Plaintiffs then brought the instant motion, arguing that CoreCivic had failed to diligently search for and produce ESI documents in accordance with the Court's previous order on Discovery Dispute No. 4.  ECF No. 215.  They asked the Court to hold CoreCivic to the previously agreed to custodians and search terms and to set an interim discovery production schedule.  *Id.* at 2-4.  CoreCivic argued that it should not be held to the previously agreed to custodians and search terms because it discovered that

running those searches is practically too time-consuming and unduly burdensome. *Id.* at 11. Corecivic proposed that the Court limit the ESI custodians to ADO-level[1] individuals at facilities that housed 25,000+ detainees during the relevant time period—which would cut down the total number of custodians from approximately 980 to 150. *Id.* Plaintiffs objected to this proposal.

While this discovery dispute was pending, the Court issued an order granting in part and denying in part CoreCivic's motion to stay the case pending appeal. ECF No. 224. The Court granted the stay pending the appeal, "[a]part from the pending discovery dispute (ECF No. 215) and any California-focused discovery consistent with Judge Stormes' resolution of said dispute." *Id.* at 11.

In order to better understand the practical implications of CoreCivic's proposed limitation, the Court ordered that CoreCivic collect and produce ESI from both ADO-level and non-ADO-level custodians at the Otay Mesa Detention Center and San Diego Correctional Facility. ECF No. 225. Then, the parties were to compare the two collections between ADO-level and non-ADO-level and provide to the Court a joint written status report regarding that ESI. *Id.*

The parties requested several extensions on producing this discovery. ECF Nos. 226-231. The parties submitted their status reports (ECF Nos. 232-35, 240-41, 244), and the Court held a Discovery Conference on July 13, 2022. ECF No. 245. Pursuant to the discussion in the conference, the parties filed a further status report. ECF Nos. 246, 248.

During this time, on June 3, 2022, the Ninth Circuit issued its opinion affirming this Court's class certification order. ECF No. 240. CoreCivic indicated that it would file for rehearing en banc, and this briefing proceeded before the Ninth Circuit. ECF

---

[1] ADO-level refers to administrative-team-level facility employees designated to be "on call" and approved by the Vice President, Facility Ops to assume the required duties and responsibilities of the Warden/Facility Administrator during non-business hours. They generally include the Warden/Facility Administrator, Assistant Warden/Assistant Facility Administrator, Chief of Security, and Chief of Unit Management. ECF No. 215-1 at 7 n.2.

Nos. 239, 247.  On December 20, 2022, the Ninth Circuit issued an amended order and opinion as to the class certification issues.  ECF No. 249.  CoreCivic then indicated it would file a writ of certioriari to the Supreme Court, and file the writ on April 18, 2023. ECF No. 251.

## II.   DISCUSSION

Due to the stay that has not been lifted in the case, only discovery issues as to the California-focused discovery are ripe for adjudication.  There are two such facilities: 1) the Otay Mesa facility; and 2) the California City facility (which only housed detainees during 6 months of the class period).  The issue that remains to be decided as to these facilities is whether ESI collection should be limited to ADO-level custodians only and whether information should be collected at only facilities with 25,000+ detainees.[2]  The Court will address each of these in turn.

### A.   Facilities Housing Less than 25,000

CoreCivic previously proposed that discovery be limited to production from facilities that house more than 25,000+ detainees in order to alleviate the production burden.  ECF No. 215 at 11.  CoreCivic previously argued in the motion that "limiting the collection and production to the four ADO-level positions will result in the collection of ESI from approximately 150 custodians at the 11 largest facilities (25,000+) housing over 85% of the detainees at issue—a sufficiently representative sample of ESI to either prove or disprove Plaintiffs' claims, which are based on company-wide policies and procedures." *Id.* at 19.  The Court ordered CoreCivic to provide an affidavit from a knowledgeable corporate representative that would substantiate this claim.  ECF No. 225 at 3.

---

[2] During the last status conference, the parties raised another issue which was part of the original Discovery Dispute No. 5 related to production at the Facility Support Center ("FSC"), which is located in Tennessee. *See* ECF No. 215 at 17.  The Court asked the parties to submit briefing on this issue, which the parties submitted after the conference.  ECF No. 248.  However, since this discovery would take place outside of the presently allowed  discovery, the Court reserves resolving the dispute at this time, in light of the stay order that has not yet been lifted, pending the writ of certiorari.

3:17-cv-1112-JLS-NLS

CoreCivic provided an affidavit from Jason Ellis, the Managing Director of Operations for Business Unit, One Division One for CoreCivic. (is this the correct name?)  ECF No. 246-1.  In this declaration, Mr. Ellis said the following for collection at facilities housing less than 25,000 detainees: "Some facilities, like OMDC, are large facilities that house hundreds of ICE detainees at any given time.  Others, like West Tennessee Detention Facility, however, are smaller facilities that do not house many ICE detainees, or house ICE detainees who only stay at the facility for a very brief period of time, such that they do not participate in the VWP, or housed ICE detainees for only a short period of time during the relevant time period. As a result, ESI from staff at these smaller facilities would be unlikely to contain relevant information sufficient to justify the time and cost of collecting, processing, reviewing, and producing the ESI." *Id.* at ¶ 19.  As the Court indicated at the July 13, 2022 status conference, this was not sufficient to substantiate CoreCivic's previous argument in its motion, and the Court requested CoreCivic submit a stronger showing to support its claim.

In the parties' subsequent submission, CoreCivic stated that "it will not argue that Plaintiffs are unable to prove their claims because they do not have ESI from all facilities at issue." ECF No. 248 at 18.  However, CoreCivic also stated that it was unwilling to "give up any argument that Plaintiffs are unable to establish uniform application of the relevant policies." *Id.*

Further, in this submission, CoreCivic states that nationwide, there are 14 facilities that house under 25,000+ detainees, and these facilities combined account for 12.62% of the detainees at issue in this case.  *Id.* at 12.  In contrast, the 10 facilities that house more than 25,000+ account for 87.38% of the detainees at issue.[3]  *Id.*  Specifically, within California, the California City Correctional Center has housed 9,528 ICE detainees during the relevant time period, with 1,095 of them participating in the VWP.  *Id.* at 13.

---

[3] As of December 2020, the total number of detainees at issue in the case is a total of 1,047,375.  ECF No. 248 at 12.

3:17-cv-1112-JLS-NLS

CoreCivic explains that the lesser number of ICE detainees at these facilities is a result from differing contracts, standards and work program requirements for detainees at these facilities who are there in legal custody of multiple federal, state, and local government entities. *Id.* As such, compared to the larger facilities that either largely house or exclusively house ICE detainees during the relevant time period, running search terms at these smaller facilities will generate many more hits that will not be relevant and will be time-consuming to review and exclude. *Id.* at 18. CoreCivic argues that this effort will not be as productive at these smaller facilities, because they will not result in as many relevant documents as the same efforts exerted at the larger facilities, which house a higher percentage of ICE detainees. *Id.*

On balance, given the significant burden concerns with ESI production in this case, the Court finds it appropriate to excuse CoreCivic from having to produce documents from the California City Correctional Center at this time (since it houses less than 25,000+ detainees). While the stipulation that CoreCivic provided—namely, that "it will not argue that Plaintiffs are unable to prove their claims because they do not have ESI from all facilities at issue"—is not as broad as Plaintiffs would like, the Court finds it sufficient in light of the burden.[4]

### B.    ADO Custodians

The second part of CoreCivic's proposal is that the ESI collection be limited to only ADO-level custodians. As a preliminary matter, Plaintiffs argue, and the Court agrees, that CoreCivic's purported stipulation does not address this ADO-level limitation. ECF No. 248 at 3-4, 5-6. In other words, the stipulation does not address the issue with a potential evidentiary void that may be left by limiting production to only ADO-level custodians. Thus, the Court focuses this section on weighing the parties' arguments

---

[4] Given the stay in place regarding discovery outside of California, this order applies to California discovery and applies without prejudice to a determination at a later time whether it applies to nationwide discovery.

3:17-cv-1112-JLS-NLS

regarding the burden of production of all non-ADO level custodians and the benefit of a broader production versus a more limited production.

In the parties' submission after the ADO-level and non-ADO-level comparison was done at the San Diego facility, Plaintiffs argued that non-ADO-level documents provided insight into CoreCivic's policies and procedures and that such production included time and payment records from detainees that were absent from ADO-level data. ECF No. 232 at 3-4. To support this argument, they cited to 4 specific documents. *Id.* at 4-5. In addition, Plaintiffs also cited two further documents as examples relevant to CoreCivic's sanitation policies and who performs these duties, and another document relevant to disciplinary procedures. *Id.* at 5-7. Plaintiffs also cited another document related the work agreements. *Id.* at 7. All in all, Plaintiffs pointed out 33 documents from the non-ADO-level production as containing relevant information. *Id.* at 8. After their initial submission, Plaintiffs submitted another status report identifying a few more relevant documents. ECF No. 241.

In opposition, CoreCivic focuses on the burden of the production of non-ADO-level data, and argues that any additional documents are not proportional to the needs of the case under Rule 26(b)(1). First, CoreCivic argues that Plaintiffs have only cited 33 documents out of over 38,000 that were produced from the non-ADO-level production. CoreCivic argues that some of the documents Plaintiffs highlighted were duplicates of other documents produced by ADO-level custodians and disputes the relevance of other documents. *Id.* at 15-16. CoreCivic's brief and accompanying declaration includes details regarding the entire production and process of collecting, reviewing, and producing documents. *Id.* at 17-24. The collection across ADO and non-ADO included 3.2 million documents. *Id.* at 14 n.11. These collections were de-duplicated and evaluated for relevance before being produced. *Id.* at 18. CoreCivic then engaged in its own comparison process between the ADO-level and non-ADO-level data, which it conducted by randomly sampling 2000 documents and rating each of these documents in a three-tiered system for relevant, tangentially relevant, and irrelevant. *Id.* at 19.

3:17-cv-1112-JLS-NLS

CoreCivic concluded that of the relevant documents, 77.85% came from ADO-level custodians, but CoreCivic argued that the number coming from non-ADO-level was inflated because of the processing technique used and the limitations with email threading. *Id.* at 20. Overall, CoreCivic's argument is that the small additional relevant documents that may be produced do not outweigh the burden—CoreCivic estimates that the complete production over all facilities nationwide would take over five years and run millions of dollars. *Id.* at 24. CoreCivic also disputed the importance of the documents that Plaintiffs identified in the supplemental status reports. ECF No. 242, 244.

The Court recognizes the difficulties in the positions both parties find themselves in. The volume of the data that is at issue here is immense, and the Court must find a way to balance the needs of the case and the burden of production in a way that is realistically achievable—this is what is required under the proportionality requirement of Rule 26(b)(1). Based on the parties' submissions, the Court finds that the balance is better met by limiting the ESI production to ADO-level custodians.[5]

//

//

//

//

//

//

//

//

//

//

[5] Similarly, as to this issue, given the stay in place regarding discovery outside of California, this order applies to California discovery and applies without prejudice to a determination at a later time whether it applies to nationwide discovery.

3:17-cv-1112-JLS-NLS

### III.    CONCLUSIONS

For the reasons stated above, the Court finds its appropriate to limit CoreCivic's ESI production as to the California facilities to ADO-level custodians and to include only facilities that house 25,000+ detainees.  This order is without prejudice to a further determination of whether it applies nationwide, after the stay on nationwide discovery is lifted.

**IT IS SO ORDERED.**

Dated:  May 15, 2023

Hon. Nita L. Stormes
United States Magistrate Judge

3:17-cv-1112-JLS-NLS