1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11
12

SYLVESTER OWINO and JONATHAN
GOMEZ, on behalf of themselves and
all others similarly situated,

Case No.: 17-CV-1112 JLS (SBC)

**ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS**

13

Plaintiffs,

14

v.

15
16

CORECIVIC, INC., a Maryland
corporation,

(ECF No. 262)

17

Defendant.

18
19

CORECIVIC, INC., a Maryland
corporation,

20

Counterclaimant,

21

v.

22
23
24

SYLVESTER OWINO and JONATHAN
GOMEZ, on behalf of themselves and
all others similarly situated,

Counterdefendants.

25
26

Presently before the Court is Defendant and Counterclaimant CoreCivic, Inc.'s (the

27

"Defendant") Renewed Motion for Judgment on the Pleadings ("Mot.," ECF No. 262),

28

Plaintiffs and Counterdefendants Sylvester Owino's and Jonathan Gomez's (collectively,

1

the "Plaintiffs") Opposition to the Motion ("Opp'n," ECF No. 263), and Defendant's Amended Reply thereto ("Reply," ECF No. 265).  Defendant contests the Court's exercise of personal jurisdiction over it with respect to claims by class members detained outside of California.  Def's Mem. Supp. Renewed Mot. at 1, ECF No. 262-1 (the "Mem.").  The Court vacated the hearing on Defendant's Motion and took it under submission pursuant to Civil Local Rule 7.1(d)(1).  *See* ECF No. 270.  Having carefully considered the Parties' arguments, the evidence, and the law, the Court **DENIES** Defendant's Motion.

## BACKGROUND

As the Parties are familiar with the facts, the Court incorporates by reference the factual and procedural background set forth in this Court's April 1, 2020 Order (the "Order," ECF No. 179 at 2–4), and states here only the additional background relevant to the present Motion.

On April 1, 2020, the Court certified three classes in the instant litigation.  Order at 59.  The Court first certified a California Forced Labor Class of "[a]ll ICE detainees who (i) were detained at a CoreCivic facility located in California between January 1, 2006 and the present, (ii) cleaned areas of the facilities above and beyond the personal housekeeping tasks enumerated in ICE's Performance Based National Detention Standards 2011 (the "ICE PBNDS"), and (iii) performed such work under threat of discipline irrespective of whether the work was paid or unpaid."  *Id.* at 12, 59 (alteration in original) (internal quotation marks omitted) (quoting ECF No. 84 (the "Certification Mot.") at 1).  Next, the Court certified a National Forced Labor Class that mirrors the California Forced Labor Class but includes ICE detainees held at any of Defendant's facilities since December 23, 2008.  *Id.*  Lastly, the Court partially certified a California Labor Law Class comprised of "[a]ll ICE detainees who (i) were detained at a CoreCivic facility located in California between May 31, 2013 and the present, and (ii) worked through CoreCivic's [voluntary work program] during their period of detention in California."  *Id.* (first alteration in original) (internal quotation marks omitted) (quoting Certification Mot. at 1).  The Court certified this final class only with respect to "the causes of action for failure to pay

minimum wage, failure to provide wage statements for actual damages, failure to pay compensation upon termination, and imposition of unlawful conditions of employment." *Id.* at 59.

In the Order, the Court also denied Defendant's Motion for Judgment on the Pleadings ("MJP," ECF No. 117), Order at 8–10, wherein Defendant "move[d] this Court, pursuant to Fed. R. Civ. P. 12(c)[,] to . . . dismiss all putative class claims that arose outside of California for lack of personal jurisdiction," MJP at 2. The Court concluded that Defendant had waived its challenge to the Court's jurisdiction. Order at 10.

Defendant moved for reconsideration of the Order. *See* ECF No. 181. After the Court denied reconsideration on January 13, 2021, *see* ECF No. 210, Defendant petitioned the Ninth Circuit for permission to appeal. *See* ECF No. 212. The Ninth Circuit granted Defendant's request on March 10, 2021, with respect to this Court's certification of the class and this Court's denial of reconsideration, *see* ECF No. 216, and this Court stayed the litigation in part pending Defendant's appeal, *see* ECF Nos. 220, 224.

On December 20, 2022, the Ninth Circuit issued an Order and Amended Opinion largely affirming the Court's April 1, 2020 and January 13, 2021 Orders. *See* ECF No. 249. In its Amended Opinion, the Ninth Circuit reversed and remanded only the Court's denial of Defendant's MJP. *Id.* at 18, 25. Relying on an opinion issued while the appeal was pending—*Moser v. Benefytt, Inc.*, 8 F.4th 872 (9th Cir. 2021)—the Ninth Circuit determined that Defendant did not waive its personal jurisdiction defense. *Id.* at 18. The Ninth Circuit left it to this Court, however, to determine the merits of the defense. *Id.*

After the Supreme Court denied Defendant's petition for a writ of certiorari, *see* ECF No. 253, this Court held an Appeal Mandate Hearing on July 19, 2023, and set a briefing schedule, *see* ECF No. 261. The present Motion followed.

## LEGAL STANDARD

### I.   Rule 12(i)

Defendant styles their Motion as a motion for judgment on the pleadings pursuant to Rule 12(c). Mot. at 2. However, "[a] motion's 'nomenclature is not controlling.'"

*United States ex rel. Hoggett v. Univ. of Phoenix*, 863 F.3d 1105, 1108 (9th Cir. 2017) (quoting *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983)).  Instead, courts should "construe [the motion], however styled, to be the type proper for the relief requested." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Miller*, 709 F.2d at 527).  For the reasons that follow, the Court construes Defendant's Motion as a motion under Federal Rule of Civil Procedure 12(i).

Defendants typically bring motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Rule 12(b), however, bars Defendant from filing a 12(b)(2) motion at this stage of the litigation.  *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").  Here, Defendant did not move to dismiss for lack of personal jurisdiction until after its first responsive pleading.  *See* Order at 10.  Thus, Defendant may not file a motion under Rule 12(b)(2).

Rule 12(c) provides a vehicle to advance certain Rule 12(b) defenses after a responsive pleading has been filed, but it is not clear that 12(b)(2) is among them.  Courts have interpreted Rule 12(h) to allow a party to raise select 12(b) defenses—failure to state a claim, failure to join a required party, and lack of subject matter jurisdiction—by way of a Rule 12(c) motion, even if that party has already filed a responsive pleading.  *See Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001); 5C Charles Alan Wright et al., *Federal Practice & Procedure* § 1367 (3d ed. Apr. 2023 update).  The underlying reasoning is straightforward: Rule 12(h)(1) establishes that 12(b)(1), 12(b)(6), and 12(b)(7) defenses cannot be waived, and Rule 12(h)(2) identifies "a motion under Rule 12(c)" as an appropriate means to raise nonwaivable defenses.  *See* Fed. R. Civ. P. 12(h); *Patel*, 259 F. 3d at 126.  Rule 12(h), however, does not preserve the 12(b)(2) defense as nonwaivable.  *See* Fed. R. Civ. P. 12(h).

Moreover, any effort to adjudicate Defendant's personal jurisdiction defense through a Rule 12(c) motion would go against the plain language of Rule 12(d).  When a court rules on a Rule 12(c) motion asserting a Rule 12(b) defense, it applies the same standard of

4

review it would apply to the analogous Rule 12(b) motion. *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Therefore, this Court would apply Rule 12(b)(2)'s standard to Defendant's Motion. Under this standard, a plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction" and "[can]not simply rest on the bare allegations of its complaint." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). But if the Court considers such facts while ruling on Defendant's Rule 12(c) motion, Rule 12(d) will require the Court to apply the standard associated with Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Rather than resort to summary judgment, the Court construes Defendant's Motion as a motion for pre-trial adjudication of its personal jurisdiction defense under Rule 12(i). *See* 5C Wright et al., *supra*, § 1361; Fed. R. Civ. P. 12(i) ("If a party so moves, any defense listed in Rule 12(b)(1)–(7) . . . must be heard and decided before trial unless the court orders a deferral until trial."). Multiple courts have recognized that a defendant may— even after filing a responsive pleading—move under Rule 12(i) to request that a court rule on their properly-preserved personal jurisdiction defense. *See Horton v. SunPath, Ltd.*, No. 3:23-CV-631-E-BN, 2023 WL 2653386, at *2 (N.D. Tex. Mar. 27, 2023); *Branson v. Am. Int'l Indus.*, No. 1:15CV73, 2016 WL 3190222, at *4, *6 (M.D.N.C. June 7, 2016).

Resorting to Rule 12(i) allows the Court to apply the same standard it would apply to a motion under Rule 12(b)(2). Under Rule 12(i), as under Rule 12(b)(2), the Court may resolve the issue of personal jurisdiction through either a preponderance of the evidence standard or a prima facie standard. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 & n.2 (9th Cir. 1977) (noting that, when ruling on a personal jurisdiction defense pursuant to Rule 12(i), a district court "may decide that the plaintiff should not be required . . . to meet the higher burden of proof which is associated with the presentation of evidence at a hearing, but rather should be required only to establish a prima / / /

facie showing of jurisdictional facts")[1]; *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364–65 (11th Cir. 2021).

Because neither Defendant nor Plaintiffs have requested an evidentiary hearing, the Court will determine only whether Plaintiffs have made a prima facie showing of jurisdiction.  Under this standard, Plaintiffs, as the party seeking to invoke the Court's jurisdiction, bear the burden of establishing its existence.  *Data Disc*, 557 F.2d at 1285. Where Defendant contests the factual basis underlying the Court's exercise of jurisdiction, Plaintiffs must submit affidavits and discovery materials "demonstrat[ing] facts which support a finding of jurisdiction."  *Id*.  The Court otherwise takes uncontroverted allegations in the Complaint as true and resolves "[c]onflicts between parties over statements contained in affidavits . . . in [Plaintiffs'] favor."  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.), *supplemented*, 95 F.3d 1156 (9th Cir. 1996)).

## II.   Personal Jurisdiction

A federal court may exercise personal jurisdiction over a defendant "if a rule or statute authorizes it to do so and the exercise of such jurisdiction comports with the constitutional requirements of due process."  *Am. Tel. & Tel. Co.*, 94 F.3d at 589.  Where no applicable federal statute governs personal jurisdiction, federal district courts "appl[y] the law of the state in which [they] sit[]."  *Schwarzenegger*, 374 F.3d at 800 (citing Fed. R. Civ. P. 4(k)(1)(A)).  Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, federal courts sitting in California consider only whether taking personal jurisdiction is consistent with the limits of federal due process. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Cal. Civ. Proc. § 410.10).

---

[1] The *Data Disc* court referred to Rule 12(d) in its opinion, 557 F.2d at 1285 n.2, but the 2007 Amendments to the Federal Rules of Civil Procedure relocated the text on preliminary hearings from Rule 12(d) to the newly created Rule 12(i), 5C Wright et al., *supra*, § 1373.  These amendments were intended to have no substantive effect on the rules.  *Id.*

A federal court's exercise of personal jurisdiction over a defendant comports with due process if the defendant has minimum contacts with the forum state such that the maintenance of the suit is reasonable and does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945). The analysis evaluates the "relationship among the defendant, the forum, and the litigation." *Daimler*, 571 U.S. at 126 (internal quotation marks omitted) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Its "primary focus," however, is "the defendant's relationship to the forum State," or, more specifically, "the burden on the defendant." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262–63 (2017) (internal quotation marks omitted) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

The Supreme Court has recognized two types of personal jurisdiction: general (all-purpose) jurisdiction and specific (case-linked) jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A court may take general jurisdiction—and thereby hear any and all claims against a defendant—if the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* (quoting *Int'l Shoe*, 326 U.S. at 317). Specific jurisdiction, by contrast, allows a court to exercise jurisdiction over a defendant who has fewer contacts with the forum state so long as the plaintiff's claims "arise out of or relate to" the defendant's contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

A court may take specific jurisdiction over a claim against a defendant if three requirements are met:

> (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

///

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (alteration in original) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). Plaintiffs bear the burden of proof on the first two prongs, but Defendant shoulders the burden on the final prong. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023).

## DISCUSSION

Defendant concedes that the Court may exercise specific jurisdiction over claims by class members detained within California, including the claims of the two named class representatives. *See* Mem. at 1. With respect to claims by class members detained outside of California, however, Defendant argues that Plaintiffs cannot demonstrate "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers*, 582 U.S. at 262 (alterations and omissions in original) (internal quotation marks omitted) (quoting *Goodyear*, 564 U.S. at 919). In other words, per Defendants, claims by class members detained outside of California do not arise out of or relate to Defendant's California-related activities.

In response, Plaintiffs do not argue that class members detained outside of California can satisfy *Bristol-Myers*' requirements—*i.e.*, demonstrate that their claims involve an activity or occurrence taking place in California. *See generally* Opp'n. Instead, Plaintiffs distinguish *Bristol-Myers* on the grounds that it involved a mass action, which is more burdensome for a Defendant to litigate than is a class action. *Id.* at 7. Plaintiffs contend that if this Court may exercise specific jurisdiction over Defendant with respect to the claims of the named class representatives, it may also exercise specific jurisdiction over Defendant with respect to the claims of the class as a whole. *Id.* Put differently, where jurisdiction over a defendant in a class action is concerned, the only relevant claims are those of the named class representatives.

The Court begins its analysis with binding authority. The Supreme Court has not yet addressed Plaintiffs' argument. *See Bristol-Myers*, 582 U.S. at 278 n.4 (Sotomayor, J.,

dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."). Neither has the Ninth Circuit. *See Moser*, 8 F.4th at 879 ("Although [the defendant] asks us to resolve [the merits of their *Bristol-Myers* objection to class certification] now, . . . we leave that matter for the district court on remand.").

Absent binding authority, the Court turns to persuasive authority from this and other circuits. Three federal circuits have so far reached the question as to whether a district court must—pursuant to *Bristol-Myers*—dismiss the claims of nonresident, nonnamed class members based on the absence of an affiliation between those claims and the forum state. All three have held that where the exercise of personal jurisdiction over a class-action defendant is concerned, the only relevant claims are those of the named class representatives. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020); *Lyngaas v. Curaden AG*, 992 F.3d 412, 433–35 (6th Cir. 2021); *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 375 (3d Cir. 2022).[2] And, though they have not reached a consensus in their reasoning, the "vast majority" of district courts confronting similar arguments have followed these circuits and declined to dismiss the claims of nonnamed, nonresident class members. 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 6:30 (6th ed. June 2023 update).

The Court is persuaded by the approach of the Seventh, Sixth, and Third Circuits. Class actions have long been recognized as an "exception" to "general rules" in Anglo-American jurisprudence. *See Hansberry v. Lee*, 311 U.S. 32, 40–41 (1940); *see also Taylor v. Sturgell*, 553 U.S. 880, 884 (2008). Indeed, the Supreme Court has made it clear that nonnamed class members "may be parties for some purposes and not for others," as "[t]he label 'party' does not indicate an absolute characteristic, but rather a conclusion about the

---

[2] Though the *Fischer* court was not required to reach the class action question to resolve the case before it, another Third Circuit panel recently confirmed that the *Fischer* court's conclusion is binding law in the Third Circuit. *Kelly v. RealPage Inc.*, 47 F.4th 202, 211 n.7 (3d Cir. 2022).

applicability of various procedural rules that may differ based on context." *Devlin v. Scardelletti*, 536 U.S. 1, 9–10 (2002). It is not unusual, therefore, to (1) treat class actions differently from other forms of litigation and (2) treat nonnamed class members differently than parties to nonclass litigation.

This differential treatment carries over to the personal jurisdiction context. In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), the Supreme Court considered a defendant's challenge to a state court's power to bind nonnamed class members to its judgment. *Id.* at 802–03. The defendant argued that nonnamed class members—like plaintiffs in traditional civil litigation—must either (1) affirmatively consent to a court's exercise of jurisdiction or (2) maintain sufficient minimum contacts with the forum state such that the exercise of jurisdiction is reasonable. *Id.* at 806. The Court disagreed, holding that "[b]ecause States place fewer burdens upon absent class plaintiffs than they do upon absent defendants in nonclass suits, the Due Process Clause need not and does not afford the former as much protection from state-court jurisdiction as it does the latter." *Id.* at 811. In other words, the procedural protections built into class actions—including the "inquiry into the common nature of the named plaintiffs' and the absent plaintiffs' claims," *see id.* at 809—offer additional due process protections for nonnamed class members that justify treating them differently than plaintiffs or defendants in nonclass litigation.

Granted, *Shutts* did not purport to decide what due process protections defendants receive in class actions. *See Shutts*, 472 U.S. at 811 n.3 ("[O]ur discussion of personal jurisdiction [does not] address class actions where the jurisdiction is asserted against a *defendant* class."); *Bristol-Myers*, 582 U.S. at 267 ("Since *Shutts* concerned the due process rights of *plaintiffs*, it has no bearing on the question presented here."). But it follows from *Shutts* that—where class actions are concerned—the due process protections to which a party is entitled with respect to a court's exercise of jurisdiction over a claim wax and wane with the burden the party bears in litigating that claim. *See Shutts*, 472 U.S. at 811; *Lyngaas*, 992 F.3d at 436 (relying on *Shutts* to conclude that the "unique posture of a class action" changes the jurisdictional inquiry for plaintiffs and defendants alike).

1   The dispositive question, therefore, is as follows: do Rule 23's procedural
2   requirements reduce the burden defendants bear in litigating the claims of nonnamed class
3   members enough to substitute for the protection offered by subjecting those claims to a
4   traditional, "minimum contacts" analysis?

5   Numerous federal courts—including this Court—have answered this question in the
6   affirmative. *See, e.g.*, *Sousa v. 7-Eleven, Inc.*, No. 19-CV-2142 JLS (RBB),
7   2020 WL 6399595, at *4 (S.D. Cal. Nov. 2, 2020) ("[T]o qualify for class action treatment
8   under Fed. R. Civ. P. 23, an action must meet additional due process requirements that are
9   not applicable in the *Bristol-Myers* mass tort context."); *Massaro v. Beyond Meat, Inc.*, No.
10  3:20-CV-00510-AJB-MSB, 2021 WL 948805, at *11 (S.D. Cal. Mar. 12, 2021) (reasoning
11  that Rule 23's requirements ensure "a degree of uniformity and consistency," thereby
12  providing "due process protections not available in the *Bristol-Myers* mass tort context");
13  *Sotomayor v. Bank of Am., N.A.*, 377 F. Supp. 3d 1034, 1038 (C.D. Cal. 2019) ("Federal
14  Rule of Civil Procedure 23 imposes additional due process safeguards on class actions that
15  do not exist in the mass tort context."); *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d
16  114, 126 (D.D.C. 2018), *aff'd on other grounds sub nom. Molock v. Whole Foods Mkt.*
17  *Grp., Inc.*, 952 F.3d 293 (D.C. Cir. 2020); *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp.
18  3d 308, 326 (D. Mass. 2020); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No.
19  MDL 09-2047, 2017 WL 5971622, at *14 (E.D. La. Nov. 30, 2017).

20  And, though they have not referred to class action procedures as substitute due
21  process protections, the Third and Sixth Circuits have similarly concluded that the benefits
22  defendants derive from said procedures justify treating nonnamed class members as
23  irrelevant when determining whether the exercise of specific jurisdiction over a defendant
24  violates the Constitution. *See Fischer*, 42 F.4th at 374 (noting that the unitary, coherent
25  nature of class action claims justifies treating absent class members in Rule 23 suits as
26  nonparties for jurisdictional purposes); *Lyngaas*, 992 F.3d at 435 ("[A] class action is
27  formally one suit in which, as a practical matter, a defendant litigates against only the class
28  representative.").

As the above opinions indicate, the comparison between a mass action and a class action is instructive.  In a mass action like that involved in *Bristol-Myers*, all plaintiffs are named parties in the case, and the defendant must defend against each plaintiff and their individualized claims.  *Lyngaas*, 992 F.3d at 435.  The trial court may be able to resolve shared legal issues through consolidation but will then move on to individual issues in each plaintiff's suit.  *Id.*  Because "[t]hese individual issues might 'present significant variations' such that a defense would require different legal theories or different evidence," the burden on the defendant associated with answering each plaintiff's claims is high.  *See id.* (quoting *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1366 (N.D. Ga. 2018)).

By contrast, the lead plaintiffs in a Rule 23 class action "earn the right to represent the interests of absent class members by satisfying all four criteria of Rule 23(a) and one branch of Rule 23(b)."  *Mussat*, 953 F.3d at 447.  Under Rule 23(b)(3), for example, named plaintiffs must satisfy numerosity, commonality, typicality, adequacy of representation, predomination, and superiority requirements before a class can be certified.  *See* Fed. R. Civ. P. 23(b).  These requirements ensure that a defendant "is presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense."  *Lyngaas*, 992 F.3d at 435 (internal quotation marks omitted) (quoting *Sanchez*, 297 F. Supp. 3d at 1366); *see also id.* ("In this sense, the only 'suit' before the court is the one brought by the named plaintiff.").

Relative to a mass action, therefore, the burden a defendant bears in litigating a class action is substantially reduced.  *See Drywall Prods.*, 2017 WL 5971622, at *14 (noting that "[o]ften, mass torts cannot qualify for class action treatment because they are unable to satisfy [the additional due process standards for class certification under Rule 23]").  Thus, when determining whether it may exercise specific personal jurisdiction over Defendant in the instant class action, this Court "need analyze only the claims raised by the named [P]laintiff[s], who in turn represent[] the absent class members."  *Lyngaas*, 992 F.3d at 435. / / /

The Court further notes that analyzing only the claims raised by the named Plaintiffs serves the "goals of class action litigation." *See Devlin*, 536 U.S. at 10. First, "[t]he efficient administration of class actions would be compromised by requiring the Court to make personal jurisdiction determinations for every named and potential unnamed plaintiff." *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1335 (D. Minn. 2018); *see also Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815, 822 (N.D. Ill. 2018). Second, treating nonnamed class members as nonparties helps "prevent[] multiple suits." *See Devlin*, 536 U.S. at 11. True, any dismissed out-of-state class members could theoretically file a single, nationwide action in a State where Defendant is subject to general jurisdiction. However, such class members might instead resort to piecemeal, competing actions in their home states. *See Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 863 & n.7 (N.D. Cal. 2018), *order clarified*, No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018), *on reconsideration*, 438 F. Supp. 3d 1017 (N.D. Cal. 2020); *Bliss v. CoreCivic, Inc.*, 580 F. Supp. 3d 924, 928 (D. Nev. 2022). Treating nonnamed class members as irrelevant for purposes of the exercise of specific jurisdiction over a defendant mitigates both of these concerns.

Defendant's arguments to the contrary are not persuasive. First, Defendant cites *Moser* for the proposition that nonnamed class members become full parties to a case in all respects after class certification. *See* Mem. at 14; Reply at 6–7. But *Moser* held only that that nonnamed putative class members "were not yet parties to the case," and cited as persuasive the D.C. Circuit's opinion in *Molock*. 8 F.4th at 877–78. In that case, the D.C. Circuit recognized that even "in *certified* class actions," nonnamed class members are considered nonparties for some purposes. *Molock*, 952 F.3d at 297. For example, in certified class actions, nonnamed class members are nonparties with respect to the complete diversity requirement of 28 U.S.C. § 1332. *See id.* (citing *Devlin*, 536 U.S. at 10). Thus, a nonnamed class member's party status does not depend on certification alone.

Second, Defendant asserts that Rule 23's procedures are "not intended to benefit the defendant or protect its right to due process." Reply at 9–10. It is far from clear, however,

that Rule 23 was designed only to protect absent class members.  *See Fischer*, 42 F.4th at 373–74 ("[C]ourts and Congress have constructed a careful balance designed to protect both the absent class members . . . and defendants . . . .").  And even if Rule 23 were designed primarily with nonnamed class members in mind, it does not follow that Rule 23's procedures do not also benefit defendants.  Tellingly, Defendant neither offers a persuasive rejoinder to the contention that defendants benefit from the uniformity created by Rule 23 nor identifies other burdens associated with the claims of nonnamed class members that might offset Rule 23's benefits.[3]  *See generally* Mem.; Reply.

Third, Defendant notes that *Shutts* distinguished defendants' due process rights from those of nonnamed class members.  *See* Mem. at 14–15.  But in the passages cited by Defendant, the *Shutts* Court discussed the due process interests of "*absent* defendants *in nonclass suits*."  *Shutts*, 472 U.S. at 811 (emphasis added).  The Court's discussion of the burdens borne by such a defendant, *id.* at 808, does not bear on the question of whether a defendant in a *class action*—one who is already present and engaged in litigation within a forum—is so burdened by the addition of nonnamed class members' claims that proceeding with litigation regarding those claims violates the Constitution.  *See Lyngaas*, 992 F.3d at 437 (noting that neither *Bristol-Myers* nor *Shutts* "have already answered the jurisdictional question presented in this case").  Instead, the *Shutts* Court's reasoning supports the conclusion that class actions allow for "diverging specific personal jurisdiction analyses." *See id.* at 435–36.

/ / /

---

[3] Defendant makes only the general assertion that "the burden on CoreCivic to defend a nationwide class in this forum is 'asymmetrical' to [CoreCivic's] limited operations in California."  Mem. at 19 (quoting *Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th Cir. 1987)).  This statement does not indicate how, if at all, the presence of nonnamed class members increases Defendant's litigation burden.  *Cf. Lyngaas*, 992 F.3d at 437.  If anything, allowing Plaintiffs to represent nonnamed class members in California *decreases* Defendant's litigation burden by avoiding piecemeal, state-by-state litigation; duplicative discovery; and the risk of inconsistent liability.  *See Sloan*, 287 F. Supp. 3d at 863 (noting that the burden on the defendant associated with litigating the claims of out-of-state plaintiffs is "de minimis, particularly because the alternative would be for those plaintiffs to file new, separate cases").

Finally, Defendant argues that it is unfair to bind it to the Court's adjudication of each nonnamed class member's claim without conducting a "minimum contacts" analysis with respect to each claim. *See* Reply at 10. This argument ignores, however, the type of unfairness with which due process limits on personal jurisdiction are primarily concerned: "the burden on the defendant." *Bristol-Myers*, 582 U.S. at 263 (internal quotation marks omitted) (quoting *World-Wide Volkswagen*, 444 U.S. at 292). In the class action context, Rule 23's strenuous certification procedures ensure that the addition of nonnamed class members' claims does not render the class representative's chosen forum unduly burdensome, thereby protecting defendants' due process rights. And if a class representative's chosen forum is unfair from the start—*e.g.*, if the burden associated with traveling to the forum or participating in discovery in the forum is unconstitutionally high, *see Shutts*, 472 U.S. at 808—defendants are not left without a remedy. They need only challenge the court's exercise of personal jurisdiction over them with respect to the named representative's claim. *See Sousa*, 2020 WL 6399595, at *4.

For the reasons stated above, to exercise personal jurisdiction over the claims of the class as a whole, the Court need determine only whether it may exercise specific jurisdiction over the claims of the named class representatives. Defendant does not dispute that the Court may exercise specific jurisdiction over the claims of the named class representatives. *See* Mem. at 1–2. Therefore, the Court concludes that it may exercise specific jurisdiction over Defendant with respect to the claims of the class as a whole.

As the Court has resolved the Parties' dispute on this ground, the Court declines to reach the question of whether it may exercise general jurisdiction over Defendant. *See* Mem. at 3–5; Opp'n at 12–13. The Court similarly declines to reach the Parties' arguments regarding whether its status as a federal court allows it to exercise personal jurisdiction where a state court could not. *See* Mem. at 10–13; Opp'n at 9. Finally, because the Court has determined that it need not engage in a specific personal jurisdiction analysis with respect to the claims of nonnamed class members, Defendant's arguments regarding the individual prongs of that analysis—including Defendant's contention that it is

15

unreasonable for this Court to exercise jurisdiction over nonnamed class members' claims, *see* Mem. at 19–20—are moot.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's Renewed Motion for Judgment on the Pleadings (ECF No. 262).  The Court refers the Parties to the chambers of the magistrate judge assigned to the case to resolve any outstanding discovery or scheduling concerns.

**IT IS SO ORDERED.**

Dated:  November 2, 2023

Hon. Janis L. Sammartino
United States District Judge

16

17-CV-1112 JLS (SBC)