STRUCK LOVE BOJANOWSKI & ACEDO, PLC
Daniel P. Struck, AZ Bar #012377
*(admitted pro hac vice)*
Rachel Love, AZ Bar #019881
*(admitted pro hac vice)*
Nicholas D. Acedo, AZ Bar #021644
*(admitted pro hac vice)*
Ashlee B. Hesman, AZ Bar #028874
*(admitted pro hac vice)*
Jacob B. Lee, AZ Bar #030371
*(admitted pro hac vice)*
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Tel.: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com

LAW OFFICE OF ETHAN H. NELSON
Ethan H. Nelson, CA Bar #262448
4 Park Plaza, Suite 1025
Irvine, California 92614
Tel.: (949) 229-0961
Fax: (949) 861-7122
ethannelsonesq@gmail.com

Attorneys for Defendant/Counter-Claimant
CoreCivic, Inc.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Sylvester Owino and Jonathan Gomez, on behalf of themselves, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CoreCivic, Inc., a Maryland corporation,<br><br>Defendant. | NO. 3:17-cv-01112-JLS-SBC<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO EXTEND DEADLINES IN THE ORDER SETTING FACT DISCOVERY AND CLASS NOTICE SCHEDULE [DKT. 293]**<br><br>Date: August 22, 2024<br>Time: 1:30 P.M.<br>Courtroom: 4D<br>Judge: Honorable Janis L. Sammartino |

| | |
|---|---|
| CoreCivic, Inc., a Maryland corporation, | |
| | Counter-Claimant, |
| v. | |
| Sylvester Owino and Jonathan Gomez, on behalf of themselves, and all others similarly situated, | |
| | Counter-Defendants. |

Defendant/Counter-Claimant CoreCivic, Inc.'s ("Defendant" or "CoreCivic") Motion to Extend Deadlines in the Order Setting Fact Discovery and Class Notice Schedule ("Motion") is not, as Plaintiffs characterize it, an attempt to delay the proceedings. Rather, it is an attempt to address the "unquestionabl[e] … hardship" CoreCivic will face "if the Court forces it to disobey an ICE order without first resolving the legal issues implicated by ICE's contentions." (Dkt. 296.) As set forth in the underlying Motion, CoreCivic raised these issues with Plaintiffs promptly upon learning of ICE's concerns. (Dkt. 294-1 at 2–3.)

Nor did CoreCivic "back[ ] out" of the agreement between the parties and ICE, as Plaintiffs suggest. During the July 18 call, counsel for the parties and ICE agreed that the parties would file a Joint Motion for Revised Protective Order and submit a proposed Revised Protective Order that specifically addressed the federal statutes and regulations identified by ICE as precluding the production of certain detainee information and provided for their <u>unredacted</u> production by designating them as confidential pursuant to the Revised Protective Order. (Id. at 3.) As CoreCivic understood it, upon entry of the Revised Protective Order, there would be no need to identify detainees with § 1367 or asylum-related concerns, such that CoreCivic could proceed with the collection and production of the detention files and ESI without having to wait for ICE to check the names on the sample list against its databases and without having to take the time to redact information from files belonging to detainees who were identified as being protected.

After the call, however, ICE requested that the Joint Motion include a statement that ICE owns the detention files and is obligated to comply with the non-disclosure statutes and regulations, such that the files and ESI must be checked for individuals with § 1367 concerns, which would require an extension of the production deadlines to allow this process to occur. (Id. at 3.) At that time, ICE was not sure how long that process would take given the volume of documents at issue. (Id. at 4.) Plaintiffs' counsel informed ICE that they would not agree to any request for an extension, but would ask the Court to order continued production "under the existing protective order." (Id.) Contrary to Plaintiffs' assertion,[1] this was a material change—given ICE's request and Plaintiffs' stated opposition, the previous agreement to jointly seek a Revised Protective Order ceased to exist, as ICE wanted to include a request for an extension to allow it to check for detainees with § 1367 concerns, and Plaintiffs explicitly stated they opposed ICE's request. As such, there was no agreement for CoreCivic to "back out" of, and nothing for CoreCivic to do but seek the extension as requested by ICE.

For these reasons, and those set forth more fully below, the Court should grant CoreCivic's Motion and extend the deadlines as set forth in the Motion.

## I.   Legal Argument

### A.   CoreCivic Timely Raised These Issues.

Plaintiffs complain that CoreCivic "conspicuously raises these issues now—only *after* being ordered to 'commence' rolling production of detention information under firm discovery deadlines," as if to suggest that CoreCivic knew about these concerns all along but waited until the Court set "firm discovery deadlines" to raise

---

[1] Plaintiffs' insistence that "nothing about ICE's position articulated during the meet and confer call had materially changed" is confusing, as the very next sentence in Plaintiffs' Opposition states: "<u>Due to the change in position</u>, counsel for Plaintiffs asked Ms. Fiorentino-Rios … to identify the specific information ICE would require to be redacted…" (Dkt. 297 at 7, emphasis added.)

them. Not so. ICE did not notify CoreCivic of its concerns until counsel for ICE and CoreCivic spoke on July 10, 2024. (Dkt. 294-1 at 2.)[2] CoreCivic then forwarded ICE's letter outlining those concerns to Plaintiffs the same day it received it on July 12, 2024. (Id. at 2–3.)[3] Counsel for ICE has since confirmed that ICE—which is not a party to this litigation, and therefore does not receive notification of all filings or copies of all discovery served—was not aware of the prior production of identifying information from CoreCivic's OMS system to Plaintiffs, and was therefore unable to raise the issues sooner. (Ex. 1, Declaration of Counsel, ¶ 4.)

Absent notice and an opportunity to be heard, ICE cannot be said to have waived the protections of 8 U.S.C. § 1367 or 8 C.F.R. § 208.6. The case Plaintiffs rely on for their waiver argument—*Kidd v. Mayorkas*, 2:20-cv-03512-ODW (JPRx), 2023 WL 3432170 (C.D. Cal. May 1, 2023)—is distinguishable. There, the plaintiffs sued various federal government defendants in a putative class action for alleged violations of the Fourth Amendment in arresting and detaining removable immigrants. The plaintiffs identified three putative class members as witnesses, and the defendants took their depositions and produced certain documents related to them. *Id*. at *1–2. The defendants also "relied on the stories of these three individuals

---

[2] As set forth in the underlying Motion, the Order setting the production deadlines was entered on June 26, 2024. (Dkt. 293.) ICE first attempted to contact CoreCivic on July 1, 2024, while undersigned counsel was out of the office. On July 8, 2024, upon returning to the office, CoreCivic asked ICE to clarify which documents ICE wanted to be consulted on. On July 10, 2024, counsel for ICE and CoreCivic conferred telephonically, and on July 12, 2024, ICE sent a letter to CoreCivic outlining its concerns. (Dkt. 294-1 at 2.)

[3] Although CoreCivic did not provide information as to the number of detainees with § 1367 and/or asylum concerns in its Motion, the Court should not deny the Motion on that basis. CoreCivic promptly raised these issues with Plaintiffs and the Court upon learning of them. Taking the time to allow ICE to review the list and identify detainees with § 1367 and/or asylum concerns before seeking relief would have unnecessarily delayed the filing of the Motion and potentially caused CoreCivic to violate the June 26, 2024 Order by missing deadlines. (*See* Dkt. 295, 296.)

in opposing [the plaintiffs'] motion for class certification … to argue that factual differences among individual ICE encounters precluded certification." *Id*. at *5. Only after all that did the defendants assert that § 1367 precluded the production of the information and documents and request that the plaintiffs "return, sequester, or destroy six documents, and to destroy any work product that relied on or summarized the documents, on § 1367 grounds." *Id*. at *2. The plaintiffs refused, and the defendants moved for an order requiring them to do so. *Id*.

The district court denied the motion on multiple grounds, including waiver. Specifically, the court found that the defendants waived any § 1367 protections by failing to raise the statute during briefing on the plaintiffs' motion to compel concerning the documents, and by later moving to file the documents under seal on the basis of § 1367 in connection with the defendants' opposition to class certification. *Id*. at *5. Under these circumstances, the court found that the defendants had waived § 1367 both unintentionally and intentionally. *Id*. at *6.

No such circumstances exist here. ICE is not a defendant to the litigation, did not produce the identifying information from CoreCivic's OMS system, and did not know it was being produced. ICE therefore cannot be said to have waived the right to assert § 1367 protections. Similarly, CoreCivic had not been informed of ICE's concerns at the time of production of the identifying information, preventing it from raising the issue itself. Because CoreCivic is not an ICE component (or a government entity of any kind) and had no prior knowledge of ICE's concerns, it cannot be said to have waived the protections on behalf of ICE. Rather, ICE raised these issues with CoreCivic promptly upon becoming aware of them, and CoreCivic raised them with Plaintiffs promptly upon being advised of them by ICE. (Dkt. 294-1 at 2–3.) No defenses have been waived, and the Court should consider the issues on the merits.[4]

---

[4] Because the collection includes 35,000 files spread across 24 facilities nationwide, some of which are now closed, and all of which have different storage methods for archived files and different capabilities to locate and scan files to be produced,

### B. Section 1367 Applies to the Documents at Issue.

The cases Plaintiffs rely on to argue that § 1367 does not apply here because it is CoreCivic, not ICE, who would be producing the detention files and ESI are all distinguishable. In *Cazorla v. Koch Foods of Mississippi, L.L.C.*, 838 F.3d 540, 546 (5th Cir. 2016), the issue was whether the plaintiffs themselves could be compelled to produce information about their own applications for U visas, or whether § 1367 allowed them to refuse to produce it. The Fifth Circuit held that it did not, stating: "Section 1367 and its implementing regulation … clearly do not preclude discovery from the individual claimants." *Id.* at 552. This statement, conspicuously omitted from Plaintiffs' brief, changes the nature of the holding and its application to this case, as CoreCivic is not a U visa applicant, and Plaintiffs are not the ones relying on § 1367. Similarly, in *Joseph v. Signal Int'l L.L.C.*, 1:13-CV-324, 2014 WL 12597592, at *1, 5 (E.D. Tex. Oct. 15, 2014), "[t]he [p]laintiffs argue[d] they should not be compelled to produce immigration related documents [regarding their own immigration status and T visa applications] on three grounds," including that the documents were privileged under § 1367.

Although *Kidd* involved production of potentially "1367-protected" documents by the government, this Court is not bound to follow its ruling that "§ 1367(a)(2) does not apply to the documents" at issue in this case. *Kidd*, 2023 WL

---

CoreCivic will be hard-pressed to meet the four-month deadline requested by Plaintiffs and entered by the Court. Nevertheless, in an effort to be ready to start producing documents once these issues are resolved, CoreCivic continues to collect detention files and ESI. (Ex. 1 at ¶ 5.) Additionally, CoreCivic provided the first portion of the detention file production list, consisting of over 17,000 detainee names and A-numbers, to ICE on July 24, 2024, so that it could begin reviewing its files to identify detainees with § 1367 and/or asylum concerns. (Id. at ¶ 6.) CoreCivic produced the second portion of the list, consisting of almost 12,000 detainee names and A-numbers, to ICE on August 14, 2024. (Id. at ¶ 7.) As of the date of this filing, ICE has not yet provided CoreCivic with a list of detainees whose files will require redaction, or confirmation of the extent of redaction that will be required for each one. (Id. at ¶ 8.)

3432170 at *7. Nor should it. *Kidd* relied on the Ninth Circuit's ruling in *Zambrano v. I.N.S.*, 972 F.2d 1122, 1125 (9th Cir. 1992), *vacated on other grounds*, 509 U.S. 918 (1993), which itself relied on the United States Supreme Court's ruling in *St. Regis Paper Co. v. United States*, 368 U.S. 208, (1961). In *St. Regis*, the petitioner paper company was challenging an order by the Federal Trade Commission requiring it to produce copies of various reports the petitioner had submitted to the U.S. Census Bureau. *Id*. at 211, 215. The Supreme Court held that the prohibitions against disclosure in 13 U.S.C. § 9(a) applied only to the officials receiving the information, but that the statute "does not require petitioner to keep a copy of its report nor does it grant copies of the report not in the hands of the Census Bureau an immunity from legal process." *Id*. at 218. In other words, *St. Regis* is yet another case in which the plaintiff was being required to produce copies of its own documents that were in its own possession.

   Here, CoreCivic is a government contractor. CoreCivic is therefore allowed to possess the files in furtherance of its work for the government, but it does not own them—ICE does, and CoreCivic is required to follow ICE directives with respect to the files. (Dkt. 294-1 at 3; Ex. 1 at ¶ 3; *see also* Dkt. 296 at 3.) Plaintiffs have not cited a single case analogous to the instant case, in which a court held that a government contractor could be compelled to produce information that the government itself was prohibited from producing. The Court should therefore give effect to § 1367's directive by extending the detention file and ESI production deadlines to allow ICE time to identify individuals with § 1367 concerns and CoreCivic time to redact such individuals' protected information:

> [I]n no case may … the Secretary of Homeland Security … or any other official or employee of the Department of Homeland Security … (including any bureau or agency of [the] Department[ ] … <u>permit use by or disclosure to anyone</u> (other than a sworn officer or employee of the Department, or bureau or agency thereof, for legitimate Department, bureau, or agency purposes) of any information which

relates to an alien who is the beneficiary of an application for relief under paragraph (15)(T), (15)(U), or (51) of section 101(a) of the Immigration and Nationality Act or section 240A(b)(2) of such Act.

8 U.S.C. § 1367(a)(2) (emphasis added).[5]

### C.  8 C.F.R. § 208.6 Applies to the Documents at Issue.

Whatever lack of specificity Plaintiffs may believe exists in § 1367 (which CoreCivic does not concede), no such lack exists in 8 C.F.R. § 208.6, which states:

> Information contained in or pertaining to any application for refugee

---

[5] The Court should disregard Plaintiffs' citation to *Kidd* for the proposition that "[t]he protections of § 1367(a)(2) exist primarily to protect the interests of immigration applicants such as the three individuals, not the interests of the government." (Dkt. 297 at 9.) The *Kidd* court went on to state: "The three individuals whose materials are at issue in this Motion chose to be a part of this lawsuit and allow their stories to be told in the Complaint. They do not argue that materials relating to them should not have been disclosed, or that Defendants should be able to claw back their I-213s and related documents." *Kidd*, 2023 WL 3432170 at *7. Thus, there was no concern in that case about improper disclosure of information pertaining to the individuals. Plaintiffs omit this key information that provides context to the court's earlier statement. Plaintiffs have not shown that any of the detainees whose information will be produced here have chosen to be part of this lawsuit (i.e., by not opting out when given the opportunity, which has not yet occurred) or allowed their stories to be told, and ICE has requested time to review its files and identify necessary redactions specifically to protect the interests of current and former detainees who have not chosen to be part of the lawsuit or allowed their stories to be told. Nor have Plaintiffs shown that the detainees whose files have been selected for production even qualify as members of the certified National Forced Labor Class.

Similarly, the Court should disregard Plaintiffs' further quotation of *Kidd* for the proposition that "the interest in allowing this information to be disclosed in this action is heightened because full disclosure of information about individuals relevant to this lawsuit will facilitate accurate treatment of the legal and factual issues this important case presents." (Dkt. 297 at 9.) The *Kidd* plaintiffs were challenging the circumstances of their arrests by ICE, making their stories directly relevant to the claims at issue. Here, by contrast, information protected by § 1367 and 8 C.F.R. § 208.6 is not at issue, and it is not necessary that such "stories" be told to "facilitate accurate treatment of the legal and factual issues" in the case, and Plaintiffs have not shown otherwise.

admission, asylum, withholding of removal under section 241(b)(3) of the Act, or protection under regulations issued pursuant to the Convention Against Torture's implementing legislation, records pertaining to any credible fear determination conducted pursuant to § 208.30, and records pertaining to any reasonable fear determination conducted pursuant to § 208.31, <u>shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Secretary</u>.

8 C.F.R. § 208.6(a)[6] (emphasis added). ICE—a component of the Department of Homeland Security under the purview of the Secretary of Homeland Security—has taken the position that information pertaining to detainees' asylum applications should not be disclosed. Pursuant to the plain language of the regulation, then, it cannot be produced, but must be redacted.

It is irrelevant that Plaintiffs have never specifically requested asylum-related information in discovery. The fact remains that some detention files do, and some ESI may, contain such information, and ICE and CoreCivic require additional time to identify and redact such information, which, as Plaintiffs implicitly concede, is not relevant to this matter. The Court should therefore give effect to § 208.6's directive by extending the detention file and ESI production deadlines to allow ICE time to identify individuals with asylum concerns and CoreCivic time to redact such individuals' protected information.

## II.  Conclusion

CoreCivic is working in good faith to comply with the current deadlines. (Dkt. 293.) The additional work required to properly address ICE's concerns, however, cannot be accomplished within them. For these reasons, CoreCivic respectfully requests that the Court extend the deadlines related to production of detention files and ESI by six months, as set forth in the underlying Motion. (Dkt. 294.) Should the Court desire to hear argument regarding these issues, CoreCivic further requests that

---

[6] As noted by Plaintiffs, 8 C.F.R. § 1208.6 is substantively identical to § 208.6.

it invite ICE to participate to ensure that ICE's concerns are fully addressed.

Dated:  August 15, 2024

By s/Jacob B. Lee
Daniel P. Struck
dstruck@strucklove.com
Rachel Love
rlove@strucklove.com
Nicholas D. Acedo
nacedo@strucklove.com
Ashlee B. Hesman
ahesman@strucklove.com
Jacob B. Lee
jlee@strucklove.com
STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Ethan H. Nelson
LAW OFFICE OF ETHAN H. NELSON
ethannelsonesq@gmail.com

Attorneys for Defendant/Counter-Claimant CoreCivic, Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 15, 2024 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

Dated:  August 15, 2024

By s/Jacob B. Lee
Jacob B. Lee